GORDON REES SCULLY MANSUKHANI LLP
Spencer P. Hugret (SBN 240424)
shugret@grsm.com
Embarcadero Center West
275 Battery Street, Suite 2000
San Freancisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

DYKEMA GOSSETT PLLC
John M. Thomas (SBN 266842)
jthomas@dykema.com
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7613
Facsimile: (734) 214-7696

Attorneys for Defendant
FORD MOTOR COMPANY

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No. 2:18-ML-02814-AB (FFMx)_____ |
| | Assigned to Hon. Andre Birotte, Jr. Courtroom:7B |
| **THIS DOCUMENT RELATES ONLY TO:** | **OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES** |
| *DYANNA DAWN BECKER and PETER LEWIS STETINA v. FORD MOTOR COMPANY, et al., 2:18-cv-00942-AB-FFM* | Date:    August 29, 2018<br>Time:    10:00 a.m.<br>Courtroom: 7B |
| | Complaint Filed: September 6, 2017<br>Complaint Served: September 7, 2017<br>Trial Date: None |

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

1

# TABLE OF CONTENTS

2

3    TABLE OF AUTHORITIES ............................................................. ii

4    INTRODUCTION............................................................................ 1

5    FACTUAL BACKGROUND ........................................................... 2

6         A.    Plaintiffs' Complaint and the Relief Sought. ................... 2

7         B.    Ford's Notice of Removal. ............................................... 3

8         C.    The *Myers* Complaint and Trial. ...................................... 5

9    APPLICABLE LAW ....................................................................... 6

10   ARGUMENT .................................................................................. 8

11   THE AMOUNT AT STAKE IN THIS CASE EXCEEDS $75,000............................. 8

12        A.    The Stakes On Plaintiffs' Fraud Claims Exceed $75,000.............. 8

13        B.    The Stakes On Plaintiffs' Song Beverly Claim Exceed
               $75,000. .......................................................................... 9
14

15        C.    Plaintiffs Have Confirmed That More Than $75,000 Is At
               Stake By Rejecting Ford's $75,001 Settlement Offer. ................ 14

16        D.    No Award of Fees is Proper. .......................................... 16

17   CONCLUSION ............................................................................... 16

18

19

20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

i

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES**

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. J.B. Hunt Transp., Inc.,*
    293 F. Supp. 3d 1140 (E.D. Cal. 2018) ............................................................ 13

*Aguilar v. Wells Fargo Bank, N.A.,*
    2015 U.S. Dist. LEXIS 150017 (C.D. Cal. Nov. 4, 2015) ................................ 12

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.,*
    637 F.3d 827 (7th Cir. 2011) ............................................................................. 9

*Brady v. Mercedes-Benz USA, Inc.,*
    243 F. Supp. 2d 1004 (N.D. Cal. 2002) ............................................................ 7

*Brill v. Countrywide Home Loans, Inc.,*
    427 F.3d 446 (7th Cir. 2005) ............................................................................. 7

*Burns v. Windsor Ins. Co.,*
    31 F.3d 1092 (11th Cir. 1994) ......................................................................... 15

*Castillo v. ABM Indus.,*
    2017 U.S. Dist. LEXIS 192939 (C.D. Cal. Nov. 20, 2017) ............................ 12

*Chase v. Shop N Save Warehouse Foods, Inc.,*
    110 F.3d 424 (7th Cir. 1997) ........................................................................... 15

*Chavez v. GM, Ltd. Liab. Co.,*
    2017 U.S. Dist. LEXIS 172587 (C.D. Cal. Oct. 18, 2017)............................... 16

*Chavez v. JPMorgan Chase & Co.,*
    888 F.3d 413 (9th Cir. 2018) ................................................................... 7, 8, 12

*Clayton v. Ford Motor Co.,*
    2017 Cal. App. Unpub. LEXIS 4596 (July 5, 2017) ........................................ 14

*Cohn v. Petsmart, Inc.,*
    281 F.3d 837 (9th Cir. 2002) ..................................................................... 14, 15

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
    135 S. Ct. 547 (2014)...................................................................................... 6, 8

*Davtian v. Jaguar Land Rover N. Am. LLC,*
    2017 U.S. Dist. LEXIS 30600 (C.D. Cal. Mar. 3, 2017).................................. 14

*Frederick v. Hartford Underwriters Ins. Co.,*
    683 F.3d 1242 (10th Cir. 2012) ......................................................................... 9

*Galvan v. Walt Disney Parks & Resorts U.S.,*
    2017 U.S. Dist. LEXIS 38998 (C.D. Cal. Mar. 17, 2017)............................... 11

*Garcia v. ACE Cash Express, Inc.,*
    2014 U.S. Dist. LEXIS 76351 (C.D. Cal. May 30, 2014)................................ 10

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

ii

*Garcia v. FCA US LLC,*
  2018 U.S. Dist. LEXIS 37594 (E.D. Cal. Mar. 7, 2018) ................................. 14

*Garfias v. Team Indus. Servs.,*
  2017 U.S. Dist. LEXIS 167370 (C.D. Cal. Oct. 10, 2017) ............................. 10

*Gaus v Miles, Inc.,*
  980 F.2d 564 (9th Cir. 1992) .............................................................................. 8

*Goglin v. BMW of N. Am., LLC,*
  4 Cal. App. 5th 462 (2016) .............................................................................. 14

*Hall v. FCA US LLC,*
  2018 U.S. Dist. LEXIS 85048 (E.D. Cal. May 21, 2018) ............................... 14

*Hall v. FCA US, Ltd. Liab. Co.,*
  2016 U.S. Dist. LEXIS 113376 (E.D. Cal. Aug. 24, 2016) ............................... 7

*Lenhart v. Mid-Century Ins. Co.,*
  No. C18-5039 BHS, 2018 U.S. Dist. LEXIS 64745 (W.D. Wash. Apr.
  17, 2018) ........................................................................................................... 13

*Lewis v. Verizon Communs., Inc.,*
  627 F.3d 395 (9th Cir. 2010) .......................................................................... 7, 8

*Lucas v. Michael Kors (USA) Inc.,*
  2018 U.S. Dist. LEXIS 78510 (C.D. Cal. May 9, 2018) ................................. 12

*Magana v. Performance Food Grp., Inc.,*
  2017 U.S. Dist. LEXIS 197268 (C.D. Cal. Nov. 30, 2017) ............................ 11

*Martin v. Franklin Capital Corp.,*
  546 U.S. 132, 126 S. Ct. 704 (2005) ............................................................... 16

*McDaniel v. Fifth Third Bank,*
  568 F. App'x 729 (11th Cir. 2014) ..................................................................... 9

*McPhail v. Deere & Co.,*
  529 F.3d 947 (10th Cir. 2008) ............................................................................ 7

*Murphy v. Am. Gen. Life Ins. Co.,*
  2014 U.S. Dist. LEXIS 97998 (C.D. Cal. July 1, 2014) ................................. 10

*Ruiz v. BMW of N. Am., LLC,*
  2018 U.S. Dist. LEXIS 76855 (C.D. Cal. May 7, 2018) ................................. 14

*S. Fla. Wellness v. Allstate Ins. Co.,*
  745 F.3d 1312 (11th Cir. 2014) .......................................................................... 7

*Sasso v. Noble Utah Long Beach, LLC,*
  2015 U.S. Dist. LEXIS 25921 (C.D. Cal. Mar. 3, 2015) ........................... 12, 13

*Sawyer v. Retail Data, LLC,*
  2015 U.S. Dist. LEXIS 57113 (C.D. Cal. Apr. 29, 2015) ............................... 12

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

iii

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

*Spivey v. Vertrue, Inc.*,
528 F.3d 982 (7th Cir. 2008) ................................................................. 8

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
303 U.S. 283, 58 S. Ct. 586 (1938)................................................ 9, 10

*Willingham v. Morgan*,
395 U.S. 402 (1969)............................................................................ 7

*Wilson v. Belin*,
20 F.3d 644 (5th Cir. 1994) ............................................................. 15

**Statutes**

28 United States Code
Section 1446................................................................................. 6, 8

28 United States Code
Section 1447................................................................................. 16

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

1

## INTRODUCTION

2      Plaintiff in this case purchased a used Ford vehicle for about $18,000.

3 Alleging a defect in the vehicle's transmission, the Knight Law Firm ("KLG")

4 sued Ford Motor Company ("Ford") on Plaintiff's behalf for fraud and breach of

5 warranty under California's Song-Beverly Consumer Warranty Act. Ford removed

6 the case based on diversity of citizenship. The only issue raised by Plaintiffs'

7 Motion to Remand ("MR") is whether the $75,000 amount in controversy

8 requirement is met. Plaintiff in this case—and Plaintiffs in 83 other similar cases

9 filed by KLG—have confirmed that more than $75,000 is at stake by rejecting

10 Ford's $75,001 settlement offers.

11      But how is this possible in a case involving a used vehicle purchased for

12 only $18,000? The amount in controversy is not the amount the plaintiff will or is

13 likely to recover. Rather, it is an estimate of the amount that Plaintiffs will put at

14 stake in the course of the litigation. For the alleged violation of the Song Beverly

15 Act, Plaintiffs' Complaint puts at stake the price paid for the vehicle, less a

16 deduction for use, plus a civil penalty of up to 2 times the actual damages. There is

17 no dispute that in this case that that amount is $42,811—an amount that does not

18 include incidental or consequential damages, also demanded in the Complaint.

19 This Court has already decided that post-removal attorney fees through trial can be

20 included in the amount in controversy, and in cases virtually identical to this one

21 KLG uniformly demands more than $50,000 in fees just to prepare the cases for

22 trial. The minimum amount at stake on Plaintiff's Song Beverly claim is thus,

23 more than $90,000.

24      Further, the fraud claims asserted here have been made—in identical

25 form—by KLG in other cases involving the same alleged defects in the same

26 transmission. In those cases, KLG put at stake the entire purchase price of the

27 vehicles plus punitive damages equal to nine times that amount. In one of those

28 cases, a jury awarded *more* than that amount. In this case, the purchase price plus

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1

1   nine times the purchase price is more than $180,000.

2   And that is how a garden-variety breach of warranty case becomes a federal

3   case with an amount in controversy well in excess of $75,000.

**FACTUAL BACKGROUND**

### A.   Plaintiffs' Complaint and the Relief Sought.

6   On September 6, 2017, KLG filed this action against Ford on behalf of

7   Dyanna Becker and Peter Stetina ("Plaintiffs"). Ford was the only named

8   defendant. (Doc. 1-2, Complaint.)  Plaintiffs alleged that they purchased a used

9   2011 Ford Fiesta that contained a defective DPS6 PowerShift transmission

10  ("DPS6 transmission"). This action was one of approximately 117 actions filed by

11  KLG that are part of the MDL 2814. KLG also represents plaintiffs in numerous

12  DPS6 cases pending in state court.

13  Plaintiffs in this case alleged that they presented their vehicle for repairs on

14  multiple occasions, that the repairs were not successful, and that Ford failed to

15  "either promptly replace the new motor vehicle or promptly make restitution in

16  accordance with the Song-Beverly Act." (Doc. 1-2, Complaint, ¶ 117.)  Plaintiffs

17  sought "reimbursement of the price paid for the vehicle less that amount directly

18  attributable to use by the Plaintiffs prior to discovery of the nonconformities." (*Id.*

19  ¶ 119.)  They sought, in addition, "incidental, consequential, and general damages

20  resulting from Defendant's failure to comply with [its] obligations under the

21  Song-Beverly Act." (*Id.* ¶ 120.)  They sought a civil penalty of "up to two times

22  the amount of actual damages." (*Id.* ¶ 122.)  And they sought "attorney's fees,

23  reasonably incurred in connection with the commencement and prosecution of this

24  action." (*Id.* ¶ 121.)

25  Plaintiffs also alleged causes of action based on fraud. They alleged that

26  Ford fraudulently "concealed and failed to disclose facts relating to the

27  Transmission Defects," and that Ford made misrepresentations concerning the

28  DPS6 transmission. (*Id.* ¶¶ 136,152.)  Plaintiffs alleged that they were harmed by

2

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   Ford's alleged concealment and misrepresentations because they "were induced to
2   enter into the sale of a vehicle that Plaintiffs would not have otherwise
3   purchased." (*Id*, ¶ 144; *see also* ¶ 154.)  Plaintiffs sought, among other things,
4   judgment for "diminution in value" and for "restitution of all monies expended."
5   (*Id.*, Prayer for Relief, ¶¶ b, c.)  And they sought punitive damages. (*Id.*, Prayer for
6   Relief, ¶ g.)

7       **B.    Ford's Notice of Removal.**

8       On October 6, 2017, Ford removed this case to the Northern District of
9   California based on diversity of citizenship. (Doc. 1-1, Notice of Removal.)  It
10  was later transferred to this Court as part of the MDL.

11          1.    Diversity is Alleged and Is Not Challenged.

12      The Notice of Removal alleged that Plaintiffs were, and are, citizens of
13  California, and that Ford is incorporated in Delaware and has its principal place of
14  business in Michigan. (*Id.* ¶¶ 21, 22.)  Plaintiffs do not challenge these allegations.

15          2.    Amount in Controversy: Song Beverly.

16      As noted above, as damages for the alleged violation of the Song Beverly
17  Act, Plaintiffs sought "reimbursement of the price paid for the vehicle less that
18  amount directly attributable to use by the Plaintiffs prior to discovery of the
19  nonconformities," plus a civil penalty of up to 2 times the actual damages. (Doc.
20  1-2, Complaint, ¶¶ 119, 122.)  Accordingly, Ford's Notice of Removal calculated
21  the damages sought under the Song Beverly Act as follows:

22                  Purchase Price:    $18,067.30

23                  Less Deduction for Use: $3,796.84

24              =    $14,270.46 of Potential Actual Damages

25                  Plus Civil Penalty (2 x Actual Damages): $28,540.92

26              =    $42,811.38 of Potential Damages Awarded

27  (Doc. 1-1, Notice of Removal, ¶ 16.)  Plaintiffs do not challenge the sales price or

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

3

1   the amount of the deduction for use.[1]

2        As noted above, Plaintiffs also sought fees incurred in commencing and

3   prosecuting their Song Beverly claim. Ford attached a declaration from a lawyer

4   who has represented Ford and other motor vehicle manufacturers in over one

5   thousand lawsuits alleging claims similar to those in this case. (Doc. 1-5,

6   Declaration of Spencer Hugret, ¶ 4.) This declaration established that Plaintiffs'

7   counsel in such cases regularly request more than $50,000 in fees. (*Id.,* ¶¶ 4-6.)

8   Thus, the amount in controversy with respect to Plaintiffs' Song Beverly claim is

9   more than $90,000.

10        3.   Amount in Controversy: Fraud.

11        As noted above, Plaintiffs also alleged fraud and sought "restitution of all

12   monies expended" plus punitive damages. (Doc. 1-2, Complaint, Prayer for Relief,

13   ¶¶ b, g.) To establish the amount in controversy with respect to the fraud claim,

14   Ford attached a declaration filed by KLG in *Hector Cazares v. Ford Motor Co.,*

15   Case. No. BC635153 (Los Angeles Superior Court), another case against Ford

16   filed by lawyers now with KLG based on an allegedly defective DPS6

17   transmission in a 2011 Fiesta. (Doc. 1-6, Declaration of Barbara Luna.) Out of

18   158 paragraphs in the Complaint in this case (including the Prayer for Relief), 147

19   are identical to paragraphs in the *Cazares* Complaint. (*Compare* Doc. 1-2,

20   Complaint, *with* Declaration of John M. Thomas, Ex. A [*Cazares* Complaint].)

21        In her *Cazares* declaration, Barbara Luna, an accountant and purported

22   fraud expert, calculated actual damages for fraud as equal to the entire amount

23   paid by the plaintiff for his vehicle (including interest on his loan), and calculated

24   punitive damages by multiplying that figure by nine. (Doc 1-6, Luna Declaration,

25

26        [1] The sales price was taken from the sales contract attached to the
Complaint. (Doc. 1-4, Declaration of Warren Platt, ¶¶ 6-7.) The deduction for use

27   was based on the mileage on the vehicle at the time of the first repair attempt, as
shown in Ford's records, and the formula for calculating the deduction for use set

28   forth in the Song Beverly Act itself. (*Id.,* ¶¶ 5, 8-9.)

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

4

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES**

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

¶¶ 59-60, 63, 71.) Using the same formula in this case, the actual damages sought by Plaintiffs on their fraud claims would be more than $18,067 (the purchase price of the vehicle, not including interest), and the punitive damages sought by Plaintiffs would be more than nine times that amount, or more than $162,603. Thus, the amount in controversy with respect to Plaintiffs' fraud claims is more than $180,000.

     4.    <u>Amount in Controversy: Plaintiffs Reject a $75,001 Settlement Offer</u>

Finally, in the Notice of Removal itself, Ford offered to settle the case for $75,001. (Doc. 1-1, Notice of Removal, ¶ 20.)  The offer provided that if it was not accepted within 10 days, it would be deemed rejected. (*Id.*)  Plaintiffs did not accept the offer. Ford made 83 similar offers to plaintiffs in DPS6 cases who were represented by KLG, either in the notice of removal itself or at about the same time. (Declaration of Warren E. Platt ¶¶ 5-6; Declaration of Spencer P. Hugret ¶¶ 3-4.)  No plaintiff accepted any of these offers. (*Id.*)

**C.   The *Myers* Complaint and Trial.**

On October 21, 2016, less than a year before they filed this action, lawyers now with KLG filed *Ariel Myers v. Ford Motor Company,* No. 638302, in Los Angeles County Superior Court.[2] (Declaration of John M. Thomas, Ex. C [*Myers* Complaint]). A few paragraphs in the *Myers* complaint were unique to the *Myers* plaintiff (for example, the plaintiff in *Myers* purchased a new 2014 Focus rather than a used 2011 Fiesta), but most of the *Myers* Complaint is identical to the *Cazares* Complaint and to the Complaint in this case. Out of 158 paragraphs in the Complaint in this case (including the Prayer for Relief), 145 are identical to paragraphs in the *Myers* Complaint. (*Compare* Doc. 1-2, Complaint, *with*

---

[2] At the time the *Myers* and *Cazares* Complaints were filed, lawyers now with KLG were with the law firm of O'Connor & Mikhov LLP, which was reformed in 2017 as Knight Law Group LLP. (Thomas Declaration, Ex. B [Declaration of Steve Mikhov in *Venegas v Ford Motor Co.*] ¶ 41.)

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  Declaration of John M. Thomas, Ex. C [*Myers* Complaint].) The Complaints in

2  *Myers,* this case, and *Cazares* all make the same allegations regarding the same

3  alleged defect and Ford's knowledge of that defect, they all assert the same legal

4  theories, and they all make the same demands for relief.

5      KLG tried the *Myers* case from March 21, 2018 through April 5, 2018.

6  Only Plaintiff's fraud claims were tried. Barbara Luna testified for the plaintiff at

7  trial. Consistent with her declaration in *Cazares, s*he calculated damages for fraud

8  as equal to the entire amount paid by the plaintiff for her vehicle, $54,364, a figure

9  that included finance charges, rental car costs, insurance, and registration fees.

10  (Declaration of John M. Thomas, Ex. D-1 [3/29 Myers Transcript] at 49-51.) Luna

11  calculated punitive damages by multiplying that figure by nine. (*Id.* at 52.)  In

12  closing argument, KLG asked the jury to award the full purchase price of the

13  vehicle as compensatory damages and it further asked the jury to award punitive

14  damages of *at least* nine times that amount (which, KLG told the jury, was

15  equivalent to an award of $7 against someone with a net worth of $50,000).

16  (Declaration of John M. Thomas, Ex. D-2 [4/05 Myers Transcript] at 68-69, 76-

17  79.) On April 6, 2018, the jury returned a verdict finding the plaintiff had suffered

18  actual damages in the exact amount testified to by Luna and awarding punitive

19  damages of $500,000, *more* than nine times the amount of the actual damages.

20  (Declaration of John M. Thomas, Ex. E [*Myers* verdict].)

21                    **APPLICABLE LAW**

22      Under the controlling statute, "removal of the action is proper on the basis

23  of an amount in controversy asserted [in the Notice of Removal] if the district

24  court finds, by the preponderance of the evidence, that the amount in controversy

25  exceeds the amount specified in section 1332(a) [here, $75,000]." 28 U.S.C.

26  §1446 (C)(2)(b); *accord Dart Cherokee Basin Operating Co., LLC v. Owens*, 135

27  S. Ct. 547, 553-54 (2014) ("If the plaintiff contests the defendant's allegation,

28  §1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in

6

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  controversy asserted' by the defendant 'if the district court finds, by the

2  preponderance of the evidence, that the amount in controversy exceeds' the

3  jurisdictional threshold."); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416

4  (9th Cir. 2018) ("Where, as here, it is unclear from the face of the complaint

5  whether the amount in controversy exceeds $75,000, 'the removing defendant

6  bears the burden of establishing, by a preponderance of the evidence, that the

7  amount in controversy exceeds the jurisdictional threshold.'").  In assessing the

8  amount in controversy, the court may consider "allegations in the complaint and in

9  the notice of removal, as well as summary-judgment-type evidence relevant to the

10  amount in controversy." *Id.* And "it is proper to treat the removal petition as if it

11  had been amended to include the relevant information contained in the later-filed

12  affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969).

13      The amount in controversy may include compensatory damages, punitive

14  damages, and civil penalties. *See, e.g., id.; Hall v. FCA US, Ltd. Liab. Co.,* 2016

15  U.S. Dist. LEXIS 113376, at *10 (E.D. Cal. Aug. 24, 2016); *Brady v. Mercedes-*

16  *Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002). It may also include

17  attorneys' fees awarded under fee shifting statutes. *Chavez,* 888 F.3d at 416. "The

18  amount in controversy is not proof of the amount the plaintiff will recover. Rather,

19  it is an estimate of the amount that will be put at issue in the course of the

20  litigation." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010),

21  quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "The

22  demonstration concerns what the plaintiff is claiming (and thus the amount in

23  controversy between the parties), not whether plaintiff is likely to win or be

24  awarded everything he seeks." *Brill v. Countrywide Home Loans, Inc*., 427 F.3d

25  446, 449 (7th Cir. 2005); *accord, e.g., S. Fla. Wellness v. Allstate Ins. Co*., 745

26  F.3d 1312, 1315 (11th Cir. 2014) (the amount in controversy is "less a prediction

27  of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate

28  of how much will be put at issue during the litigation"). "'Once the proponent of

7

1  federal jurisdiction has explained plausibly how the stakes exceed [the

2  jurisdictional threshold], . . . then the case belongs in federal court unless it is

3  legally impossible for the plaintiff to recover that much.'" *Lewis*, 627 F.3d at 401,

4  quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).[3]

5  **ARGUMENT**

6  **THE AMOUNT AT STAKE IN THIS CASE EXCEEDS $75,000**

7  **A.      The Stakes On Plaintiffs' Fraud Claims Exceed $75,000.**

8  Estimating the amount that KLG will put at issue with respect to Plaintiffs'

9  fraud claims requires no speculation or guesswork. In both *Cazares* and *Myers*,

10  KLG sought recovery of the entire amount paid for the vehicle as actual damages,

11  and nine times the actual damages as punitive damages. In *Myers*, KLG actually

12  persuaded the jury to award the entire amount paid for the vehicle as actual

13  damages and *more* than nine times that amount as punitive damages. There is no

14  reason to believe that KLG will adopt an approach in this case that will yield less

15  than the approach it used in *Cazares* and *Myers*. Under that approach, the

16  estimated amount that KLG will put at issue in this case is at least $180,000.

17  Plaintiffs argue that Ford has done no more than assert that punitive

18  damages in this case "could total a large amount." (MR at 10.)  But Ford has

19  shown that in virtually identical cases involving the same alleged defect KLG

20  ---

[3] Plaintiffs rely on dicta from the Ninth Circuit that "[f]ederal jurisdiction

21  must be rejected if there is any doubt as to the right of removal in the first

instance." *Gaus v Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). But the Ninth

22  Circuit made this comment with respect to its obligation to "strictly construe the

removal statute." *See id.* Plaintiffs' motion in this case raises no issue of statutory

23  construction. To the extent that the Court in *Gaus* or any of its later decisions

intended to suggest that the removing party must establish the amount in

24  controversy beyond "any doubt," those decisions are inconsistent with the

controlling statute and the controlling decisions of the Supreme Court and the

25  Ninth Circuit, which establish beyond debate that the amount in controversy need

be established only by a preponderance of the evidence. *E.g.* 28 U.S.C.

26  §1446(C)(2)(b); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct.

547, 553-54 (2014); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th

27  Cir. 2018). As the Supreme Court recognized in *Dart Cherokee*, "'[D]efendants do

not need to prove to a legal certainty that the amount in controversy requirement

28  has been met. ...'"135 S. Ct. at 554, *quoting* H. R. Rep. No. 112-10, p. 16 (2011).

8

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   requested a large amount in punitive damages, and that in one of these cases a jury
2   actually awarded more than KLG requested. Besides, "[t]he defendant does not
3   have to prove that the plaintiff is more likely than not to ultimately recover
4   punitive damages, but merely that: (1) state law permits a punitive damages award
5   for the claims in question; and (2) the total award, including compensatory and
6   punitive damages, could exceed [the jurisdictional threshold]." *Frederick v.*
7   *Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012); *accord,*
8   *e.g., Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th
9   Cir. 2011) ("A punitive award exceeding $2.1 million is possible in this litigation,
10  so the amount in controversy exceeds [the jurisdictional threshold] under the
11  approach of *St. Paul Mercury*."); *McDaniel v. Fifth Third Bank*, 568 F. App'x
12  729, 732 (11th Cir. 2014) ("Any inquiry into whether McDaniel would actually
13  recover these amounts [of punitive damages] is unnecessary and inappropriate.
14  For the purposes of establishing jurisdiction, it is enough to show that he could.").

15      "When a plaintiff does not tie its own hands [by limiting the amount of
16  recovery], the defendant is entitled to present a good-faith estimate of the stakes.
17  If that estimate exceeds the jurisdictional minimum, it controls and allows removal
18  unless recovery exceeding the jurisdictional minimum would be legally
19  impossible." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827,
20  831 (7th Cir. 2011). In this case, KLG cannot claim that it would be legally
21  impossible for Plaintiffs to recover compensatory and punitive damages in excess
22  of $75,000 without conceding that the verdict KLG obtained in *Myers* must be
23  reversed. KLG's claim that the amount at stake in this case could be less than
24  $75,000, even though it put far more than $75,000 at stake in *Myers,* is
25  disingenuous at best.

26      **B.    The Stakes On Plaintiffs' Song Beverly Claim Exceed $75,000.**
27      Estimating the amount that KLG will put at issue with respect to Plaintiffs'
28  Song Beverly claim is equally straightforward. There are three components of the

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

9

1  analysis: (1) an estimate of the compensatory damages at stake at trial, (2) an

2  estimate of the civil penalties at stake at trial, and (3) an estimate of the attorney's

3  fees at stake at trial.

4    1.    Compensatory damages and civil penalties at stake at trial.

5  The Complaint expressly asserts that Plaintiffs are demanding

6  "reimbursement of the price paid for the vehicle less that amount directly

7  attributable to use by the Plaintiffs prior to discovery of the nonconformities," plus

8  a civil penalty of up to 2 times the actual damages. (Doc. 1-2, Complaint ¶¶ 119,

9  122.) Plaintiffs do not deny that this amount is $42,811.38.

10   Instead, Plaintiffs argue that this calculation fails to include "the multitude

11  of offsets and deductions that *Defendant itself* routinely demands in similar cases,

12  such as manufacturer's rebates, negative equity, service contracts, and trade-in

13  condition reductions." (MR at 7, emphasis in original.)  The language Plaintiffs

14  chose to emphasize highlights the misguided nature of their argument. The issue is

15  what Plaintiffs are claiming, not what they are likely to recover after Ford asserts

16  its defenses. The fact that Ford may have a complete or partial defense to

17  Plaintiffs claim—and that the amount Plaintiffs will ultimately recover could be

18  less than what they are demanding—is irrelevant to the amount in controversy

19  analysis. *See, e.g., Saint Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283,

20  289, 58 S. Ct. 586, 590 (1938) ("the fact that the complaint discloses the existence

21  of a valid defense to the claim" does not defeat federal jurisdiction); *Garfias v.*

22  *Team Indus. Servs.,* 2017 U.S. Dist. LEXIS 167370, at *9 (C.D. Cal. Oct. 10,

23  2017) ("Potential affirmative defenses do not affect the amount in controversy

24  analysis for purposes of determining federal jurisdiction."); *Murphy v. Am. Gen.*

25  *Life Ins. Co.,* 2014 U.S. Dist. LEXIS 97998, at *9 (C.D. Cal. July 1, 2014) ("The

26  amount in controversy is measured by Plaintiff's claims, not Defendant's

27  defenses."); *Garcia v. ACE Cash Express, Inc.*, 2014 U.S. Dist. LEXIS 76351, at

28  *7 (C.D. Cal. May 30, 2014) ("The Ninth Circuit has explained that there is a

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

10

1  difference between the amount in controversy and the amount ultimately

2  recovered or able to be recovered. As a result, affirmative defenses, counterclaims,

3  and potential offsets may not be considered as part of the amount in controversy.")

4  (citations omitted).

5      Plaintiffs' Complaint expressly seeks reimbursement of the price paid for

6  the vehicle less only a deduction for use, not reimbursement of the price paid for

7  the vehicle less deductions for use *and* for "manufacturer's rebates, negative

8  equity, service contracts, and trade-in condition." Besides, Plaintiffs have

9  submitted no *evidence* that Ford has ever demanded such deductions, that any

10  such deductions would be applicable in this case, or that any of them are allowable

11  under California law. *See Magana v. Performance Food Grp., Inc.,* 2017 U.S.

12  Dist. LEXIS 197268, at *9 (C.D. Cal. Nov. 30, 2017) ("Since Plaintiff has not

13  presented any such evidence, the Court finds that potential mitigation or offsets

14  should not be included in the amount in controversy calculation.").

15      Ford's estimate of the amount of actual damages and civil penalties that

16  KLG will put at stake on the Song-Beverly claim—$42,811—is thus supported by

17  a preponderance of the evidence.

18          2.   Attorney's fees at stake at trial exceed $50,000.

19      Ford's Notice of Removal attached a declaration establishing that Plaintiffs'

20  lawyers in cases of this nature routinely demand $50,000 or more in fees. In

21  response, Plaintiffs argue that "the proper valuation is not anticipated future

22  attorney's fees but, instead, only fees incurred as of the time of removal." (MR at

23  8.) But this Court has considered and rejected this argument at least four times.

24  *Galvan v. Walt Disney Parks & Resorts U.S.,* 2017 U.S. Dist. LEXIS 38998, at

25  *10-11 (C.D. Cal. Mar. 17, 2017) ("A split of authority persists concerning

26  whether post-removal legal costs should be included, but this Court and several

27  others in the district have recently held that "post-removal attorneys' fees

28  authorized by law are part of the amount in controversy."); *Castillo v. ABM*

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

11

1   *Indus.*, 2017 U.S. Dist. LEXIS 192939, at *7 (C.D. Cal. Nov. 20, 2017); *Aguilar v.*

2   *Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 150017, at *22 (C.D. Cal. Nov. 4,

3   2015); *Sasso v. Noble Utah Long Beach, LLC*, 2015 U.S. Dist. LEXIS 25921, at

4   *11 (C.D. Cal. Mar. 3, 2015). As this Court concluded in *Sasso,* "the better view is

5   to consider post-removal attorneys' fees because they are part of the total 'amount

6   at stake.'" *Id.*

7        The Ninth Circuit addressed an analogous issue in *Chavez v. JPMorgan*

8   *Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018): Does the amount in

9   controversy in a wage-loss case include wages accrued after the time of removal?

10  The answer was "Yes."

11            We conclude that the amount in controversy is not

12            limited to damages incurred prior to removal—for

13            example, it is not limited to wages a plaintiff-employee

14            would have earned before removal (as opposed to after

15            removal). Rather, the amount in controversy is

16            determined by the complaint operative at the time of

17            removal and encompasses all relief a court may grant on

18            that complaint if the plaintiff is victorious.

19  *Id.* at 414-15. "[T]he broad holding [in *Chavez*] strongly suggests that the Ninth

20  Circuit would find it appropriate to consider post-removal attorney's fees." *Lucas*

21  *v. Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at *29-32 (C.D. Cal.

22  May 9, 2018).

23        As with any element of claimed damages or penalties, the issue is what will

24  be at stake in trial, not what Plaintiffs might recover if the case settles before trial.

25  *See, e.g., Sawyer v. Retail Data, LLC*, 2015 U.S. Dist. LEXIS 57113, at *6 (C.D.

26  Cal. Apr. 29, 2015) (estimating fees "should the matter proceed to trial "); *Lenhart*

27  *v. Mid-Century Ins. Co.*, No. C18-5039 BHS, 2018 U.S. Dist. LEXIS 64745, at *4

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

12

1  (W.D. Wash. Apr. 17, 2018) ("The Court finds that it is more likely than not that
2  attorney's fees could exceed $30,000 if this matter is litigated through trial.");
3  *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1148 (E.D. Cal. 2018)
4  (estimating fees through trial*); Sasso v. Noble Utah Long Beach, LLC*, 2015 U.S.
5  Dist. LEXIS 25921, at *12 (C.D. Cal. Mar. 3, 2015) (same).

6      Plaintiffs further argue that attorney's fees cannot be considered because
7  Ford "failed to provide specific evidence of Plaintiffs' attorneys hourly wage or
8  the amount of hours worked on the case." (MR at 9.)  But Ford *did* submit *other*
9  evidence to support its position—a declaration from a lawyer who has handled
10  over 1,000 similar cases and who has opined, without contradiction, that
11  Plaintiffs' lawyers regularly seek more than $50,000 in fees. (Doc. 1-5,
12  Declaration of Spencer Hugret ¶¶ 5-6.) And a mountain of additional evidence
13  establishes that KLG, in particular, almost always demands more than $50,000 in
14  cases that appear likely to or do go to trial—including DPS6 cases. KLG has
15  submitted fee requests in 19 DPS6 cases where KLG itself told the courts the
16  cases were likely to go to trial, and its fee requests in these cases ranged from a
17  low of $50,483 to $167,220. (Declaration of John M. Thomas, ¶ Ex. F-1
18  [Summary of Fee Requests]; Exs. F-2 through F-20 [KLG fee requests].) Of
19  course, had these cases actually proceeded to trial, KLG would have demanded
20  even more.

21      Further, in connection with its fee requests in these cases, KLG submitted
22  declarations that catalogue 45 *other* Song Beverly cases in which fee awards were
23  made to KLG or its predecessor firm. (Declaration of John M. Thomas, Ex. B -1
24  [Summary of Fee Awards]; Ex. B-2 [Declaration of Steve Mikhov in *Venegas v
25  Ford Motor Co.*] ¶¶ 52-94 and Exhibits G-WW.])  The amounts sought by the
26  plaintiffs in these cases would be the more relevant number, but even so only six
27  out of the 45 awards were below $40,000, and the average of all 45 awards was
28  more than $102,000. And in several cases the amount awarded was *less* than the

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   amount sought.

2   Requests made by KLG and other Plaintiffs' lawyers in published and

3   online Song Beverly cases range from $60,000 to over $350,000. *See Hall v. FCA*

4   *US LLC*, 2018 U.S. Dist. LEXIS 85048, at *8-9 (E.D. Cal. May 21, 2018) (KLG

5   and co-counsel sought $82,110); *Ruiz v. BMW of N. Am., LLC*, 2018 U.S. Dist.

6   LEXIS 76855, at *22 (C.D. Cal. May 7, 2018) (KLG and co-counsel sought

7   $203,966 in fees); *Garcia v. FCA US LLC*, 2018 U.S. Dist. LEXIS 37594, at *8

8   n.1 (E.D. Cal. Mar. 7, 2018) (KLG and co-counsel sought $60,615 in fees);

9   *Davtian v. Jaguar Land Rover N. Am. LLC*, 2017 U.S. Dist. LEXIS 30600, at *3

10   (C.D. Cal. Mar. 3, 2017) (plaintiffs lawyers sought $195,125 in fees); *Clayton v.*

11   *Ford Motor Co.*, 2017 Cal. App. Unpub. LEXIS 4596, at *1-2 (July 5, 2017)

12   (Plaintiffs' attorneys sought $177,840 in fees based on 444.6 hours of work at an

13   hourly rate of $400, *plus* a 2.0 multiplier, i.e. $355,680); *Goglin v. BMW of N.*

14   *Am., LLC*, 4 Cal. App. 5th 462, 464 (2016) (trial court awarded "$185,000 in

15   attorney fees and costs for successfully settling her claims under the Song-Beverly

16   Consumer Warranty Act ").

17   At least $50,000 in fees is at stake in this litigation, and when this amount is

18   combined with the $42,811 in compensatory damages at stake, the amount in

19   controversy is more than $90,000.

20   **C.   Plaintiffs Have Confirmed That More Than $75,000 Is At Stake**

21   **By Rejecting Ford's $75,001 Settlement Offer.**

22   The fact that Plaintiffs have rejected Ford's $75,001 settlement offer

23   confirms that the stakes are higher than $75,000. *See, e.g., Cohn v. Petsmart, Inc.*,

24   281 F.3d 837 (9th Cir. 2002).

25   In *Cohn*, the defendant relied on a single piece of evidence to establish the

26   amount in controversy: a letter from the plaintiff demanding $100,000 to settle the

27   dispute. 281 F.3d at 840. The Ninth Circuit recognized that a settlement demand

28   is relevant evidence of the amount in controversy. *Id.*, citing *Chase v. Shop N Save*

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

14

*Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997) (plaintiff's settlement offer is properly consulted in determining "plaintiff's assessment of the value of her case"); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) (while a "settlement offer, by itself, may not be determinative, it counts for something"); and *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994) ("Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $ 50,000, it is 'apparent' that removal was proper."). The Court observed that the plaintiff "could have argued that the demand was inflated and not an honest assessment of damages," but that he "made no attempt to disavow his letter or offer contrary evidence." *Cohn,* 281 F.3d at 840. Under these circumstances, "[t]his evidence is sufficient to establish the amount in controversy." *Id.*

A fortiori, Plaintiffs' *rejection* of a $75,001 offer must be sufficient to establish the amount in controversy, because it establishes that they are seeking to recover *more* than $75,001 in this litigation. Just as the plaintiff in *Cohn* could have argued that his demand was inflated, Plaintiffs in this case might have argued that they rejected Ford's offer for reasons unrelated to the amount of the offer. They do not.  They assert that the offer was "proposed in exchange for undefined agreements and releases " (MR at 11), but they do not assert that this was the basis for their rejection.  Further, Plaintiffs' assertion ignores the terms of the offer. The offer was expressly made in return for only two things, a stipulation of dismissal with prejudice, and a release of all claims related to Plaintiffs vehicle.  (Notice of Removal ¶ 20.)  Plaintiffs do not claim that either of these two routine settlement terms were unacceptable. Instead, they assert that "[a]n expired or unaccepted settlement offer … has no immediate or continuing probative value." (MR at 11.) Whatever that might mean, it does not alter the fact that Plaintiffs rejected an offer of $75,001 for no apparent reason except that the amount was lower than the amount they or their attorneys hope to recover in this case.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

15

1    Even further, Ford made similar offers of settlement in 83 other DPS6

2    transmission cases filed by KLG, either in the Notice of Removal or shortly before

3    or after. *No Plaintiff in any of those cases accepted.* Either because of the hope of

4    recovering punitive damages, or in anticipation of large fee awards, KLG plainly

5    believes that more than $75,000 is at stake in DPS6 cases.

6    **D.    No Award of Fees is Proper.**

7    Plaintiffs seek an award of fees and costs associated with their motion to

8    remand, but "[a]bsent unusual circumstances, courts may award attorney's fees

9    under § 1447(c) only where the removing party lacked an objectively reasonable

10   basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141,

11   126 S. Ct. 704, 711 (2005). "Conversely, when an objectively reasonable basis

12   exists, fees should be denied." *Id.*

13   For all of the reasons discussed above, Ford had an objectively reasonable

14   basis for seeking removal, and no fees or costs should be awarded. *See, e.g.,*

15   *Chavez v. GM, Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 172587, at *11 (C.D. Cal.

16   Oct. 18, 2017) (fees denied even though defendant calculated Song Beverly

17   damages without regard to the deduction for use, provided no estimate of attorney

18   fees, and relied solely on a distinguishable case to support the amount of punitive

19   damages at stake).

20                                **CONCLUSION**

21   The motion to remand should be denied. Even if the motion to remand is

22   ///

23   ///

24   ///

25   ////

26   ////

27   ////

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES**

granted, no fees or costs should be awarded.

Respectfully submitted,

Dated: July 20, 2018

**DYKEMA GOSSETT PLLC**

/s/ John M.Thomas

By: _____

John M. Thomas

**DYKEMA GOSSETT PLLC**
John M. Thomas

**GORDON REES SCULLY MANSUKHANI, LLP**

Spencer P. Hugret
Molly J. Mrowka

*Attorneys for Defendant*
*FORD MOTOR COMPANY*

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

17

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**