**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**WIRTZ LAW APC**
Richard M. Wirtz (SBN 137812)
4370 La Jolla Village Drive, Suite 800
San Diego, CA 92122
Telephone: (858) 259-5009
Fax: (858) 259-6008

Attorneys for Plaintiff,
**TIMOTHY D. MURPHY**

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF PLACER

| | |
|---|---|
| TIMOTHY D. MURPHY,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. SCV0037046<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**<br><br>[Filed concurrently with Plaintiff's Notice of Motion and Motion for Attorney's Fees, Costs and Expenses; Declarations of Steve Mikhov and Richard M. Wirtz]<br><br>**Date:** April 5, 2018<br>**Time:** 8:30 a.m.<br>**Dept.:** 32 |

# TABLE OF CONTENTS

                                                                                                                                                                    **Page**

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................... 2

III. ARGUMENT AND ANALYSIS .............................................................................. 6

    A. Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action .......... 6

    B. The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable ......................... 6

        1. The Nature and Complexity of the Litigation Support the Attorney's Fees Requested .......... 9

        2. The Firm's Skill Justifies the Amount of Attorney's Fees Sought ............. 10

    C. The Settlement Amount Does Not Limit the Attorney's Fee Recovery ................... 11

    D. Plaintiff Should Be Granted a Lodestar Multiplier ..................................................... 12

        1. The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment ................. 14

    E. Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action ....................................................................... 15

IV. CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cazares v. Saenz*
 (1989) 208 Cal.App.3d 279 ................................................................................. 13

*City of Riverside v. Rivera*
 (1986) 477 U.S. 561 ............................................................................................. 11

*Dietrich v. Dietrich*
 (1953) 41 Cal.2d 497 ............................................................................................. 9

*En Palm, LLC v. Teitler*
 (2008) 162 Cal.App.4th 770 ................................................................................ 10

*Goglin v. BMW of North America, LLC*
 (2016) 4 Cal.App.5th 462, 470 ........................................................................ 7, 11

*Graciano v. Robinson Ford Sales*
 (2006) 144 Cal.App.4th 140 ......................................................................... passim

*Graham v. DaimlerChrysler Corp.*
 (2004) 34 Cal.4th 553 ...................................................................................... 6, 12

*Hadley v. Krepel*
 (1985) 167 Cal.App.3d 677 ................................................................................. 15

*Harman v. City and County of San Francisco*
 (2007) 158 Cal.App.4th 407 ................................................................................ 12

*Horsford v. Bd. of Trustees of Cal. State Univ.*
 (2005) 132 Cal. App. 4th 359 ........................................................................... 8, 14

*In re Chiron Corp. Securities Litigation*
 (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 ................ 13

*Independent Federation of Flight Attendants v. Zipes*
 (1989) 491 U.S. 754 ............................................................................................. 11

*Jensen v. BMW of North America, Inc.*
 (1995) 35 Cal.App.4th 112 .................................................................................. 15

*Ketchum v. Moses*
 (2001) 24 Cal.4th 1122 ........................................................................... 12, 13, 14

*La Mesa-Spring Valley School Dist. v. Otsuka*
   (1962) 57 Cal.2d 309 ............................................................................................... 10

*Los Angeles Police Protective League v. City of Los Angeles*
   (1986) 188 Cal.App.3d 1 ........................................................................................ 8

*Mandel v. Lackner*
   (1979) 92 Cal.App.3d 747 ...................................................................................... 6

*Molski v. Arclero Wine Group*
   (2008) 164 Cal.App.4th 786 ................................................................................. 10

*PLCM Group v. Drexler*
   (2000) 22 Cal.4th 1084 .................................................................................... 8, 12

*Reveles v. Toyota by the Bay*
   (1997) 57 Cal.App.4th 1139 ................................................................................... 6

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
   (2006) 144 Cal.App.4th 785 ............................................................ 6, 7, 8, 11, 12, 13

*Serrano v. Priest*
   (1977) 20 Cal.3d 25 .............................................................................................. 12

*Serrano v. Unruh*
   (1982) 32 Cal.3d 621 ........................................................................................... 6, 8

*Vo v. Las Virgenes Municipal Water District*
   (2000) 79 Cal.App.4th 440 ................................................................................... 12

**Statutes and Codes**

California Civil Code
   Section 1790, *et seq.* ............................................................................................... 2
   Section 1794(d) ................................................................................ 2, 6, 7, 13, 15

California Code of Civil Procedure
   Section 998 ........................................................................................................ 4, 5

United States Code
   Title 42 Section 1988 ............................................................................................ 11

**Other Authorities**

Pearl, <u>California Attorney Fee Awards</u> (2nd Ed. 2005) ................................................ 6

Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973) ..................................................... 11

# I. INTRODUCTION

This case is about Defendant Ford Motor Company's ("Defendant" or "Ford") policy of taking advantage of California consumers, and Plaintiff Timothy D. Murphy's ("Plaintiff") nearly two-year long battle to vindicate his rights.

Plaintiff leased a new 2013 Ford Fiesta on or about December 28, 2012. For the eighteen months that followed, Plaintiff suffered through ongoing problems with the transmission. Plaintiff sought maintenance on these issues at least three times. Frustrated, Plaintiff contacted Ford's customer service on June 24, 2015, seeking vehicle reimbursement. Instead of complying with its legal obligations, Ford applied its tried and true internal policy of rejecting its Song-Beverly Consumer Warranty Act ("Song-Beverly Act") obligations and refused to help Plaintiff. Initially Ford made a business decision that by essentially just saying no, the vast-majority of consumers would just go away and Ford would save money. Without any other recourse, Plaintiff hired Knight Law Group on a contingency basis. Knowing that Ford had willfully violated Plaintiff's rights and that Ford had already rejected informal resolution, Knight Law Group was forced to file this case.

After almost two years of litigation, the parties agreed to settle the matter in the amount of $75,000.00. The final settlement is more than **four times** the gross capitalized cost of the vehicle in what defense routinely calls a "simple lemon law" action. Plaintiff obtained this extraordinary sum, *without going to trial* and Ford could have avoided this lawsuit completely had it only gave Plaintiff a vehicle reimbursement for the defective automobile on day one. By any analysis, Plaintiff achieved a superlative settlement, particularly given Ford's summary rejection of Plaintiff's request for vehicle reimbursement under the Song-Beverly Act. This is a settlement that few, if any, firms in this state could achieve for its clients. The excellent result was achieved due to Plaintiff's attorneys' skill and expertise in lemon law cases. It has been developed and honed over the course of many years of advocating on behalf of consumers and their rights under California law. Arguably, the biggest factor in Plaintiff being offered nothing, versus the $75,000.00 settlement secured by Plaintiff's attorneys on his behalf, is the knowledgeable approach

1  they took to this case.

2         The Song-Beverly Act, Civil Code sections 1790, *et seq.*, entitles Plaintiff to seek
3  reasonable attorney's fees, costs and expenses from Ford. Moreover, pursuant to the parties'
4  settlement agreement Plaintiff is the prevailing party and entitled to this noticed motion for
5  attorney's fees. Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to Civil
6  Code section 1794(d) under the "lodestar" method in the amount of $111,480.00, (2) for a modest
7  "lodestar" modifier of 1.5 in the amount of $55,740.00 and (3) to award actual costs and expenses
8  incurred in the amount of $14,787.21. (Civ. Code § 1794(d).) Plaintiff requests a total of
9  $182,007.21 in attorney's fees, costs and expenses. (Declaration of Steve Mikhov ("SM Dec.") ¶
10 2, Exs. A-B; Declaration of Richard M. Wirtz ("RW Dec.") ¶ 8, Ex. A.)

11               **II.    STATEMENT OF FACTS**

12        Plaintiff leased a new 2013 Ford Fiesta on December 28, 2012, with a gross capitalized cost
13 of $18,265.00. (SM Dec. ¶ 3, Ex. C.) The vehicle was distributed by Ford Motor Company
14 (hereafter "Defendant" or "Ford"), which provided an express written warranty. (*Id.*)
15        After seven months and less than 6,500 miles, and well within the applicable express
16 warranty periods, the vehicle began exhibiting serious transmission problems. (SM Dec. ¶ 4.)
17 Plaintiff brought the vehicle into a Ford-authorized repair facility because the transmission
18 shuddered on the upshifts and in reverse. (*Id.*) The repair facility reprogrammed the transmission
19 control module ("TCM") and power control module ("PCM"). (*Id.*) Five months later, Plaintiff
20 brought the vehicle back in for repair because of continued transmission problems. (*Id.*) The Ford-
21 authorized repair facility again attempted to correct these problems. (*Id.*) Six months later the
22 vehicle was brought into the Ford-authorized facility for continued serious transmission problems.
23 (*Id.*) The transmission was hesitating on acceleration and felt like it was slipping. (SM Dec. ¶ 4)
24 The repair facility attempted to correct these problems by verifying the latest calibration for the
25 TCM and PCM, replacing the clutch and the seal. (*Id.*) Plaintiff brought the vehicle in for repair
26 three (3) times in less than eighteen months, but the serious transmission problem persisted. (*Id.*)
27        Frustrated, Plaintiff contacted Ford's customer service on or about June 24, 2015, seeking

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

vehicle reimbursement of the defective vehicle. (SM Dec., ¶ 5.) Ford denied Plaintiff's request. (*Id.*)

Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. (SM Dec., ¶ 6.) At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a warranty repair history database called "AWS" as they are reported. (*Id.*) These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work. (*Id.*)

With no other recourse, Plaintiff contacted Knight Law Group LLP (hereafter "Knight Law," formerly known as O'Connor & Mikhov, LLP) and told the firm about the problems with the vehicle and the way Ford treated him. (SM Dec., ¶ 7.) After review of the repair history and discussions with Plaintiff, the firm agreed to represent him and bear the risk associated with litigating the case on a fully contingent basis. (*Id.*) Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. (*Id.*) In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand. (*Id.*)

As a result of Ford's failure to acknowledge the defective nature of the vehicle and failure to reimburse him, Plaintiff filed his complaint in this action on November 20, 2015, alleging violations of the Song-Beverly Act and seeking civil penalties and damages. (SM Dec., ¶ 8.) On or about December 14, 2015, Ford filed its answer denying all liability. (SM Dec., ¶ 9.) Simultaneously, Defendant filed a Petition for Coordination of Add-On Cases. (SM Dec., ¶ 10.) On January 29, 2016, Plaintiff filed a Motion for Leave to Amend Complaint. (SM Dec., ¶ 11.) Ford filed an Opposition to Plaintiff's Motion for Leave to Amend. (*Id.*) On April 18, 2016, Plaintiff filed First Amended Complaint alleging intentional misrepresentation, negligent

misrepresentation, concealment, fraud and violations of the Song-Beverly Act and seeking civil penalties and punitive damages. (SM Dec., ¶ 12.)

On or about April 29, 2016, Ford filed its answer to the First Amended Complaint denying all liability. (SM Dec., ¶ 13.) Also, Ford propounded Sets One and Two of Requests for Production of Documents, Special Interrogatories, Requests for Admissions, and Form Interrogatories upon Plaintiff. (*Id.*) Plaintiff benefited from Knight Law's expertise and experience insofar as <u>just 8.9 hours were billed for drafting responses to the entirety of these two sets of discovery</u>. (*Id.*)

Plaintiff's written discovery was drafted and served on Defendant on September 1, 2016, consisting of 41 Requests for Admissions, 89 Requests for Production of Documents, 79 Special Interrogatories and 28 Form Interrogatories. (SM Dec., ¶ 14.) Plaintiff benefited from Knight Law's expertise and experience in litigating against Ford insofar as just 3.8 hours were billed to draft the entirety of this discovery. (*Id.*) Plaintiff's counsel is able to use existing files as templates to conserve time and litigate efficiently. (*Id.*) Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here. (*Id.*)

On or about December 19, 2016, Ford served Plaintiff with an Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer"), in the amount of $33,001.00. (SM Dec., ¶ 15.) The 998 Offer was fatally vague, ambiguous, uncertain and incomplete as it failed to contain an express good faith and reasonable offer component, among several other deficiencies. (*Id.*) As such, given its multiple infirmities, Plaintiff rejected the 998 Offer. (*Id.*)

On or about December 28, 2016, Plaintiff's counsel prepared for and attended Plaintiff's Deposition. (SM Dec., ¶ 16.) On March 10, 2017, Plaintiff noticed the deposition of Ford's PMK. (SM Dec., ¶ 17.) Plaintiff's counsel prepared for and attended the deposition on March 22, 2017; however Ford's PMK failed to appear at the deposition. (*Id.*) On March 28, 2017, Plaintiff's counsel prepared for, traveled to and attended court for a continuance on the trial date. (SM Dec., ¶ 18.) In April 2017, Plaintiff noticed the depositions of numerous Ford employees, including Ford's

PMQ. (SM Dec., ¶ 19.) On or about June 13, 2017, Plaintiff's counsel prepared for and attended three depositions of Ford's employees. (SM Dec., ¶ 20.) On July 12, 2017, Plaintiff's counsel prepared for and attended another three depositions of Ford's employees. (SM Dec., ¶ 21.)

On August 7, 2017, Ford served Plaintiff with an Amended Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("Amended 998 Offer"), in the amount of $34,250.00. (SM Dec., ¶ 22.) Plaintiff rejected the inadequate Amended 998 Offer. (*Id.*) On or about September 1, 2017, Ford filed a Motion for Summary Adjudication. (SM Dec., ¶ 23.) On September 7, 2017, Plaintiff filed an Opposition to the Motion for Summary Adjudication. (*Id.*) The Court denied the Motion for Summary Adjudication on or about October 11, 2017. (*Id.*)

By September 2017, the case appeared likely to go to trial. (SM Dec., ¶ 24.) Accordingly, on or about September 14, 2017 Richard Wirtz of Wirtz Law formally associated into the case as lead counsel to prepare the case for trial. (*Id.*) Plaintiff's counsel prepared for trial by drafting fourteen (14) Motions in Limine. (RW Dec., ¶ 13.) In October, Plaintiff's counsel drafted the Mandatory Settlement Conference Statement and prepared the Plaintiff's Civil Trial Conference documents, including a witness list, statement of the case and trial briefs. (RW Dec., ¶ 12.) On October 13, 2017, Plaintiff's counsel prepared for and attended the Mandatory Settlement Conference. (SM Dec., ¶ 25.) On October 20, 2017, Plaintiff's counsel prepared for and attended the trial conference hearing. (RW Dec., ¶ 14.)

On or about October 18, 2017, Ford served Plaintiff with a Second Amended Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("Second Amended 998 Offer"), in the amount of $34,250.00. (SM Dec., ¶ 26.) Plaintiff rejected the inadequate Second Amended 998 Offer. (*Id.*)

As the trial date approached, Plaintiff's counsel filed Plaintiff's Oppositions to Defendant's Motion in Limines, and prepared additional trial documents, such as jury instructions, special verdict forms and the timeline exhibit. (RW Dec., ¶ 15.) On October 30, 2017, Plaintiff's counsel continued to prepare for trial, including meeting with the Plaintiff, traveling to, and attending the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

first day of trial. (RW Dec., ¶ 16.) The day the jury trial was scheduled to begin, Plaintiff and Ford settled this case for $75,000.00. (SM Dec., ¶ 27.)

Plaintiff, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiff's attorney's fees by Ford but was forced to file this Motion with the court. (SM Dec., ¶ 28.)

### III. ARGUMENT AND ANALYSIS

#### A. Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action

Pursuant to the agreement, Plaintiff is the prevailing party in this action and, under the Song-Beverly Act, entitled to recoup all reasonable attorney's fees, costs and expenses as the prevailing party. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances" that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, California Attorney Fee Awards, at §§ 12.14A, 12.33 (2nd Ed. 2005).)

In prosecuting this case, the efforts of Knight Law and Wirtz Law amount to $111,480.00, including drafting this motion and time anticipated to be spent preparing the reply and attending the hearing. (SM Dec., ¶ 2, Ex. A; RW Dec., ¶ 8, Ex. A.) Plaintiff's counsel also requests a modest 1.5 enhancement, in the amount of $55,740.00, to account for the delay in payment and contingent risk posed by this case. Lastly, the reimbursable costs and expenses set forth in Plaintiff's memoranda of costs are $14,787.21. (SM Dec., ¶ 2, Ex. B) In total, Plaintiff requests $182,007.21. (SM Dec., ¶ 2, Exs. A-B; RW Dec., ¶ 8, Ex. A.)

#### B. The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable

The Court of Appeal has expressly held the lodestar method applies to determining attorney's fees under the Song-Beverly Act. (*Robertson v. Fleetwood Travel Trailers of*

*California, Inc.* (2006) 144 Cal.App.4th 785, 817.) The calculation of reasonable attorney's fees under the Song-Beverly Act is based on the lodestar method, which entails multiplying the number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th 817.) The prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and "reasonable in amount." (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470.) In making such an evaluation, a court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." (*Id.*)

In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under the Song-Beverly Act. (4 Cal.App.5th at 464.) The court also found plaintiff's counsel's hourly rate of $575 per hour was reasonable as supported by exhibits to counsel's declaration indicating various state and federal courts had previously awarded him comparable hourly rates. (*Goglin, supra,* 4 Cal.App.5th at 464.) The trial court was not obliged to consider that defendants paid their counsel a much lower hourly rate. (*Id.* at 474.)

In *Robertson*, the court observed a prevailing buyer is entitled to an award of reasonable attorney's fees for time reasonably expended by his attorney. (*Robertson, supra,* 144 Cal.App.4th at 817.) The court ruled the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." (*Robertson, supra,* 144 Cal.App.4th at 819.) Indeed, in *Robertson*, the trial court awarded $231,187.45 in fees based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for the attorney's fee motion. (*Id.* at 817.) The appellate court upheld the trial court's ruling. (*Id.* at 822.)

In *Graciano*, the trial court initially rejected plaintiff's lodestar fees of $109,468.50 and request for a multiplier of 2.0. In particular, the trial court reduced the plaintiff's attorney's hourly rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for

expert testimony. Plaintiff appealed the court's decision and, in particular, the hourly rate reduction. The appellate court reversed, reasoning that a court should determine the prevailing rate in the community for comparable professional legal services. (*Graciano, supra,* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).) The court found that plaintiff's un-rebutted declarations established the proper hourly rate at $350, and reducing that rate to $250 was an abuse of discretion. (*Id.*) The court also reaffirmed attorney's fees <u>are not limited to a proportion</u> of the recovery. (*Id.* at 164.) On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee award of over $380,000. The attorney from *Graciano*, Hallen D. Rosner, now charges $620/hour. (SM Dec., ¶ 45 (a).)

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are *also entitled* to recover their fees for the time spent preparing fee applications such as this one. (*Serrano v. Unruh, supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

The hourly rates should be considered in the context of the rates charged by Plaintiff's attorneys in the metropolitan community in which they practice, as opposed to the case venue. In *Horsford v. Bd. of Trustees of Cal. State Univ.,* the trial court was reversed for refusing to award the higher rates to San Francisco-based attorneys who litigated a FEHA case in Fresno. (*Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 399.) The law "requires that the *financial incentives be adjusted to attract attorneys* who are sufficient to the cause." (*Id.*) "In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market rate." (*Id.*) Plaintiff's attorneys' hourly rates should not vary depending on the venue of the lawsuit. The skill and experience of Ford's attorneys does not change from venue to venue and Plaintiff's counsel deserves to be compensated at the same rate they would receive given the same quantity and quality of work they must perform regardless of the venue.

Consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 34-43), (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 45), (iii) over three dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (*Id.*, ¶¶ 47-91, Exs. D-VV) and (iv) a National Survey further supporting the reasonableness of hourly rates. (RW Dec., ¶ 9, Ex. B). Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.

### 1. The Nature and Complexity of the Litigation Support the Attorney's Fees Requested

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case. (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.) Ford will likely claim that "this is a simple lemon law case," and therefore Plaintiff's fee request is unjustified. However, this case required a range of specialized knowledge including: (1) an understanding of the full scope of consumer protection laws, which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations. (SM Dec., ¶ 94.) This case involves fraud allegations based on Ford's ongoing misrepresentations regarding the PowerShift Transmission's performance, which was the defective condition of the subject vehicle under the Song-Beverly Act. Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Plaintiff here.

Moreover, Ford made this matter even more complex by maintaining it had no liability and declining to submit any reasonable offers to settle the matter for almost two years, while compelling Plaintiff's counsel to litigate this matter. Prior to commencing litigation, Plaintiff first sought relief by requesting vehicle reimbursement from Ford, which Ford rejected. Ford should have acknowledged the well-known defects in Plaintiff's vehicle and resolved the matter before

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

this case was ever filed.  Instead, Ford engaged in expensive litigation, forcing trial counsel to expend numerous hours working up and litigating the case.  Ford easily could have resolved this matter earlier and saved thousands in attorney's fees, costs and expenses.  Ford ultimately came around to doing the right thing, but not before causing substantial fees to be incurred.

When Ford causes the entirety of fees to be incurred, it has no legitimate basis for complaining about the amount of attorney's fees reasonably and actually incurred, especially when Ford was given the opportunity to resolve the matter before a lawsuit was even filed.  "A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

### 2. The Firm's Skill Justifies the Amount of Attorney's Fees Sought

A trial court may also take into account the skill of the attorneys when determining reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309, 316.)  Despite the case's difficulties, Plaintiff ultimately recovered $75,000.00 in damages, which is more than four times the vehicle's gross capital cost.  The vehicle was no more or less defective on the date of settlement than it was when Plaintiff first requested reimbursement, so there is no rational explanation why Ford waged a legal battle only to settle for an amount that included civil penalties.

The final resolution is the direct result of skill and preparation by Plaintiff's attorneys, who specialize in consumer law and did not balk at Ford's aggressive litigation tactics.  Plaintiff's attorneys' experience in this area has enabled them to develop litigation strategies that are both highly effective and cost and time efficient.  Plaintiff's attorneys know the many nuances in these types of cases.  This specialized knowledge and experience in lemon law frequently achieves results better than attorneys who do not specialize in this specific area of law.  This experience provided a resolution to this matter far beyond that which Ford was previously willing to entertain.  Ford engages specialized attorneys from big firms, and Plaintiff needed skilled attorneys to prosecute his claims.  The biggest difference between Plaintiff getting zero and Plaintiff receiving a

$75,000.00 recovery was his attorneys' knowledge and expertise.

Counsels' skill is evidenced by the size of the settlement as well as the nominal time expended on litigation tasks, which results in lower overall billing. Plaintiff's attorneys do not spend inordinate time researching because they specialize in this area of law. (SM Dec., ¶ 95.) Nor do they spend unreasonable time preparing pleadings and other documents because they are able to use documents from other cases that need only be edited, rather than written from scratch. While substantial fees have been incurred, those fees result from the execution of effective strategies that typically result in superlative results for clients, like Plaintiff here.

On the other side, Ford is represented by large national firms with attorneys who specialize in representing automobile manufacturers in lemon law cases. Ford is a corporate behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney. Plaintiff required skilled and experienced attorneys to prosecute his claims against Ford and its formidable resources. Plaintiff's attorneys were well suited for this task.

### C. The Settlement Amount Does Not Limit the Attorney's Fee Recovery

Ford may argue that damages in the amount of $75,000.00 do not justify an attorney's fee award in the amount requested by Plaintiff. Such an argument is starkly against the weight of the law. The amount of attorney's fees *must not be tied to any percentage of recovery*. (*Graciano, supra,* 144 Cal.App.4th at 164.) In fact, a trial court may abuse its discretion if it applies a rule of proportionality to a fee award. The U.S. Supreme Court has previously considered the question of proportionality in attorney fee awards and held: "[w]e reject the proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights Plaintiff actually recovers." (*City of Riverside v. Rivera* (1986) 477 U.S. 561, 574; *see also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973) (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not a percentage of the recovery); *Robertson, supra,* 144 Cal.App.4th at 820; *Independent Federation of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under Magnuson-Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th at 468-69 (affirming award of $185,000 in fees and costs in a

-11-

Song-Beverly Act case that settled for $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 446 (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively litigious and took a non-settlement posture); *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407 (affirming award of approximately $1.1 million in fees where plaintiffs recovered $30,300).)

It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged that substantial work might be needed to prosecute such claims against large corporation, which is the reason behind the fee shifting provision of the Song-Beverly Act. (SM Dec., ¶ 93.) "The purpose of statutory attorney fee provisions is to provide financial incentives necessary for the private enforcement of important civil rights." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Thus, the Song-Beverly Act gives consumers the opportunity to seek legal redress even if their damages would not be high enough to warrant legal representation. The award of attorney's fees *cannot* be limited by the damages recovered by Plaintiff. Any argument by Ford to the contrary would be disingenuous, as the law is clear on this point. (*Ketchum, supra,* 24 Cal.4th at 1132)

### D. Plaintiff Should Be Granted a Lodestar Multiplier

As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier, sometimes referred to as an adjustment or enhancement. (*Robertson, supra,* 144 Cal.App.4th at 817.) Once a lodestar amount is determined, which involves a "careful compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Id.* at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III*)), the amount may then be augmented by taking various relevant factors into account, including: (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award. (*Id.*; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler,* 22 Cal.4th at 1096.) "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the

-12-
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).) "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on." (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.)

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." (144 Cal.App.4th at 819.) The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fees motion. (*Id.* at 817.) The appellate court held the trial court properly conducted a lodestar analysis and the award was not an abuse of discretion. (*Id.* at 822.) In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier for a total award of over $380,000. (*Graciano, supra,* 144 Cal.App.4th at 156.) The trial court had initially reduced plaintiff's request for fees down to $250/hour and rejected the 2.0 lodestar multiplier. (*Id.* at 147.) The court found the plaintiff's un-rebutted declarations established the proper hourly rate at $350, and reducing that rate to $250 was an abuse of discretion. (*Id.*) The court also reaffirmed attorney's fees are not limited to a proportion of the recovery. (*Id.* at 164.) Ford may argue a multiplier is not permitted, and cite to the *Ketchum* case to support that argument. To the contrary, *Ketchum* actually <u>confirms</u> the granting of a multiplier in contingency fee cases (*Ketchum, supra,* 24 Cal.4th at 1132.) A lodestar multiplier is in fact available and it has been awarded to Plaintiff's counsel in multiple, factually disparate, cases. (SM Dec., ¶¶ 62, 66, 75, 76, 78, 79, 83, 89, 90, 91 ; Exs. S, W, FF, GG, II, JJ, NN, TT, UU, VV.)

///

///

### 1. The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved. The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the risk of taking a case on a contingence basis, and delay in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.)

In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a *larger compensation* than would otherwise be reasonable." (24 Cal.4th at 1132 [emphasis added].)

> <u>A contingent fee must be higher than a fee for the same legal services paid as they are performed</u>. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.) <u>A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions</u>. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

(*Id.* at 1132 [citations omitted; emphasis added].)

Throughout the litigation, there always existed the real possibility Plaintiff would not prevail. The risk was further compounded by the fact that Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement. Thus, if Plaintiff did not prevail his, attorneys would have suffered a loss of numerous hours in uncompensated work and thousands of dollars in out-of-pocket expenses. Plaintiff requests a 0.2 enhancement based on that risk.

Further, Ford dragged this case out for almost two years before making an acceptable offer. Unlike Ford's attorneys, who are paid monthly regardless of outcome, Plaintiff's attorneys are not paid at all if they lose, and need to absorb significant delay in being paid if Plaintiff does win. On account of the delay in payment, Plaintiff requests a 0.3 enhancement.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Based on the risk of taking this case on a contingent fee basis and the delay in payment since November 20, 2015, Plaintiff requests a nominal multiplier of 1.5.

### E. Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action

Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount of costs <u>and expenses</u>. (Civ. Code § 1794(d) [emphasis added].) The California Legislature intended the word "expenses" to cover outlays not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative history demonstrates the Legislature exercised its power to permit recovery of a host of litigation expenditures beyond those permitted by Code of Civil Procedure § 1033.5. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

A verified memorandum of costs generally satisfies the moving party's burden of establishing costs were necessarily incurred. (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.) The verified memorandum of costs demonstrates what Plaintiff's attorneys incurred in costs and expenses prosecuting this matter, which counsel advanced on Plaintiff's behalf. (SM Dec. ¶ 2, Ex. B); Civ. Code § 1794(d). The burden shifts to Ford to properly rebut the claimed costs.

## IV. CONCLUSION

For the reasons above, Plaintiff respectfully requests this Honorable Court award attorney's fees, costs and expenses as follows:

| | |
|---|---|
| Lodestar Fees: | $ 111,480.00 |
| +Lodestar Enhancement: | $ 55,740.00 |
| Total Fees Requested: | $ 167,220.00 |
| +Costs and Expenses: | $ 14,787.21 |
| =Total Fees and Costs/Expenses: | $ 182,007.21 |

Dated: March 8, 2018

KNIGHT LAW GROUP, LLP

Steve Mikhov (SBN 224676)
Attorneys for Plaintiff,
TIMOTHY D. MURPHY

## PROOF OF SERVICE
### (Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1801 Century Park East, Suite 2300, Los Angeles, CA 90067.

I served the foregoing document described as:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

| | |
|---|---|
| Spencer Hugret, Esq.<br>GORDON & REES LLP<br>275 Battery Street, Ste. 2000<br>San Francisco, CA 94111<br>**Counsel for Defendant,**<br>**FORD MOTOR COMPANY** | Richard M. Wirtz, Esq.<br>WIRTZ LAW APC<br>4370 La Jolla Village Drive, Ste. 800<br>San Diego, CA 92122<br>**Associated Counsel for Plaintiff,**<br>**TIMOTHY D. MURPHY** |

XX  BY OVERNIGHT MAIL/DELIVERY: I caused such envelope to be delivered by hand to the office(s) of the addressee(s) via OVERNIGHT EXPRESS or by local courier service.

XX  BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 9, 2018 at Los Angeles, California.

_____
Elin Howard