**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**LAW OFFICES OF MICHAEL H. ROSENSTEIN**
Michael Rosenstein (SBN 169091)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
**LUIS CASTILLO**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

| | |
|---|---|
| LUIS CASTILLO,<br><br>                    Plaintiff,<br><br>        vs.<br><br>FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>                    Defendant. | Case No. MCC1600116<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**<br><br>[Filed concurrently with Plaintiff's Notice Of Motion and Motion For Attorney's Fees, Costs and Expenses; Declarations of Steve Mikhov and Michael H. Rosenstein]<br><br>*Assigned for All Purposes to the Honorable Angel M. Bermudez*<br><br>Date:  February 22, 2018<br>Time: 8:30 a.m.<br>Dept.: S302<br>Reservation ID: RES74230 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1
2

TABLE OF CONTENTS

Page(s)

3

I.    INTRODUCTION ........................................................................................1

4

II.   STATEMENT OF FACTS .........................................................................2

5

III.  ARGUMENT AND ANALYSIS ...............................................................6

6

    A.   Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this
7
         Action...........................................................................................................6

8

    B.   The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable...................7

9

         1.   The Nature and Complexity of the Litigation Support the
              Attorney's Fees Requested ..........................................................9

10

         2.   The Firm's Skill Justifies the Amount of Attorney's Fees
11
              Sought .............................................................................................10

12

    C.   The Settlement Amount Does Not Limit the Attorney's Fee Recovery ..........11

13

    D.   Plaintiff Should Be Granted a Lodestar Multiplier...........................................12

14

         1.   The Lodestar Multiplier Should Be Granted in Contingent
15
              Cases Due to Risk and Delay of Payment ...........................................14

16

    E.   Plaintiff is Entitled to Recover All Costs and Expenses Reasonably
17
         Incurred in Connection with this Action.............................................15

18

IV.   CONCLUSION............................................................................................15

19
20
21
22
23
24
25
26
27
28

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Cazares v. Saenz,*
(1989) 208 Cal.App.3d 279 ......................................................................................13

*City of Riverside v. Rivera*
(1986) 477 U.S. 561 ..................................................................................................11

*Dietrich v. Dietrich*
(1953) 41 Cal.2d 497 ..................................................................................................9

*En Palm, LLC v. Teitler*
(2008) 162 Cal.App.4th 770 .....................................................................................10

*Goglin v. BMW of North America, LLC*
(2016) 4 Cal.App.5th 462 .....................................................................................7, 12

*Graciano v. Robinson Ford Sales*
(2006) 144 Cal.App.4th 140 ......................................................................7, 8, 9, 11, 13

*Graham v. DaimlerChrysler Corp.*
(2004) 34 Cal.4th 553 ...........................................................................................6, 13

*Hadley v. Krepel*
(1985) 167 Cal.App.3d 677 ......................................................................................15

*Harman v. City and County of San Francisco*
(2007) 158 Cal.App.4th 407 .....................................................................................12

*Horsford v. Bd. of Trustees of Cal. State Univ.*
(2005) 132 Cal. App. 4th 359 ...............................................................................8, 14

*In re Chiron Corp. Securities Litigation*
(N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 .................13

*Independent Federation of Flight Attendants v. Zipes*
(1989) 491 U.S. 754 ................................................................................................12

*Jensen v. BMW of North America, Inc.*
(1995) 35 Cal.App.4th 112 .......................................................................................15

*Ketchum v. Moses,*
(2001) 24 Cal.4th 1122 ..................................................................................12, 13, 14

*La Mesa-Spring Valley School Dist. v. Otsuka*
  (1962) 57 Cal.2d 309 ......................................................................................10

*Los Angeles Police Protective League v. City of Los Angeles*
  (1986) 188 Cal.App.3d 1 ....................................................................................8

*Mandel v. Lackner*
  (1979) 92 Cal.App.3d 747 ..................................................................................6

*Molski v. Arclero Wine Group*
  (2008) 164 Cal.App.4th 786 ...........................................................................10

*PLCM Group v. Drexler, supra*
  (2000) 22 Cal.4th 1084 ...............................................................................8, 13

*Reveles v. Toyota by the Bay*
  (1997) 57 Cal.App.4th 1139 ..............................................................................6

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
  (2006) 144 Cal.App.4th 785 .............................................................7, 8, 12, 13

*Serrano v. Unruh,*
  (1982) 32 Cal.3d 621 ....................................................................................6, 8

*Serrano v. Priest*
  (1977) 20 Cal.3d 25 (Serrano III) ...................................................................12

*Vo v. Las Virgenes Municipal Water District*
  (2000) 79 Cal.App.4th 440 .............................................................................12

iii

1

<u>Statutes and Codes</u>

California Code of Civil Procedure
    Section 1032(a)(4) ........................................................................................................6

California Code of Civil Procedure
    Section 1033.5..............................................................................................................15

California Code of Civil Procedure
    Section 1794(d)..............................................................................................2, 6, 7, 13, 15

California Code Of Civil Procedure
    Section 998..................................................................................................................5, 14

United States Code
    Title 15, Section 2301 ..............................................................................................12

United States Code
    Title 42.........................................................................................................................11

<u>Other Authorities</u>

Pearl, *California Attorney Fee Awards*
    Sections 12.14A, 12.33 (2nd Ed. 2005)....................................................................6

Sen. Report No. 93-151,
    1st Sess., pp. 23 (1973).............................................................................................12

I.    **INTRODUCTION**

After sixteen months of litigation, the parties agreed to settle the matter in the amount of $135,000.00, consisting of a full refund of all monies paid towards the defective truck plus over $110,000 in civil penalties and/or punitive damages. <u>The final settlement is over **five times** the total amount Plaintiff paid for the vehicle in what defense routinely calls a "simple lemon law" action.</u> Plaintiff obtained this extraordinary sum, *without going to trial*. By any analysis, Plaintiff Luis Castillo ("Plaintiff") achieved an excellent settlement particularly given Defendant Ford Motor Company's ("Defendant" or "Ford") initial unsatisfactory buyback offer. This is a settlement that no other firm in this state could achieve for its clients. The result in this case was achieved because of Plaintiff's attorneys' skill and expertise in lemon law cases developed and honed over the course of many years of advocating on behalf of consumer rights. The biggest factor in Plaintiff receiving an unsatisfactory offer when he contacted Ford before this lawsuit versus a $135,000.00 settlement was his attorneys' knowledgeable approach to this case.

On or about August 27, 2011, Plaintiff purchased a new 2012 Ford Fiesta. Over the next four years, Plaintiff suffered through numerous transmission defects that caused the vehicle to jump or hesitate upon acceleration. Plaintiff sought maintenance for the vehicle's issues ten times throughout his ownership. Frustrated, Plaintiff contacted Ford customer service on or about October 7, 2015, seeking a buyback of the defective vehicle. Instead of complying with its legal obligations, Ford applied its tried and true internal policy of rejecting its Song-Beverly Consumer Warranty Act ("Song-Beverly Act") obligations and only making an inadequate offer to Plaintiff. Ford made a business decision that by essentially just saying no, or alternatively, offering an inadequate amount, the vast majority of consumers would just go away and Ford would save money. Without any other recourse, Plaintiff hired Knight Law Group, LLP (hereafter "Knight Law") on a contingency basis. Knowing that Ford had willfully violated Plaintiff's rights and that Ford had already rejected informal resolution, Knight Law was forced to file this case.

The Song-Beverly Act, Civil Code sections 1790, *et seq.*, entitles Plaintiff to seek reasonable attorney's fees, costs and expenses from Ford. Moreover, the parties' settlement

1

1 | agreement provides Plaintiff is the prevailing party and entitled to this noticed motion for
2 | attorney's fees.  Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to
3 | Civil Code section 1794(d) under the "lodestar" method in the amount of $84,446.25, (2) for a
4 | modest "lodestar" modifier of 1.5, in the amount of $42,223.13, and (3) to award actual costs and
5 | expenses incurred in the amount of $6,660.29.  (Civ. Code § 1794(d).)  Plaintiff requests a total
6 | of $133,329.67 in attorney's fees, costs and expenses.  (Declaration of Steve Mikhov ("SM
7 | Dec.") ¶ 2, Exs. A-B; Declaration of Michael H. Rosenstein ("MR Dec.") ¶ 10, Ex. A.)

8 | ## II.   STATEMENT OF FACTS

9 | Plaintiff purchased a new 2012 Ford Fiesta on August 27, 2011 for a purchase price of
10 | $17,500.00—adding taxes, fees, and service plans, the total purchase price was $24,007.58. (SM
11 | Dec., ¶ 3, Ex. C.)  The vehicle was distributed by Ford Motor Company, which provided an
12 | express written warranty.  (*Id.*)

13 | Within the applicable express warranty periods, the vehicle began exhibiting serious
14 | engine problems after only about 800 miles.  (SM Dec., ¶ 4.)

15 | First, Plaintiff brought the vehicle in for maintenance only days after purchasing it
16 | because the weather stripping on the left front door was pulling away.  (SM Dec., ¶ 5.)  After
17 | about 800 miles of driving the vehicle, Plaintiff brought the vehicle in twice for service because
18 | the transmission was grinding when placed in reverse, causing Ford to reprogram the PCM/TCM.
19 | (*Id.*)  About 10,000 miles later, Plaintiff brought the vehicle in again for brakes and transmission
20 | problems because the brake pedal felt spongy and the vehicle felt like it was rolling backwards
21 | on inclines.  (*Id.*)  Less than 7,000 miles later, Plaintiff brought the vehicle for engine issues as
22 | the car was exhibiting poor fuel economy.  (*Id.*)  Only 6,000 miles later, the vehicle was having
23 | problems with the transmission again, as the vehicle would jump or hesitate into gear at slow
24 | speeds or when accelerating from a stop, causing Ford to reprogram the PCM/TCM and perform
25 | an adaptive relearn.  (*Id.*)  Less than 4,000 miles later, the vehicle was still having problems with
26 | the transmission when accelerating from a stop.  (*Id.*)  Over the next 10,000 miles, Plaintiff
27 | brought the vehicle in for maintenance another three times for continued transmission problems,
28 | including for a recall that required reprogramming the PCM/TCM.  (*Id.*)

1    Ultimately, over a period of about four years and 37,000 miles of ownership, Plaintiff
2    presented his vehicle to a Ford-authorized repair facility a total of ten times, with all but two of
3    those visits specifically related to complaints with the transmission. (SM Dec., ¶ 6.)

4    Frustrated, concerned for his safety, and having lost confidence in Ford's ability to repair
5    the vehicle, Plaintiff contacted Ford customer service on or about October 7, 2015, seeking a
6    buyback of the defective vehicle. (SM Dec., ¶ 7.) On or about November 9, 2015, Plaintiff
7    received an inadequate offer for a partial buyback in the amount of $18,949.66, which Plaintiff
8    rejected. (*Id.*) Because Ford disregarded every opportunity to do right by its customer, Plaintiff
9    was forced to retain counsel and file suit. (*Id.*)

10   Plaintiff contacted Knight Law in early 2016 and told the firm about the problems with
11   his vehicle and the way Ford treated him. (SM Dec., ¶ 8.) After reviewing the repair history and
12   discussions with Plaintiff, Knight Law agreed to represent him and bear the risk of litigating the
13   case on a fully contingent basis. (*Id.*) Because Knight Law's compensation was purely
14   contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while
15   advancing thousands of dollars in costs and expenses on Plaintiff's behalf. (*Id.*) In taking on
16   this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company with
17   a virtually infinite litigation war-chest that wages a battle of attrition that most firms cannot
18   withstand. (*Id.*)

19   First, as a result of Ford's failure to repurchase Plaintiff's vehicle, Plaintiff filed his
20   complaint in this action on or about February 9, 2016, alleging violations of the Song-Beverly
21   Act, fraudulent concealment, intentional misrepresentation and negligent misrepresentation, and
22   seeking civil penalties and punitive damages. (SM Dec., ¶ 9.) The 27-page complaint took just
23   1.2 hours to draft. (*Id.*) The firm was able to utilize existing templates that attorneys tailor for
24   case specific facts to reduce billing time. (*Id.*)

25   In March 2016, Ford filed a Petition for Coordination of Add-On Cases to coordinate this
26   case along with numerous other cases like it involving the involving Focus/Fiesta "DPS6" issues.
27   (SM Dec., ¶ 10.) As coordination would unduly delay resolution of the cases and lead to
28   substantial prejudice to clients who would be stuck driving defective vehicles, Plaintiff opposed

1   the Petition. (*Id.*) Again, Plaintiff's counsel billed efficiently since the time and costs incurred

2   in opposing the Petition were split amongst various cases that the Petition concerned. (*Id.*)

3   Ford's Petition was ultimately denied. (*Id.*)

4          Defendant demurred to the Complaint on or about April 20, 2016. Plaintiff opposed,

5   incurring very minimal time for these previously seen pleadings from Ford. (SM Dec., ¶ 11.)

6          In October 2016, Plaintiff propounded written discovery on Ford consisting of 46

7   Requests for Admissions, 92 Requests for Production of Documents, 88 Special Interrogatories

8   and Form Interrogatories. (SM Dec., ¶ 12.) In drafting this discovery, Plaintiff benefited from

9   Knight Law's expertise and experience in litigating against Ford insofar as just 4.3 hours were

10  billed to review the file and draft the entirety of this discovery. (*Id.*) Plaintiff's counsel is able

11  to use existing files as templates to conserve time and litigate efficiently. (*Id.*) Written discovery

12  of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' vast

13  knowledge, experience and specialized expertise, would have taken multitudes of the time

14  expediently managed here. (*Id.*) Ford provided responses to these discovery requests on or about

15  November 14, 2016. (*Id.*)

16         Meanwhile, in October 2016, Ford launched the first phase of its aggressive written

17  discovery campaign by serving Requests for Production of Documents, Special Interrogatories,

18  Requests for Admissions, and Form Interrogatories. (SM Dec., ¶ 13.) Plaintiff supplied verified

19  responses to the discovery on or about October 25, 2016. (*Id.*) Prior to this, on or about

20  September 22, 2016, Ford served a notice for Plaintiff's deposition, in addition to making a

21  demand for a vehicle inspection. (*Id.*) Ford's counsel ultimately deposed Plaintiff on or about

22  February 23, 2017. (*Id.*)

23         Due to Defendant's improper objections and/or incomplete and evasive responses to

24  Plaintiff's discovery, Plaintiff began meet and confer efforts, including written communication,

25  on or about December 20, 2016. (SM Dec., ¶ 14.) Plaintiff ultimately filed a motion to compel

26  Request for Production responses in January 2017, and Ford filed its opposition to such motion

27  on or about February 27, 2017. (*Id.*) The Court ruled on the motion in favor of Plaintiff on or

28  about March 6, 2017. (*Id.*)

1    On or about November 30, 2016, the parties attended a mediation to discuss this case and
2    fifteen others like it. (SM Dec., ¶ 15.) The case did not resolve at that time. (*Id.*) Only .3 hours
3    were billed to this case to attend the all-day mediation. (*Id.*) On January 26, 2017, Ford finally
4    filed its answer to Plaintiff's Complaint—*denying all liability*. (*Id.*)

5    In February 2017, Plaintiff noticed the deposition Ford's Person Most Knowledgeable
6    ("PMK"), Raceway Ford's Person Most Qualified ("PMQ"), Gosch Ford Temecula's PMQ,
7    Gosch Ford Hemet's PMQ, in addition to other dealership personnel such as service advisors and
8    technicians. (SM Dec., ¶ 16.) In March 2017, Plaintiff designated experts Darrel Blasjo and Dr.
9    Barbara Luna, in addition to drafting multiple amended notices of deposition. (SM Dec., ¶ 17.)

10    Considering Defendant's aggressive litigation of this case and the lack of *any* meaningful
11    offer by Ford to settle, the case appeared likely to go to trial. (SM Dec., ¶ 18.) On or about
12    March 6, 2017, the Law Offices of Michael H. Rosenstein was formally associated into the case
13    to serve as lead trial counsel and prepare the case for trial. (*Id.*)

14    On or about March 17, 2017, Ford served a statutory offer to compromise under Code of
15    Civil Procedure § 998 for $90,000. (SM Dec., ¶ 19.) Given Plaintiff's attorney's experience
16    with Ford's litigation tactics, Plaintiff formally objected to Ford's 998 Offer on or about April
17    19, 2017. (*Id.*)

18    On or about March 25, 2017 and March 28, 2017, Plaintiff's counsel prepared for and
19    attended six depositions, including those of Gosch Ford Hemet's PMQ and personnel, and Gosch
20    Ford Temecula's personnel. (SM Dec., ¶ 20.)

21    On or about April 19, 2017, the parties attended another mediation to discuss this case
22    and forty-nine others like it. (SM Dec., ¶ 21.) The case did not resolve at this time either. (*Id.*)
23    Only .2 hours were billed to this case to attend the all-day mediation. (*Id.*)

24    On or about April 21, 2017, Plaintiff's counsel attended the Mandatory Settlement
25    Conference. (MR Dec., ¶ 4.) Meanwhile, the case continued to proceed toward trial, requiring
26    Plaintiff's counsel to file 15 motions *in limine*, oppose Defendant's own 15 motions *in limine*,
27    draft amended trial subpoenas and other documents in preparation of trial. (SM Dec., ¶ 22; MR
28    Dec., ¶ 5.)

1   On June 9, 2017, after over sixteen months of litigation, the parties reached a settlement

2   in the amount of $135,000.00. (SM Dec., ¶ 23.) This settlement amount was inclusive of a full

3   statutory "buy-back" of Plaintiff's defective vehicle, incidental and consequential damages, and

4   a civil penalty. (*Id.*) A Notice of Settlement was filed on or about June 13, 2017. (*Id.*)

5   Prior to filing this motion, Plaintiff entered into negotiations with Ford to settle the

6   amount of attorney's fees. (SM Dec., ¶ 24.) After months and months of unsuccessful back and

7   forths, counsel had no other avenue but to file this motion. (*Id.*)

8   ### III.    ARGUMENT AND ANALYSIS

9   **A.    Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action**

10   Pursuant to the terms of the parties' settlement, Plaintiff is the prevailing party in this

11   action and, under the Song-Beverly Act, entitled to recoup all reasonable attorney's fees, costs

12   and expenses as the prevailing party. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d);

13   *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay*

14   (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the

15   prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed

16   to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours

17   actually spent, absent a showing of "special circumstances" that would render such an award

18   unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is

19   entitled to a presumption of reasonableness); Pearl, California Attorney Fee Awards, at §§

20   12.14A, 12.33 (2nd Ed. 2005.)

21   In prosecuting this case, the efforts of Knight Law and the Law Offices of Michael H.

22   Rosenstein amount to $84,446.25, including drafting this motion and time anticipated to be spent

23   preparing the reply and attending the hearing. (SM Dec., ¶ 2, Ex. A.; MR Dec., ¶ 10, Ex. A.)

24   Plaintiff's counsel also requests a modest 1.5 enhancement, in the amount of $42,223.13, to

25   account for the delay in payment and contingent risk posed by this case. Lastly, the reimbursable

26   costs and expenses set forth in Plaintiff's memorandum of costs are $6,660.29. (SM Dec., ¶ 2,

27   Ex. B.) In total, Plaintiff requests $133,329.67. (SM Dec., ¶ 2, Exs. A-B; MR Dec., ¶ 10, Ex. A.)

28

**B.    The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable**

1

2    The Court of Appeal has expressly held the lodestar method applies to determining

3    attorney's fees under the Song-Beverly Act.  (*Robertson v. Fleetwood Travel Trailers of*

4    *California, Inc.* (2006) 144 Cal.App.4th 785, 817.) The calculation of reasonable attorney's fees

5    under the Song-Beverly Act is based on the lodestar method, which entails multiplying the

6    number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford*

7    *Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.)   The

8    prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably

9    necessary to the conduct of the litigation," and "reasonable in amount." (*Goglin v. BMW of North*

10   *America, LLC* (2016) 4 Cal.App.5th 462, 470.)  In making such an evaluation, a court may

11   consider "factors such as the complexity of the case and procedural demands, the skill exhibited

12   and the results achieved." (*Id.*)

13   In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over

14   $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under

15   the Song-Beverly Act. (4 Cal.App.5th at 464.) The court also found plaintiff's counsel's hourly

16   rate of $575 per hour was reasonable as supported by exhibits to counsel's declaration indicating

17   various state and federal courts had previously awarded him comparable hourly rates. (*Id.* at

18   473-74.)  The trial court was not obliged to consider that defendants paid their counsel a much

19   lower hourly rate. (*Id.* at 474.)

20   In *Robertson*, the court observed a prevailing buyer is entitled to an award of reasonable

21   attorney's fees for time reasonably expended by his attorney.   (*Robertson, supra,* 144

22   Cal.App.4th at 817.)  The court ruled the "statutory language in section 1794(d) is reasonably

23   compatible with a lodestar adjustment method of calculating attorney fees, including use of fee

24   multipliers." (*Id.* at 819.)  Indeed, in *Robertson*, the trial court awarded $231,187.45 in fees

25   based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75,

26   and $13,566.70 for the attorney's fee motion. (*Id.* at 817.)  The appellate court upheld the trial

27   court's ruling. (*Id.* at 822.)

28   In *Graciano*, the trial court initially rejected plaintiff's lodestar fees of $109,468.50 and

7

request for a multiplier of 2.0.  In particular, the trial court reduced the plaintiff's attorney's hourly rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for expert testimony.  Plaintiff appealed the court's decision and in particular the hourly rate reduction.  The appellate court reversed, reasoning a court should determine the prevailing rate in the community for comparable professional legal services. (*Graciano, supra,* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).)  The court found the plaintiff's unrebutted declarations established the proper hourly rate at $350, and reducing that rate to $250 was an abuse of discretion.  (*Id.*)  The court also reaffirmed attorney's fees <u>are not limited to a proportion</u> of the recovery.  (*Id.* at 164.)  On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee award of over $380,000.  The attorney from *Graciano,* Hallen D. Rosner, now charges $620/hour. (SM Dec., ¶ 42 (a).)

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees *are also entitled* to recover their fees for the time spent preparing fee applications such as this one.  (*Serrano v. Unruh, supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

The hourly rates should be considered in the context of the rates charged by Plaintiff's attorneys in the metropolitan community in which they practice, as opposed to the case venue. In *Horsford v. Bd. of Trustees of Cal. State Univ.,* the trial court was reversed for refusing to award the higher rates to San Francisco-based attorneys who litigated a FEHA case in Fresno. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 399.)  The law "requires that the *financial incentives be adjusted to attract attorneys* who are sufficient to the cause. *Id.*  In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market rate." *Id.*  Plaintiff's attorneys' hourly rates should not vary depending on the venue of the lawsuit. The skill and experience of Ford's attorneys does not change from venue to venue and Plaintiff's counsel deserves to be compensated at the same rate they would receive given the

1   same quantity and quality of work they must perform regardless of the venue.

2       Consideration of the "lodestar" factors compels an award of attorney's fees based on (i)

3   the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 27-40),

4   (ii) a survey of rates charged by other well-known consumer law attorneys (*Id.*, ¶ 42), (iii) over

5   three dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and

6   time billed in other Song-Beverly Act cases (*Id.*, ¶¶ 44-86, Exs. D-TT), and (iv) a National Survey

7   further supporting the reasonableness of the hourly rates. (MR Dec., ¶ 11, Ex. B, at p. 42-45.)

8   Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar

9   experience in this area of law.

10              1.   <u>The Nature and Complexity of the Litigation Support the Attorney's</u>
11                   <u>Fees Requested</u>

12      Determining the amount of reasonable attorney's fees may involve consideration of the

13  nature and complexity of the case. (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano,*

14  *supra,* 144 Cal.App.4th at 147.)

15      Ford will likely claim that "this is a simple lemon law case," and therefore Plaintiff's-fee

16  request is unjustified.  However, this case required a range of specialized knowledge: (1) an

17  understanding of the full scope of consumer protection laws, which are highly nuanced; (2)

18  knowledge of the intricacies of automobiles and the lexicon associated with them, as well as

19  knowledge concerning how to investigate issues with automobiles; and (3) knowledge auto

20  manufacturers' and dealers' policies and protocols for repairing vehicles and complying with

21  their legal obligations.  (SM Dec., ¶ 89.)  This case also involves fraud allegations based on

22  Ford's ongoing misrepresentations regarding DPS6 transmissions, which were inextricably

23  intertwined with the defective condition of the subject vehicle under the Song-Beverly Act.

24  Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience

25  typically results in significantly higher judgments or settlements for their clients, like Plaintiff

26  here.

27      Moreover, Ford made this matter even more complex by maintaining it had no liability

28  and declining to submit any reasonable offers to settle the matter for almost sixteen months, while

9

1  pursuing discovery with full force and compelling Plaintiff's counsel to litigate this matter

2  exhaustively. Prior to commencing litigation, Plaintiff first sought relief by requesting a buyback

3  from Ford, which it ignored and then only responded once it realized Plaintiff had hired counsel.

4  Ford should have acknowledged the well-known defects in Plaintiff's vehicle and resolved the

5  matter before this case was ever filed.  Ford ultimately did just that, but not before causing

6  substantial fees to be incurred.

7      Ford engaged in expensive litigation, including extensive written discovery, stone-

8  walling Plaintiff's discovery efforts, forcing Plaintiff to file a motion to compel, demurring to

9  the Complaint, and unsuccessfully petitioning for coordination of add-on cases.  Ford easily

10 could have resolved this matter earlier and saved tens of thousands in attorney's fees, costs and

11 expenses.

12     When Ford causes the entirety of fees to be incurred, it has no legitimate basis for

13 complaining about the amount of attorney's fees reasonably and actually incurred, especially

14 when Ford was given the opportunity to resolve the matter before a lawsuit was even filed.  "A

15 party cannot litigate tenaciously and then be heard to complain about the time necessarily spent

16 by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see*

17 *also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

18          2.     **The Firm's Skill Justifies the Amount of Attorney's Fees Sought**

19     A trial court may also take into account the skill of the attorneys when determining

20 reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309,

21 316.)  Despite the case's difficulties, Plaintiff ultimately recovered $135,000.00 in damages,

22 which is more than seven times the vehicle's purchase price.  The vehicle was no more or less

23 defective on the date of settlement than it was when Plaintiff first requested a repurchase, so there

24 is no rational explanation why Ford waged a lengthy and costly legal battle only to settle for an

25 amount that included civil penalties.

26     The final resolution is the direct result of skill and preparation by Plaintiff's attorneys,

27 who specialize in consumer law and did not balk at Ford's aggressive litigation tactics.  Plaintiff's

28 attorneys' experience in this area has enabled them to develop litigation strategies that are both

10

1   highly effective and cost and time efficient. Plaintiff's attorneys know the many nuances in these
2   types of cases. This specialized knowledge and experience in lemon law frequently achieves
3   results better than attorneys who do not specialize in this specific area of law. This experience
4   provided a resolution to this matter far beyond that which Ford was previously willing to
5   entertain. Ford engages specialized attorneys from big firms, and Plaintiff needed skilled
6   attorneys to prosecute his claims. The biggest difference between Plaintiff getting zero and
7   Plaintiff receiving a $135,000.00 recovery was his attorneys' knowledge and expertise.

8          Counsels' skill is evidenced by the size of the settlement as well as the nominal time
9   expended on litigation tasks, which results in lower overall billing. Plaintiff's attorneys do not
10  spend inordinate time researching because they specialize in this area of law. (SM Dec., ¶ 90.)
11  Nor do they spend unreasonable time preparing pleadings and other documents because they are
12  able to use documents from other cases that need only be edited, rather than written from scratch.
13  While substantial fees have been incurred, those fees result from the execution of effective
14  strategies that typically result in superlative results for clients, like Plaintiff here.

15         On the other side, Ford is represented by large national firms with attorneys who
16  specialize in representing automobile manufacturers in lemon law cases. Ford is a corporate
17  behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney.
18  Plaintiff required skilled and experienced attorneys to prosecute his claims against Ford and its
19  formidable resources.

20         **C.    The Settlement Amount Does Not Limit the Attorney's Fee Recovery**

21         Ford may argue that damages in the amount of $135,000.00 do not justify an attorney's
22  fee award in the amount requested by Plaintiff. Such an argument is starkly against the weight
23  of the law. The amount of attorney's fees *must not be tied to any percentage of recovery.*
24  (*Graciano, supra,* 144 Cal.App.4th at 164.) In fact, a trial court may abuse its discretion if it
25  applies a rule of proportionality to a fee award. The U.S. Supreme Court has previously
26  considered the question of proportionality in attorney fee awards and held: "[w]e reject the
27  proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate
28  to the amount of damages a civil rights Plaintiff actually recovers." (*City of Riverside v. Rivera*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1   (1986) 477 U.S. 561, 574; *see also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973)

2   (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not a

3   percentage of the recovery); *Robertson, supra,* 144 Cal.App.4th at 820; *Independent Federation*

4   *of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under Magnuson-

5   Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th at 468-69

6   (affirming award of $185,000 in fees and costs in a Song-Beverly Act case that settled for

7   $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 446

8   (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively

9   litigious and took a non-settlement posture); *Harman v. City and County of San Francisco* (2007)

10  158 Cal.App.4th 407 (affirming award of approximately $1.1 million in fees where plaintiffs

11  recovered $30,300).)

12          It is not uncommon for attorney's fees and costs to exceed the client's damages, although

13  that did not happen here because the settlement was so large and the fees were efficiently

14  incurred. The Legislature acknowledged that substantial work might be needed to prosecute such

15  claims against large corporation, which is the reason behind the fee shifting provision of the

16  Song-Beverly Act. (SM Dec., ¶ 88.) "The purpose of statutory attorney fee provisions is to

17  provide financial incentives necessary for the private enforcement of important civil rights."

18  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Thus, the Song-Beverly Act gives consumers

19  the opportunity to seek legal redress even if their damages would not be high enough to warrant

20  legal representation. The award of attorney's fees *cannot* be limited by the damages recovered

21  by Plaintiff. Any argument by Ford to the contrary would be disingenuous, as the law is clear on

22  this point. (*Ketchum, supra,* 24 Cal.4th at 1132.)

23          **D.      Plaintiff Should Be Granted a Lodestar Multiplier**

24          As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier,

25  sometimes referred to as an adjustment or enhancement. (*Robertson, supra,* 144 Cal.App.4th at

26  817.) Once a lodestar amount is determined, which involves a "careful compilation of the actual

27  time spent and reasonable hourly compensation for each attorney," (*Id.* at 819 (*citing Serrano v.*

28  *Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III*)), the amount may then be augmented by taking

12

1   various relevant factors into account, including (1) the novelty and difficulty of the questions
2   involved and the skill displayed in presenting them; (2) the extent to which the nature of the
3   litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee
4   award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the
5   award. (*Id.*; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler*, 22 Cal.4th at
6   1096.) "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the
7   prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum,*
8   *supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone
9   justifies a 2.0 multiplier for a 50% chance of prevailing).)  "A 50 percent chance of recovery
10  implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on."
11  (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007
12  WL 4249902, *9.)

13       In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the
14  "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment
15  method of calculating attorney fees, including use of fee multipliers." (144 Cal.App.4th at 819.)
16  The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred
17  through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in
18  preparing the fees motion.  (*Id.* at 817.)  The appellate court held the trial court properly
19  conducted a lodestar analysis and the award was not an abuse of discretion. (*Id.* at 822.)

20       In *Graciano*, the appellate court actually *increased* the trial court's award of fees after
21  finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier
22  for a total award of over $380,000.  (144 Cal.App.4th at 156.)  The court also reaffirmed
23  attorney's fees are not limited to a proportion of the recovery. (*Id.* at 164.)

24       Ford may argue a multiplier is not permitted, and cite to the *Ketchum* case to support
25  that argument. To the contrary, *Ketchum* actually <u>confirms</u> the granting of a multiplier in
26  contingency fee cases. (*Ketchum, supra,* 24 Cal.4th at 1132.)  A lodestar multiplier is in fact
27  available and it has been awarded to Plaintiff's counsel in several cases. (*See* SM Dec., ¶¶ 44-
28  86, Exs. D-TT.)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1.   **The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment**

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved.  The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the risk of taking a case on a contingency basis, and delay in receiving payment. (*Horsford, supra,* 132 Cal. App. 4th at 394-95.)

In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a *larger compensation* than would otherwise be reasonable."  (24 Cal.4th at 1132 [emphasis added].)

> A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.  The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.)  A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.

(*Id.* at 1132 [citations omitted; emphasis added].)

Throughout the litigation, there always existed the possibility Plaintiff would not prevail. The risk was further compounded by the fact that Ford served a 998 offer that Plaintiff would have to "beat" for counsel to be compensated, on top of which Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement.  Thus, if Plaintiff did not prevail, his attorneys would have suffered a substantial loss of uncompensated attorney hours and thousands of dollars in out-of-pocket expenses.  Plaintiff requests a 0.2 enhancement based on that risk.

Further, Ford dragged this case out for nearly sixteen months before making an acceptable offer.  Unlike Ford's attorneys, who are paid monthly regardless of outcome, Plaintiff's attorneys are not paid at all if they lose, and need to absorb significant delay in being paid if Plaintiff does win.  On account of the substantial delay in payment, Plaintiff requests a 0.3 enhancement.

14

1    Based on the risk of taking this case on a contingent fee basis and the delay in payment

2  since February 2016, Plaintiff requests a nominal multiplier of 1.5.

3        **E.    Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred
4              in Connection with this Action**

5    Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the

6  judgment a sum equal to the aggregate amount of costs <u>and expenses</u>.  (Civ. Code § 1794(d)

7  [emphasis added].)  The California Legislature intended the word "expenses" to cover outlays

8  not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative

9  history demonstrates the Legislature exercised its power to permit recovery of a host of litigation

10  expenditures beyond those permitted by Code of Civil Procedure § 1033.5. (*Jensen v. BMW of*

11  *North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

12    A verified memorandum of costs generally satisfies the moving party's burden of

13  establishing costs were necessarily incurred.  (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677,

14  682.)  The verified memorandum of costs demonstrates what Plaintiff's attorneys incurred in

15  costs and expenses prosecuting this matter, which counsel advanced on Plaintiff's behalf. (SM

16  Dec. ¶ 2, Ex. B; Civ. Code § 1794(d).)  The burden shifts to Ford to properly rebut the claimed

17  costs.

18            **IV.    CONCLUSION**

19    For the reasons above, Plaintiff respectfully requests this Honorable Court award

20  attorney's fees, costs and expenses as follows:

| | |
|---|---|
| Lodestar Fees: | $ 84,446.25 |
| +Lodestar Enhancement: | $ 42,223.13 |
| Total Fees Requested: | $126,669.38 |
| +Costs and Expenses: | $   6,660.29 |
| **=Total Fees and Costs/Expenses:** | **$133,329.67** |

Dated: January 29, 2018                    KNIGHT LAW GROUP, LLP

Steve Mikhov (SBN 224676)
Attorneys for Plaintiff,
**LUIS CASTILLO**

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

1

2
   I am employed in the County of Los Angeles, State of California. I am over the age of 18
3  years and not a party to the action. My business address is 1801 Century Park East, Suite 2300,
   Los Angeles, CA 90067.
4

5      I served the foregoing document described as:

6  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
   **SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**
7

8      Said document was served on the interested parties in this action, by placing true copies
   thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:
9

10     Matthew M. Proudfoot, Esq.              Michael H. Rosenstein, Esq.
       Gates O'Doherty, Gonter & Guy LLP       LAW OFFICES OF MICHAEL H.
11     38 Discovery, Suite 200                 ROSENSTEIN
       Irvine, CA 92618                        1801 Century Park East, Suite 2300
12     **Counsel for Defendant,**              Los Angeles, CA 90067
       **FORD MOTOR COMPANY**                  mrosenstein@rose-lawoffice.com
13     (via Personal Service only)             **Associated Counsel for Plaintiff,**
                                               **LUIS CASTILLO**
14                                             (via E-mail only)

15
   XX  PERSONAL SERVICE: I caused the above documents to be sent to our court services
16     provider to be personally served.

17
   XX  BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an
18     agreement of the parties to accept service by e-mail or electronic transmission, I caused
       the documents to be sent to the persons at the e-mail addresses listed above. I did not
19     receive, within a reasonable time after the transmission, any electronic message or other
       indication that the transmission was unsuccessful.
20

21     I declare under penalty of perjury under the laws of the State of California that the
       foregoing is true and correct.
22

23     Executed on January 29, 2018 at Los Angeles, California.

24

25                                             JENNIFER GUERRERO

26

27

28

-1-

PROOF OF SERVICE