1  **KNIGHT LAW GROUP, LLP**
   Steve Mikhov (SBN 224676)
2  Amy Morse (SBN 290502)
   1801 Century Park East, Suite 2300
3  Los Angeles, CA 90067
   Telephone: (310) 552-2250
4  Fax: (310) 552-7973

5
   **WIRTZ LAW APC**
6  Richard M. Wirtz (SBN 137812)
   1801 Century Park East, Suite 2300
7  Los Angeles, CA 90067
   Telephone: (310)556-2121
8  Fax: (858)259-6008

9
   Attorneys for Plaintiff,
10 JULIE L. TUOMI

11

12                 **SUPERIOR COURT OF CALIFORNIA**

13                 **COUNTY OF LOS ANGELES**

14

15 **JULIE L. TUOMI,**                    Case No. BC615429

                                          Unlimited Jurisdiction
16              Plaintiff,
                                          **PLAINTIFF'S MEMORANDUM OF**
17      vs.                               **POINTS AND AUTHORITIES IN**
                                          **SUPPORT OF MOTION FOR**
18                                        **ATTORNEY'S FEES, COSTS AND**
   **FORD MOTOR COMPANY, a Delaware**     **EXPENSES**
19 **Corporation, and DOES 1 through 10,**
   **inclusive,**                         [Filed concurrently with Plaintiff's Notice
20                                         Of Motion and Motion For Attorney's Fees,
                Defendant.                 Costs and Expenses; Declarations of Steve
21                                         Mikhov and Richard M. Wirtz]
22
                                          *Assigned for All Purposes to the*
23                                        *Honorable Ruth Ann Kwan*
24
                                          **Date:** February 8, 2018
25                                        **Time:** 9:00 a.m.
26                                        **Dept.:** 72
27                                        **RES ID:** 170927254146
28

────────────────────────────────────────────

PLAINTIFF'S MEMORANDUM ISO MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

# TABLE OF CONTENTS

I.     INTRODUCTION......................................................................... 1

II.    STATEMENT OF FACTS............................................................ 2

III.   ARGUMENT AND ANALYSIS .................................................. 6

    A.    Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action....... 6

    B.    The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable ...................... 7

        1.    The Nature and Complexity of the Litigation Support the Attorney's Fees Requested.................................................................................. 9

        2.    The Firm's Skill Justifies the Amount of Attorney's Fees Sought ........... 10

    C.    The Settlement Amount Does Not Limit the Attorney's Fee Recovery ............... 11

    D.    Plaintiff Should Be Granted a Lodestar Multiplier................................................. 12

        1.    The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment.......................................................13

    E.    Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action..........................................................15

IV.    CONCLUSION........................................................................... 15

## INDEX OF AUTHORITIES

### Cases

*Cazares v. Saenz*

   (1989) 208 Cal.App.3d 279 ................................................................12, 13

*City of Riverside v. Rivera*

   (1986) 477 U.S. 561 ......................................................................... 11

*Dietrich v. Dietrich*

   (1953) 41 Cal.2d 497 ......................................................................... 9

*En Palm, LLC v. Teitler*

   (2008) 162 Cal.App.4th 770...................................................................10

*Goglin v. BMW of North America, LLC*

   (2016) 4 Cal.App.5th 462......................................................7, 8, 11, 12

*Graciano v. Robinson Ford Sales*

   (2006) 144 Cal.App.4th 140 ...........................................7, 8, 9, 11, 13

*Graham v. DaimlerChrysler Corp.*

   (2004) 34 Cal.4th 55 ................................................................. 6, 12

*Hadley v. Krepel*

   (1985) 167 Cal.App.3d 677 .................................................................15

*Harman v. City and County of San Francisco*

   (2007) 158 Cal.App.4th 407 .................................................................12

*Horsford v. Bd. of Trustees of Cal. State Univ.*

   (2005) 132 Cal.App.4th 359 .............................................................. 14

*In re Chiron Corp. Securities Litigation*

   (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902.......................................13

*Independent Federation of Flight Attendants v. Zipes*

   (1989) 491 U.S. 754...........................................................................11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1   *Jensen v. BMW of North America, Inc.*

2      (1995) 35 Cal.App.4th 112 ........................................................................... 15

3   *Ketchum v. Moses*

4      (2001) 24 Cal.4th 1122 ........................................................... 12, 13, 14

5   *La Mesa-Spring Valley School Dist. v. Otsuka*

6      (1962) 57 Cal.2d 309 .................................................................................... 10

7   *Los Angeles Police Protective League v. City of Los Angeles*

8      (1986) 188 Cal.App.3d 1 ............................................................................. 8, 9

9   *Mandel v. Lackner*

10     (1979) 92 Cal.App.3d 747 .......................................................................... 6, 7

11  *Molski v. Arclero Wine Group*

12     (2008) 164 Cal.App.4th 786.........................................................................10

13  *PLCM Group v. Drexler*

14     (2000) 22 Cal.4th 1084 ............................................................................ 8, 12

15  *Reveles v. Toyota by the Bay*

16     (1997) 57 Cal.App.4th 1139 ............................................................................ 6

17  *Robertson v. Fleetwood Travel Trailers of California, Inc.*

18     (2006) 144 Cal.App.4th 785 ............................................... 7, 8, 9, 11, 12, 13

19  *Serrano v. Priest*

20     (1977) 20 Cal.3d 25 ...................................................................................... 12

21  *Serrano v. Unruh*

22     (1982) 32 Cal.3d 621 .................................................................................... 6, 8

23  *Vo v. Las Virgenes Municipal Water District*

24     (2000) 79 Cal.App.4th 440 ............................................................................ 12

25

26

27

28

iii

1

<strong>Statutes and Codes</strong>

2  Cal. Civ. Code § 1794(d) ........................................................................ 2, 6, 8, 13, 15

3  Code Civ. Proc. § 1032(a)(4) ................................................................................ 6

4  Pearl, <u>California Attorney Fee Awards</u>, at §§ 12.14A, 12.33 (2nd Ed. 2005) ................................ 7

5

6  **Other Authorities**

7  Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567. ................................................. 14

8  Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973)..............................................11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

## I.   INTRODUCTION

This case is about Defendant Ford Motor Company's ("Defendant" or "Ford") policy of taking advantage of California consumers and Plaintiff Julie L. Tuomi's ("Plaintiff") over year-long battle to vindicate her rights. Ford had three opportunities to avoid this lawsuit. First, Ford had an opportunity to build a quality car. Ford then had an opportunity to repair Plaintiff's vehicle within a reasonable number of repair attempts. Ford had a final opportunity to avoid this lawsuit when Plaintiff contacted Ford and asked for relief, which Ford rejected despite its legal obligation. Having squandered all three opportunities and violating the Song-Beverly Act in the process, Ford left Plaintiff with little choice but to pursue her rights in court.

On or about July 1, 2011, Plaintiff purchased a new 2011 Ford Fiesta for $22,919.48. Over the next four-and-a-half years, Plaintiff suffered through numerous engine and transmission issues. Frustrated, Plaintiff contacted Ford directly on or about June 16, 2015, seeking a buyback of the defective vehicle. Ford responded with an inadequate buyback offer. Ford made a business decision that by fabricating a reason to withhold money from consumers who rightfully deserved more compensation, the vast majority of consumers would just accept the unfair offer and Ford would save money. Without any other recourse, Plaintiff hired the Knight Law Group, LLP (formerly O'Connor and Mikhov, LLP, and hereafter "Knight Law") on a contingency basis. Knowing that Ford had willfully violated Plaintiff's rights and that Ford had already rejected informal resolution, Knight Law was forced to file this case.

On or about June 20, 2017, after more than a year of litigation, Plaintiff accepted Ford's C.C.P. section 998 Statutory Offer to Compromise ("998 Offer") in the amount of $120,000.00, consisting of a full statutory "buy-back" of her defective vehicle, incidental and consequential damages, and civil penalties. The final settlement is over five times the total amount Plaintiff paid for the vehicle, and includes civil penalties. By any analysis, Plaintiff achieved an excellent settlement given Ford's initial inadequate offer to repurchase her vehicle and, in essence, this is a settlement no other firm in this state could achieve for its clients.

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Civil Code sections 1790, *et seq.*, entitles Plaintiff to seek reasonable attorney's fees, costs and expenses from Ford. Moreover, the 998 Offer expressly provides Plaintiff is the prevailing party and entitled to this noticed motion for attorney's fees.  Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $64,542.50, (2) for a modest "lodestar" modifier of 1.5, in the amount of $32,271.25, and (3) to award actual costs and expenses incurred in the amount of $8,849.13.  (Civ. Code § 1794(d).) Plaintiff requests a total of $105,662.88 in attorney's fees, costs and expenses.  (Declaration of Steve Mikhov ("SM Dec.") ¶ 2, Exs. A-B).; Declaration of Richard M. Wirtz ("RW Dec."), ¶ 10, Ex. B.)

## II. STATEMENT OF FACTS

Plaintiff purchased a new 2011 Ford Fiesta vehicle on July 1, 2011 for a purchase price of $16,999.99 – adding taxes, fees, and service plans, the total purchase price was $22,919.48.  (SM Dec., ¶ 3, Ex. C.)  The vehicle was distributed by Ford Motor Company (hereafter "Ford"), which provided an express written warranty.  (*Id.*)

After about 9,600 miles, the vehicle began experiencing transmission problems.  (SM Dec., ¶ 4.)  The vehicle was hesitating before starting, so the Powertrain Control Module ("PCM") and Transmission Control Module ("TCM") were reprogrammed.  (*Id.*)  At about 16,800 miles, Plaintiff brought the vehicle in again because the brakes were making loud squealing noises when they were pressed.  (*Id.*)  The brake rotor and brake shoes were replaced.  (SM Dec., ¶ 4)  After less than 500 miles, the left and right front door windows were malfunctioning, so Plaintiff brought the vehicle in again for repairs.  (*Id.*)  Just 300 miles later, the transmission was chattering while Plaintiff drove at slow speeds.  (*Id.*)  The alarm system, furthermore, would not stop honking every time Plaintiff exited the vehicle and through the night.  (*Id.*)  Plaintiff brought the vehicle in and the dealership replaced the clutch assembly and reset the alarm system.  (*Id.*)  At almost 34,000 miles, the vehicle began violently bucking and jerking whenever Plaintiff accelerated after stopping, so Plaintiff returned to the dealership once again.  (*Id.*)  At about 38,000 miles, the

2

vehicle again began shaking violently when accelerating from a stop. (*Id.*) The steering wheel also began making popping noises when turning. (*Id.*) When Plaintiff brought the vehicle in again, the dealership serviced the clutch, and installed a steering wheel shaft and bolts. (*Id.*) At just 39,500, Plaintiff brought the vehicle in once again because the vehicle continued to shake violently when accelerating from a stop. (*Id.*) The clutch assembly was replaced a second time. (*Id.*)

The vehicle continued to violently shudder when accelerating from a stop, so Plaintiff brought it in again at about 49,600 miles. (SM Dec., ¶5.) When Plaintiff brought the car in, the TCM was replaced again. (*Id.*) Despite the attempt to repair, the transmission continued to rattle and shake at about 51,400 miles. (*Id.*) When Plaintiff returned to the dealership, the clutch assembly was replaced again and the PCM and TCM were reprogramed again. (*Id.*) Less than 1,000 miles later, the check engine light illuminated on the vehicle, so Plaintiff returned to the dealership. (*Id.*) Just 200 miles later, the check engine light turned on again and Plaintiff returned. (*Id.*)

Frustrated, Plaintiff contacted Ford directly on or about June 16, 2015, seeking a buyback of the defective vehicle. (SM Dec., ¶ 6.) On August 18, 2015, Ford offered Plaintiff a buyback which Plaintiff agreed to. (*Id.*) After Ford inspected Plaintiff's vehicle prior to its surrender, however, Ford told Plaintiff that it was subtracting $2,489.51 from its original offer for alleged wear and tear. (*Id.*) Plaintiff responded to the deduction with pictures of the vehicle which demonstrated its pristine condition. (*Id.*) Plaintiff refused to allow Ford to arbitrarily reduce its buyback offer, and did not agree to the reduction. (*Id.*)

Instead, Plaintiff attempted to continue to drive the vehicle, but was forced to return to the dealership via tow truck at about 58,200 miles because smoke was billowing from the top of the engine area and a pink fluid was gushing from the bottom of the engine. (SM Dec., ¶ 7.) The gasket and water pump were replaced. (*Id.*) Just 100 miles later, Plaintiff returned because the vehicle overheated and smoke once again billowed out of the hood. (*Id.*) Altogether, Plaintiff presented her vehicle to a Ford-authorized repair facility a total of thirteen times, over a period of

3

four-and-a-half years and 58,337 miles of ownership. (*Id.*) Six of the visits to the repair facility were for the same consistent problem of the shuddering transmission. (*Id.*)

Plaintiff contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated her. (SM Dec., ¶ 8.) After review of the repair history and discussions with Plaintiff, the firm agreed to represent Plaintiff and bear the risk associated with litigating the case on a contingent-fee basis. (*Id.*) The firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs. (*Id.*)

As a result of Ford's unacceptable decision to arbitrarily reduce its buyback offer, Plaintiff filed the complaint in this action on March 29, 2016, alleging violation of the Song-Beverly Act and seeking civil penalties. (SM Dec., ¶ 9.) On May 2, 2015, Ford filed a demurrer to Plaintiff's complaint. (*Id.*) Plaintiff opposed. (*Id.*) On July 12, 2017, the Court denied Ford's demurrer in its entirety. (*Id.*) Before responding to Plaintiff's complaint, Ford served discovery requests, including requests for admissions, special interrogatories, requests for production, and form interrogatories. (SM Dec., ¶ 10.) Ford also began planning Plaintiff's deposition and submitted a demand for jury trial. (*Id.*) Plaintiff prepared and served her responses to Ford's discovery requests. (*Id.*) In September 2016, Plaintiff served her written discovery on Ford, consisting of one hundred and one (101) requests for production of documents, one hundred and sixteen (116) special interrogatories, sixty-three (63) requests for admissions, and twenty-seven (27) form interrogatories. (SM Dec., ¶ 10.) Plaintiff benefitted from Knight Law's expertise and experience in litigating against Ford as just 4.8 hours were billed for drafting the entirety of this discovery. (*Id.*) The firm is able to utilize existing templates that attorneys tailor for case specific facts to reduce billing time. (*Id.*)

On September 27, 2016, a trial date was set for June 26, 2017. (SM Dec., ¶ 11.) Because Ford had not yet filed its answer to Plaintiff's complaint, the Court ordered Ford to answer by the end of the week. (*Id.*) On or about September 30, 2016, Ford filed its answer *denying* all liability along with a demand for jury trial. (*Id.*) In November 2016, Ford officially noticed Plaintiff's

deposition and submitted a demand for vehicle inspection. (SM Dec., ¶ 12.) Ford also submitted its responses to Plaintiff's discovery requests, which were inadequate. (*Id.*) Plaintiff drafted and sent a meet and confer letter regarding Ford's inadequate discovery responses. (SM Dec., ¶ 13.) In December 2016, Plaintiff prepared her document production to Ford and drafted objections to her noticed deposition. (*Id.*) Plaintiff also drafted and served the notices of depositions for several of Ford's employees, including Ford's PMK and PMQ, service advisors and technicians. (SM Dec., ¶ 14.) In total, Plaintiff prepared and served twenty-four (24) notices of depositions. (*Id.*) These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse. (*Id.*) After receiving and reviewing Defendant's objections to the notices of depositions, Plaintiff drafted three amended notices of depositions. (*Id.*)

On April 10, 2017, Plaintiff prepared for and attended the vehicle inspection. (SM Dec., ¶ 15.) The day after, Plaintiff drafted her demand for expert information. (*Id.*) Plaintiff began to look for experts to support her case and, on April 27, 2017, drafted and filed the designations and declarations of Thomas Lepper and Barbara Luna as her experts. (*Id.*) On May 1, 2017, Plaintiff prepared for and attended the depositions of two dealership employees. (SM Dec., ¶ 16.) In anticipation of the upcoming trial, Plaintiff engaged the services of Wirtz Law APC (hereafter "Wirtz Law"), trial attorneys, on the same day. (RW Dec., ¶ 11, Ex. C.) On or about May 15, 2017, trial counsel drafted and filed twelve motions in limine. (RW Dec., ¶ 12.) On May 25, 2017 trial counsel prepared for and attended the deposition of Ford's PMK. The next day, trial counsel prepared the joint witness list, joint exhibit list, joint statement of the case, jury instructions, and the verdict form. (*Id.*) On June 1, 2017, trial counsel drafted the trial joint exhibit list and prepared exhibits for trial. (*Id.*) Trial counsel also revised the joint witness list and joint jury instructions. (*Id.*)

On June 5, 2017, Ford served a statutory offer to compromise under Code of Civil

5

Procedure § 998. (SM Dec., ¶ 17.) While Plaintiff deliberated on the offer, counsel continued to prepare for trial by attending two depositions—one deposition was of Plaintiff's expert witness and the other deposition was of Ford's expert witness—on June 13, 2017. (*Id.*) Trial counsel similarly continued to prepare for trial by preparing for an attending two depositions of Ford personnel on June 6, 2017. (RW Dec., ¶ 13.) Trial counsel also prepared for and defended the deposition of Plaintiff's expert witness on June 13, 2017. (*Id.*)

On June 20, 2017, Plaintiff contacted Knight Law to authorize acceptance of the 998 Offer totaling $120,000.00, and Knight Law accepted on Plaintiff's behalf. (SM Dec., ¶ 18.) The notice of settlement was filed June 22, 2017, just four days before the trial date set for June 26, 2017. (*Id.*)

Prior to filing this motion, Plaintiff made an offer to settle the amount of attorney's fees with Ford. (SM Dec., ¶ 19.) The offer represented a substantial reduction of total fees incurred, and did not include a lodestar multiplier or fees incurred in preparing this motion. (*Id.*) Ford did not respond to the offer. (*Id.*)

## III.  ARGUMENT AND ANALYSIS

### A.    Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action

Pursuant to the terms of Ford's 998 Offer that was accepted by Plaintiff, Plaintiff is the prevailing party in this action and, under the Song-Beverly Act, entitled to recoup all reasonable attorney's fees, costs and expenses as a prevailing party. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances" that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly

6

1   rate is entitled to a presumption of reasonableness); Pearl, <u>California Attorney Fee Awards</u>, at §§

2   12.14A, 12.33 (2nd Ed. 2005).

3     In prosecuting this case, the efforts of Knight Law and Wirtz Law amount to $64,542.50,

4   including drafting this motion and time anticipated to be spent preparing the reply and attending

5   the hearing. (SM Dec., ¶ 2, Ex. A; RW Dec. ¶ 10, Ex. B.) Plaintiff's counsel also request a modest

6   1.5 enhancement, in the amount of $32,271.25, to account for the delay in payment and contingent

7   risk posed by this case. Lastly, the reimbursable costs and expenses set forth in Plaintiff's

8   memorandum of costs are $8,849.13.   (SM Dec., ¶ 2, Ex. B.)   In total, Plaintiff requests

9   $105,662.88. (SM Dec., ¶ 2, Exs. A-B; RW Dec. ¶ 10, Ex. B.)

10    **B.**  **The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable**

11    The Court of Appeal has expressly held the lodestar method applies to determining

12  attorney's fees under the Song-Beverly Act.   (*Robertson v. Fleetwood Travel Trailers of*

13  *California, Inc.* (2006) 144 Cal.App.4th 785, 817.) The calculation of reasonable attorney's fees

14  under the Song-Beverly Act is based on the lodestar method, which entails multiplying the number

15  of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford Sales*

16  (2006) 144 Cal.App.4th 140, 154; *Robertson v. Fleetwood Travel Trailers of California, Inc.*

17  (2006) 144 Cal.App.4th 785, 817.) The prevailing buyer has the burden of showing that the fees

18  incurred were "allowable," "reasonably necessary to the conduct of the litigation," and "reasonable

19  in amount." (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470.) In making

20  such an evaluation, a court may consider "factors such as the complexity of the case and procedural

21  demands, the skill exhibited and the results achieved." (*Id.*)

22    In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over

23  $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under the

24  Song-Beverly Act. (4 Cal.App.5th at 464.) The court also found plaintiff's counsel's hourly rate

25  of $575 per hour was reasonable as supported by exhibits to counsel's declaration indicating

26  various state and federal courts had previously awarded him comparable hourly rates. (*Id.* at 473-

27  

28  

7

74.)  The trial court was not obliged to consider that defendants paid their counsel a much lower hourly rate.  (*Id.* at 474.)

In *Robertson*, the court observed a prevailing buyer is entitled to an award of reasonable attorney's fees for time reasonably expended by his attorney.  (*Robertson*, *supra*, 144 Cal.App.4th at 817.)  The court ruled the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers."  (*Id.* at 819.)  Indeed, in *Robertson*, the trial court awarded $231,187.45 in fees based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for the attorney's fee motion.  (*Id.* at 817.)  The appellate court upheld the trial court's ruling.  (*Id.* at 822.)

In *Graciano*, the trial court initially rejected plaintiff's lodestar fees of $109,468.50 and request for a multiplier of 2.0.  In particular, the trial court reduced the plaintiff's attorney's hourly rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for expert testimony.  Plaintiff appealed the court's decision and in particular the hourly rate reduction.  The appellate court reversed, reasoning a court should determine the prevailing rate in the community for comparable professional legal services.  (*Graciano v. Robinson Ford Sales (2006),* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).) The court found the plaintiff's unrebutted declarations established the proper hourly rate at $350, and reducing that rate to $250 was an abuse of discretion.   (*Id.*)   The court also reaffirmed attorney's fees <u>are not limited to a proportion</u> of the recovery.  (*Id.* at 164.)  On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee award of over $380,000.  The attorney from *Graciano*, Hallen D. Rosner, now charges $595/hour.  (SM Dec., ¶ 35(a).).  Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are *also entitled* to recover their fees for the time spent preparing fee applications such as this one.  (*Serrano v. Unruh, supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188

8

Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

Consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 25-33), (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 35), (iii) over two dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (SM Dec., ¶¶ 37-75, Exs. D-PP), and (iv) a National Survey further supporting the reasonableness of the hourly rates (RW Dec., ¶ 9, Ex. A, at pp. 42-45). Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.

## 1. The Nature and Complexity of the Litigation Support the Attorney's Fees Requested

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case. (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.) Ford will likely claim that "this is a simple lemon law case," and therefore Plaintiff's fee request is unjustified. This case, however, required a range of specialized knowledge, such as: (1) understanding of the full scope of consumer protection laws, which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations. (SM Dec., ¶ 78.) Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Plaintiff here.

Moreover, Ford made this matter even more complex by maintaining it had no liability and declining to submit any reasonable offers to settle the matter for more than a year. Ford should have recognized the defects in Plaintiff's vehicle and resolved the matter before this case was ever

9

filed. Ford ultimately did just that, but not before causing substantial fees to be incurred. Ford engaged in expensive litigation, including extensive written discovery, and forcing Plaintiff to retain trial counsel. Ford easily could have resolved this matter earlier and saved tens of thousands in attorney's fees, costs and expenses. When Ford causes the entirety of fees to be incurred, it has no legitimate basis for complaining about the amount of attorney's fees reasonably and actually incurred, especially when Ford was given the opportunity to resolve the matter before a lawsuit was even filed. "A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

### 2.   <u>The Firm's Skill Justifies the Amount of Attorney's Fees Sought</u>

A trial court may also take into account the skill of the attorneys when determining reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309, 316.) Despite the case's difficulties, Plaintiff ultimately recovered $120,000.00 in damages, which is over five times the vehicle's purchase price. The vehicle was no more or less defective on the date of settlement than it was when Plaintiff first requested a repurchase, so there is no rational explanation why Ford waged a lengthy and costly legal battle only to settle for an amount that included civil penalties. The final resolution is the direct result of skill and preparation by Plaintiff's attorneys, who specialize in consumer law and did not balk at Ford's aggressive litigation tactics. Plaintiff's attorneys' experience in this area has enabled them to develop litigation strategies that are both highly effective and cost and time efficient. Plaintiff's attorneys know the many nuances in these types of cases. This specialized knowledge and experience in lemon law frequently achieves results better than attorneys who do not specialize in this specific area of law. This experience provided a resolution to this matter far beyond that which Ford was previously willing to entertain. The biggest difference between Plaintiff getting zero and Plaintiff receiving a $120,000.00 recovery was her attorneys' knowledge and expertise.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1    Counsels' skill is evidenced by the size of the settlement as well as the relatively nominal

2    time expended on various tasks, which results in lower overall billing.  Plaintiff's attorneys don't

3    spend inordinate time researching because they specialize in this area of law.  (SM Dec., ¶ 78.)

4    Nor do they spend unreasonable time preparing pleadings and other documents because they are

5    able to use documents from other cases that need only be edited, rather than written from scratch.

6    While substantial fees have been incurred, the fees were caused by Ford and led to the execution

7    of effective strategies that typically result in superlative results for Knight Law clients, just like

8    Plaintiff here. On the other side, Ford is represented by large national firms with attorneys who

9    specialize in representing automobile manufacturers in lemon law cases.  Ford is a corporate

10    behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney.

11    Plaintiff required skilled and experienced attorneys to prosecute her claims against Ford and its

12    formidable resources.

13

14    **C.**    **The Settlement Amount Does Not Limit the Attorney's Fee Recovery**

15    Ford may argue that damages in the amount of $120,000.00 do not justify an attorney's fee

16    award in the amount requested by Plaintiff. Such an argument is starkly against the weight of the

17    law.  The amount of attorney's fees *must not be tied to any percentage of recovery*. (*Graciano,*

18    *supra,* 144 Cal.App.4th at 164.)  In fact, a trial court may abuse its discretion if it applies a rule of

19    proportionality to a fee award. The U.S. Supreme Court has previously considered the question

20    of proportionality in attorney fee awards and held: "[w]e reject the proposition that fee awards

21    under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a

22    civil rights plaintiff actually recovers." (*City of Riverside v. Rivera* (1986) 477 U.S. 561, 574; *see*

23    *also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973) (attorney's fees under the Magnuson

24    Moss Warranty Act are based on actual time, not a percentage of the recovery); *Robertson, supra,*

25    144 Cal.App.4th at 820; *Independent Federation of Flight Attendants v. Zipes* (1989) 491 U.S.

26    754, fn.2 (fee shifting provisions under Magnuson-Moss and Song-Beverly "are to be interpreted

27    alike"); *Goglin, supra,* 5 Cal.App.5th at 468-69 (affirming award of $185,000 in fees and costs in

28

11

a Song-Beverly Act case that settled for $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 446 (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively litigious and took a non-settlement posture); *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407 (affirming award of approximately $1.1 million in fees where plaintiff recovered $30,300).)

It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. (SM Dec., ¶ 77.) Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. The award of attorney's fees *cannot* be limited by the damages recovered by Plaintiff. Any argument by Ford to the contrary would be disingenuous, as the law is clear on this point.(*Ketchum v. Moses (2001)* 24 Cal.4th 1122, 1132.)

**D.   Plaintiff Should Be Granted a Lodestar Multiplier**

As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier, sometimes referred to as an adjustment or enhancement. (*Robertson, supra,* 144 Cal.App.4th at 817.) Once a lodestar amount is determined, which involves a "careful compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Id.* at 819 (citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III)*), the amount may then be augmented by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award. (*Id.; see also Graham v. Daimler Chrysler Corp., (2004)* 34 Cal.4th 553, 579; *PLCM Group v. Drexler,* 22 Cal.4th at 1096.) "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-

88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).)  "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on."  (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.)

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers."  (144 Cal.App.4th at 819.)  The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fees motion.  (*Id.* at 817.)  The appellate court held the trial court properly conducted a lodestar analysis and the award was not an abuse of discretion.  (*Id.* at 822.)

In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier for a total award of over $380,000.  (144 Cal.App.4th at 156.)  The trial court had initially reduced plaintiff's request for fees down to $250/hour and rejected the 2.0 lodestar multiplier. (*Id.* at 147.)  The court found the plaintiff's unrebutted declarations established the proper hourly rate at $350, and reducing that rate to $250 was an abuse of discretion. (*Id.*)  The court also reaffirmed attorney's fees are not limited to a proportion of the recovery.  (*Id.* at 164.)  Ford will argue a multiplier is not permitted, and cite to the *Ketchum* case in support that argument.  Unfortunately for Ford, *Ketchum* does not hold a multiplier is improper.  To the contrary, *Ketchum* actually confirms the granting of a multiplier in contingency fee cases. (*Ketchum, supra,* 24 Cal.4th at 1132.)  A lodestar multiplier is in fact available and it has been awarded to Plaintiff's counsel in several cases. (SM Dec., ¶¶ 46, 50, 59, 60, 62, 63, 67, 73, 74, 75, Exs. M, Q, Z, AA, CC, DD, HH, NN, OO, PP).

1.   **The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment**

13

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved.  The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the <u>risk</u> of taking a case on a contingency basis, and <u>delay</u> in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.)

In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a *larger compensation* than would otherwise be reasonable." (24 Cal.4th at 1132 [emphasis added].)

> <u>A contingent fee must be higher than a fee for the same legal services paid as they are performed</u>. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.   The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.)  <u>A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions</u>. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

(*Id.* at 1132 [citations omitted; emphasis added].)

Throughout the litigation, there always existed the real possibility Plaintiff would not prevail. The risk was further compounded by the fact that Plaintiff's attorneys advanced all costs. Thus, if Plaintiff did not prevail, her attorneys would have suffered a loss of hundreds of hours in uncompensated work and thousands of dollars in out-of-pocket expenses.  Plaintiff requests a 0.3 enhancement based on that risk. Further, Ford dragged this case out for more than a year before making an acceptable offer. Unlike Ford's attorneys, who are paid monthly regardless of outcome, Plaintiff's attorneys are not paid at all if they lose, and need to absorb significant delay in being paid if Plaintiff does win.  On account of the substantial delay in payment, Plaintiff requests a 0.2

14

1   enhancement. Based on the risk of taking this case on a contingent fee basis and the delay in

2   payment since March 2016, Plaintiff requests a nominal multiplier of 1.5.

3      **E.  Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in**

4      **Connection with this Action**

5      Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the

6   judgment a sum equal to the aggregate amount of costs <u>and expenses</u>.  (Civ. Code § 1794(d)

7   [emphasis added].)  The California Legislature intended the word "expenses" to cover outlays not

8   included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative

9   history demonstrates the Legislature exercised its power to permit recovery of a host of litigation

10  expenditures beyond those permitted by Code of Civil Procedure § 1033.5.  (*Jensen v. BMW of*

11  *North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

12     A verified memorandum of costs generally satisfies the moving party's burden of

13  establishing costs were necessarily incurred. (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.)

14  The verified memorandum of costs demonstrates what Plaintiff's attorneys incurred in costs and

15  expenses prosecuting this matter, which counsel advanced on Plaintiff's behalf. (SM Dec. ¶ 2, Ex.

16  B; Civ. Code § 1794(d).)  The burden shifts to Ford to properly rebut the claimed costs.

17               **IV.   CONCLUSION**

18     For the reasons above, Plaintiff respectfully requests this Honorable Court award attorney's

19  fees, costs and expenses as follows:

20     Lodestar Fees:                  $64,542.50

21     +Lodestar Enhancement:          $32,271.25

       Total Fees Requested:           $96,813.75

22     +Costs and Expenses:            $ 8,849.13

23     =**Total Fees and Costs/Expenses:   $105,662.88**

24  Dated: January 17, 2018              **KNIGHT LAW GROUP, LLP**

25

26                                       Steve Mikhov (SBN 224676)

27                                       Amy Morse (SBN 290502)
                                         Attorneys for Plaintiff,

28                                       **JULIE L. TUOMI**

                         15

1
2
3
4

PROOF OF SERVICE

(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 1801 Century Park East, Suite 2300, Los Angeles, CA 90067.

5

I served the foregoing document described as:

6
7

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

8

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

9
10
11
12

Matthew M. Proudfoot, Esq.
GATES, O'DOHERTY, GONTER & GUY LLP
38 Discovery, Suite 200
Irvine, CA 92618
**Counsel for Defendant,**
**FORD MOTOR COMPANY**

13
14

XX      PERSONAL SERVICE:  I caused the above documents to be sent to our court services provider to be personally served.

15
16

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

17

Executed on January 17, 2018 at Los Angeles, California.

18
19
20

_____
JENNIFER GUERRERO

21
22
23
24
25
26
27
28

-1-

**PROOF OF SERVICE**

"HAND DELIVERY"