Cortez, L v Ford 55596-01012
WEP, KTR, SMB,
BC, KS, STS, YP
OCMail *EB* KSW

1  **KNIGHT LAW GROUP, LLP**
2  Steve Mikhov (SBN 224676)
   1801 Century Park East, Suite 2300
3  Los Angeles, CA 90067
   Telephone: (310) 552-2250
4  Fax: (310) 552-7973

5  **LAW OFFICES OF MICHAEL H. ROSENSTEIN**
6  Michael H. Rosenstein (SBN 169091)
   1801 Century Park East, Suite 2300
7  Los Angeles, CA 90067
   Telephone: (310) 286-0275
8  Fax: (310) 286-0274

9

10 Attorneys for Plaintiff,
   **LORENA CORTEZ**

Received

FEB 0 9 2018

Snell & Wilmer

11

12

13            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                    **COUNTY OF LOS ANGELES**

15

16 **LORENA CORTEZ,**                  Case No. BC632476

17            Plaintiff,               **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**
18       vs.

19

20 **FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,**
21
                                       [Filed concurrently with Plaintiff's Notice Of Motion and Motion For Attorney's Fees, Costs and Expenses; Declaration of Steve Mikhov and Michael Rosenstein]
22            Defendant.

23

24                                     *Assigned for All Purposes to the Honorable Barbara M. Scheper*

25

26                                     **Date:** March 28, 2018
                                       **Time:** 8:30 am
27                                     **Dept.:** 30
                                       **Reservation:** 180207288215
28

29

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

## TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................... 2

III.  ARGUMENT AND ANALYSIS ............................................................... 6

    A.  Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action........................................................................................................ 6

    B.  The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable.................. 7

        1.  The Nature and Complexity of the Litigation Support the Attorney's Fees Requested ................................................................. 9

        2.  The Firm's Skill Justifies the Amount of Attorney's Fees Sought ........................................................................................... 10

    C.  The Settlement Amount Does Not Limit the Attorney's Fee Recovery .......... 11

    D.  Plaintiff Should Be Granted a Lodestar Multiplier ......................................... 12

        1.  The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment ........................................ 13

    E.  Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action........................................................ 14

IV.  CONCLUSION.......................................................................................... 15

i

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Cazares v. Saenz,*
(1989) 208 Cal.App.3d 279 ..................................................................................13

*City of Riverside v. Rivera*
(1986) 477 U.S. 561 .............................................................................................12

*Dietrich v. Dietrich*
(1953) 41 Cal.2d 497 .............................................................................................9

*En Palm, LLC v. Teitler*
(2008) 162 Cal.App.4th 770 ................................................................................10

*Goglin v. BMW of North America, LLC*
(2016) 4 Cal.App.5th 462 ................................................................................7, 12

*Graciano v. Robinson Ford Sales*
(2006) 144 Cal.App.4th 140 ...............................................................7, 8, 9, 11, 13

*Graham v. DaimlerChrysler Corp.*
(2004) 34 Cal.4th 553 .....................................................................................6, 13

*Hadley v. Krepel*
(1985) 167 Cal.App.3d 677 .................................................................................15

*Harman v. City and County of San Francisco*
(2007) 158 Cal.App.4th 407 ...............................................................................12

*Horsford v. Bd. of Trustees of Cal. State Univ.*
(2005) 132 Cal. App. 4th 359 .........................................................................8, 14

*In re Chiron Corp. Securities Litigation*
(N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 ..............13

*Independent Federation of Flight Attendants v. Zipes*
(1989) 491 U.S. 754.............................................................................................12

*Jensen v. BMW of North America, Inc.*
(1995) 35 Cal.App.4th 112 .................................................................................15

*Ketchum v. Moses,*
(2001) 24 Cal.4th 1122 ............................................................................12, 13, 14

*La Mesa-Spring Valley School Dist. v. Otsuka*
    (1962) 57 Cal.2d 309 ...................................................................................10

*Los Angeles Police Protective League v. City of Los Angeles*
    (1986) 188 Cal.App.3d 1 ...............................................................................8

*Mandel v. Lackner*
    (1979) 92 Cal.App.3d 747 .............................................................................6

*Molski v. Arclero Wine Group*
    (2008) 164 Cal.App.4th 786 ........................................................................10

*PLCM Group v. Drexler, supra*
    (2000) 22 Cal.4th 1084 .........................................................................8, 13

*Reveles v. Toyota by the Bay*
    (1997) 57 Cal.App.4th 1139 ..........................................................................6

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
    (2006) 144 Cal.App.4th 785 ...........................................................7, 8, 12, 13

*Serrano v. Unruh,*
    (1982) 32 Cal.3d 621 ..............................................................................6, 8

*Serrano v. Priest*
    (1977) 20 Cal.3d 25 (Serrano III) .................................................................12

*Vo v. Las Virgenes Municipal Water District*
    (2000) 79 Cal.App.4th 440 ..........................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1

## Statutes and Codes

2

California Code of Civil Procedure
    Section 1032(a)(4) ..............................................................................6

3

California Code of Civil Procedure
    Section 1033.5.................................................................................15

4

5

California Code of Civil Procedure
    Section 1794(d) ...............................................................2, 6, 7, 13, 15

6

7

California Code Of Civil Procedure
    Section 998 ............................................................................4, 6, 14

8

9

United States Code
    Title 42 ...........................................................................................11

10

11

## Other Authorities

12

13

Pearl, *California Attorney Fee Awards*

    Sections 12.14A, 12.33 (2nd Ed. 2005) ..........................................6

14

15

Sen. Report No. 93-151,
    1st Sess., pp. 23 (1973) ...................................................................12

16

17

18

19

20

21

22

23

24

25

26

27

28

29

iv

## I.    INTRODUCTION

After over one year of litigation, the parties agreed to settle the matter in the amount of $115,320.00, consisting of a full refund of all monies paid towards the defective vehicle plus over $81,000.00 in civil penalties and/or punitive damages. <u>The final settlement is almost</u> **three and a half times** <u>the total amount Plaintiff paid for the vehicle in what defense routinely calls a "simple lemon law" action.</u>  Plaintiff obtained this extraordinary sum, *without going to trial*.  By any analysis, Plaintiff Lorena Cortez ("Plaintiff") achieved an excellent settlement particularly given Defendant Ford Motor Company's ("Defendant" or "Ford") initial refusal to even consider repurchasing her vehicle under the Song-Beverly Act.  This is a settlement that no other firm in this state could achieve for its clients.  The result in this case was achieved because of Plaintiff's attorneys' skill and expertise in lemon law cases developed and honed over the course of many years of advocating on behalf of consumer rights.  The biggest factor in Plaintiff receiving an unsatisfactory offer when she contacted Ford before this lawsuit versus a $115,320.00 settlement was her attorneys' knowledgeable approach to this case.

On or about October 29, 2013, Plaintiff purchased a new 2014 Ford Focus.  After owning the car for about a year and a half, Plaintiff then suffered through serious transmission defects, among other problems, that caused the vehicle's transmission to shudder, and were subject to recall.  Plaintiff sought maintenance for the vehicle's issues four times over a period of only fourteen months.  Frustrated, Plaintiff contacted Ford customer service on or about March 23, 2016, seeking a buyback of the defective vehicle.  Instead of complying with its legal obligations, Ford applied its tried and true internal policy of rejecting its Song-Beverly Consumer Warranty Act ("Song-Beverly Act") obligations and refused to help Plaintiff, denying the buyback request.  Ford made a business decision that by essentially just saying no, the vast majority of consumers would just go away and Ford would save money.  Without any other recourse, Plaintiff hired Knight Law Group, LLP (hereafter "**Knight Law**") on a contingency basis.  Knowing that Ford had willfully violated Plaintiff's rights and that Ford had already rejected informal resolution, Knight Law was forced to file this case.

The Song-Beverly Act, Civil Code sections 1790, *et seq.*, entitles Plaintiff to seek reasonable attorney's fees, costs and expenses from Ford.  Moreover, the parties' settlement

1

agreement provides Plaintiff is the prevailing party and entitled to this noticed motion for attorney's fees. Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $63,275.00 (2) for a modest "lodestar" modifier of 1.5, in the amount of $31,637.50, and (3) to award actual costs and expenses incurred in the amount of $6,505.29. (Civ. Code § 1794(d).) Plaintiff requests a total of $101,417.75 in attorney's fees, costs and expenses. (Declaration of Steve Mikhov ("SM Dec."), ¶ 2, Exs. A-B.)

## II.    STATEMENT OF FACTS

Plaintiff purchased a new 2014 Ford Focus on or about October 28, 2013 for a purchase price of $19,390.56—adding taxes, fees, and service plans, the total purchase price was $33,439.68. (SM Dec., ¶ 3, Ex. C.) The vehicle was distributed by Ford Motor Company (hereafter "Defendant" or "Ford"), which provided an express written warranty. (*Id.*)

After approximately fifteen months and under 50,000 miles of ownership, within the applicable warranty periods, the vehicle began experiencing problems with the transmission, which was subject to a recall of the 14M01 transmission shudder per TSB. (SM Dec., ¶ 4.) Plaintiff took the vehicle to a Ford-authorized repair facility, which attempted to correct the issues by ordering a replacement of the clutch. (*Id.*) About two and a half months later, the vehicle continued experiencing transmission shuddering problems, in addition to engine issues, with Plaintiff complaining that gas was leaking from the filler tube when filling the fuel tank— this required replacing the fuel filler neck per TSB 14-0132. (*Id.*) Less than two months later, the vehicle's transmission problems persisted, with bad shuddering upon reaching 40 miles per hour, causing Plaintiff to tow the vehicle home, and requiring Ford to remove and replace the transmission control module per a recall. (*Id.*) At the same time, another engine problem presented with a cracked air filter box, which required replacement. (*Id.*) About another two months later, the vehicle had continued engine problems, with the fuel gauge not functioning accurately, in addition to suspension problems that required installation of a new right and left front lower control arm. (*Id.*) Plaintiff repeatedly took the vehicle in for repairs, a total of four (4) times in a period of approximately fourteen months for the various problems that persisted. (*Id.*)

2

Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. (SM Dec., ¶ 5.) At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS" as they are reported. (*Id*.) These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work. (*Id*.)

Frustrated, concerned for her safety, and having lost confidence in Ford's ability to repair the vehicle, Plaintiff contacted Ford customer service directly on March 23, 2016, and requested Ford repurchase the vehicle. (SM Dec., ¶ 6.) Despite Ford's affirmative duty under the law to perform an investigation and offer relief, Ford rejected Plaintiff's request. (*Id*.)

Because Ford disregarded every opportunity to do right by its customer, Plaintiff was forced to retain counsel and file suit. (SM Dec., ¶ 7.)

Plaintiff contacted Knight Law and told the firm about the problems with her vehicle and the way Ford treated her. (SM Dec., ¶ 8.) After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent her and bear the risk of litigating the case on a fully contingent basis. (*Id*.) Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. (*Id*.) In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand. (*Id*.)

As a result of Ford's failure to fix the material defects associated with Plaintiff's vehicle, or otherwise comply with the Song-Beverly Act, Plaintiff filed her Complaint in this action on August 31, 2016, alleging, in part, willful violations of the Song-Beverly Act and seeking civil penalties. (SM Dec., ¶ 9.) The 28-page complaint took a total of 1.2 hours to draft. (*Id*.) The firm was able to utilize existing templates that attorneys tailor for case specific facts to reduce billing time. (*Id*.) Ford immediately took an aggressive stance, demurring to the Complaint on or about October 7, 2016, with a hearing on the Demurrer taking place on November 8, 2016. (*Id*.) Plaintiff filed her First Amended Complaint on or about November 18, 2016, which only

3

1   took another 0.3 hours to draft.  (*Id.*)  Ford ultimately filed its answer denying all liability and

2   asserting numerous affirmative defenses on or about January 17, 2017.  (*Id.*)  Ford also filed a

3   demand for a jury trial at this time.  (*Id.*)

4       Defendant's position in the litigation required extensive efforts on the part of Plaintiff's

5   counsel, and they promptly began working up their case on behalf of Plaintiff.  (SM Dec., ¶ 10.)

6   Written discovery was drafted and served on Defendant on or about November 10, 2016,

7   consisting of 34 requests for admissions, 86 requests for production of documents, 69 special

8   interrogatories and 27 form interrogatories.  (*Id.*)  Plaintiff benefitted from Knight Law's

9   expertise and experience in litigating against Ford as just 3.3 hours were billed for drafting the

10   entirety of this discovery.  (*Id.*)

11       Ford then began its vigorous defense in this case.  (SM Dec., ¶ 11.)  On or about January

12   17, 2017, Ford propounded requests for admissions, requests for production of documents,

13   special interrogatories and form interrogatories upon Plaintiff.  (*Id.*)  Plaintiff again benefitted

14   from Knight Law's expertise as just 5.1 hours were billed for drafting responses to the entirety

15   of this discovery.  (*Id.*)  In January 2017, Ford also noticed the deposition of Plaintiff and made

16   a demand for inspection of Plaintiff's vehicle.  (*Id.*)

17       Due to Defendant's improper objections and/or incomplete and evasive responses to

18   Plaintiff's discovery, Plaintiff began "meet and confer" efforts in February 2017.  (SM Dec., ¶

19   12.)  Defendant ultimately filed a Stipulation and Protective Order regarding document

20   production on or about March 16, 2017.  (*Id.*)

21       On February 15, 2017, the parties attended a mediation (telephonically) to discuss this

22   case and thirteen others like it.  (SM Dec., ¶ 13.)  The case did not resolve at that time.  (*Id.*)

23   Only .1 hours were billed to this case to attend this mediation.  (*Id.*)

24       On March 22, 2017, Ford served Plaintiff with an Offer to Compromise pursuant to the

25   Code of Civil Procedure section 998 ("998 Offer") in the amount of $38,500.00.  (SM Dec., ¶

26   14.)  Plaintiff objected to the offer, which did not include a civil penalty, as vague and uncertain.

27   (*Id.*)  Plaintiff rejected the inadequate offer.  (*Id.*)

28       Meanwhile, Plaintiff's counsel continued working up the case for Plaintiff.  Plaintiff's

29   deposition was taken on May 19, 2017.  (SM Dec., ¶ 15.)  In June 2017, Plaintiff noticed the

1   depositions of several Ford employees, including Ford's PMK and PMQ, service advisors and

2   service technicians. (*Id.*) These depositions were needed to obtain information regarding repairs

3   to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the

4   problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse. (*Id.*)

5   True to form, Ford served objection to the noticed depositions of their PMQ and PMK. (*Id.*)

6         With the absence of any reasonable settlement offer from Ford accounting for its willful

7   violation of the Song-Beverly Act, the case appeared likely to go to trial. (SM Dec., ¶ 16.)

8   Accordingly, on or about May 24, 2017, the Law Offices of Michael H. Rosenstein (hereafter

9   "**Rosenstein**") formally associated into the case as lead trial counsel to prepare the case for trial.

10  (*Id.*; Declaration of Michael Rosenstein ("MR Dec."), ¶ 9, Ex. C.)

11        The inspection of Plaintiff's vehicle was conducted on June 14, 2017. (SM Dec., ¶ 17.)

12  In July 2017, the parties designated experts, and Defendant filed an Ex Parte Application to

13  Continue Trial, which was heard on July 25, 2017 and denied. (*Id.*) Defendant filed another Ex

14  Parte Application to Continue Trial, which was granted on August 8, 2017, with trial continued

15  to December 11, 2017. (*Id.*) Defendant also filed an Ex Parte Application for an Order Granting

16  Defendant Leave to Amend its Answer, which was heard on August 23, 2017. (*Id.*) Defendant

17  served its Amended Answer on or about August 24, 2017. (*Id.*)

18        With the December trial date quickly approaching, Plaintiff's counsel kicked their trial

19  preparation into high gear. (SM Dec., ¶ 18.) After reviewing the case file, pleadings, discovery

20  and document production, and conferring with Plaintiff, Plaintiff's trial counsel began drafting

21  supplemental interrogatories and requests for production, and preparing for depositions. (*Id.*;

22  MR Dec., ¶¶ 4, 10-11.) In July 2017, trial counsel further continued preparing for trial by drafting

23  fifteen (15) Motions in limine and reviewing deposition transcripts from Ford's dealership

24  personnel. (SM Dec., ¶ 18; MR Dec., ¶¶ 10-11.) Once again Plaintiff benefitted from her

25  counsel's expertise and experience as each 5-10 page motion took only 0.75 – 1.0 hours to draft,

26  as opposed to multiple hours for each. (SM Dec., ¶ 18.) Plaintiff's trial counsel also drafted

27  subpoenas and notices to appear at trial, organized trial exhibits, and drafted the joint statement

28  of the case, statement of stipulated facts, list of proposed jury instructions, proposed CACI jury

29  instructions, Plaintiff's special jury instructions, proposed exhibit list, and fifteen (15)

1    oppositions to Defendant's Motions in limine, among other documents in anticipation of trial.

2    (SM Dec., ¶ 18; MR Dec., ¶¶ 10-11.)

3    On or about August 22, 2017, after almost twelve months of litigation, Ford served

4    Plaintiff with an Amended Offer to Compromise pursuant to the Code of Civil Procedure section

5    998 ("Amended 998 Offer"). (SM Dec., ¶ 19, Ex. D.) The Amended 998 Offer, which offered

6    Plaintiff $115,320.00, was accepted by Plaintiff on September 21, 2017. (*Id.*) This settlement

7    amount was inclusive of a full statutory "buy-back" of her defective vehicle, incidental and

8    consequential damages, and a maximum two-time civil penalty under the Song-Beverly Act.

9    (*Id.*) Additionally, in the Amended 998 Offer, Ford agreed to pay Plaintiff's attorney's fees in

10   the amount of only $5,000.00, or if Plaintiff refused, an amount to be determined by noticed

11   motion. A Notice of Settlement was filed on or about October 4, 2017. (*Id.*)

12   Plaintiff, as the prevailing party in this action, has made every reasonable effort to resolve

13   the payment of Plaintiff's attorney's fees by Ford but was forced to file this Motion with the

14   Court. (SM Dec., ¶ 20.)

15   **III.    ARGUMENT AND ANALYSIS**

16   **A.    Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action**

17   Pursuant to the terms of the parties' settlement, Plaintiff is the prevailing party in this

18   action and, under the Song-Beverly Act, entitled to recoup all reasonable attorney's fees, costs

19   and expenses as the prevailing party. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d);

20   *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay*

21   (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the

22   prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed

23   to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours

24   actually spent, absent a showing of "special circumstances" that would render such an award

25   unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is

26   entitled to a presumption of reasonableness); Pearl, California Attorney Fee Awards, at §§

27   12.14A, 12.33 (2nd Ed. 2005.)

28   In prosecuting this case, the efforts of Knight Law and Rosenstein amount to $63,275.00,

29   including drafting this motion and time anticipated to be spent preparing the reply and attending

6

1   the hearing. (SM Dec., ¶ 2, Ex. A.) Plaintiff's counsel also requests a modest 1.5 enhancement,

2   in the amount of $31,637.50, to account for the delay in payment and contingent risk posed by

3   this case. Lastly, the reimbursable costs and expenses set forth in Plaintiff's memorandum of

4   costs are $6,505.29. (SM Dec., ¶ 2, Ex. B.) In total, Plaintiff requests $101,417.75. (SM Dec.,

5   ¶ 2, Exs. A-B.)

6       **B.     The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable**

7       The Court of Appeal has expressly held the lodestar method applies to determining

8   attorney's fees under the Song-Beverly Act. (*Robertson v. Fleetwood Travel Trailers of*

9   *California, Inc.* (2006) 144 Cal.App.4th 785, 817.) The calculation of reasonable attorney's fees

10  under the Song-Beverly Act is based on the lodestar method, which entails multiplying the

11  number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford*

12  *Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.) The

13  prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably

14  necessary to the conduct of the litigation," and "reasonable in amount." (*Goglin v. BMW of North*

15  *America, LLC* (2016) 4 Cal.App.5th 462, 470.) In making such an evaluation, a court may

16  consider "factors such as the complexity of the case and procedural demands, the skill exhibited

17  and the results achieved." (*Id.*)

18      In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over

19  $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under

20  the Song-Beverly Act. (4 Cal.App.5th at 464.) The court also found plaintiff's counsel's hourly

21  rate of $575 per hour was reasonable as supported by exhibits to counsel's declaration indicating

22  various state and federal courts had previously awarded him comparable hourly rates. (*Id.* at

23  473-74.) The trial court was not obliged to consider that defendants paid their counsel a much

24  lower hourly rate. (*Id.* at 474.)

25      In *Robertson*, the court observed a prevailing buyer is entitled to an award of reasonable

26  attorney's fees for time reasonably expended by his attorney. (*Robertson, supra,* 144

27  Cal.App.4th at 817.) The court ruled the "statutory language in section 1794(d) is reasonably

28  compatible with a lodestar adjustment method of calculating attorney fees, including use of fee

29  multipliers." (*Id.* at 819.) Indeed, in *Robertson*, the trial court awarded $231,187.45 in fees

7

1   based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75,

2   and $13,566.70 for the attorney's fee motion.  (*Id.* at 817.)  The appellate court upheld the trial

3   court's ruling.  (*Id.* at 822.)

4       In *Graciano*, the trial court initially rejected plaintiff's lodestar fees of $109,468.50 and

5   request for a multiplier of 2.0.  In particular, the trial court reduced the plaintiff's attorney's

6   hourly rate from the requested $350/hour to $250/hour, which was the court's mandated

7   maximum rate for expert testimony.  Plaintiff appealed the court's decision and in particular the

8   hourly rate reduction.  The appellate court reversed, reasoning a court should determine the

9   prevailing rate in the community for comparable professional legal services.  (*Graciano, supra,*

10  144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).)  The

11  court found the plaintiff's unrebutted declarations established the proper hourly rate at $350, and

12  reducing that rate to $250 was an abuse of discretion.  (*Id.*)  The court also reaffirmed attorney's

13  fees <u>are not limited to a proportion</u> of the recovery.  (*Id.* at 164.)  On remand, the trial court found

14  that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee

15  award of over $380,000.  The attorney from *Graciano*, Hallen D. Rosner, now charges $620/hour.

16  (SM Dec., ¶ 39 (a).)

17      Furthermore, the California Supreme Court has expressly ruled that prevailing parties

18  who are entitled to recover their attorney's fees are *also entitled* to recover their fees for the time

19  spent preparing fee applications such as this one.  (*Serrano v. Unruh, supra,* 32 Cal.3d at 631;

20  *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17;

21  *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

22      The hourly rates should be considered in the context of the rates charged by Plaintiff's

23  attorneys in the metropolitan community in which they practice, as opposed to the case venue.

24  In *Horsford v. Bd. of Trustees of Cal. State Univ.,* the trial court was reversed for refusing to

25  award the higher rates to San Francisco-based attorneys who litigated a FEHA case in Fresno.

26  (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 399.)  The law

27  "requires that the *financial incentives be adjusted to attract attorneys* who are sufficient to the

28  cause. *Id.* In the absence of any realistic indication plaintiffs could have found local counsel, it

29  was an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market

rate." *Id.*   Plaintiff's attorneys' hourly rates should not vary depending on the venue of the lawsuit.  The skill and experience of Ford's attorneys does not change from venue to venue and Plaintiff's counsel deserves to be compensated at the same rate they would receive given the same quantity and quality of work they must perform regardless of the venue.

Consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth in the declarations filed concurrently herewith (SM Dec., ¶¶ 26-37), (ii) a survey of rates charged by other well-known consumer law attorneys (*Id.*, ¶ 39), (iii) over three dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (*Id.*, ¶¶ 41-83, Exs. E-UU), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (MR Dec., ¶ 8, Ex. B, at p. 42-45.)  Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.  Because of this experience, knowledge and expertise, ***Plaintiff went from a ZERO offer to a \$115,320.00 settlement***.

### 1.   The Nature and Complexity of the Litigation Support the Attorney's Fees Requested

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case.  (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.)

Ford will likely claim that "this is a simple lemon law case," and therefore Plaintiff's fee request is unjustified.  However, this case required a range of specialized knowledge: (1) an understanding of the full scope of consumer protection laws, which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations.  (SM Dec., ¶ 86.)  This case also involves fraud allegations based on Ford's ongoing misrepresentations regarding DPS6 transmissions, which were inextricably intertwined with the defective condition of the subject vehicle under the Song-Beverly Act.  Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Plaintiff here.

9

1    Moreover, Ford made this matter even more complex by maintaining it had no liability

2    and declining to submit an acceptable offer to settle the matter for almost twelve months, while

3    pursuing discovery with full force and compelling Plaintiff's counsel to litigate this matter

4    exhaustively.  Prior to commencing litigation, Plaintiff first sought relief by requesting a buyback

5    from Ford, which Ford denied.   Ford should have acknowledged the well-known defects in

6    Plaintiff's vehicle and resolved the matter before this case was ever filed.   Ford ultimately did

7    just that, but not before causing substantial fees to be incurred.

8    Ford engaged in expensive litigation, including extensive written discovery, stone-

9    walling Plaintiff's discovery efforts, demurring to the Complaint, and seeking to continue trial.

10   Ford easily could have resolved this matter earlier and saved tens of thousands in attorney's fees,

11   costs and expenses.

12   When Ford causes the entirety of fees to be incurred, it has no legitimate basis for

13   complaining about the amount of attorney's fees reasonably and actually incurred, especially

14   when Ford was given the opportunity to resolve the matter before a lawsuit was even filed.  "A

15   party cannot litigate tenaciously and then be heard to complain about the time necessarily spent

16   by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see*

17   *also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

18   ### 2. The Firm's Skill Justifies the Amount of Attorney's Fees Sought

19   A trial court may also take into account the skill of the attorneys when determining

20   reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309,

21   316.)  Despite the case's difficulties, Plaintiff ultimately recovered $115,320.00 in damages,

22   which is almost three and a half times the total amount Plaintiff paid for the vehicle.  The vehicle

23   was no more or less defective on the date of settlement than it was when Plaintiff first requested

24   a repurchase, so there is no rational explanation why Ford waged a lengthy and costly legal battle

25   only to settle for an amount that included civil penalties.

26   The final resolution is the direct result of skill and preparation by Plaintiff's attorneys,

27   who specialize in consumer law and did not balk at Ford's aggressive litigation tactics.  Plaintiff's

28   attorneys' experience in this area has enabled them to develop litigation strategies that are both

29   highly effective and cost and time efficient.  Plaintiff's attorneys know the many nuances in these

10

1  types of cases.  This specialized knowledge and experience in lemon law frequently achieves

2  results better than attorneys who do not specialize in this specific area of law.  This experience

3  provided a resolution to this matter far beyond that which Ford was previously willing to

4  entertain.  Ford engages specialized attorneys from big firms, and Plaintiff needed skilled

5  attorneys to prosecute her claims.  The biggest difference between Plaintiff getting zero and

6  Plaintiff receiving a $115,320.00 recovery was her attorneys' knowledge and expertise.

7          Counsels' skill is evidenced by the size of the settlement as well as the nominal time

8  expended on litigation tasks, which results in lower overall billing.  Plaintiff's attorneys do not

9  spend inordinate time researching because they specialize in this area of law.  (SM Dec., ¶ 87.)

10  Nor do they spend unreasonable time preparing pleadings and other documents because they are

11  able to use documents from other cases that need only be edited, rather than written from scratch.

12  While substantial fees have been incurred, those fees result from the execution of effective

13  strategies that typically result in superlative results for clients, like Plaintiff here.

14          On the other side, Ford is represented by large national firms with attorneys who

15  specialize in representing automobile manufacturers in lemon law cases.  Ford is a corporate

16  behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney.

17  Plaintiff required skilled and experienced attorneys to prosecute her claims against Ford and its

18  formidable resources.

19          **C.      The Settlement Amount Does Not Limit the Attorney's Fee Recovery**

20          Ford may argue that damages in the amount of $115,320.00 do not justify an attorney's

21  fee award in the amount requested by Plaintiff.  Such an argument is starkly against the weight

22  of the law.  The amount of attorney's fees *must not be tied to any percentage of recovery.*

23  (*Graciano, supra,* 144 Cal.App.4th at 164.)  In fact, a trial court may abuse its discretion if it

24  applies a rule of proportionality to a fee award.  The U.S. Supreme Court has previously

25  considered the question of proportionality in attorney fee awards and held: "[w]e reject the

26  proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate

27  to the amount of damages a civil rights Plaintiff actually recovers." (*City of Riverside v. Rivera*

28  (1986) 477 U.S. 561, 574; *see also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973)

29  (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not a

11

1   percentage of the recovery); *Robertson, supra,* 144 Cal.App.4th at 820; *Independent Federation*

2   *of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under Magnuson-

3   Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th at 468-69

4   (affirming award of $185,000 in fees and costs in a Song-Beverly Act case that settled for

5   $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 446

6   (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively

7   litigious and took a non-settlement posture); *Harman v. City and County of San Francisco* (2007)

8   158 Cal.App.4th 407 (affirming award of approximately $1.1 million in fees where plaintiffs

9   recovered $30,300).)

10       It is not uncommon for attorney's fees and costs to exceed the client's damages, although

11   that did not happen here because the settlement was so large and the fees were efficiently

12   incurred.  The Legislature acknowledged that substantial work might be needed to prosecute such

13   claims against large corporation, which is the reason behind the fee shifting provision of the

14   Song-Beverly Act.  (SM Dec., ¶ 85.)  "The purpose of statutory attorney fee provisions is to

15   provide financial incentives necessary for the private enforcement of important civil rights."

16   (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)  Thus, the Song-Beverly Act gives consumers

17   the opportunity to seek legal redress even if their damages would not be high enough to warrant

18   legal representation.  The award of attorney's fees *cannot* be limited by the damages recovered

19   by Plaintiff.  Any argument by Ford to the contrary would be disingenuous, as the law is clear on

20   this point.  (*Ketchum, supra,* 24 Cal.4th at 1132.)

21       **D.    Plaintiff Should Be Granted a Lodestar Multiplier**

22       As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier,

23   sometimes referred to as an adjustment or enhancement.  (*Robertson, supra,* 144 Cal.App.4th at

24   817.)  Once a lodestar amount is determined, which involves a "careful compilation of the actual

25   time spent and reasonable hourly compensation for each attorney," (*Id.* at 819 (*citing Serrano v.*

26   *Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III*)), the amount may then be augmented by taking

27   various relevant factors into account, including (1) the novelty and difficulty of the questions

28   involved and the skill displayed in presenting them; (2) the extent to which the nature of the

29   litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee

award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award. (*Id.*; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler*, 22 Cal.4th at 1096.) "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).) "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on." (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.)

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." (144 Cal.App.4th at 819.) The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fees motion. (*Id.* at 817.) The appellate court held the trial court properly conducted a lodestar analysis and the award was not an abuse of discretion. (*Id.* at 822.)

In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier for a total award of over $380,000. (144 Cal.App.4th at 156.) The court also reaffirmed attorney's fees are not limited to a proportion of the recovery. (*Id.* at 164.)

Ford may argue a multiplier is not permitted, and cite to the *Ketchum* case to support that argument. To the contrary, *Ketchum* actually <u>confirms</u> the granting of a multiplier in contingency fee cases. (*Ketchum, supra,* 24 Cal.4th at 1132.) A lodestar multiplier is in fact available and it has been awarded to Plaintiff's counsel in multiple cases. (SM Dec., ¶¶ 54, 58, 67, 68, 70, 71, 75, 81, 82, 83, Exs. R, V, EE, FF, HH, II, MM, SS, TT, UU.)

### 1.   The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in

1   payment associated with taking a contingent case, as well as the result achieved.  The lodestar

2   "multiplier" is meant to increase or decrease the fee award based on factors not already taken

3   into account when setting the hourly rate, such as the <u>risk</u> of taking a case on a contingency basis,

4   and <u>delay</u> in receiving payment.  (*Horsford, supra,* 132 Cal. App. 4th at 394-95.)

5       In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it

6   involves a gamble on the result, may properly provide for a *larger compensation* than would

7   otherwise be reasonable."  (24 Cal.4th at 1132 [emphasis added].)

8       <u>A contingent fee must be higher than a fee for the same legal services paid as they</u>
    <u>are performed.</u>  The contingent fee compensates the lawyer not only for the legal

9   services he renders but for the loan of those services.  The implicit interest rate on
    such a loan is higher because the risk of default (the loss of the case, which cancels

10  the debt of the client to the lawyer) is much higher than that of conventional loans.
    (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.)

11  <u>A lawyer who both bears the risk of not being paid and provides legal services is</u>
    <u>not receiving the fair market value of his work if he is paid only for the second of</u>

12  <u>these functions.</u>  If he is paid no more, competent counsel will be reluctant to
    accept fee award cases.

13

14  (*Id.* at 1132 [citations omitted; emphasis added].)

15      Throughout the litigation, there always existed the possibility Plaintiff would not prevail.

16  The risk was further compounded by the fact that Ford served a 998 offer that Plaintiff would

17  have to "beat" for counsel to be compensated, on top of which Plaintiff's attorneys advanced all

18  litigation costs and expenses without reimbursement.  Thus, if Plaintiff did not prevail, her

19  attorneys would have suffered a substantial loss of uncompensated attorney hours and thousands

20  of dollars in out-of-pocket expenses.  Plaintiff requests a 0.2 enhancement based on that risk.

21      Further, Ford dragged this case out for about ten months before making an acceptable

22  offer.  Unlike Ford's attorneys, who are paid monthly regardless of outcome, Plaintiff's attorneys

23  are not paid at all if they lose, and need to absorb significant delay in being paid if Plaintiff does

24  win.  On account of the substantial delay in payment, Plaintiff requests a 0.3 enhancement.

25      Based on the risk of taking this case on a contingent fee basis and the delay in payment

26  since August 2016, Plaintiff requests a nominal multiplier of 1.5.

27

28      **E.**   <u>**Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred**</u>
           <u>**in Connection with this Action**</u>

29

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1   Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the

2   judgment a sum equal to the aggregate amount of costs and expenses.  (Civ. Code § 1794(d)

3   [emphasis added].)  The California Legislature intended the word "expenses" to cover outlays

4   not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative

5   history demonstrates the Legislature exercised its power to permit recovery of a host of litigation

6   expenditures beyond those permitted by Code of Civil Procedure § 1033.5. (*Jensen v. BMW of*

7   *North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

8   A verified memorandum of costs generally satisfies the moving party's burden of

9   establishing costs were necessarily incurred.  (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677,

10   682.)  The verified memorandum of costs demonstrates what Plaintiff's attorneys incurred in

11   costs and expenses prosecuting this matter, which counsel advanced on Plaintiff's behalf.  (SM

12   Dec. ¶ 2, Ex. B; Civ. Code § 1794(d).)  The burden shifts to Ford to properly rebut the claimed

13   costs.

14                         **IV.    CONCLUSION**

15   For the reasons above, Plaintiff respectfully requests this Honorable Court award attorney's fees,

16   costs and expenses as follows:

17
|  |  |
|---|---|
| Lodestar Fees: | $ 63,275.00 |
| +Lodestar Enhancement: | $ 31,637.50 |
| Total Fees Requested: | $ 94,912.50 |
| +Costs and Expenses: | $   6,505.29 |
| **=Total Fees and Costs/Expenses:** | **$ 101,417.75** |

21   Dated: February 8, 2018                    **KNIGHT LAW GROUP, LLP**

22

23

24                                        By: _____

25                                        Steve Mikhov (SBN 224676)
                                         Attorneys for Plaintiff,
26                                        **LORENA CORTEZ**

27

28

29

15

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action. My business address is 1801 Century Park East, Suite 2300, Los Angeles, CA 90067.

I served the foregoing document described as:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Warren E. Platt, Esq.              Michael H. Rosenstein, Esq.
SNELL & WILMER LLP                 Law Offices of Michael H. Rosenstein
600 Anton Blvd., Suite 1400        1801 Century Park East., Suite 2300
Costa Mesa, CA 92626               Los Angeles, CA 90067
**Counsel for Defendant,**         **Associated Counsel for Plaintiff,**
**FORD MOTOR COMPANY**             **LORENA CORTEZ**
(via Mail only)                      (via E-mail only)

XX     BY MAIL:  I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day following ordinary business practices, addressed to the above-referenced attorney.

XX     BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 8, 2018 at Los Angeles, California.

_____
MIRKA ARELLANO

-1-

PROOF OF SERVICE