Hitomi L v Ford 35594-00060
VAC, AAA, SMB, MBL, KSW,
KH, AC, JW, LM, KS, STS
OCMail _____ KSW

1   **KNIGHT LAW GROUP, LLP**
2   Steve Mikhov (SBN 224676)
    Kristina Stephenson-Cheang (SBN 259057)
3   1801 Century Park East, Suite 2300
    Los Angeles, CA 90067
4   Telephone: (310) 552-2250
    Fax: (310) 552-7973
5
6   **WIRTZ LAW APC**
7   Richard M. Wirtz (SBN 137812)
    4365 Executive Drive, Suite 1460
8   San Diego, CA 92121
    Telephone: (858) 259-5009
9   Fax: (858) 259-6008
10  Attorneys for Plaintiffs,
11  LINDSEY HITOMI
    and DEBRA A. HITOMI

> Received
>
> JAN 0 9 2018
>
> Snell & Wilmer

12
13              **SUPERIOR COURT OF CALIFORNIA**
                      **COUNTY OF ORANGE**
14

15  **LINDSEY HITOMI**              Case No.: 30-2016-00847294-CU-BC-CJC
    **and DEBRA A. HITOMI,**
16                                  Unlimited Jurisdiction
17              Plaintiffs,
                                    **PLAINTIFFS' MEMORANDUM OF**
18       vs.                        **POINTS AND AUTHORITIES IN**
                                    **SUPPORT OF MOTION FOR**
19                                  **ATTORNEY'S FEES, COSTS AND**
                                    **EXPENSES**
20  **FORD MOTOR COMPANY, a Delaware**
    **Corporation, and DOES 1 through 10,**  [Filed Concurrently with Plaintiffs' Notice
21  **inclusive,**                 of Motion and Motion for Attorney's Fees,
                                    Costs and Expenses; Declarations of Steve
22                                  Mikhov and Richard M. Wirtz in Support of
23              Defendants.         Motion]
24
                                    **Date:** March 8, 2018
25                                  **Time:** 2:00 p.m.
                                    **Dept.:** C15
26                                  **Reservation No.** 72728880
27
28                                  Hon. Peter Wilson

TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS ......................................................................2

III.  ARGUMENT AND ANALYSIS .............................................................5

      A.   Plaintiffs' Attorneys Are Entitled to Fees, Costs and Expenses in this Action ...........................................................................................5

      B.   The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable .................6

           1.   The Nature and Complexity of the Litigation Support the Attorney's Fees Requested ......................................................8

           2.   The Firm's Skill Justifies the Amount of Attorney's Fees Sought ....................................................................................9

      C.   The Settlement Amount Does Not Limit the Attorney's Fee Recovery ..........10

      D.   Plaintiffs Should Be Granted a Lodestar Multiplier .........................................11

           1.   The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment ............................13

      E.   Plaintiffs are Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action .............................14

IV.   CONCLUSION .....................................................................................15

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Cases</u>

4

*Cazares v. Saenz,*
    (1989) 208 Cal.App.3d 279 ........................................................................12

5

*City of Riverside v. Rivera*
    (1986) 477 U.S. 561 ...................................................................................10

6

7

*Dietrich v. Dietrich*
    (1953) 41 Cal.2d 497 ...................................................................................8

8

9

*En Palm, LLC v. Teitler*
    (2008) 162 Cal.App.4th 770 .........................................................................9

10

*Goglin v. BMW of North America, LLC*
    (2016) 4 Cal.App.5th 462 ......................................................................6, 11

11

12

*Graciano v. Robinson Ford Sales*
    (2006) 144 Cal.App.4th 140 ................................................................. passim

13

14

*Graham v. DaimlerChrysler Corp.*
    (2004) 34 Cal.4th 553 .............................................................................5, 12

15

*Hadley v. Krepel*
    (1985) 167 Cal.App.3d 677 .........................................................................14

16

17

*Harman v. City and County of San Francisco*
    (2007) 158 Cal.App.4th 407 .......................................................................11

18

19

*Horsford v. Bd. of Trustees of Cal. State Univ.*
    (2005) 132 Cal. App. 4th 359 .....................................................................13

20

*In re Chiron Corp. Securities Litigation*
    (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 ..............12

21

22

*Independent Federation of Flight Attendants v. Zipes*
    (1989) 491 U.S. 754 ...................................................................................11

23

24

*Jensen v. BMW of North America, Inc.*
    (1995) 35 Cal.App.4th 112 .........................................................................14

25

*Ketchum v. Moses,*
    (2001) 24 Cal.4th 1122 ..................................................................11, 12, 13

26

27

*La Mesa-Spring Valley School Dist. v. Otsuka*
    (1962) 57 Cal.2d 309 ....................................................................................... 9

*Los Angeles Police Protective League v. City of Los Angeles*
    (1986) 188 Cal.App.3d 1 ................................................................................... 8

*Mandel v. Lackner*
    (1979) 92 Cal.App.3d 747 ................................................................................ 5

*Molski v. Arclero Wine Group*
    (2008) 164 Cal.App.4th 786 ............................................................................. 9

*PLCM Group v. Drexler, supra*
    (2000) 22 Cal.4th 1084 ................................................................................7, 12

*Reveles v. Toyota by the Bay*
    (1997) 57 Cal.App.4th 1139 ............................................................................. 5

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
    (2006) 144 Cal.App.4th 785 ..................................................................... passim

*Serrano v. Priest*
    (1977) 20 Cal.3d 25 (*Serrano III*) ................................................................ 11

*Serrano v. Unruh,*
    (1982) 32 Cal.3d 621 ....................................................................................5, 7

*Vo v. Las Virgenes Municipal Water District*
    (2000) 79 Cal.App.4th 440 .............................................................................. 11

<u>Statutes and Codes</u>

California Code of Civil Procedure
    Section 1032(a)(4) ............................................................................................ 5

California Code of Civil Procedure
    Section 1033.5 ................................................................................................. 14

California Code of Civil Procedure
    Section 1794(d) ...................................................................................2, 5, 7, 12

California Code Of Civil Procedure
    Section 998 ..................................................................................................... 1, 5

United States Code
    Title 15, Section 2301 et seq. (Magnuson Moss Warranty Act) ...................... 11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

1

Other Authorities

2   Pearl, *California Attorney Fee Awards*
         Sections 12.14A, 12.33 (2nd Ed. 2005) .............................................................6

3

4   Sen. Report No. 93-151,
         1st Sess., pp. 23 (1973) ...................................................................................10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## I.   INTRODUCTION

Defendant Ford Motor Company (hereafter "Ford") had three opportunities to avoid this lawsuit: It had an opportunity to build a quality car. It then had an opportunity to repair Plaintiffs' car within a reasonable number of repair attempts. Ford had a final opportunity when Plaintiffs contacted Ford and asked for relief, and Ford failed to provide relief despite its legal obligation. Having squandered all three opportunities and violating the Song-Beverly Act in the process, Ford left Plaintiffs with little choice but to pursue their rights in court.

On April 7, 2013, Plaintiffs leased a new 2013 Ford Focus for a total gross capitalized cost of $22,300.00. In less than thirty-four months of ownership, Plaintiffs had to take their vehicle to Ford service on three separate occasions for repeated unsuccessful repair attempts of the car's defective transmission. Plaintiffs then contacted Ford customer service in order to request that Ford repurchase their defective vehicle, but Ford failed to uphold its legal obligation and flatly refused to do so. Knowing that Ford had willfully violated Plaintiffs' rights and that Ford had refused to informally resolve the matter, Knight Law was retained by Plaintiffs and forced to file this case.

On August 20, 2017, sixteen months after the complaint was filed, Ford served Plaintiffs with an Offer to Compromise under California Code of Civil Procedure § 998 ("998 Offer") in the amount of $45,000.00, inclusive of a full statutory "buy-back" of the defective vehicle, incidental and consequential damages, as well as a civil penalty greater. Plaintiffs accepted Ford's 998 Offer on September 6, 2017. The final settlement is over two times the total amount Plaintiffs paid for the vehicle. By any analysis, Plaintiffs achieved a superlative settlement given Ford's initial refusal to address Plaintiffs' expressed concerns about the defective nature of their vehicle. The settlement is, in essence, one that few, if any, firms in this state could achieve for its clients. The excellent result was achieved due to Plaintiffs' attorneys' skill and expertise in lemon law cases but, arguably, the biggest factor in Plaintiffs' success was Plaintiffs' attorneys' zealous representation of Plaintiffs best legal interests.

1

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Civil Code sections 1790, *et seq.*, entitles Plaintiffs to seek reasonable attorney's fees, costs and expenses from Ford. Moreover, as the prevailing party in this case, Plaintiffs elected to bring this noticed motion for attorney's fees.  Plaintiffs now move the Court: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $61,787.50, (2) for a modest "lodestar" modifier of 1.5, in the amount of $30,893.75, and (3) to award actual costs and expenses incurred in the amount of $13,866.86.  Civ. Code § 1794(d).  Plaintiffs request a total of $106,548.11 in attorney's fees, costs and expenses.  (Declaration of Steve Mikhov ("SM Dec.,") ¶ 2, Exs. A-B; Declaration of Richard M. Wirtz ("RW" Dec.,") ¶ 10, Ex. A.)

## II.   STATEMENT OF FACTS

Plaintiffs leased a new 2013 Ford Focus on April 7, 2013 for three years and a total gross capitalized cost of $22,300.00.  (SM Dec., ¶ 3, Ex. C.)  The vehicle was manufactured by Ford Motor Company (hereafter "Ford"), which provided an express written warranty.  (SM Dec., ¶ 3.) About two years after leasing their vehicle, Plaintiffs presented the vehicle to a Ford-authorized repair facility for two days of transmission service, which included replacement of the clutch assembly.  (SM Dec., ¶ 4.)  About six months later, Plaintiffs had to return their vehicle to Ford service for two more days of transmission service, involving another replacement clutch assembly, and a manufacturer-mandated recall.  (SM Dec., ¶ 4.)  Plaintiffs operated their vehicle for less than 3,000 miles before having to return it to Ford service for three more days of repairs on the defective transmission, which persisted to slip, rattle, and roughly shift into gear.  (SM Dec., ¶ 4.)  In total, Plaintiffs presented their vehicle for transmission repairs on three (3) separate occasions in less than thirty-four months of ownership, during which its Drivetrain and Transmission Warranties were in effect.  (SM Dec., ¶ 4.)  Repeated failed attempts to repair the defective transmission left Plaintiffs without the use of their vehicle for a total of seven (7) days. (SM Dec., ¶ 4.)

Despite the ongoing repairs and continued manifestation of problems, Ford refused to

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

acknowledge the defective nature of the vehicle. (SM Dec., ¶ 5.) At all times, Ford had direct, contemporaneous knowledge of the vehicle's issues, which it records in a database called "OASIS" and a warranty repair history database called the "AWS." (SM Dec., ¶ 5.) These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem attributable to Ford, and billed Ford for the work. (SM Dec., ¶ 5.)

Despite Ford's affirmative duty under the Song-Beverly Act to repurchase or replace a defective vehicle after a reasonable number of repair attempts, Ford never offered Plaintiffs a buyback or replacement. (SM Dec., ¶ 6.) In fact, before hiring counsel, Plaintiffs contacted Ford customer service directly on or about January 28, 2016 in order to request buyback of their defective vehicle. (SM Dec., ¶ 6.) On the very next day, Ford disregarded its statutory obligation and denied Plaintiffs' repurchase request. (SM Dec., ¶ 6.) Moreover, Ford suggested Plaintiffs attempt to resolve their issues by engaging in the Better Business Bureau's mediation process. (SM Dec., ¶ 6.)

Plaintiffs then contacted Knight Law and told the firm about the problems with their vehicle and the way Ford treated them. (SM Dec., ¶ 7.) After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a contingent basis. (SM Dec., ¶ 7.) The firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs. (SM Dec., ¶ 7.)

Due to Ford's failure to address Plaintiffs' concerns about the defective nature of their vehicle, Plaintiffs filed their complaint in this action on April 19, 2016. (SM Dec., ¶ 8.) About a month later, Ford responded by filing a demurer to the complaint. (SM Dec., ¶ 8.) The hearing for Defendant's demurrer occurred on August 11, 2016 and the Court overruled Ford's demurrer. (SM Dec., ¶ 8.) About five weeks later, Ford finally filed its answer denying all liability and asserting numerous affirmative defenses. (SM Dec., ¶ 8.) Plaintiffs' counsel promptly began working up the case on behalf of Plaintiffs by serving initial written discovery on Ford on or

about September 20, 2016, consisting of requests for admissions, requests for production of documents, special and form interrogatories. (SM Dec., ¶ 8.) Plaintiffs again benefitted from Knight Law's expertise in litigating against Ford as just 4.5 hours were billed for drafting the entirety of this discovery. (SM Dec., ¶ 8.)

Due to Ford's improper objections and/or incomplete responses to Plaintiffs' written discovery, Plaintiffs began meet and confer efforts in December 2016. (SM Dec., ¶ 9.) Plaintiffs' meet and confer efforts finally elicited supplemental discovery responses from Defendant in March 2017. (SM Dec., ¶ 9.) Ford's vigorous defense of the case included propounding requests for production of documents, requests for admissions, special interrogatories, and form interrogatories upon Plaintiffs in April 2017. (SM Dec., ¶ 9.) At the same time, Ford noticed Plaintiffs' deposition and demanded an inspection of their defective vehicle. (SM Dec., ¶ 9.) On April 19, 2017, the parties attended mediation in an attempt to resolve their dispute, but were unsuccessful in doing so. (SM Dec., ¶ 9.)

With the absence of any reasonable settlement offer from Ford accounting for its willful violation of the Song-Beverly Act, the case appeared likely to go to trial. (SM Dec., ¶ 10.) Accordingly, on or about May 23, 2017, Wirtz Law formally associated into the case as lead trial counsel. (SM Dec., ¶ 10; RW Dec. ¶ 11, Exhibit B.)

Around the same time, Plaintiffs noticed the depositions of several Ford employees, including service advisors, service technicians, Ford's PMQ and PMK. (SM Dec., ¶ 11.) These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiffs' vehicle were somehow caused by Plaintiffs' neglect or abuse. (SM Dec., ¶ 11.) True to form, Ford served objections to several of the noticed depositions. (SM Dec., ¶ 11.) Despite Defendant's numerous objections, many of the depositions were conducted. (SM Dec., ¶ 11.) In turn, Defendant conducted the Plaintiffs' depositions as well. (SM Dec., ¶ 11.) The parties also designated experts and drafted motions in limine in anticipation of trial. (SM Dec., ¶ 11.)

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

1  Nevertheless, Defendant moved ex parte to continue the imminent trial date in early August

2  2017. (SM Dec., ¶ 11.) Later that same month, Defendant moved ex parte for leave to amend its

3  answer. (SM Dec., ¶ 11.) On or about August 25, 2017, Defendant filed its amended answer.

4  (SM Dec., ¶ 11.)

5       On July 14, 2017, almost fifteen months after the complaint was filed in this action, Ford

6  served Plaintiffs with an Offer to Compromise pursuant to the Code of Civil Procedure section

7  998 ("First 998 Offer"). (SM Dec., ¶ 12.) Plaintiffs objected to and rejected Defendant's vague

8  and ambiguous First 998 Offer. (SM Dec., ¶ 12.) On August 20, 2017, Ford served Plaintiffs

9  with another Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("Second

10  998 Offer"). (SM Dec., ¶ 12.) The Second 998 Offer, which offered Plaintiffs $45,000.00, was

11  accepted by Plaintiffs on September 6, 2017. (SM Dec., ¶ 12.) This settlement amount was

12  inclusive of a full statutory "buy-back" of the defective vehicle, incidental and consequential

13  damages, as well as a civil penalty, an acknowledgment of Ford's wrongdoing. (SM Dec., ¶ 12.)

14  Moreover, the 998 Offer stipulated that Plaintiffs are the prevailing party in this action and

15  provided for Plaintiffs' attorney's fees to be decided by the Court on noticed motion. (SM Dec.,

16  ¶ 12.)

17              **III.    ARGUMENT AND ANALYSIS**

18       A.    **Plaintiffs' Attorneys Are Entitled to Fees, Costs and Expenses in this Action**

19       By agreement, Plaintiffs are the prevailing party in this action and entitled to recoup all

20  their reasonable attorney's fees, costs and expenses.  Code Civ. Proc. § 1032(a)(4); Civ. Code §

21  1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the*

22  *Bay* (1997) 57 Cal.App.4th 1139. Absent a contrary showing, both the number of hours that the

23  prevailing party's attorney spent litigating the case and his or her regular hourly rate are

24  presumed to be reasonable. *Serrano v. Unruh*, 32 Cal.3d 621, 639 (1982) (counsel is entitled to

25  all hours actually spent, absent a showing of "special circumstances" that would render such an

26  award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly

27

5

1  rate is entitled to a presumption of reasonableness); Pearl, <u>California Attorney Fee Awards</u>, at §§

2  12.14A, 12.33 (2nd Ed. 2005.)

3         In prosecuting this case, the efforts of Knight Law amount to $30,762.50, (SM Dec., ¶ 2,

4  Ex. A.) The billings by Wirtz Law total $31,025.00. (RW Dec., ¶ 10, Ex. A.) The total billing

5  incurred by both offices for the entire litigation is $61,787.50. Plaintiffs' counsel also requests a

6  modest 1.5 enhancement, in the amount of $30,893.75 to account for the delay in payment and

7  the contingent risk posed by this case. Lastly, the reimbursable costs and expenses set forth in

8  Plaintiffs' memorandum of costs are $13,866.86.   (SM Dec., ¶ 2, Ex. B.) In total, Plaintiffs

9  request $106,548.11. (SM Dec., ¶ 2, Exs. A-B; RW Dec., ¶ 10, Ex. A.)

10        **B.      The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable**

11        The Court of Appeal has expressly held the lodestar method applies to determining

12  attorney's fees under the Song-Beverly Act.   *Robertson v. Fleetwood Travel Trailers of*

13  *California, Inc.* (2006) 144 Cal.App.4th 785, 817.  The calculation of reasonable attorney's fees

14  under the Song-Beverly Act is based on the lodestar method, which entails multiplying the

15  number of hours reasonably expended by a reasonable hourly rate.  *Graciano v. Robinson Ford*

16  *Sales* (2006) 144 Cal.App.4th 140, 154.  The prevailing party has the burden of showing that the

17  fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and

18  "reasonable in amount." *Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470.

19  In making such an evaluation, a court may consider "factors such as the complexity of the case

20  and procedural demands, the skill exhibited and the results achieved." *Id.*

21        In *Goglin,* the appellate court recently affirmed the trial court's award of over $185,000

22  in attorney's fees and costs for a plaintiff who settled her claims against BMW (represented by

23  Lehrman Law) under the Song-Beverly Act just before trial.  *Id.* at 464.  First, the court found

24  the fees requested were reasonably necessary despite defendant's claim that plaintiff

25  unreasonably refused to accept BMW's prior settlement offers. *Id.* at 471-72. Second, the fees

26  were reasonable based on the complexity of the case and the amount of litigation activity

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1   involved: plaintiff had to conduct discovery, prepare to prove liability and prepare to counter the

2   affirmative defenses. *Id.* at 473. Finally, plaintiff's counsel's hourly rate of $575 per hour was

3   found reasonable as supported by counsel's declaration indicating that various state and federal

4   courts had previously awarded him comparable hourly rates. *Id.* at 473-74. The trial court was

5   not obliged to consider that defendants paid their counsel a much lower hourly rate. *Id.* at 474.

6       In *Robertson*, the court observed a prevailing buyer is entitled to recoup reasonable

7   attorney's fees for time reasonably expended by his attorney. *Robertson*, 144 Cal.App.4th at 817.

8   The court ruled the "statutory language in section 1794(d) is reasonably compatible with a

9   lodestar adjustment method of calculating attorney fees, including use of fee multipliers." *Id.* at

10  819. The court awarded $231,187.45 in fees based on $145,080.50 in fees through trial, plus a

11  "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for the attorney's fee motion. *Id.*

12  at 817. The appellate court upheld the award. *Id.* at 822.

13      In *Graciano*, the trial court initially rejected plaintiff's lodestar fees of $109,468.50 and

14  request for a multiplier of 2.0. In particular, the trial court reduced the plaintiff's attorney's

15  hourly rate from $350/hour to $250/hour, which was the court's mandated maximum rate for

16  expert testimony. The appellate court reversed, reasoning a court should determine the prevailing

17  rate in the community for comparable professional legal services. *Graciano,* 144 Cal.App.4th at

18  156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095). The court found the

19  plaintiff's unrebutted declarations established the proper hourly rate at $350, and reducing that

20  rate to $250 was an abuse of discretion. *Id.* The court also reaffirmed attorney's fees <u>are not</u>

21  <u>limited to a proportion</u> of the recovery. *Id.* at 164. On remand, the trial court found that the

22  lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee award of

23  over $380,000.00. The attorney from *Graciano*, Hallen D. Rosner, now charges $620/hour. (SM

24  Dec., ¶ 27(a).) Furthermore, the California Supreme Court has expressly ruled that prevailing

25  parties who are entitled to recover their attorney's fees are *also entitled* to recover their fees for

26  the time spent preparing fee applications such as this one. *Serrano v. Unruh, supra,* 32 Cal.3d at

27

7

1   631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17;

2   *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).

3         Consideration of the "lodestar" factors compels an award of attorney's fees based on (i)

4   the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 18-25),

5   (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 27(a)-

6   (g)), and (iii) over three dozen court orders confirming the reasonableness of Plaintiff's counsels'

7   hourly rates and time billed in other Song-Beverly Act cases (SM Dec., ¶¶ 29-68, Exs. E-RR),

8   and (iv) a published report entitled, United States Consumer Law Attorney Survey Report

9   reporting on annual 2015-2016  hourly rates and determined the rates charged are commensurate

10   with the rates charged by other attorneys. (RW Dec., ¶ 14, Ex. C, Pages 42-45.) Plaintiffs'

11   counsels' rates are within the range of rates charged by other attorneys with similar experience in

12   this area of law.

13         **1.   The Nature and Complexity of the Litigation Support the Attorney's Fees**

14              **Requested**

15         Determining the amount of reasonable attorney's fees may involve consideration of the

16   nature and complexity of the case. *Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506.  Ford is likely

17   to claim that "this is a simple lemon law case," and therefore Plaintiffs' fee request is unjustified.

18   Lemon law cases are not routinely simple actions.   This case required a range of specialized

19   knowledge, such as: (1) an understanding of the full scope of consumer protection laws, which

20   are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated

21   with them, as well as knowledge concerning how to investigate issues with automobiles; and (3)

22   knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and

23   complying with their legal obligations.  (SM Dec., ¶ 71.)  Plaintiffs' attorneys have acquired vast

24   knowledge and insight concerning these issues and this experience has driven typically

25   superlative client results.

26         Moreover, Ford itself made this matter more complex by maintaining it had no liability

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1  and holding out for over sixteen months of litigation before finally making a reasonable

2  settlement offer.   Prior to commencing litigation, Plaintiffs contacted Ford and requested a

3  buyback of their defective vehicle, and Ford declined to uphold its statutory obligation to provide

4  relief by repurchasing the malfunctioning vehicle. Ford is an expert and should have recognized

5  the defects in Plaintiffs' vehicle and resolved the matter before this case was ever filed.

6  Ultimately, Ford came around to doing the right thing, but not before causing substantial fees to

7  be incurred.

8       Ford engaged in expensive litigation, deposed Plaintiffs, propounded written discovery,

9  stone-walled Plaintiffs' legitimate discovery efforts, forcing Plaintiffs to initiate a "meet and

10  confer" process to elicit required discovery responses.   With little effort, Ford could have

11  resolved this matter much earlier and saved tens of thousands in attorney's fees, costs and

12  expenses by doing so.

13       When Ford causes the entirety of fees to be incurred, it has no legitimate basis for

14  complaining about the amount of attorney's fees reasonably and actually incurred, especially

15  when Ford was given the opportunity to resolve the matter before a lawsuit was even filed. "A

16  party cannot litigate tenaciously and then be heard to complain about the time necessarily spent

17  by the opposition in response." *En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see*

18  *also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.

19       **2.   The Firm's Skill Justifies the Amount of Attorney's Fees Sought**

20       A trial court may also take into account the skill of the attorneys when determining

21  reasonable attorney fees. *La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309,

22  316.   Despite the case's difficulties, Plaintiffs ultimately recovered $45,000.00 in damages,

23  which is over two times the vehicle's gross capitalized cost (almost 4.75 years ago), and a

24  superb recovery for a lemon law case. There is no rational explanation why Ford waged a

25  lengthy and costly legal battle only to settle for a sum that included a civil penalty which serves

26  as an in acknowledgment of its wrongdoing.

27

9

1        Plaintiffs' attorneys' experience has enabled them to develop litigation strategies that are

2    highly effective and both cost and time efficient.  Plaintiffs' attorneys' specialized knowledge

3    and experience in lemon law frequently results in outcomes far better than those obtained by

4    attorneys who do not specialize in this specific area.  Because of this experience, knowledge and

5    expertise, Plaintiffs went *from a ZERO offer to a $45,000.00 settlement*.

6        Counsels' skill is evidenced by the size of the settlement as well as the relatively nominal

7    time expended on various tasks, which results in lower overall billing.  Plaintiffs' attorneys don't

8    spend inordinate time researching the law because they already know it.  (SM Dec., ¶ 72.)  Nor

9    do they spend unreasonable time preparing pleadings and other documents because they have an

10   archive of documents from other files that can be reused with an edit rather than written from

11   scratch.  (SM Dec., ¶ 72.) On the other side, Ford was represented by a large law firm with

12   attorneys who specialize in the defense of lemon law cases.  Ford is a corporate giant with the

13   resources to easily overwhelm a typical consumer or inexperienced attorney.  Plaintiffs required

14   skilled and experienced attorneys to prosecute their claims against Ford.  Plaintiffs' attorneys

15   were well-suited for this task.

16       **C.**    **The Settlement Amount Does Not Limit the Attorney's Fee Recovery**

17       Plaintiffs' settlement of $45,000.00 is substantial, but its size is irrelevant to the issue of

18   attorney's fees.  Ford will likely argue Plaintiffs' attorneys' fees should be in proportion to

19   Plaintiffs' recovery, but its position is legally untenable and starkly against the weight of

20   California law.  Simply put, <u>Plaintiffs' attorney's fees must not be tied to any percentage of</u>

21   <u>recovery</u>.  *Graciano, supra,* 144 Cal.App.4th at 164.  In fact, a trial court may abuse its

22   discretion if it applies a rule of proportionality to a fee award.  The U.S. Supreme Court has

23   previously considered the question of proportionality in attorney fee awards and held: "[w]e

24   reject the proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be

25   proportionate to the amount of damages a civil rights plaintiff actually recovers."  *City of*

26   *Riverside v. Rivera* (1986) 477 U.S. 561, 574. *See also* Sen. Report No. 93-151, 1ˢᵗ Sess., pp. 23-

27

1   24 (1973) (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not

2   a percentage of the recovery); *Robertson, supra,* 144 Cal.App.4th at 820; *Independent*

3   *Federation of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under

4   Magnuson-Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th

5   at 468-69 (affirming award of $185,000 in fees and costs in a Song-Beverly Act case that settled

6   for $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 446

7   (affirming $470,000 fee award after $40,000 judgment because defendant was excessively

8   litigious.); *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407 (affirming

9   award of 1.1 million in fees where plaintiff recovered $30,300).

10        It is not uncommon for attorney's fees and costs to exceed the client's damages.  The

11   Legislature acknowledged such a circumstance, which is the reason behind the fee shifting

12   provision of the Song-Beverly Act.  (SM Dec., ¶ 70.)  Otherwise, consumers would be left

13   without opportunity for redress when their damages were not enough for an attorney to take the

14   case on a contingent fee or hourly rate basis.  The award of attorney's fees *cannot* be limited by

15   the damages recovered by Plaintiffs.  Any argument by Ford to the contrary would be insincere,

16   as the law is clear on this point.  *Ketchum v. Moses,* 24 Cal.4th 122, 1138 (2001).

17        **D.     Plaintiffs Should Be Granted a Lodestar Multiplier**

18        As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar

19   multiplier, sometimes referred to as an adjustment or enhancement.  *Robertson, supra,* 144

20   Cal.App.4th at 817.   Once a lodestar amount is determined, which involves a "careful

21   compilation of the actual time spent and reasonable hourly compensation for each attorney," *Id.*

22   at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III),* the amount may then

23   be augmented by taking various relevant factors into account, including (1) the novelty and

24   difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to

25   which the nature of the litigation precluded other employment by the attorneys; and (3) the

26   contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1    establishing eligibility for the award. *Id; see also Graham, supra,* 34 Cal.4th at 579; *PLCM*

2    *Group v. Drexler,* 22 Cal.4th at 1096. "[T]he purpose of a fee enhancement is primarily to

3    compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in

4    contingency cases." *Ketchum,* 24 Cal.4th 122 at 1138; *Cazares v. Saenz,* 208 Cal.App.3d 279,

5    287-88 (1989) (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing). "A 50

6    percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a

7    multiplier of 4, and so on." *In re Chiron Corp. Securities Litigation* 2007 WL 4249902, *9.

8        In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the

9    "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment

10   method of calculating attorney fees, including use of fee multipliers." *Id.* at 819. The trial court

11   awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial,

12   plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fees

13   motion. *Id.* at 817. The appellate court held the trial court properly conducted a lodestar

14   analysis and the award was not an abuse of discretion. *Id.* at 822.

15       In *Graciano*, the appellate court actually *increased* the trial court's award of fees after

16   finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier

17   for a total award of over $380,000. *Graciano,* 144 Cal.App.4th at 156. The trial court had

18   initially reduced plaintiff's request for fees down to $250/hour and rejected the 2.0 lodestar

19   multiplier. *Id.* at 147. The court found the plaintiff's unrebutted declarations established the

20   proper hourly rate at $350, and reducing that rate to $250 was an abuse of discretion. *Id.* The

21   court also reaffirmed attorney's fees are not limited to a proportion of the recovery. *Id.* at 164.

22       Ford may argue a multiplier is not permitted, and cite to the *Ketchum* case in support that

23   argument. Unfortunately for Ford, *Ketchum* <u>does not</u> hold a multiplier is improper. To the

24   contrary, *Ketchum* actually <u>confirms</u> the granting of a multiplier in contingency fee cases.

25   *Ketchum,* 24 Cal.4th at 1132. A lodestar multiplier is, in fact, available and it has been awarded

26   to Plaintiff's counsel in multiple cases. (SM Dec., ¶¶ 39, 43, 52, 53, 55, 56, 60, 66, 67, 68, Exs.

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1  O, S, BB, CC, EE, FF, JJ, PP, QQ, RR.)

2      **1.   The Lodestar Multiplier Should Be Granted in Contingent Cases Due to**

3          **Risk and Delay of Payment**

4      The lodestar is intended to reflect the basic fee for comparable non-contingent legal

5  services and should be enhanced by a multiplier to reflect the contingent risk and delay in

6  payment, as well as the result achieved.   The lodestar "multiplier" is meant to increase or

7  decrease the fee award based on factors not already taken into account when setting the hourly

8  rate, such as the <u>risk</u> of taking a case on a contingency basis, and <u>delay</u> in receiving payment.

9  *See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.

10      In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it

11  involves a gamble on the result, may properly provide for a *larger compensation* than would

12  otherwise be reasonable." (2001) 24 Cal.4th 1122, 1132 [emphasis added].

13      <u>A contingent fee must be higher than a fee for the same legal services paid as they are
    performed</u>.  The contingent fee compensates the lawyer not only for the legal services

14      he renders but for the loan of those services.  The implicit interest rate on such a loan
    is higher because the risk of default (the loss of the case, which cancels the debt of the

15      client to the lawyer) is much higher than that of conventional loans.   (Posner,
    Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.)  <u>A lawyer</u>

16      <u>who both bears the risk of not being paid and provides legal services is not receiving</u>
    <u>the fair market value of his work if he is paid only for the second of these functions</u>.

17      If he is paid no more, competent counsel will be reluctant to accept fee award cases.

18  *Id.* at 1132 [citations omitted; emphasis added].

19      Throughout the litigation, there always existed the real possibility Plaintiffs would not

20  prevail. After all, Plaintiffs' attorneys do not win every case they litigate. Sometimes, they lose.

21  The risk was further compounded by the fact that Plaintiffs' attorneys advanced all litigation

22  costs and expenses without reimbursement.  Thus, if Plaintiffs did not prevail, their attorneys

23  would have suffered a substantial loss of uncompensated attorney hours and thousands of dollars

24  in out-of-pocket expenses.  Plaintiffs requests a 0.3 enhancement based on that risk.

25      Further, Defendant dragged this case out for over sixteen months before offering a

26  reasonable settlement amount. Unlike Defendant's attorneys, who are paid monthly regardless of

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1  outcome, Plaintiffs' attorneys are not paid at all if they lose, and they are required to absorb

2  significant delay in being paid if Plaintiffs do win.   On account of the substantial delay in

3  payment, Plaintiffs request a 0.2 enhancement.   Based on the contingent risk and the delay in

4  payment since April 2016, Plaintiffs request a nominal multiplier of 1.5.

5  **E.  Plaintiffs are Entitled to Recover All Costs and Expenses Reasonably**

6  **Incurred in Connection with this Action**

7  Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover, as part of the

8  judgment, a sum equal to the aggregate amount of costs <u>and expenses</u>.  Civ. Code § 1794(d)

9  [emphasis added].  The California Legislature intended the word "expenses" to cover outlays not

10  included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative

11  history demonstrates the Legislature exercised its power to permit recovery of a host of litigation

12  expenditures beyond those permitted by Code of Civil Procedure § 1033.5.  *Jensen v. BMW of*

13  *North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.

14  A verified memorandum of costs generally satisfies the moving party's burden of

15  establishing costs were necessarily incurred, *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682,

16  and in this case, demonstrates what Plaintiffs' attorneys incurred in costs and expenses

17  prosecuting this matter for Plaintiffs. (SM Dec., ¶ 2, Ex. B); Civ. Code § 1794(d).  The burden

18  shifts to Defendant to properly rebut the claimed costs.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1

#### IV.  CONCLUSION

2      For the reasons above, Plaintiffs respectfully request this Honorable Court award

3   attorney's fees, costs and expenses as follows:

4
| Lodestar Fees: | $  61,787.50 |
| +Lodestar Enhancement: | $  30,893.75 |
| Total Fees Requested: | $  92,681.25 |
| +Costs and Expenses: | $  13,866.86 |
| **=Total Fees and Costs/Expenses:** | **$ 106,548.11** |

5

6

7

8   Dated: January 5, 2018                        **KNIGHT LAW GROUP, LLP**

9

10                                               Steve Mikhov (SBN 224676)

11                                               Attorney for Plaintiffs,
                                                 LINDSEY HITOMI and
12                                               DEBRA A. HITOMI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

15

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1801 Century Park East, Suite 2300, Los Angeles, CA 90067.

I served the foregoing document described as:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

| | |
|---|---|
| Alina Mooradian, Esq. | Richard Wirtz, Esq. |
| SNELL & WILMER LLP | Wirtz Law APC |
| 600 Anton Blvd., Suite 1400 | 4370 La Jolla Village Drive, Suite 800 |
| Costa Mesa, CA 92626 | San Diego, CA 92122 |
| **Counsel for Defendant,** | **Associated Counsel for Plaintiff,** |
| **FORD MOTOR COMPANY** | **LINDSEY HITOMI AND** |
| (via Mail only) | **DEBRA HITOMI** |
| | (via E-mail only) |

<u>XX</u>   BY MAIL: I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day following ordinary business practices, addressed to the above-referenced attorney.

<u>XX</u>   BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 5, 2018 at Los Angeles, California.

MIRKA ARELLANO

-1-

PROOF OF SERVICE