1  **KNIGHT LAW GROUP, LLP**
   Steve Mikhov (SBN 224676)
2  Amy Morse (SBN 290502)
   1801 Century Park East, Suite 2300
3  Los Angeles, CA 90067
   Telephone: (310) 552-2250
4  Fax: (310) 552-7973

5  **LAW OFFICE OF MICHAEL H. ROSENSTEIN**
6  Michael Rosenstein (SBN 169091)
   1801 Century Park East, Suite 2300
7  Los Angeles, CA 90067
   Telephone: (310) 552-2250
8  Fax: (310) 552-7973

9  Attorneys for Plaintiff,
10 **CHARLES S. PARNELL**

11 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 **COUNTY OF SAN DIEGO**

13

14 **CHARLES S. PARNELL,** | Case No. 37-2016-00012807-CU-BC-CTL

15 Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

16 vs. |

17 |

18 **FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,** | [Filed concurrently with Plaintiff's Notice of Motion and Motion for Attorneys' Fees, Costs and Expenses; Declarations of Steve Mikhov and Michael H. Rosenstein]

19 |

20 Defendants. |

21 | *Assigned for All Purposes to the Honorable John S. Meyer*

22 |

23 | Date: January 26, 2018
   | Time: 10:30 a.m.
24 | Dept.: C61

25

26

27

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1
II.    STATEMENT OF FACTS ........................................................................... 2
II.    ARGUMENT & ANALYSIS ........................................................................ 5

    A.     Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action ...... 5
    B.     The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable ...................... 6

        1.     The Nature and Complexity of the Litigation Support the Attorney's Fees Requested .................................................................................. 9
        2.     The Firm's Skill Justifies the Amount of Attorney's Fees Sought ........... 10

    C.     The Settlement Amount Does Not Limit the Attorney's Fee Recovery .............. 11
    D.     Plaintiff Should Be Granted a Lodestar Multiplier ................................................. 12

        1.     The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment ................................................................ 13

    E.     Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action ................................................................ 15

IV.    CONCLUSION .............................................................................................. 15

i

# INDEX OF AUTHORITIES

**Cases**

*Cazares v. Saenz*

(1989) 208 Cal.App.3d 279 .................................................................................... 12

*City of Riverside v. Rivera*

(1986) 477 U.S. 561 ............................................................................................... 11

*Dietrich v. Dietrich*

(1953) 41 Cal.2d 497 ............................................................................................... 9

*En Palm, LLC v. Teitler*

(2008) 162 Cal.App.4th 770 .................................................................................. 10

*Goglin v. BMW of North America, LLC*

(2016) 4 Cal.App.5th 462 ........................................................................... 6, 7, 11

*Graciano v. Robinson Ford Sales*

(2006) 144 Cal.App.4th 140 ........................................................................... passim

*Graham v. DaimlerChrysler Corp.*

(2004) 34 Cal.4th 553 ...................................................................................... 6, 12

*Hadley v. Krepel*

(1985) 167 Cal.App.3d 677 ................................................................................... 15

*Harman v. City and County of San Francisco*

(2007) 158 Cal.App.4th 407 ................................................................................. 11

*Horsford v. Bd. of Trustees of Cal. State Univ.*

(2005) 132 Cal. App. 4th 359 .......................................................................... 8, 14

*In re Chiron Corp. Securities Litigation*

(N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 ................. 13

*Independent Federation of Flight Attendants v. Zipes*

(1989) 491 U.S. 754 .............................................................................................. 11

*Jensen v. BMW of North America, Inc.*

(1995) 35 Cal.App.4th 112 .................................................................................... 15

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

*Ketchum v. Moses*
  (2001) 24 Cal.4th 1122 ................................................................. 12, 13, 14
*La Mesa-Spring Valley School Dist. v. Otsuka*
  (1962) 57 Cal.2d 309 ................................................................................. 10
*Los Angeles Police Protective League v. City of Los Angeles*
  (1986) 188 Cal.App.3d 1 .............................................................................. 8
*Mandel v. Lackner*
  (1979) 92 Cal.App.3d 747 ............................................................................. 6
*Molski v. Arclero Wine Group*
  (2008) 164 Cal.App.4th 786 ........................................................................ 10
*PLCM Group v. Drexler*
  (2000) 22 Cal.4th 1084 ............................................................................ 7, 12
*Reveles v. Toyota by the Bay*
  (1997) 57 Cal.App.4th 1139 .......................................................................... 6
*Robertson v. Fleetwood Travel Trailers of California, Inc.*
  (2006) 144 Cal.App.4th 785 ................................................................... passim
*Serrano v. Priest*
  (1977) 20 Cal.3d 25 (*Serrano III*) ............................................................. 12
*Serrano v. Unruh*
  (1982) 32 Cal.3d 621 ............................................................................... 6, 8
*Vo v. Las Virgenes Municipal Water District*
  (2000) 79 Cal.App.4th 440 .......................................................................... 11

iii

**Statutes and Codes**

15 United States Code

Section 2301 et seq. (Magnuson Moss Warranty Act) ................................................. 11

42 United States Code.................................................................................................... 11

Cal. Civ. Code § 1794(d) .................................................................. 2, 5, 7, 13, 15

California Code of Civil Procedure

Section 1032(a)(4) ................................................................................................. 5

California Code of Civil Procedure

Section 1033.5........................................................................................................ 15

**Other Authorities**

Pearl, *California Attorney Fee Awards*

Sections 12.14A, 12.33 (2nd Ed. 2005) ................................................................. 6

Senate Report

No. 93-151, 1st Sess., pp. 23-24 (1973)................................................................. 11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## I.   INTRODUCTION

After about fourteen months of litigation, the parties agreed to settle this matter in the amount of $117,000.00, consisting of a full refund of all monies paid towards the defective vehicle plus civil penalties. <u>The final settlement is over **four times** the total amount Plaintiff paid for the vehicle in what defense routinely calls a "simple lemon law" action</u>. Plaintiff obtained this extraordinary sum, *without going to trial*. By any analysis, Plaintiff Charles S. Parnell ("Plaintiff") achieved an excellent settlement particularly given Defendant Ford Motor Company's ("Defendant" or "Ford") initial refusal to even consider repurchasing his vehicle under the Song-Beverly Act. This is a settlement that no other firm in this state could achieve for its clients. The result in this case was achieved because of Plaintiff's attorneys' skill and expertise in lemon law cases developed and honed over the course of many years of advocating on behalf of consumer rights. The biggest factor in Plaintiff receiving zero from Ford when he contacted Ford before this lawsuit versus a $117,000.00 settlement was his attorneys' knowledgeable approach to this case.

On or about September 24, 2012, Plaintiff purchased a new 2013 Ford Focus. Over the next three years, Plaintiff suffered through numerous transmission defects that caused the vehicle to shudder on acceleration, rattle, and leak oil. Plaintiff sought maintenance for these issues four times throughout his ownership. Frustrated, Plaintiff contacted Ford customer service on or about November 19, 2015, seeking a buyback of the defective vehicle. Instead of complying with its legal obligations, Ford applied its tried and true internal policy of rejecting its Song-Beverly Consumer Warranty Act ("Song-Beverly Act") obligations and refused to help Plaintiff, rejecting the buyback request. Ford made a business decision that by essentially just saying no, the vast majority of consumers would just go away and Ford would save money. Without any other recourse, Plaintiff hired Knight Law Group on a contingency basis. Knowing that Ford had willfully violated Plaintiff's rights and that Ford had already rejected informal resolution, Knight Law Group was forced to file this case.

//

1

The Song-Beverly Act, Civil Code sections 1790, *et seq.*, entitles Plaintiff to seek reasonable attorney's fees, costs and expenses from Ford. Moreover, Ford's 998 Offer provides Plaintiff is the prevailing party and entitled to this noticed motion for attorney's fees. Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $46,960.00 (2) for a modest "lodestar" modifier of 1.5, in the amount of $23,480.00 and (3) to award actual costs and expenses incurred in the amount of $3,865.59. (Civ. Code § 1794(d).) Plaintiff requests a total of $74,305.59 in attorney's fees, costs and expenses. (Declaration of Steve Mikhov ("SM Dec.") ¶ 2, Exs. A-B; Declaration of Michael H. Rosenstein ("MR Dec.") ¶ 11, Ex. A.)

## II.    STATEMENT OF FACTS

Plaintiff purchased a new 2013 Ford Focus on September 24, 2012 for a purchase price of $25,980.00—adding taxes and fees, the total purchase price was $28,370.40. The vehicle was distributed by Ford Motor Company, which provided an express written warranty. (SM Dec., ¶ 3, Ex. C.) Within the applicable express warranty periods, the vehicle began exhibiting serious transmission problems after only about 6,000 miles. (SM Dec., ¶ 4.)

First, Plaintiff brought the vehicle in for maintenance because the transmission was shuddering when accelerating from a stop or low speed. (SM Dec., ¶ 5.) About 12,000 miles later, Plaintiff brought the vehicle in because it was again hesitating and shuddering upon acceleration, and also leaking. (*Id.*) Less than 3,000 miles later, the vehicle still rattled and shuddered from the transmission on acceleration. (*Id.*) During each of these maintenance visits, the powertrain control module and transmission control module were reprogrammed. (*Id.*) 8,000 miles later, Plaintiff brought the vehicle in yet again because of a shuddering transmission, at which point the vehicle was also the subject of a recall related to the transmission control module. (*Id.*)

Ultimately, Plaintiff presented his vehicle to a Ford-authorized repair facility a total of four times specifically related to issues with the transmission, over a period of about three years and 28,000 miles of ownership. (SM Dec., ¶ 6.)

2

1   Frustrated, concerned for his safety, and having lost confidence in Ford's ability to
2   repair the vehicle, Plaintiff contacted Ford customer service on or about November 19, 2015,
3   seeking a buyback of the defective vehicle. (SM Dec., ¶ 7.) Despite Ford's affirmative duty
4   under the law to perform an investigation and offer a buyback, Ford denied Plaintiff's request
5   on or about January 15, 2016. (*Id.*) Because Ford disregarded every opportunity to do right by
6   its customer, Plaintiff was forced to retain counsel and file suit. (*Id.*)

7   Plaintiff contacted Knight Law Group, LLP (hereafter "Knight Law") in March 2016
8   and told the firm about the problems with his vehicle and the way Ford treated him. (SM Dec., ¶
9   8.) After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to
10  represent him and bear the risk of litigating the case on a fully contingent basis. (*Id.*) Because
11  Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being
12  paid for its services for years, if at all, while advancing thousands of dollars in costs and
13  expenses on Plaintiff's behalf. (*Id.*) In taking on this duty, the firm was facing a litigation
14  behemoth—Ford is a multi-billion-dollar company with a virtually infinite litigation war-chest
15  that wages a battle of attrition that most firms cannot withstand. (*Id.*)

16  As a result of Ford's failure to repurchase Plaintiff's vehicle, Plaintiff filed his complaint
17  in this action on or about April 19, 2016, alleging violations of the Song-Beverly Act,
18  fraudulent concealment, intentional misrepresentation, and negligent misrepresentation, and
19  seeking civil penalties and punitive damages. (SM Dec., ¶ 9.) The 27-page complaint took just
20  1.2 hours to draft. (*Id.*) The firm was able to utilize existing templates that attorneys tailor for
21  case specific facts to reduce billing time. (*Id.*) Defendant demurred to the complaint on or about
22  May 27, 2016. (*Id.*) Plaintiff opposed, incurring very minimal time, and the Court overruled the
23  demurrer on or about September 2, 2016. (*Id.*)

24  On or about September 19, 2016, Ford filed its answer to Plaintiff's Complaint—
25  denying all liability. (SM Dec., ¶ 10.)

26  In September 2016, Plaintiff propounded written discovery on Ford consisting of 49
27  Requests for Admissions, 95 Requests for Production of Documents, 96 Special Interrogatories

and 27 Form Interrogatories. (SM Dec., ¶ 11.) In drafting this discovery, Plaintiff benefited from Knight Law's expertise and experience in litigating against Ford insofar as just 4.9 hours were billed to review the file and draft the entirety of this discovery. (*Id.*) Plaintiff's counsel is able to use existing files as templates to conserve time and litigate efficiently. (*Id.*) Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' vast knowledge, experience and specialized expertise, would have taken multiples of the time expediently managed here. (*Id.*) Ford provided responses to these discovery requests on or about October 20, 2016. (*Id.*)

In January 2017, Ford launched the first phase of its aggressive written discovery campaign by serving Requests for Production of Documents, Special Interrogatories, Requests for Admissions, and Form Interrogatories. (SM Dec., ¶ 12.) Plaintiff supplied verified responses to the discovery on or about March 7, 2017. (*Id.*) Ford also served a notice for Plaintiff's deposition and a demand for vehicle inspection. (*Id.*) Meanwhile, on or about April 3, 2017, Plaintiff noticed the depositions of Ford's Person Most Knowledgeable ("PMK"), Kearny Pearson Ford's Person Most Qualified ("PMQ"), and other dealership personnel. (*Id.*) These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Defendant's anticipated argument that the problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse. (*Id.*) The deposition of Kearny Pearson Ford's PMQ was conducted on May 2, 2017. (SM Dec., ¶ 12; MR Dec., ¶ 4.)

On April 19, 2017, the parties attended a mediation, of which this case was one of 50. (SM Dec., ¶ 13.) The case did not resolve at that time. (*Id.*) Only 0.3 hours were billed to this case to attend the all-day mediation. (*Id.*)

Considering Defendant's aggressive litigation of this case and the lack of any meaningful offer by Ford to settle, the case appeared likely to go to trial. (SM Dec., ¶ 14.) Plaintiff was deposed by Ford's counsel on or about April 25, 2017. (SM Dec., ¶ 14.) On or about May 23, 2017, the Law Office of Michael H. Rosenstein was formally associated into the case to serve as lead trial counsel and prepare the case for trial. (SM Dec., ¶ 14; MR Dec., ¶ 3.)

4

1  Plaintiff's trial counsel drafted trial subpoenas for Kearny Pearson Ford's PMQ, service

2  advisors, and technicians; fifteen (15) motions *in limine* that were filed and served; the proposed

3  joint exhibit list; Proposed Special Verdict Form – Express Warranty; Proposed Special Verdict

4  Form – Implied Warranty; Proposed Special Verdict Form – Concealment; the joint statement

5  of stipulated facts; the joint statement of the case; the joint witness list; and a draft opening

6  statement, among other documents in preparation of trial. (SM Dec., ¶ 14; MR Dec., ¶ 5.)

7       Plaintiff's counsel attended the deposition of Ford' PMK on April 21, 2017, but was

8  required to take a notice of non-appearance when the witness did not show up. (SM Dec., ¶ 15.)

9  Due to the difficulty with Defendant in arranging for the deposition of Ford's PMK, Plaintiff

10  was forced filed an *ex parte* application to compel the deposition. (*Id.*) On or about June 1,

11  2017, the Court ordered Ford to provide its PMK within two weeks of that date. (*Id.*)

12       On or about June 7, 2017, after nearly fourteen months of litigation, Ford served

13  Plaintiff with an Offer to Compromise pursuant to Code of Civil Procedure section 998 ("998

14  Offer") (SM Dec., ¶ 16, Ex D.). The 998 Offer, which offered Plaintiff $117,000.00, was

15  accepted by Plaintiff on June 19, 2017. (*Id.*) This settlement amount was inclusive of a full

16  statutory "buy-back" of his defective vehicle, incidental and consequential damages, and a civil

17  penalty. (*Id.*) Additionally, Ford agreed to pay Plaintiff's attorney's fees in the amount of only

18  $5,000.00, or if Plaintiff refused, an amount to be determined by noticed motion. (*Id.*) The

19  notice of settlement was filed on or about July 10, 2017. (*Id.*)

20       Plaintiff has made every reasonable effort to resolve the payment of Plaintiff's

21  attorney's fees by Ford as the prevailing party in this action but was forced to file this motion

22  with the court. (SM Dec., ¶ 17.)

23               **III.    ARGUMENT AND ANALYSIS**

24  **A.    <u>Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action</u>**

25       Pursuant to the terms of the parties' settlement, Plaintiff is the prevailing party in this

26  action and, under the Song-Beverly Act, entitled to recoup all reasonable attorney's fees, costs

27  and expenses as the prevailing party. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d);

1   *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay*

2   (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the

3   prevailing party's attorney spent litigating the case and his or her regular hourly rate are

4   presumed to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to

5   all hours actually spent, absent a showing of "special circumstances" that would render such an

6   award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly

7   rate is entitled to a presumption of reasonableness); Pearl, <u>California Attorney Fee Awards</u>, at

8   §§ 12.14A, 12.33 (2nd Ed. 2005).)

9        In prosecuting this case, the efforts of Knight Law and the Law Office of Michael H.

10   Rosenstein amount to $46,960.00, including drafting this motion and time anticipated to be

11   spent preparing the reply and attending the hearing. (SM Dec., ¶ 2, Ex. A.; MR Dec., ¶ 11, Ex.

12   A.) Plaintiff's counsel also requests a modest 1.5 enhancement, in the amount of $23,480.00, to

13   account for the delay in payment and contingent risk posed by this case. Lastly, the

14   reimbursable costs and expenses set forth in Plaintiff's memorandum of costs are $3,865.59.

15   (SM Dec., ¶ 2, Ex. B.) In total, Plaintiff requests $74,305.59. (SM Dec., ¶ 2, Exs. A-B; MR

16   Dec., ¶ 11, Ex. A.)

17       **B.**    <u>**The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable**</u>

18        The Court of Appeal has expressly held the lodestar method applies to determining

19   attorney's fees under the Song-Beverly Act. (*Robertson v. Fleetwood Travel Trailers of*

20   *California, Inc.* (2006) 144 Cal.App.4th 785, 817.) The calculation of reasonable attorney's fees

21   under the Song-Beverly Act is based on the lodestar method, which entails multiplying the

22   number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford*

23   *Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.) The

24   prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably

25   necessary to the conduct of the litigation," and "reasonable in amount." (*Goglin v. BMW of*

26   *North America, LLC* (2016) 4 Cal.App.5th 462, 470.) In making such an evaluation, a court may

27   consider "factors such as the complexity of the case and procedural demands, the skill exhibited

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

1    and the results achieved." (*Id.*)

2       In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over

3    $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under

4    the Song-Beverly Act. (4 Cal.App.5th at 464.) The court also found plaintiff's counsel's hourly

5    rate of $575 per hour was reasonable as supported by exhibits to counsel's declaration

6    indicating various state and federal courts had previously awarded him comparable hourly rates.

7    (*Id.* at 473-74.) The trial court was not obliged to consider that defendants paid their counsel a

8    much lower hourly rate. (*Id.* at 474.)

9       In *Robertson*, the court observed a prevailing buyer is entitled to an award of reasonable

10   attorney's fees for time reasonably expended by his attorney. (*Robertson, supra,* 144

11   Cal.App.4th at 817.) The court ruled the "statutory language in section 1794(d) is reasonably

12   compatible with a lodestar adjustment method of calculating attorney fees, including use of fee

13   multipliers." (*Id.* at 819.) Indeed, in *Robertson*, the trial court awarded $231,187.45 in fees

14   based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75,

15   and $13,566.70 for the attorney's fee motion. (*Id.* at 817.) The appellate court upheld the trial

16   court's ruling. (*Id.* at 822.)

17       In *Graciano*, the trial court initially rejected plaintiff's lodestar fees of $109,468.50 and

18   request for a multiplier of 2.0. In particular, the trial court reduced the plaintiff's attorney's

19   hourly rate from the requested $350/hour to $250/hour, which was the court's mandated

20   maximum rate for expert testimony. Plaintiff appealed the court's decision and in particular the

21   hourly rate reduction. The appellate court reversed, reasoning a court should determine the

22   prevailing rate in the community for comparable professional legal services. (*Graciano, supra,*

23   144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).) The

24   court found the plaintiff's unrebutted declarations established the proper hourly rate at $350,

25   and reducing that rate to $250 was an abuse of discretion. (*Id.*) The court also reaffirmed

26   attorney's fees <u>are not limited to a proportion</u> of the recovery. (*Id.* at 164.) On remand, the trial

27   court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for

7

a total fee award of over $380,000. The attorney from *Graciano*, Hallen D. Rosner, now charges $620/hour. (SM Dec., ¶ 34 (a).)

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are *also entitled* to recover their fees for the time spent preparing fee applications such as this one. (*Serrano v. Unruh, supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

The hourly rates should be considered in the context of the rates charged by Plaintiff's attorneys in the metropolitan community in which they practice, as opposed to the case venue. In *Horsford v. Board of Trustees of California State University,* the trial court was reversed for refusing to award the higher rates to San Francisco-based attorneys who litigated a FEHA case in Fresno. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 399.) The law "requires that the *financial incentives be adjusted to attract attorneys* who are sufficient to the cause. *Id.* In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market rate." *Id.* Plaintiff's attorneys' hourly rates should not vary depending on the venue of the lawsuit. The skill and experience of Ford's attorneys does not change from venue to venue and Plaintiff's counsel deserves to be compensated at the same rate they would receive given the same quantity and quality of work they must perform regardless of the venue.

Consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 23-32; MR Dec., ¶¶ 6-10), (ii) a survey of rates charged by other well-known consumer law attorneys (*Id.,* ¶ 34), (iii) over three dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (*Id.,* ¶¶ 36-,75 Exs. E-RR), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (MR Dec., ¶ 12, Ex. B, at p. 42-45.) Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.

1.   **The Nature and Complexity of the Litigation Support the Attorney's Fees Requested**

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case. (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.)

Ford will likely claim that "this is a simple lemon law case," and therefore Plaintiff's fee request is unjustified. This case required a range of specialized knowledge: (1) an understanding of the full scope of consumer protection laws, which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations. (SM Dec., ¶ 78.) Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Plaintiff here.

Moreover, Ford made this matter even more complex by maintaining it had no liability and declining to submit any reasonable offers to settle the matter for almost fourteen months, while pursuing discovery with full force and compelling Plaintiff's counsel to litigate this matter exhaustively. Prior to commencing litigation, Plaintiff first sought relief by requesting a buyback from Ford, which it denied. Ford should have acknowledged the well-known defects in Plaintiff's vehicle and resolved the matter before this case was ever filed. Ford ultimately did just that, but not before causing substantial fees to be incurred.

Ford engaged in expensive litigation, delaying the prospect of settlement through extensive written discovery and an overruled demurrer, and even forcing Plaintiff to have to file an *ex parte* application to compel the deposition of Ford's PMK. Ford easily could have resolved this matter earlier and saved tens of thousands in attorney's fees, costs and expenses.

When Ford causes the entirety of fees to be incurred, it has no legitimate basis for complaining about the amount of attorney's fees reasonably and actually incurred, especially

9

1  when Ford was given the opportunity to resolve the matter before a lawsuit was even filed. "A
2  party cannot litigate tenaciously and then be heard to complain about the time necessarily spent
3  by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see*
4  *also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

**2.    The Firm's Skill Justifies the Amount of Attorney's Fees Sought**

6      A trial court may also take into account the skill of the attorneys when determining
7  reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d
8  309, 316.) Despite the case's difficulties, Plaintiff ultimately recovered $117,000.00 in
9  damages, which is more than four times the vehicle's purchase price. The vehicle was no more
10 or less defective on the date of settlement than it was when Plaintiff first requested a repurchase,
11 so there is no rational explanation why Ford waged a lengthy and costly legal battle only to
12 settle for an amount that included civil penalties.

13     The final resolution is the direct result of skill and preparation by Plaintiff's attorneys,
14 who specialize in consumer law and did not balk at Ford's aggressive litigation tactics.
15 Plaintiff's attorneys' experience in this area has enabled them to develop litigation strategies
16 that are both highly effective and cost and time efficient. Plaintiff's attorneys know the many
17 nuances in these types of cases. This specialized knowledge and experience in lemon law
18 frequently achieves results better than attorneys who do not specialize in this specific area of
19 law. This experience provided a resolution to this matter far beyond that which Ford was
20 previously willing to entertain. Ford engages specialized attorneys from big firms, and Plaintiff
21 needed skilled attorneys to prosecute his claims. The biggest difference between Plaintiff
22 getting zero and Plaintiff receiving a $117,000.00 recovery was his attorneys' knowledge and
23 expertise.

24     Counsels' skill is evidenced by the size of the settlement as well as the nominal time
25 expended on litigation tasks, which results in lower overall billing. Plaintiff's attorneys do not
26 spend inordinate time researching because they specialize in this area of law. (SM Dec., ¶ 79.)
27 Nor do they spend unreasonable time preparing pleadings and other documents because they are

10

1    able to use documents from other cases that need only be edited, rather than written from
2    scratch. While substantial fees have been incurred, those fees result from the execution of
3    effective strategies that typically result in superlative results for clients, like Plaintiff here.

4        On the other side, Ford is represented by large national firms with attorneys who
5    specialize in representing automobile manufacturers in lemon law cases. Ford is a corporate
6    behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney.
7    Accordingly, Plaintiff required skilled and experienced attorneys to prosecute his claims against
8    Ford and its formidable resources.

9        **C.    The Settlement Amount Does Not Limit the Attorney's Fee Recovery**

10       Ford may argue that damages in the amount of $117,000 do not justify an attorney's fee
11   award in the amount requested by Plaintiff. Such an argument is starkly against the weight of
12   the law. The amount of attorney's fees *must not be tied to any percentage of recovery.*
13   (*Graciano, supra,* 144 Cal.App.4th at 164.) In fact, a trial court may abuse its discretion if it
14   applies a rule of proportionality to a fee award. The U.S. Supreme Court has previously
15   considered the question of proportionality in attorney fee awards and held: "[w]e reject the
16   proposition that fee awards under [42 U.S.C.] section 1988 should necessarily be proportionate
17   to the amount of damages a civil rights Plaintiff actually recovers." (*City of Riverside v. Rivera*
18   (1986) 477 U.S. 561, 574; *see also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973)
19   (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not a
20   percentage of the recovery); *Robertson, supra,* 144 Cal.App.4th at 820; *Independent Federation*
21   *of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under
22   Magnuson-Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th
23   at 468-69 (affirming award of $185,000 in fees and costs in a Song-Beverly Act case that settled
24   for $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 446
25   (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively
26   litigious and took a non-settlement posture); *Harman v. City and County of San Francisco*
27   (2007) 158 Cal.App.4th 407 (affirming award of approximately $1.1 million in fees where

11

1  plaintiffs recovered $30,300).)

2  It is not uncommon for attorney's fees and costs to exceed the client's damages,

3  although that did not happen here because the settlement was so large and the fees were

4  efficiently incurred. The Legislature acknowledged that substantial work might be needed to

5  prosecute such claims against large corporations, which is the reason behind the fee shifting

6  provision of the Song-Beverly Act. (SM Dec., ¶ 77.) "The purpose of statutory attorney fee

7  provisions is to provide financial incentives necessary for the private enforcement of important

8  civil rights." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Thus, the Song-Beverly Act

9  gives consumers the opportunity to seek legal redress even if their damages would not be high

10  enough to warrant legal representation. The award of attorney's fees *cannot* be limited by the

11  damages recovered by Plaintiff. Any argument by Ford to the contrary would be false, as the

12  law is clear on this point (*Ketchum, supra,* 24 Cal.4th at 1132), and Ford has handled enough of

13  these lemons to know better than to make such an argument.

14  **D.   Plaintiff Should Be Granted a Lodestar Multiplier**

15  As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar

16  multiplier, sometimes referred to as an adjustment or enhancement. (*Robertson, supra,* 144

17  Cal.App.4th at 817.) Once a lodestar amount is determined, which involves a "careful

18  compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Id.*

19  at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III*)), the amount may then

20  be augmented by taking various relevant factors into account, including (1) the novelty and

21  difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to

22  which the nature of the litigation precluded other employment by the attorneys; and (3) the

23  contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of

24  establishing eligibility for the award. (*Id.*; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM*

25  *Group v. Drexler*, 22 Cal.4th at 1096.) "[T]he purpose of a fee enhancement is primarily to

26  compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in

27  contingency cases." (*Ketchum, supra,* at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279,

12

287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).) "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on." (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, at *9.)

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." (144 Cal.App.4th at 819.) The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fees motion. (*Id.* at 817.) The appellate court held the trial court properly conducted a lodestar analysis and the award was not an abuse of discretion. (*Id.* at 822.)

In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier for a total award of over $380,000. (144 Cal.App.4th at 156.) The court also reaffirmed attorney's fees are not limited to a proportion of the recovery. (*Id.* at 164.)

Ford may argue a multiplier is not permitted, and cite to the *Ketchum* case to support that argument. To the contrary, *Ketchum* actually confirms the granting of a multiplier in contingency fee cases. (*Ketchum, supra,* 24 Cal.4th at 1132.) A lodestar multiplier is in fact available and it has been awarded to Plaintiff's counsel in multiple, factually disparate, cases. (SM Dec., ¶¶ 46, 50, 59, 60, 62, 63, 67, 73, 74, 75, Exs. O, S, BB, CC, EE, FF, JJ, PP, QQ, RR.)

### 1.    The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved. The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the risk of taking a case on a contingency

13

1    basis, and <u>delay</u> in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.*

2    (2005) 132 Cal. App. 4th 359, 394-95.)

3        In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it

4    involves a gamble on the result, may properly provide for a *larger compensation* than would

5    otherwise be reasonable." (24 Cal.4th at 1132 [emphasis added].)

> <u>A contingent fee must be higher than a fee for the same legal services paid as they are</u>
> <u>performed.</u> The contingent fee compensates the lawyer not only for the legal services he
> renders but for the loan of those services. The implicit interest rate on such a loan is
> higher because the risk of default (the loss of the case, which cancels the debt of the
> client to the lawyer) is much higher than that of conventional loans. (Posner, Economic
> Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.) <u>A lawyer who both bears</u>
> <u>the risk of not being paid and provides legal services is not receiving the fair market</u>
> <u>value of his work if he is paid only for the second of these functions.</u> If he is paid no
> more, competent counsel will be reluctant to accept fee award cases.

12    (*Id.* at 1132 [citations omitted; emphasis added].)

13        Throughout the litigation, there always existed the possibility Plaintiff would not

14    prevail. Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement.

15    Thus, if Plaintiff did not prevail, his attorneys would have suffered a huge loss in the form of

16    uncompensated attorney work-product and thousands of dollars in out-of-pocket expenses.

17    Plaintiff requests a 0.2 enhancement based on that risk.

18        Further, Ford dragged this case out for nearly fourteen months before making an

19    acceptable offer. Unlike Ford's attorneys, who are paid monthly regardless of outcome,

20    Plaintiff's attorneys are not paid at all if they lose, and need to absorb significant delay in being

21    paid if Plaintiff does win. On account of the substantial delay in payment, Plaintiff requests a

22    0.3 enhancement.

23        Based on the risk of taking this case on a contingent fee basis and the delay in payment

24    since April 2016, Plaintiff requests a nominal multiplier of 1.5.

25    //

26    //

27    //

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES, COSTS AND EXPENSES

**E.**     <u>Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action</u>

Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount of costs <u>and expenses</u>. (Civ. Code § 1794(d) [emphasis added].) The California Legislature intended the word "expenses" to cover outlays not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative history demonstrates the Legislature exercised its power to permit recovery of a host of litigation expenditures beyond those permitted by Code of Civil Procedure section 1033.5. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

A verified memorandum of costs generally satisfies the moving party's burden of establishing costs were necessarily incurred. (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.) The verified memorandum of costs demonstrates what Plaintiff's attorneys incurred in costs and expenses prosecuting this matter, which counsel advanced on Plaintiff's behalf. (SM Dec. ¶ 2, Ex. B; Civ. Code § 1794(d).) The burden shifts to Ford to properly rebut the claimed costs.

## IV.     CONCLUSION

For the reasons above, Plaintiff respectfully requests this Honorable Court award attorney's fees, costs and expenses as follows:

| | |
|---|---|
| Lodestar Fees: | $ 46,960.00 |
| +Lodestar Enhancement: | $ 23,480.00 |
| Total Fees Requested: | $ 70,440.00 |
| +Costs and Expenses: | $ 3,865.59 |
| =**Total Fees and Costs/Expenses:** | **$ 74,305.59** |

Dated: January 3, 2018

KNIGHT LAW GROUP, LLP

Steve Mikhov (SBN 224676)
Attorneys for Plaintiff,
**CHARLES S. PARNELL**

15

1

### PROOF OF SERVICE
(Code of Civil Procedure §1013a)

2

3      I am employed in the County of Los Angeles, State of California. I am over the age of 18
years and not a party to the within action. My business address is 1801 Century Park East, Suite

4      2300, Los Angeles, CA 90067.

5      I served the foregoing document described as:

6      **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

7

8      Said document was served on the interested parties in this action, by placing true copies
thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

9

| | |
|---|---|
| Matthew M. Proudfoot, Esq. | Michael H. Rosenstein, Esq. |
| GATES, O'DOHERTY, GONTER & GUY LLP | Law Offices of Michael H. Rosenstein |
| 38 Discovery, Suite 200 | 1801 Century Park East, Suite 2300 |
| Irvine, CA 92618 | Los Angeles, CA 90067 |
| Facsimile: (949) 753.0265 | **Associated Counsel for Plaintiff,** |
| **Counsel for Defendant,** | **CHARLES PARNELL** |
| **FORD MOTOR COMPANY** | **(via E-mail only)** |
| **(via Personal Service Only)** | |

10

11

12

13

14

15  __XX__   PERSONAL SERVICE: I caused the above documents to be sent to our court services
provider to be personally served.

16

17  __XX__   BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused

18      the documents to be sent to the persons at the e-mail addresses listed above. I did not
receive, within a reasonable time after the transmission, any electronic message or other

19      indication that the transmission was unsuccessful.

20      I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

21

22      Executed on January 3, 2018 at Los Angeles, California.

23

24      _____

25      Elin Howard

26

27

28

-1-