GORDON REES SCULLY MANSUKHANI LLP
Spencer P. Hugret (SBN 240424)
shugret@grsm.com
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

DYKEMA GOSSETT PLLC
John M. Thomas (SBN 266842)
jthomas@dykema.com
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7613
Facsimile: (734) 214-7696

Attorneys for Defendant
FORD MOTOR COMPANY

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION | Case No. 2:18-ML-02814-AB (FFMx)_____ |
| | Assigned to Hon. Andre Birotte, Jr. Courtroom:7B |
| THIS DOCUMENT RELATES ONLY TO: | **OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES** |
| *AARON K. DUERKSEN v. FORD MOTOR COMPANY, et al., 2:18-cv-01071-AB-FFM* | Date:     August 29, 2018 Time:     10:00 a.m. Courtroom: 7B |
| *MICHAEL D. BELL V. FORD MOTOR COMPANY, et al., 2:18-cv-01752-AB-FFM* | Complaint Filed: September 6, 2017 Complaint Served: September 7, 2017 Trial Date: None |

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

    **A.**    Plaintiffs' Complaints and the Relief Sought. ................................ 2

            1.    Claims Against Ford. ......................................................... 2

            2.    Allegations As To Dealers. ................................................ 3

    **B.**    Ford's Notices of Removal. ........................................................... 5

            1.    Diversity. .......................................................................... 5

            2.    Amount in Controversy. .................................................... 6

ARGUMENT ....................................................................................................... 7

  **I.**    PLAINTIFFS' CLAIMS AGAINST FORD DEALERS DO NOT, AND SHOULD NOT, DEFEAT JURISDICTION. ................................. 7

    **A.**    Joinder Of The Dealers Was Fraudulent And A Sham. .................. 7

            1.    Plaintiff Does Not And Cannot Establish Claims Against The Dealers Based On Negligent Repair. ............. 8

            2.    KLG's Negligent Repair Allegations Are Almost Certainly Unsubstantiated and Fraudulent. ....................... 11

    **B.**    Alternatively, This Court Should Exercise Its Discretion Under Rule 21 And Drop The Dealers As Parties. ...................... 12

  **II.**    THE AMOUNTS IN CONTROVERSY—THE AMOUNTS AT STAKE—EXCEEDS $75,000. ................................................... 17

    **A.**    The Stakes On Plaintiffs' Fraud Claims Exceed $75,000. ........... 17

    **B.**    The Stakes On Plaintiffs' Song Beverly Claims Exceed $75,000. ...................................................................................... 18

    **C.**    KLG Consistently Rejects Offers Exceeding $75,000. ............... 19

  **III.**    No Award of Fees is Proper. ........................................................ 19

CONCLUSION .................................................................................................. 20

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

ii

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

# TABLE OF AUTHORITIES

**Cases**

*Alleyne v. Am. Sec. Ins. Co.*,
   2011 U.S. Dist. LEXIS 158736 (S.D. Fla. Apr. 12, 2011) ............................... 17

*Bedgood v. Nissan N. Am., Inc.*,
   2016 U.S. Dist. LEXIS 82716 (W.D. Tex. June 23, 2016) ................................ 9

*Chavez v. GM, Ltd. Liab. Co.*,
   2017 U.S. Dist. LEXIS 172587 (C.D. Cal. Oct. 18, 2017)............................... 19

Clinco v. Roberts,
   41 F. Supp. 2d 1080 (C.D. Cal. 1999) .......................................... 15, 17

Cohn v. Petsmart, Inc.,
   281 F.3d 837 (9th Cir. 2002) ..................................................... 19

*Delafontaine v. Volvo Cars of N. Am.*, LLC,
   2016 U.S. Dist. LEXIS 175259 (C.D. Cal. Dec. 19, 2016)............................. 13

*Fid. & Cas. Co. v. Res. Ins. Co.,*
   596 F.2d 914 (9th Cir. 1979) ..................................................... 13

*Gasumyan v. Travelers Cas. Ins. Co. of Am.*,
   2017 U.S. Dist. LEXIS 73013 (C.D. Cal. May 11, 2017)........................... 7, 11

*GranCare, LLC v. Thrower*,
   889 F.3d 543 (9th Cir. 2018) ...................................................... 8

*Harris v. Atlantic Richfield*,
   14 Cal.App.4th 70 (1993) ........................................................ 10

*Hunter v. Phillip Morris USA*,
   582 F.3d 1039 (9th Cir. 2009) ................................................ 7, 8, 14

*Joseph v. Baxter Int'l, Inc.*,
   614 F. Supp. 2d 868 (N.D. Ohio 2009) ............................................ 14

*Kelly v. Amylin Pharm., LLC*,
   2014 U.S. Dist. LEXIS 153117 (S.D. Cal. Aug. 8, 2014)............................. 13

iii

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

*Martin v. Franklin Capital Corp.,*
546 U.S. 132, 126 S. Ct. 704 (2005)...................................................................19

*Pierce v. Frink,*
2017 U.S. Dist. LEXIS 180605 (E.D. Cal. Oct. 31, 2017)..............................13

*Publicker Indus., Inc. v. Roman Ceramics Corp.,*
603 F.2d 1065 (3d Cir. 1979) ..........................................................................13

*Ritchey v. Upjohn Drug Co.,*
139 F.3d 1313 (9th Cir. 1998) ............................................................................8

*Ruiz v. BMW of N. Am., LLC,*
2017 U.S. Dist. LEXIS 6983 (C.D. Cal. Jan. 18, 2017).....................................9

*Sams v. Beech Aircraft Corp.,*
625 F.2d 273 (9th Cir. 1980) ............................................................................13

*Sandhu v. Volvo Cars of N. Am., LLC,*
2017 U.S. Dist. LEXIS 13602 (N.D. Cal. Jan. 31, 2017)..................................13

*Sea-Land Serv. v. GE,*
134 F.3d 149 (3d Cir. 1998) ...............................................................................9

*Smallwood v. Illinois Cent. RR. Co.,*
385 F.3d 568 (5th Cir. 2004) ..............................................................................7

*Szymczyk v. Shiff (In re Incretin Mimetics Prods. Liab. Litig.,*
2015 U.S. Dist. LEXIS 192588 (S.D. Cal. July 28, 2015) ...........................7, 13

*Tameny v. Atlantic Richfield Co.,*
27 Cal.3d 167 (1980) ........................................................................................10

*Thomas v. Gilliand,*
95 Cal. App. 4th 427 (2002) .............................................................................16

*Tillman v. R.J. Reynolds Tobacco,*
340 F.3d 1277 (11th Cir. 2003) ..........................................................................8

*United States v. O'Neil,*
709 F.2d 361 (5th Cir. 1983) ............................................................................14

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

iv

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

*Varga v. Wells Fargo Bank, N.A.*,
    No. CV 16-9650-DMG (KSx), 2017 U.S. Dist. LEXIS 148536 (C.D.
    Cal. Sep. 12, 2017) ........................................................................ 15, 16

*Wren Indus. v. Verson Allsteel Press*,
    84 F. Supp. 2d 911 (S.D. Ohio 1999) ................................................. 9

**Statutes**

28 United States Code
    Section 1447 .......................................................................... 14, 15, 19

Code of Civil Procedure
    Section 338 ..................................................................................... 16

**Rules**

Federal Rule of Civil Procedure
    Rule 19 ................................................................................... 13, 15

Federal Rule of Civil Procedure
    Rule 20 ......................................................................................... 14

Federal Rule of Civil Procedure
    Rule 21 ........................................................................... 13, 14, 15, 17

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

**INTRODUCTION**

Plaintiffs in the two cases that are the subject of this brief, *Bell v. Ford Motor Co.,* and *Duerksen v. Ford Motor Co.,* allege fraud and violation of California's Song-Beverly Consumer Warranty Act based on an alleged transmission defect. Ford Motor Company ("Ford") removed the cases to federal court based on diversity of citizenship, because it is undisputed that Plaintiffs are citizens of California and that Ford is incorporated in Delaware and has its principal place of business in Michigan. But in both of the two cases at issue here—and in 30 other cases filed only after Ford began removing similar cases to federal court and sought MDL treatment—Plaintiffs' law firm elected to name nondiverse Ford dealers as defendants. Plaintiffs in all 32 cases base their claims against the dealers solely on an allegation that all of them negligently failed to "properly store, prepare and repair of [sic] the Subject Vehicle in accordance with industry standards." Plaintiffs make the identical allegation, with the identical typographical or grammatical error, in all 32 cases.

The principal issue raised by Plaintiffs' motion to remand these two cases is whether the presence of the nondiverse dealers defeats federal court jurisdiction.[1] It does not, for three reasons. First, the dealers were fraudulently joined because Plaintiffs cannot and do not assert a valid claim against the dealers; their negligent repair claim is barred by the economic loss rule, and under Plaintiffs' own theory any negligent repair could not have caused injury to Plaintiffs. Second, the circumstantial evidence establishes clearly and convincingly that there was fraud in the jurisdictional pleadings; it was only after Ford began removing cases, and after it sought an MDL, that Plaintiffs' lawyers drafted a boilerplate negligent repair claim and cut and pasted it into their newly filed complaints, with no indication that any

---

[1] Plaintiffs also challenge the amount in controversy, but their arguments on this issue are largely the same as those made in *Dyanna Dawn Becker v. Ford Motor Co..* For the reasons discussed in detail in Ford's opposition to the motion to remand in *Becker,* which are summarized below, the amounts in controversy in both cases at issue here are well over $75,000, just as in *Becker.*

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1

1   attention was paid to the facts of any individual case. Finally, even if fraud in the
2   jurisdictional pleadings has not been clearly established, the circumstances are
3   sufficiently suspicious, and the prejudice to Plaintiffs so lacking, that this Court
4   should exercise its discretion under Fed. R. Civ. P. 21 to drop the dealers as
5   defendants.

## FACTUAL BACKGROUND

### A.  Plaintiffs' Complaints and the Relief Sought.

8   On December 19, 2017, the Knight Law Group LLP ("KLG") filed an action
9   on behalf of Michael D. Bell ("Bell") alleging that he purchased a new 2011 Ford
10  Fiesta that contained a defective DPS6 PowerShift transmission ("DPS6
11  transmission"). (*Bell* Complaint.) Ford and Penske Ford, which serviced the vehicle,
12  were the named defendants. (*Id.*)   On January 4, 2018, KLG filed an action on behalf
13  of Aaron K. Duerksen ("Duerksen") alleging that he purchased a new 2013 Ford
14  Fiesta that contained a defective DPS6 transmission. (*Duerksen* Complaint.)  Ford
15  and Mossy Ford, which serviced the vehicle, were the named defendants. (*Id.*)
16  Complaint.)  The Complaints are virtually identical , except that the *Bell* Complaint
17  asserts a claim under the Consumers Legal Remedies Act while the *Duerksen*
18  Complaint does not.

### 1.  Claims Against Ford.

20  As to Ford, Plaintiffs asserted claims for breach of express warranty under the
21  Song Beverly Act alleging that Ford "was unable to conform Plaintiff's vehicle to the
22  applicable express warranty after a reasonable number of repair attempts." (*Bell*
23  Complaint ¶ 113; *Duerksen* Complaint ¶ 114.) They alleged that "Ford failed to
24  "either promptly replace the new motor vehicle or promptly make restitution in
25  accordance with the Song-Beverly Act." (*Bell* Complaint ¶ 114; *Duerksen* Complaint
26  ¶ 115.) Plaintiffs sought "reimbursement of the price paid for the vehicle less that
27  amount directly attributable to use by the Plaintiffs prior to discovery of the

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

2

nonconformities." (*Bell* Complaint ¶ 116; *Duerksen* Complaint ¶ 117.) They sought, in addition, incidental, consequential, and general damages resulting from Defendant's failure to comply with [its] obligations under the Song-Beverly Act." (*Bell* Complaint ¶ 117; *Duerksen* Complaint ¶ 118.) They sought a civil penalty of "up to two times the amount of actual damages." ((*Bell* Complaint ¶ 119; *Duerksen* Complaint ¶ 120.) And they sought "attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action." ((*Bell* Complaint ¶ 118; *Duerksen* Complaint ¶ 119.)

Plaintiffs also alleged causes of action based on fraud. They alleged that Ford fraudulently "concealed and failed to disclose facts relating to the Transmission Defects," and that Ford made misrepresentations concerning the DPS transmission. (*Bell* Complaint ¶¶ 133, 148; *Duerksen* Complaint ¶¶ 134,149.) Plaintiffs alleged that they were harmed by Ford's alleged concealment and misrepresentations because they were "induced to enter into the sale of a vehicle that Plaintiff would not have otherwise purchased." (*Bell* Complaint ¶ 141; see also *id.* ¶ 151; *Duerksen* Complaint ¶ 142; *see also id.* ¶ 152.) Plaintiffs sought, among other things, judgment for "diminution in value" and for "restitution of all monies expended." (*Bell* Complaint Prayer for Relief, ¶¶ b, c; *Duerksen* Complaint Prayer for Relief ¶¶ b, c) And they sought punitive damages. (*Bell* Complaint Prayer for Relief, ¶ g; *Duerksen* Complaint Prayer for Relief ¶ g.)

    2.    <u>Allegations As To Dealers.</u>

Plaintiffs both alleged that they presented their vehicle to authorized Ford dealers, complaining that the vehicle shuddered on acceleration. (*Bell* Complaint ¶ 73; *Duerksen* Complaint ¶ 73.) Bell sought repairs from Penske Ford while Duerksen Ford sought repairs from Mossy Ford. Plaintiffs both alleged that they presented the vehicle to the dealer for repairs a second time. (*Bell* Complaint ¶ 74; *Duerksen* Complaint ¶ 74.) Plaintiffs both alleged that both repairs were covered

3

under Ford's written warranty. (*Bell* Complaint ¶¶ 73-74; *Duerksen* Complaint ¶¶ 73-74.)

Plaintiffs both purported to allege a single claim against the dealers, entitled "Negligent Repair," which they stated in four nearly identical single-sentence paragraphs. Duerksen alleged the following:

> 157. Plaintiff delivered the Subject Vehicle to Defendant Mossy Ford for substantial repair.

> 158. Defendant Mossy Ford owed a duty to Plaintiff to use ordinary care and skill in storage, preparation and repair of the Subject Vehicle in accordance with industry standards.

> 159. Defendant Mossy Ford breached its duty to Plaintiff to use ordinary care and skill by failing to properly store, prepare and repair of the Subject Vehicle in accordance with industry standards.

> 160. Defendant Mossy Ford's negligent breach of its duties owed to Plaintiff was a proximate cause of Plaintiff's damages.

(*Duerksen* Complaint ¶¶ 157-160.)

Bell's allegations were virtually identical (changes from Duerksen's allegations are indicated, except for numbering changes):

> 156. Plaintiff delivered the Subject Vehicle to Defendant ~~Mossy~~ Penske Ford for ~~substantial repair~~ repairs on numerous occasions.

> 157. Defendant ~~Mossy~~ Penske Ford owed a duty to Plaintiff to use ordinary care and skill in storage, preparation and repair of the Subject Vehicle in accordance with industry standards.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

4

OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

158.   Defendant ~~Mossy~~ Penske Ford breached its duty to Plaintiff to use ordinary care and skill by failing to properly store, prepare and repair of [sic] the Subject Vehicle in accordance with industry standards.

159.   Defendant ~~Mossy~~ Penske Ford's negligent breach of its duties owed to Plaintiff was a proximate cause of Plaintiff's damages.

(*Bell* Complaint ¶¶ 156-159.)  KLG made these same allegations—with the exact same typographical or grammatical error—in 32 other DPS cases, but only *after* Ford began removing these cases to federal court and *after* Ford sought MDL treatment. (Declaration of Spencer P. Hugret, ¶¶ 5-9, 13, Ex. B). KLG made no such allegations in the hundreds of cases filed before Ford began removing cases. (*Id.* ¶¶ 5, 7, 8.)

Plaintiffs in *Bell* and *Duerksen*—and in the other 30 cases—prayed for no relief from, and requested no judgment against, the dealers; they requested relief only from Ford. (*Bell* Complaint, Prayer for Relief; *Duerksen* Complaint, Prayer for Relief; Declaration of Spencer P. Hugret ¶ 14.)[2]

**B.   Ford's Notices of Removal.**

Ford removed both cases based on diversity of citizenship. (*Bell* Notice of Removal; *Duerksen* Notice of Removal.)

1.   Diversity.

The Notices of Removal alleged that Plaintiffs were and are citizens of California, and that Ford is incorporated in Delaware and has its principal place of business in Michigan. (*Bell* Notice of Removal ¶¶ 21-22; *Duerksen* Notice of Removal ¶¶ 20, 21.) Plaintiffs do not challenge these allegations.

Ford acknowledged that the dealers were citizens of California, but it alleged

---

[2] In one case, KLG did add a sentence to its Negligent Repair cause of action seeking attorney's fees and costs. (Declaration of Spencer P. Hugret ¶ 14.)

5

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

DYKEMA GOSSETT LLP
2723 SOUTH STREET
SUITE 400
ANN ARBOR, MI 48104

1  that Plaintiffs had fraudulently joined those dealers. (*Bell* Notice of Removal ¶ 23;
2  *Duerksen* Notice of Removal ¶¶ 22-25.)  Alternatively, Ford alleged that the dealers
3  were dispensable parties, that the Court should sever the claims against the dealers
4  pursuant to Fed. R. Civ. P. 21, and that the remaining claims against Ford should
5  remain in federal court. (*Bell* Notice of Removal ¶¶ 26-28; *Duerksen* Notice of
6  Removal ¶¶ 22-25.)

7              2.      Amount in Controversy.

8       In both cases, Ford calculated the amount in controversy based on an estimate
9  of the damages sought on Plaintiffs' Song Beverly claim.  For Bell, Ford alleged that
10  the amount in controversy, not counting attorney fees or punitive damages, was at
11  least $57,000, based on the purchase price of the vehicle ($19,005) and Plaintiff's
12  request for a civil penalty up to two times the compensatory damages. (*Bell* Notice of
13  Removal ¶ 19.)  For Duerksen, Ford alleged that the amount in controversy, not
14  counting attorney fees or punitive damages, was at least $67,896, based on the
15  purchase price of the vehicle ($22,632) and Plaintiff's request for a civil penalty up to
16  two times the compensatory damages. (*Duerksen* Notice of Removal ¶ 19.)

17       In both cases, Ford attached a declaration from a lawyer who has represented
18  Ford and other motor vehicle manufacturers in over one thousand lawsuits alleging
19  claims similar to those in this case.  (*Bell* and *Duerksen* Notices of Removal,
20  Declaration of Spencer Hugret, ¶¶ 4-6). This declaration established that Plaintiff's
21  counsel in such cases, including KLG lawyers, regularly request more than $100,000
22  in fees. (*Id.*) Thus, Ford's Notice of Removal alleged that the amount in controversy
23  was well over $75,000 without even considering the actual or punitive damages that
24  were at stake on Plaintiffs' fraud claims.

25

26

27

28

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES**

**ARGUMENT**

I. **PLAINTIFFS' CLAIMS AGAINST FORD DEALERS DO NOT, AND SHOULD NOT, DEFEAT JURISDICTION.**

There is no debate that Plaintiffs are California citizens and that Ford is incorporated in Delaware and has its principal place of business in Michigan. KLG nevertheless argues in both cases that joining Ford dealers, California citizens, as defendants defeats the complete diversity required for the exercise of diversity jurisdiction. But "[a] nondiverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was 'fraudulent' or a 'sham.'" *Gasumyan v. Travelers Cas. Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 73013, at *2 (C.D. Cal. May 11, 2017). Further, "[e]ven absent a finding of improper joinder, Rule 21 of the Federal Rules of Civil Procedure authorizes a court, in an exercise of its discretion, to sever nondiverse parties to establish federal jurisdiction." *Szymczyk v. Shiff (In re Incretin Mimetics Prods. Liab. Litig.)*, 2015 U.S. Dist. LEXIS 192588, at *253-54 (S.D. Cal. July 28, 2015). For either or both of these reasons, the Court should find that complete diversity exists.

A. **Joinder Of The Dealers Was Fraudulent And A Sham.**

The Ninth Circuit recently summarized two ways to establish fraudulent joinder:

> There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court." *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). Fraudulent joinder is established the second way if a defendant shows that an "individual[]

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

7

1   joined in the action cannot be liable on any theory." *Ritchey*

2   *v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998).

3   But "if there is a possibility that a state court would find

4   that the complaint states a cause of action against any of the

5   resident defendants, the federal court must find that the

6   joinder was proper and remand the case to the state court."

7   *Hunter*, 582 F.3d at 1046 (*quoting Tillman v. R.J. Reynolds*

8   *Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per

9   curiam)) (emphasis added). A defendant invoking federal

10   court diversity jurisdiction on the basis of fraudulent joinder

11   bears a "heavy burden" since there is a "general

12   presumption against [finding] fraudulent joinder." *Id.*

13   (citations omitted).

14   *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). Here, fraudulent

15   joinder can be established under both of these two methods.

16       1.   Plaintiff Does Not And Cannot Establish Claims Against The
17            Dealers Based On Negligent Repair.

18   KLG made no serious attempt in either *Bell* or *Duerksen* to state a claim for

19   negligent repair against either Mossy Ford or Penske Ford. The only facts it alleges as

20   to either dealer are that Plaintiffs presented their vehicles to the dealers for repair on

21   two occasions, that on both occasions the dealers performed repairs, that on both

22   occasions the dealers advised Plaintiffs that the vehicles had been repaired and were

23   safe to drive, and that on both occasions the repair was covered by Ford's warranty.

24   (*Bell* Complaint ¶¶ 73-74; *Duerksen* Complaint ¶¶ 73-74.) KLG vaguely alleges in

25   both cases, using identical language, that the dealers "fail[ed] to properly store,

26   prepare and repair of [sic] the Subject Vehicle in accordance with industry

27   standards." (*Bell* Complaint ¶ 158; *Duerksen* Complaint ¶ 159.) But in neither case

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

8

1   does KLG allege how, if at all, the dealers failed to properly store the vehicles,

2   prepare the vehicles, or repair the vehicles. And in the Prayer for Relief, KLG does

3   not request relief from the dealers, and it does not demand judgment against the

4   dealers. Rather, KLG specifically requests relief from, and judgment against, only

5   Ford. (*Bell* Complaint, Prayer for Relief; *Duerksen* Complaint, Prayer for Relief).

6        Theoretically, Plaintiffs and KLG might be able to correct these deficiencies

7   with an amended complaint, if they truly have reason to believe that both dealers

8   negligently stored, prepared, or repaired his vehicle. But even with such an

9   amendment, Plaintiffs would have no claim for negligent repair, because the claims

10  would be barred by the economic loss rule. *See, e.g., Ruiz v. BMW of N. Am., LLC*,

11  2017 U.S. Dist. LEXIS 6983, at *4-5 (C.D. Cal. Jan. 18, 2017). In *Ruiz,* as here, the

12  plaintiff asserted a claim against a motor vehicle dealer for negligent repair, but the

13  complaint did not "allege any personal injury, nor [did] it claim that any of Plaintiffs'

14  property was harmed other than the defective vehicle itself." *Id.* Further, the plaintiff

15  did not offer any support or legal authority to counter the argument that the economic

16  loss rule barred recovery. *Id.* The same is true here. *See also Sea-Land Serv. v. GE*,

17  134 F.3d 149, 156 (3d Cir. 1998) (dismissing negligent repair claim based on the

18  economic loss rule); *Bedgood v. Nissan N. Am., Inc.*, 2016 U.S. Dist. LEXIS 82716,

19  at *12-13 (W.D. Tex. June 23, 2016) (same); *Wren Indus. v. Verson Allsteel Press*, 84

20  F. Supp. 2d 911, 915 (S.D. Ohio 1999) (same, collecting cases).

21       KLG asserts that "there are numerous exceptions to the economic loss rule,"

22  i.e., "independent torts, tortious breach of implied covenant, and bad faith denial of a

23  contract." (*Duerksen* Motion to Remand at 7 ["MR"].)[3] But KLG makes no attempt to

24  demonstrate that Plaintiffs' negligent repair claims against the dealers fall within any

25  of these exceptions. In fact, the case KLG relies on to support the existence of these

26  ───────────────

27     [3] The motions to remand in *Bell* and *Duerksen* are virtually identical, and Ford will simply cite to the *Bell* motion.

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

9

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

1  purported exceptions held that none of them applied to a tort claim based on an

2  improper repair. *Harris v. Atlantic Richfield,* 14 Cal.App.4[th] 70, 72-73 (1993).

3  Further, the Court in *Harris* also held that the other case relied on by KLG—*Tameny*

4  *v. Atlantic Richfield Co.,* 27 Cal.3d 167 (1980)—did not apply outside the

5  employment context. *Harris,* 14 Cal.App.4th at 72 ("The novel issue presented by

6  this appeal is whether a *Tameny* cause of action … exists outside the employment

7  situation. We conclude it does not.").

8       But even assuming KLG could somehow overcome the economic loss doctrine,

9  it would face another insuperable obstacle: causation. In both cases, KLG alleges

10  (using identical language) that the dealers' unspecified negligence "was a proximate

11  cause of Plaintiff's damages."  (*Bell* Complaint ¶ 159; *Duerksen* Complaint ¶ 160.)

12  But KLG does not identify those damages let alone explain how they were caused by

13  the dealers' negligent storage, preparation, or repair. KLG affirmatively alleges that

14  all of the repairs by the dealers were covered by Ford's written warranty. (*Duerksen*

15  and *Bell* Complaints ¶¶ 73-74.) KLG affirmatively alleges that the repairs

16  recommended by Ford were "completely ineffective at addressing the Transmission

17  Defect," that the issues with the transmission were "irreparable," and that Ford failed

18  to disclose "its inability to repair these inherent defects." (*Bell* Complaint ¶¶ 67, 87,

19  136, 139, 172; *Duerksen* Complaint ¶¶ 67, 83, 88, 137, 140.) And in a DPS6 trial that

20  resulted in a verdict for the plaintiff, KLG presented expert testimony that Ford was

21  never able to successfully fix the transmission problems:

22          Q. And from your review of all the materials that were

23          produced by Ford that we could look at, is there any

24          indication that they ever fixed these issues?

25          A. No, this problem continued to plague this particular

26          series of transmission.

27  (Declaration of John M. Thomas, Ex. A [Testimony of Darrell Blasjo in *Myers v.*

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES**

1 *Ford*] at 40.) Thus, under KLG's theory, any negligence by the dealers could not
2 have caused any damages, because the dealers could not have repaired the
3 "irreparable" defect even if they had exercised all possible care in storing, preparing,
4 or repairing Plaintiff's vehicle.

5       In short, "[the dealers'] joinder was fraudulent because the [Complaint] does
6 not and cannot state a cause of action against [the dealers]." *Gasumyan v. Travelers*
7 *Cas. Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 73013, at *4 (C.D. Cal. May 11, 2017).

8         2.   <u>KLG's Negligent Repair Allegations Are Almost Certainly</u>
9              <u>Unsubstantiated and Fraudulent.</u>

10       But even assuming that KLG could amend its complaints to state a
11 theoretically valid claim for negligent repair, the evidence strongly suggests that
12 KLG's identical allegations that Mossy Ford, Penske Ford, and dozens of other
13 dealers were all negligent in storing, preparing, or repairing dozens of separate
14 vehicles is unlikely to be true. Albeit circumstantial, the facts strongly indicate that
15 the negligent repair claims were simply cut and pasted into dozens of complaints,
16 without regard for the actual facts of any case, for the obvious purpose of defeating
17 jurisdiction:

18 •   KLG has filed hundreds of cases against Ford, in both state and federal courts,
19     alleging defects in vehicles equipped with DPS6 transmissions. (Declaration of
20     Spencer P. Hugret, ¶¶ 5, 8, 10, Exs. A & B.) Before Ford began asserting its right
21     to remove these cases to federal court, KLG did not name dealers as defendants
22     and did not claim that the vehicles at issue had been negligently stored, prepared,
23     or repaired. (*Id.* ¶¶ 5, 7, Exs. A & B.)

24 •   KLG took a DPS6 case to trial without naming the dealer as a defendant.
25     (Declaration of John M. Thomas, ¶ 2.)

26 •   Before January 2018, KLG filed 45 cases which were removed to federal court
27     and became part of the MDL. In none of these cases did KLG name a dealer as a

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS
AND EXPENSES**

1    defendant. (Declaration of Spencer P. Hugret, ¶ 8, Ex. A.)

2    • Starting in January 2018—after Ford began removing DPS6 cases to federal court

3    and after it sought creation of an MDL—KLG for the first time began inserting the

4    names of dealers in the caption of DPS6 cases that it filed in state court. (*Id.* ¶ 9.)

5    • KLG filed 72 DPS6 cases after January 18, 2018 that are now in the MDL. KLG

6    inserted dealers in the caption of 65 of these cases. (*Id.* ¶ 10, Ex. B.)

7    • KLG has not attempted to amend complaints filed before January 18, 2018 to add

8    dealers as defendants. (*Id.* ¶ 11.)

9    • In 32  cases out of the 65 where KLG inserted the names of dealers in the caption,

10    including *Bell* and *Duerksen*, KLG used identical language—including an

11    identical typographical or grammatical error—to vaguely allege that all of these

12    dealers "failed to properly store, prepare and repair of [sic] the Subject Vehicle in

13    accordance with industry standards." (*Id.* ¶ 13, Ex. B.)

14    • In none of the cases in which KLG has named a dealer as a defendant does it pray

15    for relief from, or demand judgment against, the dealers. (*Id.* ¶ 14.)

16    It defies common sense to conclude that KLG suddenly happened upon

17    evidence that *all* of these dealers negligently stored, prepared, or repaired *all* of these

18    vehicles only after Ford began removing cases to federal court. Rather, the only

19    reasonable conclusion is that KLG began indiscriminately inserting the identical

20    allegations in dozens of cases—regardless of whether there was any actual evidence

21    to support these allegations with respect to any specific dealer—for the sole purpose

22    of defeating diversity jurisdiction.

23    In short, fraudulent joinder has been established with evidence that there was

24    actual fraud in the pleading of jurisdictional facts.

25    **B.    Alternatively, This Court Should Exercise Its Discretion Under Rule**

26    **21 And Drop The Dealers As Parties.**

27    Even if fraudulent concealment has not been established, the circumstances are

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1    sufficiently suspicious, and the prejudice to Plaintiffs so lacking, that this Court

2    should exercise its discretion under Fed. R. Civ. P. 21 to drop the dealers as

3    defendants.  Fed. R. Civ. P. 21 provides that the court, on its own motion, "may at

4    any time, on just terms, add or drop a party." This rule "grants a federal district or

5    appellate court the discretionary power to perfect its diversity jurisdiction by

6    dropping a nondiverse party provided the nondiverse party is not indispensable to the

7    action under Rule 19." *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir.

8    1980). Therefore, even absent a finding of fraudulent joinder, this rule "authorizes a

9    court, in an exercise of its discretion, to sever nondiverse parties to establish federal

10   jurisdiction." *Szymczyk v. Shiff (In re Incretin Mimetics Prods. Liab. Litig.)*, 2015

11   U.S. Dist. LEXIS 192588, at *253-54 (S.D. Cal. July 28, 2015); *accord, e.g., Pierce

12   v. Frink*, 2017 U.S. Dist. LEXIS 180605, at *6-7 (E.D. Cal. Oct. 31, 2017)

13   ("[D]istrict courts have discretion under Federal Rule of Civil Procedure 21 to retain

14   diversity jurisdiction over a case by dropping a nondiverse party if that party is not

15   necessary and indispensable to the case under Rule 19."); *Kelly v. Amylin Pharm.,

16   LLC*, 2014 U.S. Dist. LEXIS 153117, at *20 (S.D. Cal. Aug. 8, 2014) ("[U]nder the

17   broad discretion afforded to the courts to drop parties pursuant to Rule 21, this Court

18   may drop [the nondiverse defendant] to preserve its jurisdiction if [that defendant] is

19   found to be a dispensable party.").

20          KLG does not seriously dispute that this Court has the discretionary power to

21   drop the dealers as parties if the dealers are not indispensable under Rule 19.[4] But

---

[4] Plaintiff cites two decisions that suggest, without deciding, that Rule 21 might
allow a court to drop or sever only parties or claims that are misjoined. *Sandhu v.
Volvo Cars of N. Am., LLC*, 2017 U.S. Dist. LEXIS 13602, at *10-11 (N.D. Cal. Jan.
31, 2017); *Delafontaine v. Volvo Cars of N. Am.*, LLC, 2016 U.S. Dist. LEXIS
175259, at *9 (C.D. Cal. Dec. 19, 2016). Neither case cited any authority (other than
Rule 21 itself and *Delafontaine*), and neither case actually decided the issue. In any
event, the Ninth Circuit, other Courts of Appeal, and other district courts have
repeatedly applied Rule 21 even where there was no misjoinder. In addition to the
cases cited in the text, *see, e.g., Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603
F.2d 1065, 1069 (3d Cir. 1979) ("The court may dismiss a nondiverse party [under
Rule 21] in order to achieve diversity even after judgment has been entered."); *Fid. &
Cas. Co. v. Res. Ins. Co.*, 596 F.2d 914, 918 (9th Cir. 1979) ("Federal Rule of Civil

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

13

KLG argues that the dealers are "required part[ies] under Federal Rule of Civil Procedure, rule 19." (*Bell* and *Duerksen* Motions to Remand at 8.) Under Rule 19, a party is indispensable if (1) the court cannot accord complete relief without the party, (2) the party claims an interest and disposing of the claim in the party's absence may impair the party's ability to protect its interest, or (3) without the party other parties will be exposed to double, multiple, or inconsistent obligations. None of these factors are true here. A court can accord complete relief against Ford; indeed, the fact that KLG did not name dealers in complaints filed before January 2018, and that it has not attempted to amend those complaints, demonstrates that it can secure complete relief without the dealers. The dealers have no interest in the litigation against Ford that will affect its interests), and neither Ford nor Plaintiffs will be exposed to double, multiple, or inconsistent obligations. Indeed, KLG never explains why the dealers are necessary parties under Rule 19. Instead, KLG argues at length that permissive joinder of the dealer was proper under Rule 20, an irrelevant issue on which there is no dispute. (*Bell* Motion to Remand at 7-9; *Duerksen* Motion t Remand at 8-9.)

There is scant authority that discusses the factors that should be considered when applying Rule 21 under these circumstances. However, Ford suggests that it the same factors that courts consider in deciding whether to permit joinder of a nondiverse defendant after removal under 28 U.S.C. § 1447(e) are relevant to whether severance of a nondiverse party joined before removal under Rule 21 should

Procedure 21 permits "the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just" to add or drop parties so as to avoid dismissing an action."); *Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994) ("Rule 21 of the Federal Rules of Civil Procedure permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19, that is, the party to be dropped must not be a necessary party."); *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983) (rejecting argument that Rule 21 applies only to misjoined claims); *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 872 (N.D. Ohio 2009) ("Baxter, however, correctly asserts that under Rule 21 of the Federal Rules of Civil Procedure, I can retain jurisdiction by severing claims against nondiverse dispensable defendants.").

14

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  be allowed. *See Varga v. Wells Fargo Bank, N.A.*, No. CV 16-9650-DMG (KSx),

2  2017 U.S. Dist. LEXIS 148536, at *3  (C.D. Cal. Sep. 12, 2017) (treating a motion to

3  drop a nondiverse defendant under Rule 21 as a motion to strike under §1447(e)).[5]

4  Indeed, the circumstances here are directly analogous to the situation addressed by

5  § 1447(e)—a plaintiff's attempt to amend a complaint to join a nondiverse party only

6  after removal.  Unlike joinders of nondiverse defendants before removal, attempts to

7  join nondiverse defendants after removal are not are not presumed to be appropriate

8  because "a diversity-destroying amendment could be motivated by the plaintiff's

9  desire to gain procedural advantage by returning to state court rather than a desire to

10  reach the merits." *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1088 (C.D. Cal. 1999). In

11  the unusual circumstances of this case, KLG's attempts to add dealers only after Ford

12  began removing virtually identical cases within the scope of the MDL raises identical

13  concerns.  Therefore, the same policy considerations that inform the Court's

14  discretion under §1447(e) should inform its discretion under Rule 21, at least in this

15  case.

16      In deciding whether to allow joinder of a nondiverse defendant, courts consider

17  the following factors:

18          (1) whether the party sought to be joined [i]s needed for just

19          adjudication and would be joined under Federal Rule of

20          Civil Procedure 19(a); (2) whether the statute of limitations

21          would preclude an original action against the new

22          defendants in state court; (3) whether there has been

23          unexplained delay in requesting joinder; (4) whether joinder

24          is intended solely to defeat federal jurisdiction; (5) whether

25          the claims against the new defendant appear valid; and

26      ―――――――――

    [5] §1447(e) provides:  "If after removal the plaintiff seeks to join additional
27  defendants whose joinder would destroy subject matter jurisdiction, the court may
    deny joinder, or permit joinder and remand the action to state court."

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

15

1      (6) whether denial of joinder will prejudice the plaintiff.

2  *Varga,* 2017 U.S. Dist. LEXIS 148536, at *7.

3      These factors all strongly support dropping the dealers:

4  • As discussed above, the dealers are not needed for just adjudication under Rule
5     19.

6  • The statute of limitations for negligence causing property damage is three years.
7     Cal. Code. Civ. P. § 338. Duerksen's earliest (and only) repair appears to be May
8     17, 2017, so the statute will not expire until May 17, 2020.[6] Bell's earliest repair
9     was on June 17, 2015, about a month more than three years ago. (*Bell* Complaint
10    ¶ 73). But the statute of limitations has been tolled for the eight months this action
11    has been pending and will not expire until about eight months from now. *See, e.g.,*
12    *Thomas v. Gilliand*, 95 Cal. App. 4th 427 (2002). Thus, in the unlikely event that
13    Bell and Duerksen seriously intend to pursue claims against the dealers, they have
14    ample time to do so.

15 • There is no explanation for KLG's failure to name dealers in the hundreds of cases
16    filed before January 2018.

17 • For all of the reasons discussed above, it is quite apparent that KLG's purpose in
18    joining the dealers was to defeat federal court jurisdiction.

19 • As discussed above, the negligent repair claim asserted against the dealers does
20    not appear valid.

21 • The denial of joinder will not prejudice Plaintiffs; they can secure complete relief
22    from Ford, and if they really want to pursue their claims against the dealers, they
23    can do so in state court.

24    These same factors would apply if KLG now sought to amend complaints filed

25 
  _____
26    [6] Although Duerksen alleges that Mossy Ford repaired his vehicle twice,
   Mossy Ford's records show only one repair. (Declaration of John M. Thomas ¶ 4, Ex,
27  B.) Earlier repairs were performed by a different dealer, Autonation Ford Bellvue.
   (Id., Ex. D.)

28                                    16

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  before January 18, 2018, to join nondiverse dealers, and they would unquestionably

2  support denial of leave to amend. *See, e.g., Clinco,* 41 F. Supp. 2d 1080, 1082-1086.

3  And yet, nothing in law or logic suggests that under the unusual circumstances of this

4  case the result should depend on whether the dealer in any particular case was added

5  before or after removal.

6          KLG asserts that Ford is seeking to "flout judicial economy and burden two

7  separate courts for claims that can easily be litigated together." (*Bell* and *Duerksen*

8  Motions to Remand at 9.)  But this argument assumes that KLG and Plaintiffs

9  actually intend to litigate their negligent repair claims against the dealers—an

10  assumption that is contrary to all of the available evidence. If those claims are

11  severed, they will not be litigated in state court; they will simply be dropped. *See*

12  *Alleyne v. Am. Sec. Ins. Co.*, 2011 U.S. Dist. LEXIS 158736, at *6-8 (S.D. Fla. Apr.

13  12, 2011) ("The risk of multiple litigation arising from this matter is small, since the

14  Court finds it unlikely that Plaintiffs will pursue separate litigation against the

15  nondiverse defendants in state court.")  It is KLG, not Ford, that is engaging in

16  "blatant gamesmanship." This court should exercise its discretion under Rule 21 and

17  drop the dealers.

18  **II.     THE AMOUNTS IN CONTROVERSY—THE AMOUNTS AT STAKE—**

19  **         EXCEEDS $75,000.**

20          The amount in controversy in both *Bell* and *Duerksen* exceeds $75,000 in this

21  case for the same reasons discussed in detail in Ford's response to the motion to

22  remand in *Becker,* and those arguments are incorporated herein.[7] Only a brief

23  summary is necessary here.

24          **A.     The Stakes On Plaintiffs' Fraud Claims Exceed $75,000.**

25          As discussed in *Becker,* the amount KLG's complaint in this case puts at stake

26  _____

27  [7] The only difference, apart from slight differences in amounts, is that no offer
    of $75,001 was made to Plaintiffs in *Bell* and *Duerksen.*

28                                          17

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  on the fraud claims is evident from the amounts KLG put at stake in other DPS6

2  cases in which it filed virtually identical complaints. As in the prior cases, KLG's

3  complaints in these cases put at stake at least the full amount paid by Plaintiffs for

4  their vehicles plus nine times that amount in punitive damages. For Bell, that number

5  is $190,840. For Duerksen that number is $203,688.

6      **B.    The Stakes On Plaintiffs' Song Beverly Claims Exceed $75,000.**

7      With respect to the relief sought on the Song Beverly claims, KLG's

8  Complaints in *Bell* and *Duerksen* are identical to *Becker*. The amount put at stake is

9  the purchase price of the vehicle, less a deduction for use, plus a civil penalty up to

10  two times that amount.

11      For Bell, that amount is calculated as follows:

12          Purchase Price: $19,084

13          <u>Less</u> Deduction for Use: $5,890

14          =    $13,194 of Potential Actual Damages

15          <u>Plus</u> Civil Penalty (2 x Actual Damages): $26,388

16          =    $39,582 of Potential Damages Awarded

17  (Declaration of John M. Thomas ¶ 5.)

18      For Duerksen, that amount is calculated as follows:

19          Purchase Price:    $20,397

20          <u>Less</u> Deduction for Use: $4,403

21          =    $15,994 of Potential Actual Damages

22          <u>Plus</u> Civil Penalty (2 x Actual Damages): $31,988

23          =    $47,982 of Potential Damages Awarded

24  (Declaration of John M. Thomas ¶ 6.)

25      As demonstrated in *Becker*, KLG routinely requests more than $50,000 in fees

26  to prepare DPS6 cases for trial. Thus, as in *Becker,* the amount in controversy here

27  exceeds $90,000.

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  KLG criticizes Ford's calculations in the Notices of Removal because they did
2  not include deductions for use. (*Bell* Motion to Remand at 10; *Duerksen* Notice of
3  Removal at 10-11.)  But including a deduction for use does not change the ultimate
4  result; as shown above; the amount in controversy is *still* well over $75,000. Besides,
5  this Court may construe this opposition as an amendment to Ford's notice of removal.
6  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).

7    **C.    KLG Consistently Rejects Offers Exceeding $75,000.**

8    AS Ford discussed in its opposition brief in *Becker*, Ford made offers of
9  settlement in 83 DPS6 transmission cases filed by KLG, either in the Notice of
10 Removal or shortly before or after. *No Plaintiff in any of those cases accepted.* As
11 discussed in Ford's brief in *Becker*, this confirms that KLG believes that more than
12 $75,000 is at stake in these cases, either because it hopes to recover a large punitive
13 damages award, or because it anticipates a large fee award—or both.

14 **III.   No Award of Fees is Proper.**

15   Plaintiffs seek an award of fees and costs associated with their motion to
16 remand, but "[a]bsent unusual circumstances, courts may award attorney's fees under
17 § 1447(c) only where the removing party lacked an objectively reasonable basis for
18 seeking removal" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct.
19 704, 711 (2005). "Conversely, when an objectively reasonable basis exists, fees
20 should be denied." *Id.*

21   For all of the reasons discussed above, Ford had an objectively reasonable
22 basis for seeking removal, and no fees or costs should be awarded. *See, e.g., Chavez
23 v. GM, Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 172587, at *11 (C.D. Cal. Oct. 18,
24 2017) (fees denied even though defendant calculated Song Beverly damages without
25 regard to the deduction for use, provided no estimate of attorney fees, and relied
26 solely on a distinguishable case to support the amount of punitive damages at stake).

27
28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**

## CONCLUSION

The motion to remand should be denied. Even if the motion to remand is granted, no fees or costs should be awarded.

Respectfully submitted,

Dated: July 20, 2018

**DYKEMA GOSSETT PLLC**

/s/ John M. Thomas

By: _____

John M. Thomas

**GORDON REES SCULLY MANSUKHANI, LLP**
Spencer P. Hugret
Molly J. Mrowka

**SHOOK, HARDY & BACON**
Amir Nassihi

**SNELL & WILMER, LLP**
Randolf T. Moore

*Attorneys for Defendant*
*FORD MOTOR COMPANY*

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1122899/39313944v1

**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND AWARD OF COSTS AND EXPENSES**