1  Warren E. Platt (#154086)
Alina Mooradian (#245470)
2  SNELL & WILMER L.L.P.
600 Anton Blvd., Suite 1400
3  Costa Mesa, California 92626-7689
Telephone:   714.427.7000
4  Facsimile:   714.427.7799

5  Robert A. Brundage (#159890)
Robert.brundage@morganlewis.com
6  MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
7  San Francisco, California 94105
Telephone:   415.442.1000
8  Facsimile:   415.442.1001

9  Attorneys for Defendant
FORD MOTOR COMPANY

10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     COUNTY OF LOS ANGELES

13

14  ARIEL MYERS,                        Case No. BC638302

15            Plaintiff,                UNLIMITED JURISDICTION

16     v.                               **DEFENDANT FORD MOTOR
                                        COMPANY'S MEMORANDUM OF
17  FORD MOTOR COMPANY, a Delaware      POINTS AND AUTHORITIES IN
    Corporation, and DOES 1 through 10, SUPPORT OF MOTION FOR
18  inclusive,,                         JUDGMENT NOTWITHSTANDING
                                        THE VERDICT**
19            Defendant.
                                        DATE: August 24, 2018
20
                                        TIME: 8:30 a.m.
21
                                        DEPT: 58
22
                                        RESERVATION ID: 180720333323
23

24                                      Date Filed: 10/21/2016
                                        Trial Date: 1/22/2018
25                                      **Last Day For Hearing: 8/24/2018**
                                        **Last Day For Decision: 9/4/2018**
26

27

28

4832-8518-8974

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   FACTS ................................................................................................................... 2

      A.    Absence of Evidence of Malice, Fraud or Oppression by Ford's Officers,
            Directors and Managing Agents. ................................................................ 2

      B.    Proceedings In This Case ........................................................................... 5

III.  THE COURT SHOULD GRANT PARTIAL JNOV ON PLAINTIFF'S CLAIM
      FOR PUNITIVE DAMAGES. ............................................................................. 5

      A.    JNOV must be granted where the verdict is contrary to law or not
            supported by substantial evidence............................................................. 5

      B.    The Basic Standard for Punitive Damages................................................. 6

      C.    Plaintiff Failed To Prove Oppression, Fraud or Malice By An Officer,
            Director or Managing Agent of Ford Motor Company............................. 8

      D.    Punitive Damages Are Barred By Plaintiff's Election of Remedies..................... 12

      E.    The Record Does Not Contain Legally Sufficient Evidence That The
            Dealer Was Ford's Agent........................................................................... 12

IV.   CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Airlines v. Sheppard, Mullin, Richter & Hampton*
(2002) 96 Cal.App.4th 1017 ............................................................................... 7

*In re Angelia*
(1981) 28 Cal.3d 908 .......................................................................................... 7

*Barton v. Alexander Hamilton Life Ins. Co.*
(2003) 110 Cal.App.4th 1640 ............................................................................. 7

*Beavers v. Allstate Insurance Co.*
(1990) 225 Cal.App.3d 310.................................................................................. 6

*Brennan v. Townsend & O'Leary Enterprises, Inc.*
(2011) 199 Cal.App.4th 1336 ............................................................................. 6

*Brewer v. Premier Golf Properties, LP*
(2008) 168 Cal.App.4th 1243 ............................................................................. 8

*Cheung v. Daley*
(1995) 35 Cal.App.4th 1673 ............................................................................... 7

*College Hosp., Inc. v Superior Court*
(1994) 8 Cal.4th 704 ....................................................................................... 7, 8

*CRST, Inc. v. Superior Court*
(2017) 11 Cal.App.5th 1255, 1273 ................................................................ 9, 10

*Cruz v. HomeBase*
(2000) 83 Cal.App.4th 160 ................................................................................. 8

*Dell'Oca v. Bank of New York Trust Co., N.A.*
(2008) 159 Cal.App.4th 531 ............................................................................... 6

*Emery v. Visa Internat. Service Ass'n*
(2002) 95 Cal.App.4th 952 ............................................................................... 13

*Gelfo v. Lockheed Martin Corp.*
(2006) 140 Cal.App.4th 34 ....................................................................... 9, 11, 12

*Jorge v. Culinary Institute of America*
(2016) 3 Cal.App.5th 382, 396 ........................................................................... 6

*Kelly-Zurian v. Wohl Shoe Co.*
(1994) 22 Cal.App.4th 397 ...................................................................... 9, 11, 12

*Kidron v. Movie Acquisition Corp.*
  (1995) 40 Cal.App.4th 1571 ...................................................................................6

*Kuhn v. Department of General Services*
  (1994) 22 Cal.App.4th 1627 ...................................................................................6

*Lackner v. North*
  (2006) 135 Cal.App.4th 1188 .................................................................................7

*Mother Cobb's Chicken T., Inc. v. Fox*
  (1937) 10 Cal.2d 203 .............................................................................................6

*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*
  (2006) 144 Cal.App.4th 1175 .................................................................................5

*Orient Handel v. United States Fid. & Guar. Co.*
  (1987) 192 Cal.App.3d 684.....................................................................................7

*Pacific Gas & Elec. Co. v. Superior Court*
  (2018) 24 Cal.App.5th 1150, 235 Cal.Rptr.3d 228 ...............................................7

*Patterson v. Domino's Pizza, LLC*
  (2014) 60 Cal.4th 474 .....................................................................................13, 14

*Roby v. McKesson Corp.*
  (2009) 47 Cal.4th 686 .........................................................................9, 10, 11, 12

*Roddenberry v. Rodenberry*(1996)
  44 Cal.App.4th 634 .................................................................................................6

*Taylor v. Superior Court*
  (1979) 24 Cal.3d 890 .......................................................................................7, 11

*White v. Ultramar, Inc.*
  (1999) 21 Cal.4th 563 .....................................................................................9, 11, 12

**Statutes**

Civ. Code, § 2334 .....................................................................................................14

Civ. Code § 3294(a) ...........................................................................................*passim*

Civ. Code §§ 1790-1795.8 .........................................................................................1

Code Civ. Proc., § 629 ...........................................................................................5, 6

Veh. Code § 331(a)(3),(4) ........................................................................................13

Veh. Code, § 331.2....................................................................................................13

Veh. Code § 11700....................................................................................................13

Veh. Code § 11713.1(f).................................................................................................................13

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

## I. <u>INTRODUCTION</u>

This is a Lemon Law case run amok. Plaintiff Ariel Myers ("Plaintiff" or "Myers") claims that the transmission in his 2014 Ford Focus car was defective and was not repaired despite multiple attempts. He alleged a claim against defendant Ford Motor Company ("Ford") under the Song-Beverly Act (Lemon Law), Civil Code §§ 1790-1795.8. The parties agreed on this claim. They stipulated to liability, compensatory damages and civil penalties under Song-Beverly. At plaintiff's insistence, a purported "judgment" was even entered on this claim.

But plaintiff did not stop there. He also claimed that Ford committed fraud in selling him the vehicle to begin with, and on that basis sought punitive damages. Ford drew the line and took the case to trial. The jury returned a plaintiff's verdict and $500,000 in punitive damages. Plaintiff, however, did not present evidence of all of the elements of his claims, let alone punitive damages.

This motion seeks JNOV as to punitive damages, only. Granting this motion will leave plaintiff with a judgment for his actual damages and civil penalties under the Song-Beverly Act, plus attorney fees and costs for that claim. Plaintiff has already conceded that he cannot recover the compensatory damages the jury awarded for fraud, and they are not included in the judgment.

Plaintiff's punitive-damages claim fails as a matter of law, for at least three reasons.

First, punitive damages are not available unless plaintiff proves by clear and convincing evidence that defendant committed oppression, malice or fraud in the conduct on which compensatory liability was based. Civ. Code § 3294(a). In the case of a corporation, such as Ford, the oppression, malice or fraud must have been personally committed, authorized, or ratified by an officer, director or managing agent of the corporation. Civ. Code § 3294(b). There is no such evidence in this record.

Second, punitive damages are barred by election of remedies, a point Ford raised during and after trial. Settled law prohibits plaintiff from recovering punitive damages and Song-Beverly penalties for substantially the same conduct. Plaintiff has already elected the Song-Beverly penalties, so he cannot recover punitive damages.

And third, plaintiff's only arguable misrepresentation claim is that the dealer incorrectly told him that the problems he had experienced with the DPS6 transmission in a previous car had been fixed by a re-design. As a matter of law, Ford is not responsible for the misstatement by its dealer, which is independently owned.

Plaintiff has a genuine Lemon Law claim. Ford stipulated to it. His counsel's attempt to

1  stretch it into a punitive-damages case is unsupported. The Court should grant JNOV as to the

2  punitive damages.

3  **II.    FACTS**

4      The background facts of the case and plaintiff's claims are set forth in the memorandum

5  supporting Ford's companion motion for new trial.  This memorandum sets out the facts specific

6  to the JNOV motion, and merely summarizes facts already set forth in the new-trial

   memorandum.

7

8      **A.    Absence of Evidence of Malice, Fraud or Oppression by Ford's Officers,
              Directors and Managing Agents.**

9      As detailed in Part II.B below, punitive damages are only available where plaintiff proves

10  by clear and convincing evidence that defendant's acts that created liability were committed with

11  oppression, fraud or malice (as defined).  Oppression and malice both require the conduct to be

12  "despicable."  Punitive damages against a corporation, such as Ford, require clear and convincing

13  evidence that the act of oppression, malice or fraud was personally committed, authorized or

   ratified by an officer, director or managing agent of the corporation.

14      Plaintiff made scattershot claims that Ford committed all three:  oppression, malice and

15  fraud. Some of the asserted conduct was as a matter of law not oppression, malice or fraud, and

16  all of it is bereft of evidence that an officer, director or managing agent personally committed,

17  authorized or ratified the conduct.

18      Plaintiff claimed that Ford's conduct was "despicable" and in "willful and knowing

19  disregard" because it admitted violating the Song-Beverly Act. [Tr. 4/5[1] 70-71]  He claimed that

20  Ford's conduct was "malice" and in "knowing disregard of the rights to safety" because Ford sold

21  vehicles containing the DPS6 transmission while supposedly knowing that the DPS6 was a safety

22  hazard because it could roll backward on a hill, stall or lose power and Ford assertedly knew it

23  did not have a fix. [4/5 72] He claimed that Ford committed "oppression" and its conduct was

   "despicable and subjected [Myers] to cruel and unjust hardship because of "what he and his

24  family have to go through because of the things that they knew about." [4/5 72-73]

25      Plaintiff claimed that Ford committed fraud because it supposedly "intentionally

   concealed a material fact." [4/5 73]

26

27      In rebuttal, plaintiff claimed that Ford intentionally concealed facts, as supposedly

---

[1] We use the same citation form as we use in Ford's companion motion for new trial.  4/5 refers to
28  the date and 70-71 is the page.  The cited pages are attached to the Declaration of Alina
   Mooradian, and a complete trial transcript is being lodged with the Court.

1   evidenced by its having requested confidentiality from NHTSA.  [4/5 202 (citing Exh. 433)] He

2   admitted that Ford did not have to "share every engineering document," but said "tell them

3   something." [4/5 203-204] He claimed that "Ford has superior and, we now know, exclusive

4   knowledge about the issues with the DPS6," such as that it was the top warranty spending item,

5   that Ford supposedly did not share with others. [4/5 208] Plaintiff also appeared to argue that

6   Ford committed "despicable conduct" because it had faced 6000 lawsuits and had not brought

    more Ford witnesses to the [4/5 208-09] courtroom.

7        Plaintiff's expert Luna filled in what the fraud supposedly was.  She claimed that Ford

8   misrepresented the facts (a) in the Montebello Ford dealer's statement to Myers that Ford had re-

9   designed the DPS6 and put in new parts, and he did not have to worry about it; (b) Ford's

10  representations that the DPS6 is an automatic (not manual) transmission; and (c) the Ford

11  brochure's statement that the DPS6 applies torque to the drive wheels 100% of the time during

12  shifts [3/29 16, 27]. But as plaintiff's Blasjo acknowledged, the dealer is an independent business

    not owned by Ford. [3/27 220-221] Plaintiff theorized that Montebello Ford acted as Ford's

13  ostensible agent because it was Ford's connection to the consumer. That theory was legally

14  wrong, as set forth below. In any case, there is no evidence that any officer, director or managing

15  agent of Ford committed, approved or ratified the dealer's statement.

16       Similarly, there is no evidence that Ford's statements that the DPS6 is an automatic

17  transmission were *intentionally* false, as required for punitive damages. The parties disputed what

    to call the transmission. Blasjo testified that the transmission was manual, apparently because it

18  has clutches and gears. [3/23 35-38; 3/26 180-181] Ford's expert Taylor testified it was automatic

19  because it requires no driver input. [4/2 56-57] But both sides agree that the DPS6 shifts

20  automatically without driver input. That makes it an automatic, not manual, transmission under

21  the Society of Automotive Engineers' authoritative definition. [4/2 at 56; Exh. 476 1,2] The

22  statement cannot be *intentionally* false when the transmission clearly *was* automatic under the

    definition used by the premiere association of automotive engineers. Nor is there any evidence

23  that an officer, director or managing agent authorized the statement believing it to be false.

24       The same holds for the brochure's reference to torque 100% of the time during shifts.

25  Besides apparently not having been seen by Myers, the statement is true. When functioning as

26  designed, the DPS6 *does* provide torque all of the time during shifts; that is one of its major

27  innovations. [4/2 60-61, 63-64] No one disputed that. Rather, Luna's critique was that the claim

28  that it provides torque all the time is inconsistent with customers' complaints (apparently

referring to complaints of shuddering and jerking). [3/29 16, 27-28] Thus, the claim that this was a misrepresentation was just a variant of the complaint that Ford did not disclose that the DPS6 had a history of various malfunctions.

Plaintiff also argued for punitive damages because Ford did not disclose to Myers the DPS6's repair history, such as the TSBs and warranty spending. As detailed in the Facts section of the memorandum supporting Ford's new-trial motion, most of the TSBs did not apply to Myers' vehicle. Only one TSB was in force at the time Myers bought his vehicle. By all accounts, one is not an unusual number. The warranty spending was indeed Ford's largest. But *Ford* was paying for it. And many of the problems had been solved. For example, the shudder complaints dropped significantly after the seal-leak issues were addressed. Moreover, no customers of any car company receive a list of all repairs, TSBs or warranty spending. Nor do buyers of refrigerators, dishwashers or any other product.

Last, plaintiff intimated that Ford had concealed information based on Ford's conduct before a federal court and federal agency. Plaintiff harped on the theme that many of the documents had been produced pursuant to a highly confidential protective order in a federal-court class action called *Vargas v. Ford*, repeatedly asking witnesses whether they had to sign the protective order, and that Ford had asked NHTSA for confidentiality for a submission regarding DPS6. As detailed in the memorandum supporting Ford's new-trial motion, a party cannot be punished for petitioning federal courts or federal agencies for relief, including confidentiality.

There is also no evidence that any officer, director or managing agent either committed, authorized or ratified the supposed misrepresentations or nondisclosures. Plaintiff put on evidence that many Ford employees knew of the DPS6's technical problems and knew Ford was having trouble fixing some of them. [*E.g.* 3/29 24 and Exh. 171 (October 2012: no fix "at this time" for some leaking seals), Exh. 172 (January 2013: automatic transmission service engineer says DPS6 transmission is at top of Ford's warranty spending); 3/29 26 and Exh. 270 (August 2013: DPS6 current model supervisor refers to possible 100% failure rate in China at 70,000 miles); 3/29 18-19 and Exh. 242 (December 2016: government investigations in foreign countries)] What plaintiff did *not* put on was evidence that any of these employees (a) was an officer, director or managing agent (*i.e.* corporate policymaker), (b) committed, authorized or ratified the affirmative representations and non-disclosures of which he complains, or (c) was aware that the DPS6 transmission was probably dangerous (or even evidence that it *was* probably dangerous), let alone acted despicably.

### B. Proceedings In This Case

Plaintiff's complaint alleges five claims concerning his 2014 Ford Focus: (1) breach of express warranty – violation of the Song-Beverly Act; (2) breach of implied warranty – violation of the Song-Beverly Act; (3) fraudulent inducement – concealment; (4) fraudulent inducement – intentional misrepresentation; and (5) fraudulent inducement – negligent misrepresentation. Mooradian Decl. Exh. A (Complaint). At the start of trial, the parties stipulated to liability, damages and civil on the Song-Beverly claims, resulting in a partial "judgment." Mooradian Decl. Exh. M.  Plaintiff dismissed the negligent-misrepresentation claim at trial. *See* Mooradian Decl. Exh. Z (5 Amended Judgment). This motion does not seek to undo either of those results.

Plaintiff's intentional-misrepresentation and fraudulent-concealment claims went to trial. The evidence is described in Ford's companion motion for new trial. Plaintiff's expert Luna testified that plaintiff's actual damages were $54,364. [3/29 51] This amount consisted of: (i) $17,948 in payments he made on the vehicle; (ii) a balance of $22,631 he still owed when the car was totaled; (iii) $6000 for a replacement vehicle to use while the Focus was being repaired; and (iv) insurance, registration and repair costs of $7,785. [3/29 50-51]

The jury found compensatory damages of $54,364 (the amount testified to by Luna) and punitive damages of $500,000. Mooradian Decl. Exh. DD.

At plaintiff's request, the judgment includes the Song-Beverly amounts and the punitive damages, but not the fraud compensatory damages. *See* Mooradian Decl. Exh. Z. At the July 5, 2018, hearing on Ford's objections to plaintiff's proposed judgment, plaintiff's counsel conceded that he cannot recover the compensatory damages.

### III. THE COURT SHOULD GRANT PARTIAL JNOV ON PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES.

#### A. JNOV must be granted where the verdict is contrary to law or not supported by substantial evidence.

A court must grant judgment notwithstanding the verdict (JNOV) "whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made." (Code Civ. Proc., § 629, subd. (a).)  JNOV is appropriate where the moving party is entitled to judgment as a matter of law. *E.g., Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1194.  JNOV is also appropriate when "'"it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support"'" of the verdict. *Brennan v. Townsend & O'Leary*

*Enterprises, Inc.* (2011) 199 Cal.App.4th 1336, 1345 (affirming grant of JNOV). Indeed, JNOV is necessary under such circumstances because "it is essential to the integrity of the judicial process that a judgment be supported by evidence that is at least substantial." *Roddenberry v. Rodenberry* (1996) 44 Cal.App.4th 634, 652.

"[I]n all cases, the determination whether there was substantial evidence to support a finding or judgment must be based on the whole record. The reviewing court may not consider only supporting evidence in isolation, disregarding all contradictory evidence." *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581; *see also Roddenberry*, *supra*, 44 Cal.App.4th at 652 ("The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record"). "The 'focus is on the quality, not the quantity, of the evidence.'" *Jorge v. Culinary Institute of America* (2016) 3 Cal.App.5th 382, 396. While the trial court may rely on inferences, "such inferences must be 'a product of logic and reason' and must rest on the evidence.'" *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633. Denial of an earlier nonsuit or directed verdict motion does not bar a later JNOV on the same ground. *Beavers v. Allstate Insurance Co.* (1990) 225 Cal.App.3d 310, 328.

In addition to granting JNOV on all causes of action, a trial court may grant a motion for partial JNOV as to certain aspects of the judgment that are not supported by the record. *E.g., Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 553 ("It is settled that the trial court has the power, in appropriate circumstances, to grant partial JNOV").

The power to grant JNOV expires at the same time as the power to grant a new trial. (Code Civ. Proc., § 629, 2d par.) Here, notice of entry of judgment was served on July 5, 2018, so the Court must rule on the JNOV motion on or before September 4, 2018. For the reasons stated in this motion and in Ford's motion for new trial, this Court should grant both motions, as permitted by Code of Civil Procedure section 629.

**B.**     **The Basic Standard for Punitive Damages**

Punitive damages are available for breach of an obligation not arising from contract, where it is proved by clear and convincing evidence that the defendant acted with oppression, fraud or malice. Civ. Code § 3294(a), (c). Section 3294 and the case law severely limit availability of punitive damages.

First, they are only available for conduct that caused underlying liability for actual damages. *Mother Cobb's Chicken T., Inc. v. Fox* (1937) 10 Cal.2d 203, 205-06 ("Actual damages must be found as a predicate for exemplary damages"; reversing punitive damages on this basis)

(citation omitted); *Cheung v. Daley* (1995) 35 Cal.App.4th 1673, 1677-77 (same); *Orient Handel v. United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 697 (failure to prove reliance precluded punitive damages for fraud).

Second, "oppression," "fraud" and "malice" are specifically defined and limited. "Fraud" is not the same as common-law fraud. "Fraud" for purposes of punitive damages is limited to "an *intentional* misrepresentation, deceit, or concealment of a material fact known to the defendant with the *intention* on the part of the defendant *of thereby depriving a person of property or legal rights or otherwise causing injury.*" Civ. Code § 3294(c)(3) (emphasis added). "Malice" requires that defendant *intends* to cause injury to plaintiff (which no one claims here) or "*despicable* conduct which is carried on by the defendant with a *willful and conscious disregard* of the rights or safety of others." Civ. Code § 3294(c)(1) (emphasis added). Similarly, "oppression" is "*despicable* conduct that subjects a person to cruel and unjust hardship in *conscious disregard of that person's rights.*" Civ. Code § 3294(c)(2) (emphasis added). "Despicable" is an independent substantive requirement met only by conduct that is "base," "vile," or "contemptible," *College Hosp., Inc. v Superior Court* (1994) 8 Cal.4th 704, 725, such that it would be "looked down upon and despised by ordinary decent people." *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1210 (citation omitted). "Conscious disregard" means "that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894; *American Airlines v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1051.

Third, clear and convincing evidence means evidence "so clear as to leave no substantial doubt'; `sufficiently strong to command the unhesitating assent of every reasonable mind.'" *In re Angelia* (1981) 28 Cal.3d 908, 919; *Pacific Gas & Elec. Co. v. Superior Court* (2018) 24 Cal.App.5th 1150, 235 Cal.Rptr.3d 228, 235 (applying this requirement to punitive damages).

Fourth, a corporation (here Ford) cannot be liable for punitive damages unless plaintiff proves by clear and convincing evidence that the act of oppression, fraud or malice was personally committed, authorized or ratified by an officer, director or managing agent of the corporation. Civ. Code § 3294(b); *Barton v. Alexander Hamilton Life Ins. Co.* (2003) 110 Cal.App.4th 1640, 1644 (holding that commission, authorization or ratification by officer, director or managing agent must be proved by clear and convincing evidence). This requirement fully applies when punitive damages are sought based on conduct of an agent. *Barton,* 110 Cal.App.4th at 1644 (affirming nonsuit on punitive damages based on lack of evidence that

insurance agent who made misrepresentations was a "managing agent" under section 3294(b) or that insurer ratified his conduct). To establish ratification, plaintiff must prove that the officer, director or managing agent actually knew of the acts constituting malice, oppression or fraud and ratified them. *College Hosp. Inc. v. Superior Court* (1994) 8 Cal.4th 704, 726 ("Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature."); *Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 168.

Fifth and last, because section 3294(a) only authorizes punitive damages "for the breach of an obligation not arising from contract," punitive damages are not available for violation of a statute, such as Song-Beverly, that imposes additional obligations on a contractual relationship. *Brewer v. Premier Golf Properties, LP* (2008) 168 Cal.App.4th 1243, 1255-56.

Under these principles, plaintiff's evidence does not begin to support punitive damages against Ford. There is no evidence that the asserted acts of oppression, fraud or malice were committed, approved or ratified by an officer, director or managing agent of Ford. That alone is dispositive. There is also no clear and convincing evidence that Ford (in the person of officers, directors or managing agents) *intentionally* misrepresented or concealed problems with the DPS6, or was aware of *probable* dangerous consequences and deliberately failed to avoid them and acted in some vile, base manner; and insufficient evidence supporting the underlying tort claims.

## C.   Plaintiff Failed To Prove Oppression, Fraud or Malice By An Officer, Director or Managing Agent of Ford Motor Company.

Plaintiff failed to present clear and convincing evidence that an officer, director or managing agent personally committed, authorized, or ratified any of the acts claimed to constitute oppression, fraud or malice. As detailed in the new-trial motion, plaintiff introduced evidence that Ford employees knew that the DPS6 had specific reliability problems, such as transmission leaks and shuddering. But knowing of reliability problems is not oppression, fraud or malice. As detailed above, to support punitive damages, plaintiff needed to show that (a) an officer, director or managing agent of Ford Motor Company (b) personally committed, authorized or ratified (c) conduct constituting oppression, fraud or malice, as defined in section 3294(c) that (d) was a tort that caused actual damage to Myers. Plaintiff did not submit any evidence that met these requirements.

There was no evidence that any officers or directors of Ford Motor Company were involved in any of the acts claimed to constitute malice, fraud or oppression. Rather, plaintiff contended in closing argument that that several people were managing agents. [4/5 74-76] Thus

1     we focus on managing agents.

2          "Managing agents" include "only those corporate employees who exercise substantial

3     independent authority and judgment in their corporate decisionmaking so that their decisions

4     ultimately determine corporate policy." *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566-67,

5     573. "[C]orporate policy" means "formal policies that affect a substantial portion of the company

6     and that are the type likely to come to the attention of corporate leadership." *Roby v. McKesson*

7     *Corp.* (2009) 47 Cal.4th 686, 715. "The scope of a corporate employee's discretion and authority

8     under our [managing agent] test is … a question of fact for decision on a case-by-case basis."

      *White,* 21 Cal.4th at 567.

9          It is well established that plaintiff cannot avoid proving the employee's discretion and

10    authority by pointing to titles. The question whether an employee exercises the required degree of

11    control over corporate policy "should not turn on any official title," but on "the degree of

12    discretion the employees possess in making decisions that will ultimately determine corporate

      policy." *White,* 21 Cal.4th at 571 (citation omitted). Thus title and position in the corporate

13    hierarchy are not enough. *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 421. Being

14    a manager or supervisor is also not enough. *Roby,* 47 Cal.4th at 714-15; *CRST, Inc. v. Superior*

15    *Court* (2017) 11 Cal.App.5th 1255, 1273. Even a corporate vice president is not a managing agent

16    absent actual proof of his or her discretion and authority to set corporate policy. On this basis

17    *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 63 affirmed a directed for defendant

      on punitive damages. The only potential managing agent was "a Lockheed vice-president" named

18    MacPherson. *Id.* at 63. "No evidence was presented regarding MacPherson's duties or authority,

19    let alone substantial evidence, that MacPherson 'exercise[d] substantial discretionary authority

20    over decisions that ultimately determine corporate policy.'" Thus "[v]iewing the evidence in the

21    light most favorable to Gelfo, we similarly conclude no substantial evidence showed MacPherson

22    was a managing agent." 140 Cal.App.4th at 63.

23         With that background, we address in turn the people identified by plaintiff. [*See* 4/5 74-

24    76] Craig Renneker was the Acting Director, Transmission & Driveline Engineering. [Exh. 167]

25    As in *Gelfo,* there is no evidence of his duties or authority. There is no evidence he sets Ford's

      corporate policy. His title alone cannot establish that he is a managing agent, because titles and

26    place in the corporate hierarchy are insufficient. *White,* 21 Cal.4th at 571, 574; *Kelly-Zurian,* 22

27    Cal.App.4th at 421; *Gelfo,* 140 Cal.App.4th at 63. And it would not matter if he were a managing

28    agent, because plaintiff's evidence just shows he asked for information on what a competitor told

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

customers about what to expect from a dry clutch. [Exh. 167] That is not malice, fraud or oppression, or even a tort. There is no evidence it caused plaintiff any damage.

Rick Bonifas was "Focus PVT Program Manager." [Exh. 167] Again there is no evidence of his duties or authority, and no evidence he sets Ford's corporate policy. And plaintiff's evidence just shows he proposed a message to dealers that vehicles with a DPS6 may exhibit shudder or shake and the condition does not cause durability or reliability concerns. [Exh. 167] That is not oppression, fraud or malice. It is also not a tort for which Ford has underlying liability or that it harmed Myers. Indeed, there is no evidence the message was even sent.

Tom Hamm was a "DPS6 System Engineer" in the "Engineering Purchased Transmissions Department." [Exh. 266] As with the others, there is no evidence of his duties or authority. There is no evidence he sets corporate policy (nor would one expect corporate policy to emanate from a "System Engineer"). And beyond the failure to prove he was a managing agent, there is also no evidence he committed, authorized or approved any act of oppression, fraud or malice. For instance, he asserted, to another person who was also not a managing agent, that Ford should not say that the DPS6 was a manual transmission after selling it as an automatic transmission. [3/27 47] Whatever the merits of that advice, it was not advice to misrepresent anything. It is not evidence that a *managing agent* thought the transmission was being misrepresented, let alone that a managing agent *intentionally* misrepresented it – as required for punitive damages. Civ. Code § 3294(c)(2) (definition of fraud). Otherwise Hamm's name merely appears on internal Ford documents that plaintiff used to show that Ford employees knew about DPS6 problems and that there was no fix for one of them (and even that was in 2012, two years before Myers bought his car). [3/26 237-38; 3/29 24]

Chris Kwasniewicz was a "DPS6 Transmission Manager." [Exh. 272 p. 2] Again there is no evidence of his duties or authority. Being a manager is not sufficient to be a managing agent for purposes of punitive damages. *Roby,* 47 Cal.4th at 714-15; *CRST,* 11 Cal.App.5th at 1273. And again there is no evidence he committed, authorized or approved any act of oppression, fraud or malice. As with the others, his name simply appears on documents showing that employees knew of problems such as fluid leakage with the DPS6, and he was involved in resolving some of the issues. [Exh. 272; 3/26 239; 4/3 169]

As stated above, William Draper was Chief Engineer, Vehicle Architecture & Executive Technical Leader, System Design, Global Product Development/Global Product Programs/Basic Design." [Exh. 177 p. 9] The mere title of "Chief Engineer" is insufficient as a matter of law,

because managing-agent status cannot be proved by titles or position in the corporate hierarchy. *White,* 21 Cal.4th at 571, 574; *Kelly-Zurian,* 22 Cal.App.4th at 421; *Gelfo,* 140 Cal.App.4th at 63. There is no evidence that a "chief engineer" makes formal corporate policy at Ford, as required to be a managing agent. *White,* 21 Cal.4th at 566-67, 573; *Roby,* 47 Cal.4th at 715. And beyond the absence of evidence that he is a managing agent, there is also no evidence he committed, authorized or approved an act of oppression, fraud or malice. He was merely frustrated that there was no fix for a family member with a grinding noise from a DPS6. [Exh. 177]

Bennie Fowler was Group Vice President, Global Quality. [Exh. 235 p.2] Even being a vice president of a large corporation, however, does not make one a managing agent. *Gelfo,* 140 Cal.App.4th at 63 (affirming directed verdict against punitive damages based on conduct of vice president at Lockheed Martin, because plaintiff did not introduce evidence of his duties and authority). Again there is no evidence of his duties and discretion. Although the absence of evidence that he is a managing agent is dispositive, there is also no evidence he committed, authorized or ratified an act of oppression, fraud or malice that caused actual damage to plaintiff Myers. Plaintiff's evidence shows that Fowler knew *in 2016* of the reliability problems with the DPS6 and that it had begun to cause increases in warranty spending starting in 2013. [3/26 225; Exh. 242 (December 2016), 235 (August 2016)] This does not avail plaintiff. Large warranty spending is not a tort. *Knowing* of large warranty spending is also not a tort. Neither of them is evidence of what plaintiff had to prove: that a managing agent at Ford *intentionally misrepresented or concealed* material information from Ariel Myers with the intention of depriving him of legal rights or causing him injury. Civ. Code § 3294(c)(2). Similarly, large warranty spending, or knowing about that spending, is not evidence that a managing agent at Ford decided to sell the 2014 Focus while aware of probable dangerous consequences. § 3294(c)(1),(3); *Taylor,* 24 Cal.3d at 894. Showing such knowledge in 2016 cannot establish that Ford concealed anything *from Myers,* that concealing it *harmed Myers,* or that anyone consciously disregarded *Myers'* rights, as required to establish malice, oppression or fraud in the conduct that causes liability to Myers. Myers had bought the Focus two years previously, in July 2014. Plaintiff has already admitted that any punitive damages must be based exclusively on conduct before he bought the car. "As of that date, Ford's actionable wrongs were performed and complete as to its fraudulent conduct." Mooradian Decl. Exh. Y at 4-5 (Plaintiff's Response to FMC Objections to Proposed Judgment).

The analysis is the same as to the other Ford employees plaintiff named and sometimes

claimed to be managing agents of Ford:  Greg Gardener, Charles Kopeika, Tom McInerny, Allen Draper, Ram Krishnaswami, Charles Spoon, Helnit Newton, (unnamed) "manager of their Asia Pacific and Africa," "Ford Asia," Shawn McClain, Michael Berardi, Vince Lajiness, Gary Nichols [4/5  75-76; 4/5  164-65] There is no evidence of their duties and authority, nothing sufficient to establish by clear and convincing evidence that they establish "formal policies that affect a substantial portion of the company." *Roby,* 47 Cal.4th at 715; *White,* 21 Cal.4th at 573; *Gelfo,* 140 Cal.App.4th at 63. Plaintiff emphasized that some have titles such as "manager," but titles and place in the corporate hierarchy are insufficient as a matter of law to prove that a person is a managing agent. *Roby,* 47 Cal.4th at 714-15; *White,* 21 Cal.4th at 573; *Kelly-Zurian,* 22 Cal.App.4th at 421. And as with the others discussed above, plaintiff's evidence does not establish that any of these people committed, authorized or ratified acts of malice, fraud or oppression. In each case, the evidence establishes at most that they knew of mechanical problems or warranty spending. It does not establish that they *intentionally* decided to *misrepresent* or *conceal* facts; that they were aware of probable dangerous consequences; or that they authorized or ratified someone else's misrepresentation, concealment, or conscious disregard, as required for punitive damages.

We end where we began. Plaintiff cannot obtain punitive damages by bombarding the jury with names and titles. Plaintiff must show by clear and convincing evidence (a) the actual duties and responsibilities of those named, (b) that any person proved to be a managing agent personally committed, authorized or ratified the acts (c) constituting malice, fraud or oppression; and (d) those acts must be the basis for underlying liability for actual damages. None of this evidence fills the bill.

**D.   Punitive Damages Are Barred By Plaintiff's Election of Remedies**

Even if plaintiff had otherwise met the requirements for punitive damages, the election-of-remedies doctrine would bar punitive damages here. The reasons are set forth in Ford's companion motion for new trial, so we do not repeat them here.

**E.   The Record Does Not Contain Legally Sufficient Evidence That The Dealer Was Ford's Agent.**

Trying to establish an affirmative misrepresentation, plaintiff pointed to the salesperson's statement that Ford had redesigned the transmission and changed parts, and that plaintiff need not worry about transmission problems. [*See* 3/21 115, 116] Plaintiff sought to hold Ford liable for these statements on the theory that the dealer was Ford's ostensible agent. Plaintiff's evidence

1  was that he was at a Ford dealership, the salesperson was wearing a Ford shirt, he could only deal

2  with the dealer (not Ford) and he thought he was dealing with Ford. [3/21 113-15] Blasjo testified

3  that dealers are the face of Ford to the consumer.  [3/27 220-21]

4      As a matter of law, this evidence is insufficient. The Vehicle Code *requires* the dealer to

5  operate as Ford's franchisee, plaintiff's evidence does nothing more than establish that franchise

   relationship, and the franchise relationship is insufficient as a matter of law to establish agency.

6      California law requires a new-car dealer to be a franchisee of the manufacturer. Veh. Code

7  § 11713.1(f) (violation of statute for licensed dealer to "[a]dvertise for sale, sell, or purchase for

8  resale a new vehicle of a line-make for which the dealer does not hold a franchise"); *see* Veh.

9  Code § 11700 (all dealers must be licensed).) Ford is a franchisor, defined as a manufacturer who

10 "distributes new motor vehicles subject to registration under this code." Veh. Code, § 331.2. As

11 part of this franchise relationship, the Vehicle Code requires the dealer to be "substantially

12 associated with the franchisor's trademark, trade name, advertising, or other commercial symbol

13 designating the franchisor; and requires the dealer to "constitute[] a component of the franchisor's

   distribution system." Veh. Code § 331(a)(3),(4).

14     Thus the facts that Montebello Ford was a Ford dealership, that it sold Ford vehicles, and

15 that the salesperson was wearing a Ford shirt, are merely aspects of the franchise relationship

16 required by the Vehicle Code.

17     As a matter of law, this franchise relationship – even one "impos[ing] *comprehensive* and

18 *meticulous* standards for marketing [the franchisor's] trademarked brand and operating its

19 franchises" -- does not turn the franchisee into the franchisor's agent. *Patterson v. Domino's

20 Pizza, LLC* (2014) 60 Cal.4th 474, 478, emphases added. This is so even if the "system of

21 standards and procedures" are so extensive that they govern a "long list of marketing, production,

22 operational, and administrative areas"; include the provision of "printed manuals, training

23 programs, advertising services, and managerial support"; and help "ensure[] consistency and

24 uniformity in the quality of goods and services."  (*Patterson*, at 489-490.) And specifically, the

   dealer's use of Ford's name and trademark cannot establish agency. *Emery v. Visa Internat.

25 Service Ass'n* (2002) 95 Cal.App.4th 952, 961 [mere reliance on franchisor's general advertising

26 and franchisee's display of the logo, trade name, or trademark of a franchisor does not suffice to

   establish ostensible agency].

27     For a franchisee to be an agent, a franchisor must instead have "retained or assumed a

28 general right of control over ... [the] relevant *day-to-day aspects*" of the franchisee. (*Id.* at 497-

4832-8518-8974                              - 13 -

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

498, emphasis added.)  Plaintiff introduced no evidence that Ford assumed a general right of control over the dealership, or over the salesperson's statements in selling the vehicle.

Further, ostensible agency requires that the principal "intentionally, or by want of ordinary care" (Civ. Code, § 2317) caused the third party (here Myers) to think that the ostensible agent was acting as its agent. As a matter of law, that is not the case. Ford cannot be said to have acted intentionally or negligently induced customers to think the dealer is Ford's agent merely by allowing the dealer to do what the dealer is legally required to do:  act as a franchisee.

**IV.   CONCLUSION**

The Court should grant judgment notwithstanding the verdict on plaintiff's request for punitive damages. An amended judgment should be entered consisting only of the damages, penalties, fees and costs on plaintiff's claim under the Song-Beverly Act, and providing that plaintiff takes nothing on his remaining claims.

Dated: July 30, 2018

By: _____
Alina Mooradian
SNELL & WILMER L.L.P.

Robert A. Brundage
MORGAN, LEWIS & BOCKIUS, LLP

Attorneys for Defendant
FORD MOTOR COMPANY

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 350 S. Grand Ave., Suite 3100, Los Angeles, California, 90071.

On July 30, 2018, I served, in the manner indicated below, the foregoing document described as **DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Los Angeles, addressed as follows:

☐    BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Los Angeles, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to  (C.C.P. § 1013(a)).]

☐    BY FACSIMILE: (C.C.P. § 1013(e)(f)).

☐    BY FEDERAL EXPRESS / OVERNITE EXPRESS:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

☒    BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. § 1011(a)(b)).

☐    BY E-MAIL: I caused such document to be served via e-mail to the below-referenced addressees.

********

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 30, 2018, at Los Angeles, California.

Alma Chang

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SERVICE LIST
*Ariel Myers v. Ford Motor Company, et al.*
*Los Angeles Superior Court Case No.: BC638302*

Steve Mikhov, Esq.
Amy Morse, Esq.
KNIGHT LAW GROUP, LLP
10250 Constellation Blvd., Suite 2500
Los Angeles, CA  90067

**PLAINTIFF'S COUNSEL**

Tel.: (310) 552-2250
Fax: (310) 552-7973

stevem@knightlaw.com
amym@knightlaw.com
laurenu@knightlaw.com
angiem@knightlaw.com

Richard M. Wirtz, Esq.
Amy R. Smith, Esq.
WIRTZ LAW APC
4370 La Jolla Village Drive, #800
San Diego, CA 92122

**PLAINTIFF'S COUNSEL**

Tel.: (858) 259-5009
Fax: (858) 259-6008

rwirtz@wirtzlaw.com
asmith@wirtzlaw.com
revans@wirtzlaw.com
junderwood@wirtzlaw.com

4832-8518-8974

- 16 -

DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM SUPPORTING MOTION FOR JNOV

## Snell & Wilmer
— L.L.P. —
LAW OFFICES

Alina Mooradian
350 South Grand Avenue, Suite 3100
City National 2CAL
Los Angeles, California 90071

*To:*

Steve Mikhov, Esq.
Amy Morse, Esq.
KNIGHT LAW GROUP, LLP
10250 Constellation Blvd., Suite 2500
Los Angeles, CA  90067

(AAA)