STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

JORDAN CYR, et al.,

    Plaintiffs,

-v-

FORD MOTOR COMPANY,
a Delaware Corporation,

    Defendant.

Case No. 17-006058-NZ
Hon. Annette J. Berry

## OPINION

This mass action dispute is before the Court on a motion for summary disposition filed by Defendant, Ford Motor Company (Ford). For the reasons stated below, the Court will deny the motion.

### I. Facts and Procedural History

This case arises out of the purported defective DPS6 power shift transmissions installed in the Ford Focus model years 2012-2017 and in the Ford Fiesta model years 2011-2016. There were eighty- three lawsuits filed in this Court commencing on April 20, 2017 (Mass Actions). The complaints allege eight counts: (1) breach of express warranties, (2) breach of implied warranty of merchantability, (3) revocation of acceptance,(4) violation of the Magnuson-Moss Warranty Act (MMWA), (5) violation of the Michigan Consumer Protection Act (MCPA), (6) unconscionability under the Uniform Commercial Code (UCC), (7) fraud, misrepresentation, fraudulent

EXHIBIT G

concealment and (8) unjust enrichment. The Mass Actions were consolidated into the above captioned case. Plaintiffs' filed their first amended complaint on February 8, 2018, followed by a second amended complaint filed on March 14, 2018. The amendments did not raise any new theories of liability. On May 14, 2018, the Court entered an order clarifying consolidation of the Mass Actions by creating a sample class of cases representing the vehicle models and years which are the subject of this litigation. The sample class covers multiple claims for each vehicle model and year. The Court stayed the non-sample Mass Actions pending the outcome of the litigation. On February 14, 2018, Ford filed the instant motion. On April 9, 2018 Ford supplemented its brief. Ford's motion focuses on one count of the complaint, the MCPA and the doctrine of forum non conveniens.

## II. Standard of Review

Ford bases its motion on MCR 2.116(C)(8) and MCR 2.116(C)(10). MCR 2.116(C)(8) provides for summary disposition where "the opposing party has failed to state a claim on which relief can be granted." A motion for summary disposition under (C)(8) tests the legal sufficiency of the complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may consider only the pleadings in rendering its decision. *Id*. All factual allegations in the pleadings must be accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381; 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie, supra* at 130.

In reviewing a motion under MCR 2.116(C)(10), a court must consider the pleadings, admissions, affidavits, and other relevant documentary evidence submitted in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed,* 470 Mich 274, 278; 681 NW2d 342

2

(2004). If no genuine issue of material fact is established, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The moving party has the initial burden of supporting its position through documentary evidence. *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Id*. The non-moving party ". . . may not rest on the mere allegations or denials of his or her pleadings, but must, by affidavit or otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116 (G)(4). If the opposing party fails to do so, the motion for summary disposition is properly granted. *Id.; Quinto, supra* at 363. Finally, a "reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Maiden, supra* at 121.

## III. Analysis

### A. MCPA

The MCPA makes unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce unlawful. *Gorman v American Honda Co. Inc*, 302 Mich App 113, 128; 839 NW2d 223 (2013). The MCPA defines trade or commerce as the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes. *Id.* Consequently, Ford's sale of motor vehicles to plaintiffs involved a category of trade or commerce

3

that could fall within the ambit of the MCPA.

The Complaint alleges that Ford violated the MCPA in eleven ways:

> a. Representing through its advertising, warranties and other express representations that the subject vehicles' transmissions had benefits or characteristics that they did not actually have;
>
> b. Representing that the vehicles' transmissions were of a particular standard or quality when they were not;
>
> c..Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true Characteristics, standards and qualities of the vehicles and transmissions;
>
> d. At the time of the aforesaid sales and leases, Ford knew or had reason to know that the vehicle had the defects or non-conformities described above but, failed to disclose this material information to plaintiffs;
>
> e. Failing to reveal material facts which tended to mislead plaintiffs and which facts could not reasonably have been known by plaintiffs;
>
> f. Failing to adequately and properly inform plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;
>
> g. Misrepresenting plaintiffs' rights and/ or failing to advise plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;
>
> h. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;
>
> i. Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;
>
> j. Causing a probability of confusion or of misunderstanding as to plaintiffs' legal rights, obligations, and/or remedies with respect to

4

17-006058-NZ  FILED IN MY OFFICE  Cathy M. Garrett  WAYNE COUNTY CLERK  5/25/2018 3:13 PM  Cheryl Bascomb

> the subject transaction;
>
> k. Entering into a consumer transaction in which the plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining plaintiffs' specific consent to the waiver.

Plaintiffs allege that Ford's deceptive practices were specifically designed to induce plaintiffs to buy their vehicles with the upgraded powershift transmission. Ford argues that the MCPA is supplanted in this case by the regulatory authority of the National Highway Traffic Safety Administration (NHTSA). The MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or of the United States." [1]

In support of this assertion, Ford cites *Smith v Globe Life Ins Co,* 460 Mich 446; 597 NW2d 28, 39 (1999). The Michigan Supreme Court noted that when determining whether a transaction or conduct is specifically authorized by law, the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is specifically authorized. Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited. In response, plaintiffs point to *State Farm Mut Auto Ins Co v BMW of North America, LLC,* No 08–12402, 2009 WL 2447612. In that case, the NHTSA argument presented by BMW closely resembles Ford's stance in the instant case.

> The Court finds BMW's position unavailing. First, Defendant has not asserted that NHTSA regulates warranties. Second, Michigan courts have found automobile dealers liable under the MCPA. See *Tembarius v Slatkin,* 157 Mich App 587; 403 NW2d 821 (1986), *King v Taylor Chrysler Plymouth, Inc,* 184 Mich App 204; 457 NW2d 42 (1990). Although these decision do not discuss exemption

---

[1] MCLA § 445.904(a).

5

from the MCPA as an industry regulated by NHTSA, *in Tornow v Stanford Bros, Inc,* No. 03-785 NZ, 2005 WL 4135450 (April 21, 2005), the court rejected a similar argument based on the State Motor Vehicle Code. In sum, the Court finds BMW has failed to meet its burden to show plaintiff's claim is barred by § 445.904(a) of the MCPA. *Id.* at 7.

The Secretary of Transportation has the authority to issue appropriate safety standards for motor vehicles and their equipment. The Secretary has delegated the authority to promulgate safety standards to the administrator of the National Highway Traffic Safety Administration (NHTSA).[2] [3]

There are a plethora of cases that stand for the principle that:

> The court recognizes that the Motor Vehicle Safety Act and NHTSA itself do not in any way preempt a plaintiff's right to bring common law claims against the manufacturer of an allegedly defective part. See 49 USC, § 30103. In re Ford Motor Co Ignition Switch Products Liability Litigation, 174 FRD, 332; 39 Fed R Serv, 3d 208 (DNJ 1997), 49 USCA § 30103. *Chin v Chrysler Corp,* 182 FRD 448; 41 Fed R Serv 3d (LCP) 1561 (DNJ, 1998).

Ford relies on numerous opinions where the general conduct of the Defendants are clearly exempt from the MCPA by virtue of the statutory exemption for any transaction or conduct specifically authorized under laws administered by a state or federal regulatory board or officer.[4]

The Court finds Ford's position to be without merit. Ford's motion to dismiss Count 5 of plaintiffs' Complaint is denied.

---

[2] 49 CFR § 1.50(a) (1994)
[3] Until 1970, NHTSA was the predecessor to NHTSA.
[4] MCL 445.904(1)(a).

6

### B. FORUM NON CONVENIENS

Ford argues that the Court should dismiss the claims of non-resident plaintiffs under the doctrine of forum non conveniens. When deciding Ford's motion, the Court is mindful that a plaintiff's choice of forum is ordinarily accorded deference. *Anderson v Great Lakes Dredge & Dock Co,* 411 Mich 619, 628; 309 NW2d 539 (1981). Nevertheless, if the plaintiff's interest in a forum is slight, as when the plaintiff has chosen a forum where the law of the forum does not apply, the plaintiff's choice of forum is entitled to much less weight. *Id.* at 628-629.

The doctrine invoked by Ford was recognized in *Cray v General Motors Corp,* 389 Mich 382; 207 NW2d 393 (1973) wherein the Michigan Supreme Court held it is within a trial court's discretion to decline to exercise jurisdiction "in such cases as the convenience of the parties and ends of justice dictate," although the court would otherwise have jurisdiction. *Id.* at 396. The Cray court provided some criteria that had been suggested by precedent for courts to consider, but clarified that the "doctrine leaves much to the discretion of the court to which the plaintiff resorts[.]" *Id.* at 395. Significantly, the court in Cray adopted the following factors, which in the context of forum non conveniens, provide a court with a framework for evaluating whether Michigan is a reasonably convenient place for a trial in a given case, although not every factor may be relevant to a particular case:

> A balancing out and weighing of factors to be considered in rejecting or accepting jurisdiction in such cases should include:
>
> 1. The private interest of the litigant.
>
> a. Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;
>
> b. Ease of access to sources of proof;

7

c. Distance from the situs of the accident or incident which gave rise to the litigation;

d. Enforceability of any judgment obtained;

e. Possible harassment of either party;

f. Other practical problems which contribute to the ease, expense and expedition of the trial;

g. Possibility of viewing the premises.

2. Matters of public interest.

a. Administrative difficulties which may arise in an area which may not be present in the area of origin;

b. Consideration of the state law which must govern the case;

c. People who are concerned by the proceeding.

3. Reasonable promptness in raising the plea of forum non conveniens. *Id.* at 395–396. (Italics in original).

After a careful review of the Cray factors relative to the instant facts, the Court finds as follows:

### Factor 1 (a)

Factor 1(a) favors a finding that Michigan is a more convenient forum. The majority of Ford's witnesses, whose testimony would be material and important, either reside or work in Michigan. The testimony would encompass the development, design, manufacturing and marketing of Focus and Fiesta automobiles equipped with the DPS6 Powershift Transmission. Ford argues that the Court does not have the power to subpoena unwilling witnesses in other states for a deposition or trial. These witnesses include dealership sales employees, repair technicians, service center employees and plaintiff's family members. Ford completely overlooks the fact that pursuant to its own Automobile Dealer Sales

8

and Service agreement, covering every Ford dealership across the country, is a Michigan agreement and is to be construed in accordance with the laws of the state of Michigan. All of the witnesses cited by Ford, except for the plaintiff's family members are included in the agreement.

If Ford's motion is granted, plaintiffs would be denied its chosen counsel and it will be harder for these plaintiffs to compel the attendance of Ford's witnesses who reside and work at Ford as stated above. The litigation costs would be greater.

### Factor 1(b)

Factor 1(b) favors a finding that Michigan is a more convenient forum. Ford argues that the repair and maintenance records for the subject defective vehicles are located outside of Michigan. For the reasons given in 1(a), the Court does not agree with Ford's position.

### Factors 1(c)

Factor 1(c) favors a finding that Michigan is a more convenient forum. Ford claims that the situs in this case, is the State where each Plaintiff purchased or leased its vehicles, sought repairs and where any alleged fraud and breach of warranty occurred. Ford asserts that Michigan law recognizes the place where the injury was sustained as the place of the wrong; the place where the last event necessary to create liability occurred. *Std Fire Ins Co v Ford Motor Co*, 723 F3d 690,698 (CA 6 2013). Ford would be correct if the cause of action alleged herein is for product liability. As noted by the Supreme Court in the economic loss doctrine context, a case involving damage solely to the product at issue is not a product liability case.[5] Therefore, venue is under the general venue statute permitting venue in any county where the defendant is located or conducts business.[6] Moreover, Ford has never challenged the venue in this case.

### Factor 1(d)

Factor 1(d) favors a finding that Michigan is a more convenient forum. Ford admits that a judgment rendered against it in Michigan would be enforceable.

---

[5] *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992).
[6] MCL 600.1621.

9

### Factor 1(e)

Factor 1(e) appears to be irrelevant inasmuch as neither party has presented a viable claim of harassment by the other party.

### Factor 1(f)

Factor 1(f) favors a finding that Michigan is a more convenient forum. There are no practical problems in trying an action governed by the laws of the state of Michigan when applying Michigan Law. The Court's order entered on May 14, 2018, will resolve many of the administrative difficulties alleged by Ford.

### Factor 1(g)

Factor 1(g) appears to be irrelevant since there are no premises that require viewing.

### Factor 2(a)

Factor 2(a) favors a finding that Michigan is a more convenient forum. The court addressed this issue in Factor 1(f).

### Factor 2(b)

Factor 2(b) favors a finding that Michigan is a more convenient forum. The court addressed this issue in Factor 1(c).

### Factor 2(c)

Factor 2(c) does not appear to favor one forum over the other. The citizens of each state involved are presumably equally interested in the outcome of this case.

### Factor 3

Factor 3 favors plaintiffs in that Ford did not raise the issue of forum non conveniens promptly. Ford claims that it delayed in filing the motion until after plaintiff twice amended its complaint. The parties agree, that neither of the two amended complaints alleged any new theories of liability thereby preluding Ford from filing this motion

10

until February 14, 2018.[7]

As can be seen, a balancing of the pertinent Clay factors favors plaintiffs and Michigan as a more convenient forum to litigate plaintiffs' claims against Ford. This Court has presided over this this dispute since April 20, 2017 and is, in this Court's opinion, better suited to hear the instant dispute. Consequently, Ford's motion for summary disposition is denied.

/s/ Annette J. Berry

Circuit Judge

Dated: 5/25/2018

---

[7] Ford filed this motion approximately ten months after plaintiffs filed its initial Complaint.

11