UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION<br><br>THIS ORDER RELATES ONLY TO HOBART v. FORD, 2:18-cv-1893 AB (FFMx) | No. 2:18-ML-02814 AB (FFMx)<br><br>ORDER GRANTING IN PART FORD MOTOR COMPANY'S MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL |

On April 3, 2019, defendant Ford Motor Company ("Ford" or "defendant") filed a motion (the "Motion") seeking sanctions against plaintiff Jeff Hobart ("Mr. Hobart" or "plaintiff") and his counsel ("plaintiff's counsel"). (Docket No. 234.) Defendant contends that plaintiff's counsel engaged in obstructionist behavior during plaintiff's February 13 deposition. Defendant seeks sanctions against plaintiff's counsel under subsection (d)(2) of Federal Rule of Civil Procedure 30 ("Rule 30"), 28 U.S.C. § 1927 ("Section 1927"), and the Court's inherent power. (Docket No. 234-1 at 1.)

Plaintiff filed an opposition (the "Opposition") on April 23, 2019. (Docket No. 267.) Defendant filed a reply (the "Reply") on April 30. (Docket No. 270.) After considering the documents filed in connection with the motion, the Court VACATES the hearing set for May 14, 2019 and decides the motion based on the documents filed. For the reasons that follow, the Court grants the Motion in part.

**BACKGROUND**

Mr. Hobart is the plaintiff in *Hobart, Jeff v. Ford Motor Company,* et al., CV 18-1893 AB (FFMx), a constituent action in this multidistrict litigation proceeding. Plaintiff alleges as follows: on June 3, 2011, he purchased a new 2011 Ford Fiesta (the "Subject Vehicle") from a Ford dealership (the "Dealership"). (Docket No. 1, Ex. A, ¶¶ 9, 71.) The Subject Vehicle is equipped with Ford's DPS6 PowerShift transmission (the "Transmission"). Ford marketed and sold the Transmission as an automatic transmission, and when plaintiff bought the Subject Vehicle he believed, based on Ford's representations, that it had an automatic transmission. But in fact, the Transmission is a set of computerized manual transmissions that lacks a torque converter. The Transmission is defective because (among other problems) it slips and bucks, wears prematurely, causes delayed or sudden acceleration, and causes difficulty in stopping the vehicle. (*Id.*, ¶¶ 10-25, 70-75.)

Plaintiff experienced transmission problems in the Subject Vehicle, and he took it to the Dealership for repairs. The Dealership's repairs were insufficient. (Docket No. 1, Ex. A, ¶¶ 10-25, 70-75.) Ford knowingly concealed the Transmission's defects from plaintiff, Ford dealerships, and others. For this and other reasons, the applicable statute of limitations does not bar plaintiff's claims. (*Id.*, ¶¶ 26-69, 76-106.) Plaintiff sues Ford under California's Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790 *et seq*. As well, he brings claims for fraudulent inducement. (*Id.*, ¶¶ 107 *et seq.*)

As noted, Ford deposed Mr. Hobart on February 13, 2019. Within the first few questions, plaintiff's counsel embarked on a course of strenuous objections and instructions not to answer. (Docket No. 234-4 (deposition transcript excerpts), 234-3 (summarizing); *see* discussion, *infra.*)

On March 27, 2019, counsel for the parties conferred on the issues raised in the Motion. (Docket No. 234-2, ¶ 5; *see* Docket Nos. 267-2, 267-3.) Plaintiff's counsel stood by "many" of the objections, but offered Ford the opportunity to redepose Mr. Hobart on the questions that (according to plaintiff's counsel) remained unanswered.

(*See* Docket No. 267-3.) Ford did not accept this offer. (*See* Docket No. 270-3.) The Motion followed.

## ANALYSIS

A.  <u>Standard</u>.

Under Rule 30(d)(2), a court may "impose an appropriate sanction–including the reasonable expenses and attorney's fees incurred by any party–on a person who impedes, delays, or frustrates the fair examination of the deponent." Rule 30's advisory committee notes make clear that the sanction may be imposed on parties and attorneys alike. District courts within the Ninth Circuit have held that Rule 30(d)(2) sanctions do not require a finding of bad faith. *See*, *e.g.*, *BNSF Ry. Co. v. San Joaquin Valley Rr. Co.*, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009); *Robinson v. Chefs'Warehouse*, 2017 WL 1064981, at *3 (N.D. Cal. Mar. 21, 2017), *on reconsideration*, 2017 WL 2617905 (N.D. Cal. June 16, 2017);

Section 1927 provides that any attorney who "unreasonably and vexatiously" "multiplies the proceedings" in a federal action may be required by the court "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." For Section 1927 sanctions, "[t]he key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010).

Finally, under its inherent power, a court may impose sanctions on an attorney or party "if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.*

B.  <u>Plaintiff's counsel engaged in sanctionable conduct</u>.

(1)  <u>Improper objections and coaching</u>.

There can be no question that plaintiff's counsel deliberately frustrated, delayed, and impeded Mr. Hobart's deposition. Under Rule 30(c)(2), an objection "must be made

3

*concisely* in a *nonargumentative* and *nonsuggestive* manner" (emphasis added). As Ford argues (Mot. at 11-14), plaintiff's counsel violated these strictures throughout the deposition. In many instances, plaintiff's counsel's objections were verbose and argumentative. (*See*, *e.g.*, Docket No. 234-4 at 40, 74:14-22 ("What I'll do is I'll make my record as I see fit and you can wait until I'm done before you chime in. Okay? [*Etc.*]").) On occasion, she interrupted Mr. Hobart, contradicted him, or answered for him. (*See id.* at 4, 8-10 and 38, 7:20-24, 13:3-18, 14:21-15:7, 72:5-10.)

As well, in approximately 60 instances, plaintiff's counsel interposed objections that implicitly instructed Mr. Hobart how to answer. Objections such as "Calls for speculation," "He is not qualified [to answer the question]," "To the best of your knowledge," "Don't guess," and "You can answer if you understand" evidently signaled to Mr. Hobart that he should claim ignorance or confusion, no matter how simple the question. For example:

> Q Where did it seem like the noise was coming from [in the Subject Vehicle] when you heard the noise?
> **PLAINTIFF'S COUNSEL: I'm going to object. It calls for expert testimony. He is not a mechanic. Foundation. However, you can describe it if you have an idea of where it thought it was, the general direction.**
> THE WITNESS: I'm not a mechanic. So I would just be guessing and I don't think I should be guessing. I'm just not a mechanic to make that call.
> Q BY MS. MROWKA: I'm just asking for your personal observations. So when you're driving the car, did it sound like the noise was coming from a particular direction?
> A No. Like I said, I'm not qualified to answer that question.

(Docket No. 234-4 at 36 and 37, 67:15-68:4.) As another example:

|   |   |
|---|---|
| 1 | Q When was the first time when [the Subject Vehicle] lunged |
| 2 | forward from a stop sign or a stoplight? |
| 3 | A Probably from the first – |
| 4 | **PLAINTIFF'S COUNSEL:  I don't want you to guess.** |
| 5 | THE WITNESS:  You don't want me to guess.  I can't give an |
| 6 | exact time on that one. |

(*Id.* at 38, 72:5-10.)

In the most egregious instances, plaintiff's counsel coached Mr. Hobart to claim ignorance of factual matters *he admitted to knowing*.  For example:

|   |   |
|---|---|
|    | Q Do you know what a torque converter is? |
|    | A Yes. |
|    | Q What is it? |
|    | **PLAINTIFF'S COUNSEL:  I'm going to object. It calls for expert's opinion.  You're not a mechanic.  But to the extent you understand the question and can answer, go ahead.** |
|    | THE WITNESS:  I couldn't tell you if those transmissions had a torque – |
|    | **PLAINTIFF'S COUNSEL:  No, that's not what her question was.** |
|    | THE WITNESS:  No, I don't think I should answer that one because I'm not qualified. |

(Docket No. 234-4 at 28, 49:11-23; *see also id.* at 25, 35:7-20.)

In the foregoing examples, it is not credible that Mr. Hobart had no understanding of where a troubling noise was coming from or when the Vehicle first lunged forward from a stop.  Nor is it credible that, in a matter of seconds, he forgot what a torque converter is.  Thus, the conclusion that plaintiff's counsel was shaping his answers, and thereby violating Rule 30(c)(2), is inescapable.  *See Luangisa v. Interface Operations*,

///

2011 WL 6029880, at *11 (D. Nev. Dec. 5, 2011) ("[O]bjections that result in an incomplete answer or in the witness's adoption of counsel's statement are suggestive").

  (2) <u>Improper instructions not to answer</u>.

  Plaintiff's counsel did not limit obstructive conduct to improper objections. Under Rule 30, an attorney may instruct a client not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)" to terminate or limit the deposition on grounds of bad faith, oppression, and the like. Fed. R. Civ. P. 30(c)(2), (d)(3). If none of the enumerated objection grounds exists, the objection may be noted on the record, "but the examination still proceeds; the testimony is taken subject to any objection." *Id.* at (c)(2); *see also Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 581 (D. Nev. 2011) ("The remedy for oppressive, annoying and improper deposition questioning is not simply to instruct a witness not to answer").

  As Ford argues (Mot. at 6-11), on approximately 20 occasions, plaintiff's cousnel did not adhere to Rule 30's limits on instructing a deponent not to answer, or its procedures for addressing bad faith questioning. Instead, plaintiff's counsel cited impermissible grounds to justify instructions and/or made meritless privilege claims. For example:

> Q If Ford had offered you a return of your purchase price on the 2011 Ford Fiesta at that time, would you have accepted that?
>
> **PLAINTIFF'S COUNSEL: Objection; calls for speculation. He is not going to answer that question as to what he would have done. He is not here to answer hypothetical questions.**
>
> Q BY MS. MROWKA: Sir?
>
> **PLAINTIFF'S COUNSEL: He is not going to answer that question.**

(Docket No. 234-4 at 65, 130:4-13.) A speculative question is not a proper ground for instructing a deponent not to answer. *See* Fed. R. Civ. P. 30(c)(2); *see also Brincko*, *supra*.

As another example:

> Q BY MS. MROWKA: When did you hire your attorneys?
>
> **PLAINTIFF'S COUNSEL: Same objection. Don't answer that question.**
>
> MS. MROWKA: It's not an objectionable question.
>
> **PLAINTIFF'S COUNSEL: I'm objecting on the basis of attorney-client privilege**.
>
> MS. MROWKA: But there is no privilege as to when he hired the attorney.
>
> **PLAINTIFF'S COUNSEL: May I put my objections on the records please?**
>
> MS. MROWKA: As long as you stay to the objection.
>
> **PLAINTIFF'S COUNSEL: I can object to how I feel.**
>
> MS. MROWKA: Actually, you can't. You need to review Rule 30.
>
> **PLAINTIFF'S COUNSEL: May I state my objection?**
>
> MS. MROWKA: Yes.
>
> **PLAINTIFF'S COUNSEL: I'm not taking advice from you okay.**
>
> MS. MROWKA: I'm not asking you to.
>
> **PLAINTIFF'S COUNSEL: You're trying to instruct me as to how I can make the record. So please let me make my record. I am advising my client not to answer the question based on attorney-client**

1       *privileged communications; based upon the*

2       *confidential nature of the communication;*

3       *relevancy and also violates his right to privacy.*

4       *Advise him not to answer.*

5 (Docket No. 234-4 at 56-58, 120:23-122:1.) The date Mr. Hobart hired his attorneys is
6 not protected by the attorney-client privilege, because it is not a confidential
7 communication between Mr. Hobart and his attorneys, and it would not expose the
8 content of any such confidential communication. *See People ex rel. Herrera v. Stender*,
9 212 Cal. App. 4th 614, 645-51 (2012), *as modified* (Jan. 16, 2013) (discussing limits of
10 privilege). As well, the right to privacy is not a proper basis on which to instruct a client
11 not to answer. *See* discussion, *supra*.

12     As a further example:

13         Q Do you have a Twitter account?

14         **PLAINTIFF'S COUNSEL: Object on the grounds that it**

15         ***violates right to privacy. Advise him not to answer***

16         ***on those grounds.***

17         MS. MROWKA: It's a perfectly appropriate

18         basis for a question of this type in discovery. There is

19         no right to privacy of social media by virtue of it being

20         social media.

21         Q Do you have a Twitter account?

22         ***PLAINTIFF'S COUNSEL: Same objection. Don't***

23         ***answer.***

24         Q BY MS. MROWKA: Mr. Hobart, are you going

25         to follow your attorney's instruction not to answer the

26         question?

27         A Yes.

28

1 | (Docket No. 234-4, 20:20-21:8.) A social media account, which by its nature is intended
2 | to be shared, cannot be shielded from discovery on privacy grounds alone. *See, e.g.*, *Voe
3 | v. Roman Catholic Archbishop of Portland in Oregon*, No. 3:14-CV-01016-SB, 2015
4 | WL 12669899, at *2 (D. Or. Mar. 10, 2015) (discussing ).

      (3)    <u>Meritless objections; improper purpose</u>.

Plaintiff's counsel also asserted objections that, while utterly without merit, appeared calculated to thwart inquiry into the heart of plaintiff's claims, such as the following:

> Q When someone says automatic transmission, do you have an understanding of what that means?
>
> A Yes.
>
> **PLAINTIFF'S COUNSEL: Let me object. Vague and ambiguous. If you understand the question, you can answer.**
>
> THE WITNESS: Yes.
>
> Q BY MS. MROWKA: Can you describe what an automatic transmission is to you?
>
> **PLAINTIFF'S COUNSEL: I'm going to object. Calls for expert opinion. You can answer if you understand the question.**
>
> THE WITNESS: I don't think I'm qualified to answer that question. I'm not a mechanic.
>
> Q BY MS. MROWKA: I'm not asking for expert opinion, your knowledge as an automotive expert. I'm just asking for your general knowledge since you said you understand what an automatic transmission. Can you describe what an automatic transmission is to you?
>
> **PLAINTIFF'S COUNSEL: Objection; you can answer if**

> *you understand it.*
>
> THE WITNESS: I don't see – I don't know. I can't answer that. I don't know what an automatic transmission is today.

(Docket No. 234-4, 35:7-20.) As another example:

> Q BY MS. MROWKA: Were there any specific representations made by Ford Motor Company that you received that you believe were false about the 2011 Ford Fiesta?
>
> **PLAINTIFF'S COUNSEL: Objection; vague, ambiguous, overbroad. Calls for a legal conclusion and legal analysis. But to the extent that you're aware of anything, you can answer.**
>
> THE WITNESS: I would rather not say.

(*Id.* at 133:9-17.) It is axiomatic that a defendant is entitled to question a plaintiff about the alleged facts by which the plaintiff seeks to hold the defendant liable. *Brincko*, 278 F.R.D. at 582. Plaintiff's counsel's interference with such basic lines of questioning, by dint of coaching and meritless objections, bespeaks an improper purpose.

Remarkably, plaintiff's counsel's firm filed an opposition brief signed by a partner of the film that approved and effectively ratified the foregoing deposition misbehavior. It appears to be acceptable at this firm simply to ignore the Federal Rules with respect to deposition conduct. Under these circumstances, it is more appropriate to sanction the firm, rather than the individual counsel who appeared at the deposition and, presumably, was following firm directives.

  (4) <u>Ford's meet-and-confer conduct</u>.

Plaintiff argues that Ford did not meet its obligations under Local Rule 7-3, because counsel for Ford indicated during the pre-motion conference that nothing short of plaintiff's agreement to every requested sanction would persuade Ford to shelve the

Motion. (Oppo. at 2-3.) Plaintiff argues, in essence, that a failure to meet-and-confer in good faith on a sanctions motion excuses sanctionable misconduct. (*See id.*)

The Court need not decide this issue, because the Court is not convinced that Ford fell short of its pre-motion obligations. Local Rule 7-3 requires that counsel "meet and confer to *discuss thoroughly* . . . the substance of the contemplated motion and any potential resolution" (emphasis added). "The purpose of the meet and confer requirement imposed by Local Rule 7-3 is to allow the parties to reach a more refined understanding of the issues before concluding a dispute cannot be resolved without the Court's intervention." *Robinson v. Am. Corp. Sec., Inc.*, 2009 WL 10675008, at *2 (C.D. Cal. Jan. 5, 2009). The record indicates that the parties (1) thoroughly discussed the Motion and potential resolutions; and (2) reached a more refined understanding of the issues before the Motion was brought. (*See* Docket No. 276-2, 267-3; *see also* Docket No. 270-3, 270-4.)

In sum, the Court finds that plaintiff's counsel wilfully frustrated the fair examination of Mr. Hobart, acted in bad faith, and vexatiously and unreasonably multiplied the proceedings. Accordingly, sanctions are warranted under Rule 30(d)(3), Section 1927, and the Court's inherent powers.

C.  *Sanctions*.

Ford requests that the Court issue an order precluding plaintiff from introducing any evidence (1) related to or supporting plaintiff's fraud claims; or (2) establishing plaintiff's damages. (Mot. at 21.) The Court denies this request. The exclusion of such evidence is tantamount to terminating sanctions. *See Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 495 (E.D. Cal. 2010). Although Mr. Hobart was not without fault, the record indicates that he was following his counsel's lead, as a lay client might be expected to do. Furthermore, there are lesser sanctions that will deter similar misconduct in the future and mitigate the prejudice suffered by Ford. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (in weighing

///

terminating sanctions for discovery misconduct, court must consider, *inter alia*, risk of prejudice to the party seeking sanctions and availability of lesser sanctions).

Ford requests as well that the Court compel Mr. Hobart to sit for a resumed deposition, with explicit restrictions on the objections plaintiff's counsel may interpose. (Mot. at 21-22.) This sanction is appropriate and will be adopted, as it is narrowly-tailored to mitigate the prejudice suffered by Ford.

In addition, Ford requests that the Court appoint a discovery master to attend the deposition. The Court denies this request without prejudice. There is no reason to believe that plaintiff's counsel will not comply with the Court's order regarding deposition behavior.

Ford also requests that the Court order plaintiff's counsel to personally reimburse Ford for all costs incurred in connection with the February 13 deposition and the resumed deposition. Limited to all *reasonable* costs incurred by Ford, this sanction is appropriate with respect to plaintiff's counsel's firm. Rule 30(c)(2) and Section 1927 expressly authorize imposing such costs, which resulted from the misconduct. Further, requiring plaintiff's counsel's firm to pay the costs may deter plaintiff's counsel from engaging in similar misconduct in the future.

## ORDER

(1) Plaintiff's deposition shall resume at a time and place convenient to the parties, but no later than **30 days** from the date of this order.

(2) Plaintiff's counsel shall not assert any objection during the deposition other than an objection based on (i) privilege, (ii) the assumption of facts that are, in good faith, disputed, or (iii) mischaracterization of the record. Plaintiff's counsel may only assert an objection based on privilege upon a good faith belief that the question calls for the disclosure of information that actually is entitled to protection under the privilege asserted. Any other objections will be preserved and shall not be waived even though they are not asserted. Specifically, counsel shall not assert any objection that a question is vague, lacks foundation, calls for hearsay, etc.

(3) While on the record, plaintiff's counsel shall not interrupt a question posed by defense counsel other than to assert an objection as permitted above.

(4) While on the record, counsel for both sides shall not engage in any banter with each other.

(5) The time expended on the record during the February 13, 2019 deposition shall not count against the time available to defense counsel.

(6) The Knight Law Group, LLP is ordered to reimburse defendant for the attorneys' fees, transportation fees, and court reporter fees it incurred in connection with the February 13, 2019 deposition and the attorneys' fees incurred in the preparation of the instant motion and the documents supporting the instant motion. Defendant's counsel is directed to file an itemization of the foregoing fees within 15 days. Plaintiff may file a response to the itemization within five days thereafter. If the Court finds that a hearing would be of any assistance, the Court will calendar a date for hearing; otherwise, the Court will determine the amount of the sanctions award based on the documents filed pursuant to this order.

IT IS SO ORDERED.

DATED: May 13, 2019

                                             /S/ FREDERICK F. MUMM
                                             FREDERICK F. MUMM
                                             United States Magistrate Judge