UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | **ML 18-02814 AB (FFMx)**<br>CV 18-04817 AB (FFMx)<br>CV 18-04190 AB (FFMx)<br>CV 17-06656 AB (FFMx)<br>CV 18-01912 AB (FFMx) | Date: | May 22, 2019 |
|---|---|---|---|

| Title: | ***In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.***<br>*Mary Cannon v. Ford Motor Company*<br>*Christi Brown v. Ford Motor Company*<br>*Mark Pedante v. Ford Motor Company*<br>*Yvonne Quintero et al. v. Ford Motor Company* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER <u>GRANTING IN PART</u> AND <u>DENYING IN PART</u> MOTIONS FOR JUDGMENT ON THE PLEADINGS**

    Before the Court are the Motions for Judgment on the Pleadings that Ford filed in the above-referenced member cases of the MDL *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*. ("Motions" Dkt. Nos. 161, 162, 163). The Plaintiffs filed oppositions, and Ford filed replies. The Court heard oral argument on March 6, 2019. The Motions are **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

These cases are members of an MDL wherein Plaintiffs assert warranty and fraud claims against Ford in connection with allegedly defective DPS6 PowerShift transmissions installed in their Ford Fiesta and Ford Focus vehicles. Ford seeks judgment on the pleadings against *Canon* and *Brown*, represented by the Consumer Law Group ("CLR"), and against *Pedante* and *Quintero*, represented by the Knight Law Group ("KLG").

The motion against the CLR plaintiffs *Canon* and *Brown* is the most comprehensive. The motions against the KLG plaintiffs *Pedante* and *Quintero* purport to incorporate arguments made in the motion against the CLR plaintiffs.[1] Although the motions present overlapping arguments, the Complaints are not identical so the analyses diverge.

## II. LEGAL STANDARD[2]

"After the pleadings are closed – but early enough to not delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

---

[1] In theory, this could have increased efficiency, but in practice made it difficult for the KLG Firm to respond. In addition, in some instances the CLR Firm simply relied on the KLG firm's work, and as a result sometimes failed to direct the Court to the allegations in their clients' Complaints that are responsive to the motions. All of this made adjudicating these motions unnecessarily onerous. While the Court appreciates efforts at efficiency, here those efforts backfired.

[2] All Plaintiffs cite the "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court reminds counsel that that particular statement in *Conley* was "retired" by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although the extent to which *Twombly/Iqbal* changed the pleading standard is open to debate, the "no set of facts" formula was expressly retired because it was widely misunderstood and misapplied. It should therefore no longer be cited as the operative standard.

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court may dismiss a complaint under Rule 12(b)(6) based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider other materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## III.    DISCUSSION

### A. The Motions are <u>GRANTED</u> as to the Warranty Claims Asserted in *Brown*, *Cannon*, and *Quintero*.

All plaintiffs assert claims under the Song-Beverly Act based on Ford's alleged breach of an express warranty. Ford's moves to dismiss all of the warranty claims (except *Pedante*'s implied warranty claim) on the ground that none of the complaints plead facts to establish the breach of an express warranty.

Under the Song-Beverly Act, if a manufacturer fails to repair a vehicle to conform to its express warranties after a reasonable number of attempts, it must promptly replace the vehicle or make restitution in the statutory amount. Cal. Civ. Code § 1793.2(d)(2); *Krotin v. Porsche Cars*, 38 Cal.App.4th 294, 302-03 (1995). The phrase "a reasonable number of attempts" requires that a vehicle be subject to more than one repair attempt in order to qualify for relief: "'Attempts' is plural." *Silvio v. Ford Motor Co.*, 109 Cal.App.4th 1205, 1207 (2003). Hence, liability may be established by showing that a vehicle has been subject to repair at least two times for not conforming to the warranty.

Thus, to state any Song-Beverly claim based on breach of an express warranty, a plaintiff must plead facts showing that there was an express warranty, that the vehicle did not conform to the express warranty, and that the nonconformity was not remedied after at least 2 repair attempts.

### 1. All Plaintiffs Adequately Plead a Warranty

Here, all Plaintiffs allege that the vehicles were covered by express warranties whereby Ford "undertook to preserve or maintain the utility or performance of Plaintiff's vehicle or to provide compensation if there was a failure in such utility or performance." *Pedante* Compl. ¶ 8; *see also, e.g., Brown* Compl. ¶ 103.[3]

### 2. Only *Pedante* Pleads a Nonconformity that was Not Remedied After At Least 2 Repair Attempts

*Pedante* pleads facts sufficient to show that his vehicle did not conform to the express warranty, and that the defect was not repaired after 2 repair attempts. He alleges that the vehicle he purchased in March 2013 developed transmission defects (Compl. ¶ 108), and facts that tend to support this allegation, including that the vehicle shuddered when accelerating at slow speeds, that it made a grinding noise, and that it lost all power while driving at highway speeds. Compl. ¶¶ 72, 74. Pedante also alleges that he presented his vehicle for 3 repair attempts—in August 2014, July 2015, and August 2016. Compl. ¶¶ 72-74. Ford objects that these 3 repair attempts were for different problems and therefore should not be added up to reach at least 2 repair attempts. But this argument is not persuasive because it can be reasonably inferred from the allegations that these 3 repair attempts are related to the allegedly defective transmission.

However, neither *Brown*, *Cannon*, nor *Quintero* adequately plead these elements. Although they allege that their vehicles had defective transmissions, they plead no facts specific to their experiences with their vehicles that could establish this conclusion. *Brown* and *Cannon* plead that their vehicles "contained or developed" largely the same laundry list of more than a dozen symptoms that presumably can be caused by a transmission defect, but they do not allege which of these symptoms they actually experienced. *See, e.g., Brown* Compl. ¶ 104. In *Quintero*, the section entitled "Plaintiffs' Experiences" does not allege any facts establishing that their vehicle exhibited any of the many problems generically mentioned in their Complaint, and fails to allege facts establishing any repair attempts. The Quinteros point to their paragraph 144 as

---

[3] The Court sustains Plaintiffs' objections to the "Warranty Guides" Ford appended to its motions. Ford did not authenticate them and the Court cannot consider these extra-Complaint materials without converting these motions into motions for summary judgment.

adequately pleading these facts; it reads, in relevant part, that the vehicle "had extremely poor handling on all roads, as Plaintiffs' drive was repeatedly interrupted by jerky shifts and hesitation," and that these symptoms "necessitated several repairs and repeated reprogramming of the transmission control module—none of which were sufficient to resolve the Transmission Defect." Compl. ¶ 144. Strangely, while the Quinteros rely on this paragraph to establish their warranty claim, it is not in any warranty section of their Complaint, nor is it in their "Plaintiffs' Experiences" section; rather, it is tucked within the intentional misrepresentation claim. Also strangely, paragraph 144 appears nearly verbatim in the *Brown* and *Cannon* Complaints, *see e.g.*, *Brown* Compl. ¶ 130, so it is difficult to read it as pleading facts specific to any plaintiff in particular. In context, paragraph 144 reads as boilerplate. Thus, neither *Brown* nor *Cannon* nor *Quintero* plead facts to show the symptoms their vehicles exhibited, that they presented their vehicles for at least 2 repair attempts, and that the nonconformities were not remedied. The lack of facts specific to these plaintiffs' vehicles also defeats their claims for breach of the implied warranty of merchantability because there are no facts establishing that these vehicles were not "'fit for [their] ordinary purpose for which such goods are used . . .'" *Isip v. Mercedes-Benz USA, LLC*, 155 Cal.App.4th 19, 24 (2007) (citing Cal. Civ. Code, § 1791.1(a)).

The Motion as to the warranty claims are therefore **DENIED** as to *Pedante*, and **GRANTED** as to *Brown*, *Cannon*, and *Quintero*

### B. The Motions Are **GRANTED** in Part and **DENIED** in Part as to the Fraud Claims.

The parties assert three kinds of fraud claims: (1) fraudulent inducement – intentional misrepresentation; (2) fraudulent inducement – negligent misrepresentation (KLG plaintiffs only); and (3) fraudulent inducement – by omission or concealment.[4] Ford attacks the fraud claims on numerous grounds. The parties do not distinguish between the intentional misrepresentation and negligent misrepresentation claims, so the Court will likewise discuss them together.

---

[4] From the Complaints alone it is not clear that the omission/concealment claims are solely for fraudulent inducement. However, the *Pedante* and *Quintero* oppositions characterize all of their fraud claims as fraudulent omission claims: "All of Plaintiff's fraud claims arise from Ford's misconduct in fraudulently inducing him [them] to enter into the Retail Installment Sales Contract on the day of the sale." *Pedante* Opp'n (Dkt. No. 170) 18:5-7; *Quintero* Opp'n (Dkt. No. 171) 20:19-21. For their part, *Cannon* and *Brown* defer entirely to the *Pedante* and *Quintero* oppositions on the issues to which this question pertains, thereby indicating that their omission/concealment claims are solely for fraud in the inducement. Accordingly, the Court construes all of the fraud claims herein as being for fraudulent inducement.

### 1. Misrepresentation Claims

The elements of intentional misrepresentation are: "(a) misrepresentation; (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." CACI 1900; *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997). "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Id.* In federal court, "[in] alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) requires a plaintiff averring fraud to plead the 'who, what, when, where, and how' of the alleged misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The plaintiffs allege that Ford engaged in two kinds of misrepresentations and/or omissions: (1) that Ford advertised the DPS6 transmission as an "automatic transmission," but it was really an "automated manual transmission," and (2) that Ford represented that the vehicles would perform in a certain way, but defects in the DPS6 transmission caused a laundry list of performance issues inconsistent with Ford's representations.

### a) The Motions are **DENIED** as to the Alleged "Automatic Transmission" Misrepresentation.

Regarding the misrepresentation claims insofar as they are based on Ford's statement that the DPS6 transmission was an "automatic transmission," Ford concedes that it is reasonable to infer that this representation was made to Plaintiffs at some point before they purchased the vehicles. Indeed, the Complaints explain Plaintiffs' theory for why the DPS6 transmission is not an automatic transmission. *See, e.g.*, *Brown* Compl. ¶¶ 13-20; *Pedante* Compl. ¶¶ 12-19. Pointing to dictionary definitions of "automatic transmission," Ford argues that its statement was not a misrepresentation because the DPS6 transmission *is* an automatic transmission. But this argument goes beyond the adequacy of the pleadings and instead asks the Court to find an allegation therein untrue. This is obviously beyond the scope of a motion for judgment on the pleadings. Ford presents no other reasons why the fraud claims based on the "automatic transmission" representation are insufficient, so the Court denies the motions as to this part of the misrepresentation claims.

### b) The Motions are **GRANTED** as to the Alleged Performance Misrepresentations.

Ford contends that none of the plaintiffs adequately plead the specifics of any misrepresentation regarding the vehicles' performance, including its content, who made it, when, and where, as required by Rule 9(b).

The Court finds that Plaintiffs have not adequately pled their misrepresentation claims insofar as they are based Ford's representations about how the vehicles would perform. The CLR Firm does not point to any particular allegations in the *Brown* and *Cannon* Complaints identifying such misrepresentations made to these plaintiffs, or the corresponding who, what, when, where, etc., required by Rule 9(b), and the Court will not search for them. Instead, in a tacit concession that the *Brown* and *Cannon* complaints cannot satisfy Rule 9(b), the CLR Firm urges the Court to disregard Rule 9(b).[5] *See Cannon/Brown* Opp'n 10:4-25. The Court cannot do this. The burden is on the plaintiffs to satisfy the applicable pleading standards, and the Court will not improperly grant them exceptions to those standards.

Nor do the *Quintero* and *Pedante* Complaints adequately plead their misrepresentation claims related to the vehicles' performance. First, the Complaints fail to allege what statements these Plaintiffs relied upon. The Complaints state that these plaintiffs reviewed "marketing materials" and "viewed television commercials and/or heard radio commercials about the qualities of the" vehicles. *Quintero* Compl. ¶¶ 71, 72; *Pedante* Compl. ¶ 71. But none of these paragraphs allege the performance-related statements within these "marketing materials" or commercials that these Plaintiffs relied upon. These Complaints also allege that "Ford continued to represent to the public that the PowerShift Transmission offered 'great handling on all roads,' and 'the performance of a manual,' and ['] [sic] seamless gear changes for amazing responsiveness,' a wildly different picture from the reality. Ford made the statements in its marketing brochures..." *Quintero* Compl. ¶ 146; *Pedante* Compl. ¶148. But these are general allegations; the Complaints do not allege that *these* Plaintiffs saw *these* representations in *these* brochures. The oppositions gloss over this omission, stating that the Plaintiffs reviewed that brochure, but they point to no such allegation in the Complaint. Absent such allegations specifying the statements they personally relied upon, these Plaintiffs have not pled a misrepresentation that they relied upon. If the *Quintero* and *Pedante* plaintiffs actually saw and relied on those particular representations in particular brochures, they must allege that, as Rule 9(b) requires.

---

[5] That the CLR Firm filed numerous extra-Complaint documents to show fraud also suggests that the Complaints are inadequate: why file such materials if you can instead point to allegations in the actual Complaints, as the legal standard requires?

Ford also argues that the statements recited in the Complaints are non-actionable puffery, but given the Plaintiffs' failure to identify the misrepresentations they actually relied upon, the Court will not decide that question at this time. But, assuming arguendo that the statements above are what *Quintero* and *Pedante* relied upon and are not puffery, the *Quintero* and *Pedante* Plaintiffs' allegations regarding how their vehicles performed do not establish that these statements were false. The *Pedante* Complaint, which is the most detailed, alleges in its "Plaintiffs' Experience" section three repairs over more than 4 years (from purchase of the vehicle in March 2013 through his filing the Complaint in August 2017), and only 2 of those instances involved the vehicle not performing properly. That the vehicle experienced problematic performance twice in 4 years does not render false a claim that it offered "great handling on all roads," "the performance of a manual," and "seamless gear changes for amazing responsiveness." Given that these representations pertain to the vehicles' overall performance, the Complaints should at least allege facts establishing how these vehicles performed overall rather than just how they performed prior to repair attempts for what might just as plausibly be isolated issues.

The Court therefore **GRANTS** the motions as to the misrepresentation claims based on Ford's alleged statements regarding the vehicles' performance.

### C. The Motions are <u>GRANTED</u> as to the Fraudulent Omission Claims.

A claim for fraud based on concealment or omission requires that: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230, 248 (2011).

Here, Ford argues (1) that it had no duty to disclose because there was no transaction between itself and the Plaintiffs; (2) that the fraudulent omission claim is barred by the economic loss doctrine; and (3) that the allegations do not satisfy Rule 9(b).

#### 1. The *Pedante* and *Quintero* Complaints Plead Facts Adequate to Establish A Duty to Disclose.

First, the Complaints support a determination that Ford had a duty to disclose. A duty to disclose exists when (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals material facts from the plaintiff; or (4) the

defendant makes partial representations but also omits some material facts. *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997). Ford argues, based on *Bigler-Engler v. Breg, Inc.*, 7 Cal.App.5th 276 (2017), *review denied* (Mar. 29, 2017), that the above 4 circumstances that can give rise to a duty to disclose exist only where there is a direct transactional relationship between the plaintiff and defendant. Here, Ford argues, that threshold is not satisfied because there was no transactional relationship between Plaintiffs and Ford. In particular, the Plaintiffs had relationships not with Ford but with the dealerships from whom they purchased their Ford vehicles.

### a. The *Pedante* and *Quintero* Complaints Plead Facts Sufficient to Establish the Threshold Relationship.

In *Bigler-Engler*, a patient sued her doctor, his medical group, and a medical device manufacturer, among others, for numerous tort claims, including fraudulent concealment arising out of injuries sustained from a cold therapy device. The Court of Appeal reversed the jury's verdict on fraudulent concealment against the manufacturer on the ground that the manufacturer did not owe the patient any duty to disclose because there was no direct relationship between them. Specifically, the patient obtained the device from the medical group and there was no transactional relationship between the patient and the manufacturer. *Id.* at 312. The Court reviewed California precedent to conclude that all of the four situations that can give rise to a duty to disclose are based upon a "transaction [that] must necessarily arise from direct dealings between the plaintiff and the defendant; it cannot arise between the defendant and the public at large." *Bigler-Engler*, 7 Cal.App.5th at 312. Even where the defendant has volunteered information, it does not have a further obligation to correct half-truths where no sufficient relationship or transaction exists. *Id.* at 312. Simply speaking does not give rise to a duty to disclose. *Id.* However, as relevant here, the *Bigler-Engler* court noted that the manufacturer was not involved "in any way" with the patient, and that there was no evidence that the manufacturer "directly advertised its products to consumers such as" the patient. *Id.* at 314.

Here, the *Quintero* and *Pedante* Complaints allege that Ford directly markets is vehicles to consumers and communicates with consumers through the authorized dealerships from whom Plaintiffs did purchase their vehicles. *See, e.g., Pedante* Compl. ¶¶ 70-71. Although these allegations are thin, the Court finds that they plausibly establish, at this stage, a sufficient threshold relationship from which a duty can arise. The CLR Firm purports to incorporate by reference the legal arguments the KLG Firm makes, but it failed to direct the Court to the specific allegations in the *Brown* and *Cannon* Complaints that can establish this relationship. This is insufficient. Therefore the Court finds that the *Brown* and *Cannon* Complaints do not plead facts sufficient to establish this threshold relationship with Ford.

      **b. The Complaints Plausibly Plead A Duty to Disclose Arising At Least From Ford's Allegedly Exclusive Knowledge of Material Facts Not Known to Plaintiffs.**

As for which specific circumstance gives rise to a duty, the Complaints establish that Ford had exclusive knowledge of material facts not known to the plaintiff. Courts have held that "superior" knowledge satisfies this standard. *See, e.g., Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (finding duty where GM was in a superior position to know that its speedometers might fail based on the record of complaints it received, compared with consumers who only learn of the defect by experiencing it first-hard); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (finding duty to disclose where "[w]hile Toyota shared some information regarding SUA with NHTSA and eventually with consumers, Toyota remained in a superior position of knowledge."). Here, the Plaintiffs allege facts showing that Ford had superior knowledge of the alleged defect before they bought their vehicles based at least on pre-release testing, consumer complaints, data available from dealers, and Ford's experience with a similar transmission in vehicles released in Europe and Australia, for example. *See, e.g., Brown* Compl. ¶¶ 44-51, *Pedante* Compl. ¶¶ 57-68. This is sufficient to create a duty to disclose, assuming the threshold relationship is established.

      **2. The Economic Loss Rule Does Not Bar the Fraudulent Omission Claims.**

Ford also argues that the fraudulent omission claims are barred by the economic loss rule. "[T]he economic loss rule provides [that] where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) (internal quotation omitted). Accordingly, a plaintiff cannot assert tort claims based on a product not performing as promised—which is simply an economic loss recoverable in a contract action. The purpose of this rule is to "prevent[] the law of contract and the law of tort from dissolving into the other." *Id.* (internal quotation omitted).

Ford acknowledges that *Robinson* and its predecessor cases hold that fraudulent inducement claims based on misrepresentations are not subject to the economic loss doctrine, so Ford does not on that basis seek judgment on the fraudulent misrepresentation claims. However, Ford argues that fraudulent inducement claims based on *omissions* should be subject to the economic loss doctrine. The Court finds insufficient support in the California cases Ford cites for its distinction between fraudulent inducement by misrepresentation and fraudulent inducement by omission, and therefore declines to apply the economic loss rule to the omission claims at this stage.

### 3. The Complaints Fail to Plead the Alleged Omission(s) with Particularity.

Ford argues that the fraudulent omission claim is not pled with particularity sufficient to satisfy Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009) (fraudulent omission claims are subject to Rule 9(b)). The Court agrees.

"To plead the existence of an omission sufficient to support a fraudulent concealment claim, a plaintiff 'must describe the content of the omission and where the omitted information should or could have been revealed.'" *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015) (citation omitted).

Most importantly, the Complaints fail to allege exactly what the omission is. While Plaintiffs describe a laundry list of ways in which their vehicles' performance is subpar, they tie all of these problems to a "defect" in the DPS6 transmission that they allege Ford should have disclosed. However, while Plaintiffs describe the alleged defect's effects on their vehicles, nowhere do they describe what exactly the defect is. For example, the *Pedante* Complaint defines "the 'Transmission Defect' " as follows: the DPS6 transmission "is defective in design and/or manufacture in that, among other problems, the transmission consistently slips, bucks, kicks, jerks, harshly engages, has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, and, eventually, premature transmission failure." *Pedante* Compl. ¶ 21. This merely describes performance problems with the vehicle and does not amount to identifying the defect that Ford failed allegedly to disclose. It is therefore insufficient. *Accord Callaghan v. BMW of N. Am., LLC*, No. 13-CV-04794-JD, 2014 WL 6629254, at *3 (N.D. Cal. Nov. 21, 2014) (fraudulent omission claim insufficiently pled where it asserted an unavoidable defect, but alleged only that the transmissions are prone to premature failure without alleging what the defect is); *see also McQueen v. BMW of N. Am., LLC*, No. CIV.A. 12-6674 SRC, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) ("Throughout her Complaint, Plaintiff merely identifies the effects of the alleged defect: namely that the Vehicle shifts into neutral contrary to operator command. There is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective.").

One problem with the Complaints is that Plaintiffs muddle their assertion that the DPS6 transmission is not automatic, with their assertion that the DPS6 transmission is defective. As the Court understands it, these are 2 different issues. The first issue – whether the DPS6 is actually automatic—is relevant only to Plaintiff's claim that Ford affirmatively misrepresented that the transmission was automatic. Whether the DPS6 is automatic is a technical question that turns on the differences between an automatic transmission and a manual transmission, but does not seem to turn on the vehicle having performance problems of the sort listed in the Complaints. The second issue—whether the DPS6 transmission is defective—goes to whether Ford fraudulently concealed or

omitted a defect. Whether the DPS6 transmission is defective turns on how it performs relative to certain legally-cognizable expectations, but does not turn on the technical question of whether Ford accurately characterized the DPS6 transmission as automatic. Thus, Plaintiffs' well-pled allegation that the DPS6 transmission is not automatic, is not also an allegation that the DPS6 transmission is defective.

The Court rejects certain of Ford's other arguments. For example, Ford argues that Plaintiffs fail to allege that the defect in issue creates am unreasonable safety hazard, as required in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012). But the Ninth Circuit has since acknowledged that recent California cases hold that a safety hazard nexus is not required where the alleged defect goes to the central function of the product. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018 (recognizing that *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249 (2011) and *Rutledge v. Hewlett-Packard Co.*, 238 Cal.App.4th 1164 (2015), contrary to *Wilson*, suggest that omission claim does not require safety hazard nexus where the alleged undisclosed defect goes to the product's central function). Accordingly, Ford's complaint that Plaintiffs don't allege facts showing that the defect is a safety hazard is immaterial. Ford also appears to argue that because its warranties acknowledge the possibility of defects and oblige Ford to repair them or replace the vehicle, they render the defects immaterial. This argument is not convincing. Such warranties simply allocate to Ford certain risks associated with defective products; they don't mean that the defect itself is immaterial to a consumer. Finally, Ford also appears to argue that a reasonable consumer cannot reasonably be deceived by a manufacturer's failure to disclose a defect that does not require a recall under the National Highway Traffic Safety Act. This argument is unpersuasive for several reasons, including that Ford has not supported it with substantial legal authority, and it turns in part on the argument that the only undisclosed defects that are actionable as fraudulent omissions are those that pose safety hazards—a position California courts have called into question if not rejected, as discussed in *Hodsdon*, *supra*.

The Court believes it has addressed all of Ford's Rule 9(b) challenges to the fraudulent omissions claim. However, given that Plaintiffs failed to adequately plead the content of Ford's alleged omission, other derivative allegations *may* be inadequate. To minimize future motion work, Plaintiffs would be well-served by thoroughly reviewing their Complaints and shoring up any allegations that arguably fall short of Rule 9(b).

## IV. CONCLUSION

For the foregoing reasons, the Motions for Judgment on the Pleadings are:

- **<u>GRANTED</u>** as to the Warranty Claims asserted in *Brown*, *Cannon*, and *Quintero*.

- **<u>GRANTED</u>** as to the Fraudulent Misrepresentation Claims based on Ford's

Alleged Performance Misrepresentations, asserted in all 4 cases.

- **GRANTED** as to the Fraudulent Omission Claims, asserted in all 4 cases.

- **DENIED** as to the Warranty Claims asserted in *Pedante*.

- **DENIED** as to the Fraudulent Misrepresentation Claims Based on Ford's "Automatic Transmission" Representation, asserted in all 4 cases.

Given that Ford Answered the Complaints and did not previously challenge their adequacy, the Court finds good cause for granting Plaintiffs leave to amend. **Plaintiffs have 21 days from the issuance of this order to file their First Amended Complaints. Any Complaints or claims not amended by that date will be deemed dismissed with prejudice.**

To streamline the Court's review of complaints in the future, and given that the Complaints filed by the CLR and KLG firms are similar in many respects and nearly verbatim in parts, and that many of the allegations are universal as to all Plaintiffs, the Court believes these firms should use best efforts to craft a uniform Complaint template, so that their complaints filed now and in the future will vary only in the allegations particular to each plaintiff. Furthermore, the operative allegations particular to each plaintiff should be contained within the same section and in the same numbered paragraphs. For example, in the *Pedante* Complaint, the section entitled "PLAINTIFF'S EXPERIENCES," p. 13, should contain all of the allegations stating Pedante's experience with his vehicle; such allegations should not be tucked away in various other sections of the Complaint, although they may be repeated elsewhere if necessary. And, in *Pedante*, for example, the PLAINTFF'S EXPERIENCE section consists of paragraphs 69-74. Likewise, when a new Complaint is filed in *Quintero*, *Brown*, *Cannon*, and in other cases going forward, they too should have a "PLAINTIFF'S EXPERIENCES" section, that includes paragraphs numbered 69-74. If counsel anticipates that some plaintiffs may need 10 paragraphs to allege their experiences, then this section should always consist of paragraphs 69-78, with unused paragraphs in other complaints marked "PLACEHOLDER" or "INTENTIONALLY LEFT BLANK." The point is to make the Complaints as uniform as possible both in their content and format, thus avoiding trivial differences so that the Court can more easily evaluate them in the future.

The Court also believes that, while the Complaints are missing certain key allegations, some of the Complaints are disorganized and some matters are overpled. For example, the *Brown* Complaint has a section entitled "The PowerShift Transmission Defect," but it includes numerous other allegations (especially concerning Ford's knowledge) that should be in another section. Ideally, the Complaints should be streamlined and reorganized; but failing that, if they are made uniform, this would reduce

the burden of reviewing them. And while the Plaintiffs are given leave to amend, the Court reminds them that Rule 8 requires "a short and plain statement of the claim . . ." As such, extraneous allegations, excessive **"*Formatting for Emphasis,*"** and supporting evidence are neither necessary not appropriate. Finally, the face page of each Complaint should list the claims alleged, as on the *Pedante* Complaint.

**IT IS SO ORDERED.**