**KNIGHT LAW GROUP LLP**
Steve Mikhov (SBN 224676)
stevemusfc@knightlaw.com
Russell Higgins (SBN 226124)
russellh@knightlaw.com
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Attorneys for Knight Law Plaintiffs

**CONSUMER LEGAL REMEDIES APC**
Michael D. Resnick (SBN 245215)
mresnick@clrattorneys.com
Neil Gieleghem (SBN 107389)
ng@clrattorney.com
153 1/2 North Arnaz Drive
Beverly Hills, CA 90211
Telephone: (310) 213-1398
Fax: (213) 210-2196
Attorneys for CLR Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No**.**: 2:18-ML-02814-AB-(FFMx) |
| | Assigned to Hon. Andre Birotte Jr., Courtroom: 7B |
| **THIS DOCUMENT RELATES ONLY TO:** | **PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS** |
| *Brown, Christi v. Ford Motor Company*, 2:18-cv-04190-AB-FFM | |
| *Cannon, Mary v Ford Motor Company*, 2:18-cv-04817-AB-FFM | DATE: September 27, 2019 |
| *Quintero, Yvonne, et al. v Ford Motor Company*, 2:18-cv-01912-AB-FFM | TIME: 10:00 a.m.<br>COURTROOM: 7B |
| *Mark Pedante v. Ford Motor Company, et al.*, 2:17-cv-06656-AB-FFM | |

1

# **Table of Contents**

I.    INTRODUCTION AND FACTS ........................................................................ 1

II.   SUMMARY OF ARGUMENT ........................................................................ 4

III.  LEGAL STANDARDS .................................................................................. 6

IV.   ARGUMENT ................................................................................................. 8

   A.    EXCLUSION OF PLAINTIFFS' EXPERTS IS PROCEDURALLY
   INAPPROPRIATE, GIVEN THAT FORD FAILED TO DEPOSE THEM OR PROMPTLY
   MOVE FOR MORE ADEQUATE DISCLOSURE PRIOR TO SEEKING EXCLUSION. ..... 8

   B.    PLAINTIFFS TIMELY SERVED DESIGNATIONS FOR ALL EXPERTS ................. 9

   C.    PLAINTIFFS SERVED WRITTEN REPORTS FOR ALL DESIGNATED EXPERTS
        10

   D.    PLAINTIFFS' EXPERT REPORTS COMPLY WITH RULE 26 ............................... 12

      1.    Plaintiffs' Reports Provide a Full and Complete Statement of Opinions, and the Basis
      and Reasons for Them, In Compliance with Rule 26(a)(2)(B)(i) ........................................ 12

      2.    Plaintiffs' Reports Include Specific and Sufficient Facts and Data Considered by
      Plaintiffs' Experts in Forming Their Opinions .................................................................... 14

      3.    Rule 26 Does Not Require Reports to Include Exhibits and/or Graphics, if None Are
      To Be Used by the Experts at Trial ..................................................................................... 16

      4.    Fed. R. Civ. P. 26(a)(2)(B)(v) is Inapplicable: Plaintiffs' Experts Do Not Have
      Publications to Disclose. ..................................................................................................... 17

      5.    Plaintiffs' Reports Provide Sufficient Lists of Former Testimony; But If the Court
      Determines Otherwise, Plaintiff Should be Allowed to Supplement ................................... 17

      6.    Plaintiffs' Reports Provide Complete and Sufficient Statements of Compensation .. 18

i

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'**
**EXPERT WITNESSES**

E.    PLAINTIFFS HAVE COMPLIED WITH THIS COURT'S SCHEDULING ORDER 19

F.    RULE 37 SHOULD NOT OPERATE TO PRECLUDE PLAINTIFFS' EXPERT

TESTIMONY OR IMPOSE SANCTIONS ................................................................. 20

V.    CONCLUSION ................................................................................................... 23

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'
EXPERT WITNESSES**

# Table of Authorities

**Cases**

*Chappel v. SBC-Ameritech*, 2007 WL 2076028, *3 (N.D. Ill. 2007) ........................................... 13

*Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) ................................................................................................................................ 15

*Fund Commission Service, II, Inc. v. Westpac Banking Co.*, 1996 U.S. Dist. LEXIS 11937 at *14 ........................................................................................................................................... 20

*Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011) ............................................... 12

*Harvey v. District of Columbia*, 949 F.Supp. 874, 877 (D. DC 1996) ........................................... 8

*Hilt v. SFC Inc.* ("*Hilt*"), 170 F.R.D. 182, 185 (D. Kansas 1997) ................................................ 15

*Jenkins v. Bartlett*, 487 F.3d. 482, 487 (7th Cir. 2007) ............................................................... 11

*McReynolds v. Sodexho Marriot Serv., Inc.*, 349 F.Supp.2d 30, 43 (D.D.C. 2004) ..................... 16

*Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) ....... 12

*nCube Corp. v. SeaChange Int'l, Inc.*,
    809 F. Supp. 2d 337 (D. Del. 2011) ............................................................................................. 7

*Pineda v. City & Cty. of San Francisco*,
    280 F.R.D. 517 (N.D. Cal. 2012) ................................................................................................. 8

Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,
    585 F.Supp.2d at 581 (D.Del.2008) ............................................................................................. 7

*Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) .............................. 20

*Tenbarge v. Ames Taping Tool Sys., Inc.*,
    190 F.3d 862 (8th Cir.1999) ......................................................................................................... 6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ......................................................................................... 7, 20, 21

**Rules**

Fed. R. Civ. P. 26(2)(B) ................................................................................................................. 9

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'
EXPERT WITNESSES**

Fed. R. Civ. P. 26(a)(2) ............................................................................................ 8

Fed. R. Civ. P. 26(a)(3) ............................................................................................ 7

Fed. R. Civ. P. 26(e)(2) ......................................................................................... 6, 7

Fed. R. Civ. P. 37 .................................................................................................... 7

Fed. R. Civ. P. 37(b)(2)(A) ...................................................................................... 7

Fed. R. Civ. P. 37(b)(2)(B) ...................................................................................... 7

Fed. R. Civ. P. 37(b)(2)(C) ...................................................................................... 7

Fed. R. Civ. P. 37(c)(1) ........................................................................................ 7, 8

Fed.R.Civ.P. 26(a)(2)(B) .......................................................................................... 6

Fed.R.Civ.P. 26(e)(1) ................................................................................................ 6

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'
EXPERT WITNESSES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION AND FACTS</u>

On July 2, 2019, counsel for the *Quintero* and *Pedante* Plaintiffs timely served Plaintiffs' Disclosures of Expert Witnesses Pursuant to the Federal Rule of Civil Procedure, 26(a)(2); with Reports. The *Quintero* disclosures identified Mr. Micale and Mr. Blasjo, attaching their reports. Dkt. No. 443-8, Exh. E; Dkt. No. 443-9, Exh. F, attaching reports of Mr. Micale and Mr. Blasjo. The *Pedante* disclosures identified Messrs. Micale, Blasjo and Miller, attaching their reports. Dkt. No. 443-11, Exh. H; Dkt. No. 443-12, Exh. I; and, Dkt. No. 443-13, Exh. J. On that same date, these Plaintiffs also timely served Dr. Luna's Expert Reports in these matters. Dkt. Nos. 443-10, 443-14 Exhs. G, K.

Those disclosures stated that Mr. Micale, an engineer, has over thirty-two years of automotive and aerospace experience. Dkt. No. 443-8, Exh. E at p. 2, ¶2; Dkt. No. 443-11, Exh. H at p. 2, ¶2. He has been employed by Defendant Ford Motor Company ("Defendant" or "Ford"), where he designed automotive powertrains and control systems; he has specialized training in vehicle dynamics and as a result, understands vehicle stability and crash dynamics. *Id.* The disclosures also stated that Mr. Micale is expected to testify as to matters including, but not limited to, interpretation of results and further diagnostic repair procedures, both generally and as regards the subject vehicle, reasonableness of repair attempts regarding the subject vehicle, his inspection of the subject vehicle, and warranty repair procedures. *Id.* at p. 2, ¶3. Mr. Micale's expert reports in these two cases analyze and document and detail, *inter alia*, (1) the service and repair records he reviewed pertaining to the plaintiffs' specific vehicles; (2) Ford's own internal records and documentation he reviewed; (3) Ford's safety recalls he reviewed; (4)

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

the opinions and conclusions he reached; (5) his statement of compensation; (6) and a list of the court cases in which he has testified during the last four (4) years.

Those disclosures stated as to Mr. Blasjo that he has over thirty years of experience consulting, inspecting, and testing within the automotive industry. Dkt. No. 443-9, Exh. F at p. 2, ¶2; Dkt. No. 443-12, Exh. I at p. 2, ¶2. He has more than fifteen years of experience as a forensic automotive consultant for nationally known insurance companies and law firms. *Id.* Mr. Blasjo also has decades of experience working in the California Bureau of Automotive Repair to govern automotive repair and emissions testing facilities. *Id.* Mr. Blasjo is expected to testify at trial as to matters including, but not limited to, the subject vehicle in each case and its warranty and repair history; testing procedures; interpretation of results and further diagnostic and repair procedures, both generally and as regards the subject vehicle; reasonableness of repair attempts regarding the subject vehicle; his findings during inspection of the subject vehicle; and warranty repair procedures. *Id.,* at p. 2, ¶3. Mr. Blasjo's expert reports for these two cases analyze and document and detail, inter alia, (1) the repair orders he reviewed; (2) the Ford internal documentation he reviewed; (3) the Ford safety recalls he reviewed; (4) the open recalls he reviewed; (5) the opinions and conclusions he reached; (6) his statement of compensation; and (7) a list of the previous court cases in which he has testified in the last four (4) years.

Counsel for *Pedante* and *Quintero* also timely served Dr. Luna's Reports. Her reports, which are in the form of lengthy declarations under penalty of perjury, state that she is a Senior Partner in an accounting and litigation services firm of White Zuckerman, Warsavsky, Luna & Hunt, LLP, and employed as a forensic accountant and certified fraud examiner. Dkt. No. 443-10, Exh. G at pp. 1-2, ¶¶2-5; Dkt. No. 443-14, Exh. K at pp. 1-3, ¶¶2-5. Dr. Luna's reports state that she has been retained in these cases to testify as to matters including, but not limited to,

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'
EXPERT WITNESSES**

material problems discussed by and amongst Ford personnel, timeliness of disclosure of problems both to the public and the Plaintiff, corporate business culture, customs and practices, industry standards of disclosing or omitting information that may be material, the materiality of such information, repeated nondisclosures, and risk management strategy. *Id.* at p. 3, ¶6. She has also been retained to testify as to the valuation of damages based on the financial impact of non-disclosure or non-timely disclosure of material information, the quantification of underlying and punitive damages relating to the culpability of the Defendant, and profitability of its conduct. *Id.* at p. 3, ¶8

The timely *Pedante* disclosure regarding Mr. Miller explains that he is a qualified automotive expert who is highly skilled at spotting automotive violations such as bumper-to-bumper repairs including engine, transmission, electrical diagnosis, and auto body. He has testified as an expert witness in well over 100 civil, criminal and administrative cases. Dkt. No. 443-13, Exh. J at p. 2, ¶2. Mr. Miller is expected to testify at trial to matters including, but not limited to, the subject vehicle and its warranty and repair history; testing procedures; interpretation of results and further diagnostic repair procedures, both generally and as regards the subject vehicle; reasonableness of repair attempts regarding the subject vehicle; his inspection of the subject vehicle; and warranty repair procedures. *Id.* at p. 2 ¶ 3.

In the Consumer Legal Remedies ("CLR") cases *Cannon* and *Brown*, the Plaintiffs' disclosures also were timely served; and as to Mr. Randall Bounds are consistent with the disclosures for Mr. Blasjo in the *Cannon* case, and Mr. Micale in the *Brown* case. For example, the CLR Plaintiffs' Disclosures states that Mr. Bounds has over twenty years of automotive engineering experience, including rigorous failure analysis, diagnosis and inspection. He has also been employed by Ford where he worked as a Field Service Engineer performing vehicle inspections and assisting dealers with vehicle diagnostics on vehicle powertrains and vehicle

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

control systems. He was also certified as a Ford Senior Master Service Engineer from 2008-2017. The Disclosure also attaches Mr. Bounds' Curriculum Vitae. Dkt. No. 443-16, Exh. L (CLR Disclosures), ¶ 2, p. 1.

The CLR Plaintiffs' Disclosure also states that Mr. Bounds is expected to testify at trial as to matters including, but not limited to the Plaintiffs' vehicles and their warranty and repair histories, testing procedures, interpretation of results and further diagnostic repair procedures, both generally and as regards to Plaintiffs' vehicles, reasonableness of repair attempts regarding Plaintiffs' vehicles, his inspections of Plaintiffs' vehicles, and warranty repair procedures. Dkt. No. 443-16, Exh. L (CLR Disclosures), ¶ 3, p. 1.

Mr. Bounds' Reports for the CLR Plaintiffs document/detail, among other things, and in the following sequence:  (1) the repair orders that Mr. Bounds reviewed; (2) the Ford internal documentation that Mr. Bounds reviewed; (3) the Ford safety recalls that Mr. Bounds reviewed; (4) Mr. Bounds' inspection of the defective "lemon" vehicle at issue in each case; (5) the "Preliminary Opinions" that Bounds reached; (6) Mr. Bounds' "Reservations" as to those "Preliminary Opinions"; and (7) the previous court cases in which Bounds has testified in the last four (4) years.

## II.    **SUMMARY OF ARGUMENT**

The instant motion to exclude Plaintiffs' Experts[1] from testifying at trial filed by Ford ("Ford's Motion") willfully ignores the contents of the Disclosures and Reports served by Plaintiffs Christi Brown, Mary Cannon, Yvonne Quintero, et al., and Mark Pedante (collectively, "Plaintiffs"); and takes issue with minor purported

---

[1] Ford seeks to exclude the following expert witnesses designated by Plaintiffs: Mr. Anthony G. Micale; Mr. Darrell W. Blasjo; Dr. Barbara C. Luna; Mr. Steve Miller and Mr. Randall Bounds which for efficiency and readability will be referred collectively as "Plaintiffs' Experts."

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

omissions or errors, typographical and otherwise, that did not prejudice Ford in any material way if at all.

Ford's Motion is procedurally and legally invalid and must be denied.  The Motion presents a hodgepodge of arguments, mostly alleging technical deficiencies in the reports but also including *Daubert*-type arguments, all in an effort to prevent any of Plaintiffs' Experts from testifying in any of their cases. Ford's Motion claims that each of Plaintiffs' Experts' Reports (collectively, "Plaintiffs' Reports") is incomplete and deficient in violation of Federal Rules of Civil Procedure. However, Ford's Motion contains mostly recitations of case law and speculative, generic broadsides on the disclosures, but provides little to no factual explanation of exactly how Ford believes the reports are deficient.

Ford did not conduct, or even notice, a single deposition of any of Plaintiffs' Experts. Declaration of Russell Higgins in Support of Opposition to Ford's Motion to Exclude Experts ("Higgins Decl."), ¶ 12. Instead, Ford contends that Plaintiffs' Experts have provided incomplete opinions based on their reports alone. Ford claims the opinions are "unsupported by data" and have "methodology gaps." Ford's refusal to depose any of Plaintiffs' Experts, and its filing of its Motion after business hours on a Friday before a holiday weekend (unnecessarily limiting Plaintiffs' time to respond), highlight the gamesmanship behind the instant motion. Higgins Decl., ¶ 14.

 Ford also fails to establish any prejudice, because any conceivable prejudice is attributable to its refusal to depose Plaintiffs' experts rather than technicalities of their disclosures; any errors or deficiencies in the reports are insignificant and harmless. By contrast, if Ford's requested relief were granted, it would cause irreparable harm to Plaintiffs. It is unreasonable to even *threaten* such sanctions, given that the deficiencies (if that's even the case) complained of, could easily have been cured through deposition or otherwise, and particularly given that Ford's

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

expert disclosures and reports included all of the same "transgressions" of which Ford complains here.  Higgins Decl., ¶¶ 4-11, Exhibits A – G. Accordingly, Ford's Motion should be denied in its entirety. If the Court finds any of the claimed deficiencies to exist or to be significant, the Court should direct that those issues be supplemented or corrected rather than excluding the experts altogether.

## III.    LEGAL STANDARDS

Rule 26(a) requires disclosure of the identity of expert witnesses. If the expert is "one retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony," the disclosure must be accompanied by a written report containing (1) a complete statement of the expert's opinions and their bases, (2) the information relied upon by the expert in forming the opinions, (3) all exhibits to be used to summarize or support the opinions, (4) the expert's qualifications and list of publications, (5) a list of cases in which the expert testified, and (6) a statement of the expert's compensation. Fed.R.Civ.P. 26(a)(2)(B).

Fed. R. Civ. P. Rule 26(e)(1) further requires a party to supplement its experts' reports and deposition testimony when the party learns of new information. If the party fails to do so, the court may exclude any new opinion offered by the expert. See *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir.1999). The Rule requires supplemental  disclosures, in a timely manner, if the party learns that the disclosure is incomplete or incorrect in some material respect (and if the supplemental information has not otherwise been made known to the other parties) or as ordered by the Court. Fed.R.Civ.P. 26(e)(1).

Rule 26(e)(2) further specifies that, as to expert witnesses, the duty to supplement applies both to information in the report and information given during deposition. Any additional or corrective disclosures must be done by the time the

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

party's pretrial disclosures under Rule 26(a)(3) are due, which is generally 30 days before trial. Fed.R.Civ.P. 26(e)(2).

When considering whether opinions are beyond the scope of an expert's report, courts do not require "verbatim consistency with the report, but ... allow[] testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report." *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011). Courts consider whether the objecting party had notice of the subject matter of the testimony based on the contents of the report and elaborations made during any deposition testimony. *See  Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 585 F.Supp.2d at 581 (D. Del. 2008).

Potential sanctions are set forth in Rule 37(c), which provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B) and (C) and may include informing the jury of the failure to make the disclosure.

Two express exceptions are clearly stated in the text of Fed. R. Civ. P. 37(c)(1) above: The information may still be introduced if the failure to disclose the required information is substantially justified, or harmless. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also* Fed. R. Civ. P. 37 Advisory Committee's Note (1993) ("Limiting the automatic sanction to violations 'without substantial justification' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

variety of situations."); *Pineda v. City & Cty. of San Francisco*, 280 F.R.D. 517, 520 (N.D. Cal. 2012).

## IV.   **ARGUMENT**

### A.   **EXCLUSION OF PLAINTIFFS' EXPERTS IS PROCEDURALLY INAPPROPRIATE, GIVEN THAT FORD FAILED TO DEPOSE THEM OR PROMPTLY MOVE FOR MORE ADEQUATE DISCLOSURE PRIOR TO SEEKING EXCLUSION.**

A party dissatisfied with the content of an opposing expert's report may seek an order directing the expert to provide the information required by the Rule. If the information sought is still not forthcoming, that party may then move to exclude at trial. Fed. R. Civ. P. 37(c)(1), Fed. R. Civ. P. 26(a)(2)**Error! Bookmark not defined.**.  Typically, courts are loath to exclude an expert's testimony because of an insufficient report *unless* the moving party promptly moved for more adequate disclosures. *See Harvey v. District of Columbia*, 949 F.Supp. 874, 877 (D. DC 1996) (party waited until day before discovery cut-off to challenge inadequate report, just as Ford has done here).

Ford received Plaintiffs' reports on July 2, 2019 and then, rather than take action promptly, waited until the eleventh hour to file its Motion the business day before the expert discovery cutoff. Higgins Decl., ¶ 14. If Ford felt that any deficiencies in the disclosures were harmful or without substantial justification, Ford could and should have promptly sought an order directing Plaintiffs' Experts to provide the information it believed to be deficient. It did not. Higgins Decl., ¶ 13. It did not even attempt to depose any of those experts to ask about any information it believed to be deficient. Higgins Decl., ¶ 12. Ultimately, Ford did not follow the necessary procedural steps as a prerequisite to the instant motion, which is transparently nothing more than gamesmanship – a desperate attempt to handicap

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

1  Plaintiffs and obtain an unfair advantage at trial. As such, the Court is warranted in

2  denying Ford's Motion or, alternatively, allow Plaintiffs and their experts to provide

3  supplemental information if it determines any portions of Plaintiffs' Reports are

4  deficient.

5      **B.   PLAINTIFFS TIMELY SERVED DESIGNATIONS FOR ALL**

6         **EXPERTS**

7         Ford claims that Plaintiffs failed to serve proper "designations" for Dr. Luna

8  in the *Quintero* and *Pedante* cases. This argument is spurious and misleading: as

9  discussed above, Plaintiffs provided Dr. Luna's complete report by the deadline for

10  expert disclosures. Dr. Luna's report in each case is in the form of a 22-page sworn

11  declaration with citations to several thousand pages of attached exhibits. Within the

12  first few paragraphs of that detailed and thorough report, Dr. Luna clearly and

13  unequivocally declared that she was retained by Knight Law Group, on behalf of

14  the Plaintiffs, to testify in their cases. See Dkt. Nos. 443-10, 443-14, Exhs. G, K at

15  ¶¶ 6-7. Dr. Luna then specifically identifies all the matters she was retained to testify

16  about.  *Id.*  Ford provides absolutely no explanation as to how or why this fails to

17  constitute a sufficient "designation." Ford's cited authority only lends credence to

18  the importance of timely identifying and disclosing expert witnesses (which

19  Plaintiffs did), but speaks nothing to whether such identification and disclosure can

20  be within a single declaration by the expert witness, timely served by the Plaintiffs.

21         Indeed, Rule 26 requires only that a disclosure "include" a written report,

22  prepared and signed by the witness who will provide expert testimony. See Fed. R.

23  Civ. P. 26(2)(B). The Rule provides details about the content of the written *report*,

24  but nowhere does the Rule state, hold, or even imply that the report must also

25  include any kind of separate/prefatory pleading by counsel indicating that the

26  witness was "designated." So, while it is obviously conceded that counsel for

27

28

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'**
**EXPERT WITNESSES**

*Quintero* and *Pedante* did not serve a predicate "statement" or some sort of pleading stating they had "designated" Dr. Luna as an expert, Ford has not cited any authority indicating that this is even necessary. Plaintiffs' service of Dr. Luna's report—which clearly indicated that she was retained by Plaintiffs to present evidence and opinions at trial—entirely complied with any "designation" requirements.

Ford can readily determine the identity and opinions of Dr. Luna by virtue of her report, but if the Court determines that this does not constitute an adequate "designation," then Plaintiffs are certainly amenable to supplementing the report with a one-page prefatory pleading by counsel indicating that she has been designated as an expert in the *Quintero* and *Pedante* cases. Either way, Ford has not been prejudiced an iota by the lack of such a pleading: any omission by the *Quintero* and *Pedante* Plaintiffs (if this is even a cognizable "omission") has been harmless, and was done with substantial justification in view of the first few paragraphs of Dr. Luna's declaration/report. Such an "Expert Designation" would not provide any information that is not already reflected in Dr. Luna's report. It should again be noted that Ford has known the identity and opinions of Dr. Luna for over two months but has declined to depose her. See Dkt. Nos. 443-10, 443-14, Exhs. G, K. Ford's unwillingness to depose Dr. Luna for what amounts at most to a trivial procedural error is tantamount to bad faith. Plaintiffs timely served designations for all of their experts, including Dr. Luna.

## C.   PLAINTIFFS SERVED WRITTEN REPORTS FOR ALL DESIGNATED EXPERTS

Ford's accusation that CLR failed to serve expert reports for the *Brown* and *Cannon* cases (Ford's Motion, p. 6, ll. 5-21) is based on claims that these CLR Plaintiffs failed to serve (1) a report for expert Mr. Blasjo in the *Cannon* case; and

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

(2) a report for expert Mr. Micale (whom Ford persistently mis-names as "Michale") in the *Brown* case.  Ford's Motion p. 6, ll. 17-19.

This accusation can be quickly disposed of, because CLR never identified Mr. Blasjo as an expert in the *Cannon* case; and never identified Mr. Micale as an expert in the *Brown* case.  Accordingly, there was no requirement that Mr. Blasjo provide a report for the *Cannon* case and no requirement that Mr. Micale provide a report for the *Brown* case.  It is that simple.

Apparently, in its haste to file the Motion, Ford misread the CLR Plaintiffs' expert designations. Dkt. No. 443-15, Exh. L. That expert designation begins with a collective reference to both the *Cannon* and *Brown* cases, but then separately identifies each of the CLR experts – Mr. Blasjo, Mr. Micale, and the CLR Plaintiffs' third expert, Randall Bounds (about whom Ford raises no objection/issue).

In the individual "expert specific" sections, Mr. Micale is "designated as Plaintiff Mary Cannon's expert." Dkt. No. 443-15, Exh. L, ¶ 7, p. 2, lns. 6-8 of Micale Report. In turn, Mr. Blasjo is "designated as Plaintiff Christi Brown's expert." Dkt. No. 443-15, Exh. L, ¶ 13, p. 3, lns. 6-8 of the Blasjo Report. The CLR Plaintiffs submit that these designations make clear that Mr. Micale was not being identified as an expert in the *Brown* case; and that Mr. Blasjo was not being identified as an expert in the *Cannon* case.  That neither expert provided a report for the case for which he was not identified as an expert confirms this – at least, to any reasonable defendant who was not in a rush to file a motion in an attempt to "jam" Plaintiffs' counsel with a briefing schedule that was further shortened by the Labor Day holiday. Higgins Decl., ¶ 14.

//

//

//

//

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

### D.   PLAINTIFFS' EXPERT REPORTS COMPLY WITH RULE 26

#### 1.   Plaintiffs' Reports Provide a Full and Complete Statement of Opinions, and the Basis and Reasons for Them, In Compliance with Rule 26(a)(2)(B)(i)

To satisfy Rule 26(a)(2)(B)(i), the report should "set forth the substance of the direct examination." *See Jenkins v. Bartlett*, 487 F.3d. 482, 487 (7th Cir. 2007) (quoting Fed. R. Civ. P. 26 advisory committee's notes). Although the report must state the substance of the expert's opinions, it does not need to contain each and every underlying detail as, at trial, the expert is not limited to merely reciting the exact content of the report but may explain and elaborate upon the opinions fairly stated therein. *See Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011); *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (explaining how Rule 26 permits an expert to explain and elaborate on material contained in his or her report).

Ford incorrectly contends that Plaintiffs' Reports fail to state all opinions the experts will express and the bases and reasons for them. Yet, Ford fails to cite to any language in Plaintiffs' Reports (or anything else) suggesting that Plaintiffs' Experts have not stated all of the opinions that they intend to testify to at trial. While all of Plaintiffs' Reports reserve the right to amend the opinions, conclusions, and analyses contained therein if new information is revealed or obtained, such a statement is (obviously) merely a reservation of rights and does not in any way suggest that Plaintiffs' Reports have not stated all the experts' intended opinions. See Dkt. Nos. 443-8-10, 443-12-15, Exhs. E-G, I-L. Notably, Ford's experts make *virtually the same reservations* in their own reports, yet Plaintiffs know better than to leap to the conclusion that Ford's reports do not contain all of the opinions its experts intend to testify to at trial. Higgins Decl., ¶¶ 4-11, Exhs. A-F (excerpts of

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

Ford's witness reports) and G (demonstrative chart rebutting Ford's chart of complaints). Plaintiffs' Reports contain all of the opinions that Plaintiffs' experts will testify to at trial. Ford construes Rule 26 too narrowly, and provides no analysis of what opinions are lacking from Plaintiffs' Reports or how. Ford's assertion that Plaintiffs' Reports do not set forth all opinions is baseless, conclusory, and hypocritical, and should be dismissed out of hand.

Ford next argues that Plaintiffs' expert opinions are "unsupported by the data, and reflect methodology gaps between data and opinion; opinions do not reliably flow from the underlying data; opinions are based upon speculation; opinions expressed include those with the sole purpose of creating prejudice; and opinions are expressed by experts whom are not qualified to render such opinions." Ford's Motion, p. 9, ll. 19-25. To the extent this argument actually raises a Rule 26 "nondisclosure" issue, any such "omission" (and therefore any prejudice to Ford) could have been readily cured by simply deposing Plaintiffs' Experts. *See Chappel v. SBC-Ameritech*, 2007 WL 2076028, *3 (N.D. Ill. 2007) (denying the moving party's motion to exclude an expert from testifying at trial on the basis that any omissions in the expert's report could be cured by deposition). The evidentiary bases and reasons for Plaintiffs' Experts opinions, and any other items Ford believes are missing, could have been easily explored at depositions, but at no point after service of the reports did Ford serve notices of deposition or even request dates for doing so. Ford can adequately prepare for trial with the information already available in Plaintiffs' Reports.

Ford's assertions that Dr. Luna "lacks the qualifications to interpret the technical issues" related to the DPS6 and that her "conclusory" observations regarding the PowerShift transmission are "not based on any methodology, standard or analysis" are not well taken. Dr. Luna is not an engineer and not retained to

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

interpret or analyze engineering issues. As stated in her reports, the *Pedante* and *Quintero* Plaintiffs retained Dr. Luna to testify to: materiality of the problems as they are described by Ford's own personnel; timeliness of disclosures of those problems both to the public and Plaintiffs; corporate business culture, customs and practices; industry standards of disclosing or omitting material information; and valuation of damages. See Dkt. Nos. 443-10, 443-14, Exh. G, K at ¶¶ 6-7. Her report is limited to just those topics and pointedly *does not* make any determination that the DPS6 is defective. Moreover, Dr. Luna's report clearly states that the Plaintiffs *allege* various problems with the PowerShift Transmission and defines those various problems as the "Transmission Defect" for simplicity. *Id* at ¶¶ 10-12. Her analysis of materiality of issues is based on various Ford internal documents, such as emails exchanged between Ford employees written largely in plain English, which she is more than qualified to summarize and interpret based on her credentials. See Dkt. Nos. 443-10, 443-14, Exh. G, K.

Plaintiffs Experts' reports comply with Rule 26(a)(2)(B)(i). Ford offers little to no analysis as to how Plaintiffs' Reports do not comply with this Rule, other than conclusory statements explaining that Ford's attorneys simply do not like the opinions. Those complaints are more properly raised in a *Daubert* motion, if at all, and do not amount to "nondisclosures," so the Motion must be denied.

### 2. Plaintiffs' Reports Include Specific and Sufficient Facts and Data Considered by Plaintiffs' Experts in Forming Their Opinions

Ford mischaracterizes the content of Plaintiffs' Experts' reports by claiming that they "neglect to mention precisely the exact materials they each have reviewed." Ford's Motion, p. 10, ll. 21-22. This is far from the truth. Plaintiffs' Reports include specific citations to Ford's internal documents and used as exhibits

14

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

in depositions of Ford's engineers and executives in this litigation, all of which are subject to a protective order. See Dkt. Nos. 443-9, 443-12, Exhs. F, I. By way of example, Mr. Blasjo's report explicitly relies on these trial exhibits and Ford's own technical service bulletins ("TSBs") including but not limited to Trial Exhibit Numbers 1026 through 1910 and 2346; Mr. Kwasniewicz's deposition exhibits numbered 1 through 8; and TSBs 12-004-05 and 13-4-5. *Ibid*. Mr. Blasjo's report even cites specific pages of Ford's employees' deposition transcripts in support of his opinions. *Ibid*. Mr. Blasjo is not an outlier: Plaintiffs' other experts also cite specific documents in support of their opinions, most notably email correspondence amongst Ford employees (again, all subject to the protective order). See Dkt. Nos. 443-8-10, 443-12-15, Exhs. E-G, J-L. Ford's claim that Plaintiffs' Reports fail to adequately disclose "the universe of specific data and facts considered by them" is disingenuous and blatantly ignores the multitude of highly specific citations to evidence, data, and facts clearly cited by these experts to support their opinions.

All of that said, no expert is required to retain every scrap of paper used in the course of his preparation, only documents that would be helpful to an understanding of his expert opinion or that the opposing party might use in cross-examination. *See Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005). Ford's reliance on *Hilt v. SFC Inc.* ("*Hilt*"), 170 F.R.D. 182, 185 (D. Kansas 1997) for the proposition that Rule 26(a)(2)(B)(ii) requires experts to *specifically* identify the *specific* data or material he or she relied upon is misplaced. *Hilt* actually contains no such holding; the only instance in that ruling of the term "specific" to describe disclosure obligations was in reference to disclosure of prior testimony under Rule 26(a)(2)(B)(v). *Hilt*, 170 F.R.D. at 185 (finding that an expert's statement "identified no specific 'cases' "). To the extent that *Hilt* discusses the "complete statement of … basis and reasons"

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

requirement, it is notable that the expert in that case only stated the generality that she "relied upon [two] depositions." *Id.* at 184.  Moreover, *Hilt* was itself a ruling on a motion to compel further interrogatory responses, not to exclude experts. *Id.* That case is simply not applicable to any analysis of whether Plaintiffs' Reports satisfied Rule 26(a)(2)(B)(ii) under the circumstances presented here.

Finally, a party's compliance with Rule 26(a)(2)(B)(ii) is not a proper subject of a motion to exclude. *See McReynolds v. Sodexho Marriot Serv., Inc.,* 349 F.Supp.2d 30, 43 (D.D.C. 2004) (any failure to produce documents is not a basis for invoking exclusion). Ultimately, Plaintiffs' Experts' reports comply with Rule 26(a)(2)(B)(i). Other than conclusory claims and grievances over jejune technicalities, Ford offers little to no analysis as to how the reports allegedly did not satisfy Rule 26. As such, the Motion should be denied.

### 3.   Rule 26 Does Not Require Reports to Include Exhibits and/or Graphics, if None Are To Be Used by the Experts at Trial

Ford contends that Plaintiffs' Reports violate Rule 26(a)(2)(B)(iii) because they allegedly omit exhibits that Plaintiffs' Experts Mr. Miller and/or Mr. Bounds intend to use at trial to summarize or support their opinions. Ford's Motion, p. 11, ll. 3-4. However, experts are not required to include graphics or exhibits in their reports if they do not intend to use any at trial. There is no requirement under Rule 26 or anywhere else that an expert *must* utilize exhibits or graphics. All Rule 26 requires is that an expert report include any exhibits they will use at trial.

Ford also claims to be aggrieved by an "illegible" graphic on page 6 of Mr. Blasjo's Report in the *Quintero* matter. But Ford fails to mention that this graphic is taken from Ford's own technical service bulletin (TSB 13-4-5) – as it is explicitly labeled in the report. See Dkt. No. 443-9, Exh. F. This is not a meaningful grievance. If the Court finds that Blasjo's Report should be supplemented to

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

increase the "legibility" of this Ford TSB-based graphic, Plaintiff should be allowed to cure it with a supplemental insert. But inasmuch as Blasjo's Report specifically cites the source of the graphic (which again, is taken from a document Ford itself published), this is at most a harmless error and Ford cannot have suffered any prejudice from it.

### 4. Fed. R. Civ. P. 26(a)(2)(B)(v) is Inapplicable: Plaintiffs' Experts Do Not Have Publications to Disclose.

Ford argues that Plaintiffs' Reports violate Rule 26 because Mr. Bounds, Mr. Micale, Mr. Blasjo, and Mr. Miller failed to provide a list of their publications. However, none of these experts have publications. If there are no publications, there is nothing to disclose and there can be no violation under Rule 26(a)(2)(B)(v). Furthermore, there is no requirement under Rule 26 or any Federal or Local Rules requiring that experts must have publications to testify at trial on behalf of a party. As such, Plaintiffs' Reports do not violate Rule 26.

### 5. Plaintiffs' Reports Provide Sufficient Lists of Former Testimony; But If the Court Determines Otherwise, Plaintiff Should be Allowed to Supplement

Ford next argues that Plaintiffs' Reports violate Rule 26 because Mr. Bounds, Mr. Micale, Mr. Blasjo, and Mr. Miller allegedly failed to provide a "complete" list of cases where the experts provided testimony in the last four years. However, Plaintiffs' lists of prior testimony provides Ford with sufficient detail to enable it to obtain the prior testimony of the expert as is required under Rule 26. Dr. Luna's Report is more than sufficient under Rule 26 to allow Ford sufficient detail to enable it to obtain her prior testimony: her list provides the case names, the nature of the cases, the attorneys and law firms name that retained her (one of which is Ford's own lead counsel herein, Gordon & Rees), the venue of the case, and work

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

performed. Dkt. Nos. 443-10, 443-14, Exhs. G, K. Miller's Report also sets forth sufficient detail to enable Ford to obtain prior testimony as it specifically provides the following: full case names; type of testimony taken (e.g., deposition, court, arbitration, etc.); and the dates they occurred including the day, month, and year. Dkt. No. 443-13, Exh. J at pp. 8-10. Similarly, the Reports of Mr. Blasjo and Mr. Bounds also specifically provide the case names, type of testimony taken, and the dates they occurred including the month and the year. See Dkt. Nos. 443-9, 443-12, 443-16, Exhs F, I, L. Finally, while Mr. Micale's Report only provides the case names, such information also provides Ford with sufficient detail to enable it to obtain this testimony, if needed. See Dkt. Nos. 443-8, 443-11, Exhs. E, H. Regardless, in the event that this Court determines any of Plaintiffs' Experts' prior testimony lists to be insufficient, Plaintiffs are more than willing to supplement, including but not limited to providing case numbers and so forth, and should be allowed to do so. This is not grounds for exclusion.

### 6. Plaintiffs' Reports Provide Complete and Sufficient Statements of Compensation

Ford takes issue with the statements of compensation included in Plaintiffs' Experts' disclosures. In the Reports served in the *Quintero* matter, Ford argues that all of the experts (Micale, Blasjo and Dr. Luna) failed to include detail about their rates for "studying" the case. Ford takes similar issue with the reports served in the *Pedante* matter for Micale, Dr. Luna, and Miller – but concedes that Mr. Blasjo's statement of compensation is adequate, even when the statement is identical to his compensation statement in the *Quintero* matter with which Ford takes issue. Dkt. Nos. 443-9, 443-13, Exhs. F, J at p. 9.

Ultimately, all of these expert reports in the *Quintero* and *Pedante* matters provide compensation statements that are sufficiently detailed to satisfy Rule 26.

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS'
EXPERT WITNESSES**

Dkt. No. 443-8, Exh. E at p. 30; Dkt. No. 443-9, 443-13, Exhs. F, J. at p. 9; Dkt. Nos. 443-10, 443-14, Exhs. G, K at ¶ 9. Ford fails to explain or provide any supporting authority as to how the information that was provided is somehow insufficient. As such, Ford's arguments are meritless and its Motion must be denied.

E.   **PLAINTIFFS HAVE COMPLIED WITH THE COURT'S SCHEDULING ORDER**

Ford contends that Plaintiffs violated this Court's scheduling order, but it doesn't explain "how." In fact there is nothing to suggest that Plaintiffs violated the scheduling order. The scheduling order identified July 2, 2019 as the deadline for disclosure of expert reports. On that date, for example, counsel for the *Quintero* and *Pedante* Plaintiffs timely served Plaintiffs' Disclosures of Expert Witnesses Pursuant to the Federal Rule of Civil Procedure, 26(a)(2); with Reports. The *Quintero* disclosures identified Mr. Micale and Mr. Blasjo, attaching their reports. Dkt. No. 443-8, Exh. E; Dkt. No. 443-9, Exh. F, attaching reports of Mr. Micale and Mr. Blasjo. The *Pedante* disclosures identified Messrs. Micale, Blasjo and Miller, attaching their reports. Dkt. No. 443-11, Exh. H; Dkt. No. 443-12, Exh. I; and, Dkt. No. 443-13, Exh. J. On that same date, these Plaintiffs also timely served Dr. Luna's Expert Reports in these matters. Dkt. Nos. 443-10, 443-14 Exhs. G, K. The *Brown* and *Cannon* Plaintiffs likewise timely served counsel for Ford with its expert reports, and Ford does not contend otherwise. Instead, and as detailed above, Ford complains about the content of the reports; and/or complains that a report was not provided in a case as to which the expert was not designated.

Ford's Motion supplies ample case authority concerning the importance of F.R.C.P. 26 (2)(B) and its requirements, but little if any substantive analysis of the actual reports to support Ford's positions. Simply put, Plaintiffs complied with the scheduling order and Ford has not and cannot show otherwise.

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

**F.   RULE 37 SHOULD NOT OPERATE TO PRECLUDE PLAINTIFFS' EXPERT TESTIMONY OR IMPOSE SANCTIONS**

Plaintiffs have complied with the requirements of Rule 26 as set forth above; the few hyper-technicalities Ford complains of are insubstantial, trivial, harmless, and were done with substantial justification. However, if this Court is inclined to find that any defects constitute Rule 26 violations, Ford has still made no showing that it has been prejudiced or that Plaintiffs' experts should be excluded. Any "failures" alleged by Ford are not so willful or drastic as to warrant the exclusion of any experts or any part of their testimony. Nor are such "omissions," which are largely subjective, enough to preclude Plaintiffs' experts even under the Ninth Circuit's supposedly onerous standards. Indeed, courts in this Circuit that have imposed a penalty of expert exclusion under Fed. R. Civ. Pro. 37, have generally done so only when the party failed to produce any expert report at all. See *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101 (9th Cir. 2001)

In *Yeti by Molly*, the court held it was proper to exclude the disclosing party's experts as a sanction where the disclosing party did not provide any report whatsoever until one month before the start of trial in a complex case. *Id.* at 1107. Similarly, in *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998), it was held proper to refuse consideration of expert reports, where the disclosing party filed the report one-and-a-half months late without having sought an extension of time. Other courts have similarly imposed the "automatic" sanction of excluding experts where the disclosing party failed entirely to produce any expert report. *See e.g Fund Commission Service, II, Inc. v. Westpac Banking Co*., 1996 U.S. Dist. LEXIS 11937   at *14 (imposing monetary sanctions and excluding plaintiff's experts where plaintiff's counsel entirely failed to timely provide expert reports.) But here, it is abundantly clear that Plaintiffs' Experts did serve reports

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

timely, and that the reports are complete and detailed, and that any claimed omissions are not only subjective but minor and harmless. This does not warrant exclusion of experts. Ford could have still deposed Plaintiffs' Experts intelligently, since their reports provided clear opinions and conclusions, and explicitly included and referenced the facts and data in support thereof, all as previously discussed. The specificity that Ford demands could be acquired by way of deposition, but Ford simply chose (for tactical reasons, transparently) not to do so. Higgins Decl., ¶ 12.

However, if this Court finds that Plaintiffs' Experts' reports or any of them fail to conform with Rule 26 in any respect, then any such error or incompleteness is harmless. Courts are clear that there exist "two express exceptions [which] ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1)." *Yeti by Molly, supra,* at 1106, emphasis added. Plaintiffs maintain that any errors in these reports were not done without substantial justification and/or were harmless. For the reasons discussed above, Plaintiffs timely served all reports of their designated experts, and that Dr. Luna's declaration/report in and of itself constitutes an "expert designation" sufficient to apprise Ford of her identity, information and opinions.

Plaintiffs similarly provided complete expert opinions for each of the experts with such detail as is required by Rule 26, contrary to Ford's overbroad, conclusory claims. Ford is well aware of the documents it has produced in this litigation and to which Plaintiffs' experts refer, most if not all of which were discussed in depositions of Ford's own engineers and executives. Given the context of these reports, Ford's intimate familiarity with the claims at issue, and the fact that there are only a few pleadings (i.e. a Complaint and First Amended Complaint) in each case, the so-called "vague pronouncements" complained of are readily identifiable

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

by Ford. And even if this Court were to conclude that Plaintiffs' Experts erred in respect of citations to certain evidence in their reports, the errors were harmless since Ford could have cleared up any lack of specificity by simply deposing these experts. Or Plaintiffs can easily supplement the citations should the Court so require. The errors are therefore harmless.

Finally, any delay that resulted is purely the result of Ford's litigation tactics. Plaintiffs timely disclosed their experts and reports on July 2, 2019, per the Court's Scheduling Order. Ford did not serve meet and confer correspondence until July 29, 2019, and then waited until the eve of Friday, August 30, 2019, to serve its motion to compel. Higgins Decl., ¶ 14. It is nonsensical for Ford to argue that *Plaintiffs' actions* prevented Ford from meeting the September 3, 2019 expert discovery cut off: Ford never attempted to depose these witnesses, or to move for further information, and waited to file the instant Motion the eve of Labor Day weekend so that the expert discovery cut-off fell on the same day that offices reopened. Higgins Decl., ¶¶ 12-14. Ford's prejudice, if any exists, is entirely self-inflicted. Under Local Rule 7-3, Ford could have proceeded with a motion to compel as early as Monday, August 5, 2019, after sending its meet/confer. Ford cannot wait to file a motion to compel the last business day before the expert discovery cut-off and then cry foul. This is simply not in good faith.

Accordingly, Rule 37 sanctions should not be imposed and the Court should deny the instant Motion.

//

//

//

//

//

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

V.      **CONCLUSION**

For the foregoing reasons, the Court should deny Ford's Motion to Exclude Plaintiffs' Experts or, in the alternative, allow Plaintiffs to supplement any portions of their reports that the Court deems insufficient.

Dated:  September 6, 2019                      **KNIGHT LAW GROUP, LLP**


                                               /s/ *Russell Higgins*
                                               Steve Mikhov (SBN 224676)
                                               Russell Higgins (SBN 226124)
                                               Attorneys for the KLG Plaintiffs


Dated:  September 6, 2019                      **CONSUMER LEGAL REMEDIES APC**


                                               /s/ *Neil Geileghem*
                                               Michael D. Resnick (SBN 245215)
                                               Neil Gieleghem (SBN 107389)
                                               Attorneys for the CLR Plaintiffs

**PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**