Michael D. Resnick (SBN 245215)
mresnick@clrattorney.com
Neil Gieleghem (SBN 107389)
ng@clrattorney.com
**CONSUMER LEGAL REMEDIES, APC**
The Resnick Building
331 North Beverly Drive, Suite 2
Beverly Hills, CA 90210
Telephone: (310) 213-1398
Facsimile: (213) 210-2196

Attorneys for CLR Plaintiff
MARY CANNON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | **Case No. 2:18-ML-02814 AB (FFMx)** |
| | *Assigned to: Hon. André Birotte, Jr. Courtroom 7B* |
| **THIS DOCUMENT RELATES ONLY TO:** | *Magistrate Fredrick F. Mumm Courtroom 580* |
| *MARY CANNON V. FORD MOTOR COMPANY, ET AL., No. 2:18-cv-04817-AB-FFM* | **CLR PLAINTIFF MARY CANNON'S OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFF'S EXPERT WITNESS, RANDALL BOUNDS** |
| | HEARING DATE: November 13, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B |

*(vertical left margin)* CONSUMER LEGAL REMEDIES, APC — THE RESNICK BUILDING, 331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF RELEVANT FACTS .............................................. 2

III. LEGAL STANDARD ........................................................................... 6

IV. LEGAL ANALYSIS ............................................................................. 8

    A. Mr. Bounds Is Qualified To Opine Regarding Substantial Impairment Of Value And Safety ................................................. 8

    B. Mr. Bounds's Expert Opinions On Unrepaired Defects, And On Impairment of Use, Value, and Safety, Are Reliable. ................ 9

        *i. Mr. Bounds's expert opinion that Plaintiff Cannon's vehicle has "unrepaired defects" is adequately supported.* ...................................................................... 11

        *ii. Mr. Bounds's expert opinion that Plaintiff Cannon's vehicle has substantial impairment in use is adequately supported and reliable.* ............................................... 12

        *iii. Mr. Bounds's expert opinion that Plaintiff Cannon's vehicle has substantial impairment in value is adequately supported and reliable.* ............................................... 12

        *iv. Mr. Bounds's expert opinion that there is a substantial impairment in safety is adequately supported and reliable.* ...................................................................... 13

    C. Mr. Bounds's Opinions Will Assist The Jury ........................... 14

        *i. Mr. Bounds's expert opinions are not "legal conclusions on ultimate issues."* ................................................... 14

        *ii. Mr. Bounds's expert opinions are based on his specialized knowledge and expertise.* ................................................ 17

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

i

D.    Mr. Bounds's Opinions Do Not Violate Federal Rule of Evidence 403 .................................................................................17

E.    Mr. Bounds's Report Satisfies the Requirements of Federal Rule of Civil Procedure 26(a)(2). ...............................................18

V.    CONCLUSION ..................................................................19

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
3311 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONSUMER LEGAL REMEDIES, APC**
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

# TABLE OF AUTHORITIES

## Federal Cases

*Abraham Forouzan v. BMW of North America LLC, et al.*, 2018 WL 6016277 (C.D. Cal. 2018) ........................................................................................8, 9, 14

*Ardestani v. Bmw of N. Am., LLC*, 2018 U.S. Dist. LEXIS 224799 (C.D. Cal 2018) ....................................................................................................................8, 10

*Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 ....................................10

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) ...................2

*Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993)..............passim

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787 (3d Cir. 2017).......................................................................................................................2

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) .......................7, 13

*McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233 (11th Cir. 2005)...........................2

*Perez v. Seafood Peddler of San Rafael, Inc.*, WL 2810144, at *5 (N.D. Cal. 2014) .............................................................................................................................10

*Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)................................6, 7, 9, 13

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).......................................................................................................................7

*Smith v. Family Video Movie Club, Inc.*, WL 1542663, at *6 (N.D. Ill. 2015) ......18

*United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir. 1987).......................14

*United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) ...........................7, 9

*Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017) ..........................2

*White v. Ford Motor Co.*, 312 F.3d. 998 (9th Cir. 2002) ................................7, 9, 13

## Federal Rules

Federal Rule of Civil Procedure 26(a)(2) ..............................................................18

Federal Rule of Evidence 403 ...............................................................................18

Federal Rules of Evidence 702...................................................................6, 14, 18

iii

<u>State Cases</u>

*Lundy v. Ford Motor Company* (2001) 87 Cal.App.4th 472..................................16

*Schreidel v. American Honda Motor Co.* (1995) 34 Cal.App.4th 1242.................16

<u>State Statutes</u>

Civ. Code § 1793.2(d)(2)..................................................................................16

Cal. Civil Code §§ 1790, et. seq.......................................................................15

<u>Other Authorities</u>

CACI No. 3204................................................................................................16

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

## I. **INTRODUCTION**

Defendant Ford's "Motion To Exclude The Testimony And Opinions Of Plaintiff's Expert Witness, Randall Bounds" ("Motion to Exclude") seeks to exclude the expert opinion of a <u>former Ford Field Service Engineer/Senior Master Service Engineer</u>, Randall Bounds, whose professional duties at Ford included (1) conducting inspections of the same DPS6 Powershift Transmission-equipped Ford Focus and Fiesta autos at issue in these cases; and (2) advising Ford of the use and safety issues raised by those defective DPS6 transmissions.[1]

For Ford now to claim, as it does, that Mr. Bounds's expert opinions in this case are "unreliable," or not "based on a validity methodology," etc. only shows the extent to which Ford will go to try to prevent the jury from hearing the truth about the dangerously defective autos at issue in these cases.

Troublingly, in its Motion to Exclude Ford simply ignores the relevant facts – e.g., Mr. Bounds's professional credentials as described above; the facts stated by Mr. Bounds's in his expert report – and cites pages of boilerplate legal authorities that do not apply given those facts.

Last year, the federal district court handling the *Roundup Products Liability Litigation* – Hon. Vince Chhabria, USDC N. Dist. Cal – admitted expert testimony opining that a chemical in Monsanto's Roundup weed killer causes non-Hodgkin's lymphoma. In its ruling (which currently is on appeal to the Ninth Circuit), the district court stated that the Ninth Circuit applies the standards set by *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993) as to expert opinion testimony with a

---

[1] With this Opposition, Plaintiff Cannon is filing a Declaration from Mr. Bounds detailing, among other things, Mr. Bounds's prior duties while still employed at Ford, including inspecting approximately one hundred (100) DPS6-equipped vehicles that were malfunctioning in the same manner, and for the same reasons, as the vehicle at issue in this case.

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

"liberal thrust" favoring admission.[2]  In so ruling, the *Roundup* court distinguished between the Ninth Circuit's more "liberal" approach, and the "more stringent" approach taken by other Circuits (e.g., the Third and Eleventh).[3]

Even without the Ninth Circuit's "liberal thrust" favoring admission, Ford's Motion to Exclude should be denied.  As shown below, Mr. Bounds is more than qualified to testify as Plaintiff's expert, and his opinions are sufficiently reliable and relevant to satisfy the *Daubert* standard.  Furthermore, Mr. Bounds's opinions are well within the scope of his designation and are necessary to assisting the jury with matters outside their understanding.

For all of its citation of *Daubert* and related cases, at its heart Ford's Motion to Exclude rests on Ford's accusation that the anticipated testimony of Mr. Bounds identified in Plaintiff's Expert Disclosure involves "entirely different topics" than those identified in Mr. Bounds's Expert Report.  *See* Motion to Exclude, p. 1, ln. 25 – p.2, ln. 11.  But Ford can make this argument only by reading the Expert Disclosure in an unreasonably restricted and overly narrow way.  Further, if Ford had any questions about the scope of Mr. Bounds's opinions, and the basis for those opinions, Ford could have deposed Mr. Bounds about these issues. Ford, however, failed to depose Mr. Bounds (or any of Plaintiffs' experts).  Thus, to the extent Ford perceives a "disconnect" between the Disclosure and Mr. Bounds's Expert Report, Ford has no one to blame but itself for failing to take the opportunity to clarify matters.

Accordingly, Ford's Motion to Exclude should be denied.

## II.   STATEMENT OF RELEVANT FACTS

On or about September 11, 2015, Plaintiff Mary Cannon purchased a 2015 Ford

---

[2] *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2018 WL 3368534, at *5 (N.D. Cal. July 10, 2018)

[3] *Id.* (*comparing Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017) *and City of Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036 (9th Cir. 2014) *with In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787 (3d Cir. 2017) *and McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233 (11th Cir. 2005).

2

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

Focus equipped with a DPS6 transmission ("Plaintiff's Vehicle"). First Amended Complaint ("FAC"), ¶¶ 205.  Plaintiff subsequently experienced shuddering and a lack of power/hesitation while accelerating, despite Ford's multiple attempts to repair the Vehicle.  *Id.* ¶¶ 215-218.

In preparation for trial, Plaintiff Cannon filed her Disclosures of Expert Witness Pursuant to the Federal Rule of Civil Procedure, 26(a)(2) with Reports, in which Mr. Bounds was designated as one of Plaintiff's experts.  *See* Motion to Exclude, Exh. 1 (Plaintiffs' Disclosures in *Cannon v. Ford* and *Brown v. Ford* of Expert Witnesses Pursuant to F.R.C.P. 26(a)(2); With Reports ("Bounds Disclosure/Report"). As set forth in the Bounds Disclosure/Report, Mr. Bounds will testify at trial as to matters including, but not limited to, Plaintiff's Vehicle and its warranty and repair history; testing procedures; interpretation of results and further diagnostic and repair procedures, both generally and as regards Plaintiff's Vehicle; reasonableness of repair attempts regarding the Plaintiff's Vehicle; his findings during inspection of Plaintiff's Vehicle; and warranty repair procedures. Bounds' Disclosure, p. 1, ¶ 3.

Mr. Bounds has over twenty years of automotive engineering experience, including rigorous failure analysis, diagnosis and inspection. As Ford itself admits, Mr. Bounds has three (3) different degrees: one in automotive repair, another in automotive technology; and a third in operations management.  *See* Motion to Exclude, p. 4, ln. 28 – p. 2; *see also* Curriculum Vitae of Randall Bounds ("Bounds Curriculum Vitae") attached to Bound's Report.  Mr. Bounds has also been employed by Ford Motor Company where he worked as a Field Service Engineer performing vehicle inspections and assisting dealers with vehicle diagnostics on vehicle powertrains and vehicle control systems. He was also certified as a Ford Motor Company Senior Master Service Engineer from 2008-2017.  Bounds Disclosure, p. 1, ¶ 2; *see also* Bounds Curriculum Vitae.

While employed by Ford, Mr. Bounds's duties included serving as a Field Service Engineer/Senior Master Service Engineer for over nine (9) years (between

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

1   2008-2017), during which time Mr. Bounds assisted Ford dealers with vehicle

2   diagnostics on all systems; proving instruction regarding customer handling, process

3   adherence; legal documentation, and training compliance; performing vehicle

4   inspections in dispute cases; <u>and representing Ford in legal cases as an expert witness.</u>

5   *See* Bounds Curriculum Vitae, p. 2.

6           Further, and as documented by the accompanying Declaration of Mr. Bounds,

7   during his tenure at Ford, Mr. Bounds:

8           •   During the 2012 through 2017 timeframe, personally

9   inspected, both within and outside of the litigation context,

10   approximately one hundred (100) vehicles equipped with the DPS6

11   Transmission. As a result of these vehicle inspections, Mr. Bounds

12   personally documented and experienced instances of DPS6-equipped

13   vehicles exhibiting some or all of the following DPS6-related symptoms:

14   stalling, shuddering/juddering, lack of power, lack of gear engagement,

and unintended neutral events. When Mr. Bounds was conducting these

15   DPS6-related vehicle inspections on behalf of Ford, when appropriate,

he would advise Ford's Technical Support Operations Manager along

with Ford's Technical Service Hotline of potential safety and use issues

16   with a particular vehicle that Mr. Bounds experienced while conducting

his investigation.

17   *See* Bounds Declaration, ¶ 5.

18           •   Personally audited the service records of Ford dealerships

19   in approximately one hundred (100) separate instances where Ford

bought back a DPS6-equipped vehicle due to transmission-related

20   complaints. Specifically, after a DPS6-equipped vehicle was bought

back by Ford, Mr. Bounds would personally audit the Ford dealerships'

21   service department records to determine if the DPS6-related repairs

22   performed on that particular vehicle was necessary and/or appropriate.

23   While performing these Ford dealership buyback analyses, Mr. Bounds

necessarily had to review the repair orders generated by the particular

24   Ford dealership, which contained either summary narratives or verbatim

25   accounts taken directly from the customer by the Ford dealership's

service personnel. In reviewing these "customer testimonials," Mr.

26   Bounds often would read a customer's concerns that he or she felt fearful

27   of driving, or was actually scared to drive, the DPS6-equipped vehicle

that was ultimately bought back by Ford.

28

4

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

*See* Bounds Decl., ¶ 6.

Significantly, during Mr. Bounds tenure at Ford as detailed above, no one at Ford, including his direct supervisors, ever told him, or otherwise took the position to his knowledge, that Mr. Bounds was not qualified to form opinions of the type described above; or that his opinions were not "reliable"; were not based on a "proper "methodology"; or otherwise were not the sort of opinions on which Ford could or would rely. *See* Bounds Declaration, ¶ 7.

In forming his opinions in this case, Mr. Bounds similarly reviewed and analyzed the following facts and data: (1) The repair orders for Plaintiff's Vehicle; (2) the results of Mr. Bounds's personal inspection/test driving of Plaintiff's Vehicle; (3) the transcript of Plaintiff's deposition in this case; (4) various internal Ford documents from Ford's internal FMC 360 system that were produced in in discovery; (4) and the case pleadings. *See* Motion to Exclude, Exh. 2 (Bounds's Expert Witness Report), p. 1.

On the basis of his training, experience, and personal review of the relevant documentation and his personal inspection and testing of Plaintiff's Vehicle, Mr. Bounds reached the following "Preliminary Opinions":

A.    The vehicle has unrepaired defects that substantially impairs the use of the vehicle. The client has testified that there have been multiple times where she was scared to use the vehicle, but unfortunately had no other alternatives. She has brought the vehicle into the dealership on numerous occasions in order to attempt to have them resolve the concerns. She was met with doubt and a complete lack of legitimate response to her concerns, including a failure to properly document all of her concerns on the repair orders. These repeat visits and her fear of driving the vehicle clearly show a substantial impairment to the use of the vehicle.

B. The vehicle has unrepaired defects that substantially impair the value of the vehicle. The vehicle in its current state is defective, the clutches need to be replaced and the motor mount needs to be replaced.

A prospective buyer would not likely want to pay full price for the vehicle with the past repair history and needed work. This clearly demonstrates a substantial impairment to the value of the vehicle.

C. The vehicle has unrepaired defects that substantially impair the safety of the vehicle. The clutch slippage on the vehicle is well above the acceptable limit set by FMC. The amount of hesitation, shuddering, and slipping while driving is unpredictable and unsafe to operate. The vehicle needs repair and should be brought back to the dealership to have the clutches and the motor mount replaced. These facts clearly demonstrate a substantial impairment to the safety of the vehicle and its occupants.

*See* Motion to Exclude, Exh. 2 (Bounds's Expert Witness Report), p. 3.  It is these three opinions – substantial impairment of (1) use; (2) value; and (3) safety – that Ford seeks to keep from the jury under a *Daubert* challenge.

## III.   **LEGAL STANDARD**

Federal Rules of Evidence 702 permits expert testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial court is tasked with assuring that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S., 589. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564. The Court's gatekeeper role under *Daubert* is "not

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

CONSUMER LEGAL REMEDIES, APC

THE RESNICK BUILDING

331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citation omitted). In other words, the Court is not supposed "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Id.* Rather, "[r]eliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Primiano*, 598 F.3d at 565 & n.37. If an expert's methodology is sound and his opinions satisfy the requirements of Fed. R. Evid. 702, underlying factual disputes and questions concerning how much weight to give that expert's testimony are questions reserved for the jury. *Id.*

The requirements set forth in Rule 702 most directly address the reliability of the expert opinions. The trial court has broad latitude in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The "test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho*, 526 U.S. at p. 141. For example, in *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000), the Ninth Circuit held *Daubert* factors were inapplicable to a gang expert's testimony because "reliability depend[ed] heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." The *Daubert* factors, with their focus on peer review, publication, and the testability of methodologies, were simply inapplicable in that field of expertise. *Id.* Similarly, in a products liability case, a surgeon's experience with prosthetic elbow replacements rendered him qualified "by knowledge, skill, experience, training, or education" to render an opinion based on the expected minimum lifespan of an implanted prosthetic elbow. *Primiano*, 598 F.3d at 566-67.

Furthermore, an expert need not perform testing in order for his opinion to be deemed reliable—his experience and certifications may be enough. *See, e.g., White v. Ford Motor Co.*, 312 F.3d. 998 (9th Cir. 2002); *Ardestani v. Bmw of N. Am., LLC*,

1   2018 WL 6016956, *7 (C.D. Cal 2018); *Abraham Forouzan v. BMW of North*
2   *America LLC, et al.*, 2018 WL 6016277, at *5 (C.D. Cal. 2018).

3   **IV.   LEGAL ANALYSIS**

4       **A. Mr. Bounds Is Qualified To Opine Regarding Substantial Impairment**
5           **Of Value And Safety**

6       Ford's first argument is a claim that Mr. Bounds is not qualified to opine
7   "regarding substantial impairment of value or safety."   *See* Motion to Exclude, p. 4:
8   27-28.   In essence, Ford argues that Mr. Bounds's opinions regarding substantial
9   impairment of value and safety are unsupported and lack the scientific methodology
10  needed to support them. Motion to Exclude, pp. 4-5.  Ford is wrong on all counts.

11      As an initial matter, *all* of Mr. Bounds's opinions regarding the substantial
12  impairment of Plaintiff's Vehicle are well-supported.  First, and as detailed above,
13  Mr. Bounds relies on repair orders, technical service bulletins, deposition testimony,
14  and the DPS6 exhibits, among other things. This alone would be enough to
15  substantiate his opinions under *Daubert*. *See Daubert*, 509 U.S. at 592 ("[A]n expert
16  is permitted wide latitude to offer opinions, including those that are not based on
17  firsthand knowledge or observation").   Second, and as also detailed above, Mr.
18  Bounds test drove Plaintiff's Vehicle and observed its performance under various
19  conditions.   Bounds Report at p. 4. Mr. Bounds's reliance on the aforementioned
20  documents and test driving Plaintiff's Vehicle sufficiently supports his opinions on
21  substantial impairment. *Ardestani v. Bmw of N. Am., LLC*, 2018 WL 6016956, *7
22  (C.D. Cal 2018). (finding that an automotive expert's opinions was sufficiently
23  supported by repair order records and conducting a test drive of the vehicle).

24      Significantly, nowhere in its Motion to Exclude does Ford identify, with any
25  degree of specificity (or at all) what additional qualifications an expert would have to
26  have – over and above those which Mr. Bounds undeniably has as a former Ford Field
27  Service Engineer/Senior Master Service Engineer who personally dealt with +/-100
28  similarly defective DPS6 equipped vehicles – to opine as to substantial impairment.

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

8

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

1  Plaintiff submits that Ford's silence on this issue is telling.

2  **B. Mr. Bounds's Expert Opinions On Unrepaired Defects, And On**
3  **Impairment of Use, Value, and Safety, Are Reliable.**

4  Ford next contends that, "[r]egardless of his qualifications, none of [Mr.]
5  Bounds's opinions are admissible because they are not reliable." Motion to Exclude,
6  p. 5: 24-25. In turn, Ford bases this contention on a claim that "Mr. Bounds's opinions
7  "constitute nothing more than bald speculation, unsupported by actual facts or data,
8  and untested by any methodology." Motion to Exclude, p. 6:27 –p. 7:1.

9  As shown above, this claim by Ford is demonstrably false, because Mr.
10  Bounds's opinions are based on the facts listed above (e.g., his personal inspection of
11  Plaintiff Cannon's vehicle), and on the same methodologies that Mr. Bounds used
12  while he was a Ford Field Service Engineer/Senior Master Service Engineer. For
13  Ford to claim otherwise only shows Ford's willingness to misrepresent to this Court
14  the facts and the record.

15  Further, testing and/or experimentations is not mandatory to establish an
16  expert's opinions' reliability. *See Primiano*, 598 F.3d at 566-67; *see also Hankey*,
17  203 F.3d, 1169. An expert need not perform experiments or tests as his or her training
18  alone can render him or her competent to read available reports which, in turn, support
19  his or her opinions. *See, e.g., White v. Ford Motor Co.*, 312 F.3d. 998 (9th Cir. 2002).
20  Indeed, in *Forouzan*, the plaintiff alleged violations of the Song-Beverly Act, the
21  Court found that it was enough that the plaintiff's expert sufficiently based his
22  opinions on observations, repair orders, deposition testimony, and documents
23  produced by both parties during discovery. *Abraham Forouzan v. BMW of North*
24  *America LLC, et al.*, 2018 WL 6016277, at *5 (C.D. Cal. 2018). The Court held that
25  an expert may provide reliable opinion testimony through a review of the evidentiary
26  records and the pleadings at issue. Id (citing to *Daubert*, 509 U.S. at 592 ("an expert
27  is permitted wide latitude to offer opinions, including those that are not based on
28  firsthand knowledge or observation"). Similarly, in another case involving violations

9

CONSUMER LEGAL REMEDIES, APC
THE RUSNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

of the Song-Beverly Act, *Ardestani*, the Court found that the plaintiff's expert's review of repair orders and test drive of the vehicle was enough to pass muster under *Daubert. Ardestani v. Bmw of N. Am., LLC*, 2018 WL 6016956, *7 (C.D. Cal 2018).

Mr. Bounds's methodology/analytical approach was and is the same as other California "Lemon Law" expert witnesses, whether retained by a plaintiff consumer or a defendant manufacturer.  This methodology includes: reviewing case-specific documents regarding the Subject Vehicle itself, such as the repair orders reporting concerns and/or attempted repairs; reviewing documents describing known issues in the same (or similar) model vehicle or its components, along with any applicable remedial procedures; reviewing any opposing expert's opinions, if available; and finally, filtering all that information through their lens of automotive knowledge and experience to arrive at an opinion that is grounded on factual data. Although not necessary (especially if the vehicle is no longer in possession of the plaintiff), the expert may also inspect the vehicle at issue. This is exactly what the *Daubert* court considered when it held that the methodology must "be properly applied to facts in issue." *Daubert*, 509 U.S. at 593.

In this case, Mr. Bounds undeniably followed this methodology, and documented above; and Ford's claim to the contrary are demonstrably false.

It bears nothing in this context that nothing prevents Ford from offering its arguments against the credibility of Mr. Bounds's opinions to the jury at the time of trial. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (stating that as long as the process is generally reliable, any potential error can be brought to the attention of the jury through cross-examination and the testimony of other experts); *Perez v. Seafood Peddler of San Rafael, Inc.*, WL 2810144, at *5 (N.D. Cal. 2014) (finding movant's challenges to expert's testimony has "some force but all of their criticisms [sic] may be explored on cross examination").

For example, there is nothing to prevent Ford from arguing to the jury that – despite (1) Mr. Bounds's years of experience/employment with Ford; (2) Ford's

10

promotion of Mr. Bounds to a "Senior Master Engineer; (3) Ford's use of Mr. Bounds as an expert to inspect/evaluate +/-100 DPS6 Powershift-equipped vehicles that suffered from the same defects as those presented by Plaintiff's Vehicle in this case; (4) Mr. Bounds's use of the same Ford-approved methodology in inspecting/evaluating Plaintiff's Vehicle; and (5) Ford's reliance on Mr. Bounds's expert opinions while he was employed by Ford – Mr. Bounds's expert opinions in this case somehow are not credible.  But such a credibility challenge is not the proper basis for a *Daubert* motion.

### i.   *Mr. Bounds's expert opinion that Plaintiff Cannon's vehicle has "unrepaired defects" is adequately supported.*

Within its "reliability" argument, Ford makes a separate sub-argument to the effect that Mr. Bounds's expert opinion that Plaintiff's Vehicle has unrepaired defects allegedly is "not supported by any facts, analysis or methodology."  *See* Motion to Exclude, p. 7: 4-5 (heading; bold omitted).

Once again, Ford simply ignores the facts.  As Ford itself admits, and as detailed above, Mr. Bounds expressly states that, during his inspection, Plaintiff's Vehicle experienced "slippage," "hesitation," and "shuddering" – all of which are the same type of acknowledged/recognized performance problems/defects suffered by other Ford Focus and Fiesta owners.  Further, Mr. Bounds expressly states that his inspection revealed that the clutches and motor mount needed to be replaced.  Again, these are the same type of acknowledged/recognized performance problems/defects suffered by other owners of DPS6-equipped Focus and Fiesta autos.  (Indeed, such Focus and Fiesta autos have become notorious for requiring multiple clutch replacements.)  For Ford to ignore these <u>facts</u>, which Mr. Bounds applied using the same methodology and analysis that he used while serving as Fords' Field Service Manager/Senior Master Service Engineer, only shows Ford's willingness to engage in the same sort of systematic misrepresentations to this Court that Ford committed against the Plaintiff consumers.

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING,
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

11

CONSUMER LEGAL REMEDIES, APC
THE RUSNEK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

### ii. _Mr. Bounds's expert opinion that Plaintiff Cannon's vehicle has substantial impairment in use is adequately supported and reliable._

Within its "reliability" argument, Ford also makes a separate subargument to the effect that Mr. Bounds's expert opinion that Plaintiff's Vehicle has substantial impairment in use allegedly is "unreliable."  _See_ Motion to Exclude, p. 9:25-26 (heading; bold omitted).  Once again, Ford simply ignores the facts.

Ford may take the position that the problems manifested by Plaintiff's Vehicle and documented by Mr. Bounds in his Expert Report – e.g., "slippage"; "hesitation"; "shuddering"; defective clutch; defect motor mounts" – do not substantially impair the use of the Vehicle, even where these problems made Plaintiff Cannon "scared to use the vehicle . . . ."  _See_ Bounds's Expert Report, p. 4 (quoted above).  Plaintiff does not agree, and submits that any dispute on this point does not support a _Daubert_ challenge to Mr. Bounds's expert opinion.

### iii. _Mr. Bounds's expert opinion that Plaintiff Cannon's vehicle has substantial impairment in value is adequately supported and reliable._

Within its "reliability" argument, Ford also makes a separate subargument to the effect that Mr. Bounds's expert opinion that Plaintiff's Vehicle has substantial impairment in value allegedly is "unreliable."  _See_ Motion to Exclude, p. 11: 13-14 (heading; bold omitted).  In this section, Ford argues that Mr. Bounds's opinion re substantial impairment in value is based on "nothing more than his personal thoughts and speculation."  _Id._

Ford cites no legal authority for this section of its argument (other than a concluding reference to _Daubert II_), and this this argument fails factually and legally.  In essence, Ford argues that, to be admissible, Bounds's expert opinion as to substantial impairment in value is admissible only if based on some kind of data-driven market value methodology and/or appraisal.  _See_ Motion to Exclude, p. 12:7-

1    18.  Once again, Ford is wrong.

2         As already discussed above, it is sufficient that Mr. Bounds's opinions are

3    based on his specialized rather than scientific knowledge. *See Kumho*, 526 U.S. at 150

4    (observing that in some cases, reliability concerns may focus upon experience).  As

5    detailed above, Mr. Bounds substantial experience in the automotive field, <u>including</u>

6    <u>his work for Ford as a Field Service Engineer/Senior Master Service Engineer</u>

7    <u>conducting inspections of +/- 100 DPS6 Powershift transmission-equipped vehicles</u>

8    <u>that were suffering from the same defects/problems as those presented in Plaintiff's</u>

9    <u>Vehicle.</u>  Further, and as also detailed above, Mr. Bounds bases his opinions on his

10   observations and test drive during a vehicle inspection, repair orders, and the Ford

11   DPS6 exhibits, among other things.  All of this is more than sufficient to support Mr.

12   Bounds's opinions as to the substantial impairment of the value of Plaintiff's Vehicle.

13   *See Primiano*, 598 F.3d at 566-67.

14              iv.    ***Mr. Bounds's expert opinion that there is a substantial***

15                     ***impairment in safety is adequately supported and reliable.***

16         Ford concludes its "reliability" argument with a separate argument to the effect

17   that Mr. Bounds's expert opinion that there has been a substantial impairment in

18   safety is "unreliable guesswork" not supported by any analysis. *See* Motion to

19   Exclude, p. 12:23-26 (heading; bold omitted).

20         Once again, Ford can make this argument only by purposely ignoring those

21   parts of Mr. Bounds's expert report that make clear that his expert opinion on safety

22   is anything but "guesswork." As stated in his Expert Report, Mr. Bounds personally

23   inspected and tested Plaintiff's Vehicle to evaluate its performance.  Mr. Bounds's

24   background, education, training and experience provide him with knowledge of safety

25   concerns related to the operation of automobiles and renders him more than competent

26   to interpret, summarize, and analyze data sources, such as test results, and use such

27   information to form his opinions.  *See White v. Ford Motor Co.,* 312 F.3d 998 (9th

28   Cir. 2002).

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

---

13

CONSUMER LEGAL REMEDIES, APC

THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

Once again, this section of Ford's argument is devoid of any legal authority. But Ford seems to be arguing that, to be admissible, Mr. Bounds's expert opinion re safety must be based on "science alone."  But there is no such requirement under *Daubert*. *See Abraham Forouzan v. BMW of North America LLC, et al.*, 2018 WL 6016277, at *5 (C.D. Cal. 2018) (holding that an automotive expert's testimony in lemon law case was not excluded due to nonconformity with the science-based reliability factors from *Daubert*).  It is more than sufficient under *Daubert* that Mr. Bounds bases his opinions on his specialized rather than scientific knowledge, review of the many categories of documents, and an inspection and testing of Plaintiff's Vehicle.

## C. Mr. Bounds's Opinions Will Assist The Jury

Ford next argues that Mr. Bounds's opinions should be excluded because they allegedly will not help the jury.  Motion to Exclude, p. 13:22-23 (heading).  Ford opens this section of its Motion to Exclude with a boilerplate recitation of legal authority to the effect that "'the jury will not be helped unless the witness is an expert in the field.'"  Motion to Exclude, p. 14:5-6 (quoting *United States v. Christophe,* 833F.2d 1296, 1299 (9th Cir. 1987).  But as shown above, Mr. Bounds undeniably is such an expert.  "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier."  Advisory Committee Note to Rule 702; *see also United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir. 1987).

From that misdirected beginning, Ford makes two (2) separate arguments, neither of which has any merit.

### i.     *Mr. Bounds's expert opinions are not "legal conclusions on ultimate issues."*

Within its "jury assistance" argument, Ford first makes a separate argument to the effect that Mr. Bounds's expert opinions should be excluded in their entirety because they amount to "legal conclusions on ultimate issues."  *See* Motion to Exclude, p. 14:18-19 (heading; bold & italics omitted).  Once again, Ford is wrong.

14

CONSUMER LEGAL REMEDIES, APC
THE RUSNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

As an initial matter, this argument is not a *Daubert* issue, i.e., a challenge to expert opinion based on claims that the opinion is not relevant and/or is unreliable; and as to which irrelevant/unreliable opinion evidence the trial court should exercise a "gatekeeper" function. *See Daubert,* 509 U.S. at 589. That this is not a *Daubert* issue is confirmed by the absence of any *Daubert* cases in this part of Ford's Motion to Exclude.

Instead, Ford's argument in truth is an untimely/premature motion in limine that conceptually assumes, for the purposes of the analysis, that Mr. Bounds's opinions on substantial impairment in use, value, and safety satisfy *Daubert*. Under Ford's framing of the question, the issue is whether Mr. Bounds's "*Daubert*-Sufficient" opinions nonetheless are inadmissible because they allegedly "embrace the ultimate issue to be determined by the trier of fact, i.e.," whether the Focus has [1] unrepaired defects that [2] substantially impair its use, value, or safety." Motion to Exclude, p. 16:23-25 (bracketed numbering added).

But the issue is even narrower than as framed by Ford, because Mr. Bounds's expert opinions as to the "unrepaired defects" clearly are admissible, for the reasons stated above. Thus, the issue narrows to the question of whether Mr. Bounds's expert opinions are subject to blanket exclusion because, in his Expert Report, Mr. Bounds's opines that these unrepaired defects resulted in substantial impairment. This is a purely legal issue that has nothing to do with the *Daubert* analysis, and Ford makes no showing to the contrary.

Accordingly, the Court should defer ruling on this issue unless and until Ford raises it in the proper manner, i.e., as a motion in limine to which Plaintiff Cannon will be given the proper opportunity to respond. That said, Plaintiff will address, briefly, some of the issues that would have to be addressed in a motion in limine context.

Under California's Lemon Law (the Song-Beverly Consumer Remedies Act), a substantial impairment of the use, value, and/or safety of Plaintiff's Vehicle is a

15

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

material element to Plaintiff Cannon's claims. *See* Civ. Code § 1793.2(d)(2). "Substantial impairment" is determined by an objective test taking into "consideration the 'specific circumstances of the buyer.'" *Lundy v. Ford Motor Company* (2001) 87 Cal.App.4th 472. Accordingly, the jury must "tak[e] into consideration the specific circumstances of the buyer." *Id.* For this reason, Plaintiff Cannon must be able to put forth evidence concerning the impairment to the use, value or safety of the vehicle, which is an ultimate fact that Plaintiff must prove in her case in chief. *See* CACI No. 3204.

The specific circumstances of the plaintiff/buyer are materially relevant to proving the ultimate fact of substantial impairment. How else can a jury decide whether an impairment constitutes a substantial impairment unless they hear Plaintiff's experience about the impairment – <u>or an expert opining about the defective nature of the vehicle?</u>

Accordingly, Plaintiff should not be prohibited from offering testimony and evidence that would support her claim that her use, value or safety was substantially impaired. Such evidence is relevant in that the existence of a substantial impairment is a disputed fact that Plaintiff must establish. Civ. Code § 1793.2 (d)(2).) Evidence, whether testimonial or documentary, that tends to prove the existence of a substantial impairment is therefore relevant and admissible. In *Schreidel v. American Honda Motor Co.* (1995) 34 Cal.App.4th 1242, the court considered the plaintiff's subjective testimony about her experiences, worries, and lost confidence with the vehicle and found that there was substantial evidence to support a finding of substantial impairment, notwithstanding the manufacturer's argument that there was no objective evidence to support a find of substantial impairment. As in *Schreidel*, the testimony of Plaintiff's experiences with substantial impairment to the use, value, and safety of the subject vehicle will support a jury's finding there was substantial impairment.

To the extent there is any issue about Mr. Bounds's use of the word "substantial" in his Expert Report, it can and should be addressed in the context of a

CONSUMER LEGAL REMEDIES, APC
THE RUSNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

motion in limine that is more focused/tailored than the wholesale exclusion of Mr. Bounds's that Ford has improperly tried to slip into its *Daubert* motion. To give an example (and based on the experience of Plaintiffs' counsel in trying such case in California state court), trial courts occasionally resolve the issue that Ford raised by precluding the challenged expert from saying the word "substantial" in front of the jury, such that the expert's opinion testimony is limited to a description of the impairment in other terms. Moreover, typically, a ruling at trial prohibiting use of the specific phrase "substantial impairment" does not preclude expert testimony attaching *magnitude* to the impairment, for example, "significant" or "major," etc.

Such a solution would avoid any concern that Mr. Bounds might be "instructing the jury on the law," as Ford claims. Of course, any such in limine ruling would have to be "reciprocal," i.e., none of Ford's experts or witnesses would be able to testify/opine that the defects that Mr. Bounds documented did <u>not</u> "substantially impair" the use, value, or safety of Plaintiff's Vehicle.

### ii. *Mr. Bounds's expert opinions are based on his specialized knowledge and expertise.*

Within its "jury assistance" argument, Ford also makes a separate argument to the effect that Mr. Bounds's expert opinions are "not based on any specialized knowledge or expertise." *See* Motion to Exclude, p. 17:23-24 (heading; bold & italics omitted). Once again, Ford fails to cite any legal authorities for its position, and Ford's argument ignores the relevant facts.

Plaintiff respectfully submits that it is beyond <u>reasonable</u> debate that Mr. Bounds's expert opinions as to the operation of the DPS6 and the problems associated with it are necessary to the jury understanding Plaintiff's Vehicle's ongoing problems and the many failed repairs attempts performed by Ford. A layperson simply cannot be expected to understand the technical problems with the DPS6 in Plaintiff's Vehicle. For Ford to contend otherwise is simple risible.

### D. Mr. Bounds's Opinions Do Not Violate Federal Rule of Evidence 403

Ford's next-to-last argument [Motion to Exclude, p. 18:15-26] is an improper attempt to use a *Daubert* motion to make unsubstantiated evidentiary objections under Federal Rule of Evidence 403 – specifically that Mr. Bounds's opinions would cause undue prejudice and confusion that outweigh its probative value.  However, Ford provides no analysis whatsoever as to how Mr. Bounds's opinions will be prejudicial to the jury.  If Ford takes issue with any of Mr. Bounds's opinions, it will have a chance to discredit those opinions at the time of trial.  Furthermore, Ford offers nothing more to support exclusion under Rule 403 than a terse rehash of its Rule 702 arguments.  Instructively, an expert witness who survives the gatekeeping standard of Rule 702 is apt to pass muster under Rule 403. *Smith v. Family Video Movie Club, Inc.,* WL 1542663, at *6 (N.D. Ill. 2015) (where "Defendant's entire Rule 403 argument is based upon the premise that [the expert's] methodology is unreliable, . . . the Court also rejects Defendant's Rule 403 argument").  As established above, Mr. Bounds's opinions are sufficiently supported and pass muster under *Daubert* and Rule 702.  Therefore, the Court should not exclude Mr. Bounds's opinions under Rule 403.

### E. Mr. Bounds's Report Satisfies the Requirements of Federal Rule of Civil Procedure 26(a)(2).

Ford's final argument [Motion to Exclude, p. 18:16-26] is a rehash of the same argument that Ford raised in its "Motion to Exclude Plaintiffs' Experts from Testifying for Failing to Comply with Federal Rule of Civil Procedure 26(a)(2)" ("Rule 26(a)(2) Motion") (DKT # 443), filed August 30, 2019.  Indeed, Ford admits as much.  *See* Motion to Exclude, p. 19, lns. 3.

On September 26, 2019, however, this Court denied Ford's Rule 26(a)(2) Motion in its entirety.  *See* DKT # 483.  Thus, Ford is repeating an argument that this Court has rejected.  Accordingly, this argument is no grounds for the relief Ford seeks.

/ / /

/ / /

/ / /

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

CLR PLAINTIFF CANNON'S OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S
MOTION TO EXCLUDE RE EXPERT RANDALL BOUNDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONSUMER LEGAL REMEDIES, APC**
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

## V.    <u>CONCLUSION</u>

For the reasons stated herein, Ford's Motion to Exclude as to Mr. Bounds should be denied.

DATED: October 11, 2019            **CONSUMER LEGAL REMEDIES, APC**

/s/Neil Gieleghem
Michael D. Resnick
Neil Gieleghem
Attorneys for CLR Plaintiff,
MARY CANNON

CLR PLAINTIFF CANNON'S OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S
MOTION TO EXCLUDE RE EXPERT RANDALL BOUNDS

## ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(i)

I, Michael D. Resnick, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories have concurred in this filing.

Executed on October 11, 2019.

By: /s/ Michael D. Resnick

Michael D. Resnick

CONSUMER LEGAL REMEDIES, APC
THE RESNICK BUILDING
331 NORTH BEVERLY DRIVE, SUITE 2, BEVERLY HILLS, CA 90210

CLR PLAINTIFF CANNON'S OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE RE EXPERT RANDALL BOUNDS

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is The Resnick Building, 331 North Beverly Drive, Suite 2, Beverly Hills, CA 90210.

On October 11, 2019, I served true copies of the following document(s) described as

**CLR PLAINTIFF MARY CANNON'S OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFF'S EXPERT WITNESS, RANDALL BOUNDS**

on the interested parties in this action as follows:

SERVICE LIST
MDL #2814
Case No. 2:18-ML-02814 AB (FFMx)

Paul R. Kiesel, State Bar No. 119854
kiesel@kiesel.law
Jeffrey A. Koncius, State Bar No. 189803
koncius@kiesel.law
Nicole Ramirez, State Bar No. 279017
ramirez@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812
Lead/Liaison Counsel for Plaintiffs

Steve Mikhov, State Bar No. 224676
stevenm@knightlaw.com
Russell Higgins, State Bar No. 226124
russellh@knightlaw.com
KNIGHT LAW GROUP LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: 310-552-4444

Fax: 310-552-7973

Attorneys for Knight Law Group Plaintiffs
Payam Shahian, State Bar No. 228406
pshahian@slpattorney.com
Rowena Santos, State Bar No. 210185
rsantos@slapattorney.com
STRATEGIC LEGAL PRACTICES, APC
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel: 310-929-4900
Fax: 310-943-3838
Attorneys for SLP Plaintiffs

Stephen H. Dye, State Bar No. 104385
sdye@schnader.com
Richard J. May, State Bar No. 234684
rmay@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
650 California Street, 19th Floor
San Francisco, CA 94108-2736
Tel: 415-365-6700
Fax: 415-364-6785
Attorneys for Ford Motor Company

H. Paul Efstratis, Esq., State Bar No. 242373
paul.efstratis@lewisbrisbois.com
Lewis Brisbois Bisgaard & Smith LLP
333 Bush Street, Ste 1100
San Francisco, CA 94104-2875
Tel: 415-362-2580
Fax: 415-434-0882
Attorneys for Defendant Ford Motor Company

John M. Thomas, State Bar No. 266842
jthomas@dykema.com
DYKEMA GOSSETT PLLC
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Tel:   734-214-7613
Fax:   734-214-7696
Attorneys for Ford Motor Company in MDL #2814 Cases

1

1

2   Amir Nassihi, State Bar No. 235936
anassihi@shb.com

3   SHOOK HARDY BACON

4   One Montgomery, Suite 2700
San Francisco, CA 94104-4505

5   Tel:   415-544-1900

6   Fax:   415-391-0281
Attorneys for Ford Motor Company in MDL #2814 Cases

7

8   Spencer P. Hugret, State Bar No. 240424
shugret@gordonrees.com

9   Molly J. Mrowka (SBN 190133)

10   mmrowka@grsm.com
GORDON REES SCULLY MANSUKHANI LLP

11   Embarcadero Center West

12   275 Batter Street, Suite 2000
San Francisco, CA 94111

13   Tel:   415-986-5900

14   Fax:   415-986-8054
Attorneys for Ford Motor Company in MDL #2814 Cases

15

16   [X]   (BY E-FILE) The above document was served on the interested party named above by electronic means via E-file.

17
[ ]   (BY MAIL) The envelope was mailed with postage thereon fully prepaid. As

18   follows: I am "readily familiar" with this office's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal

19   Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service

20   is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

21
[ ]   (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand to

22   the addressee.

23   [X]   (FEDERAL) I declare that I am a member of the Bar of this Court.

24          Executed on October 11, 2019, at Beverly Hills, CA.

25                                     /s/ Michael D. Resnick

26

27

28

2
PROOF OF SERVICE