1           UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5    IN RE:  FORD MOTOR CO. DPS6     ) No. ML 18-2814-AB
     POWERSHIFT TRANSMISSION         )
6    PRODUCTS LIABILITY LITIGATION   )
     ─────────────────────────────────)

7

8

9

10         REPORTER'S TRANSCRIPT OF PROCEEDINGS

11          THURSDAY, SEPTEMBER 26, 2019

12                  9:40 A.M.

13            LOS ANGELES, CALIFORNIA

14

15

16

17

18

19

20

21

22   ─────────────────────────────────────────────────

23         **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
            FEDERAL OFFICIAL COURT REPORTER
24         350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA 90012
25             cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFFS:

 3          KIESEL LAW LLP
            BY:  PAUL R. KIESEL, ATTORNEY AT LAW
 4          AND  STEPHANIE TAFT, ATTORNEY AT LAW
            8648 WILSHIRE BOULEVARD
 5          BEVERLY HILLS, CALIFORNIA 90211
            310-854-4444

 6

 7   FOR THE CLR PLAINTIFFS:

 8          CONSUMER LEGAL REMEDIES, APC
            BY:  NEIL GIELEGHEM, ATTORNEY AT LAW
 9          AND  MICHAEL D. RESNICK, ATTORNEY AT LAW
            153 1/2 NORTH ARNAZ DRIVE
10          BEVERLY HILLS, CALIFORNIA 90211
            310-213-1398

11

12   FOR THE PLAINTIFFS:

13          KNIGHT LAW GROUP LLP
            BY:  RUSSELL HIGGINS, ATTORNEY AT LAW
14          AND ROGER KIRNOS, ATTORNEY AT LAW
            1801 CENTURY PARK EAST E
            SUITE 2300
15          LOS ANGELES, CALIFORNIA 90067
            310-552-2250

16

17   FOR THE PLAINTIFFS:

18          RICHARD C. DALTON LLC
            BY:  RICHARD C. DALTON, ATTORNEY AT LAW
19          (VIA TELEPHONE)
            1343 WEST CAUSEWAY APPROACH
20          MANDEVILLE, LOUSIANA 70471
            (985) 778-2215

21

22   FOR THE PLAINTIFFS:

23          STRATEGIC LEGAL PRACTICES
            BY:  JACOB CUTLER, ATTORNEY AT LAW (VIA TELEPHONE)
            1840 CENTURY PARK EAST
24          SUITE 430
            LOS ANGELES, CALIFORNIA 90067
25          310-929-4900
```

```
 1    APPEARANCES OF COUNSEL:  (Continued)

 2            FOR THE DEFENDANT:

 3            DYKEMA GOSSETT PLLC
              BY:  JOHN M. THOMAS, ATTORNEY AT LAW (VIA TELEPHONE)
 4            2723 SOUTH STATE STREET
              SUITE 400
 5            ANN ARBOR, MICHIGAN 48104
              734-214-7613
 6
      FOR THE DEFENDANT:
 7
              SHOOK, HARDY & BACON L.L.P.
 8            BY:  AMIR NASSIHI, ATTORNEY AT LAW
              AND  FRANK P. KELLY III, ATTORNEY AT LAW
 9            AND  JOAN R. CAMAGONG, ATTORNEY AT LAW
              AND ANDREW L. CHANG, ATTORNEY AT LAW (VIA TELEPHONE)
10            ONE MONTGOMERY TOWER
              SUITE 2700
11            SAN FRANCISCO, CALIFORNIA 94104
              415-544-1900
12
      FOR THE DEFENDANT:
13
              GORDON & REES LLP
14            BY:  MOLLY MROWKA, ATTORNEY AT LAW
              AND AMY MACLEAR, ATTORNEY AT LAW (VIA TELEPHONE)
15            275 BATTERY STREET
              SUITE 2000
16            SAN FRANCISCO, CALIFORNIA 94111
              415-986-5900
17

18

19

20

21

22

23

24

25
```

```
 1           LOS ANGELES, CALIFORNIA; THURSDAY, SEPTEMBER 26, 2019

 2                          9:40 A.M.

 3                            - - -

 4           THE CLERK:  Calling Case ML 18-2814, in Re Ford

 5   Motor Company DPS6 Powershift Transmission Products

 6   Liability Litigation.

 7           Counsel, please state your appearances.

 8           MS. TAFT:  Good morning, Your Honor.

 9   Stephanie Taft, lead liaison counsel for plaintiff.

10           THE COURT:  Good morning.

11           MR. GIELEGHEM:  Good morning, Your Honor.

12   Neil Gieleghem and Michael Resnick for the CLR plaintiffs.

13           THE COURT:  Good morning.

14           MR. RESNICK:  Good morning, Your Honor.

15   Michael Resnick.

16           THE COURT:  All right.

17           MR. HIGGINS:  Good morning, Your Honor.  Russell

18   Higgins, Knight Law Group for the Knight Law Group.

19           THE COURT:  Good morning.

20           MR. KIESEL:  Your Honor, good morning.  Paul

21   Kiesel, lead liaison counsel for plaintiffs.

22           THE COURT:  Good morning.

23           MR. KIRNOS:  Good morning, Your Honor.

24   Roger Kirnos from Knight Law Group on behalf of the Knight

25   Law plaintiffs.
```

```
 1              THE COURT:  Good morning.
 2              And we have one other person from the plaintiffs
 3   on the phone, I think.
 4              MR. DALTON:  Yes, Your Honor.  Richard Dalton on
 5   behalf of plaintiffs.
 6              THE COURT:  Good morning.
 7              Let's hear from the defense.
 8              MR. NASSIHI:  Good morning, Your Honor.
 9   Amir Nassihi for Ford Motor Company.
10              THE COURT:  Good morning.
11              MR. KELLY:  Good morning, Your Honor.  Frank Kelly
12   for Defendant Ford.
13              THE COURT:  Good morning.
14              MS. MROWKA:  Good morning, Your Honor.
15   Molly Mrowka for Defendant Ford.
16              THE COURT:  Good morning.
17              MS. CAMAGONG:  Good morning, Your Honor.
18   Joan Camagong for Ford.
19              THE COURT:  Good morning.
20              And who do we have on the phone?
21              MR. THOMAS:  Morning, Your Honor.  John Thomas for
22   Ford Motor Company.
23              THE COURT:  Good morning.
24              MR. CHANG:  Good morning, Your Honor.
25   Andrew Chang for Ford Motor Company.
```

```
 1              THE COURT:  Good morning.
 2              MS. MacLEAR:  Amy Maclear on behalf of Ford.  Good
 3    morning, Your Honor.
 4              THE COURT:  Good morning.
 5              All right.  So we've got a couple things that we
 6    need to deal with.  Why don't we start with, first, the
 7    motion for judgment on the pleadings in this
 8    Jonathan Nichols versus Ford Motor.
 9              I guess I'll just start off.  I mean, I didn't
10    want it to start this way.  Why are we dealing with this
11    now?  I mean, this is not one of the Ford cases that are set
12    for trial.  I thought it was pretty clear in our scheduling
13    order that, if we are going to bring motions on the -- that
14    cases that aren't going to trial, that should be done with
15    permission of the Court.  I don't think there was a request
16    made.  I mean, we've got a trial coming up in November 5th.
17    Why are we dealing with this now?
18              So who from Ford wishes to be heard as it relates
19    to this?
20              MR. NASSIHI:  Your Honor, this is Amir Nassihi.
21    And the reason why this was filed, there was some
22    discussions with the Court where the Court had raised the
23    issue as to whether there was some common issues that might
24    help with more global resolution in this litigation.
25              And we had raised with the Court that a critical
```

```
 1    issue that would help pave the way with a wider scale
 2    resolution is to get a ruling on the election of remedies
 3    question and that we would look for a vehicle to bring that.
 4              THE COURT:  How does this motion help resolve any
 5    of these cases?  You're saying my resolution on this
 6    motion's going to assist in the resolution of a bunch of
 7    other cases?
 8              MR. NASSIHI:  Correct, Your Honor.
 9              THE COURT:  I don't see it.
10              MR. NASSIHI:  If I may explain.
11              The election of remedies doctrine which we've
12    previously raised with the Court is whether plaintiffs are
13    entitled to -- in the same case to seek and obtain all the
14    remedies under warranty, refund for their vehicle, and
15    whatever they choose under the warranty theory and get that
16    and get fully compensated and made whole by that and then on
17    a separate track seek fraud damages for that same injury,
18    and the fraud damages would be essentially for not getting a
19    working vehicle, the same as they'd already been compensated
20    for in the Song-Beverly track.
21              Now, this has been a central issue in terms of
22    posing as an obstacle for resolution of these cases.  And
23    you've heard this over and over again from plaintiffs where
24    they've complained that Ford -- that settlement isn't
25    possible because Ford won't pay, quote, "fraud damages," and
```

```
 1    Ford's perspective is Ford won't pay duplicative damages.

 2              What you're going to be compensated on -- you get

 3    an election between which method of compensation you get.

 4    You either get your compensation under a Song-Beverly remedy

 5    or under the fraud track, but you cannot get both.

 6              And plaintiffs have several times raised this with

 7    the Court that this is a primary obstacle to any kind of

 8    more global resolution.  And that's why, when this Court

 9    asked whether there was a kind of common legal question or a

10    legal question that would help with the resolution of these

11    cases on two separate hearings or status conferences, we

12    talked about the election of remedies and the duplicative

13    damages issue, which is posing a significant obstacle to

14    parties talking about settling cases because -- I mean, Ford

15    just doesn't see why it has to pay duplicative damages twice

16    over for the same harm.

17              THE COURT:  I guess let me ask -- and maybe my

18    memory is fuzzy on this.  At some point, did you say you

19    were going to file this motion or make a request to file

20    this motion?

21              I mean, I heard a lot of chatter about -- I mean,

22    every time we're in here, you guys are complaining about one

23    side or the other and the reasons why you can't settle.  I'm

24    just -- again, maybe I missed something.  Was there some

25    request or some notice that, "Hey, we're going to file this
```

```
 1   motion because we think it will help resolve these other

 2   cases"?

 3              MR. NASSIHI:  Your Honor, yes.  And the chatter

 4   has been on this issue.

 5              THE COURT:  So tell me when that occurred.  You

 6   seem to be looking at a document.

 7              MR. NASSIHI:  I am.

 8              THE COURT:  Is that --

 9              MR. NASSIHI:  I'm looking at --

10              THE COURT:  -- a transcript?

11              MR. NASSIHI:  I'm looking at page 13 of our reply

12   brief where on November 7th this Court invited both sides to

13   identify some common issues that can be decided, and we

14   talked about duplicative damages there.  And then, at the

15   December 12th, 2018, status conference too, we talked about

16   election of remedies and --

17              THE COURT:  I know we talked about it.  I'm just

18   saying did the Court say, "I need to you file a motion" -- I

19   mean, I just -- that's what I am just trying to understand.

20   Because I'm trying to get ready for these trials.  And I got

21   to tell you, given the activity that's gone on, this is one

22   of those bad cycles in this case.  You guys are not trying

23   to settle this case.  So we need to just put folks in the

24   box and make the call.

25              And so I guess I'm frustrated because I don't
```

```
 1    recall saying, "Okay.  Go ahead and file a motion on this

 2    issue."  There was a lot of chatter about it, but I don't

 3    recall that.  If I did, you'll let me know.

 4              But the notion that somehow this is going to help

 5    resolve things, given the tenor of where we stand now, it

 6    seems somewhat disingenuous, quite frankly, because you guys

 7    are very far apart.  I mean, the only way this is going to

 8    get resolved is by putting eight in the box and letting them

 9    make the decision.

10              MR. NASSIHI:  Well, we're not far apart.  The far

11    apart issue is whether there's duplicative damages.  And to

12    us it's a question of law whether plaintiffs can get --

13              THE COURT:  I think the other side -- I think what

14    you said earlier is the other side disagrees.  Right?

15              MR. NASSIHI:  And it's a question of law --

16              THE COURT:  Sounds like it's far apart.

17              MR. NASSIHI:  But it's a question of law whether

18    plaintiffs can get duplicative damages.  If the Court agrees

19    on that question of law that they cannot get duplicative

20    damages, then that's been the obstacle to settlement.

21              The plaintiffs have said that over and over again,

22    that the obstacle to settlement, from their perspective, is

23    that Ford won't pay the duplicative fraud damages.

24              And that is a pure question of law whose

25    resolution would, frankly, have a tremendous impact on this
```

```
 1   because this has been the central obstacle.  Whether we have
 2   to pay a full refund for the vehicle and make plaintiff
 3   whole but -- under the warranty theories, but then again
 4   have to pay for any diminution in value of the vehicle that
 5   they've already got a full refund for and the damages aflow
 6   from the fraud theories.  And so that's been a big obstacle.
 7            And this is why we've several times raised with
 8   plaintiffs -- and we never received a response to this.  We
 9   advised we plan to bring this motion and we end up filing
10   this motion.
11            We gave plaintiff substantial notice about this.
12   We even wrote to them -- we wrote to them throughout July
13   and August, and we never received a response.
14            THE COURT:  I get it.  I get your position.  I
15   just -- I don't -- this just came out of the blue.  I mean,
16   you can say all you want about these tangential discussions
17   we had.
18            MR. NASSIHI:  Right.
19            THE COURT:  There's no indication that this was an
20   issue that was going to help break the slug, if you will, of
21   this case.  And so --
22            MR. NASSIHI:  And we can certainly defer ruling on
23   this, Your Honor.
24            THE COURT:  We are going to defer ruling on this.
25            MR. NASSIHI:  We view this as a 12(b)(1) issue
```

```
 1    that could be raised any time under 12(b)(1) theory.  But we
 2    can certainly defer ruling.
 3              But I will repeat that this issue would need to be
 4    addressed because this is a central obstacle to resolution
 5    and the Courts -- our view is that the Courts are clear --
 6    you cannot get the same duplicative damages, and that's
 7    what's preventing these cases from resolving.
 8              Your Honor has seen examples of the settlement
 9    offers Ford has made, which would fully compensate plaintiff
10    on one track of damages but not the other.
11              So the issues remains that plaintiffs have to --
12    from our perspective, answer to that legal question needs to
13    be provided by this Court as to whether election of remedies
14    does apply and that plaintiffs can elect one remedy or the
15    other remedy.
16              THE COURT:  All right.  Well, my intention is to
17    defer ruling on this because I don't think it has a bearing
18    on the four cases that we have going to trial.  And so I'm
19    going to defer ruling on it.
20              If the plaintiff wishes to say anything, speak
21    now.
22              Mr. Gieleghem.
23              MR. GIELEGHEM:  Your Honor, contrary to whatever
24    reputation I may have acquired with the Court, unless the
25    Court has any questions it wishes to direct to me, whether
```

```
 1    about our pleadings or in response to the representations
 2    that Mr. Nassihi just made, I'd be happy to submit on what I
 3    understand to be the Court's tentative.
 4              THE COURT:  I don't have any questions.
 5              MR. GIELEGHEM:  Thank you, Your Honor.
 6              THE COURT:  All right.  Let's move on to the next
 7    motion, Ford's motion to exclude the plaintiffs' witnesses.
 8              Again, you know, this falls in that category.  I'm
 9    just -- it just strikes me that we're wasting a lot of time
10    and your clients' respective money on this motion.  I look
11    at it.  Now, granted, look.  There are some issues that I
12    want to talk about with the plaintiff, and I have some real
13    concerns about certain aspects of it.
14              You know, Rule 26 does have requirements, and I
15    recognize that.  I question whether or not these
16    requirements are going to be, sort of, the smoking guns that
17    either side needs in order to prepare for the case.
18              Both sides, sort of, have unclean hands as it
19    relates to this.  But the part that gets my ire, quite
20    frankly, is the fact that I can't believe that this could
21    not have been discussed informally.  And it looks as if Ford
22    made a request and the plaintiffs, appears, just ignored it.
23    And I'll have been not to honest.  I have in my notes why
24    shouldn't I just sanction the plaintiffs for just ignoring
25    and then saying, "Ah, let the judge deal with it" because
```

```
 1    that's, in essence, what it appears like?  Because the
 2    response is basically, well, these are technical sort of
 3    violations, and we can resolve them.
 4              If that were the case, why not have done so to
 5    avoid the filing of motions, again, at both your clients'
 6    expense?
 7              And so -- and I think it was Mr. UCLA had sent a
 8    letter on July 29th, even though the players in their papers
 9    seem to suggest there's some kind of ambush.  I'm not sure I
10    see that at all.
11              So, you know, there's a lot of obvious frustration
12    from the Court because I just don't know why the parties
13    couldn't have met and conferred.  And, I guess, if that's
14    the way it's going to be, we're going to have a rough couple
15    trials because I'm telling you all now I do not expect to
16    see this happen at all going forward with respect to any
17    other witnesses.
18              Both sides know what Rule 26 requires.  Get it
19    done or you run the risk of having your witnesses excluded.
20    It's that simple.
21              So with that, Ms. Mrowk- -- I'm sorry, tell me how
22    to pronounce your last name.  I try to be sensitive to that.
23              MS. MROWKA:  Mrowka (pronouncing).
24              THE COURT:  Mrowka.  You've drawn the short straw
25    in this.  So welcome to this party.
```

```
 1            MS. MROWKA:  All right.  Well, Your Honor is
 2   correct, a letter -- meet and confer letter went to
 3   plaintiffs' counsel at the end of July and we included a
 4   chart delineating all the issues and the deficiencies with
 5   the reports, and we received absolutely no response.  They
 6   just completely ignored us.
 7            And so under the rules, we're entitled to
 8   mandatory exclusionary sanctions because these reports are
 9   deficient.  And in fact, in their own opposition, they admit
10   as much, that there are problems with these reports, there
11   are deficiencies.  They do --
12            THE COURT:  But as it relates to the -- and I'm
13   going to put in quotes, "deficiencies" are -- and, again, I
14   said this earlier.  Rule 26 has these requirements.  I get
15   that.  But what is -- should be good for the goose should
16   also be good for the gander.
17            I mean, you have expert witnesses that arguably
18   don't comply with these rules.  I look at one report -- I
19   think I'm going to butcher this witness' name.  Is it
20   Dr. Kwasniewicz?
21            MS. MROWKA:  Oh, right.  Kwas.
22            MR. KELLY:  Known by all parties as Kwas.
23            THE COURT:  All right.  So --
24            MR. KELLY:  Please feel free to call him Kwas now.
25            THE COURT:  I'm going for call Kwas Kwas.  Okay?
```

 1          So Kwas in the report says, "I refer to material

 2    produced by Ford in discovery in the MDL."  That's pretty

 3    broad also.  So my point is if, the parties want, we can

 4    nitpick on both sides as to adherence to the letter of

 5    Rule 26.

 6          And so there's a part of me that says, okay.

 7    Watch what you wish for.  Does that mean I should exclude

 8    Dr. -- or Kwas because of that seemingly -- that violation,

 9    if you will, of Rule 26?

10          MS. MROWKA:  No, because they never raised any

11    issue with any of our expert reports until after we filed

12    the motion.  So they didn't have an issue with any of our

13    expert reports.

14          THE COURT:  But they might argue, look -- I

15    wouldn't be surprised if I hear the argument, "We're trying

16    to be civil," you know, sarcastic sort of groan with that,

17    but "We're trying to be civil and so we didn't want to play

18    that game."

19          And so your response is, "Well, if you don't raise

20    it, sobeit"?

21          MS. MROWKA:  Well, here's the thing.  You know,

22    the rules are very clear-cut, and these are onerous burdens,

23    and they have a responsibility, and they can't shift it on

24    to Ford to provide reports that are compliant with what the

25    rules require.

```
 1          And so if they don't want to do it and we tell

 2   them, "Hey, these are the deficiencies, here they all are,

 3   you know, sub 1, sub 2, sub 3, sub 4, sub 5, your expert

 4   reports are deficient for all these reasons" and then they

 5   just choose to ignore it for 30 days and wait until we file

 6   a motion, expert discovery closes, it's like, what are you

 7   doing, you know?

 8          THE COURT:  So what happens then at a trial when

 9   they, in response to this, file a motion in limine saying we

10   should exclude Kwas because of this failure?

11          MS. MROWKA:  Well, they would meet and confer

12   prior to that, and then we would resolve the issues.  We

13   wouldn't ignore a meet and confer.

14          THE COURT:  All right.  Thank you, Ms. Mrowka.

15          Let me hear from the plaintiff.  And just --

16   again, just so the record is clear, you can identify

17   yourself.

18          Mr. Resnick --

19          MR. HIGGINS:  Thank you.

20          THE COURT:  -- Mr. Higgins.  Sorry.

21          MR. HIGGINS:  Russell Higgins.

22          THE COURT:  I'm sorry.

23          MR. HIGGINS:  Russell Higgins --

24          THE COURT:  It's one of those mornings.

25          MR. HIGGINS:  -- Knight Law Group for the
```

1  plaintiff.

2           It's true that Mr. Hugret had a consistent e-mail

3  letter.  It was to, I think, Mr. Kiesel, myself and to the

4  CLR plaintiffs.  I -- it looks like in retrospect each of us

5  thought that somebody else would take care of it and then

6  nobody ever did.

7           As far as the meeting -- as far as responding or

8  doing a meet and confer about the specific Rule 26 issues,

9  it just never got done.  That's true.  And so --

10           THE COURT:  So you concede on the motion.

11           MR. HIGGINS:  I do not concede on the motion.  I

12  concede on the meet and confer issues, and I would submit to

13  the mercy of the Court with respect to that.

14           What I can tell the Court is, under -- every time

15  Ford has ever attempted to meet and confer about anything,

16  there literally is not a single thing that can be done to

17  stop them from filing a motion.

18           THE COURT:  Well, but you can say that, but in

19  this case there was reason to file a motion.  There was no

20  response.

21           MR. HIGGINS:  With respect to the, as the Court

22  said, quote/unquote, "deficiencies," we take issue with

23  Ms. Mrowka's characterization that we've conceded that these

24  are -- somehow conceded that these reports are deficient.

25  They're not.  They're extremely detailed.  They're --

```
 1              THE COURT:  But -- I mean, look.  They are
 2    detailed.  And yes, but you are -- I mean, you are
 3    acknowledging that they don't contain the information that
 4    Ford has requested, the specific information.  They don't.
 5    I mean, it's in the papers.  I mean --
 6              MR. HIGGINS:  Let's talk about the requirements of
 7    the rule -- a complete statement of the opinions of the
 8    expert and the basis therefor.  We think that that's
 9    satisfied.  In what way is it not?
10              THE COURT:  Okay.  What about the facts or data
11    considered by the witness in forming them?
12              MR. HIGGINS:  Every single one of these witnesses
13    has cited specific exhibits, has cited them either in
14    footnotes or in line in the text.  They have taken portions
15    and quoted them in the reports.  There's -- there is a --
16    there are reams of evidence that is cited by each one of
17    these experts.
18              What they've done is they've noted one little
19    passage on the -- in the initial summary of the opinions
20    that says, "I've relied on these things in a broad term."
21    But then, when you read the rest of the report, every single
22    page includes interlineated references to Ford's internal
23    documentations, e-mails back and forth, citations to page
24    and line of deposition transcripts of Ford's experts -- or
25    I'm sorry, not experts but Ford's engineers and executives.
```

```
 1            THE COURT:  What about like, for example,
 2   Ms. Luna's report where she just gives sort of a general,
 3   sort of, description?  I think she's the one that says,
 4   typically in these cases we look at.  Or maybe I got her
 5   confused with someone else.  Let me pull my notes.
 6            MR. HIGGINS:  Well, Ms. Luna's provided a 22-page
 7   declaration under penalty of perjury.  Each -- virtually
 8   every single page has footnotes at the bottom that
 9   indicate -- that cite to the things that she relies on.
10            And I think it's important to note that Dr. Luna's
11   not an engineer.  She's not here to talk about whether the
12   DPS6 or any iteration of it is defective or any of those
13   things.
14            She's here to talk about disclosures.  She's
15   talking about the hierarchy within Ford Motor Company, which
16   people knew what at what time.  She is principally -- to be
17   candid, she's here for punitive damages.
18            She's going to testify about Ford's net worth, the
19   proportion of Ford's net worth that a punitive damages
20   verdict would represent, and things like that.  That's --
21   for the most part, we rely on Dr. Luna for penalty
22   phase-type evidence.
23            So the proposition that she's not qualified to
24   render opinions about whether -- about whether a particular
25   problem with the transmission --
```

```
 1            THE COURT:  Yeah, but that -- I guess -- look.
 2    That's somewhat of a different issue.  Look.  And I didn't
 3    talk about this, but I should have mentioned earlier.  Look.
 4    The Daubert aspects of this motion, I'm not going to deal
 5    with that today.  It's set for October 25th.  I'm not sure
 6    why it's even addressed.
 7            I'm more focused with what I view as sort of
 8    gamesman- -- unnecessary gamesmanship on both sides.  We
 9    have a trial set on November the 5th.  I would rather focus
10    on that than deal with whether or not a lawyer responded to
11    another lawyer's letter when you've been in litigation for
12    the last how many months or years?
13            I mean, that just seems absurd.  And, you know,
14    have all these folks fly in, come in to deal with this.  I'm
15    sorry.  I mean, I am frustrated just because it's like we
16    got a lot of other things that we need to be dealing with,
17    and we are just wasting a morning.
18            MR. HIGGINS:  We couldn't -- as far as the
19    plaintiffs are concerned, we couldn't agree more.
20            THE COURT:  But you caused it and are not
21    acknowledging that.  It's just you're like, "Yeah, we did
22    it, but we really -- but, in essence, what they're
23    complaining about is a nonissue."
24            If that were the case, pick up the phone and say
25    that and deal with it as opposed to having to file these
```

```
 1    motions that I got to go through and get ready for a

 2    hearing.  I mean, it just -- I thought we were past this but

 3    apparently not.

 4              And so that's why I want to be clear on both

 5    sides.  Get your stuff together going forward, because, if

 6    there is another allegation, technical or not, the expert's

 7    gone, period, on both sides.

 8              So that's how we're going to do this from now on

 9    because you all are having difficulty sort of working

10    through these issues.

11              So if you don't comply with the letter and the

12    spirit of Rule 26 going forward, then that expert's going to

13    be excluded on -- and I like -- I am not -- I much prefer to

14    try the case on the merits, but you are all putting me in a

15    position where, if we have to go by the technical rules and

16    do that, then that's what we'll do.

17              MR. HIGGINS:  Thank you.

18              THE COURT:  Mr. Gieleghem.

19              MR. GIELEGHEM:  Your Honor, if I can briefly add

20    one thought about what I'm going to characterize as the

21    communication issue.  And we certainly take to heart what

22    the Court has said about communicating.  But I will

23    represent to Your Honor that, since about March of this

24    year, Ford has systematically taken the position that it

25    refuses to meet and confer with CLR as to, first, anything
```

1   that Ford unilaterally claimed was a global issue and --

2   which seems to cover anything Ford does not want to talk

3   about and as to those issues, any such communications have

4   to be done through the PLLC, Mr. Kiesel.

5           And that impasse or that kind of unilateral

6   decision by Ford as to what it will or will not talk to CLR

7   about resulted in the plaintiffs getting together and coming

8   up with a proposed case management order, number one, that

9   is referred to in the status conference statement, which

10  would have resulted in Mr. Resnick being made part of the

11  management committee so that, among other things, Ford would

12  have to talk to us about these issues.  And lo and behold,

13  Ford files a 20-plus page objection to that.

14          So do we bear some of the responsibility for not

15  responding -- we, CLR, to not responding to Mr. Higgins's

16  letter?  Well, maybe.  And certainly, I take the Court's

17  admonishment to heart.  But, you know, this gamesmanship --

18  and that's exactly what it is -- has a longer history and it

19  is absolutely not solely the fault of the plaintiffs.

20          THE COURT:  All right.  Thank you.

21          Yes, Counsel.

22          MR. KELLY:  Thank you, Your Honor.  Could I just

23  bring this motion and connect it to the case that's coming

24  up November 4th and explain to Your Honor --

25          THE COURT:  November 5th.  Okay.  Go ahead.

```
 1              MR. KELLY:  November 5th.  Yes, Your Honor --

 2    explain to you why the consequence of --

 3              THE COURT:  Why don't you step a little closer to

 4    the microphone so we can all hear you.

 5              MR. KELLY:  Frank Kelly for Ford.  In the Pedante

 6    case set November 5th, Mr. Micale and Mr. Miller filed

 7    expert reports for the plaintiff.  Mr. Micale is the

 8    technical expert, one of them, for the plaintiffs.

 9              And in his report, he made reference to testing

10    that he did on the vehicle and repairs that had been done on

11    the vehicle after the joint inspection that had been

12    arranged by Ford.

13              Those references don't have any supporting

14    documentation in his report.  He makes reference to a repair

15    in April of 2019 where the clutch and the transmission

16    control module were removed and replaced.

17              Now, that's after the March joint inspection when

18    Ford and the plaintiffs' expert confirmed that there was no

19    problem with the vehicle.

20              So that -- we get first notice of it in these

21    reports.  But there's no documentation to provide us so that

22    we can analyze what did Mr. Micale actually do?  What did

23    the repairs actually involve?

24              There are no repair orders.  There's no test data

25    that he created during his inspection.
```

```
 1              And so we're in the position of -- we eventually
 2    get this information, and we did track down the repair
 3    order.  We tracked down the repair order, and we're
 4    investigating the repair order.  It's going to require
 5    additional expert opinion that wasn't in our reports because
 6    we didn't know about it until we tracked it down on our own.
 7              But Mr. Micale's data and his tests have never
 8    been provided to us.  We don't have it.  We can't evaluate
 9    it.  Our experts can't look at it unless they give it to us,
10    which we asked for.
11              THE COURT:  Did you ask for that in that letter
12    from July 29th or no?
13              MR. KELLY:  I believe so, Your Honor, because it
14    was referenced in the report -- the test data was referenced
15    in the report but not attached.  So we can't look at it to
16    see -- and this is probably too technical, Your Honor, for
17    this discussion, but we have to look at the data to
18    understand whether the analysis the expert makes is
19    supported by the data.
20              We're eventually maybe going to get this now
21    that -- maybe we're going to get it now that I think you're
22    going to -- well, hopefully we'll get it at some point, but
23    that's going to require us then to analyze it and do
24    additional reports from our experts.
25              THE COURT:  So I just want to make sure I
```

```
 1    understand.  So your point, if I understand you correctly,

 2    is that the harm in not providing us this information is

 3    that you feel that you don't have -- you don't know what the

 4    basis of these conclusions are going to be from the

 5    plaintiff and you've asked for it and you haven't been

 6    provided with the data and that's why you want these

 7    witnesses excluded.

 8              MR. KELLY:  Yes.  And I wanted to give you a

 9    heads-up on the repair order issue that was the April repair

10    done after our joint inspection.  It's going to generate

11    more expert analysis because we now have the information.

12    Now we're going to analyze it.

13              So the delay in getting all this impacts the

14    November 5th trial because --

15              THE COURT:  It may impact it for you but not for

16    the Court.  I mean, we're going to trial on November 5th,

17    so -- I mean, that's the Court's intention.

18              MR. KELLY:  Well --

19              THE COURT:  Go ahead.

20              MR. KELLY:  -- trying to get these -- this

21    information on the table so that both sides can evaluate it.

22    Time is running.  And it's prejudice.  I think it's

23    prejudicial.

24              THE COURT:  I mean, look.  You've made your point.

25    I am sure the plaintiffs have a response, but I will tell
```

 1    you that, look.  They're making a request for information.

 2    It doesn't seem unreasonable.  If you choose not to do so,

 3    you do so at our own peril as to whether or not that witness

 4    will be excluded.

 5           So I'm letting the plaintiffs know this up front

 6    so there's no surprises.  When we get to trial that, you

 7    know, if I hear evidence that suggests information was not

 8    turned over and it should have been, then the remedy will be

 9    exclusion of the witness.

10           Mr. Higgins.

11           MR. HIGGINS:  Thank you, Your Honor.  Just very

12    briefly.  There's not any reference to the April repair in

13    Mr. Hugret's letter.  That was never a request that was

14    made.  It wasn't in his chart that they prepared and

15    attached to the letter.  None of that was referenced.  I

16    want to make it clear because I think that it is unclear

17    from Mr. Kelly's representations.

18           Mr. Micale didn't replace the transmission in this

19    vehicle.  A Ford authorized repair facility replaced the

20    clutch or whatever in this vehicle in April.  Ford's first

21    notice of this would have been in the submission of probably

22    a warranty claim that they probably paid and not a matter of

23    only first learning of it when Mr. Micale mentioned it.

24           Subject to that, thank you.

25           THE COURT:  All right.  Thank you.  We'll cross

 1   that bridge if and when we need to.

 2            Ms. Mrowka.

 3            MS. MROWKA:  Yes, Your Honor.  If I could just

 4   respond to what counsel just said.  The chart that was

 5   attached to the meet and confer letter which was sent over

 6   to plaintiffs' counsel clearly delineates for Mr. Micale.

 7            THE COURT:  I'm sorry.  Let me pull it up.

 8   It's --

 9            MR. HIGGINS:  It's Exhibit M to Mr. Hugret's

10   declaration.

11            MS. MROWKA:  Actually, it's Exhibit A --

12            THE COURT:  Hold on.

13            MS. MROWKA:  -- but it was attached to the letter.

14   Right, but it's also A.

15            THE COURT:  Exhibit A.  Okay.

16            MS. MROWKA:  So if you look at the left column

17   where it says "Name of Expert," it has, you know, Anthony

18   Micale on page 1 --

19            THE COURT:  Yes.

20            MS. MROWKA:  -- and then if you go to column --

21   sub 2 "Facts and Data Considered," was this compliant?

22                      (Reading:)  No because the facts and

23            data relied upon identified at page 3 of the

24            report as repair orders, technical service

25            bulletins and Ford DPS6 exhibit, this is

```
 1              grossly insufficient.  Statement that due to

 2              the immense size and number of documents

 3              within Ford's exhibits regarding DPS6, such

 4              material is still under review by the expert

 5              witness and the prior report is subject to

 6              revision.  This obviously does not comply with

 7              Rule 26 and no prior report was ever produced

 8              by plaintiff.

 9              So we did raise the issue.  But these broad

10   categories of repair orders, technical service bulletins,

11   like, that doesn't -- that's not helpful.  It's not

12   compliant.

13              THE COURT:  Okay.  Well, like I said, you guys do

14   so at your own peril and when that time comes, I'll make a

15   decision.  But --

16              MS. MROWKA:  Thank you.

17              THE COURT:  So everyone's on notice, and we'll

18   move forward.

19              I think -- well, there's a couple other things

20   that we need to discuss.  In the case management

21   conference -- all right.  So you all -- I see that you've

22   asked for a final pretrial conference, and so I want to try

23   to set some dates.

24              We've got a trial date of November the 5th, and

25   we've got motions on October 25th.  I am going to propose
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1   that we move that date from the 25th to the 24th because I

 2   have my regular calendar on Fridays.  I want to devote --

 3   perhaps against my better judgment, I want to devote the day

 4   to Ford and deal with all of that.

 5           And my -- I propose that we have the final

 6   pretrial conference on that date as well, since we're all

 7   going to be here and digging in on the case, we deal -- have

 8   our final pretrial conference on that date.

 9           I also believe -- I mean -- and I'd like to hear

10   the parties' thoughts, but I think the best way to handle

11   these trials as it relates to final pretrial conferences is

12   that -- I'll say it and then we'll see -- I don't think it

13   makes sense to have one final pretrial conference for all

14   four of the trials.  It would seem to me that we should have

15   one for each trial so we can deal with motions in limine and

16   things of that nature.

17           The second thing I'm going to propose is that I'm

18   not going to let you all go to town on a bunch of motions in

19   limine.  Each side gets five for each trial.  And you pick

20   your five best, we'll deal with those and move forward.

21           So those are my thoughts.  Any reaction or -- from

22   the plaintiff?

23           MR. KIESEL:  Your Honor, good morning.  Paul

24   Kiesel.  So the reaction is this:  I think it makes infinite

25   sense to stage this so we don't have the staff inundated

 1   with paper and we can organize it in such a way that it

 2   could be presented to the Court from both sides in a very

 3   understandable way.

 4          So I'd like the idea, if the Court's willing to

 5   consider it, to say Pedante, which is Case Number 1, have

 6   that motion for summary judgment and motions in limine and

 7   Daubert, hear it on that case on a particular day and stage

 8   the others out.  There's no reason to do MSJs on all four

 9   cases on the same day, and you don't need to be inundated

10   with dozens of moving papers.  So that, I think, is a great

11   suggestion.

12          It will also help because we were going to ask the

13   Court to consider moving the filing date to October 4

14   because we wanted to find a way to consolidate all the

15   paperwork and getting it done by September 30, which is

16   Monday, would have been very difficult to do.

17          I think by cutting this down to one opposition, we

18   can probably comply.  With maybe a couple additional days

19   than just September 30, maybe October 4, would still be

20   helpful to get it condensed for the Court and get it all --

21   we can file one opposition, say, in a Daubert, not multiple

22   motions.  We can consolidate.

23          THE COURT:  I mean, look.  If you need a little

24   flexibility as it relates to that, that's fine, but let me

25   hear -- well, I'll let you finish, and then I'll hear from

```
 1   the defense to see what their thoughts are.

 2           MR. KIESEL:  Okay.  So the first thought is, I --

 3   although I hadn't been prepared to address this, I like the

 4   idea of the Court's suggestion of staging.  And if we do

 5   stage it, I would ask that we have the opposition filed on

 6   October 4 as opposed to September 30.  October 4 would still

 7   be within the statutory 21-day deadline.  Even if the Court

 8   moves it to the 21st, we're within that 21-day time frame.

 9   So October 4, we'd ask for our opposition to be filed on

10   that day.

11           I was going to ask the Court to consider the

12   pretrial conference a little later than the 24th, but if,

13   again, we're only going to be dealing with Pedante and

14   that's what the consensus is, then I think we can do

15   October 24 because we'll have the ability to respond.  So

16   I'll see what Ford's response is and come back.

17           THE COURT:  All right.

18           Mr. Nassihi.

19           MR. NASSIHI:  Certainly, Your Honor.  Thank you.

20           The Court's suggestion makes sense to have

21   separate pretrial -- final pretrial conferences by case.  We

22   do think there are issues which we've learned about all the

23   way through till yesterday afternoon in relation to Pedante

24   that warrant removing it from the trial list and replacing

25   it with another case.  And that remains a significant issue
```

```
 1  at this point.
 2             THE COURT:  So is this your effort to tell me that
 3  you're going to file a motion in that regard or --
 4             MR. NASSIHI:  We may do.
 5             THE COURT:  Okay.
 6             MR. NASSIHI:  We may do, Your Honor.  And
 7  Mr. Thomas or Mr. Kelly can talk a little bit more, but
 8  there's -- we've talked about some of the spoliation issues
 9  from our perspective.  We think there are significant issues
10  there that warrant removing that case from the trial list.
11             And if it is removed, then certainly there's no
12  reason why another case couldn't be moved to November 5.
13  Right now the trial after that's November 19.  We could even
14  start November 12 and use that November 5 week for pretrial
15  activities.
16             So we did want to talk about a science and
17  technology day.  We've talked with plaintiffs about that,
18  each side having three hours.
19             THE COURT:  Three hours?  Six hours of technology?
20             MR. NASSIHI:  Yes.
21             THE COURT:  I don't do that in my patent trials.
22  I mean, is there -- tell me what -- I'm just curious.  What
23  are someone going to talk about for three hours or six hours
24  that I need to hear?  I'm just curious.  I mean, literally,
25  I just had a patent case where the technology was mind
```

 1   blowing.  Are we saying that -- we're talking about

 2   transmissions here.

 3          I mean, again, I'm not -- trust me.  I'm not a

 4   mechanic, but I'm just wondering why we need six hours to

 5   educate the Court?  I mean, I recognize I'm a simpleton, but

 6   I think I could probably understand the issues without a

 7   six-hour tutorial.  But maybe I am missing something.

 8          MR. KELLY:  Frank Kelly, Your Honor.

 9          THE COURT:  Yes.

10          MR. KELLY:  You probably don't need six hours.

11   It's six hours because, if we take three, which we think is

12   going to cover the playing field, the plaintiffs get three

13   also.

14          THE COURT:  So then let's focus on you.  Why do

15   you -- what is it that you intend to present to the Court

16   that takes three hours with respect to a transmission?

17          MR. KELLY:  Transmission is pretty complicated,

18   Your Honor.

19          THE COURT:  More so than an Internet patent

20   involving layers of communication between cable -- I mean, I

21   am sorry.  I just -- I don't mean to suggest that this is

22   not an important case but three hours for a transmission?

23          MR. KELLY:  There's -- the claims in the case

24   affect -- the inner workings deal with the inner workings of

25   the transmission components and those components' effect on

```
 1    the drivability of the vehicle.  So it's not just the

 2    transmission.  It's the transmission's relationship to the

 3    other components in the vehicle that generate what is called

 4    this shudder experience.

 5           In addition to that, there's a claim that impacts

 6    the transmission control module which is a component that is

 7    a computer.  And so your patent experience probably will

 8    help you understanding the transmission control module

 9    issue.

10           There's mechanical issues, there's drivability

11    issues, and there's computer hardware issues, and there are

12    some software issues.  All of those are a separate element

13    to explain, as well as to provide you with some

14    demonstrative videos to show you what these conditions look

15    like rather than just describe them.

16           THE COURT:  All right.  Look, and I appreciate

17    your willingness to assist the Court but --

18           MR. KELLY:  But if you want -- sorry to interrupt,

19    Your Honor.  But if three hours is too long --

20           THE COURT:  It is.

21           MR. KELLY:  -- and two hours is too long and you

22    want to give us a half an hour, whatever you give us,

23    Your Honor, I think it will be time well spent.

24           THE COURT:  All right.

25           MR. KELLY:  It will be time well spent,
```

```
 1    Your Honor, in anticipation --
 2              THE COURT:  My leaning is is that I think three
 3    hours in total should be enough.  So if it means an hour and
 4    a half each side, even though -- well, I think that's more
 5    than enough.
 6              MR. KELLY:  Thank you, Your Honor.
 7              THE COURT:  Mr. Kiesel.
 8              MR. KIESEL:  So, Your Honor, on the issue of
 9    science day, I honestly think we probably passed beyond that
10    stage where this Court needs to be educated on science day.
11    The science day for us is eight people in the box that we
12    need to explain what a dual clutch transmission is, and I
13    don't think we don't need to waste the Court's time or hours
14    in educating you on a case we're going to trial
15    November 5th on.
16              And if you wanted to, on the YouTube, there is a
17    video that helped me called "DCTs for Dummies."  "DCT for
18    Dummies" -- no offense, Judge -- "how Dual Clutch
19    Transmissions" --
20              THE COURT:  I've been called a lot worse.
21              MR. KIESEL:  -- "How Dual Clutch Transmissions
22    Really Work."  It's ten minutes and 31 seconds, and it's a
23    pretty good video.
24              THE COURT:  Mr. Nassihi.
25              MR. NASSIHI:  Your Honor, our science day is
```

 1   standard, which is why Mr. Kiesel has been advocating for

 2   it, along with us, Mr. Kiesel most recently, the last status

 3   conference, I believe.  Both sides have requested it.  It's

 4   something which we think would be important.  An hour and a

 5   half each side would be fine.

 6          We think -- this is a large, large MDL, and

 7   there's a lot of cases here.  And Your Honor, when we --

 8   when this was proposed earlier in the case, did suggest

 9   putting this off until later in the case.

10          THE COURT:  No, I did but, I mean -- but I didn't

11   think it was going to be an all-day affair but --

12          MR. NASSIHI:  Well, it's -- at this point, it

13   sounds like it would be an hour and a half each side.  We

14   did think it would be helpful as part of that for us to --

15   for there to be a drive done just in the parking lot here,

16   but --

17          THE COURT:  Is it going to be the new Corvette

18   or -- if it's not, I don't want to -- I'm joking, of course.

19   But I mean -- look.  I appreciate your trying to represent

20   your client.  I get that, but, I mean, I'm going to be

21   blunt.  It doesn't matter what -- does it matter what I

22   think?  Isn't it the eight folks -- are you going to ask

23   them to take a drive in this car as well?

24          I mean, I appreciate -- you'll get an hour and a

25   half each side.  If you don't want to use the hour and a

```
 1   half, great.  Even better.  But I just -- as we've gotten

 2   deeper and deeper in the case, I just wonder whether this is

 3   the best use of time.  But if you feel strongly about it,

 4   you want to use your hour and a half, sobeit.

 5           I don't feel like being driven around in a car.  I

 6   don't think that's necessary.  So keep that in mind.  Keep

 7   the Corvette back in the shop or the Mustang or -- you know,

 8   unless it's a Saleen, but that's a different sorry.  So I

 9   don't think that's necessary.

10           MR. NASSIHI:  So hour and a half each side, and I

11   think selecting a day for that, whether that be the 24th or

12   a different date again --

13           THE COURT:  Maybe we should do that on the 23rd.

14   I think my mind will just turn to mush if I got that,

15   motions.  So if we want to do the science day, we could do

16   that on October -- let me just make sure I'm clear that day.

17           All right.  So we'll do the science and technology

18   day on October 23rd.  We'll do that in the morning at

19   9:00 A.M.  And then the -- whoops.  And then the final

20   pretrial conference on Pedante on the 24th at 9:00 A.M.

21           Again, against my better judgment, Mr. Nassihi, I

22   just am curious.  Can you briefly -- emphasis on briefly --

23   tell me what is this issue about spoliation?  I mean,

24   because you're suggesting that there may not be a trial

25   on -- or there's a reason to not have the trial on Pedante?
```

```
 1            MR. NASSIHI:  Yes.

 2            THE COURT:  I mean, unless I missed this from the

 3    last time, can you give me some more information in that

 4    regard?

 5            MR. NASSIHI:  Absolutely.  I think Mr. Kelly --

 6            THE COURT:  Or Mr. Kelly.

 7            MR. NASSIHI:  -- and Mr. Thomas are best placed to

 8    provide that information and perhaps if Mr. Kelly does and

 9    Mr. Thomas supplements.  But this is an important issue that

10    really -- that crystallized further yesterday.

11            THE COURT:  All right.  What's going on,

12    Mr. Kelly?

13            MR. KELLY:  The Pedante vehicle had been in for a

14    series of clutch replacements and transmission control

15    replacements, the last of which was in September of 2018.

16            In March of 2019, there was a joint examination of

17    the vehicle with our Expert Kwas and plaintiffs'

18    Expert Miller both in attendance, did a vehicle inspection,

19    drove the vehicle, tested it with some of the componentry

20    that you're going to learn about in the 23rd that measures

21    shudder to see if it's excessive and both concluded -- both

22    sides concluded that there was nominal shudder and not

23    excessive shudder in that joint examination.

24            THE COURT:  Okay.

25            MR. KELLY:  Parties separated away from the
```

```
 1   vehicle, Mr. Pedante took it back, and we then learned that
 2   a month later, the components that we had examined in the
 3   joint evaluation in March had been removed and replaced by a
 4   dealership, unbeknownst to Ford, the Galpin Ford dealership,
 5   one of the authorized dealers, the independent dealers.
 6            Mr. Pedante took the vehicle in, and they took the
 7   parts that we examined, out.  After that occurred, the
 8   plaintiffs' other expert, Mr. Micale, examines the
 9   vehicle --
10            THE COURT:  With the new parts.
11            MR. KELLY:  -- with the new parts, parts on the
12   vehicle that we haven't examined at all, and he concludes,
13   based on his examination, that the vehicle was never
14   properly repaired and still shows signs of the malfunctions
15   that Mr. Pedante had experienced previously.
16            THE COURT:  But you have an expert that says that
17   in March of 2019 there was nominal shudder; right?
18            MR. KELLY:  Right.  And then the dealership in
19   April, their records --
20            THE COURT:  Galpin.
21            MR. KELLY:  Yes.
22            THE COURT:  Okay.
23            MR. KELLY:  Their records suggest that shudder had
24   returned at an excessive amount.
25            THE COURT:  So you are worried about evidence
```

1    of the -- specifically Galpin's indication that shudder had

2    returned.

3            MR. KELLY:  And as a result of what they recorded

4    in their repair record as excessive shudder, they took those

5    components out, replaced them with new components.

6            We -- so there is -- and those components were all

7    discarded, through nobody's fault.  That's what Galpin does

8    when they take them out.  They discard them.

9            So the vehicle that was examined jointly has been,

10   in a word, spoiled.  It's no longer in the condition that we

11   examined it.  It has been changed.  And it has now been

12   suggested that its current condition also is malfunctioning,

13   which we haven't had a chance to examine or review or --

14           THE COURT:  To the extent that I agree with you,

15   isn't the remedy to have the vehicle examined now?

16           MR. KELLY:  That is a remedy.

17           THE COURT:  Or to exclude any evidence of -- post

18   the March 2019 joint examination.

19           MR. KELLY:  And that may also be an option, Your

20   Honor.  But that -- those are the issues.  That's why we

21   think Pedante has gone down a path that needs to be

22   addressed before trial to resolve some of these issues so we

23   know what we're going to be trying on the 5th --

24           THE COURT:  Okay.

25           MR. KELLY:  -- because things have changed since

```
 1    the expert reports.

 2              THE COURT:  Okay.  And so I'll add --

 3              MR. KELLY:  I'm not asking you to decide right

 4    now.  I just want to lay it out for you.  That's what we're

 5    dealing with.

 6              THE COURT:  All right.  I'll ask, even though I

 7    think I know the answer, have you talked with the other side

 8    about either of those possibilities of, hey, should we get

 9    our experts together again and look at the new --

10    quote/unquote, new transmission?

11              MR. KELLY:  We have not.  We have not.  We have

12    not discussed that.  We have raised the spoliation issue

13    with them this week.  We got a response, but we just began

14    meeting and conferring on this.

15              We think it's a serious problem.  I'm not sure

16    that -- I'm not sure that Pedante, because of all these

17    factors, is really a very good case to start in trial with

18    because it has all these collateral and tangential issues

19    that really aren't going to give the Court a good idea of

20    what these cases typically present.

21              THE COURT:  Okay.  What's the plaintiffs' --

22    what's your response, reaction?  It seems to me the answer

23    is then get the expert -- to the extent that this is an

24    issue -- and I'm not sure I see it as a spoliation issue as

25    strongly as you do, but to the extent it is, isn't one
```

```
 1   answer get the experts to look at this new -- I keep calling
 2   it "new" but look at the car in its current condition?
 3              MR. KIESEL:  Yes.
 4              THE COURT:  Okay.  So what can we do to accomplish
 5   that, I guess?  I guess I'm going to be -- I'll try to
 6   negotiate this the détente.
 7              MR. KELLY:  One of the things that we would need,
 8   of course, is the data and the test documentation that
 9   Mr. Micale referenced in his report that we'd ask for that
10   has yet to be turned over.
11              THE COURT:  Let me stop you there.  When can
12   that -- A, does -- do you understand the information that
13   he's -- that Mr. Kelly has referred to?  B, do you have it?
14   C, when can it be turned over?
15              MR. KIESEL:  I think my response should be I don't
16   have any specific answers to what the Court just asked.
17   However, I would say that certainly within 24 hours, each of
18   those questions the Court just posed would be responded to,
19   and I would imagine we're going to meet and confer.
20              And if another inspection needs to happen, we'll
21   make that happen immediately.  We're not trying -- we want
22   to go to trial on November 5.  We want Pedante, the first
23   case up, to be that case, and we'll do whatever we need to
24   do to make that happen.
25              THE COURT:  All right.  Now, at the risk -- I
```

1    mean, I could do it the hard way or the easy way, but it

2    seems to me in 24 hours -- it seems to me you should be able

3    to get the answer by the close of business today, quite

4    frankly.  I mean, unless the expert is flying somewhere

5    across the country.

6         Presumably the expert has the data.  If he has the

7    data, it would seem to me that you should be able to turn

8    over that data within 48 hours and you should be able to set

9    up a time to inspect the vehicle within the next seven days.

10        I don't know if your -- if Ford's expert's ready,

11   but I would -- it would seem to me that this could all be

12   resolved within the next week.  Micale's made -- he's done

13   an analysis.  He has to have the data at his disposal.  I

14   don't see -- it seems like it's relevant because you're

15   going to rely on it.  Turn it over, set up a time to inspect

16   the car, and let's move forward.

17        Is there anything that I've said that causes the

18   plaintiff heartburn?

19        MR. KIESEL:  The answer is nothing that you just

20   said causes any heartburn at all with the exception that I

21   do not know this particular witness's availability.  He

22   could be in an airplane to Australia for all I know.

23        So we will track him down immediately.  If we can

24   get it done today, it'll get done today.  If it takes till

25   tomorrow morning, it will get done.  And what the Court says

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    makes sense.

 2              THE COURT:  All right.

 3              Mr. Kelly, help me -- if you get this car

 4    inspected within the week, do you still have the same

 5    concerns about the ability to move forward with Pedante on

 6    the 5th?

 7              MR. KELLY:  It will -- here's what I foresee, and

 8    hopefully it's not a problem.  My experts need to supplement

 9    their reports.

10              THE COURT:  Right.

11              MR. KELLY:  If we're permitted to do that,

12    supplement our reports --

13              THE COURT:  Look, I have not heard any -- if what

14    you're telling me is accurate, that this car has been

15    changed after the expert has -- after the joint

16    examination -- and the plaintiff is going to rely on this

17    new examination.

18              You have a right to have that car examined and

19    with that is going to have the right to have a report

20    generated.

21              MR. KELLY:  Okay.  Thank you.

22              THE COURT:  Okay.

23              MR. KELLY:  Now, one of the data points that the

24    plaintiffs' experts rely upon is the determination by the

25    repair dealership, Galpin, that the vehicle had excessive
```

 1  shudder in April of 2019, just six months after all those

 2  parts were replaced.  And it's their conclusion therefor

 3  that those repairs did not actually repair the vehicle

 4  because it still has this excessive shudder.

 5          THE COURT:  Uh-huh.

 6          MR. KELLY:  It may be necessary, as I foresee this

 7  playing out, to depose representatives, employees,

 8  technicians at Galpin Ford to understand what they did to

 9  reach their conclusions upon which the plaintiffs' experts

10  rely.

11          I do foresee that as being a potential.

12  Discovery's closed.  So I see that as a possibility for

13  further discovery that might be necessary by reason of this

14  change in the vehicle and further examinations after the

15  joint inspection.

16          THE COURT:  Mr. Kiesel.

17          MR. KIESEL:  So it's fair, Your Honor, that we get

18  as micro as we are because it's Pedante, and this is the

19  case set for trial.  So if it was any other case, I think we

20  shouldn't get into the weeds, but it's worth doing it here.

21          So Galpin Ford is an authorized repair facility

22  for Ford Motor Company.  They don't get paid for warranty

23  repairs unless they alert Ford Motor Company to the nature

24  of the identified problem, that the identified problem is

25  one that they'll pay for the repair to be executed, and then

```
 1    they get reimbursed by Ford Motor Company for the repair
 2    that the Galpin Ford dealership has identified.  It's called
 3    AWS, is the name of the system, and it's in their computer
 4    databases.
 5            So they've known from since April that Pedante, if
 6    they put a flag out there, had repairs done at Galpin Ford
 7    for excessive shudder, which is one of the issues that the
 8    1.9 million owners of Ford Fiestas and Focuses have been
 9    complaining about, not exclusively but complaining about.
10            So Ford's dealer authorized the repair, took the
11    parts.  I can't tell you what they did with them.  Sometimes
12    they send the parts back to Ford because they want Ford to
13    examine the parts that are replaced to make sure that there
14    was a problem with the part.  I don't know what Ford Motor
15    Company's agent did with those parts.
16            But the point is whatever needs to be done for
17    both sides to fairly understand what is going on with
18    Mr. Pedante's case is legitimate before we go in front of
19    the jury.
20            I can't tell you that they should be entitled to
21    take depositions of Galpin employees who put down "shudder"
22    on their repair invoice.  That was their decision, not ours.
23    That was their reimbursement, not ours.
24            But I'll make one other point.  They're also,
25    Your Honor, seeking to potentially compare arbitration for
```

```
 1    Mr. Pedante.

 2              THE COURT:  Yes.

 3              MR. KIESEL:  And that's in our joint status

 4    conference report because they're saying, well, because

 5    you're claiming that the dealerships are agents of

 6    Ford Motor Company, therefore, we have the right, Ford, to

 7    be bound by the arbitration agreement you have with Galpin

 8    Ford or whoever the dealership was that sold it, and,

 9    therefore, Pedante should be compelled to arbitration

10    where --

11              THE COURT:  We're a little late in the game for

12    that.  But that's -- but I saw that in the papers.

13              MR. KIESEL:  And that's precisely my impression,

14    we're a little late in the game for that.  But everything

15    that can be done, it seems, to get Pedante off track to try

16    is happening, and I'll assure the Court whatever we need to

17    do to keep Pedante on track for November 5, we're going to

18    do.

19              THE COURT:  All right.

20              Mr. Kelly.

21              MR. KELLY:  I think that was a yes.

22              THE COURT:  I think -- yes, I think that was a

23    lawyerly way of saying yes, they're going to do everything

24    they can to get this on track.  And so I'm going to implore

25    the parties to get the information, the plaintiff to get the
```

```
1    information from -- I'm going to butcher the name -- the

2    expert's report, but is it Micale -- I'm sorry.

3            MR. KELLY:  Micale.

4            THE COURT:  -- Micale, get that information to

5    Ford within the next 24 to 48 hours, set up a time to

6    inspect the vehicle within the next seven days, and then,

7    depending on what happens, I guess, Mr. Kelly, you'll make

8    the decision on whether you need to make a request of the

9    Court, I guess, to do further depositions, et cetera,

10   et cetera.

11           Again, I'm not in a position to rule on that

12   because I don't know -- I don't now what's going to happen

13   in the next seven to ten days.  All right?

14           Mr. Nassihi.

15           MR. NASSIHI:  Your Honor said you were going to

16   get to the arbitration issue?

17           THE COURT:  I --

18           MR. NASSIHI:  Or you mentioned the arbitration --

19           THE COURT:  I mentioned it seemed a little late in

20   the game.  That's all I said.

21           MR. NASSIHI:  Right.  And we understand the

22   Court's view on that, and we are -- we would just -- we do

23   need to preserve the issue.  Our position has been that

24   dealers are not agents --

25           THE COURT:  And let me stop you there.  I just
```

```
 1   want to make sure.  You haven't filed anything.  I mean,

 2   this was mentioned in the joint report.

 3             MR. NASSIHI:  Right.

 4             THE COURT:  Are you intending to file a motion to

 5   compel arbitration?  I mean, all I saw is this reference to

 6   it.

 7             MR. NASSIHI:  Right.  And this was triggered by

 8   the judicial estoppel issues arised from plaintiffs

 9   asserting -- and this issue's being dealt with the JCCP

10   South as to trial cases there where the argument --

11             THE COURT:  I'm going to tease you for a second

12   and --

13             MR. NASSIHI:  Sure --

14             THE COURT:  -- say objection, nonresponsive.

15             MR. NASSIHI:  Okay.

16             THE COURT:  My question to you is whether or not

17   you intend to file a motion to compel arbitration.

18             MR. NASSIHI:  We anticipate doing so.  Our view is

19   we need to find a way to preserve this issue --

20             THE COURT:  Got it.

21             MR. NASSIHI:  -- given that this issue has really

22   come to fruition now as a result of the last motion to

23   dismiss order on -- a few weeks ago.  And so --

24             THE COURT:  I guess I'll await -- again, I will

25   say it seems very late, but if you feel you need to preserve
```

```
 1    the issue, then obviously you need to do what you need to do

 2    to represent your client.  All right.

 3              MR. NASSIHI:  And it's -- I agree we're very late

 4    in this stage in this, but likewise, in the JCCP South, the

 5    issue comes about because plaintiffs have advocated and

 6    argued an agency theory, and this Court accepted that a

 7    couple of weeks ago.

 8              THE COURT:  Okay.

 9              MR. NASSIHI:  And so that's what gave -- gives

10    rise to this, and the theory behind it is the parties

11    allowed to dispute agency --

12              THE COURT:  Look, I look forward to seeing your

13    papers on it if and when you decide to do so.

14              MR. NASSIHI:  Certainly.

15              THE COURT:  I don't know that we need to discuss

16    it any further.

17              MR. NASSIHI:  Certainly, Your Honor.  And the --

18    on -- just on the issue, Your Honor raised the motions in

19    limine.  Your Honor suggested the number five.  Might I

20    suggest 12 each side?

21              THE COURT:  Oh, no.  No, no.  You'll be fine with

22    five.  I'll help you.  All right?  You'll be fine with five

23    each.  This is not my first time at the rodeo.  I mean, it

24    is on the MDL, but I've dealt with big cases before.

25              This is all -- like I tell my kids, "This is good
```

1    for you."  Okay?  So five motions a side will be fine.

2            MR. NASSIHI:  The other issues which I want to

3    briefly address is with the pretrial conference being set

4    for --

5            THE COURT:  The 24th.

6            MR. NASSIHI:  -- September 24th --

7            THE COURT:  October.

8            MR. NASSIHI:  Sorry, October 24th, and then --

9            THE COURT:  And that date will also be the date

10   for the motions.  I think the Daubert motions are also

11   scheduled on that -- originally scheduled on the 25th, but

12   we'll do those on the 24th as well.

13           MR. NASSIHI:  So on the 24th would be the Daubert

14   motions as they relate to Pedante for the experts disclosed

15   in Pedante.

16           THE COURT:  Correct.

17           MR. NASSIHI:  The summary judgment for the Pedante

18   case, and then in terms of motions in limine filing dates --

19           THE COURT:  We'll deal with all of those on the

20   24th as that's the final pretrial conference.  I usually

21   deal with all the motions in limine at the final pretrial

22   conference.  So that will also be on the 24th.

23           MR. NASSIHI:  The filing date or --

24           THE COURT:  Oh, no.  I'm sorry.  The hearing date.

25           MR. NASSIHI:  Okay.

```
 1              THE COURT:  I misunderstood you.
 2              MR. NASSIHI:  So I was going to propose the -- if
 3    we're going to have it on October 24th, perhaps it makes
 4    sense to set some filing dates.
 5              THE COURT:  Do we need to do that here, or could I
 6    perhaps trust you all to meet and confer?  Is that
 7    unrealistic?  If it's unrealistic, we'll do it.
 8              It's just I had hoped if I say, "Here's the date
 9    we're having the hearing," you all could work out the filing
10    dates, opposition dates.  But if you think that's going to
11    be an issue, we'll spend your clients' time figuring it out.
12              MR. NASSIHI:  We'll -- we've been able to work
13    well with Mr. Kirnos and Mr. Kiesel, and we'll get that
14    worked out.
15              MR. KIESEL:  Can I just get a clarification, Your
16    Honor?  I just want to be clear.  So all the motions have
17    now been advanced.  We're going to have everything heard on
18    the 24th of October.
19              THE COURT:  Correct.
20              MR. KIESEL:  And I think I suggested -- originally
21    September 30 was going to be the date.  We were going to
22    move that date to October 4, would be the filing date.
23              THE COURT:  That's what I thought I'd heard, but
24    it hadn't been set in stone, and I was hoping that you all
25    would meet and confer and work the dates out as long as we
```

1    have our hearing on the 24th.

2            MR. NASSIHI:  Well, we do have some difficulty

3    with October -- moving it to October 4th.

4            THE COURT:  Why?

5            MR. NASSIHI:  Because our opposition -- our date

6    is October 14th for our reply dates.  And we have -- we were

7    expecting the opposition briefs on September 30th.  We had

8    planned around that.

9            I am flying on a long, long planned family

10   vacation October 12th and this -- and carved out the time to

11   be working on this as soon as we get these September 30th.

12   So that does present issues for us.

13           My understanding, from what Mr. Kiesel said

14   earlier, is that now that we're just doing this for Pedante,

15   that they believe they can meet the September 30th deadline.

16   In the alternative, I would suggest a modest modification to

17   October 1 because remember, Your Honor, we are here --

18           THE COURT:  Hold on.  But if it was October 2nd --

19   so tell me when would you file your motion?  Let's go

20   through it.

21           MR. NASSIHI:  I'm sorry.  We're talking about a

22   different issue here.  We're talking about Mr. Kiesel's

23   request to move their opposition dates to the dispositive

24   motions from September 30th to October 4th.

25           THE COURT:  Okay.  And you're concerned about

```
 1   October 4th because you'd have to file a reply on October

 2   the 14th?

 3            MR. NASSIHI:  These dates were long ago set.  In

 4   fact --

 5            THE COURT:  I just want to make sure I understand.

 6   Is October --

 7            MR. NASSIHI:  Right.

 8            THE COURT:  You're leaving -- you're out of --

 9   you're leaving when did you say?

10            MR. NASSIHI:  Well, I'm leaving October 12, but

11   that's a different issue.  We have planned, and we have

12   arranged for people to be free for -- to work as soon as we

13   received these opposition briefs on September 30th, and we

14   had to do so because this Court did adjust these deadlines

15   at plaintiffs' request over our objection when we'd

16   originally set out a very orderly schedule.  And a couple

17   months ago they brought their ex parte motion to extend the

18   fact discovery deadline, we continued the trial, and we

19   ended having to carve these date --

20            THE COURT:  Okay.

21            Mr. Kiesel, can you get it done by October 1st or

22   the 2nd?

23            MR. KIESEL:  The answer is this:  The goal for

24   doing it the 4th was to really condense it and make it

25   easier for the Court and actually do a better job at
```

```
1    presenting the materials to the Court on the 4th.  If the

2    Court says I want --

3               THE COURT:  Want me to make a comment in response?

4    No, I'm sorry.  I'll let -- go ahead.

5               MR. KIESEL:  Nonresponsive, move to strike.  Yes,

6    Your Honor, give us October 2.

7               THE COURT:  Okay.  Is that --

8               MR. KIESEL:  Well, I -- it's fair.  I --

9    Mr. Resnick did indicate to me before, and I said that'll

10   take a backseat.  He's heading out of the country on a trip.

11   He will be out of town.  And part of the reason why we

12   wanted the additional time in addition to the need to

13   consolidate the moving responsive papers, if we could keep

14   it October 4, I don't see what the -- the prejudice --

15   there's no prejudice because it's still being filed within

16   the statutory time frame of close to 21 days, and the

17   14th is still the responsive time they would have under the

18   Code.  So I think if the Court did October 4, we could get

19   the perfect opposition, and I ask that --

20               THE COURT:  I'm going to hold you to that, the

21   perfect opposition.

22               MR. KIESEL:  It will be that.

23               MR. NASSIHI:  Your Honor, we went through all

24   this, and we had strong complaints and objections when

25   plaintiffs came in with an ex parte motion a couple months
```

1    ago to continue the trial and blew up the entire schedule.

2              THE COURT:  Let me stop you there.

3              MR. NASSIHI:  We --

4              THE COURT:  Get it done by October 2nd.  Just get

5    it done by October 2nd.

6              MR. NASSIHI:  All right.

7              THE COURT:  Get it done by October 2nd, and we'll

8    go on from there.

9              All right.  Both sides are equally upset; so I

10   probably did my job right.  Okay.

11             So next issue I wanted to discuss, the plaintiffs'

12   proposed case management order, and I guess Ford's objection

13   to having Mr. Higgins and Mr. Resnick involved?

14             MR. NASSIHI:  No, your Honor, that's not -- that's

15   not the issue here.

16             THE COURT:  What's the issue?

17             MR. NASSIHI:  The issue here is this is not the

18   way to ask for appointment of counsel in MDL.  There has to

19   be an application process, and we object to this

20   circumventing of that process for this Court to have --

21             THE COURT:  So you'd rather them file an

22   application, have us all come back you can file your

23   opposition and have hearing, lawyers that have been on this

24   case the whole time -- I mean, I'm just curious.  What's the

25   real concern?  I'm going to joke for -- I'm going to try to

```
1    lighten the mood a little and say if it was Mr. Gieleghem, I

2    might have more heartburn, and I'm joking when I say that.

3    I'm joking when I say that.

4           But, I mean, you've got Mr. Higgins and

5    Mr. Resnick who've been here this whole time, I mean, almost

6    every hearing, have seemed -- you know, recognizing

7    litigation is warfare, they have added value.  They haven't

8    detracted value to the case.

9           I didn't really fully understand the concerns that

10   Ford had with regard to this.  I mean -- and so I want to

11   hear you.  I just didn't see -- I mean, it'd be one thing if

12   it was a bunch of folks that had never been here, just

13   parachute in, didn't want to be here.  They've been here, I

14   mean, literally, I think, every hearing providing insights.

15   They're not just going along for the ride.

16          MR. NASSIHI:  Your Honor, I agree with you.

17   They're working on these cases, same as every MDL.

18          We set out substantial authorities and case law

19   and complex manual and referenced this Court's initial order

20   where this Court followed the Manual of Complex Litigation.

21   There's criteria this Court has to satisfy itself about,

22   that it knows about any side deals, any arrangements, the

23   fee issues, the resources for appointment to leadership.

24   They certainly --

25          THE COURT:  Are you aware of any such thing?  I
```

```
 1   mean, is that the concern, that you think that somehow their
 2   appointment's going to fatten their coffers?  I mean, is
 3   that it?  I mean -- or is this just a pure --
 4              MR. NASSIHI:  I --
 5              THE COURT:  Hold on a second.  Is this more of a
 6   the Court needs to go through this exercise and failure to
 7   do so is somehow reversible error and you're concerned that
 8   we haven't gone through the appropriate process to have them
 9   be on the committee?
10              MR. NASSIHI:  I think process is important.  I
11   think the -- we will provide this Court a number of
12   citations that this is a most important decision an MDL
13   judge has to make and that an MDL judge has to give focused
14   attention to this.
15              This is not a case of who gets to work on it.
16   They're certainly working on it.  We're working with them on
17   it, but this is an appointment to leadership.  And I know
18   that this Court has seen and read the prior common benefit
19   motion that was brought and that's going to be renewed now
20   asking for a surcharge of six percent.
21              The initial hearing this Court had on appointments
22   where it issued an order asking plaintiffs to submit
23   applications meeting the requirements of the MCL on
24   different factors, including on fees, and that needed to be
25   discussed with this Court, that should have been discussed
```

 1   with this Court.  It wasn't because there was a

 2   representation which appears to have been inadvertently

 3   inaccurate that fees would be dealt with a certain way and

 4   not by contingency and not by common benefit.

 5        We would urge this Court to take another look at

 6   our brief on this which quotes from -- provides the

 7   authorities in there, the discussion of why this is a very

 8   important issue for the Court to follow the process that

 9   Mr. Kiesel goes through in every MDL he's involved in of,

10   submitting the application, providing details, and certainly

11   consider best practices of setting up a reappointment

12   process.

13        But at a minimum just to -- it would be like us

14   submitting a seemingly harmless CMO that really has

15   significant consequences.  This has significant

16   consequences.

17        THE COURT:  Once again, tell me -- I'm just

18   curious what you believe the significant consequences are.

19        MR. NASSIHI:  Well, as Your Honor will recall from

20   having seen the temporarily withdrawn common benefit motion,

21   plaintiffs are asking for -- or plan to ask for a

22   six percent surcharge on every settlement to be able to

23   allocate that to the folks in leadership.

24        And there's the issues of the fees which this

25   Court has to address, this Court has to look at.  And we

 1    quoted plenty of authorities and judges saying, "Sure, this

 2    is a distasteful part that no judge wants to do, but it's

 3    our duty."

 4           And there is a -- this is a single-most important

 5    decision for an MDL, is the appointment of counsel and

 6    paying a close regard to the recommended approaches on doing

 7    this, the best practices on doing this, having application

 8    process.

 9           I've just never seen an attempt to create an

10    entire leadership structure without the application process,

11    just submitting a perfunctory CMO.  You'll recall that at

12    the last status --

13           THE COURT:  Kind of like submitting a motion in

14    cases not involving the four set for trial?

15           MR. NASSIHI:  The IDP case, which is a 12(b)(1).

16           THE COURT:  I'm giving you a hard time.  Go ahead.

17           MR. NASSIHI:  We just -- we urge this Court to --

18           THE COURT:  So your request is that, if I'm going

19    to do it, is to have the plaintiffs file a formal

20    application to change the leadership structure and go

21    through the process consistent with the manual and the cases

22    that you've cited.

23           MR. NASSIHI:  We discussed this where any side

24    deals have been made, what the fee plans are, contingency

25    fees, those need to be -- those don't need to be -- we're

```
 1    not asking to be publicized.  Your Honor needs to know
 2    those.  Your Honor needs to know those.
 3              There's a few MDL judges we kind of cite to here
 4    where they've had to step in and say, I'm doing -- all this
 5    is contingency fees, excessive, I'm doing automatic cap.
 6              THE COURT:  But I thought that the plaintiffs had
 7    said in response that there are no --
 8              MR. NASSIHI:  I'm sorry.  They said in
 9    response that --
10              THE COURT:  No, go ahead.  Go ahead.  I'll let you
11    efficient.
12              MR. NASSIHI:  They're not disputing that there is
13    a -- statutory fees that they'd be seeking, that they will
14    be getting 45 percent on top of that from a contingence fee,
15    that the fee agreement that we provided from the Ford Focus
16    that plaintiffs used, that that describes exactly the
17    hindrances to settlement we talked about so that -- case law
18    on this.
19              We talked about Judge Pregerson looking at at
20    least one of the onerous similar terms that we have here,
21    just one of them and talking about this how this
22    incentivizes settlement.
23              We would just urge Your Honor to take another look
24    at our objection on this and consider the information we're
25    asking this Court apprise itself of for -- to require an
```

```
 1   application process where there's disclosure of any side

 2   deals, where there's disclosure of what the actual fee

 3   agreements are because we now know that the disclosure that

 4   was made at that initial April 18, 2018, status conference,

 5   at this Court's direction under the MCL, that that may have

 6   been inadvertently incorrect.

 7            So we would just urge this Court just to deal with

 8   this by way of a usual process of requiring an application

 9   which lays out and provides this information, and we would

10   urge this Court to rereview our objection to this which lays

11   it out in very specific details.

12            THE COURT:  All right.

13            Mr. Kiesel, briefly, if you wish to respond.

14            MR. KIESEL:  I need to respond.  I will do so

15   briefly.  I will.

16            This is the first time that ever in my practice

17   that the defendants have submitted an objection to the

18   structure that plaintiffs have proposed to try to organize

19   themselves from leadership.

20            I think the only concern this Court should have is

21   have you met the criteria that you need to meet as the

22   judicial officer, as the MDL judge to appoint individuals to

23   leadership that you have confidence can do the job for the

24   litigants involved in this case?

25            THE COURT:  But in fairness to Mr. Nassihi, I
```

1    mean, there is a process by which the Court should go

2    through, and we went through that process, and now you're

3    asking to change it.  Query, whether if not for anything,

4    just for housekeeping and keeping a clean record, should

5    there be a more formal request application that provides the

6    information that I went through when we appointed the team

7    as currently constituted.

8            MR. KIESEL:  So your Honor, thank you for that.

9    And I would say this:  The record would be clear that this

10   Court is intimately familiar with the litigants who are at

11   the table, who have been a part of this process, who've been

12   constructive in moving this litigation forward.

13           So I don't think there's any criticism from this

14   Court if you said, "You've made an application, Mr. Kiesel,

15   quite frankly, CLR and Knight Law" --

16           THE COURT:  Let me stop you.  I think I know where

17   you're going, but I'll just be blunt with you.  Look.  I

18   just got reversed from the Ninth Circuit on a class action

19   settlement because the Court felt -- and I'm not

20   criticizing -- that I didn't -- and this is my sort of

21   assessment of it -- I didn't dot my Is and cross my Ts.  I

22   think they ultimately thought the conclusion was fine, but

23   it got remanded back.

24           Shouldn't we, to avoid any issues like that, go

25   through a similar process?  You're right.  I think the

```
 1    record is abundantly clear about sort of the relationship,

 2    what I've seen.

 3              The only thing that is still -- I don't have all

 4    the information about the fee arrangement, although I

 5    thought there was some reference to it, but wouldn't it be

 6    more prudent to just have a formal filing where they can

 7    file objections and then the Court makes a ruling?

 8              MR. KIESEL:  So I'll answer it this way,

 9    Your Honor:  I was at the Ninth Circuit hearing.  I

10    monitored that at the Vargas hearing.  I watched what

11    happened, and I understood the Court was concerned you

12    hadn't gone through the checklist, the criteria --

13              THE COURT:  Right.

14              MR. KIESEL:  -- that you should evaluate before

15    approving a settlement.  I got that, which is why I say to

16    this Court, I believe you have all of the information

17    available necessary here --

18              THE COURT:  With all due respect, I don't care

19    what you think.  I care about what the folks in Pasadena

20    think.

21              MR. KIESEL:  And I got that, which is why, quite

22    frankly, I made the comment saying I think the record is

23    clear.  But it's your record.  So if you say, "You know

24    what, Mr. Kiesel, I think you need to provide a little bit

25    more information to us about the background of the lawyers
```

```
 1    who you want to seek to go to disposition," I'm happy to do

 2    it.  I want --

 3              THE COURT:  That's what I want to do.

 4              MR. KIESEL:  All right.  Then --

 5              THE COURT:  That's what I want to do.

 6              MR. KIESEL:  Done.  But let me just side note to

 7    the point that Mr. Nassihi was making because I think it's

 8    an important point.

 9              This has nothing to do with any fee application.

10    This has to do with the fact that Ford Motor Company has

11    three lawyers.  They've got Gordon & Reese.  They've got

12    Shook Hardy.  They've got a lot of lawyers at the table.

13    They have people on the telephone, in the sky, who were

14    there managing the work that Ford is doing.  They send me a

15    letter -- it's just us.

16              THE COURT:  No, look, Mr. Kiesel, I think this

17    discussion -- I think I've made it clear.  I don't have any

18    objection to doing it, but, quite frankly, in light of

19    Vargas, I want to make sure I've dotted my Is, crossed my Ts

20    so that, when others look at it, rightfully so, I will have

21    made a record that I believe is abundantly clear that I've

22    gone through the analysis, I've allowed the defense to make

23    objections if they deem appropriate, and I've made a

24    decision.

25              So if you could submit something -- I mean, look,
```

```
 1   the timing of it, I don't know if it -- well, the timing is

 2   up to you.  I mean, we've got a trial.  I don't think this

 3   impacts this immediate trial.  So you should file something,

 4   if you want, within the next 30 days, fine, and then we can

 5   consider it.

 6            MR. KIESEL:  I will be happy to do that.

 7            I'll make one other point, one final point, I

 8   hope, is that the suggestion that Pedante they can move to

 9   compel arbitration, it's outside the scheduling order.

10            This is certainly something that could well have

11   been aware of in -- as we're getting ready for trial in

12   Pedante, which is five weeks away, we really can't be

13   distracted by filing oppositions to a motion to compel

14   arbitration.

15            THE COURT:  I've made my comment that I think it's

16   late in the game, to say the least.  If they feel that

17   there's some legal basis for them to be able to do this and

18   that that gets them around the scheduling order, I suppose

19   they can make the filing.  I can't order them not to do it.

20   I don't think I can.

21            MR. KIESEL:  But do they need leave of Court to

22   obviate the scheduling order without --

23            THE COURT:  I would think so, I mean.  But they

24   may feel otherwise.  I mean, I thought they needed leave of

25   Court to file the motion in Nichols and they didn't do it.
```

1   And so --

2           MR. KIESEL:  So let me be clear as the lawyer on

3   behalf of the plaintiffs in this action.  If defendants wish

4   to bring a motion to compel arbitration outside of the

5   scheduling order, I would ask that they file a request with

6   this Court to evaluate the basis for this request before

7   they file a motion.

8           THE COURT:  I share your concerns.  But

9   Mr. Nassihi was very lawyerly in his answer to my question,

10  "Are you going to file a motion for -- to compel?"  At first

11  he didn't answer, then he said, "We anticipate that we

12  might."  I mean, you know, I don't know what to do with

13  that.

14          MR. NASSIHI:  Let me give you a --

15          THE COURT:  The third time's going to be the

16  charm.

17          MR. NASSIHI:  -- clear answer on this.

18          If Your Honor would -- if Your Honor asks that we

19  file motion for leave to file this motion to compel

20  arbitration and that certainly Mr. Kiesel's made that

21  request, we understand that.  We'd be very happy to do so.

22  We can certainly do that.

23          THE COURT:  You're filing a motion outside the

24  scheduling order.  Whether I -- there has to be a reason for

25  that; right?  That's what the rules require.  So you're

1    saying -- you started your comment saying, if the Court

2    wants me to.  That's what's required.

3           If you want to file a motion, you know it's

4    outside the scheduling order, you know you're going to have

5    to seek leave to file that motion.  So you should do it.

6           If you don't want to file the motion, then you

7    don't have to.  But I'm still not sure whether you're going

8    to file the motion.  And, quite frankly, I don't really care

9    at this point.  You know the rules.  If you want to file a

10   motion outside the scheduling order, seek leave, and we'll

11   go from there.

12          MR. NASSIHI:  We will file a motion for leave

13   that -- it sounds like plaintiffs have no objection, that us

14   doing that.  We'll preserve the issue for us, whether the

15   Court says yes or no to leave.  Our concern is that

16   preserving this issue, which arose as a result of this

17   Court's order a couple weeks ago.  So it's --

18          THE COURT:  All right.

19          MR. NASSIHI:  So certainly we will file a motion

20   for leave on these issues.

21          And on this CMO, Your Honor, we just want to make

22   sure this Court has a clear understanding when it makes its

23   determination as to what the fee structures here are, the

24   45 percent issue --

25          THE COURT:  With all due respect, let me do my

```
 1   job, I'll let you do your job.  Okay?  I've read your
 2   papers.  I understand what I have to do.  I've asked the
 3   plaintiff, in the abundance of caution, to submit something
 4   in writing.  I will conduct the analysis.  If I'm missing
 5   the information that I believe I need to make the
 6   determination, I will make that request to the plaintiffs.
 7   I've read your papers.  I understand your objection.
 8              MR. NASSIHI:  Absolutely.  And my only point here
 9   is plaintiffs are saying we're trying to have a say in that.
10   I'm saying we're not.  We just -- we think --
11              THE COURT:  It sure looks like you are.  But be
12   that as it may.
13              MR. NASSIHI:  We're asking for the regular process
14   to be followed.
15              THE COURT:  Right.  And so that's what I did.
16   That's what I intend to do.  And so that's why I've asked
17   the plaintiff to submit something in writing more formal
18   making the request.  All right?
19              MR. NASSIHI:  Thank you, Your Honor.
20              THE COURT:  All right.  Is there anything further?
21              Mr. Resnick, you've been quiet this morning,
22   uncharacteristically quiet.
23              MR. RESNICK:  Yeah.  Thank you, Your Honor.  Just
24   two quick points.  One is -- and it's just I have to -- I
25   have a wife and like a couple of kids that would kill me if
```

```
 1   I didn't request if Ford would be agreeable to a few more
 2   day extension on the reply so I could get my October 4th.  I
 3   know it's a revisit, but I have a family that would tell me
 4   why didn't you ask it.
 5            THE COURT:  Okay.  Well, you can tell them you
 6   asked.  And I share your pain and probably your wife and my
 7   wife will run to the same divorce lawyer.  And I'm kidding,
 8   but I understand the sensitivities.  But I'm trying to work
 9   as best I can.  So it's not what you want, it's not what
10   they want, it's somewhere in between.
11            MR. RESNICK:  I appreciate it.  Had to ask.  Now
12   it's off my conscience.
13            The second other quick point simply had to just go
14   back to the issue that arose with Pedante and the
15   spoliation.  And it's just because, as you know, between
16   Knight and my firm, we have probably all of the -- 98 --
17            THE COURT:  Right.
18            MR. RESNICK:  -- 99 percent of all the cases.
19   There's a thousand sitting in queue, and, you know, this
20   could take some time and people -- these -- it's our
21   position these transmissions keep failing, will continue to
22   fail, and if your car shuts down, then you have to go to a
23   Ford certified dealer.  And Ford just extended warranties on
24   clutches, and so they may get a repair done.
25            Ford has a system called FMC Dealer where they can
```

```
 1   simply post a bulletin to all dealerships accessible by

 2   North American dealerships with VINs.  If one of these VINs

 3   come in, save the part.  Do the repair, save the part.  Oh,

 4   and please don't contact them trying to get a buyback,

 5   because they all do that.  It's a big issue in the Michigan

 6   mass action.

 7           And then there's no spoliation issues and the

 8   car's there, and if they have to get a repair because it's a

 9   safety issue, the parts are preserved because there's a

10   directive through FMC Dealer.  That's my only request going

11   forward in this MDL.

12           THE COURT:  Well, I'm not --

13           MR. RESNICK:  If it's an issue.

14           THE COURT:  What's your -- I'm not sure I

15   understand your --

16           MR. RESNICK:  Well, simply that when -- we may

17   have other issues.  They're now perhaps trying to move

18   Pedante from the schedule because in part of the parts that

19   got destroyed by Galpin.  If there was a dealer bulletin on

20   FMC Dealer with all the VINs in this MDL, dealerships come

21   in, oh, wait, there's this VIN post out, there's a bulletin.

22   Okay, all dealerships in So Cal or in California, when you

23   have a VIN, cross-reference it against these lists of a

24   thousand people that are in active litigation.

25           If they have to get their clutch replaced, do it,
```

```
 1    but preserve the part and don't contact them trying to buy

 2    it back because you need cars on the lot because that would

 3    be a trade-in and perhaps spoliation under Ford's theory.

 4              So I'm just saying there's a way to resolve that

 5    so that the next 20 cases that go to trial don't have this

 6    argument.  That's --

 7              THE COURT:  I almost had a heart attack when you

 8    said the next 20 cases.

 9              MR. RESNICK:  Yeah.

10              THE COURT:  I'm kidding.  I'm kidding but -- well,

11    look.  I mean, I don't think I can order Ford to do that,

12    but I mean the point is one that seems well-taken to avoid

13    this issue going forward.

14              And I think Mr. Kelly indicated that some dealers

15    do keep it, some don't.  And if this is a way for them to

16    potentially keep it to avoid this issue, then --

17              MR. RESNICK:  Absolutely is.  And I was just

18    advising the Court that there is a very easy way for Ford to

19    let all dealerships know about the VINs that are actively in

20    litigation, to the extent that they still exist.  Some cars

21    have been totaled two years ago.  But the ones that are

22    still in play, they could preserve that if they want to.

23              THE COURT:  Right.

24              MR. RESNICK:  And that's just so Your Honor knows

25    that.  Okay?
```

```
 1              THE COURT:  All right.

 2              MR. RESNICK:  Thank you.

 3              THE COURT:  Appreciate that.

 4              Mr. Kelly.

 5              MR. KELLY:  Thank you, Your Honor.  I appreciate

 6    the suggestion from counsel, and I'll take it under

 7    consideration, see if there's something like that that can

 8    be done to avoid this happening again.

 9              But there is -- the one thing that is always

10    certain is that the plaintiffs know if they're taking the

11    vehicle into a dealership, and they can just tell us.  I

12    mean, that's pretty simple.

13              THE COURT:  You mean the plaintiff telling a

14    dealer this car's under litigation?  Is that what you're

15    saying?

16              MR. KELLY:  No, no.  If the plaintiff is going to

17    take a car in for repair that's in litigation, they just

18    tell counsel, we're going to take it in, and counsel tells

19    us.  That's pretty straightforward.

20              THE COURT:  Well, yes, but I will say, I mean, it

21    is -- it is straightforward, but I don't know if that's

22    realistic.  I mean, you're talking about a thousand

23    individuals.  Again, maybe you haven't done both sides.

24    Just relying on my client, let's -- I'm just envisioning a

25    scenario.  Car's shuddering.  They drive to wherever because
```

```
 1   they need it fixed.  They're going to remember at that time

 2   on that day to call their lawyer and say, "My car's at the

 3   dealer"?

 4           They may -- what I envision is they'll remember

 5   two days later and call, and by that time the issue may have

 6   already -- I mean, the problem may have already occurred.

 7           So I get -- yeah, both sides could assist, but it

 8   strikes me, if in fact Ford has a database where when you

 9   punch in the VIN there's a alert, utilize it.  If they

10   don't, they don't.

11           But to the extent that both sides become aware

12   that their car's at a dealer, yeah, it'd be nice if you

13   could just meet and confer and share that information.  But

14   given the history of this case, I can't say I'm overly

15   optimistic that that will occur, but I will make the request

16   of both sides.  If you have information, look, Ford is --

17   Mr. Higgins has said -- I'm sorry, I keep -- what a day.

18           Counsel has said that he understands there to be

19   this alert system.  You've indicated you'll take it under

20   advisement and go back to your client and find out if it

21   exists.  If it exists, great.  If it doesn't, sobeit.

22           And by the same token, if you have become aware of

23   cars are going to the dealer, hey, shoot an e-mail over and

24   say, hey.  The car's at Galpin, the car's at Buena Park

25   Ford, what have you so that they then know.
```

```
 1            My concern is trusting the client -- or I thought

 2    you were suggesting trusting a mechanic to know, oh, boy, I

 3    need to do something because that's unlikely.  So -- but --

 4    well, the theme of this hearing should have been, guys,

 5    please, can you guys just start talking to each other?

 6    We're getting close to trial.  We're getting close to what

 7    you all want, I think.  Try to communicate with one another

 8    to help avoid or minimize major disputes.

 9            MR. KELLY:  Let me leave you with this thought,

10    Your Honor.  You commented that litigation is warfare.  Not

11    in my view, and I don't think in counsel's view.  And we

12    will do -- I think we can commit to do everything here on

13    forward and through trial to convince you otherwise.

14            THE COURT:  I'm going to -- I should order that

15    transcript because I think I've heard that from one or more

16    counsel throughout the course of this litigation, and we

17    have spent close to two hours engaging in what I would -- I

18    don't know in you could call it anything other than

19    negotiating or managing warfare because I think a lot of

20    this stuff that happened today I think could have been

21    resolved if the parties communicated more.

22            But I will take you at your word.  You're the

23    latest person to say that.  So I'll -- we'll hope that it

24    sticks this time.

25            MR. KELLY:  Well, if it doesn't, Your Honor, you
```

```
 1    have me to call on the carpet.

 2              THE COURT:  I'll waiting for that Shelby Mustang,

 3    then.  No.  Just kidding.

 4              All right.  Anything further?  Mr. Nassihi.

 5              MR. KELLY:  Cheaper than the Corvette, Your Honor.

 6              MR. NASSIHI:  One more controversial issue,

 7    Your Honor.  And Mr. Kirnos -- we have had a lot of

 8    cooperative discussions, but we just got -- talked briefly

 9    that maybe we do the motions before the pretrial conference,

10    two weeks before for the opening briefs, the week before for

11    the opps.

12              I just wanted to check, would this -- would that

13    be okay with the Court, our submitting the papers -- the

14    final papers on the 17th in respect to the motions in

15    limine, a week before, and we will work out and finalize the

16    schedules --

17              THE COURT:  They would otherwise be due on the

18    14th; right?  I'm not sure I am following you.

19              MR. NASSIHI:  Well, we were going to work on a

20    schedule together --

21              THE COURT:  Right.

22              MR. NASSIHI:  -- but that would have the

23    oppositions end up being due on October 17.

24              MR. KIRNOS:  I think Mr. -- excuse me.  Sorry,

25    Your Honor.
```

```
 1                THE COURT:  Just identify yourself for the record.
 2     I'm sorry.  Mr. Kirnos?
 3                MR. KIRNOS:  Roger Kirnos, Your Honor.  Nice to
 4     meet you.
 5                THE COURT:  All right.  Likewise.
 6                MR. KIRNOS:  We're just wondering whether one week
 7     is sufficient for the Court to have the full trial document
 8     filed.
 9                THE COURT:  You actually care about the Court?  Is
10     that what you're saying?
11                MR. NASSIHI:  Yes, we do.
12                MR. KIESEL:  He's only here today, Your Honor.
13                THE COURT:  Right.  I was going to say, yes.  I
14     mean, I don't know, quite frankly -- look, I mean, we don't
15     have a choice.  We've got a trial coming up October 5th.  So
16     meet and -- if that's the date you feel, we'll -- we will
17     just get it done.  I mean, that -- we will just get it done.
18     All right.
19                MR. KIESEL:  And just one thought --
20                THE COURT:  Yes.
21                MR. KIESEL:  -- for technology purposes.
22                THE COURT:  Yes.
23                MR. KIESEL:  For purposes of science day, I
24     suspect what we're going to do is probably show a video for
25     the Court.
```

```
1            THE COURT:  You going to show the YouTube video

2   for ten minutes and 30 seconds?

3            MR. KIESEL:  Ten minutes, 31 seconds.

4            THE COURT:  All right.

5            MR. KIESEL:  Is the television set the Court has

6   here something that we can plug into to use?  We'll --

7            THE COURT:  Right.  If you choose it -- if you

8   plug it into the monitor, it comes up on my screen.

9            MR. KIESEL:  Perfect.  That's all we need.

10            THE COURT:  Yes.  All right.

11            All right.  Anything further from either side?

12   Yes, Mr. Nassihi.

13            MR. NASSIHI:  You know, Mr. Kiesel's commended

14   reminded me that for trial, we -- both sides will likely be

15   wanting to bring demonstrative exhibits.  And should we

16   proceed via this Court in terms of getting an order to allow

17   us to use a different entrance to bring larger materials in?

18            THE COURT:  Right.  If you talk to our courtroom

19   deputy, they'll -- I mean, are we talking about the

20   transmission or --

21            MR. KIESEL:  I'm thinking a Ford Focus might be --

22            THE COURT:  I was going to say what -- are you

23   going to try to bring it up on the seventh floor?  I mean --

24            MR. NASSIHI:  Mr. Kelly can describe the type of

25   larger items to be brought in.
```

```
 1            MR. KELLY:  It's possible we may have a
 2   transmission, Your Honor.  It's possible but probably more
 3   likely smaller components that we just need to get through
 4   security --
 5            THE COURT:  Well, look, as it relates to that, get
 6   here early.  That's all I can tell you because it -- unless
 7   it's massive -- like, I had a meat grinder in one case.
 8   That went through the loading dock.  But it had to be
 9   massive.  Otherwise, you have to go through security.
10            MR. KELLY:  Okay.
11            THE COURT:  So --
12            MR. KELLY:  That's what I needed to know.
13            THE COURT:  Right.  Okay.  All right.  So yeah, if
14   it's smaller -- I guess if it's smaller than a meat grinder,
15   you have to go through security.
16            All right.  So I just want to just quickly -- I
17   just want to go through my notes.
18            So as it relates to the first motion, the motion
19   with respect to the Nichols motion, I'm not going to deal
20   with it right now.  So I can either -- we can -- I can deny
21   it without prejudice to be refiled at a later point or we
22   just table this for another date.  I think probably --
23   again, if we're talking about just keeping the record clean,
24   I guess it's easier to deny it so that it doesn't remain
25   outstanding on the docket.  But that's -- I mean, that's my
```

```
 1    leaning at with respect to that motion.

 2                MR. NASSIHI:  I think either way.  Either we table

 3    it at this point or deny it without prejudice to reveal --

 4                THE COURT:  So just so the record's clean, I'm

 5    going to deny the motion without prejudice subject to your

 6    refiling it at a time you deem appropriate, but I don't

 7    think it's necessary right now.

 8                As it relates to the motion to exclude the

 9    witnesses, I'm going to also deny that motion without

10    prejudice.  As it relates to the Daubert aspects of the

11    motion, we're going to deal with that on the 24th.  So

12    that's in large part the basis for the denial.

13                As to the Rule 26 issues, I'm going to -- based on

14    what I've heard, it appears to me that, to the extent

15    there's not technical compliance within all the rules of

16    Rule 26, there is compliance in the spirit of Rule 26.

17                I'm going to order the parties to meet and confer

18    again or I should say not again.  Meet and confer to discuss

19    what the outstanding issues that either side has with

20    respect to both parties' experts.  And in doing so,

21    please -- I would expect both sides to review their doctors'

22    report -- their expert reports in light of the motions that

23    are being filed so that you can point out to each other

24    where you think you've complied and/or where you think you

25    fell short.
```

```
 1          Again, I think a lot of this is going to be
 2   resolved in the Daubert aspect of it but to the extent -- in
 3   advance of that, I think it might be time well spent to have
 4   at least a discussion about where you think the outstanding
 5   issues are with respect to Rule 26.
 6          So I think that's it with respect to the motions.
 7          With respect to the plaintiffs' proposed addition
 8   to the management team, I'll ask that at least -- well, I
 9   guess it's not even a motion -- but I'd ask the plaintiff to
10   submit something in writing with respect to any changes to
11   the management structure of the plaintiffs' side.
12          And then I think we talked about you all have
13   agreed upon some dates for the filings with respect to the
14   hearings on the 24th.  If you could just again, so that the
15   record's clean, could you file a proposed stip?  Could you
16   do that within the next -- today -- by Monday, October --
17   when is it?  Today is -- let's see.
18          Ms. Taft, could you do that by Monday?  Right.
19   Yes, I do.  Things -- I won't say -- items tend to roll
20   downhill.  And so is that reasonable?  Or is that going to
21   be a challenge for you to get it done by Monday?  If not, I
22   can give you more time, but I --
23          MS. TAFT:  If I could get later on next week, Your
24   Honor, that would be --
25          THE COURT:  Could you do it by October the 2nd --
```

```
 1   I'm sorry -- yeah, October the 2nd, next Wednesday?
 2           MR. GIELEGHEM:  Your Honor, in Ms. Taft's defense,
 3   may I suggest the 3rd?  Because we are going to be swamped
 4   getting the oppositions to the Daubert motions and the MSJs
 5   to --
 6           THE COURT:  Okay.
 7           MR. GIELEGHEM:  -- your Honor by the 2nd.
 8           THE COURT:  How about -- how about next Friday,
 9   the 4th?
10           MS. TAFT:  Perfect.
11           THE COURT:  All right.  October -- so you'll file
12   the stip -- so the Court knows the dates on those motions.
13           Okay.  Let's see.  And then I think I let the
14   parties know we're going to have five motions in limine for
15   each case.
16           And query do we need to set another date for a
17   management conference in light of all the time that we're
18   going to be spending together over the next month,
19   Mr. Kiesel?
20           MR. KIESEL:  I don't think so.  I think if we come
21   back on October 23rd, which would be our next return date --
22           THE COURT:  Right.
23           MR. KIESEL:  -- that we had.  The 23rd is that
24   date.  The only thing I want the record to be clear is that
25   we're going to start with Pedante and the other cases will
```

 1   be staggered out, but this is just going to be Pedante.

 2            THE COURT:  Yes, Pedante is the date that's set

 3   for trial unless -- until and unless something changes.

 4            MR. KIESEL:  As the Court's just going through its

 5   checklist of things he did today, I just want to make sure

 6   that's a part of that --

 7            THE COURT:  Yes, Pedante is the first case going

 8   to trial on November the 5th.

 9            MR. NASSIHI:  And would the Court like us in our

10   stip to also propose pretrial -- final pretrial conference

11   dates for the other cases or --

12            THE COURT:  While you're at it, I mean, that wold

13   not be a bad idea.  Given the other trial dates, you can

14   sort of work -- since you're discussing dates, if you could,

15   that's great.

16            But if that's -- if the other trial dates become

17   an issue, Ms. Taft, just get what's done for the Pedante

18   case first.  Ideally, you should be able to do it in light

19   of our conversation.  I would hope you'd be able to get

20   other dates, but if not, then give me the date -- let's get

21   the dates down for the Pedante case.

22            All right.  Anything further?  All right.  Have a

23   good weekend, everyone, and I will see you on October the

24   23rd.  Thank you.

25            THE CLERK:  All rise.  This Court is adjourned.

1          (Proceedings concluded at 11:23 A.M.)

2                          --oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                            CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  October 14, 2019.

11

12

13

14              ___/S/ CHIA MEI JUI _____

15              Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

MR. CHANG: [1] 5/23
MR. DALTON: [1] 5/3
MR. GIELEGHEM: [6]
4/10 12/22 13/4 22/18
83/1 83/6
MR. HIGGINS: [14]
4/16 17/18 17/20
17/22 17/24 18/10
18/20 19/5 19/11 20/5
21/17 22/16 27/10
28/8
MR. KELLY: [46]
5/10 15/21 15/23
23/21 23/25 24/4
25/12 26/7 26/17
26/19 34/7 34/9 34/16
34/22 35/17 35/20
35/24 36/5 39/12
39/24 40/10 40/17
40/20 40/22 41/2
41/15 41/18 41/24
42/2 42/10 43/6 45/6
45/10 45/20 45/22
46/5 48/20 49/2 74/4
74/15 76/8 76/24 77/4
79/25 80/9 80/11
MR. KIESEL: [38]
4/19 30/22 32/1 36/7
36/20 43/2 43/14
44/18 46/16 48/2
48/12 53/14 53/19
55/22 56/4 56/7 56/21
63/13 64/7 65/7 65/13
65/20 66/3 66/5 67/5
67/20 68/1 78/11
78/18 78/20 78/22
79/2 79/4 79/8 79/20
83/19 83/22 84/3
MR. KIRNOS: [4]
4/22 77/23 78/2 78/5
MR. NASSIHI: [81]
5/7 6/19 7/7 7/9 9/2
9/6 9/8 9/10 10/9
10/14 10/16 11/17
11/21 11/24 32/18
33/3 33/5 33/19 36/24
37/11 38/9 38/25 39/4
39/6 49/14 49/17
49/20 50/2 50/6 50/12
50/14 50/17 50/20
51/2 51/8 51/13 51/16
52/1 52/5 52/7 52/12
52/16 52/22 52/24
53/1 53/11 54/1 54/4
54/20 55/2 55/6 55/9
56/22 57/2 57/5 57/13
57/16 58/15 59/3 59/9
60/18 61/14 61/16
61/22 62/7 62/11
68/13 68/16 69/11
69/18 70/7 70/12
70/18 77/5 77/18
77/21 78/10 79/12
79/23 81/1 84/8
MR. RESNICK: [10]
4/13 70/22 71/10
71/17 72/12 72/15

73/8 73/16 73/23 74/1
MR. THOMAS: [1]
5/20
MS. CAMAGONG: [1]
5/16
MS. MacLEAR: [1]
6/1
MS. MROWKA: [13]
5/13 14/22 14/25
15/20 16/9 16/20
17/10 28/2 28/10
28/12 28/15 28/19
29/15
MS. TAFT: [3] 4/7
82/22 83/9
THE CLERK: [2] 4/3
84/24
THE COURT: [212]

-
-- I [2] 9/18 43/1
--oOo [1] 85/2

1
1.9 million [1] 47/8
1/2 [1] 2/9
11:23 [1] 85/1
12 [6] 11/25 12/1
33/14 51/20 55/10
61/15
12th [1] 9/15
13 [1] 9/11
1343 [1] 2/19
1398 [1] 2/10
14 [1] 86/10
14th [2] 55/2 77/18
14th is [1] 56/17
153 [1] 2/9
17 [1] 77/23
17th [1] 77/14
18 [1] 63/4
18-2814 [1] 4/4
18-2814-AB [1] 1/5
1801 [1] 2/14
1840 [1] 2/23
19 [1] 33/13
1900 [1] 3/11
1st [1] 55/21

2
20 [2] 73/5 73/8
20-plus [1] 23/13
2000 [1] 3/15
2018 [3] 9/15 39/15
63/4
2019 [8] 1/11 4/1
24/15 39/16 40/17
41/18 46/1 86/10
21 [1] 56/16
21-day [2] 32/7 32/8
21st [1] 32/8
22-page [1] 20/6
2215 [1] 2/20
2250 [1] 2/15
2300 [1] 2/14
23rd [5] 38/13 38/18
83/21 83/23 84/24
23rd that [1] 39/20

24 [42] 42/5 43/17
44/2 49/5
24th [13] 30/1 32/12
38/20 52/5 52/6 52/8
52/12 52/20 52/22
53/3 54/1 81/11 82/14
24th of [1] 53/18
24th or [1] 38/11
24th would [1] 52/13
25th [3] 21/5 29/25
52/11
25th to [1] 30/1
26 [14] 1/11 4/1 13/14
14/18 15/14 16/5 16/9
18/8 22/12 29/7 81/13
81/16 81/16 82/5
2700 [1] 3/10
2723 [1] 3/4
275 [1] 3/15
28 [1] 86/4
2814 [1] 4/4
29th [1] 14/8
2nd [8] 54/18 55/22
57/4 57/5 57/7 82/25
83/1 83/7

3
30 [7] 17/5 31/15
31/19 32/6 53/21 67/4
79/2
30th [3] 54/7 54/11
55/13
31 [2] 36/22 79/3
310-213-1398 [1] 2/10
310-552-2250 [1] 2/15
310-854-4444 [1] 2/5
310-929-4900 [1] 2/25
3287 [2] 1/23 86/15
350 [1] 1/24
3rd [1] 83/3

4
400 [1] 3/4
415-544-1900 [1] 3/11
415-986-5900 [1] 3/16
430 [1] 2/24
4311 [1] 1/24
4444 [1] 2/5
45 percent [2] 62/14
69/24
48 [2] 44/8 49/5
48104 [1] 3/5
4900 [1] 2/25
4th [6] 54/3 54/24
55/1 56/1 71/2 83/9
4th was [1] 55/24

5
5900 [1] 3/16
5th [12] 6/16 21/9
23/25 24/1 24/6 26/14
26/16 29/24 41/23
45/6 78/15 84/8

7
70471 [1] 2/20
734-214-7613 [1] 3/5
753 [1] 86/3
7613 [1] 3/5

778-2215 [1] 2/20
7th [1] 9/12

8
8648 [1] 2/4

9
90012 [1] 1/24
90067 [2] 2/15 2/24
90211 [2] 2/5 2/10
94104 [1] 3/11
94111 [1] 3/16
98 [1] 71/16
985 [1] 2/20
99 percent [1] 71/18
9:00 A.M [2] 38/19
38/20
9:40 [2] 1/12 4/2

A
AB [1] 1/5
ability [2] 32/15 45/5
able [8] 44/2 44/7 44/8
53/12 60/22 67/17
84/18 84/19
absolutely [5] 15/5
23/19 39/5 70/8 73/17
absurd [1] 21/13
abundance [1] 70/3
abundantly [1] 65/1
66/21
accepted [1] 51/6
accessible [1] 72/1
accomplish [1] 43/4
accurate [1] 45/14
acknowledging [2]
19/3 21/21
acquired [1] 12/24
across [1] 44/8
action [3] 64/18 68/3
72/6
active [1] 72/24
actively [1] 73/19
activities [1] 33/15
activity [1] 9/21
actual [1] 63/2
add [2] 22/19 42/2
added [1] 58/7
addition [3] 35/5
56/12 82/7
additional [2] 25/5
25/24 31/18 56/12
address [3] 32/3 52/3
60/25
addressed [3] 12/4
21/6 41/22
adherence [1] 16/4
adjourned [1] 84/25
adjust [1] 55/14
admit [1] 15/9
admonishment [1]
23/17
advance [1] 82/3
advanced [1] 53/17
advised [1] 11/9
advisement [1] 75/20
advising [1] 73/18
advocated [1] 51/5

advocating [1] 37/1
affair [1] 37/11
affect [1] 34/24
aflow [1] 11/5
after [10] 16/11 24/11
24/17 26/10 33/13
40/7 45/15 45/15 46/1
46/14
afternoon [1] 32/23
again [23] 7/23 8/24
10/21 11/3 13/8 14/5
15/13 17/16 32/13
34/3 38/12 38/21 42/9
49/11 50/24 60/17
74/8 74/23 80/23
81/18 81/18 82/1
82/14
against [3] 30/3 38/21
72/23
agency [2] 51/6 51/11
agent [1] 47/15
agents [2] 48/5 49/24
ago [7] 50/23 51/7
55/3 55/17 57/1 69/17
73/21
agree [4] 21/19 41/14
51/3 58/16
agreeable [1] 71/1
agreed [1] 82/13
agreement [2] 48/7
62/15
agreements [1] 63/3
agrees [1] 10/18
Ah [1] 13/25
ahead [7] 10/1 23/25
26/19 56/4 61/16
62/10 62/10
airplane [1] 44/22
alert [3] 46/23 75/9
75/19
all -- I [1] 29/21
all-day [1] 37/11
allegation [1] 22/6
allocate [1] 60/23
allow [1] 79/16
allowed [2] 51/11
66/22
almost [1] 58/5 73/7
along [2] 37/2 58/15
already [4] 7/19 11/5
75/6 75/6
already -- I [1] 75/6
alternative [1] 54/16
although [2] 32/3 65/4
always [1] 74/9
ambush [1] 14/9
American [1] 72/2
AMIR [3] 3/8 5/9 6/20
Amir Nassihi [2] 5/9
6/20
among [1] 23/11
amount [1] 40/24
AMY [2] 3/14 6/2
Amy Maclear [1] 6/2
analysis [5] 25/18
26/11 44/13 66/22
70/4
analyze [3] 24/22

**A**

analyze... [2] 25/23 26/12
and then [1] 30/12
and/or [1] 81/24
ANDREW [2] 3/9 5/25
Andrew Chang [1] 5/25
ANDRÉ [1] 1/3
ANGELES [5] 1/13 1/24 2/15 2/24 4/1
ANN [1] 3/5
another [10] 21/11 22/6 32/25 33/12 43/20 60/5 62/23 76/7 80/22 83/16
answer [11] 12/12 42/7 42/22 43/1 44/3 44/19 55/23 65/8 68/9 68/11 68/17
answers [1] 43/16
Anthony [1] 28/17
anticipate [2] 50/18 68/11
anticipation [1] 36/1
apart [4] 10/7 10/10 10/11 10/16
APC [1] 2/8
apparently [1] 22/3
appearances [3] 2/1 3/1 4/7
appears [4] 13/22 14/1 60/2 81/14
application [11] 57/19 57/22 60/10 61/7 61/10 61/20 63/1 63/8 64/5 64/14 66/9
applications [1] 59/23
apply [1] 12/14
appoint [1] 63/22
appointed [1] 64/6
appointment [4] 57/18 58/23 59/17 61/5
appointment's [1] 59/2
appointments [1] 59/21
appreciate [6] 35/16 37/19 37/24 71/11 74/3 74/5
apprise [1] 62/25
APPROACH [1] 2/19
approaches [1] 61/6
appropriate [3] 59/8 66/23 81/6
approving [1] 65/15
April [8] 24/15 26/9 27/12 27/20 40/19 46/1 47/5 63/4
April 18 [1] 63/4
arbitration [11] 47/25 48/7 48/9 49/16 49/18 50/5 50/17 67/9 67/14 68/4 68/20
ARBOR [1] 3/5
aren't [2] 6/14 42/19
arguably [1] 15/17

**B**

argue [1] 16/14
argued [1] 51/6
argument [3] 16/15 50/10 73/6
arised [1] 50/8
ARNAZ [1] 2/9
arose [2] 69/16 71/14
around [3] 38/5 54/8 67/18
arranged [2] 24/12 55/12
arrangement [1] 65/4
arrangements [1] 58/22
asked [8] 8/9 25/10 26/5 29/22 43/16 70/2 70/16 71/6
asking [6] 42/3 59/20 59/22 60/21 62/1 62/25 64/3 70/13
asks [1] 68/18
aspect [1] 82/2
aspects [3] 13/13 21/4 81/10
asserting [1] 50/9
assessment [1] 64/21
assist [3] 7/6 35/17 75/7
assure [1] 48/16
attached [4] 25/15 27/15 28/5 28/13
attack [1] 73/7
attempt [1] 61/9
attempted [1] 18/15
attendance [1] 39/18
attention [1] 59/14
August [1] 11/13
Australia [1] 44/22
authorities [3] 58/18 60/7 61/1
authorized [4] 27/19 40/5 46/21 47/10
automatic [1] 62/5
availability [1] 44/21
available [1] 65/17
avoid [6] 14/5 64/24 73/12 73/16 74/8 76/8
await [1] 50/24
aware [4] 58/25 67/11 75/11 75/22
away [2] 39/25 67/12
AWS [1] 47/3

**B**

back [11] 19/23 32/16 38/7 40/1 47/12 57/22 64/23 71/14 73/2 75/20 83/21
background [1] 65/25
backseat [1] 56/10
BACON [1] 3/7
bad [2] 9/22 84/13
based [2] 40/13 81/13
basically [1] 14/2
basis [5] 19/8 26/4 67/17 68/6 81/12
BATTERY [1] 3/15
bear [1] 23/14

bearing [1] 12/17 12/20
become [3] 75/11 75/22 84/16
before [10] 41/22 47/18 51/24 56/9 65/14 68/6 77/9 77/10 77/10 77/15
began [1] 42/13
behalf [4] 4/24 5/5 6/2 68/3
behind [1] 51/10
behold [1] 23/12
believe [9] 13/20 25/13 30/9 37/3 54/15 60/18 65/16 66/21 70/5
benefit [3] 59/18 60/4 60/20
best [7] 30/10 30/20 38/3 39/7 60/11 61/7 71/9
better [4] 30/3 38/1 38/21 55/25
between [4] 8/3 34/20 71/10 71/15
BEVERLY [4] 2/5 2/10 7/20 8/4
beyond [1] 36/9
big [3] 11/6 51/24 72/5
BIROTTE [1] 1/3
bit [2] 33/7 65/24
blew [1] 57/1
blowing [1] 34/1
blue [1] 11/15
blunt [2] 37/21 64/17
both [24] 8/5 9/12 13/18 14/5 14/18 16/4 21/8 22/4 22/7 26/21 31/2 37/3 39/18 39/21 39/21 47/17 57/9 74/23 75/7 75/11 75/16 79/14 81/20 81/21
bottom [1] 20/8
BOULEVARD [1] 2/4
bound [1] 48/7
box [3] 9/24 10/8 36/11
boy [1] 76/2
break [1] 11/20
bridge [1] 28/1
brief [2] 9/12 60/6
briefly [8] 22/19 27/12 38/22 38/22 52/3 63/13 63/15 77/8
briefs [3] 54/7 55/13 77/10
bring [8] 6/13 7/3 11/9 23/23 68/4 79/15 79/17 79/23
broad [3] 16/3 19/20 29/9
brought [3] 55/17 59/19 79/25
Buena [1] 75/24
Buena Park [1] 75/24
bulletin [3] 72/1 72/19 72/21

bulletins [2] 28/25 29/10
bunch [3] 7/6 30/18 58/12
burdens [1] 16/22
business [1] 44/3
butcher [2] 15/19 49/1
buy [1] 73/1
buyback [1] 72/4

**C**

cable [1] 34/20
cable -- I [1] 34/20
Cal [1] 72/22
calendar [1] 30/2
CALIFORNIA [11] 1/2 1/13 1/24 2/5 2/10 2/15 2/24 3/11 3/16 4/1 72/22
call [7] 9/24 15/24 15/25 75/2 75/5 76/18 77/1
called [5] 35/3 36/17 36/20 47/2 71/25
calling [2] 4/4 43/1
CAMAGONG [2] 3/9 5/18
came [2] 11/15 56/25
candid [1] 20/17
cap [1] 62/5
car [9] 37/23 38/5 43/2 44/16 45/3 45/14 45/18 71/22 74/17
car's [7] 72/8 74/14 74/25 75/2 75/12 75/24 75/24
care [5] 18/5 65/18 65/19 69/8 78/9
carpet [1] 77/1
cars [3] 73/2 73/20 75/23
carve [1] 55/19
carved [1] 54/10
Case Number 1 [1] 31/5
cases [24] 6/11 6/14 7/5 7/7 7/22 8/11 8/14 9/2 12/7 12/18 20/4 31/9 37/7 42/20 50/10 51/24 58/17 61/14 61/21 71/18 73/5 73/8 83/25 84/11
categories [1] 29/10
category [1] 13/8
caused [1] 21/20
causes [2] 44/17 44/20
CAUSEWAY [1] 2/19
caution [1] 70/3
CCRR [1] 1/23
central [4] 1/2 7/21 11/1 12/4
CENTURY [2] 2/14 2/23
certain [3] 13/13 60/3 74/10
certainly [16] 11/22 12/2 22/21 23/16

32/19 33/11 43/17 51/14 51/17 58/24 59/16 60/10 67/10 68/20 68/22 69/19
CERTIFICATE [1] 86/1
certified [1] 71/23
certify [1] 86/3
cetera [2] 49/9 49/10
challenge [1] 82/21
chance [1] 41/13
CHANG [2] 3/9 5/25
change [3] 46/14 61/20 64/3
changed [3] 41/11 41/25 45/15
changes [2] 82/10 84/3
characterization [1] 18/23
characterize [1] 22/20
charm [1] 68/16
chart [3] 15/4 27/14 28/4
chatter [3] 8/21 9/3 10/2
Cheaper [1] 77/5
check [1] 77/12
checklist [2] 65/12 84/5
CHIA [3] 1/23 86/14 86/15
choice [1] 78/15
choose [4] 7/15 17/5 27/2 79/7
Circuit [2] 64/18 65/9
circumventing [1] 57/20
citations [2] 19/23 59/12
cite [2] 20/9 62/3
cited [4] 19/13 19/13 19/16 61/22
civil [2] 16/16 16/17
claim [2] 27/22 35/5
claimed [1] 23/1
claiming [1] 48/5
claims [1] 34/23
clarification [1] 53/15
class [1] 64/18
clean [4] 64/4 80/23 81/4 82/15
clear [17] 6/12 12/5 16/22 17/16 22/4 27/16 38/16 53/16 64/9 65/1 65/23 66/17 66/21 68/22 68/17 69/22 83/24
clear-cut [1] 16/22
clearly [1] 28/6
client [5] 37/20 51/2 74/24 75/20 76/1
clients' [3] 13/10 14/5 53/11
close [6] 44/3 56/16 61/6 76/6 76/6 76/17
closed [1] 46/12
closer [1] 24/3

**C**

closes [1] 17/6
CLR [7] 2/7 4/12 18/4
22/25 23/6 23/15
64/15
clutch [7] 24/15 27/20
36/12 36/18 36/21
39/14 72/25
clutches [1] 71/24
cmjui.csr [1] 1/25
CMO [3] 60/14 61/11
69/21
CO [1] 1/5
Code [1] 56/18 86/4
coffers [1] 59/2
collateral [1] 42/18
column [2] 28/16
28/20
comes [3] 29/14 51/5
79/8
coming [4] 6/16 23/7
23/23 78/15
commended [1] 79/13
comment [4] 56/3
65/22 67/15 69/1
commented [1] 76/10
commit [1] 76/12
committee [2] 23/11
59/9
common [6] 6/23 8/9
9/13 59/18 60/4 60/20
communicate [1] 76/7
communicated [1]
76/21
communicating [1]
22/22
communication [2]
22/21 34/20
communications [1]
23/3
Company [10] 4/5 5/9
5/22 5/25 20/15 46/22
46/23 47/1 48/6 66/10
Company's [1] 47/15
compare [1] 47/25
compel [7] 50/5 50/17
67/9 67/13 68/4 68/10
68/19
compelled [1] 48/9
compensate [1] 12/9
compensated [3] 7/16
7/19 8/2
compensation [2] 8/3
8/4
complained [1] 7/24
complaining [4] 8/22
21/23 47/9 47/9
complaints [1] 56/24
complete [1] 19/7
completely [1] 15/6
complex [2] 58/19
58/20
compliance [2] 81/15
81/16
compliant [3] 16/24
28/21 29/12
complicated [1] 34/17
complied [1] 81/24

**comply [4]** 15/18
22/11 29/6 31/18
component [1] 35/6
componentry [1]
39/19
components [7] 34/25
35/3 40/2 41/5 41/5
41/6 80/3
components' [1]
34/25
computer [3] 35/7
35/11 47/3
concede [3] 18/10
18/11 18/12
conceded [2] 18/23
18/24
concern [5] 57/25
59/1 63/20 69/15 76/1
concerned [4] 21/19
54/25 59/7 65/11
concerns [4] 13/13
45/5 58/9 68/8
concluded [3] 39/21
39/22 85/1
concludes [1] 40/12
conclusion [2] 46/2
64/22
conclusions [2] 26/4
46/9
condense [1] 55/24
condensed [1] 31/20
condition [3] 41/10
41/12 43/2
conditions [1] 35/14
conduct [1] 70/4
confer [14] 15/2 17/11
17/13 18/8 18/12
18/15 22/25 28/5
43/19 53/6 53/25
75/13 81/17 81/18
conference [19] 9/15
23/9 29/21 29/22 30/6
30/8 30/13 32/12 37/3
38/20 48/4 52/3 52/20
52/22 63/4 77/9 83/17
84/10 86/8
conferences [3] 8/11
30/11 32/21
conferred [1] 14/13
conferring [1] 42/14
confidence [1] 63/23
confirmed [1] 24/18
conformance [1] 86/7
confused [1] 20/5
connect [1] 23/23
conscience [1] 71/12
consensus [1] 32/14
consequence [1] 24/2
consequences [3]
60/15 60/16 60/18
consider [6] 31/5
31/13 32/11 60/11
62/24 67/5
consideration [1]
74/7
considered [2] 19/11
28/21
consistent [2] 18/2

61/22\
consolidate [3] 31/14
31/22 56/13
constituted [1] 64/7
constructive [1] 64/12
CONSUMER [1] 2/8
contact [2] 72/4 73/1
contain [1] 19/3
contingence [1] 62/14
contingency [1] 60/4
61/24 62/5
continue [2] 57/1
71/21
continued [2] 3/1
55/18
contrary [1] 12/23
control [4] 24/16 35/6
35/8 39/14
controversial [1] 77/6
conversation [1]
84/19
convince [1] 76/13
cooperative [1] 77/8
correctly [1] 26/1
Corvette [3] 37/17
38/7 77/5
counsel [16] 2/1 3/1
4/7 4/9 4/21 15/3
23/21 28/4 28/6 57/18
61/5 74/6 74/18 74/18
75/18 76/16
counsel's [1] 76/11
country [2] 44/5 56/10
couple [9] 6/5 14/14
29/19 31/18 51/7
55/16 56/25 69/17
70/25
course [3] 37/18 43/8
76/16
Court's [12] 13/3
23/16 26/17 31/4 32/4
32/20 36/13 49/22
58/19 63/5 69/17 84/4
Courts [2] 12/5 12/5
cover [2] 23/2 34/12
create [1] 61/9
created [1] 24/25
criteria [3] 58/21
63/21 65/12
critical [1] 6/25
criticism [1] 64/13
criticizing [1] 64/14
cross [3] 27/25 64/21
72/23
cross-reference [1]
72/23
crossed [1] 66/19
crystallized [1] 39/10
CSR [2] 1/23 86/15
curious [5] 33/22
33/24 38/22 57/24
60/18
current [2] 41/12 43/2
currently [1] 64/7
cut [1] 16/22
CUTLER [1] 2/23
cutting [1] 31/17
cycles [1] 9/22

**D**

DALTON [3] 2/18 2/18
5/4
damages [16] 7/17
7/18 7/25 8/1 8/13
8/15 9/14 10/11 10/18
10/20 10/23 11/5 12/6
12/10 20/17 20/19
data [15] 19/10 24/24
25/7 25/14 25/17
25/19 26/6 28/21
28/23 43/8 44/6 44/7
44/8 44/13 45/23
database [1] 75/8
databases [1] 47/4
date [24] 29/24 30/1
30/6 30/8 31/13 38/12
52/9 52/9 52/23 52/24
53/8 53/21 53/22
53/22 54/5 55/19
78/16 80/22 83/16
83/21 83/24 84/2
84/20 86/10
dates [17] 29/23
52/18 53/4 53/10
53/10 53/25 54/6
54/23 55/3 82/13
83/12 84/11 84/13
84/14 84/16 84/20
84/21
Daubert [8] 21/4 31/7
31/21 52/10 52/13
81/10 82/2 83/4
day [20] 30/3 31/7
31/9 32/7 32/8 32/10
33/17 36/9 36/10
36/11 36/25 37/11
38/11 38/15 38/16
38/18 71/2 75/2 75/17
78/23
days [8] 17/5 31/18
44/9 49/6 49/13 56/16
67/4 75/5
DCT [1] 36/17
DCTs [1] 36/17
deadline [3] 32/7
54/15 55/18
deadlines [1] 55/14
deal [16] 6/6 13/25
21/4 21/10 21/14
21/25 30/4 30/7 30/15
30/20 34/24 52/9
52/21 63/7 80/19
81/11
dealer [10] 47/10
71/23 71/25 72/10
72/19 72/20 74/14
75/3 75/12 75/23
dealers [4] 40/5 40/5
49/24 73/14
dealership [7] 40/4
40/4 40/18 45/25 47/2
48/8 74/11
dealerships [6] 48/5
72/1 72/2 72/20 72/22
73/19
dealing [5] 6/10 6/17
21/16 32/13 42/5

**deals [3]** 58/22 61/24
63/2
dealt [3] 50/9 51/24
60/3
December [1] 9/15
December 12th [1]
9/15
decide [2] 42/3 51/13
decided [1] 9/13
decision [8] 10/9 23/6
29/15 47/22 49/8
59/12 61/5 66/24
declaration [2] 20/7
28/10
deem [2] 66/23 81/6
deeper [1] 38/2 38/2
defective [1] 20/12
DEFENDANT [5] 3/2
3/6 3/12 5/12 5/15
defendants [2] 63/17
68/3
defense [4] 5/7 32/1
66/22 83/2
defer [5] 11/22 11/24
12/2 12/17 12/19
deficiencies [5] 15/4
15/11 15/13 17/2
18/22
deficient [3] 15/9 17/4
18/24
delay [1] 26/13
delineates [1] 28/6
delineating [1] 15/4
demonstrative [2]
35/14 79/15
denial [1] 81/12
deny [5] 80/20 80/24
81/3 81/5 81/9
depending [1] 49/7
depose [1] 46/7
deposition [1] 19/24
depositions [2] 47/21
49/9
deputy [1] 79/19
describe [2] 35/15
79/24
describes [1] 62/16
description [1] 20/3
destroyed [1] 72/19
detailed [2] 18/25
19/2
details [2] 60/10
63/11
determination [3]
45/24 69/23 70/6
detracted [1] 58/8
devote [2] 30/2 30/3
different [7] 21/2 38/8
38/12 54/22 55/11
59/24 79/17
difficult [1] 31/16
difficulty [2] 22/9 54/2
digging [1] 30/7
diminution [1] 11/4
direct [1] 12/25
direction [1] 63/5
directive [1] 72/10
disagrees [1] 10/14

**D**

discard [1] 41/8
discarded [1] 41/7
disclosed [1] 52/14
disclosure [3] 63/1
63/2 63/3
disclosures [1] 20/14
discovery [4] 16/2
17/6 46/13 55/18
Discovery's [1] 46/12
discuss [4] 29/20
51/15 57/11 81/18
discussed [5] 13/21
42/12 59/25 59/25
61/23
discussing [1] 84/14
discussion [4] 25/17
60/7 66/17 82/4
discussions [3] 6/22
11/16 77/8
disingenuous [1] 10/6
dismiss [1] 50/23
disposal [1] 44/13
disposition [1] 66/1
dispositive [1] 54/23
dispute [1] 51/11
dispute agency [1]
51/11
disputes [1] 76/8
disputing [1] 62/12
distasteful [1] 61/2
distracted [1] 67/13
DISTRICT [3] 1/1 1/2
1/3
DIVISION [1] 1/2
divorce [1] 71/7
dock [1] 80/8
docket [1] 80/25
doctors' [1] 81/21
doctrine [1] 7/11
document [2] 9/6 78/7
documentation [3]
24/14 24/21 43/8
documentations [1]
19/23
documents [1] 29/2
dot [1] 64/21
dotted [1] 66/19
down [9] 25/2 25/3
25/6 31/17 41/21
44/23 47/21 71/22
84/21
downhill [1] 82/20
dozens [1] 31/10
DPS6 [5] 1/5 4/5
20/12 28/25 29/3
Dr [1] 16/8
Dr. [3] 15/20 20/10
20/21
Dr. Kwasniewicz [1]
15/20
Dr. Luna [1] 20/21
Dr. Luna's [1] 20/10
drawn [1] 14/24
drivability [2] 35/1
35/10
drive [4] 2/9 37/15
37/23 74/25

driven [1] 38/5
drove [1] 39/19
dual [3] 36/12 36/18
36/21
due [5] 29/1 65/18
69/25 77/17 77/23
Dummies [2] 36/17
36/18
duplicative [9] 8/1
8/12 8/15 9/14 10/11
10/18 10/19 10/23
12/6
during [1] 24/25
duty [1] 61/3
DYKEMA [1] 3/3
détente [1] 43/6

**E**

e-mail [2] 18/2 75/23
e-mails [1] 19/23
each [18] 18/4 19/16
20/7 30/15 30/19
30/19 33/18 36/4 37/5
37/13 37/25 38/10
43/17 51/20 51/23
76/5 81/23 83/15
earlier [5] 10/14 15/14
21/3 37/8 54/14
early [1] 80/6
easier [2] 55/25 80/24
EAST [2] 2/14 2/23
easy [2] 44/1 73/18
educate [1] 34/5
educated [1] 36/10
educating [1] 36/14
effect [1] 34/25
efficient [1] 62/11
effort [1] 33/2
eight [3] 10/8 36/11
37/22
either [9] 8/4 13/17
19/13 42/8 79/11
80/20 81/2 81/2 81/19
elect [1] 12/14
election [6] 7/2 7/11
8/3 8/12 9/16 12/13
element [1] 35/12
emphasis [1] 38/22
employees [2] 46/7
47/21
end [3] 11/9 15/3
77/23
ended [1] 55/19
engaging [1] 76/17
engineer [1] 20/11
engineers [1] 19/25
enough [2] 36/3 36/5
entire [2] 57/1 61/10
entitled [4] 7/13 15/7
47/20 86/6
entrance [1] 79/17
envision [1] 75/4
envisioning [1] 74/24
equally [1] 57/9
error [1] 59/7
essence [2] 14/1
21/22
essentially [1] 7/18

estopped [1] 50/8
evaluate [4] 25/8
26/21 65/14 68/6
evaluation [1] 40/3
even [9] 11/12 14/8
21/6 32/7 33/13 36/4
38/1 42/6 82/9
eventually [2] 25/1
25/20
everyone's [1] 29/17
evidence [5] 19/16
20/22 27/7 40/25
41/17
ex [2] 55/17 56/25
ex parte [2] 55/17
56/25
exactly [2] 23/18
62/16
examination [6] 39/16
39/23 40/13 41/18
45/16 45/17
examinations [1]
46/14
examine [2] 41/13
47/13
examined [7] 40/2
40/7 40/12 41/9 41/11
41/15 45/18
examines [1] 40/8
example [2] 20/1
examples [1] 12/8
exception [1] 44/20
excessive [8] 39/21
39/23 40/24 41/4
45/25 46/4 47/7 62/5
exclude [5] 13/7 16/7
17/10 41/17 81/8
excluded [4] 14/19
22/13 26/7 27/4
exclusion [1] 27/9
exclusionary [1] 15/8
exclusively [1] 47/9
excuse [1] 77/24
executed [1] 46/25
executives [1] 19/25
exercise [1] 59/6
exhibits [3] 19/13
29/3 79/15
exist [1] 73/20
exists [2] 75/21 75/21
expect [2] 14/15
81/21
expecting [1] 54/7
expense [1] 14/6
experience [2] 35/4
35/7
experienced [1] 40/15
expert [24] 15/17
16/11 16/13 17/3 17/6
19/8 24/7 24/8 24/18
25/5 25/18 26/11
28/17 29/4 39/17
39/18 40/8 40/16 42/1
42/23 44/4 44/6 45/15
81/22
Expert Kwas [1]
39/17
Expert Miller [1]

39/18
expert's [4] 22/6
22/12 44/10 49/2
experts [12] 19/17
19/24 19/25 25/9
25/24 42/9 43/1 45/8
45/24 46/9 52/14
81/20
explain [5] 7/10 23/24
24/2 35/13 36/12
extend [1] 55/17
extended [1] 71/23
extension [1] 71/2
extent [7] 41/14 42/23
42/25 73/20 75/11
81/14 82/2
extremely [1] 18/25

**F**

facility [2] 27/19 46/21
fact [6] 13/20 15/9
55/4 55/18 66/10 75/8
factors [2] 42/17
59/24
facts [3] 19/10 28/21
28/22
fail [1] 71/22
failing [1] 71/21
failure [2] 17/10 59/6
fair [2] 46/17 56/8
fairly [1] 47/17
fairness [1] 63/25
falls [1] 13/8
familiar [1] 64/10
family [2] 54/9 71/3
far [7] 10/7 10/10
10/10 10/16 18/7 18/7
21/18
fatten [1] 59/2
fault [2] 23/19 41/7
FCRR [1] 1/23
FEDERAL [1] 1/23
fee [8] 58/23 61/24
62/14 62/15 63/2 65/4
66/9 69/23
feel [8] 15/24 26/3
38/3 38/5 50/25 67/16
67/24 78/16
fees [6] 59/24 60/3
60/24 61/25 62/5
62/13
fell [1] 81/25
felt [1] 64/19
few [3] 50/23 62/3
71/1
field [1] 34/12
Fiestas [1] 47/8
figuring [1] 53/11
filed [9] 6/21 16/11
24/6 32/5 32/9 50/1
56/15 78/8 81/23
files [1] 23/13
filing [13] 11/9 14/5
18/17 31/13 52/18
52/23 53/4 53/9 53/22
65/6 67/13 67/19
68/23
filings [1] 82/13

final [12] 29/22 30/5
30/8 30/11 30/13
32/21 38/19 52/20
52/21 67/7 77/14
84/10
finalize [1] 77/15
find [3] 31/14 50/19
75/20
fine [7] 31/24 37/5
51/21 51/22 52/1
64/22 67/4
finish [1] 31/25
firm [1] 71/16
first [14] 1/24 6/6
22/25 24/20 27/20
27/23 32/2 43/22
51/23 63/16 68/10
80/18 84/7 84/18
five [8] 30/19 30/20
51/19 51/22 51/22
52/1 67/12 83/14
fixed [1] 75/1
flag [1] 47/6
flexibility [1] 31/24
floor [1] 79/23
fly [1] 21/14
flying [2] 44/4 54/9
FMC [3] 71/25 72/10
72/20
focus [4] 21/9 34/14
62/15 79/21
focused [2] 21/7
59/13
Focuses [1] 47/8
folks [6] 9/23 21/14
37/22 58/12 60/23
65/19
follow [1] 60/8
followed [2] 58/20
70/14
following [1] 77/18
footnotes [2] 19/14
20/8
FORD [67] 1/5 4/4 5/9
5/12 5/15 5/18 5/22
5/25 6/2 6/8 6/11 6/18
7/24 7/25 8/1 8/14
10/23 12/9 13/21 16/2
16/24 18/15 19/14
20/15 22/24 23/1 23/2
23/6 23/11 23/13 24/5
24/12 24/18 27/19
28/25 30/4 40/4 40/4
46/8 46/21 46/22
46/23 47/1 47/2 47/6
47/8 47/12 47/12
47/14 48/6 48/6 48/8
49/5 58/10 62/15
66/10 66/14 71/1
71/23 71/23 71/25
73/11 73/18 75/8
75/16 75/25 79/21
Ford Motor Company
[9] 5/9 5/22 5/25
20/15 46/22 46/23
47/1 48/6 66/10
Ford's [14] 8/1 13/7
19/22 19/24 19/25

**F**

**Ford's... [9]** 20/18 20/19 27/20 29/3 32/16 44/10 47/10 57/12 73/3
**foregoing [1]** 86/4
**foresee [3]** 45/7 46/6 46/11
**formal [4]** 61/19 64/5 65/6 70/17
**format [1]** 86/7
**forming [1]** 19/11
**forth [1]** 19/23
**forward [12]** 14/16 22/5 22/12 29/18 30/20 44/16 45/5 51/12 64/12 72/11 73/13 76/13
**four [4]** 12/18 30/14 31/8 61/14
**frame [2]** 32/8 56/16
**FRANCISCO [2]** 3/11 3/16
**FRANK [4]** 3/8 5/11 24/5 34/8
**Frank Kelly [3]** 5/11 24/5 34/8
**frankly [9]** 10/6 10/25 13/20 44/4 64/15 65/22 66/18 69/8 78/14
**fraud [6]** 7/17 7/18 7/25 8/5 10/23 11/6
**free [2]** 15/24 55/12
**Friday [1]** 83/8
**Fridays [1]** 30/2
**front [2]** 27/5 47/18
**fruition [1]** 50/22
**frustrated [2]** 9/25 21/15
**frustration [1]** 14/11
**full [3]** 11/2 11/5 78/7
**fully [3]** 7/16 12/9 58/9
**further [9]** 39/10 46/13 46/14 49/9 51/16 70/20 77/4 79/11 84/22
**fuzzy [1]** 8/18

**G**

**Galpin [12]** 40/4 40/20 41/7 45/25 46/8 46/21 47/2 47/6 47/21 48/7 72/19 75/24
**Galpin Ford [2]** 40/4 46/8
**Galpin's [1]** 41/1
**game [5]** 16/18 48/11 48/14 49/20 67/16
**gamesman [1]** 21/8
**gamesmanship [2]** 21/8 23/17
**gander [1]** 15/16
**gave [2]** 11/11 51/9
**general [1]** 20/2
**generate [2]** 26/10 35/3
**generated [1]** 45/20

**gets [4]** 13/19 30/19 59/15 67/18
**getting [10]** 7/18 23/7 26/13 31/15 62/14 67/11 76/6 76/6 79/16 83/4
**GIELEGHEM [5]** 2/8 4/12 12/22 22/18 58/1
**give [11]** 25/9 26/8 35/22 35/22 39/3 42/19 56/6 59/13 68/14 82/22 84/20
**given [5]** 9/21 10/5 50/21 75/14 84/13
**gives [2]** 20/2 51/9
**giving [1]** 61/16
**global [3]** 6/24 8/8 23/1
**gmail.com [1]** 1/25
**goal [1]** 55/23
**goes [1]** 60/9
**gone [6]** 9/21 22/7 41/21 59/8 65/12 66/22
**good [33]** 4/8 4/10 4/11 4/13 4/14 4/17 4/19 4/20 4/22 4/23 5/1 5/6 5/8 5/10 5/11 5/13 5/14 5/16 5/17 5/19 5/23 5/24 6/1 6/2 6/4 15/15 15/16 30/23 36/23 42/17 42/19 51/25 84/23
**goose [1]** 15/15
**GORDON [2]** 3/13 66/11
**GOSSETT [1]** 3/3
**gotten [1]** 38/1
**granted [1]** 13/11
**great [4]** 31/10 38/1 75/21 84/15
**grinder [2]** 80/7 80/14
**groan [1]** 16/16
**grossly [1]** 29/11
**GROUP [5]** 2/12 4/18 4/18 4/24 17/25
**guess [4]** 6/9 8/17 9/25 14/13 21/1 43/5 43/5 49/7 49/9 50/24 57/12 80/14 80/24 82/9
**guns [1]** 13/16
**guys [6]** 8/22 9/22 10/6 29/13 76/4 76/5

**H**

**half [8]** 35/22 36/4 37/5 37/13 37/25 38/1 38/4 38/10
**handle [1]** 30/10
**hands [1]** 13/18
**happen [5]** 14/16 43/20 43/21 43/24 49/12
**happened [2]** 65/11 76/20
**happening [2]** 48/16 74/8

**happens [2]** 17/8 49/7
**happy [4]** 13/2 66/1 67/6 68/21
**hard [2]** 44/1 61/16
**hardware [1]** 35/11
**HARDY [2]** 3/7 66/12
**harm [2]** 8/16 26/2
**harmless [1]** 60/14
**having [9]** 14/19 21/25 22/9 33/18 53/9 55/19 57/13 60/20 61/7
**he's [5]** 43/13 44/12 56/10 60/9 78/12
**heading [1]** 56/10
**heads [2]** 26/9
**heads-up [1]** 26/9
**hear [11]** 5/7 16/15 17/15 24/4 27/7 30/9 31/7 31/25 31/25 33/24 58/11
**heard [8]** 6/18 7/23 8/21 45/13 53/17 53/23 76/15 81/14
**heard any [1]** 45/13
**hearing [11]** 22/2 52/24 53/9 54/1 57/23 58/6 58/14 59/21 65/9 65/10 76/4
**hearings [2]** 8/11 82/14
**heart [3]** 22/21 23/17 73/7
**heartburn [3]** 44/18 44/20 58/2
**held [1]** 86/6
**help [12]** 6/24 7/1 7/4 8/10 9/1 10/4 11/20 31/12 35/8 45/3 51/22 76/8
**helped [1]** 36/17
**helpful [3]** 29/11 31/20 37/14
**here's [3]** 16/21 45/7 53/8
**hereby [1]** 86/3
**hey [5]** 8/25 17/2 42/8 75/23 75/24
**hierarchy [1]** 39/5
**HIGGINS [9]** 2/13 4/18 17/20 17/21 17/23 27/10 57/13 58/4 75/17
**Higgins's [1]** 23/15
**HILLS [2]** 2/5 2/10
**hindrances [1]** 62/17
**history [2]** 23/18 75/14
**hold [4]** 28/12 54/18 56/20 59/5
**honest [1]** 13/23
**honestly [1]** 36/9
**HONORABLE [1]** 1/3
**hope [3]** 67/8 76/23 84/19
**hoped [1]** 53/8
**hopefully [2]** 25/22 45/8

**hoping [1]** 53/24
**hour [9]** 34/7 35/22 36/3 37/4 37/13 37/24 37/25 38/4 38/10
**hours [19]** 33/18 33/19 33/19 33/23 33/23 34/4 34/10 34/11 34/16 34/22 35/19 35/21 36/3 36/13 43/17 44/2 44/8 49/5 76/17
**housekeeping [1]** 64/4
**However [1]** 43/17
**Hugret [1]** 18/2
**Hugret's [2]** 27/13 28/9
**huh [1]** 46/5

**I**

**I would [1]** 76/17
**I'd [5]** 13/2 30/9 31/4 53/23 82/9
**I'll add [1]** 42/2
**idea [4]** 31/4 32/4 42/19 84/13
**Ideally [1]** 84/18
**identified [4]** 28/23 46/24 46/24 47/2
**identify [3]** 9/13 17/16 78/1
**IDP [1]** 61/15
**ignore [2]** 17/5 17/13
**ignored [2]** 13/22 15/6
**ignoring [1]** 13/24
**Ill [1]** 3/8
**imagine [1]** 43/19
**immediate [1]** 67/3
**immediately [2]** 43/21 44/23
**immense [1]** 29/2
**impact [2]** 10/25 26/15
**impacts [3]** 26/13 35/5 67/3
**impasse [1]** 23/5
**implore [1]** 48/24
**important [9]** 20/10 34/22 37/4 39/9 59/10 59/12 60/8 61/4 66/8
**impression [1]** 48/13
**inaccurate [1]** 60/3
**inadvertently [2]** 60/2 63/6
**incentivizes [1]** 62/22
**included [1]** 15/3
**includes [1]** 19/22
**including [1]** 59/24
**incorrect [1]** 63/6
**indicate [2]** 20/9 56/9
**indicated [2]** 73/14 75/19
**indication [2]** 11/19 41/1
**individuals [2]** 63/22 74/23
**infinite [1]** 30/24

**informally [1]** 13/21
**information [23]** 19/3 19/4 25/2 26/2 26/11 26/21 27/1 27/7 39/3 39/8 43/12 48/25 49/1 49/4 62/24 63/9 64/6 65/4 65/16 65/25 70/5 75/13 75/16
**initial [4]** 19/19 58/19 59/21 63/4
**injury [1]** 7/17
**inner [2]** 34/24 34/24
**insights [1]** 58/14
**inspect [3]** 44/9 44/15 49/6
**inspected [1]** 45/4
**inspection [7]** 24/11 24/17 24/25 26/10 39/18 43/20 46/15
**insufficient [1]** 29/1
**intend [3]** 34/15 50/17 70/16
**intending [1]** 50/4
**intention [2]** 12/16 26/17
**interlineated [1]** 19/22
**internal [1]** 19/22
**Internet [1]** 34/19
**interrupt [1]** 35/18
**intimately [1]** 64/10
**inundated [2]** 30/25 31/9
**investigating [1]** 25/4
**invited [1]** 9/12
**invoice [1]** 47/22
**involve [1]** 24/23
**involved [3]** 57/13 60/9 63/24
**involving [2]** 34/20 61/14
**ire [1]** 13/19
**issue [53]** 6/23 7/1 7/21 8/13 9/4 10/2 10/11 11/20 11/25 12/3 16/11 16/12 18/22 21/2 22/21 23/1 26/9 29/9 32/25 35/9 36/8 38/23 39/9 42/12 42/24 42/24 49/16 49/23 50/19 50/21 51/1 51/5 51/18 53/11 54/22 55/11 57/11 57/15 57/16 57/17 60/8 69/14 69/16 69/24 71/14 72/5 72/9 72/13 73/13 73/16 75/5 77/6 84/17
**issue's [1]** 50/9
**issued [1]** 59/22
**issues [35]** 6/23 9/13 12/11 13/11 15/4 17/12 18/8 18/12 22/10 23/3 23/12 32/22 33/8 33/9 34/6 35/10 35/11 35/11 35/12 41/20 41/22 42/18 47/7 50/8 52/2 54/12 58/23 60/24

**I**

**issues...** [7] 64/24 69/20 72/7 72/17 81/13 81/19 82/5
**items** [2] 79/25 82/19
**iteration** [2] 20/12
**itself** [2] 58/21 62/25

**J**

**JACOB** [1] 2/23
**JCCP** [2] 50/9 51/4
**JOAN** [2] 3/9 5/18
**Joan Camagong** [1] 5/18
**job** [5] 55/25 57/10 63/23 70/1 70/1
**JOHN** [2] 3/3 5/21
**joint** [11] 24/11 24/17 26/10 39/16 39/23 40/3 41/18 45/15 46/15 48/3 50/2
**jointly** [1] 41/9
**joke** [1] 57/25
**joking** [3] 37/18 58/2 58/3
**Jonathan** [1] 6/8
**Jonathan Nichols** [1] 6/8
**JR** [1] 1/3
**judge** [8] 1/3 13/25 36/18 59/13 59/19 61/2 62/19 63/22
**Judge Pregerson** [1] 62/19
**judges** [2] 61/1 62/3
**judgment** [5] 6/7 30/3 31/6 38/21 52/17
**judicial** [3] 50/8 63/22 86/8
**JUI** [3] 1/23 86/14 86/15
**July** [4] 11/12 14/8 15/3 25/12
**July 29th** [1] 14/8
**July 29th or** [1] 25/12
**just -- I** [2] 11/15 22/2

**K**

**keep** [9] 38/6 38/6 43/1 48/17 56/13 71/21 73/15 73/16 75/17
**keeping** [2] 64/4 80/23
**KELLY** [16] 3/8 5/11 24/5 33/7 34/8 39/5 39/6 39/8 39/12 42/13 45/3 48/20 49/7 73/14 74/4 79/24
**Kelly's** [1] 27/17
**kidding** [4] 71/7 73/10 73/10 77/3
**kids** [2] 51/25 70/25
**KIESEL** [19] 2/3 2/3 4/21 18/3 23/4 30/24 36/7 37/1 37/2 46/16 53/13 54/13 55/21 60/9 63/13 64/14

65/24 66/16 83/19
**Kiesel's** [3] 54/22 68/20 79/13
**kill** [1] 70/25
**kind** [6] 8/7 8/9 14/9 23/5 61/13 62/3
**KIRNOS** [6] 2/13 4/24 53/13 77/7 78/2 78/3
**knew** [1] 20/16
**KNIGHT** [8] 2/12 4/18 4/18 4/24 4/24 17/25 64/15 71/16
**known** [2] 15/22 47/5
**knows** [3] 58/22 73/24 83/12
**Kwas** [9] 15/21 15/22 15/24 15/25 15/25 16/1 16/8 17/10 39/17
**Kwasniewicz** [1] 15/20

**L**

**L.L.P** [1] 3/7
**large** [3] 37/6 37/6 81/12
**larger** [2] 79/17 79/25
**last** [7] 14/22 21/12 37/2 39/3 39/15 50/22 61/12
**late** [6] 48/11 48/14 49/19 50/25 51/3 67/16
**later** [6] 32/12 37/9 40/2 75/5 80/21 82/23
**latest** [1] 76/23
**law** [30] 2/3 2/3 2/4 2/8 2/9 2/12 2/13 2/13 2/18 2/23 3/3 3/8 3/8 3/9 3/9 3/14 3/14 4/18 4/18 4/24 4/25 10/12 10/15 10/17 10/19 10/24 17/25 58/18 62/17 64/15
**lawyer** [4] 21/10 68/2 71/7 75/2
**lawyer's** [1] 21/11
**lawyerly** [2] 48/23 68/9
**lawyers** [4] 57/23 65/25 66/11 66/12
**lay** [1] 42/4
**layers** [1] 34/20
**lays** [2] 63/9 63/10
**lead** [2] 4/9 4/21
**leadership** [7] 58/23 59/17 60/23 61/10 61/20 63/19 63/23
**leaning** [2] 36/2 81/1
**learn** [1] 39/20
**learned** [2] 32/22 40/1
**learning** [1] 27/23
**least** [4] 62/20 67/16 82/4 82/8
**leave** [9] 67/21 67/24 68/19 69/5 69/10 69/12 69/15 69/20 76/9
**leaving** [3] 55/8 55/9

55/12
**left** [1] 28/16
**legal** [6] 2/8 2/22 8/9 8/10 12/12 67/17
**legitimate** [1] 14/17
**let** [24] 8/17 10/3 13/25 17/15 20/5 28/7 30/18 31/24 31/25 38/16 43/11 49/25 56/4 57/2 62/10 64/16 66/6 68/2 68/14 69/25 70/1 73/19 76/9 83/13
**letter** [14] 14/8 15/2 15/2 16/4 18/3 21/11 22/11 23/16 25/11 27/13 27/15 28/5 28/13 66/15
**letting** [2] 10/8 27/5
**LIABILITY** [2] 1/6 4/6
**liaison** [2] 4/9 4/21
**light** [4] 66/18 81/22 83/17 84/18
**lighten** [1] 58/1
**like** [28] 10/16 14/1 17/6 18/4 20/1 20/20 21/15 21/21 22/13 29/11 29/13 30/9 31/4 32/3 35/15 37/13 38/5 44/14 51/25 60/13 61/13 64/24 69/13 70/11 70/25 74/7 80/7 84/9
**likely** [2] 79/14 80/3
**likewise** [2] 51/4 78/5
**limine** [9] 17/9 30/15 30/19 31/6 51/19 52/18 52/21 77/15 83/14
**line** [2] 19/14 19/24
**list** [2] 32/24 33/10
**lists** [1] 72/23
**literally** [3] 18/16 33/24 58/14
**litigants** [2] 63/24 64/10
**litigation** [13] 1/6 4/6 6/24 21/11 58/7 58/20 64/12 72/24 73/20 74/14 74/17 76/10 76/16
**little** [10] 19/18 24/3 31/23 32/12 33/7 48/11 48/14 49/19 58/1 65/24
**LLC** [1] 2/18
**LLP** [3] 2/3 2/12 3/13
**lo** [1] 23/12
**loading** [1] 80/8
**long** [6] 35/19 35/21 53/25 54/9 54/9 55/3
**longer** [2] 23/18 41/10
**look** [37] 7/3 13/10 13/11 15/18 16/14 19/1 20/4 21/1 21/2 21/3 25/9 25/15 25/17 26/24 27/1 28/16 31/23 35/14 35/16 37/19 42/9 43/1 43/2

45/13 51/12 51/12 60/5 60/25 62/23 64/17 66/16 66/20 66/25 73/11 75/16 78/14 80/5
**looking** [4] 9/6 9/9 9/11 62/19
**looks** [3] 13/21 18/4 70/11
**LOS** [5] 1/13 1/24 2/15 2/24 4/1
**lot** [13] 8/21 10/2 13/9 14/11 21/16 36/20 37/7 37/15 66/12 73/2 76/19 77/7 82/1
**LOUSIANA** [1] 2/20
**Luna** [1] 20/21
**Luna's** [3] 20/2 20/6 20/10

**M**

**MACLEAR** [2] 3/14 6/2
**made** [19] 6/16 7/16 12/9 13/2 13/22 23/10 24/9 26/24 27/14 44/12 61/24 63/4 64/14 65/22 66/17 66/21 66/23 67/15 68/20
**mail** [2] 18/2 75/23
**mails** [1] 19/23
**major** [1] 76/8
**make** [28] 8/19 9/24 10/9 11/2 25/25 27/16 29/14 38/16 43/21 43/24 47/13 47/24 49/7 49/8 50/1 55/5 55/24 56/3 59/13 66/19 66/22 67/7 67/19 69/21 70/5 70/6 75/15 84/5
**makes** [9] 24/14 25/18 30/13 30/24 32/20 45/1 53/3 65/7 69/22
**making** [3] 27/1 66/7 70/18
**malfunctioning** [1] 41/12
**malfunctions** [1] 40/14
**management** [7] 23/8 23/11 29/20 57/12 82/8 82/11 83/17
**managing** [2] 66/14 76/19
**mandatory** [1] 15/8
**MANDEVILLE** [1] 2/20
**manual** [3] 58/19 58/20 61/21
**many** [1] 21/12
**March** [6] 22/23 24/17 39/16 40/3 40/17 41/18
**March 2019** [1] 41/18
**mass** [1] 72/6
**massive** [2] 80/7 80/9
**material** [2] 16/1 29/4

materials [2] 56/1 79/17
**matter** [4] 27/22 37/21 37/21 86/6
**matter what** [1] 37/21
**maybe** [6] 8/17 8/24 20/4 23/16 25/20 25/21 31/18 31/19 34/7 38/13 74/23 77/9
**MCL** [2] 59/23 63/5
**MDL** [13] 16/2 37/6 51/24 57/18 58/17 59/12 59/13 60/9 61/5 62/3 63/22 72/11 72/20
**me give** [1] 68/14
**mean** [69] 6/9 6/11 6/16 8/14 8/21 8/21 9/19 10/7 11/15 15/17 16/7 19/11 19/2 19/5 19/5 21/13 21/15 22/2 26/16 26/17 26/24 30/9 31/23 33/22 33/24 34/3 34/5 34/20 34/21 37/10 37/19 37/20 37/24 38/23 39/2 44/1 44/4 50/1 50/5 51/23 57/24 58/4 58/5 58/10 58/11 58/14 59/1 59/2 59/3 64/1 66/25 67/2 67/23 67/24 68/12 73/11 73/12 74/12 74/13 74/20 74/22 75/6 78/14 78/14 78/17 79/19 79/23 80/25 84/12
**means** [1] 36/3
**measures** [1] 39/20
**meat** [2] 80/7 80/14
**mechanic** [2] 34/4 76/2
**mechanical** [1] 35/10
**meet** [18] 15/2 17/11 17/13 18/8 18/12 18/15 22/25 28/5 43/19 53/6 53/25 54/15 63/21 75/13 78/4 78/16 81/17 81/18
**meeting** [3] 18/7 42/14 59/23
**MEI** [3] 1/23 86/14 86/15
**memory** [1] 8/18
**mentioned** [5] 21/3 27/23 49/18 49/19 50/2
**mercy** [1] 18/13
**merits** [1] 22/14
**met** [2] 14/13 63/21
**method** [1] 8/3
**Micale** [12] 24/6 24/7 24/22 27/18 27/23 28/6 28/18 40/8 43/9 49/2 49/3 49/4
**Micale's** [2] 25/7 44/12

**M**

**MICHAEL [3]** 2/9 4/12 4/15
**Michael Resnick [1]** 4/15
**MICHIGAN [2]** 3/5 72/5
**micro [1]** 46/18
**microphone [1]** 24/4
**might [8]** 6/23 16/14 46/13 51/19 58/2 68/12 79/21 82/3
**Miller [2]** 24/6 39/18
**million [1]** 47/8
**mind [1]** 33/25 38/6 38/14
**minimize [1]** 76/8
**minimum [1]** 60/13
**minutes [3]** 36/22 79/2 79/3
**missed [1]** 8/24 39/2
**missing [2]** 34/7 70/4
**misunderstood [1]** 53/1
**ML [2]** 1/5 4/4
**modest [1]** 54/16
**modification [1]** 54/16
**module [3]** 24/16 35/6 35/8
**MOLLY [2]** 3/14 5/15
**Molly Mrowka [1]** 5/15
**Monday [4]** 31/16 82/16 82/18 82/21
**money [1]** 13/10
**monitor [1]** 79/8
**monitored [1]** 65/10
**MONTGOMERY [1]** 3/10
**month [2]** 40/2 83/18
**months [4]** 21/12 46/1 55/17 56/25
**mood [1]** 58/1
**more [21]** 6/24 8/8 21/7 21/19 26/11 33/7 34/19 36/4 39/3 58/2 59/5 64/5 65/6 65/25 70/7 71/1 76/15 76/21 77/6 80/2 82/22
**morning [31]** 4/8 4/10 4/11 4/13 4/14 4/17 4/19 4/20 4/22 4/23 5/1 5/6 5/8 5/10 5/11 5/13 5/14 5/16 5/17 5/19 5/21 5/23 5/24 6/1 6/3 6/4 21/17 30/23 38/18 44/25 70/21
**mornings [1]** 17/24
**most [4]** 20/21 37/2 59/12 61/4
**motion [56]** 6/7 7/14 8/19 8/20 9/1 9/18 10/1 11/9 11/10 13/7 13/7 13/10 16/12 17/6 17/9 18/10 18/11 18/17 18/19 21/4 23/23 31/6 33/3 50/4

50/17 50/22 54/19 55/17 56/25 59/19 60/20 61/13 67/13 67/25 68/4 68/7 68/10 68/19 68/19 68/23 69/3 69/5 69/6 69/8 69/10 69/12 69/19 80/18 80/18 80/19 81/1 81/5 81/8 81/9 81/11 82/9
**motion's [1]** 7/6
**motions [25]** 6/13 14/5 22/1 29/25 30/15 30/18 31/6 31/22 38/15 51/18 52/1 52/10 52/10 52/14 52/18 52/21 53/16 54/24 77/9 77/14 81/22 82/6 83/4 83/12 83/14
**MOTOR [13]** 1/5 4/5 5/9 5/22 5/25 6/8 20/15 46/22 46/23 47/1 47/14 48/6 66/10
**move [11]** 13/6 29/18 30/1 30/20 44/16 45/5 53/22 54/23 56/5 67/8 72/17
**moved [1]** 33/12
**moves [1]** 32/8
**moving [5]** 31/10 31/13 54/3 56/13 64/12
**Mr. Gieleghem [3]** 12/22 22/18 58/1
**Mr. Higgins [4]** 27/10 57/13 58/4 75/17
**Mr. Higgins's [1]** 23/15
**Mr. Hugret [1]** 18/2
**Mr. Hugret's [1]** 27/13
**Mr. Kelly [12]** 33/7 39/5 39/6 39/8 39/12 43/13 45/3 48/20 49/7 73/14 74/4 79/24
**Mr. Kelly's [1]** 27/17
**Mr. Kiesel [15]** 18/3 23/4 36/7 37/1 37/2 46/16 53/13 54/13 55/21 60/9 63/13 64/14 65/24 66/16 83/19
**Mr. Kiesel's [3]** 54/22 68/20 79/13
**Mr. Kirnos [2]** 53/13 77/7
**Mr. Micale [8]** 24/6 24/7 24/22 27/18 27/23 28/6 40/8 43/9
**Mr. Micale's [1]** 25/7
**Mr. Miller [1]** 24/6
**Mr. Nassihi [10]** 13/2 32/18 36/24 38/21 49/14 63/25 66/7 68/9 77/4 79/12
**Mr. Pedante [4]** 40/1 40/6 40/15 48/1
**Mr. Pedante's [1]**

47/18
**Mr. Resnick [6]** 17/18 23/10 56/9 57/13 58/5 70/21
**Mr. Thomas [3]** 33/7 39/7 39/9
**Mr. UCLA [1]** 14/7
**Mrowk [1]** 14/21
**MROWKA [6]** 3/14 5/15 14/23 14/24 17/14 28/2
**Mrowka's [1]** 18/23
**Ms. Luna's [2]** 20/2 20/6
**Ms. Mrowka [2]** 17/14 28/2
**Ms. Mrowka's [1]** 18/23
**Ms. Taft [1]** 82/18
**MSJs [2]** 31/8 83/4
**much [2]** 15/10 22/13
**multiple [1]** 31/21
**mush [1]** 38/14
**Mustang [2]** 38/7 77/2
**myself [1]** 18/3

**N**

**name [5]** 14/22 15/19 28/17 47/3 49/1
**NASSIHI [13]** 3/8 5/9 6/20 13/2 32/18 36/24 38/21 49/14 63/25 66/7 68/9 77/4 79/12
**nature [2]** 30/16 46/23
**necessary [6]** 38/6 38/9 46/6 46/13 65/17 81/7
**need [40]** 6/6 9/18 9/23 12/3 21/16 28/1 29/20 31/9 31/23 33/24 34/4 34/10 36/12 36/13 43/7 43/23 45/8 48/16 49/8 49/23 50/19 50/25 51/1 51/1 51/15 53/5 56/12 61/25 61/25 63/14 63/21 65/16 67/21 70/5 73/2 75/1 76/3 79/9 80/3 83/16
**needed [3]** 59/24 67/24 80/12
**needs [9]** 12/12 13/17 36/10 41/21 43/20 47/16 59/6 62/1 62/2
**negotiate [1]** 43/6
**negotiating [1]** 76/19
**NEIL [2]** 2/8 4/12
**Neil Gieleghem [1]** 4/12
**net [2]** 20/18 20/19
**never [9]** 11/8 11/13 16/10 18/9 25/7 27/13 40/13 58/12 61/9
**new [9]** 37/17 40/10 40/11 41/5 42/9 42/10 43/1 43/2 45/17
**next [16]** 13/6 44/9 44/12 49/5 49/6 49/13

57/11 67/4 73/5 73/8 82/16 82/23 83/1 83/8 83/18 83/21
**nice [2]** 75/12 78/3
**Nichols [2]** 6/8 67/25 80/19
**Ninth [2]** 64/18 65/9
**Ninth Circuit [2]** 64/18 65/9
**nitpick [1]** 16/4
**nobody [1]** 18/6
**nobody's [1]** 41/7
**nominal [2]** 39/22 40/17
**None [1]** 27/15
**nonissue [1]** 21/23
**nonresponsive [2]** 50/14 56/5
**NORTH [2]** 2/9 72/2
**North American [1]** 72/2
**note [2]** 20/10 66/6
**noted [1]** 19/18
**notes [3]** 13/23 20/5 80/17
**nothing [2]** 44/19 66/9
**notice [5]** 8/25 11/11 24/20 27/21 29/17
**notion [1]** 10/4
**November [18]** 6/16 9/12 21/9 23/24 23/25 24/1 24/6 26/14 26/16 29/24 33/12 33/13 33/14 33/14 36/15 43/22 48/17 84/8
**November 12 [1]** 33/14
**November 19 [1]** 33/13
**November 4th and [1]** 23/24
**November 5 [3]** 33/12 33/14 43/22
**November 5th [5]** 6/16 23/25 24/1 24/6 26/16
**November 5th on [1]** 36/15
**November 7th [1]** 9/12
**number [5]** 23/8 29/2 31/5 51/19 59/11
**number one [1]** 23/8

**O**

**object [1]** 57/19
**objection [10]** 23/13 50/14 55/15 57/12 62/24 63/10 63/17 66/18 69/13 70/7
**objections [3]** 56/24 65/7 66/23
**obstacle [8]** 7/22 8/7 8/13 10/20 10/22 11/1 11/6 12/4
**obtain [1]** 7/13
**obviate [1]** 67/22
**obvious [1]** 14/11

**obviously [2]** 29/6 51/1
**occur [1]** 75/15
**occurred [3]** 9/5 40/7 75/6
**October [43]** 21/5 29/25 31/13 31/19 32/6 32/6 32/9 32/15 38/16 38/18 52/7 52/8 53/3 53/18 53/22 54/3 54/3 54/6 54/10 54/17 54/18 54/24 55/1 55/1 55/6 55/10 55/21 56/6 56/14 56/18 57/4 57/5 57/7 71/2 77/23 78/15 82/16 82/25 83/1 83/11 83/21 84/23 86/10
**October 1 [1]** 54/17
**October 12 [1]** 55/10
**October 12th and [1]** 54/10
**October 14th for [1]** 54/6
**October 17 [1]** 77/23
**October 1st [1]** 55/21
**October 2 [1]** 56/6
**October 23rd [2]** 38/18 83/21
**October 24 [1]** 32/15
**October 24th [1]** 53/3
**October 25th [2]** 21/5 29/25
**October 2nd [3]** 54/18 57/4 57/5
**October 4 [7]** 31/13 31/19 32/6 32/6 53/22 56/14 56/18
**October 4th [3]** 54/3 54/24 55/1
**of the [1]** 41/1
**off [4]** 6/9 37/9 48/15 71/12
**offense [1]** 36/18
**offers [1]** 12/9
**officer [1]** 63/22
**OFFICIAL [1]** 1/23
**oh [6]** 15/21 51/21 52/24 72/3 72/21 76/2
**on that [1]** 52/11
**Once [1]** 60/17
**one [42]** 3/10 5/2 6/11 8/22 9/21 12/10 12/14 15/18 17/24 19/12 19/16 19/18 20/3 22/20 23/8 24/8 30/13 30/15 31/17 31/21 40/5 42/25 43/7 45/23 46/25 47/7 47/24 58/11 62/20 62/21 67/7 67/7 70/24 72/2 73/12 74/9 76/7 76/15 77/6 78/6 78/19 80/7
**onerous [2]** 16/22 62/20
**ones [1]** 73/21
**only [9]** 10/7 27/23 32/13 63/20 65/3 70/8

**O**

only... [3] 72/10 78/12 83/24
oOo [1] 85/2
opening [1] 77/10
opinion [1] 25/5
opinions [3] 19/7 19/19 20/24
opposed [2] 21/25 32/6
opposition [13] 15/9 31/17 31/21 32/5 32/9 53/10 54/5 54/7 54/23 55/13 56/19 56/21 57/23
oppositions [3] 67/13 77/23 83/4
opps [1] 77/11
optimistic [1] 75/15
option [1] 41/19
order [24] 6/13 13/17 23/8 25/3 25/3 25/4 26/9 50/23 57/12 58/19 59/22 67/9 67/18 67/19 67/22 68/5 68/24 69/4 69/10 69/17 73/11 76/14 79/16 81/17
order without [1] 67/22
orderly [1] 55/16
orders [3] 24/24 28/24 29/10
organize [2] 31/1 63/18
originally [3] 52/11 53/20 55/16
others [2] 31/8 66/20
otherwise [4] 67/24 76/13 77/17 80/9
ours [2] 47/22 47/23
out [25] 11/15 31/8 40/7 41/5 41/8 42/4 46/7 47/6 53/9 53/11 53/14 53/25 54/10 55/8 55/16 56/10 56/11 58/18 63/9 63/11 72/21 75/20 77/15 81/23 84/1
outside [5] 67/9 68/4 68/23 69/4 69/10
outstanding [3] 80/25 81/19 82/4
over [14] 7/23 7/23 8/16 10/21 10/21 27/8 28/5 43/10 43/14 44/8 44/15 55/15 75/23 83/18
overly [1] 75/14
own [4] 15/9 25/6 27/3 29/14
owners [1] 47/8

**P**

page [9] 9/11 19/22 19/23 20/6 20/8 23/13 28/18 28/23 86/7
page 1 [1] 28/18
page 13 [1] 9/11
page 3 [1] 28/23
paid [2] 27/22 46/22
pain [1] 71/6
paper [1] 31/1
papers [10] 14/8 19/5 31/10 48/12 51/13 56/13 70/2 70/7 77/13 77/14
paperwork [1] 31/15
parachute [1] 58/13
PARK [3] 2/14 2/23 75/24
parking [1] 37/15
part [15] 13/19 16/6 20/21 23/10 37/14 47/14 56/11 61/2 64/11 72/3 72/3 72/18 73/1 81/12 84/6
parte [2] 55/17 56/25
particular [3] 20/24 31/7 44/21
parties [10] 8/14 14/12 15/22 16/3 39/25 48/25 51/10 76/21 81/17 83/14
parties' [2] 30/10 81/20
parts [11] 40/7 40/10 40/11 40/11 46/2 47/11 47/12 47/13 47/15 72/9 72/18
party [1] 14/25
Pasadena [1] 65/19
passage [1] 19/19
passed [1] 36/9
past [1] 22/2
patent [4] 33/21 33/25 34/19 35/7
path [1] 41/21
PAUL [3] 2/3 4/20 30/23
pave [1] 7/1
pay [7] 7/25 8/1 8/15 10/23 11/2 11/4 46/25
paying [1] 61/6
Pedante [34] 24/5 31/5 32/13 32/23 38/20 38/25 39/13 40/1 40/6 40/15 41/21 42/16 43/22 45/5 46/18 47/5 48/1 48/9 48/15 48/17 52/14 52/15 52/17 54/14 67/8 67/12 71/14 72/18 83/25 84/1 84/2 84/7 84/17 84/21
Pedante's [1] 47/18
penalty [2] 20/7 20/21
people [6] 20/16 36/11 55/12 66/13 71/20 72/24
percent [5] 59/20 60/22 62/14 69/24 71/18
perfect [4] 56/19 56/21 79/9 83/10
perfunctory [1] 61/11
perhaps [2] 30/3 39/8 53/3 53/6 72/17 73/3
peril [2] 27/3 29/14
period [1] 22/7
perjury [1] 20/7
permission [1] 6/15
permitted [1] 11/5
person [2] 5/2 76/23
perspective [4] 8/1 10/22 12/12 33/9
phase [1] 20/22
phase-type [1] 20/22
phone [2] 5/3 5/20 21/24
pick [2] 21/24 30/19
placed [1] 39/7
plaintiff [20] 4/9 11/2 11/11 12/9 12/20 13/12 17/15 18/1 24/7 26/5 29/8 30/22 44/18 45/16 48/25 70/3 70/17 74/13 74/16 82/9
plaintiffs [44] 2/2 2/7 2/11 2/17 2/21 4/12 4/21 4/25 5/2 5/5 7/12 7/23 8/6 10/12 10/18 10/21 11/8 12/11 12/14 13/22 13/24 18/4 21/19 23/7 23/19 24/8 26/25 27/5 33/17 34/12 50/8 51/5 56/25 59/22 60/21 61/19 62/6 62/16 63/18 68/3 69/13 70/6 70/9 74/10
plaintiffs can [1] 10/12
plaintiffs' [13] 13/7 15/3 24/18 28/6 39/17 40/8 42/21 45/24 46/9 55/15 57/11 82/7 82/11
plan [2] 11/9 60/21
planned [3] 54/8 54/9 55/11
plans [1] 61/24
play [2] 16/17 73/22
players [1] 14/8
playing [2] 34/12 46/7
pleadings [2] 6/7 13/1
please [5] 4/7 15/24 72/4 76/5 81/21
plenty [1] 61/1
PLLC [2] 3/3 23/4
plug [2] 79/6 79/8
plus [1] 23/13
point [20] 8/18 16/3 25/22 26/1 26/24 33/1 37/12 47/16 47/24 66/7 66/8 67/7 67/7 69/9 70/8 71/13 73/12 80/21 81/3 81/23
points [2] 45/23 70/24
portions [1] 19/14
posed [1] 43/18
posing [1] 7/22 8/13
position [7] 11/14 22/15 22/24 25/1
perhaps [2] 49/11 49/23 71/21
possibilities [1] 42/8
possibility [1] 46/12
possible [3] 7/25 80/1 80/2
post [3] 41/17 72/1 72/21
potential [1] 46/11
potentially [2] 47/25 73/16
POWERSHIFT [2] 1/5 4/5
practice [1] 63/16
practices [3] 2/22 60/11 61/7
precisely [1] 48/13
prefer [1] 22/13
Pregerson [1] 62/19
prejudice [7] 26/22 56/14 56/15 80/21 81/3 81/5 81/10
prejudicial [1] 26/23
prepare [1] 13/17
prepared [2] 27/14 32/3
present [3] 34/15 42/20 54/12
presented [1] 31/2
presenting [1] 56/1
preserve [6] 49/23 50/19 50/25 69/14 73/1 73/22
preserved [1] 72/9
preserving [1] 69/16
Presumably [1] 44/6
pretrial [16] 29/22 30/6 30/8 30/11 30/13 32/12 32/21 32/21 33/14 38/20 52/3 52/20 52/21 77/9 84/10 84/10
pretty [6] 6/12 16/2 34/17 36/23 74/12 74/19
preventing [1] 12/7
previously [2] 7/12 40/15
primary [1] 8/7
principally [1] 20/16
prior [4] 17/12 29/5 29/7 59/18
probably [14] 25/16 27/21 27/22 31/18 34/6 34/10 35/7 36/9 57/10 71/6 71/16 78/24 80/2 80/22
problem [8] 20/25 24/19 42/15 45/8 46/24 46/24 47/14 75/6
problems [1] 15/10
proceed [1] 79/16
proceedings [3] 1/10 85/1 86/6
process [16] 57/19 57/20 59/6 59/10 60/8 60/12 61/8 61/10 61/21 63/1 63/8 64/1
64/2 64/11 64/25 70/13
produced [2] 16/2 29/7
PRODUCTS [2] 1/6 4/5
pronounce [1] 14/22
pronouncing [1] 14/23
properly [1] 40/14
proportion [1] 20/19
propose [5] 29/25 30/5 30/17 53/22 84/10
proposed [6] 23/8 37/8 57/12 63/18 82/7 82/15
proposition [1] 20/23
provide [6] 16/24 24/21 35/13 39/8 59/11 65/24
provided [5] 12/13 20/6 25/8 26/6 62/15
provides [3] 60/6 63/9 64/5
providing [3] 26/2 58/14 60/10
prudent [1] 65/6
publicized [1] 62/1
pull [2] 20/5 28/7
punch [1] 75/9
punitive [2] 20/17 20/19
pure [2] 10/24 59/3
purposes [2] 78/21 78/23
pursuant [1] 86/3
putting [5] 10/8 22/14 37/9

**Q**

qualified [1] 20/23
query [2] 64/3 83/16
question [12] 7/3 8/9 8/10 10/12 10/15 10/17 10/19 10/24 12/12 13/15 50/16 68/9
questions [3] 12/25 13/4 43/18
queue [1] 71/19
quick [2] 70/24 71/13
quickly [1] 80/16
quiet [2] 70/21 70/22
quite [8] 10/6 13/19 44/3 64/15 65/21 66/18 69/8 78/14
quote [3] 7/25 18/22 42/10
quote/unquote [2] 18/22 42/10
quoted [2] 19/15 61/1
quotes [2] 15/13 60/6

**R**

raise [2] 16/19 29/9
raised [9] 6/2 6/25 7/12 8/6 11/7 12/1 16/10 42/12 51/18

**R**

rather [3]  21/9 35/15 57/21
RE [2]  1/5 4/4
reach [1]  46/9
reaction [3]  30/21 30/24 42/22
read [4]  19/21 59/18 70/1 70/7
Reading [1]  28/22
ready [4]  9/20 22/1 44/10 67/11
real [2]  13/12 57/25
realistic [1]  74/22
really [11]  21/22 36/22 39/10 42/17 42/19 50/21 55/24 58/9 60/14 67/12 69/8
reams [1]  19/16
reappointment [1]  60/11
reason [8]  6/21 18/19 31/8 33/12 38/25 46/13 56/11 68/24
reasonable [1]  82/20
reasons [2]  8/23 17/4
recall [4]  10/1 10/3 60/19 61/11
received [4]  11/8 11/13 15/5 55/13
recently [1]  37/2
recognize [2]  13/15 34/5
recognizing [1]  58/6
recommended [1] 61/6
record [11]  17/16 41/4 64/4 64/9 65/1 65/22 65/23 66/21 78/1 80/23 83/24
record's [2]  81/4 82/15
recorded [1]  41/3
records [2]  40/19 40/23
REES [1]  3/13
Reese [1]  66/11
refer [1]  16/1
reference [6]  24/9 24/14 27/12 50/5 65/5 72/23
referenced [5]  25/14 25/14 27/15 43/9 58/19
references [2]  19/22 24/13
referred [2]  23/9 43/13
refiled [1]  80/21
refiling [1]  81/6
refund [3]  7/14 11/2 11/5
refuses [1]  22/25
regard [4]  33/3 39/4 58/10 61/6
regarding [1]  29/3
regular [2]  30/2 70/13
regulations [1]  86/8

reimbursed [1]  47/1
reimbursement [1] 47/23
relate [1]  52/14
relates [9]  6/18 13/19 15/12 30/11 31/24 80/5 80/18 81/8 81/10
relation [1]  32/23
relationship [2]  35/2 65/1
relevant [1]  44/14
relied [2]  19/20 28/23
relies [1]  20/9
rely [5]  20/21 44/15 45/16 45/24 46/10
relying [1]  74/24
remain [1]  80/24
remains [2]  12/11 32/25
remanded [1]  64/23
remedies [7]  2/8 7/2 7/11 7/14 8/12 9/16 12/13
remedy [6]  8/4 12/14 12/15 27/8 41/15 41/16
remember [3]  54/17 75/1 75/4
reminded [1]  79/14
removed [3]  24/16 33/11 40/3
removing [2]  32/24 33/10
render [1]  20/24
renewed [1]  59/19
repair [23]  24/14 24/24 25/2 25/3 25/4 26/9 26/9 27/12 27/19 28/24 29/10 41/4 45/25 46/3 46/21 46/25 47/1 47/10 47/22 71/24 72/3 72/8 74/17
repaired [1]  40/14
repairs [5]  24/10 24/23 46/3 46/23 47/6
repeat [1]  12/3
replace [1]  27/18
replaced [7]  24/16 27/19 40/3 41/5 46/2 47/13 72/25
replacements [2] 39/14 39/15
replacing [1]  32/24
reply [4]  9/11 54/6 55/1 71/2
report as [1]  28/24
reported [1]  86/5
REPORTER [1]  1/23
REPORTER'S [1]  1/10
reports [17]  15/5 15/8 15/10 16/11 16/13 16/24 17/4 18/24 19/15 24/7 24/21 25/5 25/24 42/1 45/9 45/12 81/22
represent [4]  20/20 22/23 37/19 51/2

representation [1] 60/2
representations [2] 13/1 27/17
representatives [1] 46/7
reputation [1]  12/24
request [19]  6/15 8/19 8/25 13/22 27/1 27/13 49/8 54/23 55/15 61/18 64/5 68/5 68/6 68/21 70/6 70/18 71/1 72/10 75/15
requested [2]  19/4 37/3
require [5]  16/25 25/4 25/23 62/25 68/25
required [1]  69/2
requirements [5] 13/14 13/16 15/14 19/6 59/23
requires [1]  14/18
requiring [1]  63/8
rereview [1]  63/10
RESNICK [9]  2/9 4/12 4/15 17/18 23/10 56/9 57/13 58/5 70/21
resolution [9]  6/24 7/2 7/5 7/6 7/22 8/8 8/10 10/25 12/4
resolve [7]  7/4 9/1 10/5 14/3 17/12 41/22 73/4
resolved [4]  10/8 44/12 76/21 82/2
resolving [1]  12/7
resources [1]  58/23
respect [15]  14/16 18/13 18/21 34/16 65/18 69/25 77/14 80/19 81/1 81/20 82/5 82/6 82/7 82/10 82/13
respective [1]  13/10
respond [4]  28/4 32/15 63/13 63/14
responded [2]  21/10 43/18
responding [3]  18/7 23/15 23/15
response [16]  11/8 11/13 13/1 14/2 15/5 16/19 17/9 18/20 26/25 32/16 42/13 42/22 43/15 56/3 62/7 62/9
response that [2] 62/7 62/9
responsibility [2] 16/23 23/14
responsive [2]  56/13 56/17
rest [1]  19/21
result [3]  41/3 50/22 69/16
resulted [2]  23/7 23/10
retrospect [1]  18/4
return [1]  83/21

returned [2]  40/24 41/2
reveal [1]  81/3
reversed [1]  64/18
reversible [1]  59/7
review [3]  29/4 41/13 81/21
revision [1]  29/6
revisit [1]  71/3
RICHARD [3]  2/18 2/18 5/4
ride [1]  58/15
right [74]  4/16 6/5 10/14 11/18 12/16 13/6 15/1 15/21 15/23 17/14 23/20 27/25 28/14 29/21 32/17 33/13 35/16 35/24 38/17 39/11 40/17 40/18 42/3 42/6 43/25 45/2 45/10 45/18 45/19 48/6 48/19 49/13 49/21 50/3 50/7 51/2 51/22 55/7 57/6 57/9 57/10 63/12 64/25 65/13 66/4 68/25 69/18 70/15 70/18 70/20 71/17 73/23 74/1 77/14 77/18 77/21 78/5 78/13 78/18 79/4 79/7 79/10 79/11 79/18 80/13 80/13 80/16 80/20 81/7 82/18 83/11 83/22 84/22 84/22
rightfully [1]  66/20
rise [2]  51/10 84/25
risk [2]  14/19 43/25
risk -- I [1]  43/25
rodeo [1]  51/23
ROGER [3]  2/13 4/24 78/3
Roger Kirnos [2]  4/24 78/3
roll [1]  82/19
ROOM [1]  1/24
rough [1]  14/14
rule [14]  13/14 14/18 15/14 16/5 16/9 18/8 19/7 22/12 29/7 49/11 81/13 81/16 81/16 82/5
Rule 26 [12]  13/14 14/18 15/14 16/5 16/9 18/8 22/12 29/7 81/13 81/16 81/16 82/5
rules [8]  15/7 15/18 16/22 16/25 22/15 68/25 69/9 81/15
ruling [7]  7/2 11/22 11/24 12/2 12/17 12/19 65/7
run [2]  14/19 71/7
running [1]  26/22
RUSSELL [4]  2/13 4/17 17/21 17/23

**S**

safety [1]  72/9
Saleen [1]  38/8
same [10]  7/13 7/17 7/19 8/16 12/6 31/9 45/4 58/17 71/7 75/22
SAN [2]  3/11 3/16
sanction [1]  13/24
sanctions [1]  15/8
sarcastic [1]  16/16
satisfied [1]  19/9
satisfy [1]  58/21
save [2]  72/3 72/3
saying [17]  7/5 9/18 10/1 13/25 17/9 34/1 48/4 48/23 61/1 65/22 69/1 69/1 70/9 70/10 73/4 74/15 78/10
saying that [1]  34/1
says I [1]  56/2
scale [1]  7/1
scenario [1]  74/25
schedule [2]  55/16 57/1 72/18 77/20
scheduled [2]  52/11 52/11
schedules [1]  77/16
scheduling [6]  6/12 67/9 67/18 67/22 68/5 68/24 69/4 69/10
science [8]  33/16 36/9 36/10 36/11 36/25 38/15 38/17 78/23
screen [1]  79/8
second [4]  30/17 50/11 59/5 71/13
seconds [3]  36/22 79/2 79/3
Section [1]  86/3
security [3]  80/4 80/9 80/15
see [19]  7/9 8/15 14/10 14/16 25/16 29/21 30/12 32/1 32/16 39/21 42/24 44/14 46/12 56/14 58/11 74/7 82/17 83/13 84/23
see what [1]  56/14
seeing [1]  51/12
seek [5]  7/13 7/17 66/1 69/5 69/10
seeking [2]  47/25 62/13
seem [6]  9/6 14/9 27/2 30/14 44/7 44/11
seemed [2]  49/19 58/6
seemingly [2]  16/8 60/14
seems [10]  10/6 21/13 23/2 42/22 44/2 44/2 44/14 48/15 50/25 73/12
seen [5]  12/8 59/19 60/20 61/9 65/2
selecting [1]  38/11
send [2]  47/12 66/14

**S**

sense [5]  30/13 30/25
32/20 45/1 53/4
sensitive [1]  14/22
sensitivities [1]  71/8
sent [2]  14/7 28/5
separate [4]  7/17 8/11
32/21 35/12
separated [1]  39/25
SEPTEMBER [13]
1/11 4/1 31/15 31/19
32/6 39/15 52/6 53/21
54/7 54/11 54/15
54/24 55/13
September 24th [1]
52/6
September 30 [4]
31/15 31/19 32/6
53/21
September 30th [3]
54/7 54/11 55/13
September 30th
deadline [1]  54/15
September 30th to [1]
54/24
series [1]  39/14
serious [1]  42/15
service [2]  28/24
29/10
set [19]  6/11 21/5 21/9
24/6 29/23 44/8 44/15
46/19 49/5 52/3 53/4
53/24 55/3 55/16
58/18 61/14 79/5
83/16 84/2
setting [1]  60/11
settle [2]  8/23 9/23
settlement [9]  7/24
10/20 10/22 12/8
60/22 62/17 62/22
64/19 65/15
settling [1]  8/14
seven [3]  44/9 49/6
49/13
seventh [1]  79/23
seventh floor [1]
79/23
several [2]  8/6 11/7
share [3]  68/8 71/6
75/13
Shelby [1]  77/2
shift [1]  16/23
SHOOK [2]  3/7 66/12
shoot [1]  75/23
shop [1]  38/7
short [2]  14/24 81/25
show [3]  35/14 78/24
79/1
shows [1]  40/14
shudder [12]  35/4
39/21 39/22 39/23
40/17 40/23 41/1 41/4
46/1 46/4 47/7 47/21
shuddering [1]  74/25
shuts [1]  71/22
side [21]  8/23 10/13
10/14 13/17 30/19
33/18 36/4 37/5 37/13

37/25 38/10 42/7
51/20 52/1 58/22
61/23 63/1 66/6 79/11
81/19 82/11
sides [19]  9/12 13/18
14/18 16/4 21/8 22/5
22/7 26/21 31/2 37/3
39/22 47/17 57/9
74/23 75/7 75/11
75/16 79/14 81/21
significant [6]  8/13
32/25 33/9 60/15
60/15 60/18
signs [1]  40/14
similar [2]  62/20
64/25
simple [1]  14/20
74/12
simpleton [1]  34/5
simply [3]  71/13 72/1
72/16
since [5]  22/23 30/6
41/25 47/5 84/14
single [5]  18/16 19/12
19/21 20/8 61/4
single-most [1]  61/4
sitting [1]  71/19
six [9]  33/19 33/23
34/4 34/7 34/10 34/11
46/1 59/20 60/22
six percent [1]  59/20
60/22
six-hour [1]  34/7
size [1]  29/2
sky [1]  66/13
slug [1]  11/20
smaller [3]  80/3 80/14
80/14
smoking [1]  13/16
So Cal [1]  72/22
sobeit [3]  16/20 38/4
75/21
software [1]  35/12
sold [1]  48/8
solely [1]  23/19
somebody [1]  18/5
somehow [4]  10/4
18/24 59/1 59/7
someone [2]  20/5
33/23
something [13]  8/24
34/7 37/4 66/25 67/3
67/10 70/3 70/17 74/7
76/3 79/6 82/10 84/3
Sometimes [1]  47/11
somewhat [2]  10/6
21/2
somewhere [2]  44/4
71/10
Song [2]  7/20 8/4
Song-Beverly [2]  7/20
8/4
soon [2]  54/11 55/12
sorry [19]  14/21 17/20
17/22 19/25 21/15
28/7 34/21 35/18 38/8
49/2 52/8 52/24 54/21
56/4 62/8 75/17 77/24

78/24 79/14
sort [11]  13/16 13/18
14/2 16/16 20/2 20/3
21/7 22/9 64/20 65/1
84/14
sounds [3]  10/16
37/13 69/13
SOUTH [3]  3/4 50/10
51/4
speak [1]  12/20
specific [5]  18/8 19/4
19/13 43/16 63/11
specifically [1]  41/1
spend [1]  53/11
spending [1]  83/18
spent [4]  35/23 35/25
76/17 82/3
spirit [2]  22/12 81/16
spoiled [1]  41/10
spoliation [7]  33/8
38/23 42/12 42/24
71/15 72/7 73/3
staff [1]  30/25
stage [5]  30/25 31/7
32/5 36/10 51/4
stage this [1]  30/25
staggered [1]  84/1
staging [1]  32/4
stand [1]  10/5
standard [1]  37/1
start [7]  6/6 6/9 6/10
33/14 42/17 76/5
83/25
started [1]  69/1
state [2]  3/4 4/7
statement [3]  19/7
23/9 29/1
STATES [3]  1/1 86/4
86/8
status [7]  8/11 9/15
23/9 37/2 48/3 61/12
63/4
statutory [3]  32/7
56/16 62/13
stenographically [1]
86/5
step [2]  24/3 62/4
STEPHANIE [2]  2/4
4/9
Stephanie Taft [1]  4/9
sticks [1]  76/24
stip [3]  82/15 83/12
84/10
stone [1]  53/24
stop [5]  18/17 43/11
49/25 57/2 64/16
straightforward [2]
74/19 74/21
STRATEGIC [1]  2/22
straw [1]  14/24
STREET [3]  1/24 3/4
3/15
strike [1]  56/5
strikes [2]  13/9 75/8
strong [1]  56/24
strongly [2]  38/3
42/25
structure [1]  61/10

structures [1]  69/23
stuff [2]  22/5 76/20
sub [6]  17/3 17/3 17/3
17/3 17/3 28/21
sub 2 [1]  17/3 28/21
sub 3 [1]  17/3
sub 4 [1]  17/3
sub 5 [1]  17/3
subject [3]  27/24 29/5
81/5
submission [1]  27/21
submit [7]  13/2 18/12
59/22 66/25 70/3
70/17 82/10
submitted [1]  63/17
submitting [5]  60/10
60/14 61/11 61/13
77/13
substantial [2]  11/11
58/18
such [4]  23/3 29/3
31/1 58/25
sufficient [1]  78/7
suggest [7]  14/9
34/21 37/8 40/23
51/20 54/16 83/3
suggested [3]  41/12
51/19 53/20
suggesting [2]  38/24
76/2
suggestion [5]  31/11
32/4 32/20 67/8 74/6
suggests [1]  27/7
SUITE [5]  2/14 2/24
3/4 3/10 3/15
summary [3]  19/19
31/6 52/17
supplement [2]  45/8
45/12
supplements [1]  39/9
supported [1]  25/19
supporting [1]  24/13
suppose [1]  67/18
surcharge [1]  59/20
60/22
sure [20]  14/9 21/5
25/25 26/25 38/16
42/15 42/16 42/24
47/13 50/1 50/13 55/5
61/1 66/19 69/7 69/22
70/11 72/14 77/18
84/5
surprised [1]  16/15
surprises [1]  27/6
suspect [1]  78/24
swamped [1]  83/3
system [3]  47/3 71/25
75/19
systematically [1]
22/24

**T**

table [5]  26/21 64/11
66/12 80/22 81/2
TAFT [4]  2/4 4/9 82/18
84/17
Taft's [1]  83/2

take [17]  18/5 18/22
22/21 23/16 34/11
37/23 41/8 47/21
56/10 60/5 62/23
71/20 74/6 74/17
74/18 75/19 76/22
taken [3]  19/14 22/24
73/12
takes [2]  34/16 44/24
taking [1]  74/10
talk [12]  13/12 19/6
20/11 20/14 21/3 23/2
23/6 23/12 33/7 33/16
33/23 79/18
talked [11]  8/12 9/14
9/15 9/17 33/8 33/17
42/7 62/17 62/19 77/8
82/12
talking [10]  8/14
20/15 34/1 54/21
54/22 62/21 74/22
76/5 79/19 80/23
tangential [2]  11/16
42/18
team [2]  64/6 82/8
tease [1]  50/11
technical [8]  14/2
22/6 22/15 24/8 25/16
28/24 29/10 81/15
technicians [1]  46/8
technology [5]  33/17
33/19 33/25 38/17
78/21
telephone [6]  2/19
2/23 3/3 3/9 51/4
66/13
television [1]  79/5
telling [3]  14/15 45/14
74/13
tells [1]  74/18
temporarily [1]  60/20
ten [4]  36/22 49/13
79/2 79/3
tend [1]  82/19
tenor [1]  10/5
tentative [1]  13/3
term [1]  19/10
terms [4]  7/21 52/18
62/20 79/16
test [3]  24/24 25/14
43/8
tested [1]  39/19
testify [1]  20/18
testing [1]  24/9
tests [1]  25/7
text [1]  19/14
thank [19]  13/5 17/14
17/19 22/17 23/20
23/22 27/11 27/24
27/25 29/16 32/19
36/6 45/21 64/8 70/19
70/23 74/2 74/5 84/24
the argument [1]
50/10
the next [1]  82/16
them [28]  10/8 11/12
11/12 14/3 17/2 18/17
19/11 19/13 19/15

**T**

**them... [19]** 24/8
35/15 37/23 41/5 41/8
41/8 42/13 47/11
57/21 59/8 59/16
62/21 67/17 67/18
67/19 71/5 72/4 73/1
73/15
**theme [1]** 76/4
**themselves [1]** 63/19
**theories [2]** 11/3 11/6
**theory [5]** 7/15 12/1
51/6 51/10 73/3
**there's [38]** 10/11
11/19 14/9 14/11 16/6
19/15 24/21 24/24
27/6 27/12 29/19 31/8
33/8 33/11 34/23 35/5
35/10 35/10 35/11
37/7 38/25 56/15
58/21 60/24 62/3 63/1
63/2 64/13 67/17
71/19 72/7 72/9 72/21
72/21 73/4 74/7 75/9
81/15
**therefor [2]** 19/8 46/2
**therefore [2]** 48/6
48/9
**They certainly [1]**
58/24
**thing [8]** 16/21 18/16
30/17 58/11 58/25
65/3 74/9 83/24
**things [14]** 6/5 10/5
19/20 20/9 20/13
20/20 21/16 23/11
29/19 30/16 41/25
43/7 82/19 84/5
**think [96]**
**thinking [1]** 79/21
**third [1]** 68/15
**this new [1]** 43/1
**THOMAS [5]** 3/5 5/21
33/7 39/7 39/9
**those need [1]** 61/25
**though [3]** 14/8 36/4
42/6
**thought [13]** 6/12 18/5
22/2 22/20 32/2 53/23
62/6 64/22 65/5 67/24
76/1 76/9 78/19
**thoughts [3]** 30/10
30/21 32/1
**thousand [3]** 71/19
72/24 74/22
**three [10]** 33/18 33/19
33/23 34/11 34/12
34/16 34/22 35/19
36/2 66/11
**throughout [2]** 11/12
76/16
**THURSDAY [2]** 1/11
4/1
**till [2]** 32/23 44/24
**time's [1]** 75/6
**timing [2]** 67/1 67/1
**Title [1]** 86/4
**to reveal [1]** 81/3

**today [9]** 21/5 44/3
44/24 44/24 76/20
78/12 82/16 82/17
84/5
**together [5]** 22/5 23/7
42/9 77/20 83/18
**token [1]** 75/22
**tomorrow [1]** 44/25
35/19 35/21
**too [4]** 9/15 25/16
35/19 35/21
**took [5]** 40/1 40/6
40/6 41/4 47/10
**top [1]** 62/14
**total [1]** 36/3
**totaled [1]** 73/21
**TOWER [1]** 3/10
**town [2]** 30/18 56/11
**track [9]** 7/17 7/20 8/5
12/10 25/2 44/23
48/15 48/17 48/24
**tracked [2]** 25/3 25/6
**trade [1]** 73/3
**trade-in [1]** 73/3
**transcript [5]** 1/10
9/10 76/15 86/5 86/7
**transcripts [1]** 19/24
**transmission [17]** 1/5
4/5 20/25 24/15 27/18
34/16 34/17 34/22
34/25 35/2 35/6 35/8
36/12 39/14 42/10
79/20 80/2
**transmission's [1]**
35/2
**transmissions [4]**
34/2 36/19 36/21
71/21
**tremendous [1]** 10/25
**trial [39]** 6/12 6/14
6/16 12/18 17/8 21/9
26/14 26/16 27/6
29/24 30/15 30/19
32/24 33/10 33/13
36/14 38/24 38/25
41/22 42/17 43/22
46/19 50/10 55/18
57/1 61/14 67/2 67/3
67/11 73/5 76/6 76/13
78/7 78/15 79/14 84/3
84/8 84/13 84/16
**trials [5]** 9/20 14/15
30/11 30/14 33/21
**triggered [1]** 50/7
**trip [1]** 56/10
**true [3]** 18/2 18/9 86/4
**trust [2]** 34/3 53/6
**trusting [2]** 76/1 76/2
**try [9]** 14/22 22/14
29/22 43/5 48/15
57/25 63/18 76/7
79/23
**trying [14]** 9/19 9/20
9/22 16/15 16/17
26/20 37/19 41/23
43/21 70/9 71/8 72/4
72/17 73/1
**Ts [2]** 64/21 66/19
**turn [3]** 38/14 44/7

44/24
**turned [3]** 27/8 43/10
43/14
**tutorial [1]** 34/7
**twice [1]** 8/15
**two [7]** 8/11 35/21
70/24 73/21 75/5
76/17 77/10
**type [2]** 20/22 79/24
**typically [2]** 20/4
42/20

**U**

**UCLA [1]** 14/7
**Uh [1]** 46/5
**Uh-huh [1]** 46/5
**ultimately [1]** 64/22
**unbeknownst [1]** 40/4
**uncharacteristically
[1]** 70/22
**unclean [1]** 13/18
**unclear [1]** 27/16
**under [16]** 7/14 7/15
8/4 8/5 11/3 12/1 15/7
18/14 20/7 29/4 56/17
63/5 73/3 74/6 74/14
75/19
**understand [17]** 9/19
13/3 25/18 26/1 26/1
34/6 43/12 46/8 47/17
49/21 55/5 58/9 68/21
70/2 70/7 71/8 72/15
**understandable [1]**
31/3
**understanding [3]**
35/8 54/13 69/22
**understands [1]**
75/18
**understood [1]** 65/11
**unilateral [1]** 23/5
**unilaterally [1]** 23/1
**UNITED [3]** 1/1 86/4
86/8
**unless [9]** 12/24 25/9
38/8 39/2 44/4 46/23
80/6 84/3 84/3
**unlikely [1]** 76/3
**unnecessary [1]** 21/8
**unquote [2]** 18/22
42/10
**unrealistic [2]** 53/7
53/7
**unreasonable [1]** 27/2
**until [5]** 16/11 17/5
25/6 37/9 84/3
**up [19]** 6/16 11/9
21/24 23/8 23/24 26/9
27/5 28/7 43/23 44/9
44/15 49/5 57/1 60/11
67/2 77/23 78/15 79/8
79/23
**upon [4]** 28/23 45/24
46/9 82/13
**upset [1]** 57/9
**urge [5]** 60/5 61/17
62/3 63/7 63/10
**us [26]** 10/12 15/6
18/4 23/12 24/21 25/8

25/9 25/23 26/2 35/22
35/22 36/11 37/2
37/14 54/12 56/6
57/22 60/13 65/25
66/15 69/13 69/14
74/11 74/19 79/17
84/9
**use [6]** 33/14 37/25
38/3 38/4 79/6 79/17
**used [1]** 62/16
**usual [1]** 63/8
**usually [1]** 52/20
**utilize [1]** 75/9

**V**

**vacation [1]** 54/10
**value [3]** 11/4 58/7
58/8
**Vargas [2]** 65/10
66/19
**vehicle [29]** 7/3 7/14
7/19 11/2 11/4 24/10
24/11 24/19 27/19
27/20 35/1 35/3 39/13
39/17 39/18 39/19
40/1 40/6 40/9 40/12
40/13 41/9 41/15 44/9
45/25 46/3 46/14 49/6
74/11
**verdict [1]** 20/20
**versus [1]** 6/8
**very specific [1]**
63/11
**via [6]** 2/19 2/23 3/3
3/9 3/14 79/16
**video [4]** 36/17 36/23
78/24 79/1
**videos [1]** 35/14
**view [7]** 11/25 12/5
21/7 49/22 50/18
76/11 76/11
**VIN [3]** 72/21 72/23
75/9
**VINs [4]** 72/2 72/2
72/20 73/19
**violation [1]** 16/8
**violations [1]** 14/3
**virtually [1]** 20/7

**W**

**wait [2]** 17/5 72/21
**waiting [1]** 77/2
**wanted [6]** 26/8 31/14
36/16 56/12 57/11
77/12
**wanting [1]** 79/15
**wants [2]** 61/2 69/2
**warfare [3]** 58/7 76/10
76/19
**warrant [2]** 32/24
33/10
**warranties [1]** 71/23
**warranty [5]** 7/14 7/15
11/3 27/22 46/22
**waste [1]** 36/13
**wasting [2]** 13/9
21/17
**Watch [1]** 16/7

**watched [1]** 65/10
**we end [1]** 11/9
**Wednesday [1]** 83/1
**weeds [1]** 46/20
**week [8]** 33/14 42/13
44/12 45/4 77/10
77/15 78/6 82/23
**weekend [1]** 84/23
**weeks [5]** 50/23 51/7
67/12 69/17 77/10
**welcome [1]** 14/25
**well-taken [1]** 73/12
**went [5]** 15/2 56/23
64/2 64/6 80/8
**WEST [2]** 1/24 2/19
**WESTERN [1]** 1/2
**wherever [1]** 74/25
**who've [2]** 58/5 64/11
**whole [4]** 7/16 11/3
57/24 58/5
**whoops [1]** 38/19
**why [28]** 6/6 6/10 6/17
6/21 8/8 8/15 8/23
11/7 13/23 14/4 14/12
21/6 22/4 24/2 24/3
26/6 33/12 34/4 34/14
37/1 41/20 54/4 56/11
60/7 65/15 65/21
70/16 71/4
**wider [1]** 7/1
**wife [3]** 70/25 71/6
71/7
**willing [1]** 31/4
**willingness [1]** 35/17
**WILSHIRE [1]** 2/4
**wish [3]** 16/7 63/13
68/3
**wishes [3]** 6/18 12/20
12/25
**withdrawn [1]** 60/20
**without [7]** 34/6 61/10
67/22 80/21 81/3 81/5
81/9
**witness [4]** 19/11 27/3
27/9 29/5
**witness' [1]** 15/19
**witness's [1]** 44/21
**witnesses [3]** 13/7
14/17 14/19 15/17
19/12 26/7 81/9
**wold [1]** 84/12
**wonder [1]** 38/2
**wondering [2]** 34/4
78/6
**word [2]** 41/10 76/22
**work [11]** 36/22 53/9
53/12 53/25 55/12
59/15 66/14 71/8
77/15 77/19 84/14
**worked [1]** 53/14
**working [6]** 7/19 22/9
54/11 58/17 59/16
59/16
**workings [2]** 34/24
34/24
**worried [1]** 40/25
**worse [1]** 36/20
**worth [3]** 20/18 20/19

**W**

**worth... [1]** 46/20
**writing [3]** 70/4 70/17
82/10
**wrote [2]** 11/12 11/12

**Y**

**year [1]** 22/24
**years [2]** 21/12 73/21
**yesterday [2]** 32/23
39/10
**you are [1]** 19/2
**your Honor [51]** 5/4
5/21 5/24 6/3 6/20 7/8
9/3 12/8 12/23 15/1
22/19 22/23 23/24
24/1 25/13 25/16 28/3
30/23 32/19 33/6 34/8
34/18 35/23 36/1 36/8
36/25 37/7 46/17
47/25 49/15 51/17
51/19 54/17 56/6
56/23 58/16 60/19
62/1 62/2 62/23 64/8
65/9 69/21 76/10
76/25 77/7 78/3 78/12
80/2 83/2 83/7
**YouTube [2]** 36/16
79/1