UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIAIBLITY LITIGATION,<br><br>This Document Relates Only To:<br><br>*Mark Pedante v. Ford Motor Co.*, CV 17-06656 | Case No. 18-ML-2814 AB (FFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFEDANT FORD MOTOR CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. No. 470]** |

Before the Court is Defendant Ford Motor Company's ("Ford") Motion for Partial Summary Judgment (Dkt. No. 470). Plaintiff Mark Pedante ("Plaintiff") filed an opposition and Ford filed a reply. The Court heard oral argument on October 24, 2019. The Motion is **GRANTED** in part and **DENIED** in part.

**I.   BACKGROUND**

Plaintiff asserts claims for fraud and claims under the Song-Beverly Act against Ford arising out of an allegedly defective DPS6 transmission with which his 2013 Ford Focus was equipped. Following pleading challenges, the remaining claims are for violation of the Song-Beverly Act based on breach of express warranty (count 1), and fraudulent inducement by concealment (count 3), by intentional misrepresentation (count 4) and by negligent misrepresentation (count 5). Plaintiff also seeks civil penalties under the Song-Beverly Act, and punitive damages under the fraud claims.

1.

Ford moves for summary judgment as to all the fraud claims including the punitive damages claim, and as to the claim for civil penalties under Song-Beverly. Rather than state all of the undisputed facts in a single introductory section, the Court will address the relevant facts as it addresses each claim

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id*. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III. DISCUSSION

**A. The Intentional and Negligent Misrepresentation Claims**

The elements of intentional misrepresentation are: "(a) misrepresentation; (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." CACI 1900; *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997). "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Id.*

The elements for negligent misrepresentation are the same, but "the plaintiff need not [show] the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006). For either claim, the statement must have been false at the time it was made. *See Magpali v. Farmers Grp., Inc.*, 47 Cal. App. 4th 471, 481 (1996), *as modified on denial of reh'g* (Aug. 20, 1996).

Plaintiff's claims for intentional and negligent misrepresentation are that Ford allegedly misrepresented that the DPS6 transmission was an automatic transmission, when it is really a manual transmission that is automatically shifted (as Ford itself has described the transmission). Ford argues that it is entitled to judgment on these claims because Plaintiff cannot point to any misrepresentation Ford made to him, and because the DPS6 is an automatic transmission according to both Plaintiff's understanding of the term and according to his expert.

In its tentative Order, the Court found that triable issues foreclosed summary judgment the misrepresentation claims. At oral argument, Ford conceded for purposes of the motion that it (and not someone else) represented to Plaintiff that the DPS6 transmission was an automatic. However, Ford argued that Plaintiff's own testimony shows that from his perspective, the DPS6 operated like an automatic, and that was why he wanted an automatic. Therefore, describing the DPS6 as an "automatic" was

3.

not a misrepresentation of any fact material to Plaintiff. Plaintiff's response was equally robust. The Court finds this a difficult question.

In light of the Court's determination (below) that all of Plaintiff's fraud claims fail because he cannot prove damages, the above issues raised about the misrepresentation claims are moot and the Court will not resolve them here. Therefore, This part of Ford's Motion as to the fraud by intentional and negligent misrepresentation clams is **DENIED as moot**.

### B. Fraudulent Concealment Claim

Plaintiff's FAC alleges that Ford fraudulently concealed that the DPS6 transmission is defective in six different respects: (1) "wet" clutch shudder attributed to leaking input shaft seals; (2) an ATIC 91 / MAM defect; (3) the ATIC 106 chip; (4) "dry" clutch shudder; (5) software calibration issues; and (6) delayed crank failure. *See* FAC ¶¶ 69. Plaintiff is pursuing this claim based only on two defects: the ATIC 91/MAM defect and wet clutch shudder attributed to leaking input shaft seals. Ford moves for summary judgment on several bases.

A claim for fraud based on concealment or omission requires that: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011). Unless a defendant knew of the fact, the defendant cannot have intentionally concealed or suppressed that fact. *Id.* (fraud includes "the suppression of that which is true, by one having knowledge or belief of the fact") (internal quotation omitted).

Thus, Plaintiff has the burden to show that, at the time he purchased his vehicle, Ford knew of the allegedly material facts that Ford allegedly failed to disclose. *See,*

4.

*e.g., Victorino v. FCA US LLC*, 2018 WL 1083395, *7 (S.D. Cal. Feb. 27, 2018). "When addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of the specific defect alleged, not a general defect." *Id.* at *8.

### 1. The ATIC 91 / MAM Defect

The FAC alleges that the ATIC 91 chips are defective because the solder attaching them to the MAM ("Mechatronic Actuation Module") board develops cracks, and that this "leads to a loss of communication and an unintended neutral." FAC ¶ 69. Ford argues that it did not know of any significant problem with the ATIC 91 chip until after March 2014, which was after Plaintiff purchased his vehicle. *See* SUF 39. For this point, Ford relies on the report of its expert Christopher Kwasniewicz, a Ford engineer who worked on the DPS6 transmission. *See* Kwas. Report (Dkt. No. 470-8).[1] Mr. Kwasniewicz states that prior to launch of the DPS6-equipped vehicles, there were no issues with solder cracking in the MAM, *id.* at 1, and that in early March 2014, Ford started to receive increased warranty claims related to MAM issues, *id.* at 9, the implication being that it was not until March 2014 that the claims started to become significant enough that Ford started to investigate.

Plaintiff argues that Ford was sufficiently aware an ATIC 91 /MAM defect before Plaintiff purchased his vehicle that it should have disclosed it. Plaintiff states that "from almost immediately after the initial launch of the DPS6, Ford received reams of customer complaints of unintended neutral and 'loss of motive power' events, mostly through its customer service agent but others through direct contact between Ford customers and Ford's engineers." Opp'n (Dkt. No. 547-1)10:1-5. But Plaintiff's brief does not direct the Court to any particular evidence of "reams" of

---

[1] Ford also claims that Plaintiff's expert Micale opined that Ford did not know of a significant problem with the ATIC 91 until March 2014, but Micale is simply quoting Kwasniewicz for background, not presenting an independent opinion on this timing question.

5.

complaints. In response to Ford's undisputed fact 39, Plaintiff directs the Court to his own facts 17-19, which themselves refer to Higgins Declaration (Dkt. No. 494) Exhibits N, O, P, and Q. Exhibit N is 5 pages of emails indicating that in 2007—before the launch of the DPS6 transmissions in United States vehicles—Ford knew of and was trying to address the possibility of unintended neutral events. But these emails do not attribute the unintended neutral events to the ATIC 91 / MAM defect. Exhibit O is 15 pages worth of emails from 2008 showing Ford and Gertrag personnel discussing and trying to minimize unintended neutral events as they work to develop the DPS6 transmission for the U.S. market. However, it is not at all apparent that these employees are discussing the same defect in issue here (solder connection compromised by temperature changes), so this evidence is not enough to create a triable issue. Exhibit P is a duplicate of Exhibit N. And Exhibit Q is brief deposition testimony referring generally to issuing technical service bulletins and does not appear to have anything to do with this defect. Thus, Plaintiff's response to Ford's separate statement does not create a genuine issue as to when Ford became sufficiently aware of the alleged ATIC 91/MAM defect. Turning to Plaintiff's Opposition, it refers to Engineer Tom Hamm's deposition testimony that from August 2010 through August 2011, Ford was aware of reported loss of gear and MAM problems. But the opposition does not direct the Court to any such deposition. The opposition also refers to a September 2011 report from a former employee about a loss-of-power issue with his DPS6 transmission (Higgins Decl. Ex. S), but there is no explanation of the cause of this issue. Finally, although the opposition did not direct the Court to it in connection with this defect, Exhibits T and U are compilations of some DPS6-related incidents from 2011 through 2013, but these documents do not establish any connection between these incidents and the ATIC 91 / MAM defect. Accordingly, Plaintiff has not presented evidence sufficient to create a triable issue of fact that Ford knew of the ATIC 91 / MAM defect before he purchased his vehicle. If Plaintiff cannot show that Ford had pre-sale knowledge of this defect, then Plaintiff cannot show that Ford

should have disclosed it. Thus, there is no triable issue of material fact as to the fraudulent omission claim based on the ATIC 91 / MAM defect. Ford is therefore entitled to summary judgment on this claim.

### 2. The Leaking Seal Defect Resulting in "Wet Clutch" Shudder

The FAC alleges this defect as follows: "'Wet Clutch' Shudder Attributed to Leaking Input Shaft Seals. These leaking seals allow transmission oil to contaminate and compromise the functions of the dry clutch face materials, leading customers to experience an excessive shudder during both light acceleration and acceleration from a stop." FAC ¶ 66.

Ford admits that it knew of the leaking input shaft seals issue before Plaintiff purchased his vehicle and that it was working on solutions. But Ford argues that based on *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006), it did not have a duty to disclose the leaking seal defect. *Daugherty* involved a claim for deceptive practices under California's Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code § 1770(a)) for Honda's failure to disclose a defect in an F22 engine that could have resulted in the engine needing to be replaced. *Daugherty*, 836-837. The Court held that under the CLRA, only an affirmative misrepresentation can be a deceptive act under the CLRA, however, an omission of a defect can amount to a deceptive act under the CLRA if the seller was "bound to disclose" the defect because the defect posed safety concerns. *Id.* at 836. The Court sustained a demurrer because the plaintiff had not alleged either an affirmative misrepresentation or a facts showing that the defect posed a safety concern. *Id.*[2]

---

[2] The Court rejects Ford's argument that the facts of *Daugherty* establish that the defect here is not a safety issue. The defect in *Daugherty* was one that could eventually require replacement of the entire engine. Ford argues that if that defect was not a safety hazard, then the leaking seals here could not be either. But in Daugherty, the court was reviewing the grant of a demurrer and determined that the complaint simply failed to plead facts to show the defect was a safety hazard. The Court did not decide whether that defect was in fact a safety hazard. Accordingly, Ford's reliance on

7.

Even though *Daugherty* concerned the CLRA's prohibition of "deceptive" practices, the Court assumes it is instructive as to the duty to disclose relative to Plaintiff's common law claim for fraudulent omission. As such, Ford would have had a duty to disclose the leaking input shaft seals defect if that defect presented a safety concern. Ford argues that Plaintiff cannot show that this defect posed a safety hazard. Plaintiff does not dispute that he must show a safety concern, but argues that this is a triable issue.

The Court has reviewed the evidence and finds that Plaintiff has not shown that there is a triable issue as to whether the leaking seals and the resulting wet clutch shudder posed a safety hazard, and as a result, Plaintiff has not shown a triable issue as to Ford's duty to disclose. Mr. Kwasniewicz states in his expert report that a leak in the input shaft seal could cause "excessive clutch shudder, primarily on take-off in first gear or on the first to second gear shift [or] during take-off in reverse." Kwas. Report 7. Mr. Kwasniewicz also opined that neither excessive shudder nor MAM faults posed an unreasonable risk to safety. Kwas. Report p. 2, opinions 6, 7. Indeed, it is not clear how vehicle shudder at low speeds could pose an unreasonable safety risk. Plaintiff argues that the shudder posed a safety concern. Plaintiff points to his additional material facts 22 and 23, but the underlying evidence does not establish this. Fact 22 relies on Exhibits T and U, which, as discussed above, are compilations of some DPS6-related incidents from 2011 through 2013, but they do not establish any connection between these incidents and the leaking seals-shudder defect. Fact 23 points to Exhibit V, a 9-page internal report that noted 7 "accidents specifically caused by shudder, with one accident alleging a minor injury (scratches and bruises." *See* Ex. V p. 2. This document does not create a triable issue as to whether the leaking seals created a safety issue as a handful of "accidents" with only one described as causing any injury—minor injuries of scratches and bruises—cannot be said to pose an

---

the facts of *Daugherty* is misplaced.

8.

unreasonable safety risk. More importantly, this document was created in 2016, well after Plaintiff purchased his vehicle, and nothing in this document establishes what Ford knew before Plaintiff purchased his vehicle in 2013. Thus, Plaintiff has not shown that there is a triable issue was to whether the leaking seals posed an unreasonable safety hazard, or that Ford had any such knowledge pre-sale. Ford is therefore entitled to summary adjudication of Plaintiff's fraud by omission claim insofar as it is based on the leaking input shaft seals.

### C. Plaintiff's Fraud Claims Fail Because Rescission is Not Available Against Ford And Because He Cannot Prove Damages.

To establish a claim of fraud, Plaintiff must prove "resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Plaintiff must prove not just the *fact* of damage, but rather, "[i]t is 'one of the most basic propositions of law . . . that the plaintiff bears the burden of proving his case, including the *amount* of damages.'" *Tourgeman v. Nelson & Kennar*, 900 F.3d 1105, 1109 (9th Cir. 2018) (emphasis added) (citation omitted).

Ford argues that the fraud clams fail because Plaintiff has no evidence to establish his out-of-pocket damages, the remedy for fraud prescribed in Cal. Civ. Code § 3343, entitled "Fraud in Purchase, Sale or Exchange of Property."[3] Section 3343 states, in relevant part, "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." Cal. Civ. Code § 3343. In his opposition, Plaintiff appears to say he is not seeking such damages; rather, he is seeking rescission of the purchase contract, a remedy authorized

---

[3] It is not clear whether this § 3343 applies only to real property or also to personal property. Every case the Court has reviewed deals with real property, except one deals with stock. *See Walsh v. Hooker & Fay*, 212 Cal. App. 2d 450 (1963) (concerning claim for fraud in purchase of stock). Plaintiff does not dispute that § 3343 establishes the sole measure of damages in this case, so the Court will assume it does.

9.

under Cal. Civ. Code § 1692 ("When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances. . ."). In reply, Ford argued that Plaintiff cannot seek rescission under § 1692 because the FAC does not refer to § 1692 so Plaintiff has not pled rescission; that Plaintiff has not "promptly" given notice of rescission as required by § 1692; and that rescission is not available because there is no privity between Plaintiff and Ford since Plaintiff purchased his vehicle from a dealer, not from Ford. At oral argument, Plaintiff argued that privity is not required and directed the Court to two cases for support. Plaintiff also pivoted his position on damages, now arguing, perhaps in the alternative, that he is seeking damages and can prove them by his own testimony that the vehicle is worthless to him, so the purchase price is his out-of-pocket damages. Ford responded that Plaintiff's own testimony about the value of his vehicle is inadmissible because it lacks foundation and is speculative. The Court will first determine whether Plaintiff can seek rescission from Ford.

### 3. Plaintiff Cannot Obtain Rescission From Ford as a Remedy For His Fraud Claims.

For breach of contract or fraudulent inducement, "[r]escission and damages are alternative remedies." *Wong v. Stoler*, 237 Cal. App. 4th 1375, 1385, *as modified on denial of reh'g* (June 23, 2015) (citation omitted). Upon review of the FAC, the prayer for relief specifically pleads "for rescission of the purchase contract and restitution of all monies expended. . ." FAC p. 97, ¶ b. This prayer is also sufficient to give notice of rescission. *See* Cal. Civ. Code § 1691 ("When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.").

However, in relying on rescission as a remedy, Plaintiff encounters an obstacle: the lack of privity between Plaintiff and Ford as to the purchase contract. "[O]rdinary principles of rescission require strict privity in order to rescind contracts." *Moss v. Kroner*, 197 Cal. App. 4th 860, 878 (2011); *accord Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 935 (2011) ("A prerequisite to any claim for rescission is a contract between the parties."). "This is because rescission requires each party to the contract to restore to the other everything of value received under the contract: '[T]o effect a rescission *a party to the contract* must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) *Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise,* unless the latter is unable or positively refuses to do so.'" *Id.* (citing Cal. Civ. Code § 1691, italics in original). Thus, a remedy of rescission presupposes a contractual relationship between the parties. Here, there is no dispute that Plaintiff purchased his vehicle not from Ford but from an independent dealer. SUF 1. Thus, as to the purchase contract that Plaintiff seeks to rescind, there is no privity between Plaintiff and Ford, and Plaintiff can have no rescission remedy from Ford.

At oral argument, Plaintiff directed the Court to *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212 (2006) and *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946–47 (C.D. Cal. 2012), for the proposition that he need not be in direct privity with Ford to obtain his rescission remedy. These cases are not on point. First, they concern statutory causes of action whereas Plaintiff seeks rescission for common law fraud claims. And, neither case addresses rescission; rather they address whether the plaintiff could bring a particular claim at all, not whether they could seek a rescission remedy. *Atkinson* concerned a claim for breach of the implied warranty under the Magnusson-Moss Warranty Act. There, the Court held that that was the "type of case .

. . where the general rule that privity of contract is required should be relaxed" because it "would be inconsistent to recognize privity existing for breach of express quality warranties under Magnuson–Moss and to reach the opposite conclusion in the same transaction for breach of the implied warranty of merchantability." *Atkinson*, 142 Cal. App. 4th at 229. Thus, *Atkinson* did not find that privity was not required for the claims in issue, but simply found, in effect, that if there was privity for the express warranty claim under the Magnusson-Moss Act, that is sufficient for plaintiff to pursue an implied warranty claim under that Act. It is not apparent how this reasoning applies to Plaintiff's common law fraud claims. *Keegan* simply found that the Song-Beverly Act did away with the vertical privity requirements that apply to implied warranty causes of action; it does not address rescission as a remedy for a common law fraud claim. In sum, neither case Plaintiff cited applies here, so Plaintiff has not established that "ordinary principles of rescission require[ing] strict privity in order to rescind contracts" do not apply. *Moss*, 197 Cal. App. 4th at 878. Accordingly, Plaintiff cannot seek rescission as a remedy for his fraud claims because he is not in privity with Ford relative to his purchase contract.

    **4. Plaintiff Has Not Come Forward With Evidence Sufficient to Establish Damages.**

The question then becomes whether Plaintiff can prove an amount of damages. "The rule is now well established that, in the typical case involving a fraudulent vendor and a defrauded vendee, section 3343 provides the exclusive measure of damages." *Walsh v. Hooker & Fay*, 212 Cal. App. 2d 450, 458 (1963).[4] As relevant, § 3343 states, "One defrauded in the purchase, sale or exchange of property is entitled to

---

[4] The primary exception to this rule is that where a fiduciary relationship exists between the fraudulent and the defrauded parties, Civ. Code §§ 1709 and 3333 apply. *See Walsh v. Hooker & Fay*, 212 Cal. App. 2d 450, 458 (1963) (so explaining). There was no fiduciary relationship between Plaintiff and Ford, so this exception does not apply.

recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received." Cal. Civ. Code § 3343. This measure is commonly referred to as out-of-pocket damages. Plaintiff does not dispute that this is the measure of damages. Rather, Plaintiff's opposition brief argued that he would seek rescission as a remedy, thereby implicitly disavowing damages as a remedy. As noted, at oral argument, Plaintiff changed course and stated he would seek damages. From counsel's representations at oral argument, it appears he will try to prove his out-of-pocket damages with his own testimony: he would testify that the vehicle was worthless to him, so the "difference" between what he paid and the actual value of the vehicle is all of the money he paid.

But Plaintiff's proffer is not sufficient. "[T]he term 'actual value' as used in the statute, [means] market value." *Nece v. Bennett*, 212 Cal. App. 2d 494, 497 (1963). Therefore, "actual value" does not mean Plaintiff's subjective valuation of the vehicle. Accordingly, Plaintiff's proffered testimony that the vehicle had no value to him is not probative of actual value, and therefore cannot be used to calculate his out-of-pocket damages. Plaintiff has not offered any contrary calculation of his out-of-pocket damages, nor has he presented any alternative theory of damages; as noted, his opposition did not address money damages at all, and the improvised discussion at oral argument lacked legal support. The Court is left with no alternative but to find that Plaintiff cannot prove damages for his fraud claims.

In sum, Plaintiff cannot obtain rescission of his purchase contract as a remedy for his fraud claims because there is no privity between Plaintiff and Ford as to that contract. Nor has Plaintiff come forward with probative evidence of actual value as necessary to establish his out-of-pocket damages, nor has he presented another available theory of damages. Thus, Plaintiff has not established a triable issue as to the damages element of his fraud claims. Therefore, Ford is entitled to summary judgment

on all of Plaintiff's fraud claims.[5] *Nece*, 212 Cal. App. 2d at 498 ("By reason of the fact that there was no substantial evidence to prove the market value of the property at the time of the purchase, the plaintiffs failed to meet the burden of establishing the cause of action, and it becomes necessary to reverse the judgment…").

### D. The Motion is **DENIED** As To the Civil Penalties Claim Under Song-Beverly

The Court has reviewed the parties' arguments and the evidence concerning Plaintiff's claim for civil penalties under the Song-Beverly Act and finds that Plaintiff's evidence gives rise to a triable issue on this claim. This aspect of the motion is therefore **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Ford's Motion for Summary Adjudication is **GRANTED** as to Plaintiff's claims for fraud, and **DENIED** as to Plaintiff's claim under the Song-Beverly Act and his claim for civil penalties thereunder.

**IT IS SO ORDERED**.

Dated: October 29, 2019

HONORABLE ANDRE BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

---

[5] Because Ford is entitled to summary judgment on Plaintiff's fraud claims, Plaintiff's claim for punitive damages is moot and the Court will not address it further.

14.