GORDON REES SCULLY MANSUKHANI LLP
Spencer P. Hugret (SBN 240424)
shugret@grsm.com
Molly J. Mrowka (SBN 190133)
mmrowka@grsm.com
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

DYKEMA GOSSETT PLLC
John M. Thomas (SBN 266842)
jthomas@dykema.com
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7613
Facsimile: (734) 214-7696

SHOOK, HARDY & BACON LLP
Amir Nassihi (SBN 235936)
anassihi@shb.com
One Montgomery, Suite 2600
San Francisco, CA 94104
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

Attorneys for Defendant
FORD MOTOR COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES ONLY TO:**<br><br>*Pedante, Mark v. Ford Motor Company,* 2:17-cv-06656-AB-FFM | No. 2:18-ml-2814-AB-FFM<br><br>Assigned to the Hon. André Birotte, Jr.<br>Courtroom 7B<br>Magistrate Frederick F. Mumm<br>Courtroom 580<br><br>**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR AN ORDER TO SEAL CONFIDENTIAL TRIAL EXHIBITS AND RELATED TESTIMONY**<br><br>Trial Date: November 5, 2019 |

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that DEFENDANT FORD MOTOR COMPANY ("Ford") hereby applies to this Court, *ex par*te, pursuant to Local Rule 7-19 and the rules of this Court, for an Order granting its Application to seal confidential trial exhibits and related testimony.

Specifically, Ford applies *ex parte* for this Court, pursuant to its inherent authority to manage its docket and trial court proceedings, to enter an Order: (1) preemptively sealing exhibits used or admitted at trial that have been designated as "Confidential" under the Court's May 7, 2018 Amended Protective Order – Confidential Designation Only ("Protective Order") [Dkt. No. 24]; and (2) providing for the sealing of testimony proffered at trial that relates to or otherwise discusses the contents of such "Confidential" documents (collectively "Confidential Documents"). Ford also seeks the entry of an order that, while sealing Ford's Confidential Documents during trial, affords Ford with a reasonable opportunity after a verdict is rendered and certified trial transcripts are lodged in which consider the sealed documents, determine which are deserving of permanent sealing, if any, and to file a properly supported motion to maintain sealing over those specific Confidential Documents and related testimony.

This instant application is necessitated due to the fact that trial is set to begin on November 5, 2019, in addition to previously sealed documents, hundreds of other of Ford's Confidential Documents are listed on the parties' Proposed Joint Exhibit List. *See* [Dkt. No. 620]. In advance of trial, Ford does not how (or whether) the Confidential Documents listed on the Proposed Joint Exhibit List will be used at trial, how (or whether) those documents will be considered by the jury, and how (or whether) the jury will determine liability. With this Application, Ford seeks an Order extending the same protections afforded in the May 7, 2018 Protective Order and the October 9,

2019 Order to Seal, to Confidential Documents proffered as exhibits and testimony related thereto at the trial of this case.

Defendant will be irreparably prejudiced if its Application cannot be heard on an *ex parte* basis as confidential information regarding Ford's internal business operations and communications will be subject to public view and consideration by the jury during the trial.

Pursuant to Local Rule 7-19.1, Defense Counsel gave notice to Plaintiffs' Lead Counsel of the intention to file the instant *ex parte* application. (*See* Exhibit A, attached to the Declaration of Spencer Hugret, filed concurrently herewith.) Counsel for Plaintiff has advised that Plaintiff will oppose the instant *ex parte* application. (*See* Exhibit B, attached to the Declaration of Spencer Hugret, filed concurrently herewith.)

Defendant's *Ex Parte* Application is based on the Notice, the Memorandum of Points and Authorities, the Declaration of Spencer P. Hugret, filed concurrently herewith, pleadings and records on file in this action and such other matters as the Court deems necessary and proper.

## EX PARTE APPLICATION

1. Trial commences on November 5, 2019.

2. Specifically, Ford applies *ex parte* for this Court, pursuant to its inherent authority to manage its docket and trial court proceedings, to enter an Order: (1) preemptively sealing exhibits used or admitted at trial that have been designated as "Confidential" under the Court's May 7, 2018 Amended Protective Order – Confidential Designation Only ("Protective Order") [Dkt. No. 24]; and (2) providing for the sealing of testimony proffered at trial that relates to or otherwise discusses the contents of such "Confidential" documents (collectively "Confidential Documents"). Ford also seeks the entry of an order that, while sealing Ford's Confidential Documents during trial, affords Ford with a reasonable opportunity after a verdict is rendered and certified trial transcripts are lodged in which consider the sealed documents, determine

which are deserving of permanent sealing, if any, and to file a properly supported motion to maintain sealing over those specific Confidential Documents and related testimony.

3. This *Ex Parte* Application is necessitated due to the fact that trial is set to begin on November 5, 2019, in addition to previously sealed documents, hundreds of other of Ford's Confidential Documents are listed on the parties' Proposed Joint Exhibit List. *See* [Dkt. No. 620]. In advance of trial, Ford does not how (or whether) the Confidential Documents listed on the Proposed Joint Exhibit List will be used at trial, how (or whether) those documents will be considered by the jury, and how (or whether) the jury will determine liability.

4. With this Application, Ford seeks an Order extending the same protections afforded in the May 7, 2018 Protective Order and the October 9, 2019 Order to Seal, to Confidential Documents proffered as exhibits and testimony related thereto at the trial of this case.

5. Defendant will be irreparably prejudiced if its Application to File Under Seal cannot be heard on an *ex parte* basis as confidential information regarding Ford's internal business operations and communications will be subject to public view and consideration by the jury during the trial.

6. Pursuant to Local Rule 7-19, the opposing party for purposes of this *Ex Parte* Application is Lead Plaintiffs' Counsel, Paul R. Kiesel, who can be contacted at Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211, T: 310.854.4444 | F: 310.854.0812. The email address for Mr. Kiesel is kiesel@kiesel.law.

7. Pursuant to Local Rule 7-19.1, on November 4, 2019, Counsel for Defendant gave notice to Lead Counsel for Plaintiff of its intention to file the instant *Ex Parte* Application. (*See* Exhibit A to Hugret Declaration.) Plaintiff's counsel has advised that Plaintiff will oppose this *ex parte* application. (*See* Exhibit B.)

3
NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR AN APPLICATION FOR ORDER TO SEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is an action for damages arising out of Plaintiff, Mark Pedante's purchase of a 2013 Ford Focus, VIN: 1FADP3F20DL264031 ("Subject Vehicle") that utilizes a proprietary dual dry-clutch PowerShift six-speed automatic transmission ("DPS6 Transmission").  During the course of this MDL litigation, Ford has produced extensive documents that disclose confidential information related to the design and development of the DPS6 transmission, Ford's root cause and other analysis of warranty concerns with the transmission, and other highly sensitive and proprietary information, including communications with its suppliers and warranty data and analysis, among other information.  In anticipation of that production, Ford sought and, on May 7, 2018, this Court entered a Protective Order, which was and is, intended to ensure that the confidentiality of Ford's Confidential Documents is adequately preserved.  At every turn, Ford has produced its Confidential Documents, pursuant to, in reliance upon, and in strict compliance with the terms and conditions of that Protective Order, so as to ensure, *inter alia*, that those documents would be maintained as confidential by the parties, and would not be used by or otherwise disclosed to people outside of this litigation.

Most recently, on October 3, 2019, Plaintiff filed an Application for an Order to File Under Seal Plaintiff's Memorandum of Points and Authorities and Statement of Facts in Opposition to Ford's Motion for Partial Summary Judgment [Dkt. No. 493], based on his intention to attach and/or make reference to Ford's Confidential Documents in those filings.  Ford, in turn, filed a Statement in Support of Plaintiff's Application on October 7, 2019 [Dkt. No. 501], together with supporting Declarations from Matthew Fyie.  *See* Dkt. No. 501-1.  Those Declarations affirmatively and conclusively establish that the Confidential Documents that were the subject of Plaintiff's Application, and which are the subject of the instant Motion because those

documents are identified as potential trial exhibits in this case: (1) contain highly sensitive and confidential trade secret information, relating to proprietary research, analysis, development, root cause and other analysis and information; and (2) not only are coveted by Ford's competitors, but would likely be used by them to Ford's significant competitive disadvantage. Based on those filings, this Court entered an Order, dated October 9, 2019 [Dkt. No. 507], directing that Plaintiff's Memorandum and accompanying exhibits be filed under seal.

In addition to these documents, hundreds of other of Ford's Confidential Documents are listed on the parties' Proposed Joint Exhibit List. *See* [Dkt. No. 620]. In advance of trial, Ford does not how (or whether) the Confidential Documents listed on the Proposed Joint Exhibit List will be used at trial, how (or whether) those documents will be considered by the jury, and how (or whether) the jury will determine liability. As such, Ford is constrained to file a fully supported motion to seal documents until after the trial is concluded.

With this Application, Ford seeks an Order extending the same protections afforded in the May 7, 2018 Protective Order and the October 9, 2019 Order to Seal, to Confidential Documents proffered as exhibits and testimony related thereto at the trial of this case.

## II.    LEGAL ARGUMENT AND AUTHORITIES

### A.    Standard of Review

It is axiomatic that "a strong presumption [exists] in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). But that right is not absolute. *See Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978); *IDT Corp. v. Ebay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (a confidential document used at trial does not automatically become public because the common law right of access to judicial records is not absolute).

In the Ninth Circuit, a party seeking to seal a judicial record can overcome that

presumption by establishing that there are "compelling reasons" that justify a seal order. *See, e.g., Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (to secure an order sealing records "[a] party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure' (internal quotations and citations omitted)). As a general rule, a finding as to what constitutes a "compelling reason" is "left to the sound discretion of the trial court." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Some well-recognize examples of "compelling reasons" include "when a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing'." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir.) (quoting *Nixon*, 435 U.S. at 598-99), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016).

The Ninth Circuit and courts in this District have made it clear that "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008); *see also Federal Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922 at *_ (N.D. Cal. Jan. 3, 2019); *Velasco v. Chrysler Grp. LLC*, No. CV 13-08080 DDP (VBK), 2017 WL 445241 at *_ (C.D. Cal. Jan. 30, 2017). "Trade secrets," in turn, consist of, among other things, "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *In re Elec. Arts*, 298 F. App'x 568, 569 (quoting Restatement of Torts § 757, cmt. b); *see also Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972).

Relying on the foregoing principles, courts in the Ninth Circuit have sealed records for which public disclosure might result in the release of trade secrets and/or

contain proprietary or confidential "business information that might harm a litigant's competitive standing." *Federal Trade Comm'n*, 2019 WL 95922 at *_ (granting a motion to seal information that, if published, could "harm Qualcomm's or third parties' competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets"); *see also Velasco*, 2017 WL 445241 at *_ (sealing, among other items, Chrysler's "design and development documents," which the court described as "paradigmatic trade secrets," as well as "engineering documents that reveal[ed] Chrysler's testing and analysis protocols"); *Selling Source, LLC v. Red River Ventures, LLC*, No. 2:09-CV-01491-JCM, 2011 WL 1630338, at *6 (D. Nev. Apr. 29, 2011)(sealing "information about proprietary business operations, a company's business model or agreements with clients"); *Melaleuca Inc. v. Bartholomew*, No. 4:12-CV-00216-BLW, 2012 WL 5931690, at *3 (D. Idaho Nov. 27, 2012) ("internal policies and strategies"); *Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1083 (C.D. Cal. 2006)("manufacturing information").

### B. Compelling Reasons Exist to Seal Ford's Confidential Documents During Trial

The Declarations of Ford Design Analysis Engineer, Matthew Fyie, which Ford previously filed in this action at Dkt. 501-1, affirmatively and conclusively demonstrate that Ford's Confidential Documents (and related testimony) constitute "trade secrets" and other proprietary business information, the disclosure of which would be highly detrimental to Ford's competitive standing and viability. Those documents, by category, include:

- Ford's internal warranty data, customer survey data, and cost and business case analyses regarding various components contained within the DPS6 Transmission System, which contain confidential information regarding the efficacy of Ford's components and systems and proprietary information regarding Ford's determinations and purchasing of service parts and

components. This includes, but is not limited to, communications between Ford employees regarding customer and dealership feedback, identification of field concerns, root cause analyses, identification of interim and permanent corrective actions, forecasted failure rates, hazard analyses, cost per repair calculations, and evaluation of potential field actions. These documents contain information regarding Ford's processes and techniques for evaluating its products. If a competitor were to have access to this information, it could streamline its processes and techniques to incorporate Ford's efficient and effective methods without expending the substantial resources invested by Ford.

- Communications and analyses between Ford and various suppliers and sub-suppliers of the system and individual components to obtain and evaluate returned parts and warranty reports, determine root causes, and develop corrective actions. These documents often contain sensitive financial information from Ford and/or its suppliers and sub-suppliers surrounding responsibility for a given failure and warranty recovery costs. These documents contain information regarding Ford's processes and techniques for evaluating and improving its products and proprietary information regarding how these investigations and evaluations are initiated and conducted, how the products are tested and evaluated, and engineering design concepts for potential changes to the product and their expected effectiveness. If a competitor were to have access to this information, it could streamline its processes and techniques to incorporate Ford's efficient and effective methods without expending the substantial resources invested by Ford.

- Detailed information regarding software, hardware, engineering, and manufacturing specifications, processes, and testing pertaining to the DPS6

Transmission System. This includes, but is not limited to, material specifications, formal engineering drawings, calibration testing, sign-off, update, and release documents, and company requirements, as well as communications amongst Ford and its suppliers concerning these processes and documentation. Many documents are owned by Ford's suppliers and shared with Ford subject to a confidentiality agreement and only for purposes of troubleshooting or to allow Ford to mate its internally-developed software and calibration to the supplier- owned hardware. If a competitor were to have access to these materials, the competitor could redesign its comparable parts, emphasizing improvements identified by Ford, and thereby improve the quality and performance of its product without expending the substantial resources invested by Ford.

- Internal processes for assessing and determining appropriate service and warranty actions for current model year vehicles. This includes, but is not limited to, draft special service messages ("SSMs"), technical service bulletins ("TSBs"), and Customer Satisfaction Programs. These documents contain extensive and highly sensitive internal communications between multiple Ford departments discussing the best repair for the customer and strategies for timing and cost efficiency of service repairs. Thus, these documents contain information regarding Ford's processes and techniques for evaluating and improving its products. They contain proprietary information regarding how these investigations and evaluations are initiated and conducted, how the products are tested and evaluated, engineering design concepts for potential changes to the product and their expected effectiveness, and how the results of an investigation are communicated to the customer, if necessary. If a competitor were to have access to this information, it could streamline its processes and techniques to incorporate

Ford's efficient and effective methods without expending the substantial resources invested by Ford.

- Discussions and analyses regarding current and future model/model year vehicles, contemplated changes to DPS6 hardware or software, multi-year agreements and commercial negotiations with suppliers, financial forecasts, warranty recovery actions, and on-going business activities within Ford. Quite often, email communication contains commercially sensitive business information pertaining to future model year vehicles, vehicles exclusive to other markets (with different engines, calibrations, etc. not used in the subject vehicle), or other vehicle lines entirely. These documents contain confidential business information regarding Ford's agreements with suppliers, cost information, and other financial data. The disclosure of these documents would cause competitive harm to Ford, and could seriously compromise Ford's negotiating position with respect to suppliers and/or other business partners.

In addition to the specific documents identified in Mr. Fyie's Declaration, similar documents are included on the parties Proposed Joint Exabit List for trial. However, before the commencement of trial, the admission or use of each document (if any) and the jury's verdict, Ford cannot make a determination as to whether each or any Confidential Document listed on the Proposed Joint Exhibit List should remain sealed after the conclusion of the case. As such, these documents should be conditionally sealed during the pendency of the trial.

Ford's overriding interests in the continued preservation and protection of its highly sensitive, commercially confidential and trade secret documents and information will be severely compromised, as will Ford's competitive advantage over other manufacturers, if the documents at issue are not sealed during the trial of this matter or, in the case of those documents that already are

the subject of the Court's October 18, 2019 Order do not remain sealed at trial. Indeed, if the Confidential Documents and testimony related thereto were to enter the public domain, competitors of Ford would gain an understanding of, among other things, the processes and techniques Ford utilizes to investigate and evaluate its products and the manner in it which it communicates the results of those investigations to its customers, causing significant competitive harm to Ford.

Under the "compelling reasons" standard, the entry of an Order sealing the Confidential Documents and related testimony is warranted. *See, e.g., Banc of Cal., Inc. v. Farmers & Merchs. Bank of Long Beach*, No. SACV 16-01601-CJC (AFMx), 2017 U.S. Dist. LEXIS 216890, at *1-2 (C.D. Cal. Oct. 27, 2017) ("The parties have demonstrated compelling reasons for the sealing of such documents—namely, that they contain confidential information regarding business and marketing strategies, which are trade secrets, and that [p]laintiffs and [d]efendant would suffer competitive harm if this information became publicly available"); *see also SPS Techs., LLC v. Briles Aero., Inc.*, No. CV 18-9536-MWF (ASx), 2019 U.S. Dist. LEXIS 77556, at *3 (C.D. Cal. Mar. 11, 2019).

### C. A Sealing Order Will Not Unduly Compromise Public Access

While the public disclosure of Ford's confidential and trade secret information would cause substantial harm to Ford and its business, the conditional sealing of these records would have negligible impact on any interest the general public otherwise might have in accessing the records. In fact, many of the Confidential Documents that are the subject of this Motion and/or that the Court already has sealed are highly technical in nature and, as such, are unlikely to even be "accessible" to the public (*i.e.,* they would be difficult to understand and of no practical significance to the general public). They would, however, be highly coveted by Ford's competitors. Moreover, the documents Ford is seeking to protect are a relatively small subset of the substantial number of non-confidential

documents Ford has produced to Plaintiff in discovery. The latter documents, which comprise the overwhelming majority of Ford's production: (1) do not pose a significant risk to Ford's competitive business advantage; (2) can be made fully available to the public; and (3) when combined with the other publicly available documents (*e.g.,* pleadings, discovery responses, etc.) are more than sufficient to provide the public with an understanding of the issues in this litigation.

Further, Ford seeks only an order of conditional sealing, which will afford Ford with a reasonable opportunity after a verdict is rendered and certified trial transcripts are lodged in which consider the sealed documents, determine which of those documents, if any, are deserving of permanent sealing in light of their use in the case, and to file a properly supported motion to maintain sealing over those specific Confidential Documents and related testimony. If Ford does not file a Motion, then the seal would be lifted and the documents would become public. If Ford does file a Motion, Plaintiffs would have an opportunity to oppose the Motion, and the Court could consider the motion in light of its evidentiary rulings during trial, the admission (or denial) of exhibits, and the jury's verdict. *See Seattle Times v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209 (1984) (Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.")

### D. A Sealing Order is Consistent with the Case Protective Order

Cognizant of the legitimate and overriding concerns of Ford set forth herein, this Court entered a Protective Order on May 7, 2018 detailing the procedures all parties are required to follow with respect to the designation and handling of "Confidential" documents, testimony, and other information, as those terms are defined in the Order. *See* Dkt. No. 24. The Order further provides a mechanism by which the party receiving such documents, testimony, and other information can challenge those designations. Finally, but no less importantly, the Order specifies

NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR AN APPLICATION FOR ORDER TO SEAL

and strictly limits the persons and/or entities to whom access to such documents, testimony, and other information is permitted. *Id.* at p. 8, ¶ 9. With respect to "Confidential" information, the latter includes only the Court, the attorneys to this action, the parties, court reporters in the proceedings, those who previously had access to the information, but only after being advised that the documents, testimony, or other information is subject to (and being provided with a copy of) the Order, mock jury participants, mediators, and the parties' experts and consultants. *Id.* at pp. 8-10, ¶ 9 (and its subparts).

Significantly, that Order expressly contemplates that the protections it affords, which are the same protections Ford seeks in the instant Application, will continue in force and effect not only during the prosecution and defense of the trial of this matter, but "shall continue to be binding after the conclusion of this proceeding and all subsequent proceedings arising from this proceeding." *Id.* at p. 13, ¶¶ 20-22 (emphasis added). In fact, the Order states that, within 90 days after "the conclusion of this Proceeding," the party in possession of the "Confidential" documents, testimony, or other information shall either return them to the designating party (Ford), agree with the designating party on a method for the destruction or other disposition of those materials, or file a motion with the Court for their continued and proper preservation. *Id.* at p. 14, ¶ 23. In doing so, the Court (and the parties) made it clear that their intent was to preserve and protect the confidentiality of the "Confidential" materials before, during, and after the trial of this matter.

That intent is further reinforced by the mandatory language found in Paragraph 20 of the Order, which directs the parties "to meet and confer regarding the procedures for use of any "Confidential" materials at trial and [to] move the Court for the entry of an appropriate order." *Id.* at p. 13 (emphasis added). Thus,

the filing of this Motion and the relief it seeks is not only wholly consistent with, but mandated by this Court's already existent Protective Order.

### III. CONCLUSION

For Good Cause Shown and in accordance with L.R. 79-5.2.2, Ford respectfully requests that this Court seal Ford's Confidential Documents, and the testimony introduced at trial regarding those documents, as those terms are defined and used in the Court's May 7, 2018 Protective Order, until 30 days after the lodging of certified trial transcripts in this case

Dated: November 4, 2019

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _/s/ Spencer P. Hugret_
Spencer P. Hugret
Molly J. Mrowka

**DYKEMA GOSSETT PLLC**
*John M. Thomas*

**SHOOK HARDY & BACON**
*Amir Nassihi*

Attorneys for Defendant
FORD MOTOR COMPANY

14
NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR AN APPLICATION FOR ORDER TO SEAL

**CERTIFICATE OF SERVICE**

IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION

USDC Central District of California Case No.: 2:18-ml-02814 AB (FFMx)

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, 20th Floor, San Francisco, CA 94111. On the below-mentioned date, I served the within documents:

**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR AN ORDER TO SEAL CONFIDENTIAL TRIAL EXHIBITS AND RELATED TESTIMONY**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 4, 2019, at San Francisco, California.

/s/ Erica Ramirez
Erica Ramirez

1
CERTIFICATE OF SERVICE