Frank P. Kelly III (SBN 083473)
fkelly@shb.com
Amir Nassihi (SBN 235936)
anassihi@shb.com
Andrew Chang (SBN 222309)
achang@shb.com
Shook, Hardy & Bacon LLP
One Montgomery, Suite 2600
San Francisco, California 94104
Tel: 415.544.1900 Fax: 415.391.0281

Spencer P. Hugret (SBN 240424)
shugret@grsm.com
Gordon Rees Scully Mansukhani LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415.986.5900 Fax: 415.986.8054

Attorneys for Defendant
Ford Motor Company

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES ONLY TO:**<br><br>*Quintero v. Ford Motor Co.*, Case No. 2:18-cv-01912-AB-FFM | Case No. 2:18-ML-02814 AB (FFMx)<br><br>Assigned to Hon. André Birotte Jr. Courtroom 7B<br><br>**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [FED. R. CIV. PROC. 50(b)]** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

PROCEDURAL BACKGROUND .......................................................................2

ARGUMENT .........................................................................................................2

I.    Legal Standards .........................................................................................2

II.   Admissible Evidence Does Not Support Plaintiffs' Express Warranty Claim, Nor the Award of Civil Penalties. .......................................................4

    A.    Plaintiffs Did Not Present Substantial, Admissible Evidence that Ford Failed to Repair Any Particular Alleged Problem After a Reasonable Number of Opportunities. ....................................................4

    B.    The Record Does Not Support the Jury's Finding that Ford Acted "Willfully" and the Jury's Award of Civil Penalties. ............................8

III.  The Quinteros' Implied-Warranty Verdict Is Not Supported by Substantial Evidence. .......................................................................................10

CONCLUSION....................................................................................................10

# INTRODUCTION

Plaintiffs Salvador and Yvonne Quintero did not submit evidence sufficient to establish the elements of their claims for breach of express warranty and implied warranty under the Song-Beverly Act. Rather, as set forth more fully in Ford's concurrently filed alternative motion for new trial, the verdict in Plaintiffs' favor was the result of confusion, passion, and prejudice caused by the misconduct of Plaintiffs' counsel and their witnesses at trial.

Ford Motor Company therefore renews its motion judgment as a matter of law ("JMOL") as to Plaintiffs' claims. While this Court entered judgment in Ford's favor on Plaintiffs' implied warranty claim because Plaintiffs had abandoned that claim (*see Quintero* ECF Nos. 61, 62),[1] Ford renews its motion on implied warranty to preserve the issue in the event Plaintiffs seek reversal of the implied-warranty judgment.

First, judgment in Ford's favor is appropriate on Plaintiffs' express warranty claim because Plaintiffs failed to provide substantial, admissible evidence to support a finding that they gave Ford a reasonable number of opportunities to repair their vehicle. Second, even if this claim were somehow viable despite this fundamental flaw, no reasonable jury could find that Ford acted *willfully* when it denied the Quinteros' refund request on the facts presented. The Court should therefore grant judgment as a matter of law on their claim for civil penalties.

The evidence on Plaintiffs' implied warranty claim is similarly deficient. First, what little admissible evidence Plaintiffs offered relating to their own vehicle does not support a finding that it was unmerchantable at any point during their lease. Second, Plaintiffs failed to introduce evidence to support the remedy they sought, with their own testimony confirming unequivocally that they did not seek revocation within a reasonable period of time.

---

[1] Filings relevant to this motion were entered in the dockets of both the individual *Quintero* action and in the MDL proceeding to which it belongs. For ease of reference throughout, "MDL ECF" refers to entries in the MDL docket and "*Quintero* ECF" refers to entries in the case-specific docket.

## PROCEDURAL BACKGROUND

On December 16, 2019, Ford filed its pre-verdict JMOL motion pursuant to Federal Rule of Civil Procedure 50(a), raising the grounds on which this renewed motion is based. *See* MDL ECF No. 710. On December 17, 2019, closing arguments were made, the case was submitted to the jury, the jury reached its verdict, and the Court denied Ford's JMOL motion. (*See* Dec. 17, 2019 Trial Tr. (Chang Decl., Ex. D) at 1302:11-13.)

The jury found in Plaintiffs' favor on the claim of express warranty and on certain facts relating to the implied warranty claim. *Quintero* ECF No. 47. In addition to awarding damages under the express warranty claim, the jury awarded $15,437.20 as a civil penalty based on its finding that Ford willfully failed to replace the Plaintiffs' vehicle or reimburse their lease payments. *Id.* at 3:15-4:9.  Plaintiffs later abandoned the implied warranty claim. *Quintero* ECF Nos. 61, 62

On May 8, 2020, the Court entered judgment. *Quintero* ECF No. 62. This renewed JMOL motion is timely filed within 28 days of entry of judgment. Fed. R. Civ. P. 50(b).

## ARGUMENT

### I. Legal Standards

Under Federal Rule of Civil Procedure 50, a party may move for JMOL at any time before submission of the case to the jury. Fed. R. Civ. Proc. 50(a)(2). But if, as here, "the court does not grant a motion for [JMOL] made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). A party may then "file a renewed motion for [JMOL] and may include an alternative or joint request for a new trial…." *Id.*

A party may move for judgment as to the entire case, or on particular claims or issues. *Krumwiede v. Mercer Cty. Ambulance Serv., Inc.,* 116 F.3d 361 (8th Cir. 1997); *Parker v. Alexander Marine Co.,* No. SACV 12-1994-DOC-ANX, 2015 WL

1    12712083, at *2 (C.D. Cal. May 26, 2015).

2        In ruling on a motion for JMOL, a court asks "whether there is any legally sufficient evidentiary basis for a reasonable jury to find for [the opponent of the motion]." Fed. R. Civ. Proc 50(a)(1); *Weisgram v. Marley Co.*, 528 U.S. 440, 441–42 (2000). Such a motion should be granted "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 149 (2000). The court is required to draw all "reasonable inferences" regarding the trial evidence in favor of the party opposing a JMOL motion. *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). "Nevertheless, a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009).[2]

       To withstand a JMOL motion, a party's claims must be supported by "substantial evidence." *Janich Bros. v. Am. Distilling Co.,* 570 F.2d 848, 853 (9th Cir. 1977). "Substantial evidence" is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). Further, an opposing party's evidence must be admissible because "[i]nadmissible evidence contributes nothing to a 'legally sufficient evidentiary basis.'" *Weisgram*, 528 U.S. at 454 (*quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (JMOL proper where expert testimony should have been excluded under *Daubert*). Overturning a district court's denial of a motion for judgment as a matter of law, the Ninth Circuit has emphasized that "JMOL is appropriate when the jury could have relied only on

---

[2] Although this standard is analogous to summary judgment in many respects, the Ninth Circuit has cautioned that a denial of a summary judgment motion does not constitute law of the case barring a subsequent motion for JMOL at the close of evidence. *Peralta v. Dillard,* 744 F.3d 1076, 1088–89 (9th Cir. 2014).

speculation to reach its verdict." *Lakeside-Scott.,* 556 F.3d at 803. Accordingly, courts in this district have granted JMOL motions where a claimant's testimony is "too insubstantial and speculative" to support a verdict. *Cieslikowski v. Chrysler,* No. ED CV 17-562 MRW, 2019 WL 978095, at *5 (C.D. Cal. Feb. 4, 2019).

## II. Admissible Evidence Does Not Support Plaintiffs' Express Warranty Claim, Nor the Award of Civil Penalties.

JMOL for Ford is appropriate as to Plaintiffs' claim for express warranty. First, Plaintiffs failed to produce substantial evidence to support the finding that Ford failed to repair any particular alleged defect in their vehicle after a reasonable number of opportunities. Second, admissible evidence does not support the finding that Ford willfully refused to comply with its obligations toward Plaintiffs.

### A. Plaintiffs Did Not Present Substantial, Admissible Evidence that Ford Failed to Repair Any Particular Alleged Problem After a Reasonable Number of Opportunities.

The Song-Beverly Act requires a plaintiff to prove that "the manufacturer or its representative in this state [could] not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts." Cal. Civil Code § 1793.2(d)(1). The word "attempts" is plural and has been construed accordingly. In *Silvio*, the California Court of Appeal directly addressed the question of whether a "single failed attempt triggered the obligations set out in Civil Code section 1793.2, subdivision (d)." *Silvio v. Ford Motor Co*., 109 Cal. App. 4th 1205, 1207 (2003). The Court held unequivocally that it did not. *Id*. Emphasizing that the statute requires a reasonable number of "attempts" – which the court pointed out is plural – *Silvio* held that "[t]he statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." *Id*. at 1208; see also *Giovanni Knafo v. Jaguar Land Rover N. Am., LLC*, No. CV 18-01401 AB (KSX), 2019 WL 6482231, at *2 (C.D. Cal. July 12, 2019) (acknowledging that "[c]ourts have interpreted the language of this provision to require a plaintiff to show multiple

attempts to repair the product to a confirming state.") As the Ninth Circuit reiterated, the number of opportunities required to repair "is plural. That is because, under the law that applies in this case, for Plaintiff to be entitled to relief for any particular problem with her [vehicle], she must show that she brought the car in to [the manufacturer] for the repair *of that particular problem* on more than one occasion." *Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014) (emphasis added).

In other words, to establish their Song-Beverly express warranty claim, at a minimum Plaintiffs were required to submit evidence that they presented their vehicle to Ford at least twice to repair a particular problem and that Ford's repair efforts failed (*i.e.,* that the same problems continued after a second repair presentation).

Here, consistent with the documented repair orders (*see* Trial Exs. 9 and 13), Plaintiffs testified that they only brought their vehicle to Ford dealerships twice complaining of transmission problems: once to Puente Hills Ford in August 2015 and a second time to Bob Wondries Ford on May 23, 2017, after Plaintiffs had already made a reimbursement request to Ford. (Dec. 12, 2019 Trial Tr. (Chang Decl., Ex. C) at 747:18-748:7, 759:18-20). There is no evidence that Plaintiffs experienced the same transmission-related problems, or any other problems, after the May 23, 2017 visit to Bob Wondries Ford. This is likely because Plaintiffs did not care whether this second visit resolved their transmission problems. Plaintiffs had already made a request for Ford to reimburse their lease payments based on their alleged loss-of-power incident, and Mrs. Quintero testified that they "just wanted [Ford] to confirm that it had a problem so [they] could get [their] money back … because [they] were a month away from bringing the car back off of lease," and they'd "already spent months paying [their] monthly payments but not driving the car" and "so this was more to have Ford confirm that the problems existed so [Plaintiffs] could get [their] money back." (Dec. 12, 2019 Trial Tr. (Chang Decl., Ex. C) at 676:24-677:18.) Because the purpose of the dealer visit was to seek confirmation of a condition as the lease was ending rather than

5                    MEMO ISO RENEWED MOTION FOR JMOL
                     CASE NO. 2:18- ML-02814 (QUINTERO)

1  seek a final repair, this second visit does not constitute Plaintiffs providing Ford a
2  second "opportunity" to repair the vehicle. And in the absence of any evidence that
3  Plaintiffs continued to experience the same problems, there is no evidence that Ford
4  had failed to repair their Focus.

5  As they attempted at trial, Ford expects Plaintiffs will argue that this element is
6  satisfied because of a purported undocumented additional visit to Bob Wondries Ford.
7  At trial, Plaintiffs' counsel argued to the jury, and their designated expert witness, Mr.
8  Micale, sought to introduce inadmissible hearsay evidence of this second visit.
9  During this purported visit, dealership employees turned Plaintiffs away and refused
10 to do any inspection or repair for an unidentified problem with their Focus. (Dec. 10,
11 2019 Trial Tr. (Chang Decl., Ex. A) at 248:6-19; Dec. 11, 2019 Trial Tr. (Chang
12 Decl., Ex. B) at 509:11-510:24.) Both Mr. Micale and Plaintiffs' counsel indicated
13 Plaintiffs themselves would describe this purported second visit to Bob Wondries
14 Ford. (*Id.*) Plaintiffs never did.

15 On December 12, 2019, Plaintiffs' counsel asked Mr. Quintero, "[W]as there a
16 time between the La Puente repair August 15, 2015, and the time you brought it in to
17 Bob Wondries Ford on May 23, 2017, did you ever bring the car back to any
18 dealership between those two points in time?" (Dec. 12, 2019 Trial Tr. (Chang Decl.,
19 Ex. C) at 747:18-22.) Mr. Quintero responded by identifying only visits to Sears for
20 routine maintenance and oil changes: "A: There was times when I took it to Sears."
21 (*Id*. at 747:23.) Unsatisfied with this candid answer, Plaintiffs' counsel then sought to
22 lead Mr. Quintero to the answer they had hoped for:

23       "Q: I want to not focus on Sears but I want to ask if you
24       recall—
25       A. Okay.
26       Q: --did you bring it back to a Ford dealership –
27       A: Uh-huh.
28

1  Q: -- between August of 2015 and May of 2017.  In that
2  two-year period, was there a time when you brought it back
3  to a dealership?
4  A: I would say back to Bob Wondries Ford…"

(*Id*. at 747:18 – 748:7.) This was followed by further attempts to elicit testimony to suggest additional repair presentations. (*Id*. at 748:8-749:7.) But Mr. Quintero himself confirmed that there had *not* been multiple presentations at Bob Wondries Ford which would suggest the existence of any undocumented third repair. On cross-examination, Mr. Quintero candidly acknowledged the following:

"Q: Okay. So you only remember going to Bob Wondries
Ford once for a transmission issue?
A: Yes."

(*Id.* at 759: 18-20.)

Even if the jury should have been permitted to consider evidence of this purported second visit to Bob Wondries Ford, as established above, the timing and alleged problems presented at the dealership for repair are essential elements necessary for the jury to determine whether Ford had failed to repair a particular problem with the Focus after multiple opportunities. But there was no evidence to allow the jury to determine when this alleged event occurred or what problem this alleged repair presentation was for.  While Mr. Micale testified that he believed this incident involved Plaintiffs presenting their vehicle for repair relating to alleged loss of power, Plaintiffs' counsel and Plaintiffs themselves did not so specify. (Dec. 10, 2019 Trial Tr. (Chang Decl., Ex. A) at 248:6-19; Dec. 11, 2019 Trial Tr. (Chang Decl., Ex. B) at 509:24-510:24; Dec. 12, 2019 Trial Tr. (Chang Decl., Ex. C) at 748:8-749:7.) Rather, both Plaintiffs' counsel and Plaintiffs themselves simply stated that Plaintiffs "have a problem with the way [this car is] operating" or "there's a problem with the car.  It's not performing the proper way." (*Id.*)

1 If that is the basis for Plaintiffs' express-warranty claim, the jury reached their verdict only by speculating about when it occurred, what problems Plaintiffs were purportedly experiencing and for which they sought repair, and that this visit was not one of Plaintiffs' other documented dealer visits. Such speculation by the jury would have been inappropriate and would require JMOL in Ford's favor. *Lakeside-Scott.*, 556 F.3d at 803.

The simple and inescapable fact is that Plaintiffs failed to present evidence that Ford failed to repair any particular problem with their Focus after they gave Ford multiple opportunities to do so. Judgment on Plaintiffs' express-warranty claim should be granted in Ford's favor.

### B. The Record Does Not Support the Jury's Finding that Ford Acted "Willfully" and the Jury's Award of Civil Penalties.

Ford separately moves for JMOL as to civil penalties under the Song-Beverly statute. "If the buyer establishes that the failure to comply was willful, the judgment may include … a civil penalty which shall not exceed two times the amount of actual damages." Cal. Civil Code § 1794(c). Here, Plaintiffs have not met their burden to prove that Ford acted "willfully" toward them. Far from it.

Under California law, a manufacturer has acted willfully only if it "knew of its obligations but intentionally declined to fulfill them." *Schreidel v. Am. Honda Motor Co.,* 34 Cal. App. 4th 1242, 1249–50 (1995) (quoting *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 894 (1989).) Put another way, "a violation is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present." *Kwan v. Mercedes-Benz of N. Am., Inc.,* 23 Cal. App. 4th 174, 185 (1994). *See also Robertson v. Fleetwood Travel Trailers of Cal., Inc.,* 144 Cal. App. 4th 785, 815 (2006); CACI 3244 (Civil Penalty - Willful Violation (Civ. Code §1794(c).)

Here, there is absolutely no evidence – let alone substantial evidence – to support the finding that Ford acted willfully toward the Quinteros. As described in

detail above, at the time the Quinteros asked Ford for a refund, they had presented the vehicle for transmission repairs only once, almost two years before, and had not complained since, either to Ford itself or by bringing the vehicle in again for transmission repairs. The warranty repair records would therefore have shown only one apparently successful repair attempt. (Dec. 11, 2019 Trial Tr. (Chang Decl., Ex. B) at 395:20–396:14, Dec. 12, 2019 Trial Tr. (Chang Decl., Ex. C) at 687:5-10, 740:20–741:16, 747:14-23; 759:18-20, and Trial Exhibits 9 and 13.) Even if that attempt had clearly *failed*, Ford would still have been entitled as a matter of law to a second attempt, so it would have had every right to reject the refund request at that point. *Silvio*, 109 Cal. App. 4th at 1207. Only after the request—and after hiring lawyers—did the Quinteros hastily arrange for a second dealership visit. Critically, they did so without providing Ford an opportunity to repair or any other notice of continuing problems after that second visit. Again, they have presented no testimony at all that would even suggest that Ford was made aware this second repair had been unsuccessful, if it was.

Even if this Court were to somehow find that Plaintiffs presented the vehicle for some third dealership visit – which is not reflected in any repair orders and which Mr. Quintero himself testified at trial did not occur – that could not provide a basis for willfulness on the part of Ford because there was no evidence presented that Ford knew about this phantom third presentation. Though Plaintiffs' counsel sought diligently to insinuate that it may have occurred, they presented no evidence that Ford was aware of this purported presentation. Plaintiffs cannot establish that Ford willfully failed to repair and replace in regard to a vehicle presentation that it never even had knowledge of.

For all these reasons, there would be no reasonable basis for a finding of willfulness even if Plaintiffs' express warranty claim could somehow survive.

### III. The Quinteros' Implied-Warranty Verdict Is Not Supported by Substantial Evidence.

Ford recognizes that this Court has found Plaintiffs abandoned their implied warranty claim. While Ford agrees with the Court's order, in order to preserve these independent grounds for judgment in Ford's favor in the event Plaintiffs seek to appeal that determination, Ford renews its motion for JMOL as to the implied-warranty claim on the same grounds asserted in its pre-verdict motion for JMOL. (*See* MDL ECF No. 710-1 at pp. 9-16.) First, Plaintiffs failed to provide substantial evidence to support the finding that their vehicle was not fit for its ordinary purpose of providing transportation and Plaintiffs should not have been permitted to prove this claim under the "pass without objection in the trade" prong. Second, Plaintiffs only sought remedies available based on revocation of their lease. The evidence at trial failed to support this remedy because Plaintiffs failed to introduce evidence that they provided reasonable notice of any purported revocation. *See* Cal. Com. Code § 2608; *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1263 (2004).

### CONCLUSION

For all of the foregoing reasons Ford respectfully renews its motion seeking judgment be entered in its favor and against Plaintiffs as a matter of law on Plaintiffs' express-warranty claim, Plaintiffs' claim for civil penalties, and Plaintiffs' implied-warranty claim. In the alternative, Ford has concurrently moved for a new trial.

June 5, 2019

Respectfully submitted,

SHOOK, HARDY & BACON LLP

By: /s/ *Andrew Chang*

    Andrew Chang

    Attorneys for Defendant
    Ford Motor Company