UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No. 18-ML-02814 AB (FFMx) |
| | Case No. CV 18-00463 AB (FFMx) |
| | **ORDER DENYING MOTION TO COMPEL ARBITRATION** |
| **THIS DOCUMENT RELATES TO:** | |
| *Darice A. Wirth, et al. v. Ford Motor Company, et al.* CV 18-00463 | |

Before the Court is Ford Motor Company's ("Ford") Motion to Compel Arbitration ("Motion," MDL Dkt. No. 747). Plaintiffs Darice and Edward Wirth ("Plaintiffs") filed an opposition and Ford filed a reply. The Court heard oral argument on May 13, 2020. The Motion is **DENIED**.

## I.   BACKGROUND

This case is a member of the multi-district litigation ("MDL") entitled *In re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, Case No. ML-18-02814 AB (FFMx). The MDL concerns Ford's installation of an allegedly defective DPS6 PowerShift transmission in certain model year Ford Fiesta and Ford Focus vehicles. Plaintiffs herein sue Ford and Fiesta Ford, Inc. ("Dealership") in connection with their leased 2014 Ford Fiesta. Plaintiffs assert claims against Ford under the Song-Beverly Act and for fraudulent inducement, and a single claim against

1.

1   the Dealership for fraudulent repair.

2         Ford now moves to compel arbitration. Ford argues that the lease that Plaintiffs

3   signed included a broad arbitration provision that permits Plaintiffs, the

4   dealership/Lessor (Fiesta Ford), Finance Company (Ford Motor Credit Company), or

5   the Holder of the Lease (CAB West LLC) to elect to resolve by arbitration any

6   disputes related to the Lease or any resulting relationship with third parties. Ford

7   acknowledges that it is not a party to the Lease, but nevertheless argues that

8   "California law and the weight of equitable doctrines permit Ford to compel

9   [Plaintiffs] to arbitrate their claims against it." *See* Mot. 1:5-10. Plaintiffs oppose.

10   **II.   LEGAL STANDARD**

11         The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, applies to a written

12   arbitration agreement in "a contract evidencing a transaction involving commerce."

13   9 U.S.C. § 2. "The principal purpose of the FAA is to ensure that private arbitration

14   agreements are enforced according to their terms." *AT&T Mobility LLC v.*

15   *Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations and citation omitted). A

16   party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may

17   bring a motion to compel arbitration in a federal district court. 9 U.S.C. § 4. The

18   Court's role under the FAA is limited to determining "two 'gateway' issues: (1)

19   whether there is an agreement to arbitrate between the parties; and (2) whether the

20   agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

21   2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also*

22   *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citing *Chiron*

23   *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

24         If a valid arbitration agreement exists covering the dispute, the district court

25   must compel arbitration. *Lifescan, Inc., v. Premier Diabetic Servs., Inc.*, 363 F.3d

26   1010, 1012 (9th Cir. 2004); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

27   213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of

28   discretion by a district court, but instead mandates that district courts shall direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

Section 2 of the FAA reflects both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract[.]" *Concepcion*, 563 U.S. at 339 (internal quotations and citations omitted).  Consistent with these principles, "courts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms." *Id.* (internal quotations and citations omitted).  However, Section 2 provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [Section] 2." *Ticknor v. ChoiceHotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (2000)); *see also Concepcion*, 563 U.S. at 339.  "[W]here a party specifically challenges arbitration provisions as unconscionable and hence invalid, whether the arbitration provisions are unconscionable is an issue for the court to determine, applying the relevant state contract law principles.  This rule applies even where the agreement's express terms delegate that determination to the arbitrator." *Jackson v. Rent-A-Center, West, Inc.*, 581 F.3d 912, 918–19 (9th Cir. 2009), *rev'd on other grounds by Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772 (2010).

Courts may consider evidence beyond the complaint when determining a motion to compel arbitration.  *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1266–69 (C.D. Cal. Dec. 29, 2008) (examining declarations and exhibits in determining a motion to compel arbitration under the FAA).  The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565

3.

1  (9th Cir. 2014).  In these proceedings, "the trial court sits as the trier of fact, weighing
2  all the affidavits, declarations, and other documentary evidence, as well as oral
3  testimony received at the court's discretion to reach a final determination." *Bruni v.*
4  *Didion*, 160 Cal.App.4th 1272, 1282 (2008).

5  **III.    DISCUSSION**

6      The Arbitration Provision is contained in the Lease Agreement ("Lease," Chang
7  Decl. Ex. B) Plaintiffs signed for their 2014 Fiesta. The Arbitration Provision states:

8          Arbitration is a method of resolving any claim, dispute, or controversy
9          (collectively, a "Claim") without filing a lawsuit in court. **Either You**
10         **or Lessor/Finance Company/Holder ("us" or "we") (each, a**
11         **"Party") may choose at any time, including after a lawsuit is filed,**
12         **to have any Claim related to this contract decided by arbitration**.
13         … Claims include but are not limited to the following: 1) Claims in
14         contract, tort, regulatory, or otherwise; 2) Claims regarding the
15         interpretation, scope or validity of this provision, or arbitrability of any
16         issue; **3) Claims between You and us, your/our employees, agents,**
17         **successors, assigns, subsidiaries, or affiliates;** 4) Claims arising out of
18         or relating to your application for credit, this contract, or any resulting
19         transaction or relationship, including that with the dealer, or any such
20         relationship with third parties who do not sign this contract.
21  Lease, p. 6 (emphasis added).

22      The Lease defines "You," as the Plaintiffs, the "Lessor" as Fiesta Ford, the
23  "Finance Company" as Ford Motor Credit Company, and "Holder" as CAB West
24  LLC as "Holder." *Id.*  The Lease refers to Fiesta Ford, Ford Motor Credit Company,
25  and CAB West LLC as "us" and "we." *Id.* at p. 6.

26      Defendant Ford is not identified as a party to the Lease, nor is it specifically
27  named in any capacity in the Arbitration Provision. Because the right to compel
28  arbitration is a contractual right generally it may not be invoked by a non-party to the

4.

agreement. *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1155 (N.D. Cal. 2012) (quoting *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993)) (citation omitted). Nevertheless, Ford claims it has standing to invoke the Arbitration Provision for three reasons. First, Ford argues that it is a third-party beneficiary of the Arbitration Provision because it is an "affiliate" of the Lessor, Finance Company, or Holder, and because it is an "intended beneficiary" of the Arbitration Provision. Second, Ford argues that it can enforce the arbitration provision as an alleged principal of the signatory Dealership. Finally, Ford argues that equitable estoppel bars Plaintiffs from resisting arbitration because all of their claims are inevitably connected with the Lease, especially the fraudulent inducement claims. Plaintiffs argue that Ford waived its claimed right to arbitrate, and that Ford has no standing to invoke the Arbitration Provision, that is, that Plaintiffs did not agree to arbitrate their dispute with Ford. The Court first addresses the threshold question of waiver, then each of Ford's asserted bases for standing.

### A. Ford Has Waived Its Claimed Right To Arbitrate.

Plaintiffs argue that Ford waived its claimed right to attempt to compel arbitration. Where, as here, the FAA governs, the FAA rather than state law "supplies the standard for waiver" of the right to compel arbitration. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002). Under the FAA, the "party arguing waiver of arbitration bears a heavy burden of proof" and "must show: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *U.S. v. Park Place Assoc., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (citations omitted). A determination of whether "the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

Plaintiffs point to several acts by Ford that they say establish waiver. First, Ford knew of an existing right to compel arbitration no later than its March 6, 2018

1    Answer, which poses as its thirty-fifth affirmative defense that this case should be

2    decided through arbitration. And, Ford acted inconsistent with that right by

3    establishing this MDL, transferring this case into it on March 7, 2018, and otherwise

4    using judicial process to litigate this and other cases in the MDL. Finally, these tactics

5    prejudiced Plaintiff because more than two years have passed since this case was

6    forced into the MDL, and now Ford wants to switch forums. (The Court notes that

7    Ford first told the Court and the parties of its intention to move to compel arbitration

8    in two cases in October 2019. *See* Mot. 4:19-21.)

9         Ford argues that it didn't know of an existing right to arbitrate.  Ford argues that

10   it has standing to invoke the Arbitration Provision based in part on an alleged agency

11   relationship between Plaintiffs and the dealership-retailers. Ford contends that it did

12   not believe such an agency theory was viable until this Court entered its September 5,

13   2019 Order resolving motions to dismiss in other cases in the MDL. *See* Order (Dkt.

14   No. 452). In that Order, the Court ruled that those plaintiffs pled facts sufficient to

15   support, at the pleading stage, their theory seeking to hold Ford liable for fraudulent

16   inducement for the dealership-retailer's misleading statements. This theory is

17   premised on an alleged agency relationship between the dealerships and Ford relative

18   to the dealership's representations. Ford contends that the Court's ruling was contrary

19   to most authority, so Ford could not have known that Plaintiff's agency theory was

20   viable, and that therefore Ford had recourse to the arbitration provision, until the

21   Court accepted that theory at the pleading stage. This is Ford's sole argument that it

22   did not have knowledge of an existing right to compel arbitration.

23        Plaintiffs have established that Ford waived its right to arbitration, and Ford's

24   arguments to the contrary are not persuasive. First, Ford's position that it didn't know

25   of an existing right to arbitrate until the Court's September 2019 order is

26   unpersuasive. Ford poses three separate grounds for invoking the Arbitration

27   Provision—its claimed status as a third-party beneficiary, its alleged agency

28   relationship with the Dealership, and equitable estoppel—and only the second of these

6.

grounds turns on an agency relationship with the Dealership. Ford's third-party beneficiary argument and its equitable estoppel argument have always been available regardless of this Court's ruling on the agency issue at the pleading stage. Accordingly, Ford's assertion that it did not know of an existing right to arbitrate until the Court's September 2019 order rings hollow. Furthermore, the mere fact that other district court have held in other cases that the allegations therein were insufficient to support an agency theory between a manufacturer and a dealership does not equate to "precedent" or "existing law" establishing the same in this case. Indeed, the only cases Ford cites in its present motion for the proposition that dealerships are not agents of manufacturers are a mix of district court cases, three of which dealt with motions to dismiss and the fourth dealt with a motion to certify class. *See* Mot. 18:10-16.  It does not follow from these cases that a plaintiff can never plead facts sufficient to move forward on an agency theory. Notably, this Court did not decide that the agency relationship was established, just that it was sufficiently alleged at the pleading stage. In sum, Ford does not dispute that it long ago had knowledge of at least two of its three bases for seeking to compel arbitration, and its argument for why it newly learned of its third basis is simply unavailing.

Ford has also taken acts inconsistent with its right to arbitrate. First, the fact that Ford invoked this Court's authority to adjudicate the supposedly key agency issue referenced above, instead of seeking to arbitrate it along with the rest of the case, is conduct inconsistent with its right to arbitrate. Furthermore, at oral argument on this motion, the Court asked the parties to approximate how many cases in the MDL could have a similar arbitration issue. The parties represented to the effect that they believed that many cases in the MDL involved form lease agreements or purchase contracts that included arbitration provisions similar to the one in issue here.[1] Ford nevertheless

---

[1] The Court got the distinct impression that this issue is most likely present in, conservatively, at least half of the member cases of the MDL.

1  removed all of those cases from state court to federal court and secured their further

2  transfer into this MDL. Nearly all of these cases (including the instant case) have been

3  stayed for more than 2 years now, while litigation proceeded on only 30 of them.

4  Although there has not been litigation in this specific case, the parties have vigorously

5  litigated "common issues" that are understood as a practical matter to impact nearly

6  every case in this MDL. Given Ford's conduct in channeling all of these cases into the

7  MDL, resulting in most cases including this one being stayed the entire time, and

8  litigating putative common issues—including the "agency" issue—in this forum, Ford

9  has acted inconsistent with its right to arbitrate. Finally, these acts have prejudiced

10  Plaintiffs because they resulted—predictably—in the case being stayed the whole

11  time. If Ford wanted to arbitrate this case, it should have sought that relief promptly

12  instead of taking the course it did in federal court.

13      All things considered, the Court concludes that Ford has waived its claimed

14  right to arbitrate this case, and on that basis the Motion is **DENIED**. The Court next

15  addresses, in the alternative, the substance of the Motion.

16  **B. Ford Cannot Invoke the Arbitration Provision.**

17      Framed either as a question of whether Ford has standing to invoke the

18  Arbitration Provision, or as a question of whether Plaintiffs agreed to arbitrate their

19  dispute with Ford, the answer is the same: no. The Court addresses in turn each of

20  Ford's three claimed bases for having standing to invoke the Arbitration Provision.

21      **1. Ford Cannot Invoke the Arbitration Provision under "Third-Party**

22          **Beneficiary Theories."**

23      Under California law, third-party beneficiaries can enforce arbitration clauses

24  even if they are not named in the agreement. *Ronay Family Ltd P'ship v. Tweed*, 216

25  Cal. App. 4th 830, 836 (2013); *Macauly v. Norlander*, 12 Cal. App. 4th 1, 6–8 (1992).

26  Ford contends that it can invoke the Arbitration Provision as a third-party beneficiary

27  because it is an "affiliate" of the Lessor, Finance Company, or Holder, and because it

28  is an "intended beneficiary" of the Arbitration Provision. Neither argument prevails.

8.

1    Ford argues that it is an "affiliate" of Ford Credit and CAB West because Ford

2    Credit is a wholly-owned subsidiary of Ford, and CAB West is a wholly-owned

3    subsidiary of Ford Credit.[2] *See* Ford's Request for Judicial Notice, Exs. B and C. But

4    Ford does nothing in its moving papers to define the term "affiliate." Instead, Ford

5    relies primarily on two district court cases—*Katz v. BMW of N. Am., LLC*, No. 4:19-

6    cv-01553-KAW, 2019 WL 4451014, * 3 (C.D. Cal. Sep. 17, 2019), and *Lanning v.*

7    *BMW of N. Am., LLC*, No. 3:19-cv-00773-BEN-LL, 2019 WL 5748518, at *3–5 (S.D.

8    Cal. Nov. 5, 2019)—but these cases concluded the dealer therein was an affiliate

9    without defining that term. Therefore, with respect, these cases are not persuasive on

10   this point. Only in reply does Ford provide dictionary definitions of the term affiliate

11   but fails to establish that such definitions are accepted in California under the

12   circumstances of this case.

13       In *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817 (2019), the California Supreme

14   Court held that all three of the following elements must be satisfied to permit a third

15   party to enforce a contract: "(1) [] the third party would in fact benefit from the

16   contract, [] (2) [] a motivating purpose of the contracting parties was to provide a

17   benefit to the third party, and (3) [] permitting a third party to bring its own breach of

---

18   

19   [2] In true shot-gun fashion, Ford also argues that it is "entitled to enforce the
20   Arbitration Provision since assignment of the Lease to CAB West places Ford within
     the class of persons (i.e., assigns) whom the arbitration provision was intended to
21   benefit," because "Fiesta Ford assigned the Lease to CAB West, which is a wholly-
     owned subsidiary of Ford Credit, itself a wholly-owned subsidiary of Ford." Mot.
22   9:18-22. In other words, Ford claims that it itself is an "assign" of the Lease because
     its wholly-owned subsidiary's wholly-owned subsidiary is an "assign" of the Lease.
23   But it is axiomatic that, in the absence of corporate veil-piercing—an equitable
24   remedy to prevent injustice—parent and subsidiary corporations are distinct entities,
     with distinct obligations and liabilities. *See, e.g., Sonora Diamond Corp. v. Superior*
25   *Court*, 83 Cal. App. 4th 523, 538 (2000). Thus, in seeking to enforce the Arbitration
     Provision as an "assign" based on its subsidiary's subsidiary being an "assign," Ford
26   implicitly takes the bizarre position that its own corporate veil should be pierced,
     thereby also implying that there is some abuse of the corporate form in its own chain
27   of ownership, from which, incidentally, it should benefit. This is nonsensical and the
28   Court rejects this argument without further discussion.

1   contract action against a contracting party is consistent with the objectives of the

2   contract and the reasonable expectations of the contracting parties." *Goonewardene v.*

3   *ADP, LLC*, 6 Cal. 5th 817, 830 (2019). Here, Ford does not expressly address these

4   elements, and therefore fails to carry its burden to establish that it is a third-party

5   beneficiary. And, on its own, the Court does not find these elements satisfied. For

6   example, the Arbitration Provision is contained in a form Lease, and the Court cannot

7   find that "a motivating purposes of the contracting parties" was to benefit Ford as

8   either the manufacturer or parent corporation of one of the signatories. Nor, given the

9   vagueness of the term "affiliate," can the Court find that Plaintiffs could have

10  reasonably expected the term to encompass the manufacturer of the vehicle, an entity

11  whose identity was plainly known when the Lease was entered into, or one of the

12  signatories' parent corporations merely based on it being a parent corporation.

13  Furthermore, although Ford insists it is an "affiliate" because it is the parent of two

14  parties to the contract, the Arbitration Provision does not specifically encompass

15  claims involving signatories' parent corporations, yet it does specifically encompass

16  claims involving the signatories' "subsidiaries." In light of the Arbitration Provision's

17  omission of parent corporations, but it inclusion of subsidiaries, the Court cannot find

18  that the parties were motivated to benefit parent corporations like Ford, or that the

19  Plaintiffs reasonably expected Ford to be within the class of third-party beneficiaries

20  identified in the Provision.

21          **2. Ford Cannot Enforce the Arbitration Provision as the Alleged**

22              **Principal of the Signatory Dealership.**

23          Ford argues that because Plaintiffs allege that the Dealership was its "agent" in

24  connection with alleged misrepresentations the Dealership made about the qualities of

25  the vehicle, Ford can enforce the Arbitration Provision as the principal of the

26  Dealership. But this argument fails because there are no allegations or evidence that

27  the alleged agent—the Dealership—*entered into the Lease on behalf of* the alleged

28  principal—Ford. *See* Cal. Civ. Code § 2330 ("An agent represents his principal *for all*

10.

1  *purposes within the scope of his actual or ostensible authority*, and all the rights and

2  liabilities which would accrue to the agent from transactions within such limit, if they

3  had been entered into on his own account, accrue to the principal.") (emphasis added).

4  Thus, because there is no allegation or evidence that the Dealership was acting as

5  Ford's agency when it entered into the Lease, it follows that Ford has no standing to

6  invoke the rights set forth in the Lease's Arbitration Provision.

7       **3.  Equitable Estoppel Does Not Prevent Plaintiffs From Resisting**

8         **Arbitration.**

9       Finally, Ford argues that, given that Plaintiffs' "claims against Ford rely upon

10  or are intimately founded in and intertwined with the Lease, and they allege

11  interdependent and concerted misconduct by Ford and Fiesta Ford," equity bars

12  Plaintiffs from avoiding the Arbitration Provision contained in that Lease. *See* Mot.

13  12:12-13:6. This argument fails under the reasoning set forth in *Kramer v. Toyota*

14  *Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013).

15       *Kramer* observed that under California law, "the doctrine of equitable estoppel

16  applies in two circumstances: (1) when a signatory must rely on the terms of the

17  written agreement in asserting its claims against the nonsignatory or the claims are

18  'intimately founded in and intertwined with' the underlying contract [citations

19  omitted], and (2) when the signatory alleges substantially interdependent and

20  concerted misconduct by the nonsignatory and another signatory and 'the allegations

21  of interdependent misconduct [are] founded in or intimately connected with the

22  obligations of the underlying agreement.' [citations omitted]." *Kramer*, 705 F.3d at

23  1128–29.

24       Ford argues that the first circumstances applies because all of Plaintiffs' claims

25  are intertwined with the Lease because Plaintiff would not have the vehicle or its

26  corresponding warranty but for the Lease. But none of Plaintiffs' warranty or

27  misrepresentation claims against Ford are not "founded in" the Lease, as they are not

28  breach of contract claims or tied to any promise in the Lease. *See Kramer*, 705 F.3d  at

1   1130-1131 (holding that none of plaintiffs' consumer protection or warranty claims

2   were founded in or intertwined with the purchase contract because defendant's

3   obligations did not arise out of the contract but were independent of them). Even the

4   fraudulent inducement claim, which is premised on Plaintiffs having transacted with

5   the Dealership to obtain the vehicle, does not trigger equitable estoppel. This is, again,

6   because the actionable conduct alleged in the Complaint does not arise out of any

7   obligations of the Lease. The Lease and its terms are incidental to Plaintiffs' claims.

8   Ford argues that the second circumstances applies because of Plaintiffs' allegations of

9   collusion between Ford and the Dealership. But again, Plaintiffs' allegations of

10  collusion or agency do not pertain to any obligation created by the Lease. And the

11  Court rejects Ford's arguments that additional terms in the Lease here, or Plaintiffs'

12  arguably more extensive agency allegations, distinguish this case from *Kramer*.

13          As the *Kramer* Court concluded, "in this case, Plaintiffs do not seek to

14  simultaneously invoke the duties and obligations of [Ford] under the [Lease]

15  Agreement, as it has none, while seeking to avoid arbitration. Thus, the inequities that

16  the doctrine of equitable estoppel is designed to address are not present." *Id.* at 1134.

17  **IV.     CONCLUSION**

18          For the foregoing reasons, Ford's Motion to Compel Arbitration is **DENIED**.

19          **IT IS SO ORDERED.**

20

21  Dated: July 02, 2020          _____

22                                HONORABLE ANDRÉ BIROTTE JR.
                                  UNITED STATES DISTRICT COURT JUDGE

23

24

25

26

27

28

12.