UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIAIBLITY LITIGATION** | Case No. 18-ML-02814 AB (FFMx) |
| | Case No. 17-CV-06656 AB (FFMx) |
| This Document Relates Only To: | **ORDER GRANTING IN PART AND DENYING IN PART PLANTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES [Dkt. No. 70]** |
| *Mark Pedante v. Ford Motor Co.*, CV 17-06656 AB (FFMx) | |

Before the Court is Plaintiff Mark Pedante's ("Plaintiff") Motion for Attorneys' Fees, Costs, and Expenses ("Motion," Dkt. No. 70). Defendant Ford Motor Company ("Ford") filed an opposition and Plaintiff filed a reply. The Court heard oral argument on May 13, 2020. The Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

This Order assumes familiarity with the background of this case, so the Court will provide only a brief summary.

This is one of more than 1,000 member cases of the multidistrict litigation *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liability Litig.*, Case No. 18-ML-02814, concerning allegedly defective DPS6 dual-clutch powershift transmissions installed in certain Ford vehicles. Like most of the plaintiffs in the MDL, Plaintiff herein asserted three claims for fraud, along with a request for punitive damages, and

1.

two claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790-1795.5 ("Song-Beverly" or "Act"), along with a request for a civil penalty under the Act, arising out of an allegedly defective DPS6 transmission with which his 2013 Ford Focus was equipped. The only claim to survive pleading challenges and a motion for summary judgment was Plaintiff's Song-Beverly claim for breach of the express warranty, along with his request for a civil penalty. A jury returned a verdict for Plaintiff on this single claim, awarding him damages and a two-times civil penalty under Song-Beverly, for a total of $65,165.07.  This was the maximum award Plaintiff could have secured under his Song-Beverly claim.

Plaintiff now moves for an award of $541,609.24 in attorneys' fees and $1,214.49 in costs under the Song-Beverly Act's fee-shifting provision. Ford opposes on numerous grounds.

## II.   LEGAL STANDARD

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees"). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

Courts in California and across the Ninth Circuit use the "lodestar method' to calculate attorneys' fees. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). The lodestar figure is "calculated by multiplying the number of hours the prevailing party

2.

reasonably expended on the litigation by a reasonable hourly rate." *Candle v. Bristow Optical Co. Inc.,* 224 F.3d 1014, 1028 (9th Cir. 2000). The lodestar amount is strongly presumed to be reasonable. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). The fee applicant bears the burden of substantiating the hours worked and the rates claimed. *Hensley v. Eckhart*, 461 U.S. 424, 437 (1933). The court may then adjust this lodestar upwards or downwards based on a number of factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum,* 24 Cal. 4th at 1132. In contingency cases, the initial lodestar figure may be adjusted upward in order to compensate attorneys for the risk of taking on a case for which they might not have been compensated. *Id.* at 1332–33. However, a fee enhancement may not be appropriate when a statutory guarantee eliminates any uncertainty about whether costs will be awarded to the prevailing party. *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998). In the end, what constitutes a reasonable fee award is "committed to the sound discretion of [the] trial judge." *Perdue v. Kenny A.,* 559 U.S. 542, 558 (2010). "The essential goal in shifting fees [] is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "A request for attorneys' fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

### III. DISCUSSION

**A. Plaintiff Is The Prevailing Party As To His Song-Beverly Claim.**

Although the jury found for Plaintiff on the sole claim at trial and awarded him the maximum amount available under the Song-Beverly Act, Ford argues that he is not the prevailing party for purposes of the fee-shifting statute. Specifically, Ford points out that in October 2017—about 2 months after Plaintiff filed suit—Ford offered to settle this case for $75,001, and in January 2019, Ford made a Fed. R. Civ. P. ("Rule") 68 offer of judgment for $92,511.00 plus $50,000 in attorneys' fees and costs. Plaintiff did not accept either offer and instead proceeded to trial where he was

awarded only $65,165.07 – less than either of Ford's settlement offers. Ford thus argues that Plaintiff's primary litigation objective was not to prevail on his Song-Beverly claim because he could have achieved a greater recovery had he accepted one of Ford's earlier settlement offers. Rather, Plaintiff's objective was to pursue larger damages, an objective he didn't achieve.

California courts recognize two approaches to determining whether a party is the prevailing party where, as here, the relevant fee-shifting statute does not define "prevailing party." First, some California courts have applied the general definition of Cal. Code Civ. P. § 1032, which states, as applicable, that a prevailing party includes "the party with a net monetary recovery." Cal. Code. Civ. P. § 1032; *see Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1158 (1997) (applying § 1032's "net monetary recovery" standard to determine whether Song-Beverly plaintiff was prevailing party) *disapproved on other grounds in Gavaldon v. DaimlerChrysler Corp.*, 32 Cal.4th 1246, 1261 (Cal. 2004). But, other Courts have held that courts "should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level [citations] . . . 'by analyzing which party realized its litigation objectives.' [citation]." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006). A party can achieve its litigation objectives "by judgment, settlement or otherwise" and the court should be guided by "equitable considerations." *Id.* at 150-151 (citations omitted). One Court of Appeal has suggested that either standard, or "a combination" of them, could apply. *See Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 181 (2007) ("we remand the matter to the trial court to determine whether Kim is a prevailing plaintiff either because he obtained a net monetary recovery or because he achieved most or all of what he wanted by filing the action or a combination of the two").

Under the § 1032 standard, Plaintiff is the prevailing party because he achieved a net monetary recovery, even though it was less than what Ford offered. But this simple standard does not take account of the complexities of a multi-claim case like

4.

this one, so the Court also considers the litigation objectives standard.

Under the litigation objectives standard, the analysis is not so clear. Notably, while Plaintiff asserts that he achieved his litigation objectives, he does not clearly spell out what those litigation objectives were. He simply states that "he received far more in this litigation than he would have without it." *See* Reply 6:19. It is true that despite making multiple repair attempts and clutch replacements, Ford did not comply with its replace-or-repurchase obligation under the Song-Beverly Act voluntarily, before Plaintiff filed suit in August 2017. So given Ford's conduct, Plaintiff *had* to file suit. However, in October 2017, two months after Plaintiff filed suit, Ford offered to settle for $75,001 – about $10,000 more than the $65,165 maximum award Plaintiff could have obtained (and did obtain) under Song-Beverly.[1] Thus, if merely "receiv[ing] far more in this litigation than he would have without it" was Plaintiff's main litigation objective, he would have achieved this same objective more successfully within two months of filing suit.[2] On January 29, 2019, through a Fed. R. Civ. P. ("Rule") 68 offer of judgment, Ford upped its offer to about $92,500 plus $50,000 in attorneys' fees. Yet Plaintiff rejected this offer, too.[3] It therefore stands to reason that securing compensation under Song-Beverly—which Plaintiff could have achieved in October 2017 and which is all that the subsequent two years of litigation achieved—was not Plaintiff's litigation objective. Rather, Plaintiff's main litigation

---

[1] Plaintiff's counsel's billing records reflect that by the end of October 2017, Plaintiff's counsel incurred only about $2,587.50 in fees on this case.
[2] Plaintiff does not argue that Ford's October 2017 offer included objectionable non-monetary terms that caused him to reject it despite the favorable monetary terms.
[3] Because Plaintiff's verdict was not more favorable than the January 2019 Rule 68 offer of judgmnet, by rejecting it Plaintiff cut off any entitlement to fees and costs incurred thereafter. *See Marek v. Chesny*, 473 U.S. 1, 10, (1985) (under Rule 68, "plaintiffs [] who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected"). Heeding this law, Plaintiff has not sought fees or costs incurred after he rejected the Rule 68 offer of judgment (except for fees associated with this motion). Nevertheless, that Plaintiff rejected the Rule 68 offer is probative of his litigation objectives, the focus of the prevailing party inquiry.

5.

objective was to secure greater damages through his fraud claims and his attendant request for punitive damages—claims that were not dismissed until October 2019. California case law counsels that the prevailing party determination is pragmatic. Plaintiff's explanation of his litigation objectives and conduct invite this Court to ignore his fraud and punitive damages claims as if they were marginal when in fact Plaintiff's litigation conduct reveals that they were the primary driving force behind this action.

*MacQuiddy v. Mercedes-Benz USA, LLC*, 233 Cal. App. 4th 1036 (2015), a Song-Beverly case, is instructive. There, as here, the plaintiff did not make a pre-litigation repurchase demand. However, in its answer, the defendant admitted liability for failure to repair or replace the vehicle and admitted that the plaintiff was entitled to reimbursement of the price he paid plus incidental damages. These amounts were apparently never disputed. The litigation carried on for several months. Before trial, the parties stipulated to the repurchase amount, and the case went to trial only on the question of whether the defendant *willfully* failed to repurchase or replace the vehicle and thus whether plaintiff was entitled to a civil penalty. The plaintiff lost on that issue. Noting that the plaintiff's entitlement to reimbursement and damages was not disputed, the trial court determined that plaintiff's litigation objective was not straight damages under Song-Beverly, but instead, it was to obtain a civil penalty. Because the plaintiff lost on that issue, he did not achieve his litigation objective and was not the prevailing party, so he was not entitled to recover his attorneys' fees. *Id.* at 1049. The Court of Appeal affirmed. Here, Ford did not admit liability, but two months after litigation commenced, it offered Plaintiff $75,001 in compensation—more than the maximum $65,165 available under Song-Beverly plus the $2,587.50 in attorneys' fees accrued by then. Plaintiff could have secured this amount two years before trial, yet he chose to continue litigating. This indicates that Plaintiff had other main litigation objectives—to obtain fraud damages and punitive damages, just as the *MacQuiddy* plaintiff's objective was to secure a civil penalty. The Court concludes that because

6.

Plaintiff rejected the offer here, his litigation objective was to secure more compensation, under non-Song-Beverly claims. *See also Campos v. Ford Motor Co.*, No. EDCV17-02221-AGA-GRX, 2020 WL 256125, at *1 (C.D. Cal. Jan. 13, 2020) (concluding that "Ford's willingness to repurchase the vehicle and pay a substantial amount of money in damages and penalties, and Plaintiffs' repeated reluctance to accept that offer leads the Court to conclude that Plaintiffs' primary objective was to pursue larger damages" and therefore plaintiffs were not the prevailing party).

Plaintiffs argue that *MacQuiddy* is distinguishable because there, the defendant admitted liability, whereas here, Ford did not admit liability until the eve of trial. But this is a distinction without a difference. Plaintiff does not suggest that securing an admission of liability was his litigation objective, nor is it clear that that would be a meaningful objective in and of itself when it comes to determining prevailing party status. The defendant's admission in *MacQuiddy* was relevant to the plaintiff's prevailing party status only insofar as it put the plaintiff's entitlement to compensation out of the realm of dispute—just as Ford's offer, if accepted, would have effectively placed Plaintiff's entitlement to maximum Song-Beverly compensation beyond dispute. Thus, the admission in *MacQuiddy* and Ford's settlement offer in this case had the same effect: to put the plaintiff's entitlement to a certain amount of compensation beyond dispute. For this reason, the fact that the *MacQuiddy* defendant admitted liability does not distinguish the case, and the Court finds *MacQuiddy* instructive.

Plaintiff argues that the absence of an admission in this case makes it more like *Goglin v. BMW of N. Am., LLC*, 4 Cal.App.5th 462 (2016), where the court found the settling plaintiff to be a prevailing party even though she rejected several earlier settlement offers. But in *Goglin*, the absence of an admission had nothing to do with whether the plaintiff was the prevailing party. Rather, the prevailing party dispute turned on whether the plaintiff was obliged to accept early settlement offers that included unfavorable non-monetary terms (she wasn't). The absence of an admission

7.

in *Goglin* was relevant only to the court's discussion of the reasonableness of the plaintiff's fees: the Court simply reasoned that in the absence of an admission of liability, "Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements . . . [so] the time spent by Goglin's counsel on litigation activities was reasonable." *Goglin*, 4 Cal. App. 5th at 473. *Goglin* therefore offers no support to Plaintiff's argument linking the lack of an admission by the defendant to the Court's determination that the plaintiff was a prevailing party. There was simply no connection between the two in *Goglin*.

Finally, because there were no pre-litigation offers in *MacQuiddy*, that case also refutes Plaintiff's argument a plaintiff is not a prevailing party only where he rejects pre-litigation settlement offers and didn't have to file suit at all.

Thus, under the § 1032 standard, Plaintiff is the prevailing party, whereas under the litigation objectives standard, Plaintiff is arguably not the prevailing party. However, the Court is mindful that it should "adopt a pragmatic approach" and be guided by "equitable considerations," *Graciano*, 144 Cal. App. 4th at 150-151, and that the Court may adopt a "combination" of the two available approaches. *See Kim*, 149 Cal. App. 4th at 181. In light of these considerations, the Court finds that Plaintiff was the prevailing party with respect to his Song-Beverly claims: he had to file suit to secure *any* Song-Beverly relief from Ford, and ended up securing maximum relief under the statute. He therefore prevailed on this claim, and given Song-Beverly's intent to protect consumers and its fee-shifting provision, he should be awarded his reasonable fees attributable to the Song-Beverly claim. By the same token, the Court cannot ignore the analysis above: given that Plaintiff could have secured full Song-Beverly relief early in the litigation but continued litigating for two more years, the plain purpose much of this litigation—and the fees incurred thereby—was to pursue greater damages from the ultimately-failed fraud claims, which would not have entitled Plaintiff to attorneys' fees even had he prevailed. However, the Court will account for this in its analysis of what a reasonable fee award is, not its analysis of

whether Plaintiff's is entitled to fees at all.

The Court acknowledges that there are fair arguments that Plaintiff was not the prevailing party and should get no fees, and there are fair arguments that, assuming Plaintiff is the prevailing party, he should get all fees until the Rule 68 offer because the Song-Beverly and fraud claims were inextricably intertwined. However, the Court is convinced that its resolution is most equitable: it compensates counsel for their efforts to achieve relief for Plaintiff on the Song-Beverly claims, which Ford failed to provide absent a lawsuit, while also not giving Plaintiff's counsel carte blanche to litigate primarily in pursuit of fraud damages on the assumption that, win or lose on the fraud claims, any attorneys' fees they incurred would be recoverable as "inextricably intertwined" with the Song-Beverly claims. Thus the Court's resolution takes account of the facts of this case, the relationship between the two categories of claims in issue, and equitable considerations, including a desire to avoid creating perverse incentives for both sides in this MDL.

The Court next turns to calculating the fee award.

**B. The Court Awards $49,987.01 In Attorneys' Fees**

Plaintiff's fee request seeks payment for $283,841.25 incurred by Kiesel Law, LLP ("Kiesel Law"), and $102,155.00 incurred by the Knight Law Group, LLP ("Knight Law"), for a total lodestar of $385,996.25. Plaintiff also seeks a multiplier of 1.4, resulting in a fee of $540,394.75. Plaintiff also seeks $1,214.49 in costs and expenses. Plaintiff's request includes only those fees incurred until Ford's January 29, 2019 Rule 68 offer, as Plaintiff rejected that offer but did not achieve a more favorable award at trial.

Both sides filed voluminous evidence in support of their positions regarding the reasonableness of the requested hourly rates. They filed many court orders either awarding the requested rates (or close to it) or departing significantly from them, and either awarding a multiplier or not. Ford filed an expert report analyzing Plaintiff's request in detail. The Court has considered the materials and rules as follows.

**1. The Court DENIES WITHOUT PREJUDICE the Motion Insofar as it Seeks Fees Incurred by Kiesel Law.**

Although this was not set forth clearly in the moving papers, the Court clarified at oral argument that the vast majority, if not all, of the fees incurred by Kiesel Law were fees incurred in the firm's capacity as Liaison Counsel, for the common benefit of all cases (or groups of cases) in this MDL. Reviewing the 38 pages of Kiesel Law's billing records, such work includes, for example, coordinating among the MDL cases, engaging in discovery on issues common to most or all cases in the MDL, and working on motions relevant to several or many cases, not just this one. For many of the reasons state in Ford's opposition and subsequent briefing on this issue, and as discussed at oral argument and subsequent status conferences, the Court does not think that Liaison Counsel's proposed method for obtaining compensation is viable.

In brief, Liaison Counsel proposes seeking compensation for periods of work performed for the common benefit of all MDL plaintiffs via successive fees motions attached to individual successful plaintiffs. Thus, for example, Liaison Counsel seeks compensation for all such work through January 29, 2019, in the context of a fee motion in this case alone (*Pedante*), and will seek compensation for the next chunk of work (from January 29, 2019) through a fee motion in the next successful case (*Quintero*), and so forth. This approach is different from how Liaison Counsel previously explained how he would be compensated, and this new approach was unfortunately not presented in a transparent way. The Court understands the need to adjust administration of this MDL as circumstances change, but what circumstances led Liaison Counsel to seek fees in this manner is not explained.

In any event, Counsel's approach is problematic, and it is not clear that it is legally viable. For example, how can the Court conclude that all common work performed in this MDL was "reasonable" in pursuit of a single case? Likewise, a significant amount of that work was in pursuit of discovery to support fraud claims, for which attorneys' fees are not available, and none of these fees were parsed out.

Furthermore, should the plaintiffs' verdicts in any of these individual cases be vacated on appeal, then so too would the associated fee award for Liaison Counsel, even though the work was performed for the entire MDL. Liaison Counsel suggested that these problems are illusory, but none of their arguments are persuasive. As the Court indicated at the last status conference, the Court anticipates ordering the creation of a common benefit fund[4], as that approach would allow for reasonable compensation of Liaison Counsel while also avoiding questions related to parsing fees among claims and MDL member cases, and avoiding serial fee motions. Therefore, the Motion is **DENIED** insofar as it seeks fees incurred by Kiesel Law.

### 2. The Court Awards Fees of $49,987.01

Having determined that Kiesel Law's fees will not be awarded in this Order, the Court focuses on whether the fees requested by Knight Law are reasonable. Counsel did not present any breakdown or other analysis of their fees. They simply provided the billing entries, and at the end, a chart indicating how many hours were recorded by each attorney, the attorneys' hourly rate, the total hours (267.9), and the fee amount or lodestar ($102,155) requested. *See* Mikhov Decl. (Dkt. No. 70-2) Ex. A. Ford filed the Declaration of James P. Schratz ("Schratz Decl.," Dkt. No. 80-17), an attorneys' fee expert who audited all of Plaintiff's counsel's billing and recommended a total award of $23,107.46 for work from both firms.[5]

---

[4] In June 2019, Liaison Counsel filed a motion to create a common benefit fund (*see* Motion, Dkt No. 348), but counsel withdrew the motion without explanation.

[5] Plaintiffs posed 58 evidentiary objections to the Schratz Declaration, comprising 161 pages. *See* Objections (Dkt. No. 87-2). These objections are excessive and meritless. Plaintiff's counsel failed to digest and organize their billing entries in any meaningful way, they just totaled how many hours each attorney billed. Ford presented Schratz as an expert on attorneys' fees, and his report provides an audit of the fee request. The Court finds that Schratz is well-qualified for that task, and finds his analysis of Knight Law's fee request relevant, helpful, and admissible, even though the Court does not accept all of his opinions or his ultimate conclusion. Plaintiff's evidentiary objections are therefore overruled to the extent the Court's order reflects consideration of the objected-to materials, but are otherwise denied as moot. The Court did not consider the Weill Declaration (Dkt. No. 80-16), so the objections thereto are denied as moot.

11.

### a. Hourly Rate and Adjusted Lodestar

The Court first determines counsel's reasonable hourly rates. The Court has reviewed the excerpts of the 2019 United States Consumer Law Attorney Fee Survey reflecting rates from 2017-2018 (*see* Mikhov Decl. Ex. G), the excerpts of the 2016 Real Rate Report (*see* Schratz Decl. Ex. 14), the Schratz Declaration, and the numerous court orders the parties filed, and has considered the authorities cited in the memoranda. Having considered all of these materials, and given the Court's awareness of rates in this locality, the Court finds that Knight Law's requested hourly rates are somewhat inflated and adjusts them as follows, based largely on the practice area (consumer law, automobiles), the nature of this case, and the size of the firm. The below chart reflects the hours billed by each attorney, the requested hourly rates for each attorney, Plaintiff's lodestar derived therefrom, the adjusted hourly rates that the Court finds reasonable, and the adjusted lodestar derived therefrom.

| Attorney (Initials) | Position | Admitted | Hours | Requested Rate | Plaintiff's Lodestar | Adjusted Rate | Adjusted Lodestar |
|---|---|---|---|---|---|---|---|
| Steve Mikhov (SBM) | Partner | 2003 | 2.2 | $ 550.00 | $ 1,210.00 | $ 450.00 | $ 990.00 |
| Roger Kirnos (RK) | Partner | 2012 | 27.5 | $ 425.00 | $ 11,687.50 | $ 375.00 | $ 10,312.50 |
| Russell Higgins | Associate | 2003 | 86.7 | $ 450.00 | $ 39,015.00 | $ 375.00 | $ 32,512.50 |
| Lauren Ungs (LAU) | Partner | 2010 | 6.7 | $ 425.00 | $ 2,847.50 | $ 375.00 | $ 2,512.50 |
| Amy Morse (ALM) | Partner | 2013 | 3.3 | $ 350.00 | $ 1,155.00 | $ 350.00 | $ 1,155.00 |
| Kristina Stephenson-Cheary (KSC) | Unstated | 2008 | 15.2 | $ 375.00 | $ 5,700.00 | $ 375.00 | $ 5,700.00 |
| Mitch Rosensweig (MER) | Associate | 2013 | 106 | $ 325.00 | $ 34,450.00 | $ 255.00 | $ 27,030.00 |
| Maite Colon (MC) | Associate | 2012 | 20.3 | $ 300.00 | $ 6,090.00 | $ 250.00 | $ 5,075.00 |
| TOTALS | | | 267.9 | | $ 102,155.00 | | $ 85,287.50 |

The lodestar based on Knight Law's hours billed multiplied by the adjusted hourly rates is therefore **$85,287.50.**

### b. Hours Reasonably Expended

The Court next considers the hours reasonably expended, and will further adjust the adjusted lodestar accordingly. As stated, Plaintiff did not present any categorization or breakdown of the fees other than to show how many hours were

12.

billed by each attorney. The Schratz Declaration, filed by Ford, assesses the billing entries and opines as to their reasonableness. Upon consideration of the Schratz Declaration, the briefing, and Knight Law's billing entries, the Court assesses the reasonableness of the fees as follows.[6]

Some of Knight Law's billing entries pertain to work performed for the MDL as a whole or on behalf of groups of others cases, not just *Pedante*. Most obvious, Knight Law seeks payment for 60.9 hours worked in connection with the test motions for remand. *See* Schratz Decl. ¶ 103, Ex. 26. *Pedante* was not among the cases involved in the test motions for remand, so none of these fees were incurred in this case, and the Court will exclude them from this request. According to the auditor's calculations, such work amounts to $20,317.50 of billings (*see* Schratz Decl. Ex. 26), which is 19.89% of Knight Law's requested lodestar ($102,155). Accordingly, the Court will reduce the adjusted lodestar ($85,287.50) by 19.89% (that is, **$16,963.68**).

Many hours were expended on inter- and intra-office communications. According to the auditor, Knight Law billed 44.9 hours to such tasks, amounting to $18,180 in billings *(see* Schratz Decl. ¶ 91, Ex. 23), which is 17.8% of Knight Law's requested lodestar ($102,155). Although some such communication is necessary in any litigation, and perhaps more of it is necessary for cases subsumed in an MDL than for stand-alone cases, the Court finds that this is excessive and duplicative, so the Court will reduce the adjusted lodestar ($85,287.50) by 8% (that is, **$6,823**) to avoid compensating counsel for excessive inter-counsel communications.

The Court declines to eliminate so-called "transient billers" from the request (*see* Schratz Decl. ¶ 81), given that the fee request necessarily cuts off entries after January 29, 2019, and the Court is not convinced that a reduction for such billers is

---

[6] Any future memoranda on fees motions should at least summarize the primary findings of audits such as Mr. Schratz's instead of directing the Court to the declaration in its entirety. Likewise, Plaintiffs should present the numbers relating to their fee requests in their memoranda, in a user-friendly way, such as by using tables.

13.

necessary in this case. The Court also declines to eliminate charges for "vague entries" (*see* Schratz Decl. ¶¶ 95-100, Ex. 24), as those the auditor identifies appear to be attributable to Kiesel Law only, not to Knight Law.

The Court now turns to reductions to account for work spent on fraud claims. As stated above in the prevailing party analysis, Plaintiff and/or his counsel were largely motivated by their pursuit of the fraud claims and the attendant prospect of greater damages, and this calls into question whether the fees incurred after Ford's October 2017 settlement offer were "reasonably incurred" in connection with the Song-Beverly claim. On the other hand, Ford did have the ability to cap Plaintiff's ability to secure fees through a Rule 68 offer, which Ford made on January 29, 2019 but could have made earlier. Furthermore, the Court is mindful of the Ninth Circuit's analysis of a similar issue in *Berkla v. Corel Corp.*, where it concluded that "absent a Rule 68 offer of judgment, a plaintiff's failure to accept a settlement offer that turns out to be less than the amount recovered at trial is not a legitimate basis for denying an award of costs" or reducing costs, and "[t]o hold otherwise would render Rule 68 largely meaningless." *Berkla*, 302 F.3d 909, 922 (9th Cir. 2002).[7] Therefore, ultimately, the Court will not reduce this fee request to account for its conclusion that Plaintiff's post-October 2017 litigation was largely motivated by the fraud claims.

Although the Court will not impose an overall fee reduction on the ground that, realistically, most of the fees were incurred in pursuit of the fraud claims, the Court

---

[7] This discussion concerned an awarded of costs under Rule 68. The Court notes, however, the *Berkla* Court's reference to *Meister v. Regents of the Univ.*, 67 Cal.App.4th 437 (1998), which declined to apply the above-referenced reasoning regarding Rule 68 to the analogous question under California law. The *Meister* Court instead determined that, unlike federal law, California law *does not* prevent "a trial court from considering a non-statutory settlement offer in determining the amount of a reasonable attorney's fee award." *Berkla*, 302 F.3d at 922 (*citing Meister*, at 452). But, Ford has not addressed this particular aspect of California fee-award law, nor is it perfectly clear that it would apply to this case. And the Court will not pursue this issue in the absence of meaningful briefing from the parties on it, so the Court adheres to the reasoning in *Berkla*.

14.

considers whether the fees should nevertheless be parsed between those incurred for Song-Beverly claims and those incurred for fraud claims. "When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action," unless the issues are common or "the liability issues are so interrelated that it would have been impossible to separate them . . ." *Akins v. Enterprise Rent-A-Car Co. of San Francisco*, 79 Cal. App. 4th 1127, 1133 (2000). Plaintiff has not parsed the fees, arguing that these claims were inextricably intertwined such that parsing them is neither required nor practicable.

The Court is not persuaded that these claims are fully inextricably intertwined. For example, expansive discovery into Ford's internal records relating to the alleged DPS6 defects is relevant to the fraud claims, but is arguably unreasonable overkill for Song-Beverly claims. And fraud and Song-Beverly claims both raise complicated legal issues, but different ones that call for distinct legal research and distinct briefing. Thus, to the extent parsing can be performed, it will be required. In this case, there is at least one obvious and substantial task to parse: Plaintiff seeks a total of $16,167.60 in fees for 47.9 hours spent preparing his opposition to Ford's Motion for Judgment on the Pleadings. This comprises 15.8% of Plaintiff's original lodestar request ($102,155). The Court has reviewed the papers on that motion, and the vast majority concerns the fraud claims: of the 16 substantive pages of Plaintiff's opposition memorandum, only 2 pages (or 12.5% of the entire memorandum) pertain to his Song-Beverly express warranty claim, and the rest pertain to his fraud claims. To avoid improperly compensating Plaintiff's counsel for this fraud-related work, the Court will award Plaintiff only 13% of the fees he incurred opposing the motion for judgment on the pleadings. This translates into an 87% reduction of that block of fees, or a 13.7% deduction of the lodestar amount (87% of 15.8% = 13.7%). The Court does not discern any other tasks that so obviously lend themselves to parsing between the Song-Beverly claims and the fraud claims, so the Court will make no further parsing-

15.

related deductions.[8] Thus, the adjusted lodestar ($85,287.50) will be reduced by 13.7% (**$11,513.81**) to account for non-compensable work on fraud claims.

Therefore, the adjusted lodestar with unreasonable fees deducted is as follows:

| | |
|---|---:|
| Adjusted Lodestar Based on Adjusted Hourly Rates | $85,287.50 |
| *Minus* Hours Billed for Remand Motions (-19.89%) | - $16,963.68 |
| *Minus* Excessive Intra/Interoffice Communications (-8%) | - $6,823.00 |
| *Minus* Deduction for Fraud-Related Work (-13.7%) | - $11,513.81 |
| **FINAL LODESTAR** | **$49,987.01** |

### c. The Court Declines to Apply a Multiplier

Finally, the Court considers whether to apply a multiplier. None of the *Ketchum* factors favors applying a multiplier. The Song-Beverly claims in this case were not novel and did not involve difficult questions. The skill displayed presenting them is accounted for in counsel's hourly rates. This litigation did not preclude Plaintiff's counsel from seeking other employment, as they have about 200 other similar cases in this MDL and many other non-MDL Song-Beverly cases pending simultaneously. Finally, the Court discerns little risk in taking this case, as Plaintiff's case was especially strong and Song-Beverly's fee shifting provision eliminated uncertainty about whether costs and fees would be awarded. Plaintiff argues that the additional uncompensated work undertaken after Ford's January 2019 Rule 68 offer warrants a multiplier, but that would undermine the settlement-encouraging purpose of Rule 68, which the Court will not do.

In sum, the Court finds that the above-calculated and presumptively-reasonable lodestar ($49,987.01) reflects a reasonable fee for the compensable work performed in this case, and none of the *Ketchum* factors weighs in favor of a multiplier.

---

[8] But the Court admonishes Plaintiff's counsel that future fee requests must parse the fraud claims from the Song-Beverly claims where practicable. If the moving party fails to do this, the Court may deny the fee request altogether.

**C. The Court Awards $1,214.49 in Costs and Expenses**

Plaintiff also seeks $1,214.49 in costs and expenses pursuant to the Act. Ford did not oppose this part of the Motion, so the Court deems these amounts consented to, and will therefore grant the requested $1,214.49 in costs and expenses.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees and Costs is **GRANTED in part and DENIED in part**.

Plaintiff is awarded $49,987.01 in attorneys' fees for work performed by Knight Law, and $1,214.49 in costs and expenses, to be paid withing 30 days of the issuance of this Order.

Insofar as the Motion seeks an award of fees for work performed by Kiesel Law, it is **DENIED**.

**IT IS SO ORDERED**.

Dated:  August 13, 2020   _____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

17.