Paul R. Kiesel (SBN 119854)
*kiesel@kiesel.law*
Stephanie M. Taft (SBN 311599)
*taft@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

*Lead/Liaison Counsel for Plaintiffs*

Spencer P. Hugret (SBN 240424)
*shugret@grsm.com*
Amy Maclear (SBN 215638)
*amaclear@grsm.com*
**GORDON REES SCULLY MANSUKHANI LLP**
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054

Frank P. Kelly III (SBN 83473)
*fkelly@shb.com*
Amir M. Nassihi (SBN 235936)
*anassihi@shb.com*
Andrew L. Chang (SBN 222309)
*achang@shb.com*
**SHOOK HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415-544-1900
Fax: 415-391-0281

*Lead Counsel for Defendant*
Ford Motor Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

*ALL CASES*

**Case No. 2:18-ml-02814-AB-PVC**

Assigned to: Judge Andre Birotte, Jr.
Courtroom 7B

**JOINT STATUS CONFERENCE STATEMENT**

Date: June 18, 2021
Time: 11:00 a.m.
Courtroom: 7B

The parties submit this Status Conference Statement in connection with the June 18, 2021 status conference.

Pursuant to this Court's Order granting a status conference (Dkt. No. 1126), Lead Counsel identifies below the matters they seek to raise at the June 18, 2021 status conference.

## I. Plaintiffs' Positions on Common Issues

### A. Releasing Additional Cases to the IDP and Allowing Case-Specific Discovery to Proceed in Stayed Cases

On November 2, 2018, this Court released 30 cases from the discovery stay and into the Initial Disposition Pool ("IDP") where both common and case specific discovery could proceed. (Dkt. No. 136.) Since then, two cases have been tried and gone to verdict, fifteen of CLR's IDP cases were dismissed with prejudice and subsequently settled with Ford, and two of Knight's remaining IDP cases have settled. Currently, eleven cases remain in the IDP.

Since the initial disposition pool was formed, hundreds of cases have remained on a stay where no case specific discovery has proceeded. With each passing day, these stayed plaintiffs are prejudiced by their inability to subpoena case specific records from third parties. For example, automotive dealers are only required to keep and maintain invoices, estimates, and all records with a consumer (such as emails and texts) created to obtain the customer's authorization, for three years. Similarly, all work orders and records supplementing the work order to obtain additional authorization from the customer, need only be maintained by dealers for three years. B&P §9884.11; *See also* https://www.bar.ca.gov/pdf/writeitright.pdf. Many of the currently stayed cases in this MDL have been stayed since November 2018, and were filed long before that date. These plaintiffs must be given access to the discovery process.

This forms the basis for both of Lead Counsel's forthcoming requests: to

release at least 19 additional cases into the IDP[1], and to allow those 19 cases, and all other currently stayed and newly added cases to proceed with case-specific discovery. This would minimize the amount of prejudice that each plaintiff continues to endure with each passing year, as memories fade and as dealers undergo new management. These plaintiffs have a right to litigate their cases, free from excessive delay. Opening case-specific discovery would present zero risk of prejudice to Ford since there would be no duplication among the plaintiffs. These plaintiffs need access to the justice system, and with case specific discovery halted, they are not getting that much deserved access.

There are several major benefits that would result from releasing all cases from their case specific discovery stay. First, Ford would be able to learn about the number of repair opportunities that each plaintiff has had or the number of times that a plaintiff has tried fixing their vehicle. As we have seen from *Pedante* and *Quintero*, these questions are key to Ford admitting liability under Song Beverly, and resolving these factual disputes will actually give Ford an incentive to make reasonable settlement offers. Second, it will alleviate the concern that many plaintiffs have regarding spoliation of evidence by dealerships around the state, many of which are not privy to the holding pattern that buyers have been placed in within this MDL. Third, allowing case specific discovery to proceed would expedite settlement. In the current scheme, only cases released into the IDP get to engage in case specific discovery. After that, what realistically happens is that the cases wait for years – close to a trial setting date – before there are reasonable and meaningful settlement negotiations. This largely stems from the fact that Ford, as it has informally stated in past conversations, needs to learn about the case and acquire the plaintiff's sworn testimony. By allowing each firm to begin that process now, future cases released into the IDP can be immediately

[1] This Court should allow Lead Counsel to confer among the remaining firms to decide which cases would be best suited to be released to the IDP.

set for trial. This will allow more cases to resolve on a rolling basis and to have a reasonable prospect of settling in less than a few years. Plaintiffs who remain on a stay have very little ability to make demands or accept offers because they are unable to discover the true value of their claims under the Song Beverly Act.Ford will not suffer any prejudice by this request. According to Ford's most recent master case list, there are currently over 30 firms with active cases in this MDL, not including Knight Law. Approximately 20 of these law firms are the ***same firms*** that had stayed cases in June and July of 2020. About 20 different firms have, therefore, had cases stayed for over one year, with no progress whatsoever. Currently, stayed plaintiffs have no evidence in support of their own claims, which severely limits any real prospect of settlement. This pattern cannot continue.

### B. Reopening Common Discovery

It was never this Court's intention to keep common discovery closed. Indeed, this concept was discussed in early 2019 during a hearing with this Court, where Lead Counsel expressed the concern about completing MDL-wide "common" discovery during a three-month period. In doing so, this Court acknowledged that common discovery was *not* officially closed, and that the relevant deadlines applied only to the initial 30 IDP cases:

> MR. KIESEL: The only exception, just to make sure the record is clear, is, if there are witnesses that, for example, we cannot schedule between now and May 29th that we know are common discovery witnesses…I anticipate taking those depositions on a different set of IDP cases, but they will be common discovery issues, just not on the first 30 cases. But they will not be the same witness. They will be different witnesses.
>
> **THE COURT: Okay. All right**.
>
> …
>
> MR. KIESEL: Is it the Court's view -- so I'm clear here -- that once we hit June 1st [2020], that in terms of the MDL, absent extraordinary circumstances, all of the common discovery in the MDL … is over, that's my date, and we're done?

**THE COURT: No.**

(March 6, 2019 Hrg. Trns., p. 87: 6-15; p. 88: lns. 19-25.)

Accordingly, Lead Counsel requests that, upon adding new cases to the IDP, that common discovery be reopened to allow additional common issues to be resolved and new depositions to proceed. Lead Counsel will work with the individual plaintiff's firms to determine what set of common depositions or written discovery might help resolve their individual, particularized issues, and to determine which common discovery should be taken in order to avoid a flood of new discovery, which is not Lead Counsel's intent. For instance, Lead Counsel is aware that Ford has not yet produced accident/injury data in its possession (last claiming privilege as to many of these documents), documents relating to global warranty spending in certain years, and has attempted to prevent depositions of Ford's automotive safety officers. Additionally, there were several 30(b)(6) deponents who were produced in 2019, who Plaintiffs would argue were inappropriate and lacked knowledge about the categories they were produced on. In light of the rapid discovery cut off deadlines in 2019, and the number of disputes that needed to be resolved with Ford at every turn, Lead Counsel and other plaintiff's firms simply did not have the manpower or ability to follow up on every loose end. Additionally, it would be patently unfair to only allow five or six months' worth of common discovery for an entire MDL – particularly where the federal deadlines to compel certain discovery is so lengthy. Generally speaking, discovery periods in MDL's typically last for years before the bellwether trials proceed. Common discovery must be allowed to proceed for the remaining cases in this MDL too.

Finally, it should be noted that Lead Counsel does intend to allow individual plaintiff's firms to participate in the common discovery process for their own cases, so long as the common discovery is non-duplicative. Not only is this delegation ability inherent in Lead Counsel's powers, but it will help minimize Ford's argument about overlap in work. This Court has already recognized Lead Counsel's ability and power

to delegate out non-duplicative "common" work to other plaintiff's firms:

> MR. NASSIHI: One of the -- just to address a couple of the comments very briefly, the -- one of the goals of an MDL is to appoint counsel who will efficiently and effectively move the litigation forward. We've read the appointment order… differently in terms of the section saying that delegation of the global discovery role, delegation of some kind of significant role like that needs to be vetted by the Court, authorized by the Court…
>
> THE COURT: Hold on. Look. **If he's raising an issue that is not duplicative, he gets to do it. I don't have -- I don't have to agree with it, but I don't think there's** anything **that authorizes me from -- anything in the order that suggests he can't do it**.

(Apr. 12, 2019 Tr., 53: 8-19, 54: 12- 16.)

This Court's statement was correct and is also consistent with prevailing case law which allows for the same.

### C. Ford's Identification of Cases it Seeks to Dismiss Per *Vargas*

During the December 8, 2020 hearing with this Court, Ford represented that "there are cases that are subject to the order to show cause issued in the Vargas class action." (Dec. 8, 2020 Hrg. Trns., p. 14: 3-4.) At the same hearing, Mr. Hugret also stated the following:

> MR. HUGRET: Just keep in mind, Your Honor, a lot of these firms also have OSC responses that we're working through that have come in for the Vargas order. So we have to rectify the responses with the current status of the case and see what's left in terms of whether resolution is reached or the cases should be dismissed.

*Id*. p. 16: 12-17.

Presently, Lead Counsel has no understanding of whether there are still stayed cases in this MDL which Ford will seek to dismiss for failing to opt-out of *Vargas*. If there are such cases, it is not fair for those cases to continue to sit at a standstill only

to be dismissed in the forthcoming years. Lead Counsel therefore requests that Ford produce a list to Lead Counsel and to this Court identifying which cases it will seek dismissal on for failure to opt-out, so that those issues can be resolved now instead of months or years down the line.

## II. Ford's Combined Response to Plaintiffs' Multiple Positions on Common Issues

As ordered by this court, prior to submission of this Joint Status Report, Lead Counsel for Ford met and conferred with Lead Counsel for Plaintiffs regarding each of the topics identified above. With regard to cases which Plaintiff Lead Counsel may seek to add to the IDP set, Ford's counsel inquired which individual Plaintiffs wished to have their cases added to the IDP and, more specifically, which Plaintiffs wish to engage in case specific discovery for fear that information related to their cases may be lost. Plaintiff Lead Counsel was unable to identify any specific Plaintiff or other Plaintiffs' counsel who have raised any such concern. The same goes for the apparent concern that discovery is necessary to "give Ford an incentive to make reasonable settlement offers." Again, Plaintiff Lead Counsel could not identify any specific Plaintiff or their counsel, outside of KLG, who have raised this particular issue.[2]

Ford has not been made aware of any other Plaintiffs or their counsel who are concerned with the pace of settlement Ford has, and continues to, engage in, in both pending and newly filed cases. Ford has also not been informed of any specific Plaintiffs or their counsel, other than KLG, that have any of the concerns that Plaintiff Lead Counsel raises.

---

[2] Nor for that matter is Plaintiffs' rendition of the historical cases and settlements accurate. For example, *Pedante* and *Quintero* did not proceed as described in Plaintiff's portion of this Report and, more importantly, it is public record that the settlement offers Ford made early in each case were far more than what any verdict could have ultimately been. For that matter, Ford has attempted to work with Lead Counsel on settlement protocols to facilitate settlement processes but, with the exception of KLG cases, Lead Counsel directed Ford to work with individual Plaintiff counsel directly. Ford has been doing so, and resolutions continue at a steady pace.

Notwithstanding, Ford is of course willing to continue to discuss and consider each of these issues if and when Plaintiffs who actually have these concerns are identified. Indeed, in the regular communications Ford continues to have with Plaintiff attorneys, not a single one has raised any issues.

With regard to reopening common discovery, Ford notes that Plaintiff Lead Counsel previously advised this Court at the December 8, 2020 status conference that common discovery was essentially completed. For the same reason, Plaintiff Lead Counsel have withdrawn from the JCCP North. Nevertheless, during the meet and confer Ford asked Plaintiff Lead Counsel to identify specific common discovery issues which need to be addressed but Plaintiff Lead Counsel was unable to identify any. Ford also asked Lead Counsel to identify any deposition or discovery issues that they believed remain open or had issues related to them and, again, they were not able to identify any. They noted they would do so at a future point and discuss those with Ford. Again, Ford notes it is premature to talk in the abstract about unidentified issues that the parties have not discussed.

Additionally, while Lead Counsel have cited to several transcript excerpts in support of their position that common discovery is not closed, Ford notes that each excerpt has been taken out of context. Similarly, the quotes about delegating work to other firms is incorrect.[3]

---

[3] Lead Counsel's over-extensive comments about their ability to delegate common discovery work is a non sequitur to this joint report and wholly unnecessary. Ford will address it briefly, nonetheless, because Lead Counsel is attempting to reargue issues related to this Court's tentative ruling on the submitted fee motions. This Court had made clear that authorization is needed to engage in common benefit work and Kiesel Law had also separately committed that it would ask for authorization to add firms for common work assistance. ECF No. 25 at 2(c) (noting "authorization."); *see also*, 4/18/18 Tr. at 7:11-7:18 (Lead Counsel agreeing it would get Court approval for any subcommittees of other firms besides Kiesel Law to work on common issues if they end up needing multiple firms for common work). Indeed, Ford's April 2019 Motion to Clarify Role of Plaintiff Leadership was withdrawn on July 1, 2019, after Kiesel Law pledged to immediately file and pursue a Common Benefit Fee Motion so as to

Finally, Ford and Plaintiffs' Lead Counsel discussed the issue raised with respect to *Vargas*. Plaintiff Lead Counsel acknowledged that they have not actually had any discussions with any specific Plaintiff counsel and were not aware of the status of resolution of those *Vargas* issues. To the extent Plaintiff Lead Counsel faults Ford for this, Ford did attempt to work with Lead Counsel on this issue several times in 2020, but each time Plaintiff Lead Counsel advised Ford to work directly with the individual Plaintiff attorneys in this MDL on any non-KLG issue.

Ford remains open and willing to further discussion of these issues with Plaintiffs' Lead Counsel and the Court.

## III. Plaintiffs' Brief Reply to Ford's Position Statement

Lead Counsel will identify and provide this Court with a list of cases that can be added to the IDP as soon as this Court authorizes 19 cases to be added. As to the common discovery issue, Lead Counsel advised that the majority of its work had been completed – Lead Counsel never stated that common discovery was over. (*See*, *supra*, March 6, 2019 Hrg. Trns, pp. 3- 4.) Once common discovery is reopened, following this Court's acknowledgment at the March 6, 2019 status conference, Lead Counsel can certainly provide Ford an anticipated list of "common" issues that the remaining stayed plaintiff's firms seek to resolve. Finally, with respect to *Vargas*, Lead Counsel does not need to identify a list of Plaintiffs that did not opt out. Lead Counsel is not involved in that class action: Ford is. If Ford intends to dismiss a case in this MDL based on the plaintiff's purported failure to opt out of the class action settlement, there is no reason it cannot identify those cases now to streamline the dismissal process and to avoid prejudice.

If Ford truly wants these cases to settle, it should not oppose Lead Counsel's

---

address issues related to common benefit work. *See* ECF 349 (stipulation noting parties agreed that issues related to Ford's Motion Clarifying Role of Plaintiff Leadership would be "resolved by way of a Plaintiffs' Motion Establishing a Common Benefit Order").

efforts to allow these plaintiffs, who've been on a lengthy stay, to conduct discovery. It should not oppose the right for each plaintiff to give timely deposition testimony and to seek subpoenas or depositions from third parties. Ford should not oppose each plaintiffs' effort to ascertain the nature and value of their own individual Song Beverly claims and to have equal and expedient access to justice.

## IV. Proposed Attorney Fee, Cost and Expenses Protocol as to Knight Law Group

Pursuant to this Court's Order with regard to the anticipated motions for attorney fees, costs and expenses in *Wirth v. Ford Motor* Company matter (Dkt. No. 1125) and this Court's comments during the May 7, 2021 hearing on the *Bagwell/Fort* fee and costs/expenses motions, the Knight Law Plaintiffs have reviewed Judge Fischer's 2021 Fee Order and conferred with Ford's counsel. The parameters of the streamlined process continue to be discussed. The Knight Law Plaintiffs propose the following approach for purposes of the *Wirth* fee motion:

- All written and oral communications involved in the meeting and conferring with regard to the substance of the invoices, i.e. negotiations and potential compromises, be kept confidential and not subject to disclosure to the Court or other parties;
- In pursuit of recovery of attorney fees, costs and/or expenses, the Wirths will submit their invoices for attorney fees as well as a spreadsheet summarizing the costs and expenses to be sought;
- Ford will provide its objections, if any, to any of the tasks or costs by adding a column. Ford will support its objections with citations legal authority and references to evidence, which will be provided upon request. For categories of tasks to which Ford objects, Ford will provide its attorneys' invoices for the corresponding task or category of tasks to provide two-sided transparency to the effort to resolve disputes rather than leaving the Wirths with inferior information to assess Ford's objections;

- The parties shall thereafter meet and confer to determine whether any of the objections can be resolved;
- The Wirths will, if necessary, file motions for attorney fees, costs and/or expenses attaching as Exhibit A the product of the parties meet and confer efforts clearly identifying which entries are and are not in dispute and the total sums of the undisputed and disputed items;
- Exhibit A to the attorney fee motion will include a summary indicating the name of each biller, the hourly rate of that biller, and the time incurred by that biller;

During the conferral about proposed protocol, Ford indicated its willingness to stipulate that costs and expenses are governed by Civil Code 1794, rather than federal rules. Ford will also consider stipulating that the Wirths are prevailing parties. Ford was unable to determine at the time of the conference whether it intends to use a fee expert in defense of the *Wirth* motions, which would affect the above proposal.

The parties also discussed and contemplate continuing the deadline to file the *Wirth* motions to afford the Court time and opportunity to address the pending fee motions before the Court and to afford the parties adequate time to execute the above process, or version thereof. The parties also wish to hear the Court's preferences.

## V. Ford's Position About Case-Specific Attorneys' Fees, Cost and Expense Recovery Protocol

On June 10, 2021, Counsel for Ford and KLG commenced conferral efforts about a protocol for *Wirth* case fee motion per the Court's directive. This was the first of what Ford anticipates will be several conferral sessions before a mutually agreed upon approach is memorialized and provided to the Court for comment and approval. Given the time frame anticipated, Ford agreed to KLG's second request to extend the *Wirth* case fee motion filing deadline and associated briefing. Ford does not agree that the Court must first issue a ruling in the *Fort* and *Bagwell* cases before the protocol

can be finalized. Indeed, Ford understood from the Court that the process ultimately agreed upon by the parties would be implemented for all the cases pending in the MDL where a case-specific motion for fees and costs was needed, including the case-specific fee motions filed in the *Fort* and *Bagwell* cases. Plaintiffs' Liaison Counsel did not participate in the June 10, 2021.

While some of the issues described above in Section V were raised and discussed, there was no agreement reached and there was nothing in writing provided for Ford's review until the afternoon of June 11, 2021 just a few hours before this status conference was due. There are numerous other issues and processes in need of vetting and conferral. Ford foresees the conferral process for a streamlined approach to continue and that the parties will ideally present a joint proposal to the Court. If an agreement cannot be reached, Ford and Plaintiffs can present competing proposals for the Court's consideration by August 15, 2021.

## VI. KLG Planned Motion for Remand

The parties have had an initial conference wherein Knight Law informed Ford's counsel of its intent to request from the Court an opportunity to file one or more motions for remand. These motions, or one test motion involving a similarly situated group of cases, would address, among other issues, the lack of sufficient Amount in Controversy. For example, a case like *Quintero v. Ford Motor Company*, if reviewed on an individual basis or considered as a representative of other cases with similar damages, would not likely have been properly removed to federal court. Knight Law is in the process of auditing case files.

Plaintiffs intend to have a formal conference with Ford's counsel pursuant to Local Rule 7-3.

DATED: June 11, 2021

Respectfully submitted,

**KIESEL LAW LLP**

By: */s/ Stephanie M. Taft*
Paul R. Kiesel
Stephanie M. Taft

*Liaison Counsel for Plaintiffs*

DATED: June 11, 2021

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ Amy Maclear*
Spencer Hugret
Amy Maclear

**SHOOK HARDY BACON L.L.P.**
Frank P. Kelly III
Amir M. Nassihi
Andrew L. Chang

*Co-Lead Counsel for Defendant Ford Motor Company*

**CERTIFICATE OF SERVICE**

*In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*

USDC, Central District of California Case No. 2:18-ml-02814-AB-PVC

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 275 Battery Street, 20th Floor, San Francisco CA 94111.

On the date set forth below, I served on the party listed below the foregoing document(s) described as:

**JOINT STATUS CONFERENCE STATEMENT**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **June 11, 2021**, at San Francisco, California.

*/s/ Maria T. San Juan*

Maria T. San Juan