Paul R. Kiesel (SBN 119854)
 kiesel@kiesel.law
Stephanie M. Taft (SBN 311599)
 taft@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel:  310-854-4444
Fax:  310-854-0812

*Lead/Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>**ALL CASES** | **Case No. 2:18-ML-02814-AB (PVCx)**<br><br>Assigned to: Judge Andre Birotte, Jr.<br>Courtroom 7B<br><br>**PLAINTIFFS' STATUS REPORT**<br><br>Date:  July 28, 2021<br>Time:  10:00 a.m.<br>Crtrm: 7B |

Plaintiffs hereby submit the Status Report pursuant to the Court's Minute Order (*See* Dkt. No. 1144).

During the status conference on June 25, 2021, this Court requested that Lead Counsel generally specify the common discovery and case specific discovery that all plaintiffs seek, as well as how each firm will recover fees. This Court did not order any further meet and confer efforts as to these issues, but rather for Lead Counsel to generally address the remaining discovery to be conducted.

/ / /

/ / /

00594443-2

## I. PLAINTIFF'S FIRMS WITH ACTIVE CASES

In June 2021, Ford's Master Case List revealed 24 Plaintiff's firms with active cases in this MDL. Upon preparing this status report, Lead Counsel has learned that at least seven (7) firms are either actively engaged in settlement discussions or have recently dismissed their cases. Thus, for purposes of this filing, Lead Counsel has endeavored to confer with the 17 remaining firms as to the nature and scope of discovery that they seek to conduct, although not all firms have been responsive to Lead Counsel's efforts. However, this Status Report does provide a comprehensive understanding as to what all firms, including future firms added to the MDL, will need to accomplish.

## II. CASE SPECIFIC DISCOVERY

The most pressing need in this MDL is for each remaining plaintiff firm to have the access and ability to perform case specific work so that their cases have a meaningful opportunity of resolving. As discussed in the last Joint Report (Dkt. No. 1138), with each passing day, the stayed plaintiffs lose their ability to access key evidence to support their claims since dealerships are only required to maintain certain documents for a maximum of three years, including, but not limited to, work orders, records supplementing work orders, invoices, and estimates. The significance of this cannot be understated; Ford is incurring a *substantial* windfall as these cases continue to be on a discovery stay – which has now been in place for more than three years.

In short, the case specific discovery that each firms seeks includes obtaining necessary documents to learn about the nature and scope of their own clients' repairs, obtaining policy and database documents, having their plaintiffs deposed, and having vehicles inspected by experts from both sides. The following case-specific discovery that generally needs to be done includes the following:

- Document and deposition subpoenas of the selling and repairing dealerships and their service advisors, technicians or managers

regarding the sales of the vehicles and the repairs/notes on each plaintiff's defective vehicles.

- Document and deposition subpoenas of certain dealership's policies and actual practices for creating repair orders and performing repairs for DPS6 issues.

- Documents relating to each plaintiff's vehicle regarding:
  (1) the VIN FSA Details;
  (2) the warranty claim history from Ford's Global System for Analysis and Reporting ("GSAR");
  (3) the OASIS information for the specific vehicle;
  (4) the factory invoice and Vehicle Information Report;
  (5) the AWS Claims List Report;
  (6) communications set forth in Ford's Global Common Quality Indicator System ("GCQIS");
  (7) all communications received through Ford's Global Contact Center Technology ("GCCT") application;
  (8) the GUDB Repair Orders Details by VIN;

- From the repairing/selling dealerships, for each vehicle/client:

  (1) All versions of repair orders, including hard copies with mechanics notes;
  (2) All work orders;
  (3) Printouts of all screens in their CSM/CRM software relating to the Plaintiffs/vehicles;
  (4) Any other file that is known to become relevant as it relates to Plaintiff's individual vehicle or its repairs;

- Ford's person(s) most qualified on areas such as buyback policy categories, technical categories, and any other individuals who may have information regarding Plaintiff's claims.

- Written discovery to Ford regarding the repair invoices, recalls and service bulletins, or Ford's denial of a repurchase or replacement of Plaintiff's vehicle.

- Discovery warranty spending on a subject vehicle and warranty spending on the same or similar issues in like vehicles.

- Information relating to any of Ford's affirmative defenses.

- Discovery on any other specific facts necessary to prove the plaintiff's claims under their respective state law (e.g., in the case of *Mark Hemza v. Ford Motor Company*, Mr. Hemza's claims are based, in part, on Hawaii Revised Statutes (HRS) 480-2 for Ford's failure to timely pay an underlying lemon law judgment against them.)

The above enumerated discovery is typical and necessary for *both* sides, and has been done in each case so far. It is especially important where Ford will not admit liability under the Song Beverly Act or corresponding violations under other State codes.

If the Court will not open case specific discovery for all firms, then at the very least, 20 new cases need to be released into the Initial Disposition Pool per Scheduling Order No. 1 which mandates a replacement case to be *promptly* identified when any IDP case is "dismissed, remanded, transferred from this Court, or otherwise resolved or dismissed." (Dkt. No. 136) Although Lead Counsel recognizes that the unprecedented shutdown in 2020 delayed the identification and selection of replacement cases, there is no reason to continue delaying this effort now and Plaintiffs are within their right to replace the IDP with 20 new cases.

### III.   COMMON DISCOVERY

Since the Parties are within their right to add 20 new cases to the IDP per Scheduling Order No. 1, Plaintiffs are within their right to have common discovery re opened.

> **MR. KIESEL:** Is it the Court's view -- so I'm clear here -- that once we hit June 1st [2019], that in terms of the MDL, absent extraordinary circumstances, all of the common discovery in the MDL…is over, that's my date, and we're done?
>
> **THE COURT: No.**

(March 6, 2019 Hrg. Trns., p. 87: 6-15; p. 88: lns. 19-25.)

The common discovery that Plaintiffs have the right to perform includes

completing discovery that Ford objected to, and which Plaintiffs did not have sufficient opportunity to compel prior to the discovery cut off in 2019, given the lengthy meet and confer and motion deadlines imposed by the Central District Local Rule 37 *et seq*. This includes the following:

- Documents, data, and communications held by Ford's Automotive Safety Office regarding accidents and injuries caused by DPS6-equipped vehicles. These documents are relevant to the safety of the vehicles, which Ford insists are perfectly safe while refusing to produce documents in support of that defense. Establishing safety is relevant to Plaintiffs' Song-Beverly claims, and may also be relevant to the plaintiffs' fraudulent inducement claims insofar as the risk of safety could, based on this Court's prior rulings, give rise to a duty to disclose and the risk of dangerous conditions could likewise provide for an exception to the Economic Loss Rule. *See* Dkt. No. 605 (granting Ford's summary judgment motion on fraud: "*The Court has reviewed the evidence and finds that Plaintiff has not shown that there is a triable issue as to whether the leaking seals and the resulting wet clutch shudder posed a safety hazard, and as a result, Plaintiff has not shown a triable issue as to Ford's duty to disclose.*") Per the Federal Rules, <u>discovery is broad</u>, and there is *nothing* under the law that would prevent Plaintiffs from rightfully obtaining this discovery. If Ford wants to file a protective order after Plaintiffs propound this discovery, it may do so. Either way, Plaintiffs have the absolute *right* to perform discovery on these issues.

- All design changes to the DPS6 transmissions after a certain model year. This bears on Ford's knowledge as well as the reasonableness of its attempted repair procedures. For example, if Ford knew by 2016 that the DPS6 transmissions were inherently defective and could not be repaired (or susceptible to failure and couldn't be fixed), and didn't change the design, then: (1) 1-2 repair attempts would be a reasonable number of attempts since any more would be

futile; and/or (2) knowing that the transmissions were defective and hadn't been redesigned goes to a determination of Ford's bad faith in denying repurchase requests which shows that it willfully violated Song Beverly.

- All documents which evidence, describe, refer, or relate to any investigations or inquiries by any governmental agencies or entities (e.g. NHTSA, the ACCC, Transport Canada, etc.) concerning the DPS6 Transmission, which Ford never substantively responded to but instead provided links to nhtsa.gov.

- Interrogatories concerning the number of DPS6 related accidents or alleged injury incidents to have occurred in certain Focus and Fiesta vehicles, and the alleged details of those accidents as known to Ford, which Ford has refused to produce. (Ford never substantively responded to these interrogatories but rather claimed they were all privileged because they were contained in files maintained by Ford's Office of General Counsel. Ford merely referred Plaintiffs to ambiguous documents, which then ultimately stymied Plaintiffs from using any such evidence during trial on the grounds that plaintiffs could not show substantial similarity among claimed accidents.) Lead Counsel refers to this Court to the first bullet point for justification of this discovery.

- Interrogatories concerning the amount of warranty spend in the USA by Ford in certain years relating to certain defective transmission parts, which Ford has evaded answering by instead asserting that Ford does not keep track of spending in way characterized by Plaintiffs. Plaintiffs intend to serve discovery that is "characterized" in the manner by which Ford does monitor the defective part spending. These responses should not be burdensome to Ford since, Plaintiffs are informed and believe from informal communications, that Ford maintains these monetary figures in its computer systems.

- Deposition(s) of individuals in Ford's Automotive Safety Office ("ASO") to obtain information regarding, among other things, the ASO's policies and procedures regarding investigations of defects in Ford vehicles generally and

PowerShift transmission equipped vehicles specifically; documents and records created in such investigations; testing procedures and testing performed; policies and procedures for responding to consumer complaints and safety related concerns; setting internal safety standards; the development of relevant recalls and TSBs and the implementation of them to the subject Focus and Fiesta vehicles; still unproduced documents related to exchanges between Ford and NHTSA and/or the B.A.R., dealer field reports and early warning reports; compliance with TREAD. Lead Counsel refers to this Court to the first bullet point for justification of this discovery.

## IV.   RESOLVING EACH FIRM'S FEES

During the June 25, 2021 hearing, this Court reiterated its aversion to hearing a significant number of fee motions in connection with each firm's case. Lead Counsel's response to this is two-fold. First, there is simply no way to circumvent the Song Beverly Act. Lead Counsel cannot simply instruct the plaintiff attorneys that they have been stripped of their right to bring a fee motion by virtue of being transferred into this MDL, nor can this Court make such an order prohibiting such a motion given the statutory mandate for fee recovery. Each firm would have the ability and right to bring a fee motion in this Court, or in their home forums, and that right is not lost by being coordinated into an MDL. A common benefit fund is untenable since most of the work performed by each plaintiff firm (other than Knight Law) will be case specific and not for any common benefit.

Still, Lead Counsel does not anticipate that this Court will be saddled with fee motions. Ford has demonstrated its willingness to settle attorney fees, costs and expenses will all other firms with which it has settled, except for Knight Law and Lead Counsel. This is why the Court has not seen a fee motion brought by any firm in any of the hundreds of cases that have settled. Lead Counsel is informed that Ford has included payment of attorney's fees in almost all of its global settlements with

each plaintiff firm, including the Duck/Dalton plaintiffs, CLR, the California Lemon Law Group, Cline APC, The Bickel Law Firm, Valero Law and more. It is in Ford's own interest and ability to continue doing this with other plaintiff's firms upon resolution of the cases. Additionally, most of the plaintiff's firms in this MDL have not performed much, if any, work before Ford promptly removed and coordinated their cases into this MDL where they became subject to the long-lasting stay for all purposes, meaning the fees should not be substantial and can hopefully be resolved individually and upon settlement. This is the only legally sound and viable alternative to a fee motion.

As to its own fees, Lead Counsel still contends it is appropriate to be paid, as with every other firm, pursuant to a fee motion under the Song Beverly Act. There is no reason why every settling law firm in this MDL should be paid fees by Ford but not Lead Counsel. Lead Counsel maintains its positions as outlined in the fee motion submitted on November 6, 2020, for which this Court's final ruling is still pending. (Dkt. No. 1004.)

DATED: July 9, 2021                    Respectfully submitted,

**KIESEL LAW LLP**

By: /s/ Stephanie M. Taft
    Paul R. Kiesel
    Stephanie M. Taft

*Lead/Liaison Counsel for Plaintiffs*