UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | ML 18-02814 AB (FFMx) <br> CV 17-07338 AB (FFMx) | Date: | July 22, 2021 |
|---|---|---|---|

| Title: | *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.* <br> *Lorenzo Altamirano-Torres v. Ford Motor Company* |
|---|---|

Present: The Honorable   **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER **GRANTING** FORD'S MOTION TO EXCLUDE TESTIMONY OF JACK COHEN and **GRANTING IN PART AND DENYING IN PART** MOTION TO EXCLUDE TESTIMONY OF ANTHONY MICALE

Before the Court are Ford Motor Company's ("Ford") Motions to Exclude the Opinions and Testimony of Jack Cohen (Dkt. No. 1099) and Anthony Micale (Dkt. No. 1100). Plaintiff Lorenzo Altamirano-Torres ("Plaintiff") filed oppositions and Defendant filed replies. The Court heard oral argument on June 25, 2021. The Motion to Exclude Cohen is **GRANTED** and the Motion to Exclude Micale is **GRANTED IN PART and DENIED IN PART**.

   **I.   BACKGROUND**

The background of this case is set forth in the Court's Order Granting Ford's Motion for Judgment on the Pleadings (Dkt. No. 20). Plaintiff has since dismissed his claim for breach of the implied warranty under the Song-Beverly Act, so his

only remaining claim is for breach of express warranty under Song-Beverly.

Ford moves to exclude two of Plaintiff's expert witnesses on many grounds.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 states that expert opinions are admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the expert testimony is based on sufficient facts or data; (c) the testimony is the result of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael* ("*Kumho Tire*"), 526 U.S. 137, 147 (1999), quoting *Daubert v. Merrell Dow Pharm., Inc.*("*Daubert*") 509 U.S. 579, 589 (1993). That is, Rule 702 imposes a "gatekeeping" obligation on the trial court (*Daubert*, 509 U.S. at 597) to guard "the twin concerns of 'reliability' ... and 'helpfulness.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), quoting *United States v. Mitchell*, 356 F.3d 215, 234 (3d Cir. 2004). "Maintaining Daubert's standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064-65, *overruled on other grounds in Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014)

The question of reliability embodied in rule 702 is one of foundation: "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), quoting *Kumho Tire*, 526 U.S. at 149.  The reliability inquiry applies to all forms of expert testimony, whether based on scientific, technical, or other forms of specialized knowledge.  *Kumho Tire*, 526 U.S. at 147-48.

"Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir.1997). "[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive … ."

*Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1318 (9th Cir. 1995). Rather, Court's role as a gatekeeper of *reliable* expert testimony is to independently ensure that the expert's methods are valid. *Daubert*, 509 U.S. at 590 n.9. An expert's opinions derived from an unsound or invalid methodology are without any evidentiary value because "[o]pinion evidence is only as good as the facts upon which it is based." *State of Washington v. United States*, 214 F.2d 33, 43 (9th Cir. 1954).

Among the factors to consider in determining whether the expert's opinion stands upon a reliable foundation are: "(1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the technique is generally accepted." *Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007), citing *Daubert*, 509 U.S. at 593-94

However, the relevancy bar is low, requiring only that the evidence "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir.1995) ( "*Daubert II*"). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (2010).

Rule 402 should be applied with a "liberal thrust" favoring admission, *Daubert*, 509 U.S. at 588, as the district judge is "a gatekeeper, not a fact finder." *United States v. Sandoval–M*endoza, 472 F.3d 645, 654 (9th Cir. 2006). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

### III.   DISCUSSION

Applying the above standard to the Motions, the Court rules as follows.

#### A. The Motion to Exclude Jack Cohen is <u>**GRANTED**</u>.

Jack Cohen's Revised Expert Report (dated November 11, 2020) was filed as Exhibit C to the Opposition. *See* Cohen Report (Dkt. No. 1127-4). In brief, Plaintiff retained Cohen to opine about the following: "My report and expected

testimony are limited to vehicle valuation, including but not limited to, the following topics generally and targeting the Plaintiff's vehicle: the various factors affecting vehicle valuation and fair market value for new and used vehicles, the interplay between utility value and monetary value of a vehicle, the effects of repair orders on value, the effect of recalls on value, the effect of TSBs on value, the effect of branded titles on value, the effect of repeated defects on value, and all other related topics to the purchase, sale, and valuation of consumer vehicles, including the Plaintiff's vehicle. I will also be providing testimony on the effect on value from repeated and unfixable defects in the DPS6 transmission generally and in the Plaintiff's vehicle." *See* Cohen Report, § II.

Cohen's opinions are: "valuation is affected by reliability," "valuation is affected by the number of [technical service bulletins]," "valuation is affected by repair history," "branded title significantly affects value," and "the value of the vehicle was likely overpriced by 60-70% at the time of purchase." Cohen Report pp. 13-15. The parties agree that the last opinion relates to fair-market value and was relevant only to the now-dismissed fraud claims, and is not relevant to the remaining Song-Beverly claim.[1] Thus, only Cohen's *other* opinions are in issue. However, it appears that the primary objective of Cohen's report was to provide an opinion about fair-market value, and the sub-opinions that are still in issue apparently informed Cohen's ultimate, now-irrelevant, opinion about fair-market value. Plaintiff contends that Cohen's sub-opinions remain relevant to the Song-Beverly claim.

Ford seeks to exclude Cohen's report and opinions on many grounds, most of which the Court will not address. Having reviewed Cohen's report, the Court finds that *even if* Cohen's report reflects some kind of "scientific, technical, or other specialized knowledge," it will *not* "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Plaintiff offers Cohen to show that his vehicle's nonconformity "substantially" impaired the "value" of the vehicle. The gravamen of Cohen's opinions is that a vehicle that is unreliable, that was subject to lots to technical service bulletins, has lots of repairs, and/or is a lemon has impaired value because it does not meet the owner's expectations and no one would want to buy such a vehicle. This is not "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), because the evidence on this can be readily understood by a jury, and the resulting fact-finding is likewise

---

[1] Despite agreeing that fair-market value is no longer relevant, both parties discuss it at length, once again burdening the Court with unnecessary discussion.

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk CB

4

straightforward. The jury can readily perform its duty unaided by purported expertise. "If the matter testified to is within the knowledge of jurors," expert testimony is not appropriate. *United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir.1987).

Furthermore, Cohen's report is irrelevant because his opinions on value are generalized and do not take into account the circumstances of the vehicle's owner – Plaintiff. *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 548-49 (2001) (whether an impairment is substantial is "based on what a reasonable person would understand to be a defect" but "within the specific circumstances of the buyer"). Cohen's opinions are generalized in that they are extrapolated over all consumers (i.e., consumers generally don't by lemons), or are related to DPS6-equipped vehicles generally and not to Plaintiffs specific vehicle (i.e., there were 52 TSBs issued on DPS6-equipped vehicles, but it's not clear that all related to the DPS6 transmission or that all were issued as to as to Plaintiff's vehicle). Cohen does not say how many DPS6-related repair visits Plaintiff's vehicle had or how many DPS6-related TSPs were issued for Plaintiff's vehicle. Cohen also proffers an opinion about value to himself as a seller/buyer of vehicles (i.e., that *he* does not buy vehicles with an extensive repair history because they are hard to resell), but this is not an opinion about value to Plaintiff. Presumably, Plaintiff himself will testify as to how the allegedly objectively-existing nonconformity impacted the value of the vehicle to him. All of this further reinforces that expert testimony on the issue of value will not assist the trier of fact.

Even if there were some marginal utility to Cohen's opinion, it is outweighed by Rule 403 concerns, which apply to expert testimony. "Even if expert testimony passes the reliability and relevance tests under *Daubert*, it may still be excluded under Rule 403." *Zagruzny v. Mercedes-Benz USA*, No. CV 19-1096 MRW, 2020 WL 3968672, at *2 (C.D. Cal. June 4, 2020). Jurors may be overly swayed by expert testimony, so the imprimatur of an expert should not be accorded here given the commonsensical conclusions offered. Also, such testimony would be a waste of time given that jurors can readily conclude based on other evidence whether the vehicle's value was substantially impaired.

### B. The Motion to Exclude Anthony Micale is <u>**GRANTED in Part**</u> and <u>**DENIED in part**</u>.

Micale's 57-page expert report, dated June 30, 2020, was filed as Exhibit A to the Motion. *See* Micale Report (Dkt. No. 1100-3). The Court is familiar with Plaintiff's expert Anthony Micale from his appearance in the two previous trials in

this MDL: in *Pedante*, CV 17-06656 AB (FFMx), and *Quintero*, CV 18-01912 AB (FFMx). Micale, an engineer, was retained to testify as to a broad array of matters. *See* Micale Report p. 3, Scope of Engagement. Much of the report goes to matters rendered moot by the dismissal of the fraud claims. It remains unclear what matters Plaintiff intends to elicit Micale's testimony on. The "Conclusions" section of the Report appears most tailored to the remaining Song-Beverly claim. It provides four conclusions: that the (1) use, (2) value, and (3) safety of the vehicle have been significantly impaired; and (4) the vehicle is not fit for use despite numerous unsuccessful repairs attempts. *See* Micale Report p. 55, § XV. Ford seeks to exclude these opinions. Ford also seeks to bar Micale from testifying about his test drive of Plaintiff's vehicle, which Micale did after his report and after the deadline to amend the report, and which he never documented in any report at all.

The Court rules as follows on the Motion:

- **Exclude** Micale's test drive of Plaintiff's vehicle. This test drive was performed after the report deadline and was not included in any report, so it is untimely. Plaintiff provides no valid reason why the test drive could not be performed—and reported on—timely. Plaintiff's argument that Ford would not be prejudiced by Micale testifying about the untimely test drive is unconvincing. That Ford could have questioned Micale at deposition about it does not cure the untimeliness, and having to do so without the benefit of a report is inherently prejudicial.

- **Exclude** *in part* Micale's four opinions and related testimony that the non-conformities substantially impaired the *use* of the vehicle. Micale Report p. 55, § XV(A).

    o Micale *may not* testify that "[t]he owner of this vehicle has altered the use of the vehicle because of safety concerns," as this is speculative and is not an "expert" opinion that would aid the trier of fact in understanding the evidence or determine a fact in issue.

    o Micale *may* present his other opinions about use (that the vehicle has been out of use for non-maintenance related service for 72 days, that the vehicle has accumulated over 2,000 days with an unresolved issue related to the DPS6 transmission, and the reliability of this vehicle has been compromised). These opinions all reasonably derive from Micale's analysis of Plaintiff's repair history.

- **Exclude** Micale's testimony/opinions that the non-conformities substantially impaired the *value* of the vehicle. Micale refers to costs of repairs and scrap value, but he is not an expert on value. Micale Report p. 55, § XV(B).

- **Exclude** *in part* Micale's testimony/opinions that the non-conformities substantially impaired the *safety* of the vehicle.

    o Micale *may not* testify that: "As reflected in the body of this report the DPS6 transmission and the associated control system, the Transmission Control Module or MAM pose a safety risk to the vehicle operation. There is a safety risk to both the occupants of his vehicle and to other vehicles in proximity to this vehicle. This safety risk has been shown to occur and as the potential to cause death, injury and property damage." Micale Report p. 55, § XV(C). This is a generalized opinion about safety risks posed by DPS6 transmissions generally and is not tied to Plaintiff's experience with his specific vehicle.

    o Micale *may not* testify about safety risks related to "run-on condition" and loss of power/motive power. *See* Report p. 19-20. To assess the non-conformities in Plaintiffs vehicle, Micale reviewed Plaintiff's repair orders. None of the repair orders reflect that Plaintiff complained about a run-on condition or loss of power, so these issues do not apply to Plaintiff's vehicle.

    o Micale *may* testify about safety risks posed by hesitation. All of Plaintiff's DPS6 repair orders indicate complaints about hesitation. The repair orders do not state the severity of the issue, nor does it appear that Micale had specific knowledge of the severity of that issue in this case, however the robustness of his opinions on this can be appropriately tested through cross-examination.

- **Defer ruling on** Micale's "Summary of Opinion," which is that "The operation of the DPS6 as controlled by the TCM is defective in this vehicle. This vehicle is not fit for use despite numerous repairs. The number of repair attempts and the repairs attempts themselves are unreasonable. This vehicle had never nor was ever made to perform as it was represented to perform. It does not perform like other similar vehicles." Micale Report p. 55, § XV(D). This seems partly directed towards the now-dismissed fraud claims, but also partly directed to the Song-Beverly claim. It is not clear whether Plaintiff

will elicit this testimony or what the foundation of any such summary will be. The Court can rule on objections at trial.

- **Exclude** testimony about the history of the DPS6 transmission, Ford internal communications, and events with other vehicles. Micale's narration about these issues has no relation to the four specific opinions reflected in Micale's conclusion. These matters are not relevant to whether *Plaintiff's* vehicle suffered a substantial impairment, as needed to prove Plaintiff's Song-Beverly claim. Also, these matters raise serious Rule 403 concerns. First, their marginal relevance is outweighed by the time it would take to cover these matters, and by the risk of confusion and undue prejudice caused by discussing other vehicles or the DPS6 transmission generally. Equally important, the Court has observed Micale's previous testimony on these matters and this is where he overstepped the appropriate limits of what an expert may testify to, and he did so repeatedly. The Court is not going to let that happen again. These matters are excluded.

- **Allow** Micale to explain the repair attempts in this case.

**Plaintiff's counsel must not solicit testimony on the excluded matters. The Court ORDERS Plaintiff's counsel to provide this Order to Mr. Micale, and to instruct him about these rulings and to advise him to honor them. The Court will simply not tolerate the antics Mr. Micale engaged in in the Pedante and Quintero trials, and will not hesitate to simply terminate his testimony should he again violate the rules and norms governing the testimony of experts.**

**IT IS SO ORDERED**.