UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | **2:18-ml-02814-AB-PVC** | Date: | July 22, 2021 |
|---|---|---|---|
| | 2:17-cv-06631-AB (FFMx) | | |
| | 2:17-cv-06632-AB (FFMx) | | |

| Title: | ***In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*** |
|---|---|
| | *This Order Relates To:* |
| | *SHARON FORT v. FMC et al* |
| | *ROBERT BAGWELL v. FMC et al; Case No: 2:17-cv-06632* |

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   [In Chambers] ORDER <u>GRANTING</u> CONSOLIDATED MOTION FOR ATTOREYS' FEES [Dkt. No. 955]

Before the Court is a Consolidated Motion for Attorneys' Fees ("Motion," Dkt. No. 955) filed by Plaintiffs Robert Bagwell ("Bagwell") and Sharon Fort ("Fort"). Defendant Ford Motor Company ("Ford") filed two oppositions and Plaintiffs filed a reply. The Court heard oral argument on May 7, 2021. The Motion is **<u>GRANTED</u>** as follows.

## I.   BACKGROUND

Plaintiffs Bagwell and Fort have cases in the multidistrict litigation

("MDL") *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liability Litig.*, Case No. 18-ML-02814, concerning allegedly defective DPS6 dual-clutch powershift transmissions installed in certain Ford vehicles. Bagwell and Fort filed their cases in state court on August 3, 2017, alleging claims under the Song-Beverly Act and fraud claims. Ford removed the cases to federal court and they were transferred into the MDL. Both matters settled when the Plaintiffs accepted Ford's Rule 68 offers on June 18, 2020. Bagwell accepted $128,000 and Fort accepted $125,000. According to Plaintiffs' counsel, the settlements amount to more than four times each plaintiffs' actual damages. The maximum recoverable under the Song-Beverly Act is three times plaintiff's actual damages (actual damages plus a two-times civil penalty).

Plaintiffs now move for an award of attorneys' fees pursuant to the Song-Beverly Act's fee-shifting provision, which states that "a [prevailing] buyer" is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). Plaintiffs seek a combined lodestar of $240,258.86 ($122,673.18 for *Bagwell*, and $117,585.68 for *Fort*), and a multiplier of 1.5, for a total of $360,388.29.[1] *See* Kirnos Reply Decl. (Dkt. No. 1042-1). Fees were incurred by 22 attorneys, employed by three firms. Ford opposes. The Court rules as follows.

## II.   DISCUSSION

### 1.   Whether Plaintiffs are Prevailing Buyers And Are Entitled to Fees Under Song-Beverly.

The Court first addresses whether Plaintiffs are "prevailing buyers" entitled to an award of attorneys' fees under the Song-Beverly Act.

#### 1.   Legal Standard

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for

---

[1] Plaintiffs appear to miscalculate the product of each case's lodestar and the 1.5 multiplier. *See* Kirnos Decl. (1042-1) ¶ 2. The Court provides the correct calculation. However, the difference is immaterial as the Court is declining to apply a multiplier.

requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees"). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

California courts recognize two approaches to determining whether a party is the prevailing party where, as here, the relevant fee-shifting statute does not define "prevailing party." First, some California courts have applied the general definition of Cal. Code Civ. P. § 1032, which states, as applicable, that a prevailing party includes "the party with a net monetary recovery." Cal. Code. Civ. P. § 1032; *see Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1158 (1997) (applying § 1032's "net monetary recovery" standard to determine whether Song-Beverly plaintiff was prevailing party) *disapproved on other grounds in Gavaldon v. DaimlerChrysler Corp.*, 32 Cal.4th 1246, 1261 (Cal. 2004). But, other Courts have held that courts "should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level [citations] . . . 'by analyzing which party realized its litigation objectives.' [citation]." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006). A party can achieve its litigation objectives "by judgment, settlement or otherwise" and the court should be guided by "equitable considerations." *Id.* at 150-151 (citations omitted). One Court of Appeal has suggested that either standard, or "a combination" of them, could apply. *See Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 181 (2007) ("we remand the matter to the trial court to determine whether Kim is a prevailing plaintiff either because he obtained a net monetary recovery or because he achieved most or all of what he wanted by filing the action or a combination of the two").

### 2. Plaintiffs Are Prevailing Buyers Entitled to Their Attorneys' Fees

Bagwell and Fort are prevailing buyers under either standard. First, each secured a net monetary recovery after filing suit, and each achieved their litigation objective of securing compensation and at least maximum penalties. The Court rejects Ford's argument that Plaintiffs did not achieve their litigation objectives. Ford says that in October 2017, when only a few thousand dollars in attorneys'

fees were accrued, it offered to settle these cases for $75,001, and Plaintiffs could have kept the vehicles, yet Plaintiffs rejected these offers and litigated. Ford argues that these offers were more advantageous than what Plaintiffs ultimately accepted, so Plaintiffs did not achieve anything by litigating. This argument is unpersuasive. First, it is not clear that settlements of $75,001 that permitted Plaintiffs to keep arguably defective vehicles were better than judgments of $128,000 and $125,000. Anyway, this is not the standard: Plaintiffs had to file suit to get *any* relief (the record reflects no pre-litigation offers), and Ford's informal offers (as opposed to Rule 68 offers) cannot operate to cut off fees. Ford's characterization that these $75,001 early settlement offers were Rule 68 offers (*see* Opp'n (Dkt. No. 1022) 9:14-17) is simply incorrect.

Plaintiffs are prevailing buyers entitled to fees under Song-Beverly.

## 2. Calculation of the Fee Amount

Before determining the fee, the Court addresses two preliminary issues.

### 1. Preliminary Issues.

#### a. A Word About Filings and Objections

Fed. R. Civ. P. 1 directs the Court to apply the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." For this Motion, the parties filed an inordinate volume of paper. Were the Court to review and respond to everything the parties filed in connection with this motion, the prime directive of Rule 1 would be thwarted not only for this MDL but for other cases on the Court's crowded docket. Much of the parties' work was a waste of their time and money and will add no meaningful value to the Court's assessment of a reasonable fee. For example, the Court declines to rule on the objections: doing so would be extremely time-consuming and the Court can discern what evidence is relevant and admissible without digesting and responding to the parties' excessive and often boilerplate or frivolous commentary. In the *Pedante* Fee Order (Dkt. No. 902, fn. 5), the Court admonished the parties about excessive and meritless objections, but they failed to take this to heart. The parties must do so next time or the Court may disregard unreasonably voluminous filings.

#### b. Apportioning the Fees for Common Work

Plaintiffs acknowledge that some of the work for which they seek fees was

incurred on behalf of not just Bagwell and Fort, but also for KLG's 15 other cases in the initial disposition pool ("IDP"), and propose dividing such fees pro rata accordingly, among 15 and 13 cases.[2] Ford argues that in fact such fees were incurred not just for KLG's 15 IDP cases, but for the entire MDL, and that counsel should seek compensation for such work via a common benefit fund, not through a fee motion associated with individual cases. Ford argues in the alternative that fees for common work should be apportioned among all 30 IDP cases, including the 15 dismissed cases brought by the Consumer Legal Remedies APC ("CLR") firm, not just among KLG's 15 IDP cases.

The Court finds that this category of work was common benefit work for the entire MDL and should be treated accordingly. The fact that the counsel in issue were never formally approved by the Court to perform common work for the MDL does not mean that is not what they were doing. And the Court is simply not persuaded by Counsel's argument that the "common" work they did was just for KLG's 15 cases. For example, the 20+ depositions that they took were plainly intended to be used for the MDL as a whole and likely in the parallel JCCP cases. In fact, at oral argument, one of Plaintiffs' counsel who performed this common work made clear that CLR—the other firm with IDP cases—was "riding his coattails," which is to say, relying on his work. *See* 5/7/2021 Transcript (Dkt. No. 1129) 50:11-19 ("Your Honor, I agree with, obviously, I agree with what Ms. Taft has pointed out. I obviously agree with Mr. Kirnos. I can just tell you from – you know, CLR rode my coattails. It sounds immodest, Your Honor, but they were constantly -- CLR was constantly telling me, 'Thank you for the work you are doing on all these cases. We were benefiting.' I mean, it's a windfall for them and a windfall for Ford if the Court continues with the tentative as it's indicated, Your Honor, just is."). The Court rejects counsel's attempt to now re-write history to limit the intended beneficiaries of their work and thereby exclude the 15 dismissed CLR cases and maximize their fee. For the reasons stated in the concurrently-issued order on Lead Counsel's fee motion, the Court will not order a common benefit fund but will instead apportion these fees for common work among all 30 of the IDP cases.

The Court next determines the lodestar.

---

[2] KLG proposes apportioning fees across 15 cases for fees incurred before *Pedante* and *Quintero*, and across 13 cases for fees incurred after *Pedante* and *Quintero*. *See* Motion fn. 1.

## 2.  Legal Standard

Courts in California and across the Ninth Circuit use the "lodestar method" to calculate attorneys' fees. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Candle v. Bristow Optical Co. Inc.,* 224 F.3d 1014, 1028 (9th Cir. 2000). The lodestar amount is strongly presumed to be reasonable. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). The fee applicant bears the burden of substantiating the hours worked and the rates claimed. *Hensley v. Eckhart*, 461 U.S. 424, 437 (1933). The court may then adjust this lodestar upwards or downwards based on a number of factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum,* 24 Cal. 4th at 1132. In contingency cases, the initial lodestar figure may be adjusted upward in order to compensate attorneys for the risk of taking on a case for which they might not have been compensated. *Id.* at 1332–33. However, a fee enhancement may not be appropriate when a statutory guarantee eliminates any uncertainty about whether costs will be awarded to the prevailing party. *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998). In the end, what constitutes a reasonable fee award is "committed to the sound discretion of [the] trial judge." *Perdue v. Kenny A.,* 559 U.S. 542, 558 (2010). "The essential goal in shifting fees [] is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "A request for attorneys' fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

## 3.  Hours Reasonably Expended

In light of the above discussion, the Court separately determines the hours for the case-specific work attributable only to the Bagwell and Fort cases, and the hours for common work that will be apportioned among the 30 IDP cases. The Court will then determine reasonable hourly rates. Because the materials filed do not readily permit the Court to make the ultimate calculations, the Court will order the parties to meet and confer to apply the Court's rulings to the fee request and file a stipulated proposed Order rendering an appropriate award.

### a.  Hours Reasonably Expended for Case-Specific Work

The Court rules as follows on Ford's objections to various categories and hours billed:

- *Undated time entries:* **OVERRULED**. Plaintiffs sufficiently explain these entries in their reply. The Court admonishes Ford for frivolous objections to time clearly described as anticipated for the replies on these fee motions.

- *Six Hours by Ed Lear for a non-appearance:* **SUSTAINED**. Mr. Lear took a non-appearance at a deposition that resulted from a calendaring error or miscommunication on Plaintiffs' side. This time is excluded.[3]

- *Altman Firm's case-specific work:* Ford's objection that the Altman Group cannot recover case-specific fees in either *Bagwell* or *Fort* because it never associated in as counsel is **OVERRULED**.

- *Fees for unsuccessful remand motions:* Ford's objection is **OVERRULED**.

- *Fees for fee Motion:* Ford's objection to $41,000 in fees incurred drafting the attorneys' fees motion that incudes common work is **OVERRULED**. Ford argues much of this work should be treated like common benefit work and apportioned accordingly but Ford has not identified the specific entries it complains about.

### b.  Hours Reasonably Expended on Common Work

The Court rules as follows on objections relating to common work.

- *Failure to Meet and Confer on Altman Firm and Boucher Firm fees:* Ford asks the Court to deny all fees incurred by the Altman and Boucher Firms because Plaintiffs failed to include them in the meet and confer process. It is not clear whether these firms were specifically identified in the meet and confer, but it seems quite obvious that their fees would be included given their known involvement. It is also obvious however that the parties did not

---

[3]  In a footnote, Ford comments, "Of note, there is no evidence before the Court of the fee arrangement between KLG and Mr. Lear or any consent by Ms. Fort." *See* Opp'n (Dkt. 1022) fn. 19. This is not the first time that Ford has included such comments in footnotes. It suffices to say the Court will not construe Ford's "notes" to the Court as bona fide objections. In addition, seldom do fee applications include the evidence Ford is commenting on, and Ford does not establish that it is necessary.

meet and confer on all specific objections as meeting and conferring in good faith should have alleviated some of them. This will not be acceptable going forward. For now, Ford's Local Rule 7-3 objection is **OVERRULED**.

- *Boucher and Altman Not Authorized:* Ford objects that Boucher and Altman were never authorized to engage in common work for the MDL so their fees should be denied. Plaintiffs respond that their work was only for the KLG plaintiffs, not for the whole MDL. As discussed above, the reality is that the work they performed was for the entire MDL not just for the 15 KLG IDP cases. This objection is **OVERRULED**.

- *Altman/Boucher Fees Not Recoverable Because it was on Other Cases:* Ford's objection that some or all of these attorneys' work was actually performed in other cases not in the MDL and in which those plaintiffs lost is **OVERRULED** because it is based on speculation.

- *Fraud Claims Not Apportioned:* Plaintiffs' Counsel say they have apportioned fees solely related to fraud. Ford disagrees. For the reasons explained in the concurrently-issued Order on Liaison Counsel's fee motion, the Court finds that the work for fraud claims cannot practicably be further apportioned. Therefore, this objection is **OVERRULED**.

- *Authentication Work:* Ford's objection to fees for efforts to authenticate documents is **OVERRULED**.

- *Miscellaneous Objectionable Billing Practices:* In the space of 12 lines, Ford objects to four "objectionable billing practices" (500+ hours for communications, etc.; $70,000 of vague and "suspiciously redacted" entries; 20+ attorneys is excessive and results in duplication; 650 hours for fraud depositions). *See* Dkt. No. 1022-1, 23:12-24. These objections are in part derivative of others that the Court is rejecting above (the fraud objection, for example). Furthermore, Ford's brief does not direct the Court to the part of the voluminous record that purport to substantiate these objections. The Court has reviewed the Pierce Declaration and it includes commentary on these objections interspersed with other observations which may or may not be objections. The Court will not extract the relevant underlying material. Nevertheless, the Court can readily see that there were instances of multiple counsel attending depositions unnecessarily, vague billing entries, and counsel billing for administrative tasks. And although litigating all 30 IDP

cases did require communications and other meetings, it is certain that duplication and ineffeciencies in communication and other matters resulted. **Thus, the Court will impose a 5% haircut to account for these issues.**

## 4. Hourly Rates

The Court now determines reasonable hourly rates. In its tentative, the Court observed that Plaintiffs failed to include a concise summary or table of all the billers and their hourly rates, imposing additional work on the Court to piece this information together.[4] After the hearing, Plaintiffs' counsel filed a Supplemental Declaration identifying billing summaries among the various declarations and evidence filed. While the Court appreciates the gesture, the filing simply illustrates the problem: the relevant data is scattered among multiple exhibits to multiple declarations, and there remains no single comprehensive summary including all billers and their hourly rates. The Court still has to compile all of this data, and if it wants to make any adjustments must undertake onerous accounting. The Court is not going to undertake this burden but will instead return the task to the parties.

Ford's expert Mr. Pierce presented some of this data in a usable way, and the Court will rely on it. *See* Pierce Decl. (Dkt. No. 1022-7) and Exs. Z-1 (KLG summary), Z-2 (Altman Law Group summary), Z-3 (Boucher LLP summary).

The Court will maintain the rate reductions it applied to KLG attorneys in the *Pedante* Fee Order. The Court will make similar adjustments to the hourly rates of all other counsel herein, as most of the rates sought are excessive in light of the experience of counsel, the prevailing rates in this market, other court orders, and the nature of the work. The Court finds the requested rates for senior partners Boucher ($1,110) and Altman ($950) to be particularly excessive and will reduce them substantially. Furthermore, these counsel performed work for the common benefit of the MDL. As discussed in the concurrently-issued order on Lead Counsel's fee motion, had Liaison Counsel established a common benefit fund, Boucher and Altman would have had to seek compensation through it, and their

---

[4] The Court admonished Plaintiff's counsel for similar issues in the *Pedante* Fee Order and urged them to do better, such as by "presenting the numbers relating to their fee requests in their memoranda, in a user-friendly way, such as by using tables." *See* Pedante Fee Order fn. 6. It is unacceptable for counsel to disregard the Court's admonitions and waste the Court's time, especially in an MDL. Here, fees are sought for the work of many more attorneys with three firms, so presenting a single, complete summary is even more imperative.

fees would have been subject to earlier regulation by the Court and to scrutiny by counsel paying into the fund. It strikes the Court as highly unlikely that the contributing lawyers would have agreed to pay their requested rates. Other plaintiffs' counsel's input would have established a more realistic market-based hourly rate than counsel's claimed hourly rate. In its concurrently-issued order on Liaison Counsel's fees, the Court reduced the most senior partner rates from $1,100 to $700 (Kiesel) and from $895 to $650 (Koncius). A reasonable rate for non-liaison counsel should be lower. The below reasonable rates reflect these considerations.

| Knight Law Timekeepers – Reasonable Rates from *Pedante* Fee Order [8 attorneys] | | | | |
|---|---|---|---|---|
| **Attorney** | **Position** | **Admitted** | **Requested Rate** | **Adjusted Rate** |
| Steve Mikhov | Partner | 2003 | $ 550.00 | $ 450.00 |
| Roger Kirnos | Partner | 2012 | $ 425.00 | $ 375.00 |
| Russell Higgins | Associate | 2003 | $ 450.00 | $ 375.00 |
| Lauren Ungs | Partner | 2010 | $ 425.00 | $ 375.00 |
| Amy Morse | Partner | 2013 | $ 350.00 | $ 350.00 |
| Kristina Stephenson-Cheary | Unstated | 2008 | $ 375.00 | $ 375.00 |
| Mitch Rosensweig | Associate | 2013 | $ 325.00 | $ 255.00 |
| Maite Colon | Associate | 2012 | $ 300.00 | $ 250.00 |

| Knight Law Timekeepers – Reasonable Rates for New Timekeepers [8 attorneys] | | | | |
|---|---|---|---|---|
| **Attorney** | **Position** | **Admitted** | **Requested Rate** | **Adjusted Rate** |
| Edward Lear | Unstated | 1987 | $ 595.00 | $ 450.00 |
| Zachary Powell | Associate | 2015 | $ 250.00 | $ 250.00 |
| George Aguilar | Associate | 2015 | $ 275.00 | $ 250.00 |
| Daniel Kalinowski | Associate | 2015 | $ 250.00 | $ 250.00 |
| Natalee Fisher | Associate | 2015 | $ 250.00 | $ 250.00 |
| Marisa Melero | Associate | 2015 | $ 225.00 | $ 225.00 |
| Armando Lopez | Associate | 2018 | $ 200.00 | $ 200.00 |
| Sundeep Samra | Unstated | 2019 | $ 225.00 | $ 200.00 |

| Boucher Firm Timekeepers – Reasonable Rates [3 attorneys] | | | | |
|---|---|---|---|---|
| **Attorney** | **Position** | **Admitted** | **Requested Rate** | **Adjusted Rate** |
| Raymond P. Boucher | Partner | 1984 | $ 1100.00 | $ 450.00 |
| Maria L. Weitz | Partner | 2009 | $ 750.00 | $ 385.00 |
| Neal S. Butala | Associate | 2013 | $ 450.00 | $ 350.00 |

| Altman LLP Firm Timekeepers – Reasonable Rates [3 attorneys] | | | | |
|---|---|---|---|---|
| Attorney | Position | Admitted | Requested Rate | Adjusted Rate |
| Bryan C. Altman | Partner | 1984 | $ 950.00 | $ 450.00 |
| Chris J. Urner | Associate | 2016 | $ 400.00 | $ 225.00 |
| Diba Alemi | Associate | 2018 | $ 325.00 | $ 200.00 |

### 5. The Court Declines to Apply a Multiplier

Finally, the Court has considered the *Ketchum* factors and declines to apply a multiplier. The Song-Beverly claims in these cases do not appear to be novel or involve difficult questions. The skill displayed pursuing them is accounted for in counsel's hourly rates. This litigation did not preclude Plaintiff's counsel from seeking other employment, as they have about 200 other similar cases in this MDL and many other non-MDL Song-Beverly cases pending simultaneously. Finally, Song-Beverly's fee shifting provision eliminated uncertainty about whether costs and fees would be awarded in the event Plaintiffs prevailed.

## III.    CONCLUSION

The Court **ORDERS** that Plaintiffs Robert Bagwell and Sharon Fort shall be awarded their attorneys' fees in amounts consistent with the above rulings. The Court **ORDERS** the parties to meet and confer to apply the above rulings to the fee request. They must file a Stipulated Proposed Order within 14 days of the issuance of this Order reflecting the award. The Court **ORDERS** the parties to work in good faith on this task and to use their utmost best efforts to resolve any disagreements they have about the application of this Order to the fee request.

**IT IS SO ORDERED**.