UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | ML 18-02814 AB (PVCx) | Date: | July 22, 2021 |
|---|---|---|---|

| Title: | *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>**GRANTING IN PART AND DENYING IN PART**</u> **KIESEL LAW LLP'S MOTION FOR ATTORNEYS' FEES [Dkt. No. 1004] and <u>DENYING</u> FORD MOTOR COMPANY'S MOTION FOR ORDER REGULATING FEES [Dkt. No. 1016]**

Before the Court is Lead Counsel Kiesel Law LLP's ("KL" or "Lead Counsel") Motion for Attorneys' Fees ("Motion," Dkt. No. 1004) and Ford Motor Company's ("Ford") Motion for An Order Regulating Fees ("Ford Motion," Dkt. No. 1016). Oppositions and Replies were filed as to both Motions. The Court provided the parties a summary tentative the evening before oral argument, which took place on May 7, 2021. KL's Motion is **<u>GRANTED in part</u>** and **<u>DENIED in part</u>**. Ford's Motion is **<u>DENIED</u>**.

I.  BACKGROUND

This multidistrict litigation has involved about 1,200 individual cases alleging claims primarily under California's Song-Beverly Consumer Warranty

Act, Cal. Civ. Code §§ 1790-1795.5 ("Song-Beverly" or "Act")[1], with most cases also asserting common law fraud claims. The plaintiffs allege that Ford installed allegedly defective DPS6 dual-clutch powershift transmissions in the plaintiffs' vehicles, could not repair them, and failed to repurchase them as required under Song-Beverly. Generally, the complaints sought all available remedies, including buybacks and civil penalties under Song-Beverly, and punitive damages for the fraud claims.

    The Court promptly appointed KL Lead Counsel in this case, and Lead Counsel has been engaged in substantial work on behalf of the plaintiffs, including coordinating among the plaintiffs and conducting what is understood as common discovery purportedly relevant to most if not all cases in the MDL, such as depositions of Ford witnesses and related documentary discovery going to the alleged defects in the vehicles and Ford's knowledge of the same.

    Lead Counsel's position regarding how it would seek compensation for such work is set forth sufficiently accurately in Ford's papers. In sum, despite the Court's questions at the outset and subsequently, Lead Counsel declined to seek to establish a common benefit fund whereby the plaintiffs' firms participating in this case would fund Lead Counsel's common benefit work. Such work is typically funded by contributions in the form of a withholding or assessment of a percentage (such as 5% or 8%) from any judgments or settlements. Here, however, Lead Counsel represented that because the Song-Beverly Act has a fee-shifting provision whereby prevailing plaintiffs can recover from defendants the attorneys' fees actually incurred, Lead Counsel would file motions for attorneys' fees in cases in which plaintiffs prevailed, and get payment directly from Ford. How exactly this fees motion process was supposed to work given the ongoing accrual of Lead Counsel's fees on behalf of all cases, and the constantly changing number of active cases (cases added to the MDL, but also cases resolved by settlement or that were otherwise dismissed) was not obvious and was never explained.

    By June 2019, Lead Counsel changed course and moved to establish a "common benefit fund," preferably funded solely and directly by defendant Ford, and alternatively by plaintiffs' attorneys via assessments on recoveries. *See* Dkt. No. 348. But, Lead Counsel withdrew this motion. Lead Counsel floated a potential common benefit motion several times since then, but never actually sought a Court order, despite the Court raising the issue as late as August 2020 in

---

[1] A small number of out-of-state plaintiffs allege analogous claims under their respective states' lemon laws.

its Order resolving the *Pedante* fee motion. *See Pedante* Fee Order (Dkt. No. 902). In sum, despite the Court's repeated statements of concern about it, Lead Counsel left the issue of its compensation unresolved.

Lead Counsel filed the present Motion for Attorneys' Fees in November 2020, nearly three years after the MDL was established. By then, only about 300 cases remained[2], most of them filed by the Knight Law Group ("KLG"). By this Motion, Lead Counsel moves under Cal. Civ. Code § 1794(d)— Song-Beverly's fee-shifting provision—to recover directly from Ford, based on cases (either two cases or several hundred) in which plaintiffs ostensibly prevailed, all of the fees it incurred for all common work KL performed for the entire MDL. This totals $1,258,507.25 in fees.

In its opposition (and its Motion), Ford argues that KL's proposed approach for seeking fees is improper and unsupported and should be denied. Ford also argues that the Court should order KL to seek a common benefit fund, and/or order the disclosure of fee agreements between KLG and KL. Ford also challenges KL's lodestar calculation.

## II.  DISCUSSION

### A. Lead Counsel's Proposal Is Legally Untenable and the Motion as Filed is <u>DENIED</u>.

Lead Counsel's proposed method for obtaining compensation is simply not viable. Lead Counsel admits that "the case authority that might otherwise guide payment of LEAD COUNSEL in this type of fee shifting litigation is sparse." Mot. 4:4-6. Indeed, Lead Counsel points to no other case in which MDL Lead Counsel was compensated for common work for plaintiffs not through a common benefit fund but rather through fee motions based on statutory fee shifting for prevailing plaintiffs.

Yet it is not the novelty of Lead Counsel's approach that dooms it. Rather, it is that Lead Counsel seeks compensation through Song-Beverly's fee-shifting provisions while failing to adhere to rules governing fee shifting. Song-Beverly's

---

[2] The vast majority of the cases were resolved by settlement; a few dozen were dismissed for various reasons; and one case, *Pedante*, resulted in a jury verdict for a plaintiff. A jury found for plaintiffs in the *Quintero* case, but the Court granted Ford's motion for judgment as a matter of law and vacated that verdict.

fee-shifting provision states that "a [prevailing] buyer" is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). Thus, a prevailing buyer must bring a fee motion, and that buyer is entitled to fees reasonably incurred in connection with the action. Lead Counsel's proposal runs afoul of these requirements because they have not identified a "prevailing buyer" for whom all of the fees they seek were "reasonably incurred."

### 1. Only the *Bagwell* and *Fort* Plaintiffs are Prevailing Buyers With Unsettled Fee Claims.

The Court first addresses who the "prevailing buyer" is. Lead Counsel argues that its fees "can be paid through any case or set of cases where the plaintiff is the prevailing party," Mot. 14:14-15, and casually proposes a menu of options as if the Court should pick and choose among them: payment can be "through the *Bagwell* and *Fort* cases, and/or to the settlement with the Texas plaintiffs (even though a fee motion will not be presented by Mr. Duck or Mr. Dalton since their fees were paid as part of a global settlement) and/or any and all of the hundreds of cases that have settled favorably for a consumer." Mot. 14:26-15:2.

As discussed in its concurrently-issued Order resolving the consolidated fee motion in *Bagwell* and *Fort*, the Court finds that the *Bagwell* and *Fort* plaintiffs are prevailing buyers. However, Lead Counsel's total fees were not "reasonably incurred" in connection with those two cases alone, but instead were incurred for all of the MDL plaintiffs.

Lead Counsel's other alternatives for tethering its entire fee request to some other set of prevailing plaintiffs are not defensible. Lead Counsel's fee request cannot rely on the settled cases (*e.g.*, the Texas Dalton/Duck cases or the Consumer Legal Remedies ("CLR") cases). First, that those cases settled does not *per se* establish that those plaintiffs prevailed. As all parties are aware, deciding whether a plaintiff prevailed involves applying one of two tests, or a combination of them, to the circumstances of the case. *See Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 181 (2007) ("we remand the matter to the trial court to determine whether Kim is a prevailing plaintiff either because he obtained a net monetary recovery or because he achieved most or all of what he wanted by filing the action or a combination of the two"). Second, those cases also settled those plaintiffs' entitlement to attorneys' fees. As § 1794(d) entitles the prevailing

*buyer* to an award of fees, each buyer is entitled to settle the fee question with the defendant. Although the *Bagwell* and *Fort* settlements did not settle the attorneys' fees issue but instead left it for motion practice, the vast majority (if not all) of the other settlements settled the cases in their entirety, including any entitlement to fees. For example, the Stipulation and resulting July 1, 2020 Order dismissing the CLR cases provides "each party to bear its own attorney's fees and costs." *See* Dkt. Nos. 823, 826. Lead Counsel would in effect have the Court abrogate those settlements in order to compensate him, something this Court cannot and will not do. Furthermore, Lead Counsel does not represent the Texas plaintiffs, the CLR plaintiffs, or most other settled plaintiffs, and therefore cannot move for fees on their behalf. In addition, Fed. R. Civ. P. 54(d)(2)(B)'s 14-day time period for moving for fees relative to those cases has long passed.[3] Lead Counsel argues that he should be compensated for those cases because they settled in part due to the common work he performed in the MDL, but that argument simply reinforces that Lead Counsel should have sought compensation for common work in the conventional way—via a common benefit fund funded by assessments on settlements.[4] But Lead Counsel chose not to seek a common benefit fund, thus leaving himself vulnerable to having his ostensible claim to fees settled away. Accordingly, the "hundreds of cases that settled favorably for a consumer" provide no basis for awarding Lead Counsel's fee, even if the plaintiffs in those cases prevailed.

Lead Counsel's argument that its "fees do not necessarily have to be tied to any particular case because the work was not performed for any particular case," Mot. 15:2-3, is belied by § 1794(d) itself, which entitles only "prevailing buyer[s]" to recovery of attorneys' fees. Having invoked the benefit of § 1794(d), Lead Counsel must also be bound by its limitations. Lead Counsel's proposal is also tantamount to suggesting that Ford should just pay the fees directly, which is no different from Lead Counsel's prior (abandoned) suggestion that the Court require *Ford* to finance a common benefit fund—a proposal that Lead Counsel apparently recognized as meritless and therefore withdrew. Lead Counsel also suggests that Ford should just pay its fees directly because Ford benefited from the creation of this MDL, which Ford itself sought over many plaintiffs' objections. Specifically,

---

[3] In light of the parties' stipulations regarding fee request in *Bagwell* and *Fort*, the Motion is timely as to *Bagwell* and *Fort*.

[4] Lead Counsel's withdrawn Motion for An Order Establishing a Common Benefit Fund (Dkt. No. 348) clearly explains the authority for establishing common benefit funds and how such funds work. Lead Counsel has not explained why they withdrew the Motion.

Lead Counsel argues that Ford saved vast sums by having to engage in discovery only once, and by having the majority of cases stayed during discovery and while the 30 cases in the initial disposition pool ("IDP" cases) were being litigated. This is meritless. Lead Counsel works for plaintiffs, not for Ford, so Lead Counsel must seek its fees through the plaintiffs' side. Lead Counsel's common work was for the common benefit of plaintiffs' counsel. Furthermore, Plaintiffs also—and not just Ford—benefited from the efficiencies of coordinated discovery. Simply stated, that Ford realized efficiencies via this MDL does not entitle Lead Counsel to secure payment directly from Ford, nor does it entitle Lead Counsel to disregard the principles underlying § 1794(d).

Finally, Lead counsel argues that "LEAD COUNSEL should be considered the prevailing party under Cal. Code. Civ. P. § 1032 since the cases listed above resulted in a net monetary benefit to the plaintiffs." Mot. 15:11-13. But Lead Counsel is not a plaintiff or a buyer so Lead Counsel simply cannot be a "prevailing party" and cannot get fees on its own behalf.

Based on the papers before it, the only eligible prevailing buyers Lead Counsel has identified are the *Bagwell* and *Fort* plaintiffs.

## 2. Lead Counsel Has Not Shown that The Fees It Requests Were "Reasonably Incurred . . . In Connection With The Commencement And Prosecution Of" the *Bagwell* and *Fort* Actions.

The Court cannot find that all of Lead Counsel's fees were incurred in connection with the *Bagwell* and *Fort* actions. First, Lead Counsel was appointed to work on behalf of all plaintiffs. Indeed, Lead Counsel has stated repeatedly that it is seeking compensation for work performed on behalf of all cases in the MDL. For example, Lead Counsel stated that its work applied to all of the cases in the MDL, and that "Lead Counsel's very purpose and role in this MDL is to perform common discovery on behalf of all plaintiffs." *See* Reply (Dkt. No. 1047) 3:6-13. More than 20 depositions—including of higher-level Ford executives—and extensive corporate-level documentary discovery were conducted in this MDL. Such discovery would have been wholly disproportionate to two individual Song-Beverly cases like *Bagwell* and *Fort.* Similarly, Lead Counsel's "liaising work" was by definition performed on behalf of all cases in the MDL. The Court will not adopt the fiction that such work can be deemed "reasonable" in connection with just *Bagwell* and *Fort* when it was really undertaken in the context of a 1,200-case MDL. In light of the foregoing, the Court cannot find that all of that work admittedly performed for the MDL was instead performed in connection with just

the *Bagwell* and *Fort* cases.

This is where Lead Counsel's reliance on fee-shifting proves incoherent and unworkable: while seeking to recover 100% of its fees through any combination of "prevailing plaintiffs," Lead Counsel simultaneously argues that there should be no reduction to account for cases in which the plaintiffs didn't prevail. Lead Counsel presents no principled reason for why they should get the benefit of Song-Beverly's fee shifting award to prevailing plaintiffs, while not having to deduct to account for non-prevailing plaintiffs. That Lead Counsel's work was for the MDL plaintiffs as a whole and therefore not for any particular case does not also mean that all of those fees can be attributed solely to the subset of cases in which plaintiffs arguably prevailed. Lead Counsel cannot have it both ways: Lead Counsel cannot premise its fee request on § 1794(d)'s fee shifting in favor of prevailing plaintiffs, while disregarding those cases in which plaintiffs did not prevail.

Lead Counsel's Fee Motion simply repackages its approach from the *Pedante* fee motion, which the Court previously rejected.[5] Once again, the Court cannot find that all common work performed for this MDL was in pursuit of two cases (*Bagwell* and *Fort*) or a vague subset of cases. It was performed for the MDL plaintiffs' counsel as a whole.

In sum, Lead Counsel has again presented the Court an untenable approach to compensation: Lead Counsel wants to be paid for common benefit work, but instead of pursuing a conventional common benefit fund, Lead Counsel invokes fee shifting under § 1794(d) and seeks all fees via an omnibus fee motion for all common work to date, but within the purview only of a few cases in which the plaintiffs prevailed, with no reductions for lost or settled cases. This approach is not legally sound. The Motion as filed is **DENIED**.

---

[5] Lead Counsel has commented that it is seeking fees this way to avoid the serial fee motions that the Court discouraged in its *Pedante* Fee Order. But this Motion is hardly different from Lead Counsel's fee request in *Pedante*. In any case, when the Court stated its desire to avoid serial fee motions, it also indicated its desire to implement a common benefit fund, which is an appropriate and efficient vehicle to seek fees as compared with the serial fee motions that Lead Counsel proposed and that would potentially leave Lead Counsel's entitlement to chunks of fees in perpetual dispute.

## B. The Court Nevertheless Finds that Lead Counsel May Recover Fees Apportioned Among the 30 IDP Cases.

For the reasons stated above, Lead Counsel's fee request is legally untenable and is denied as filed. However, Lead Counsel did perform significant work in this action, so instead of completely denying the motion, the Court will fashion a method for compensating Lead Counsel. Lead Counsel showed no willingness to pursue a common benefit fund at this point, perhaps because the vast majority of cases have settled already and there would be little buy-in from other plaintiffs' firms. In light of Lead Counsel's apparent preference for seeking compensation under § 1794(d), the Court will determine Lead Counsel's lodestar, and order it to be apportioned among the 30 IDP cases, as explained below.

Lead Counsel's work was intended to be performed on behalf of all 1,200 or so cases in this MDL. However, because the cases in the MDL were constantly in flux (i.e., cases settling, being remanded, or added to the MDL), it is not practicable to apportion the work among all of them. Furthermore, the vast majority of cases were stayed, while only the 30 IDP cases have been actively litigated are proceeding toward bellwether trials. The Court therefore finds it reasonable to deem Lead Counsel's work as being on behalf of these 30 IDP cases. This would permit Lead Counsel to secure compensation under § 1794(d), which appears to be their preference at this point, while also holding Lead Counsel to the requirements of § 1794(d) and recognizing that only 30 cases were actively litigated up until now.

This is an imperfect solution to the problem of Lead Counsel's compensation, but there is no perfect solution given the posture of this case. This solution strikes the Court as practical and fair, especially compared to the alternative of denying the request in its entirety. And, although this factor is not decisive, the Court understands that Ford does not object to this approach.

## C. Counsel's Lodestar

KL seeks attorney's fees of $1,258,507.25 based on the familiar lodestar calculation: the total of each attorneys' reasonable hourly rates multiplied by the hours that attorney reasonably expended. Lead Counsel filed the Declaration of Paul Kiesel explaining the fee request and each attorneys' credentials, along with three exhibits showing KL's billing entries, each with a summary on the final page. *See* Kiesel Decl. (Dkt. No. 1004), Exhs. A, B, C. The work was performed by 8 attorneys at requested billing rates ranging from $325/hour to $1,100/hour. Lead

Counsel breaks down the fees into the following three categories:

$748,679.75 for 1,032.6 hours of discovery work (Kiesel Decl. Ex. A);

$427.278.50 for 615.20 hours of liaising to manage the MDL and coordinate all discovery, documents, and counsel (Kiesel Decl. Ex. B); and

$82,549.00 for 204.1 hours of work performed in connection with the bellwether case *Pedante*. (Kiesel Decl. Ex. C).[6]

Ford attacks numerous aspects of the Motion. Ford argues that the Court should deny the Motion outright for failing to make a good-faith effort to exclude non-compensable fraud-related work. In the alternative, Ford argues that counsel's hourly rates are inflated and that the hours expended were unreasonable. In support of these arguments, Ford filed the declaration of its attorneys' fee expert John Shea Pierce and Exhibits AAA-LLL thereto ("Pierce Decl.," Dkt. No. 1026), which include a timekeeper summary for each lawyer at KL (Ex. CCC), and tables reflecting categories of billing entries to which Ford objects. Ford also filed the declaration of Any Maclear ("Maclear Decl.," Dkt. No. 1026) that includes, among other things, Exhibits PPP-TTT, which are KL's billing entries for various *other* categories of fees to which Ford objects.

The parties filed voluminous evidentiary objections to the declarations of counsel Mr. Kiesel, Ms. Taft, and Ms. Maclear, and to Ford's fee expert Mr. Pierce. The Court has reviewed the declarations and finds that the objections are largely frivolous and boilerplate. The Court will not sift through the numerous meritless objections in search of the few that might have merit. All objections are **OVERRULED**. The Court also specifically finds that Mr. Pierce is qualified to provide his analysis of KL's fees, that his methodology is sound, and his opinions may be helpful. However, the Court is not persuaded by much of Mr. Pierce's analysis and conclusions.

---

[6] Lead Counsel did not move separately for their *Pedante*-related fees but instead seeks them in connection with this motion related to *Bagwell* and *Fort*, and thus treats them like fees incurred on behalf of the MDL as a whole. Ford does not appear to object to the *Pedante* fees as a category, or to treating them the same as the other fees sought herein. Thus, the Court will treat the *Pedante* fees as if they were incurred on behalf of the MDL as a whole, just as it is treating all of the other fees sought herein.

The Court now determines the lodestar.

### 1. Legal Standard

Courts in California and across the Ninth Circuit use the "lodestar method" to calculate attorneys' fees. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Candle v. Bristow Optical Co. Inc.,* 224 F.3d 1014, 1028 (9th Cir. 2000). The lodestar amount is presumed to be reasonable. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). The fee applicant bears the burden of substantiating the hours worked and the rates claimed. *Hensley v. Eckhart*, 461 U.S. 424, 437 (1933). The court may then adjust this lodestar upwards or downwards based on a number of factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum,* 24 Cal. 4th at 1132. In contingency cases, the initial lodestar figure may be adjusted upward in order to compensate attorneys for the risk of taking on a case for which they might not have been compensated. *Id.* at 1332–33. However, a fee enhancement may not be appropriate when a statutory guarantee eliminates any uncertainty about whether costs will be awarded to the prevailing party. *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998). In the end, what constitutes a reasonable fee award is "committed to the sound discretion of [the] trial judge." *Perdue v. Kenny A.,* 559 U.S. 542, 558 (2010). "The essential goal in shifting fees [] is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "A request for attorneys' fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

"[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). However, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir.1992) (internal quotes omitted). A court that exercises its discretion to reduce the lodestar amount

by an across-the-board percentage reduction typically must explain its reasons for doing so. *Gonzalez*, 729 F.3d at 1202. "Nevertheless, the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

### 2. Hours Reasonably Expended

The parties' disputes are numerous. The Court first addresses the fraud-apportionment issue and then rules on the remaining issues.

#### a. Fraud-Related Fees Cannot Be Further Apportioned.

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action," unless the issues are common or "the liability issues are so interrelated that it would have been impossible to separate them . . ." *Akins v. Enterprise Rent-A-Car Co. of San Francisco*, 79 Cal. App. 4th 1127, 1133 (2000). Here, Song-Beverly provides for fee recovery, while the fraud claims do not. KL states that it has excluded from its request any fees solely related to fraud, and argues that the Song-Beverly and fraud claims are inextricably intertwined so further apportioning the fees is impossible and thus not required. Ford disagrees, and contends that KL did not make a good faith attempt at apportionment so the Motion should be denied outright. Alternatively, Ford identifies 12 depositions that it claims were solely fraud-oriented so fees incurred for them should be denied.

The Court has considered this issue carefully. The California Court of Appeal recently affirmed a trial court's order declining to apportion fees between those incurred on Song-Beverly claims (recoverable) and those incurred in pursuit of fraud claims (not recoverable). *See Santana v. FCA US, LLC*, 56 Cal. App. 5th 334 (2020). The *Santana* Court held that the trial court appropriately found that the causes of action encompassed one set of facts so the fees were not subject to apportionment, and further noted that the defendant did not present any practical method of apportioning fees. *Id.* at 348-350. The Court does not read *Santana* as pronouncing a categorical rule that Song-Beverly and fraud claims cannot be apportioned; instead, this question turns on the circumstances of the case and on the practicalities of apportionment.

Here, there is some overlap between the Song-Beverly and fraud claims:

whether the DPS6 transmission was defective, and Ford's knowledge of the same, is relevant to whether Ford willfully failed to comply with the Song-Beverly Act, and is relevant to the knowledge element of the fraud claims. The Court understands that much of the plaintiffs' discovery was aimed at ascertaining whether the various iterations of the DPS6 transmission produced over several years were defective, and whether and when Ford had knowledge of any such defects. The Court understands that the 12 Ford depositions[7] which Ford identifies as fraud-oriented covered these topics, and perhaps others as well. Based on the Court's familiarity with the entire history of this case, the Court believes that the plaintiffs engaged in extensive corporate discovery in pursuit of their fraud claims. Indeed, plaintiffs' counsel commented to that effect at various times, as Ford cites in its papers. Nevertheless, although it is a close call, given that the claims do overlap, and the discovery topics were broadly relevant to both claims across 30 cases, the Court finds that further apportionment is impractical. The Court also declines Ford's proposal to use Plaintiffs' trial witness and deposition designations, and the timing of their de-designations, as a proxy for which witnesses were solely oriented towards fraud. This is a creative suggestion with some appeal, but the Court cannot apply such a blanket determination as to all 12 of the specific witnesses Ford identifies. On the current record, the Court is satisfied that further apportionment is not practicable in light of the realities of this case.

### b. Ford's Remaining Objections

The Court has reviewed Ford's below objections and the corresponding billing entries and exhibits.

The Court finds that Ford's objections to the following fees are without merit and therefore **OVERRULES** them. The Court will not provide specific reasoning for each determination, but the Court finds that the vast majority of the claimed hours were reasonably incurred in connection with the 30 IDP cases and Ford's complaints about KL's billing entries and staffing are without merit.

***OVERRULED** Ford Objections discussed in Maclear Decl.:*

- Work on authentication of Ford exhibits ($62,893.75 for 98.22 hours). *See* Opp'n 18:22-19, 22:23-23:2, Maclear Decl. ¶ 8, Ex. PPP).

---

[7] One of these deponents, Matthew Garza, is not a Ford corporate witness but instead is a customer dissatisfied with his DPS6-equipped Ford vehicle.

- Time "for work already performed in the parallel state court proceedings," including for example $22,238.13 (37.18 hours) for work on protective orders. *See* Opp'n 19:13-14; Maclear Decl., ¶ 9, Ex. QQQ.

- Work on "six unsuccessful ex parte applications" ($36,176 in fees (70.8 hours)). *See* Opp'n 23:3-16; Maclear Decl. ¶ 10, Ex. RRR.

- Work related to KL's changing approach to common work fees ($2,160.50 for 4.23 hours). *See* Opp'n 23:17-24; Maclear Decl. ¶ 10, Ex. SSS.

- Fees related to Ford's motions for summary judgment ($5,999 for 6.8 hours). *See* Opp'n 14, fn. 12, Maclear Decl. ¶12 Ex. TTT. It is not clear that Ford is truly objecting to this amount, as it merely commented on these hours, and only in a footnote. The Court will not expend its time engaging with a potential objection presented only in a footnote.

**OVERRULED** *Ford Objections discussed in Pierce Decl.*:

- Vague Billing Entries ($50,321.88).

- Multiple Attendance at Hearings ($35,964.50).

- Multiple Attendance at Depositions ($3,187.50).

- Administrative & Clerical Tasks ($25,195.63).

- Block-Billing ($43,981.75).

- Interoffice communications ($443,442.87). Lead Counsel's primary function was to coordinate among all counsel and manage this 1,200 case MDL. Ford's objections are not well taken.

Insofar as other objections not specifically identified herein might be scattered in the papers, the Court has considered them and overrules them.

The Court **SUSTAINS** the following Ford objection:

- $5,500 (5 hours) inadvertently double-billed by Mr. Kiesel in July of 2019, which KL agrees should be deducted. (Pierce Decl. Ex. EEE.)

### 3. Reasonable Hourly Rates

Lead Counsel must show that the requested rates for their counsel are reasonable by "produc[ing] satisfactory evidence that [they] are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Obrien v. FCA US LLC*, No. 17-cv-04042-JCS, 2019 WL 5295066, at *5 (N.D. Cal. Oct. 18, 2019) (citing *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)). The relevant legal community is the forum district. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Affidavits from comparably-qualified practitioners in the same forum, decisions of other courts, and the Court's own experience are all appropriate guideposts for determining reasonable rates. *Obrien*, 2019 WL 5295066, at *5.

Lead Counsel did not provide a comprehensive billing summary (they provided three separate partial summaries), or a table reflecting the attorneys' positions or qualifications in a user-friendly way. Ford's expert Pierce provided a useful comprehensive summary, *see* Pierce Decl. Ex. CCC, from which the Court produced the tables herein.

The below table shows for each KL attorney their position, year admitted, total hours requested, the requested rate, and the resulting lodestar fee per attorney, along with total hours and the total requested lodestar.

| Lead Counsel's Requested Rates and Resulting Requested Lodestar Fee | | | | | |
|---|---|---|---|---|---|
| Attorney | Position | Year Admitted | Total Hours[8] | Requested Rate | Lodestar Fee |
| Paul R. Kiesel | Partner | 1985 | 624.11 | $ 1,100 | $ 686,521.00 |
| Jeffrey A. Koncius | Partner | 1997 | 183.7 | $ 895 | $ 164,411.50 |
| Mariana McConnell | Partner | 2010 | 44.5 | $ 420 | $ 18,690.00 |
| Nicole Ramirez | Associate | 2011 | 227.8 | $ 420 | $ 95,676.00 |
| Stephanie M. Taft | Associate | 2016 | 725.35 | $ 375 | $ 272,006.25 |
| Nicholas Brancolini | Associate | 2017 | 22.7 | $ 325 | $ 7,377.50 |
| Stephanie H. Gold | Associate | 1993 | 14.5 | $ 480 | $ 6,960.00 |
| Cherisse Cleofe | Associate | 2013 | 4.2 | $ 325 | $ 1,365.00 |
| TOTALS | | | 1,851.86 | | $ 1,253,007.25 |

---

[8] Mr. Kiesel's hours reflect 5 hours subtracted for the inadvertent double billing.

     Lead Counsel attests that the requested rates are each attorney's regular rates and that they are warranted based on each attorney's experience and credentials (which are summarized in narrative), and are justified given the demands of this case. *See* Kiesel Decl. ¶¶ 25-33. Ford argues that the rates are inflated and seeks a significant reduction in rates that would cut the total lodestar by about 48%.

     As is typical, both Lead Counsel and Ford present orders from other courts that either accepted the requested hourly rates, or found them excessive and reduced them. Lead Counsel points to only one order, in the Privacy Act class action *William Mount et al. v. Wells Fargo Bank, N.A.*, Case No. B260585, in which the California Court of Appeals, Second Appellate District, affirmed the trial court's determination that Mr. Kiesel's $1,110 hourly rate "appeared to be reasonable." *See Mount* Opinion p. 22, Kiesel Decl. ¶ 26, Ex. D. Kiesel does not present any evidence of courts finding the other requested hourly rates reasonable. Ford's expert Mr. Pierce points to the Court's fee Order in *Pedante* that reduced the requested rates for attorneys with the Knight Law Group ("KLG"), and suggests that the Court make similar adjustments for comparable counsel here. Ford also provided the extensive fee Order issued by Judge Breyer in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit*. MDL No. 2672-CRB-JSC, ECF No. 7687 (N.D. Cal. Sep. 8, 2020), reducing the hourly rates for Kiesel and Koncius to $550. Similarly, the August 26, 2019 Order on Motion for Attorneys' Fees in *Hodges v. Ford*, Orange County Sup. Ct., Case No. 30-2014-000712422, found Kiesel's requested rate of $1,280/hour and Koncius's requested rate of $895/hour unreasonable because they were "far out of line" relative to what other plaintiff's counsel sought in that case, and were "far in excess of even the 95th percentile rates for California consumer attorneys set forth in the survey" provided by their co-counsel (Mr. Altman). The *Hodges* Court reduced Kiesel's and Koncius's hourly rates to $550 each.

     The Court has considered Mr. Kiesel's declaration, the above-referenced court orders, and the Court's own experience and knowledge of rates in this community for comparable counsel, and finds that the rate sought for Kiesel and Koncius are excessive. KLG's senior partner Steve Mikhov has requested a $550 hourly rate in these cases (the Court adjusted this to $450 in *Pedante*). Kiesel and Koncius were acting as liaison counsel, which requires additional skillsets and responsibilities, so there is some justification for their rates to exceed Mikhov's. However, although this is an MDL, it is far less complex than many other MDLs, and there is no justification for Kiesel's fee to be more than twice what Mikhov requested, or for Koncius's fee to be about 1.6 times Mikhov's. Furthermore, had Liaison Counsel established a common benefit fund as is typical, the fees of any

attorneys compensated through it would have been subject to earlier regulation by the Court and to scrutiny by counsel paying into the fund. It strikes the Court as highly unlikely that the contributing lawyers would have agreed to pay Kiesel's and Koncius's requested rates. Other plaintiffs' counsel's input would have established a more realistic market-based hourly rate than counsel's claimed hourly rate. And furthermore, other counsel with lower rates would have had an opportunity to participate and potentially compete on fees for some tasks. On the other hand, Ford's proposed rates of $500 and $450 for Kiesel and Koncius undervalue their roles as lead counsel. Based on all of the foregoing, the Court finds that $700 is a reasonable hourly rate for Kiesel, and $650 is a reasonable hourly rate for Koncius.

The Court will also slightly reduce the rates for other attorneys, comparable to the reductions it made to KLG attorney rates in *Pedante* and in the concurrently-issued order adjudicating KLG's fee motion for *Bagwell* and *Fort*, and based on the evidence submitted for those motions. The Court's reasonable rate determinations and the resulting adjusted lodestar are shown in the below table.

| The Court's Reasonable Rate Determinations and Resulting Adjusted Lodestar Fee | | | | | | | |
|---|---|---|---|---|---|---|---|
| Attorney | Position | Year Admitted | Total Hours | Requested Rate | Requested Lodestar Fee | Adjusted Rates | Adjusted Lodestar Fee |
| Paul R. Kiesel | Partner | 1985 | 624.11 | $ 1,100 | $ 686,521.00 | $ 700 | $ 405,671.50 |
| Jeffrey A. Koncius | Partner | 1997 | 183.7 | $ 895 | $ 164,411.50 | $ 650 | $ 101,035.00 |
| Mariana McConnell | Partner | 2010 | 44.5 | $ 420 | $ 18,690.00 | $ 375 | $ 16,687.50 |
| Nicole Ramirez | Associate | 2011 | 227.8 | $ 420 | $ 95,676.00 | $ 375 | $ 85,425.00 |
| Stephanie M. Taft | Associate | 2016 | 725.35 | $375 | $ 272,006.25 | $ 325 | $ 235,738.75 |
| Nicholas Brancolini | Associate | 2017 | 22.7 | $ 325 | $ 7,377.50 | $ 275 | $ 6,242.50 |
| Stephanie H. Gold | Associate | 1993 | 14.5 | $ 480 | $ 6,960.00 | $ 375 | $ 5,437.50 |
| Cherisse Cleofe | Associate | 2013 | 4.2 | $ 325 | $ 1,365.00 | $ 325 | $ 1,365.00 |
| TOTALS | | | 1,846.8 | | $ 1,253,007.25 | | $ 897,993.25 |

The lodestar for Lead Counsel's fees in this case is therefore **$897,993.25**.

### D. Whether Any Adjustments to the Lodestar are Warranted

The Court next considers whether any adjustments to the lodestar are warranted. Lead Counsel does not seek any upward adjustments, and although Ford argues for reducing rates and excluding hours, it does not argue for any across-the-board downward adjustments. The Court has considered the *Ketchum*

factors and finds that no adjustment is warranted for those specific factors. Nor are any adjustments warranted for the contingent nature of these cases. The Court has considered and declines to impose adjustments or a "haircut" for any other reasons.

### E. The Lodestar Apportioned Among the 30 IDP Cases Results in a Fee of $29,933.10 Per IDP Case In Which a Plaintiff Prevails.

As discussed above, the Court has ruled that the total reasonable fee of $897,993.25 was incurred on behalf of the 30 IDP cases. Accordingly, the total fee must be apportioned among those cases, resulting in a fee of $29,933.10 per case. Therefore, from the fees adjudicated herein, Lead Counsel is entitled to a fee of $29,933.10 for each IDP case in which the plaintiff is the prevailing party.

The present motion was brought in connection with two prevailing IDP plaintiffs—*Bagwell* and *Fort*—so Lead Counsel is awarded two times the per-case amount, for a total of **$59,866.20**.

## III. CONCLUSION

For the reasons stated above, the Court **AWARDS** Lead Counsel **$59,866.20** in connection with the Bagwell and Fort cases.

Lead Counsel shall further be entitled to a reasonable fee of $29,933.10 for each IDP case in which the plaintiff is the prevailing party. The Court expects the parties to work cooperatively to effectuate this determination as the remaining IDP cases resolve.

In light of the resolution of Lead Counsel's fee Motion herein, the Court finds it unnecessary to further regulate their fees as requested by Ford, and therefore **DENIES** Ford's Motion.

**IT IS SO ORDERED**.