**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
rogerk@knightlaw.com
Daniel Kalinowski (SBN 305087)
danielk@knightlaw.com
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**BOUCHER LLP**
Raymond P. Boucher (SBN 115364)
boucher@law.com
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Telephone: (818) 340-5400
Fax: (818) 340-5401

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No.: 2:18-ML-02814-AB-FFM |
| **THIS DOCUMENT RELATES TO:** | **DECLARATION OF RAYMOND P. BOUCHER IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR ATTORNEYS' FEES** |
| *Berry v. Ford Motor Company, No. 5:17-cv-02304-AB-FFM* | |
| *Hernandez v. Ford Motor Company; 5:17-cv-02045-AB-FFM* | Filed Concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities in Support Thereof; Declaration of Roger Kirnos in Support Thereof] |
| *Hogge v. Ford Motor Company, 2:17-cv-07256-AB-FFM* | Date: August 12, 2022 |
| *Perez v. Ford Motor Company, No. 5:17-cv-02042-AB-FFM* | Time: 10:00 a.m. Courtroom 7B |
| *Zea v. Ford Motor Company, No. 2:18-cv-01831-AB-FFM* | Judge: Hon. Andre Birotte, Jr. |

## DECLARATION OF RAYMOND P. BOUCHER

I, Raymond P. Boucher, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am the name partner of Boucher LLP, co-counsel for Plaintiffs in the above-captioned matter.

2.     I submit this declaration in support of Plaintiffs' Consolidated Motion for Attorney's Fees. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief, and as to those, I am informed and believed them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

### QUALIFICATIONS, EXPERIENCE, AND ACHIEVEMENTS

3.     The law firm of Boucher LLP and its attorneys have significant experience prosecuting complex individual, class, and mass action litigation on behalf of plaintiffs. In automobile consumer warranty actions, especially, we often associate into cases to serve as lead trial counsel. When we associate into a matter as trial counsel, as we did in this case, we begin trial preparations immediately to ensure the final stages of discovery address the issues in a way that assists the trial themes we intend to present.

4.     Attached as **Exhibits 1 and 2**, respectively, are true and correct copies of the Boucher LLP firm resume and my curriculum vitae. As set forth in Boucher LLP's resume and my curriculum vitae, both my firm and I have wide-ranging experience leading and managing a variety of litigation matters in state and federal courts. When we obtain a favorable settlement in an action on behalf of an individual, we are often bound by strict confidentiality provisions that prohibit us from sharing those successes. Our skill and reputation is therefore demonstrated by frequent appointment to leadership positions in Judicial Council Coordinated Proceedings ("JCCPs") and multi-district litigation ("MDLs") involving mass tort matters and class actions, including auto defect class actions and other consumer class actions. A

2

representative sampling of the cases in which attorneys from my firm have held lead, liaison, or co-lead positions include:

a. *Skeen, et al. v. BMW of North America LLC, et al.*, Case No. 2:13-cv-1531-WHWCLW (Dist. N.J.) Appointed Co-Lead Class Counsel in nationwide consumer class action involving alleged claims for breach of warranties and violations of state consumer protection statutes for automobile defects in Mini vehicles. Final approval of nationwide settlement granted.

b. *Xu, et al. v. Porsche Cars North America, Inc.*, United States District Court for the Northern District of Georgia, Case No. 1:20-cv-00510. Class Co-Counsel prosecuting putative nationwide consumer class action claims against automotive manufacturer Porsche Cars North America, Inc. for alleged defects in engine's cooling system for 2010-2016 Porsche Panamera vehicles and 2011-2019 Porsche Cayenne vehicles equipped with V8 gasoline engines. Pending.

c. *Southern California Gas Leak Cases*, California JCCP No. 4861. Appointed to Private Plaintiff's Steering Committee and serving as a Co-Chair for the Class Action Track in mass, complex civil cases arising from natural gas leak commencing on or about October 23, 2015. Historic $1.8 billion settlement now pending.

d. *Adlouni v. UCLA Health Systems Auxiliary, et al*., Lead Case No. BC589243 (Superior Court of California, County of Los Angeles): Consolidated and related class action cases arising from data breach of medical patient information. Final approval granted. Boucher LLP is court-appointed Liaison Counsel.

e. *Abrica v. Tosco et al.*, Case No. BC239882 (Superior Court of California, County of Los Angeles): Mass tort relating to toxic refinery fire, which resolved successfully.

f. *Bartley v. Camarillo Miramonte Homeowners Association*, Case No. SC020953 (Superior Court of California, Ventura County). Class action against real estate developers on behalf of individual unit owners of a condominium project

3

for faulty construction and repairs. The units were constructed over a high water table and on poor soils which expanded and contracted, causing the units to sink, and causing floor slabs, foundations, and walls to crack. The defendants knew about the defects but did not disclose them. After receiving complaints, developers failed to repair as promised. Homeowners complained the repairs were not performed, or were not performed improperly. Resolved on eve of trial.

g.     *Black v. Blue Cross*, Case No. BC250339 (Superior Court of California, County of Los Angeles): Certified class action against a health insurer for improper mid-year contract modifications which led to a $22.5 million settlement.

h.     *Bustamante v. Southern California Gas Company, et al.*, Case No. BC285598 (Superior Court of California, County of Los Angeles): Class action against energy companies on behalf of California citizens for manipulating the natural-gas market by reporting false price and volume information to indices used to establish the cost of gas to end users.

i.     *Chavez v. Nestle USA, Inc.*, Case No.: CV09-9192 GW (CWx) (C.D. Cal.): Class action to recover for false advertising in the marketing of a beverage for infants.

j.     *Clergy Cases I & II*, California JCCP Nos. 4286, 4297, and 4359: Litigated childhood sexual abuse cases against the Archdioceses of Los Angeles, San Diego, and Orange and other Catholic entities with the total settlement exceeding $1.2 billion.

k.     *Colin Higgins Productions, LTD. v. Universal City Studios, LLC*, Case No. BC499180 (Superior Court of California, County of Los Angeles). Class action against movie studio arising from studio's calculation of profit participation from home video distribution of films. Final approval of class action settlement granted. Boucher LLP served as Co-Class Counsel.

l.     *Colin Higgins Productions, LTD. v. Paramount Pictures*

4

*Corporation*, Case No. BC499179 (Superior Court of California, County of Los Angeles). Class action against movie studio arising from studio's calculation of profit participation from home video distribution of films. Final approval of class action settlement granted. Boucher LLP served as Co-Class Counsel.

m.     *Del Campo v. Hometown Buffet, Inc. et al*., C.D. Cal. 2:14-cv-04378-RGK-SH. Court-appointed as Class Counsel in "wage and hour" class action against major restaurant chain. Final approval of settlement granted.

n.     *Espinoza, et al. v. Vander-Bend Manufacturing, LLC*, Santa Clara County Superior Court Case No. 1-15-CV-283929. Court-appointed as Class Counsel in wage and hour class and representative action on behalf of employees of Defendant. Final settlement approved.

o.     *Juarez v. Dignity Health*, Los Angeles Superior Court Case No. BC550950. Class Counsel in certified class action case against hospital chain on behalf of security guards involving donning and doffing and other wage and hour claims. Final settlement approved.

p.     *In Re Crestor Products Liability Cases*, California JCCP No. 4713. Appointed Plaintiff's Co-Lead and Co-Liaison Counsel in coordinated proceeding involving alleged personal injuries from ingestion and use of prescription drug Crestor. Settled.

q.     *In re Transient Occupancy Tax Cases*, California JCCP 4472: Represented the City of Los Angeles in a class action proceeding on behalf of all cities in the state of California to recover unremitted occupancy taxes from certain online travel companies.

r.     *In re Galvanized Steel Pipe Litigation*, Case No. BC174649 (Superior Court of California, County of Los Angeles): Class action involving construction defects that resolved successfully for $41 million.

s.     *In re Wholesale Electricity Antitrust Cases I & II*, California JCCP 4204-00005 and 4204-00006: Actions in which the plaintiff sought to recover

5

damages from energy traders for unfair business practices.

t. *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, MDL No. 09-2074 (C.D. Cal.): Served in a leadership role in a consolidated action to recover for anti-competitive price fixing and for artificial deflation of medical payments and reimbursements, leading to underpayments to doctors for medical care that they provided, and to artificially high charges for out-of-pocket costs to insured individuals for medical care that they received.

u. *In Re: Wright Medical Technology, Inc.*, Conserve Hip Implant Products Liability Litigation, MDL No. 2329 and Wright California JCCP. Co-Lead Counsel and Plaintiff's Steering Committees in complex national and state complex litigations involving defective hip system product.

v. *Lopez, et al. v. Citrus Valley Health Partners, Inc.*, Super. Ct., Los Angeles County, Case Nos. BC544139 and BC545110. Court-appointed as Class Counsel in "wage and hour" class actions against large California hospital entity. Final approval of settlement granted.

w. *Moppin v. Los Robles Regional Medical Center, et al.*, Case No. 5:15-CV-01551-JGB-DTB (C.D. Cal.). Court-appointed as Class Counsel in wage and hour class action against hospital entity and travel nurse staffing agency on behalf of temporary nurse employees. Final approval of settlement granted.

x. *Securitas Wage and Hour Cases*, California JCCP No. 4837. Appointed Lead and Co-Liaison Counsel in coordinated class action proceedings against security company on behalf of security guards.  Final settlement approval granted.

y. *Silver v. Del Webb*, Nevada Case No. A437325: A certified class construction defect suit involving the installation of faulty plumbing systems in new homes. The litigation resulted in a $21 million settlement.

z. *Zoloft Birth Defects Cases*, JCCP No. 4771. Appointed Plaintiff's Co-Lead Counsel in coordinated proceeding involving alleged birth

6

defect claims arising from mother plaintiff's use and ingesting of prescription anti-depressant drug.

5.     As more fully set forth in my curriculum vitae, a true and correct copy of which is attached hereto as **Exhibit 2**, throughout my career I have also held numerous leadership positions in various legal organizations. I was the 2007 President of Consumer Attorneys of California ("CAOC"), and the 2005 President of Consumer Attorneys Association of Los Angeles ("CAALA"). I am presently a member of the Board of Directors of Public Justice; a member of the Pepperdine School of Law Board of Visitors; a member of the Diversity in Law Foundation; and the California State Delegate to the Association of Trial Lawyers of America. I also previously served on the Los Angeles County Bar Association Board of Directors, and as the California State Delegate to the American Association of Justice.

6.     I have been honored with numerous awards and distinctions for my work. Notably, I was the recipient of the Los Angeles Daily Journal Trial Lawyer of the Decade, 2001-2010, in particular for my work in California JCCPs entitled Clergy Cases I & II, JCCPs 4286, 4297, and 4359. In 2007, I received both the CAALA and CAOC Trial Lawyer of the Year Awards. I have also received the Trial Lawyer of the Year Award from the Orange County Trial Lawyers Association. I have also received the CLAY award from California Lawyer Magazine, which recognizes attorneys from across the state whose achievements have made a profound impact on the law. Additionally, the Honorable Chief Justice Ronald George and the California State Bar honored me with an award for my efforts on behalf of court funding and on behalf of the State Courts of California. In 2006, I was presented with the David S. Casey, Jr. Consumer Advocate Award by the Consumer Attorneys of San Diego; and the Justice Armand Arabian Award by the Project Sister organization. The California League of Conservation Voters awarded me with the 2005 Environmental Leadership Award for my longstanding dedication to the environment and public health rights of individuals, and I was the recipient of the Ted Horn Memorial Award, a CAALA honor for the

7

selfless gift of one's talent. Additionally, I have been the recipient of numerous Presidential Awards, Awards of Merit and Commendation from Trial Bars around the country.

7.      I personally have extensive trial experience and have briefed and argued many appeals before the Ninth Circuit Court of Appeals and California Courts of Appeal.

8.      I am a frequent speaker at CAOC, CAALA, AAJ, law schools, and National College of Advocacy seminars and various educational conventions throughout the country. I spend a considerable amount of time performing pro bono work and community service. I began my career doing pro bono work with Cesar Chavez and the United Farm Workers. More recently, I took a humanitarian trip to Uganda to assist improving the Juvenile Justice system. I have spearheaded fundraisers for various local, state and national organizations.

9.      I frequently advise U.S. Senators and Representatives, as well as California State Senate, Assembly and Constitutional Officers about legal and political issues. In the fall of 2004, I helped lead the fight to defeat Proposition 64, which sought to limit the ability to bring environmental polluters to justice. I have received commendations from U.S. Senators Barbara Boxer and Diane Feinstein, from numerous Congressmen and women, including U.S. Flags flown over the U.S. Capitol for my humanitarian efforts. Likewise, I have received commendations from the Governor, Lt. Governor, State Senate, State Assembly, Mayor of Los Angeles, and the Board of the Los Angeles City Council.

10.     As set forth below, I have personally been involved in the above-entitled actions and my firm and I have spent a reasonable amount of time investigating the alleged claims to develop and strengthen pathways to favorable resolution. My firm, Boucher LLP, has the resources, both financially and personnel-wise, to pursue this type of litigation. It has committed to technology and has invested in complex litigation software tools that allow it to litigate a case of any size and scope. The firm's

8

lawyers are also widely acknowledged by their peers as possessing the skills and resources to litigate class actions effectively and efficiently.

## BOUCHER LLP'S WORK ON BEHALF OF PLAINTIFFS

11. In or about December of 2019, I was invited by Knight Law Group LLP ("Knight Law") to take part in the representation of consumers with claims asserted against Ford Motor Company related to its Focus and Fiesta vehicles equipped with a defective DPS6 transmission. It was expected of me that I bring my significant experience with automotive litigation and mass action litigation to benefit clients of Knight Law.

12. My firm and Knight Law worked in a collaborative and efficient manner to provide excellent representation while minimizing duplication wherever possible. We assigned specific tasks to the appropriate responsible attorneys. We took steps to avoid the duplication of labor, including limiting attorney assignments and other tasks to only those necessary. This meant that where appropriate, only one attorney among the two firms had primary responsibilities relating to specific projects. At other times, as appropriate, attorneys from different firms would join forces to jointly take on the primary responsibility of a task based on the assessment of the time and resources needed for this task. Based on these protocols, I believe that the hours and work performed in this litigation were reasonable and necessary.

13. Separate from the time covered in the Court's July 22, 2021 Order Granting the Consolidated Motion for Attorneys' Fees [Doc 1153], my office has performed additional and substantive work in furtherance of the IDP and the MDL. In Spring and Summer of 2020, my office prepared for and conducted depositions of Ford apex witnesses, including Bennie Fowler. My office also assisted Knight Law with preparing for depositions of other Ford apex witnesses, including Raj Nair and Robert Fascetti. Given the challenges of apex depositions and my office's extensive litigation and trial experience, my involvement in preparing for depositions of Ford's apex witnesses with Knight Law was key to strategy and overall success of the

9

deposition examinations. Also in 2020, I conducted depositions of other Ford employees, including but not limited to Chris Kwasniewicz, Matthew Fyie, and John Cannon.

14.     Attached as **Exhibit 3** is a true and correct copy of Boucher LLP's time records for this matter. All of the tasks performed, and time expended, were reasonable and necessary for the prosecution and ultimate settlement of Plaintiffs' claims.  Boucher LLP expended a total of **432.20** hours of work for a total lodestar of **$159,262.50**.

15.     The qualifications of the attorneys identified in the billing are set forth in the attached **Exhibit 1**.

16.     The hourly rates charged by Boucher LLP attorneys in this case are consistent with the Court's prior July 22, 2021 Order Granting the Consolidated Motion for Attorneys' Fees. These hourly rates are at or below the prevailing market rates for attorneys of comparable experience and skill handling complex litigation in California. Boucher LLP's usual attorney hourly rates, which are higher than the rates set by this Court, have been approved by state and federal courts presiding over class actions, including cases reflected in the firm resume and my curriculum vitae. For example, the full attorney rates were approved in:

a.     *Moppin v. Los Robles Regional Medical Center, et al*., Central District of California Case No. 5:15-CV-01551-JGB-DTB, (**Exhibit 4**);

b.     *Colin Higgins Productions, Ltd. v. Universal City Studios, LLC*, Los Angeles Superior Court Case No. BC499180, (**Exhibit 5**);

c.     *Colin Higgins Productions, LTD. v. Paramount Pictures Corporation*, Los Angeles Superior Court Case No. BC499179, (**Exhibit 6**);

d.     *Lopez, et al. v. Citrus Valley Health Partners, Inc.*, Los Angeles Superior Court Case Nos. BC544139 and BC545110, (**Exhibit 7**);

e.     *Del Campo v. Hometown Buffet, Inc. et al*., Central District of California Case No. 2:14-cv-04378-RGK-SH, (**Exhibit 8**).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 6, 2022 at Woodland Hills, California.

_____
Raymond P. Boucher
Declarant

DECLARATION OF RAYMOND P. BOUCHER IN SUPPORT OF
PLAINTIFFS' CONSOLIDATED MOTION FOR ATTORNEYS' FEES

# EXHIBIT 1

# BOUCHER LLP

Founded by Raymond P. Boucher—Los Angeles Daily Journal's Trial Lawyer of the Decade (2001-2010)—Boucher LLP focuses on the prosecution of high-impact, complex litigation, including class actions, mass actions, and representative actions on behalf of consumers and employees harmed by major corporations and insurance companies; civil rights and police misconduct cases; cases involving the sexual abuse of minors and disabled; and significant personal injury and wrongful death cases. Boucher and his colleagues are frequently appointed class counsel in major class actions and often serve among plaintiffs' leadership in state and federal coordinated proceedings.

Boucher's successes include a groundbreaking $1 billion settlement on behalf of the victims of childhood sexual abuse by Catholic priests. He has long been a trusted resource for referring attorneys. His skill and tenacity also make him sought after as co-counsel.

Boucher built the firm from the ground up, handpicking dynamic, talented, and experienced attorneys who share his vision and values. Clients can expect meticulous preparation and tenacious, relentless representation, as well as highly individualized and compassionate service.

## EXPERTISE AND RESOURCES

Boucher LLP has the expertise and resources to handle cases against major corporations from intake through trial. The firm is well-equipped to conduct discovery in a variety of cases, including large complex cases. Sophisticated technology and analytical protocols are employed to capture, evaluate, and present information gleaned from documents numbering in the multi-millions. In coordinated proceedings, the firm has the experience and leadership qualities needed to effectively manage resources to ensure efficiency of litigation.

### Consumer Class Actions

The firm has extensive experience with consumer class action litigation and the relevant issues in evaluating and settling class action claims. Boucher LLP's attorneys have litigated and certified consumer class actions in a range of areas—from automotive and other product defects, to privacy and data breach, to antitrust, breach of contract, and other business disputes.

Boucher LLP's attorneys have served as lead class counsel and/or on the plaintiffs' steering committee in numerous consumer class action cases including, *In Re Aetna UCR Litigation*, Dist. N.J., MDL No. 2020 (Class Counsel), *American Medical Association et al. v. Wellpoint, Inc*., C.D. Cal, MDL No. 2074 (Interim Co-Lead Class Counsel), *Black v. Blue Cross of California*, Super. Ct. Los Angeles County, No. BC250339 (Class Counsel), *Chavez v. Nestlé USA, Inc*. C.D. Cal., No. CV09-9192 GW (CWx) (Lead Counsel), *In Re: Facebook, Inc. Internet Tracking Litig*., N.D. Cal., MDL No. 2314 (Interim Liaison Counsel), *In Re Galvanized Steel Pipe Litigation*, Super. Ct. Los Angeles County, No. BC174649 (Lead Class Counsel), *In re: Pellicano Cases*, Super. Ct. Los Angeles County No. BC316318 (Co-Lead Class Counsel), *Sister Sledge et al. v. Warner Music Group Corp*., N.D. Cal., No. 12-CV-0559-RS (Interim Co-Lead Class Counsel), and *Skeen, et al. v. BMW of North America LLC, et al.*, Dist. N.J., No. 2:13-cv-1531-WHW-CLW (Co-Lead Class Counsel).

## Employment Class and Representative Actions

Boucher LLP is currently prosecuting numerous class and representative cases against corporations on behalf of thousands of workers alleging wage-and-hour violations, including claims for violations of meal and rest break laws, illegal rounding of time, and failure to pay all wages. The firm is committed to ensuring employees are properly compensated under state and federal laws, and to holding corporations accountable for failing to abide by the law.

## Mass Tort Litigation

Boucher LLP's attorneys have obtained favorable recoveries for thousands of clients harmed by major pharmaceutical companies. Boucher presently serves in leadership for numerous coordinated proceedings in state and federal court, including *In Re Crestor Products Liability Cases*, Super. Ct. Los Angeles County, JCCP No. 4713 (Plaintiffs' Co-Liaison Counsel), *In Re Diet Drug Litigation*, Super. Ct. Los Angeles County, JCCP 4032 (Plaintiffs' Co-Liaison Counsel), *In re Wright Medical* Technology*, Inc., Conserve Hip Implant Products Liability Litigation*, MDL No. 2329 (Co-Lead Counsel for Plaintiffs and state Liaison Counsel), and *Zoloft Birth Defects Cases*, JCCP No. 4771 (Plaintiffs' Co-Lead Counsel).

Boucher LLP's attorneys have also successfully resolved mass tort cases involving toxic exposure, including, among others, *Bunker Hill Twrs Condo Ass'n, et al. v. W.R. Grace & Co*., Super. Ct. Los Angeles County, No. B072642, and *Zachary et al. v. ARCO et al.*, Super. Ct. Los Angeles County, No. BC209944.

## Complex, High-Impact Litigation

Boucher LLP is committed to advancing the rights of the people and to holding corporations accountable. Throughout his career, Mr. Boucher has brought worthy cases in furtherance of these goals. For example, in the *California Gubernatorial Recall Election Litigation*, Boucher represented former Governor Gray Davis in a challenge to the qualification of the 2003 California gubernatorial recall election. In *Madrid v. Perot Systems Corporation et al*., Super. Ct. Sacramento County, No. 03AS04763, Boucher resolved an antitrust and unfair competition action to recover from Perot Systems Corporation for aiding and abetting the manipulation, distortion, and corruption of California's electricity market. More recently, in *Centinela Freeman Emergency Medical Associates, et al. v. Maxwell-Jolly, et al.*, Super. Ct. Los Angeles County, No. BC406372, Boucher and his partners obtained an order compelling California's Department of Health Care Services to comply—for the first time ever—with their obligation to annually review of Medi-Cal physician reimbursement rates to ensure access to quality healthcare in California. These are but a few of the many "impact" cases Boucher and his colleagues have pursued in the interest of positive social change.

2

### Civil Rights and Police Misconduct Cases

Boucher LLP prosecutes individual, mass, and class actions against public entities for civil rights violations and police misconduct. The firm is committed to helping people obtain justice and to motivating significant policy changes.

Boucher is particularly proud of the published result in *Wallace v. City of Los Angeles* (1993) 12 Cal. App. 4th 1385, a case of first impression he brought against the City on behalf of Demetria Wallace, a teenaged honors student who was shot and killed while waiting for a bus, just five days before she was to testify against a man accused of fatally shooting a taxi driver. After non-suit was granted at trial, the appeals court held the police had a duty to warn the victim. The case affirmed the government's responsibility to protect citizens who place their lives in jeopardy by stepping forward as witnesses to crimes, and prompted changes in police procedures that have saved countless other witnesses' lives since.

### Sexual Abuse Cases

Boucher LLP prosecutes individual and mass action cases against public and private entities that fail to protect minors and the disabled from sexual abuse. The firm's attorneys have extensive experience representing survivors of sexual abuse in such cases.

For example, in *The Clergy Cases,* Super. Ct. California, JCCP Nos. 4286, 4297, 4359, Boucher served as Plaintiffs' Liaison Counsel on behalf of almost 1,000 individuals and their families in significant personal injury claims involving molestation at the hands of Catholic priests. In *Jane Doe v. Garden Grove Unified School District,* Boucher prosecuted claims on behalf of a child victim of sexual abuse at school against a public school district. *Elena A. et al. v. Casa de Angeles Cal. Corp., d/b/a Healthy Start, et al*., Super. Ct. Los Angeles County, No. BC457840, was brought on behalf of developmentally disabled adults who were subjected to serious verbal, physical, and sexual abuse and neglect while attending an adult day care center. And Boucher was a leader in *Los Angeles Unified School District Sexual Molestation Cases*, which were brought on behalf of the many children who were molested by a teacher at Miramonte Elementary School.

### Significant Personal Injury and Wrongful Death

Boucher LLP represents individuals who have suffered serious personal injury or the death of loved ones.

The firm is committed to obtaining the justice that its clients deserve. For example, in *Young v. Johnny's Hot Dog Stand, et al*., Super. Ct. Los Angeles County, No. BC102837, Boucher obtained a jury verdict in excess of $1 million in compensatory damages on behalf of 57-year-old indigent person who was shot by a waitress outside of a hot dog stand. The firm is also passionate about seeking justice on behalf of children and adults who have suffered serious injuries from in apparel fires.

# BOUCHER LLP

## RAYMOND P. BOUCHER

Raymond P. Boucher, a veteran trial lawyer specializing in complex consumer litigation, class actions, product liability, toxic tort litigation, employment discrimination and bad faith, is the Founder and Senior Partner of Boucher LLP.

During his professional career, which spans three decades, Boucher has tried more than 50 cases, and has helped obtain verdicts and settlements on behalf of clients in excess of $3 billion.  In two of his more notable cases, he served as lead attorney in the landmark $660 million sexual abuse settlement with the Catholic Archdiocese of Los Angeles in which he represented over 250 abuse victims in the July 2007 settlement as well as obtaining nearly $200 million for 144 survivors in a lawsuit against the Roman Catholic Diocese of San Diego.  Boucher has briefed and argued more than 20 appeals before the Ninth Circuit Court of Appeals and California Courts of Appeal.

For his professional achievements, Boucher has received a diverse array of honors and awards, to include recognition as: "Top 100 Attorneys in California" (2002) by the Daily Journal; "Trial Lawyers of the Decade, " (2001-2010) by the Daily Journal;  "California Lawyer Attorney of the Year" (2008) by California Lawyer; "Consumer Attorney of the Year" (2007) by the Consumer Attorneys of California; and "Trial Lawyer of the Year" by the Consumer Attorneys Association of Los Angeles (additional awards listed below).

A noted author and lecturer, Boucher has lectured at numerous law schools (e.g. Stanford, Pepperdine, Loyola) and has delivered hundreds of presentations to bar associations and other legal organizations as well as legal media sponsored events and educational and government forums.

Prior to founding Boucher, LLP, Boucher served several other Los Angeles area law firms, including:  Kiesel, Boucher & Larson LLP (Partner), Law Offices of Raymond P. Boucher (Founder/Senior Partner), Nordstrom, Steele, Nicolette & Jefferson (Of Counsel), Sayre, Moreno, Purcell & Boucher (Managing Partner), and Gould & Sayre.

A native of Massachusetts, Boucher received his undergraduate education at Fort Lewis College in Durango, CO where he received his Bachelor of Arts degree with a double major in Business Administration and Political Science.

He was Student Body President, on the Dean's List and later was honored as its "Alumnus of the Year" (2007). He matriculated to Colorado State University where he received a Master of Science degree in Management. Boucher obtained his Juris Doctor degree from Pepperdine University School of Law While in law school, Boucher ranked in the top 15% of his class, was a member of the Phi Delta Phi honor society and later honored in 2002 with its Distinguished Alumnus Award.  He received an Honorary Doctor of Law by Whittier College School of Law in 2005.

Boucher is admitted to the State Bar of California as well as the United States District Court for the Central, Northern, Southern and Eastern Districts of California.  He is a member of, and has held leadership positions in, numerous legal professional entities, including:

- American Association for Justice, Member

- American Bar Association, Admitted as a Fellow of the American Bar

- Association of Trial Lawyers of America, State of California Delegate Member

# BOUCHER LLP

- Beverly Hills Bar Association, Member
- California Courts, Administrative Office of the Courts (2002 to 2007), Committees: Court Funding, Complex Courts System, Court Integration
- California State Bar Association, Member
- Civil Justice Foundation, Member
- Consumer Attorneys Association of Los Angeles (Formerly the Los Angeles Trial Lawyers Association) President (2005), Board of Governors, Emeritus Member (2005 to present), Board of Governors, Member (1996 to 2006)
- Consumer Attorneys of California (Formerly the California Trial Lawyers Association, President (2007), Board of Governors (1997 to present)
- Consumer Attorneys of San Diego (2001 to present), Consumer Advocate of the Year (2007)
- Diversity in Law Foundation, Board of Directors
- Los Angeles County Bar Association, Board of Trustees (2000 to 2002)
- Los Angeles Superior Court Bench and Bar Committee (2001 to 2008)
- National College of Advocacy, Fellow
- Orange County Trial Lawyers Association, Member
- Pepperdine School of Law, Board of Visitors (1997 to present)
- Public Citizen, Member
- Public Justice (Formerly Trial Lawyers for Public Justice), Board of Directors (1996 to present), Member (1984 to present)
- The Roscoe Pound Foundation, Member

Among the other honors, awards and other forms of recognition Boucher has received for his professional achievements and accomplishments from legal, community, educational, nonprofit and media entities, include:

- American Association for Justice Steven J. Sharp Public Service Award (2008)
- Consumer Attorneys Association of Los Angeles Ted Horn Memorial Award in recognition of service to the California State Bar (2002), Finalist, Trial Lawyer of the Year (1996) , Several Presidential Awards for Outstanding Contribution to the Trial Bar
- Consumer Attorneys of California Legislative Champion Award (2002), Several Presidential Awards of Merit
- Consumer Attorneys of San Diego David S. Casey, Jr. Consumer Advocate Award (2006)
- California League of Conservation Voters Environmental Leadership Award (2005) for dedication to the environment and for fostering the public health rights of individuals
- Fort Lewis College, Durango, Colorado Alumnus of the Year (2007)

# BOUCHER LLP

- Lawdragon Named one of 500 Leading Lawyers in America (2009-2014)

- Los Angeles Daily Journal Law Business Named one of the 100 Most Influential Attorneys in California several times

- Los Angeles Magazine Super Lawyer (2001 to present); named one of the Top 100 Super Lawyers in Southern California (2010 to present)

- Loyola Law School Champion of Justice Award (2008)

- Martindale-Hubbell, Peer Reviewed AV (highest rating)

- Orange County Trial Lawyers Association Top Gun Award (2008)

- Pepperdine University School of Law Distinguished Alumnus Award (2002)

- Project Sister Family Services Justice Armand Arabian Award (2006) for outstanding efforts to secure justice for victims of clergy abuse

- Trial Lawyers for Public Justice Trial Lawyer of the Year (1994)

Additionally, Boucher has been the recipient of presidential awards, awards of merit, recognition and commendation from federal, state and local government entities as well as a variety of bar associations.

Boucher, who resides in Tarzana, CA, is active in numerous business, civic, community and charitable organizations (e.g. Ambassador, Make a Wish Foundation).  He is also active in fund raising for various local, state and national organizations for whom he has raised millions of dollars.  He spends significant time doing pro bono work and frequently advises California Senate, Assembly and constitutional offices about legal and political issues.

# BOUCHER LLP

### BRIAN BUSH

Brian Bush, a trial lawyer who concentrates his legal practice in the areas of civil rights, personal injury and mass tort litigation, and serves as Of Counsel to Boucher LLP.

Bush is admitted to the State Bar of California as well as the United States District Courts for the Central, Eastern and Northern Districts of California.  Among his professional affiliations, he is a member of the American Association for Justice, Los Angeles County Bar Association and the Consumer Attorneys Association of Los Angeles (CAALA).

Bush received his Juris Doctor degree from Loyola Law School in Los Angeles.  Throughout law school, Bush volunteered at the Los Angeles County District Attorney's Office.  In his capacity as a certified law student, he presided over numerous felony preliminary hearings, evidence suppression hearings and also served as second chair for the prosecution in a child molestation trial.

While in law school, Bush competed in trial advocacy tournaments in California and New York as a member of Loyola's nationally-ranked Byrne Trial Advocacy Team and served as speaker, co-chair and vice president of Loyola's student chapter of CAALA.  Additionally, at Loyola, he earned First Honors awards in White Collar Crimes, Cross Examination and Advanced Trial Advocacy.

A native of Seattle, WA, Bush attended Washington State University where he obtained a Bachelor of Arts degree in Communications with an Advertising Emphasis.  At the university, he was on the Dean's Honor Roll (2001-2004), was a graduate of the WSU Honors College, served as President and Vice President of the Ad Club and was a member of the student chapter of the American Advertising Federation.

# BOUCHER LLP

## NEAL S. BUTALA

Neal S. Butala is an Associate of Boucher LLP. Neal attended the University of California, Berkeley where he received a Bachelor of Arts degree in History. Neal then attended Southwestern Law School in Los Angeles where he obtained his Juris Doctor degree and was a CALI Award Winner. During law school, Neal worked full-time for a major financial institution as an executive in the mortgage banking division. Neal is well-versed in all aspects of residential mortgage lending including origination, underwriting, secondary marketing and securitization, and servicing.

During the beginning of his legal career, Neal focused his practice on representing a major banking house in commercial litigation (e.g. representations and warranty litigation) with mortgage lenders, builders, monoline insurance companies, and other financial institutions. Neal is a skilled negotiator and adept at bringing resolution to complicated high-exposure litigation and disputes.

After several years working for one of the nation's four largest banks, Neal joined a boutique law firm in Pasadena, CA representing consumers and small businesses in financial-services related litigation and transactional real estate matters (e.g. TILA litigation, wrongful foreclosure, partition actions, commercial real estate purchase and sale agreements, etc.). Thereafter, Neal joined Boucher, LLP where he continues to pursue justice on behalf of wronged consumers.

Neal is admitted to the State Bar of California and is licensed to practice before all state courts in California.

Born and raised in Woodland Hills, CA, Neal is a lifelong resident of the San Fernando Valley. He currently resides in Granada Hills, CA with his wife, two children, and dog. Among his personal interests, he is an avid runner, reader, and enjoys travelling.

# BOUCHER LLP

### TRACY L. EGGITT

Tracy Eggitt is an Associate of Boucher LLP. She is a member of the firm's auto defect and safety team, representing consumers in individual actions against auto manufacturers who violate California laws.

Tracy earned a Bachelor of Arts degree in Environmental Biology from California State University, Northridge in 1998. Thereafter, Tracy earned a Juris Doctor degree from University of West Los Angeles Law School in 2004. During law school, Tracy made the Dean's List three years in a row and participated in a National Criminal Procedure Moot Court Tournament. Following law school, Tracy worked for several years for national law firms in the Los Angeles area, analyzing documents for privilege and other issues in complex cases, before joining Boucher LLP in 2019.

Tracy is a member of the State Bar of California and is licensed to practice in all California state courts. She is also a member of the Consumer Attorneys Association of Los Angeles.

# BOUCHER LLP

## ALEXANDER GAMEZ

Alexander Gamez is an Associate of Boucher LLP. He is a member of the firm's complex employment team, representing employees in class actions and PAGA actions against employers who violate California and federal wage and hour laws. Alex has successfully helped the firm prosecute a wide range of employment violations for the benefit of employees.

Alex earned a Bachelor of Arts degrees in Political Science and graduated cum laude from California State University, Fullerton in 2012. Thereafter, Alex earned a Juris Doctor degree from Southwestern Law School in 2015. During law school, Alex clerked for the U.S. Equal Employment Opportunity Commission, served as a Student Coordinator for the National Lawyers Guild Court Watch Program, and also served as a member of the Public Interest Law Committee.

He also obtained numerous awards and distinctions during law school for his public interest and pro bono efforts.

Alex is a member of the State Bar of California and is licensed to practice in all California state courts. He is also a member of the Consumer Attorneys Association of Los Angeles.

# BOUCHER LLP

## HERMEZ MORENO

Hermez Moreno, a veteran trial lawyer who specializes in complex police misconduct litigation and catastrophic person injury and trial work, serves as Of Counsel to Boucher LLP.

During his professional career, which spans nearly four decades, Moreno has a diverse array of litigation experience and has attained verdicts and settlements for his clients up to eight figures.  Some of the legal areas he has litigated include:

- Civil Rights
- Medical/Legal Malpractice
- Mass Torts
- Insurance Bad Faith
- Police Misconduct
- Excessive Use of Force
- False Arrest/Imprisonment
- Asbestos Personal Injury
- Mishandling of Human Remains
- Traumatic Brain Injury
- Asbestos Commercial Property   Damage
- Asbestos Personal Injury
- Jail Abuse

Moreno also has extensive experience in transactional work and has been involved in the negotiating and drafting of contracts and other documents for entertainers in the fields of film, music recordings and film and recording financing.  He has also negotiated and drafted contracts for the sale and purchase of businesses and landmark real estate in the Los Angeles area.

Moreno, who began his career handling civil rights cases throughout California, served as Special Counsel to Cesar Chavez (1984-1993) and as Trial Counsel for the United Farm Workers Union (1984-1990) in areas involving labor disputes and cases brought by growers' efforts to break the union.  He also represented indigent clients in pro bono cases and continues to do so.

In addition to his legal practice, Moreno is actively serving as a professor of trial advocacy.  He has served as a Clinical Professor at the UCLA School of Law in its Trial Advocacy Program and has been both a Visiting Associate Professor of Law, Clinical Instructor in the Trial Advocacy Program of Southwestern Law School and currently serves as an Adjunct Professor of Law in the school's Trial Advocacy and Civil Rights Program.

Moreno is admitted to the State Bar of California as well as the United States Supreme Court, United States Court of Appeal Ninth Circuit, United States Court of Appeal, Federal Circuit and the United States District Court for the Central, Northern, and Eastern

Districts of California.  Among his professional affiliations, he is or has been a member of:

- Consumer Attorneys of California

# BOUCHER LLP

- Consumer Attorneys Association of Los Angeles

- Trial Lawyers for Public Justice

- Mexican American Bar Association (Board of Trustees)

- Mexican American Bar Foundation (Board of Directors)

- Santa Monica Third Street Development Corporation (Board of Directors)

A native of Mexico, Moreno attended the University of California, Santa Barbara where he received a Bachelor of Arts degree in Political Science.  He obtained his Juris Doctor degree from the UCLA School of Law.  While in law school, he co-founded Centro Legal de Santa Monica, Inc., a non-profit legal aid office operated by UCLA Chicano law students.  The organization, which subsequently merged with Westside Legal Services, provided legal services to underprivileged residents in Santa Monica and Moreno served as a Board of Trustees member and supervising attorney.

Moreno lives with his wife in Moorpark, CA on a 15-acre horse ranch.  Among his personal interests, he is an art collector, an artist, and has written his first novel.

# BOUCHER LLP

### LISA BAKER MORGAN

Lisa Baker Morgan serves as Of Counsel to Boucher LLP to assist the firm with helping people who have been harmed by the misconduct of others. Lisa earned a Bachelor of Arts degree in English Literature from the University of Southern California. She then obtained her Juris Doctor degree from Southwestern Law School in 1995, where she participated in Moot Court and graduated with honors. Before serving as Of Counsel to Boucher LLP, Lisa was an associate for many years at Mitchell, Silberberg and Knupp LLP. She is a member of the State Bar of California and is licensed to practice law in all California state courts, as well as the United States District Courts for the Ninth Circuit.

# BOUCHER LLP

## MARIA L. WEITZ

Maria L. Weitz, an attorney with broad experience in numerous areas of consumer law, is a partner of Boucher LLP.

Throughout her legal career, Weitz has focused her practice on unfair, deceptive, and fraudulent business practices, and seeking legal accountability on behalf of injured plaintiffs. As a result, her diverse range of litigation experience spans a wide array of legal issues, including complex class actions, product liability and other personal injury cases, employment litigation, and appellate practice.

Weitz received her undergraduate education at the University of California, Los Angeles, where she earned a Bachelor of Arts degree in Sociology and Communications. Her interest in civil justice developed while attending the University of California, Davis School of Law, where she earned her Juris Doctor degree. She received a Public Service Law Certificate recognizing her legal work in public interest organizations and government agencies. This work included serving as co-counsel in a federal jury trial on behalf of an inmate alleging civil rights violations, and working within the California Attorney General's Office to prosecute civil cases for violations of California's Air Pollution Control Laws. She also received a Witkin Award for Academic Excellence in Legal Writing and the Sacramento County Bar Association Diversity Fellowship.

Over ten years of practice, Weitz has secured major appellate victories and significant client compensation by leveraging the creative, strategic approach that is Boucher LLP's hallmark. Weitz's work has helped recover millions of dollars for the firm's clients, including a recent 8-figure recovery on behalf of a construction worker who was injured on the job. Her appellate work has led to two published pro-consumer cases on significant issues of first impression: *Quezada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th 298 (unanimously vindicating the rights of consumers who paid a premium "organic" price for conventionally grown produce that was deliberately mislabeled), and *Barriga v. 99 Cents Only* (Jun. 26, 2020) __ Cal.App.5th __ (recognizing that employer-employee relationships carry a heightened potential for coercion, and imposing a duty on trial courts to closely scrutinize declarations filed by an employer in opposition to class certification).

In recognition of her career accomplishments, Weitz has been selected as a Southern California Rising Star by Super Lawyers Magazine 2013-2020, included among the National Trial Lawyers' Top 40 Under 40 Civil Plaintiff Attorneys in California, and nominated to the National Women Trial Lawyers' Top 25.

Weitz is admitted to the State Bar of California, the United States Court of Appeals for the Ninth Circuit, and the United States District Courts in the Northern, Southern, Central, and Eastern Districts of California.

# EXHIBIT 2

## CURRICULUM VITAE

### RAYMOND PAUL BOUCHER, ESQ.
### BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367
Tel. (818) 340-5400 | Fax (818) 340-5401
ray@boucher.la | www.boucher.la

### EDUCATION

**Pepperdine University School of Law, Malibu, California**
Distinguished Alumnus Award (2002).  Juris Doctorate (1984).
Ranked in top fifteen percent of class.  Moot Court (first place petitioner brief).
Phi Delta Phi honor society.

**Whittier College School of Law, Costa Mesa, California**
Honorary Doctor of Law (2005).

**Colorado State University, Fort Collins, Colorado**
Master of Science in Management (1981).  Graduate assistant.
Sigma Iota Epsilon honor society.

**Fort Lewis College, Durango, Colorado**
Alumnus of the Year (2007).  Bachelor of Arts (1979).  Double Major, Business
Administration and Political Science.  Student Body President.  Dean's List.

### ADMISSIONS

State Courts of California; United States District Courts for the Central, Northern,
Southern, and Eastern Districts of California

### PROFESSIONAL EXPERIENCE

**Boucher LLP**, Woodland Hills, California
Partner (Present)

**Kiesel, Boucher & Larson LLP**, Beverly Hills, California
Partner (1999 to 2013)

**Law Offices of Raymond P. Boucher**, Tarzana, California
Partner (1990 to present)

**Nordstrom, Steele, Nicolette & Jefferson**, Los Angeles, California
Attorney of Counsel (1993 to 1996)

**Sayre, Moreno, Purcell & Boucher**, Los Angeles, California
Managing Partner (1985 to 1990)

**Gould & Sayre,** Santa Monica, California
Attorney at Law (1984 to 1985)

Raymond Paul Boucher
Curriculum Vitae
Page 2

**AFFILIATIONS AND SELECTED LEGAL INVOLVEMENT**

**American Association for Justice**, Member

**American Bar Association**, Admitted as a Fellow of the American Bar

**Association of Trial Lawyers of America**
 State of California Delegate
 Member

**Beverly Hills Bar Association**, Member

**California Courts, Administrative Office of the Courts** (2002 to 2007)
 Committees:  Court Funding, Complex Courts System, Court Integration

**California State Bar Association**, Member

**Civil Justice Foundation**, Member

**Consumer Attorneys Association of Los Angeles**
*Formerly the Los Angeles Trial Lawyers Association*
 President (2005)
 Board of Governors, Emeritus Member (2005 to present)
 Board of Governors, Member (1996 to 2006)

**Consumer Attorneys of California**
*Formerly the California Trial Lawyers Association*
 President (2007)
 Board of Governors (1997 to present)

**Consumer Attorneys of San Diego** (2001 to present)
 Consumer Advocate of the Year (2007)

**Diversity in Law Foundation**, Board of Directors

**Los Angeles County Bar Association**
 Board of Trustees (2000 to 2002)

**Los Angeles Superior Court Bench and Bar Committee** (2001 to 2008)

**Make a Wish Foundation**, Ambassador

**National College of Advocacy**, Fellow

**Orange County Bar Association**, Member

**Orange County Trial Lawyers Association**, Member

**Pepperdine School of Law**
 Board of Visitors (1997 to present)

**Public Citizen**, Member

**Public Justice**, Board of Directors
*Formerly Trial Lawyers for Public Justice*
 Board of Directors (1996 to present)
 Member (1984 to present)

**The Roscoe Pound Foundation**, Member

Raymond Paul Boucher
Curriculum Vitae
Page 3

**SELECTED AWARDS AND HONORS**

**Trial Lawyer of the Decade (2001-2010)**
Los Angeles Daily Journal

**American Association for Justice**
Steven J. Sharp Public Service Award (2008)

**California Lawyer Magazine**
California Lawyer Attorney of the Year (CLAY) Award (2008)

**Consumer Attorneys of Los Angeles**
Trial Lawyer of the Year (2007)
Ted Horn Memorial Award in recognition of service to the
California State Bar (2002)
Finalist, Trial Lawyer of the Year (1996)
Several Presidential Awards for Outstanding Contribution
to the Trial Bar

**Consumer Attorneys of California**
Consumer Attorney of the Year (2007)
Legislative Champion Award (2002)
Several Presidential Awards of Merit

**Consumer Attorneys of San Diego**
David S. Casey, Jr. Consumer Advocate Award (2006)

**California League of Conservation Voters**
Environmental Leadership Award (2005) for dedication to the environment and
for fostering the public health rights of individuals

**Fort Lewis College, Durango, Colorado**
Alumnus of the Year (2007)

**Lawdragon**
Named one of 500 Leading Lawyers in America (2009-2011)

**Los Angeles Daily Journal Law Business**
Named one of the 100 Most Influential Attorneys in California several times

**Los Angeles Magazine**
Super Lawyer (2001 to present); named one of the Top 100 Super Lawyers in
Southern California (2010 to present)

**Loyola Law School**
Champion of Justice Award (2008)

**Martindale-Hubbell**, Peer Reviewed AV (highest rating)

**Orange County Trial Lawyers Association**
Top Gun Award (2008)

**Pepperdine University School of Law**
Distinguished Alumnus Award (2002)

**Project Sister Family Services**
> Justice Armand Arabian Award (2006) for outstanding efforts to secure justice for victims of clergy abuse

**Trial Lawyers for Public Justice**
> Finalist, Trial Lawyer of the Year (2000, 2008)
> Trial Lawyer of the Year (1994)

Recipient of presidential awards, awards of merit, recognition, and commendations from federal, state, and local governmental entities and a variety of bar organizations.

## LITIGATION

Tried more than sixty cases to verdict, recovering in excess of three billion dollars in verdicts and settlements for clients.  Briefed and argued more than twenty appeals before the Ninth Circuit Court of Appeals and California Courts of Appeal.

Selected class actions and complex litigation generated:

***Adderton v. Nextel Commc'n, Inc., et al. ("Boost Mobile")***
Super. Ct. Los Angeles County, 2006, No. BC344300.
> Owners of Pipeline asserted Nextel unlawfully used its power as majority interest holder to force Pipeline's owners to sell their shares in Boost Mobile for below market value. Nextel withheld financial and marketing support from Boost Mobile until the Pipeline owners sold their interests, and provided false valuations and withheld financial information so that Pipeline could not know Boost Mobile's true value. Resolved.

***In Re Aetna UCR Litigation***
Dist. N.J., Pending, MDL No. 2020, No.: 2:07-cv-3541 (FSH)(PS)
> Appointed Class Counsel for class of subscribers to Aetna's healthcare insurance plan in class action alleging Aetna knowingly used inherently flawed databases licensed from Ingenix to set usual, customary, and reasonable ("UCR") rates for out-of-network services, resulting in artificially reduced reimbursements to plaintiffs. Plaintiffs allege the existence of a secret and illegal agreement by Aetna, UnitedHealth Group, Ingenix, and most of the country's largest health insurers to systemically under-reimburse consumers for out-of-network services in violation of ERISA, RICO, and the Sherman Act, as well as state law.

***American Medical Association et al. v. Wellpoint, Inc.***
C.D. Cal, Pending, MDL No. 09-2074 PSG (FFMx)
> Appointed Co-Lead Counsel in action on behalf of physicians and physician groups to recover payment from insurers who violated federal antitrust laws by fixing artificially low reimbursement rates for treatment provided to out-of-network patients.

***Balasubramaniam v. Cty of Los Angeles, et al.***
Super. Ct. Los Angeles County, 2004, Case No. BC158506.
>Represented plaintiff medical doctor in case of employment discrimination based upon color.  Resolved after trial, on appeal.

***Bartley v. Camarillo Miramonte Homeowners Ass'n***
Super. Ct. Ventura County, 2002, No. SC020953.
>Class action against real estate developers on behalf of individual condominium owners for faulty construction and repairs. The units were constructed over a high water table and on poor soils which expanded and contracted, causing the units to sink, and causing floor slabs, foundations, and walls to crack. The defendants knew about the defects but did not disclose them. After receiving complaints, developers failed to repair as promised. Resolved on eve of trial.

***Bianchi v. Schneiderman, et al.***
Super. Ct. Los Angeles County, 2003, No. EC033688.
>Represented plaintiff in suit for breach of an agreement and for fraud after Schneiderman fraudulently obtained control of L.A. Digital Post and then transferred it to his wife in order to hide assets from creditors. Resolved.

***Black v. Blue Cross of California***
Super. Ct. Los Angeles County, 2007, No. BC250339.
>A certified class action against a health insurer for improper mid-year contract modifications. Settled for an eight-figure amount after a liability trial.

***Berger v. The Berger Foundation, et al.***
Super. Ct. Riverside County, 2011, Case No. INC 10010664.
>H. N. and Frances Berger founded a charitable organization to promote and support education and alleviate human suffering. Defendants diverted millions from this foundation to engage in self-dealing transactions and to pay themselves excessive compensation, and to fund ventures to employ their relatives. Represented the Berger Foundation to remedy these wrongs and safeguard a family legacy. Resolved.

***Bunker Hill Twrs Condo Ass'n, et al. v. W.R. Grace & Co.***
Super. Ct. Los Angeles County, No. B072642.
>Represented 250 resident unit owners in a 32-story, luxury downtown high-rise in an action against the nation's leading asbestos products manufacturer. The building's steel girders were coated with asbestos, which contaminated the building with hazardous amounts of emitted asbestos fibers in breathable dust. A jury awarded over $6 million to compensate for the cost of the abatement.

***California Gubernatorial Recall Election Litigation***
>Represented former Governor Gray Davis in a challenge to the qualification of the 2003 California gubernatorial recall election.

Raymond Paul Boucher
Curriculum Vitae
Page 6

*Castaneda, et al. v. State of California et al.*
Super. Ct. Los Angeles County, 2004, No. BC299062.
> The California Legislature passed a bill to allow victims of wrongful deportation or coerced emigration between 1929 and 1944 to bring civil actions. *Castaneda* was a class action on behalf of approximately 400,000 U.S. citizens and resident aliens who were wrongfully expelled from California because of their Mexican heritage. Complaint withdrawn after governor's veto of the bill.

*Catalina Toys v. Forward Winsome*
Super. Ct. Orange County, No. 68-59-34.
> Defended Forward Winsome, one of the largest toy manufacturers in the world, and represented it on a cross complaint. Plaintiffs alleged that Forward Winsome intentionally delayed shipments of goods and breached an agreement in order to place the plaintiffs in financial duress and to foreclose upon their assets. After a fifteen-day trial, the jury entered a unanimous verdict awarding Forward Winsome more than $6 million; settled before punitive damages phase.

*Centinela Freeman Emergency Medical Associates, et al. v. Maxwell-Jolly et al.*
Super. Ct. Los Angeles County, Pending, No. BC406372.
> Action on behalf of emergency room doctors who received medical reimbursements in amounts that were significantly below the costs that they incurred to treat their patients. Writ of mandate issued; case pending.

*Chavez v. Nestlé USA, Inc.*
C.D. Cal., 2013, No. CV09-9192 GW (CWx).
> Appointed lead counsel in class action for false advertising in the marketing of a beverage for infants. Resolved following successful appeal to Ninth Circuit.

*CIGNA Litigation*
> Class action against medical insurers who under-reimbursed hundreds of thousands of medical patients for out-of-network care they received. The plaintiffs allege the health insurers manipulated data to artificially depress reimbursements for medical care.

*The Clergy Cases*
Super. Ct. California, JCCP Nos. 4286, 4297, 4359
> Served as Plaintiffs' Liaison Counsel representing almost 1,000 individuals and their families in significant personal injury claims involving molestation at the hands of Catholic priests.

> *The Clergy Cases I*, California JCCP 4286 (Diocese of Orange).
>> Ninety survivors of Clergy sexual abuse filed lawsuits against the Roman Catholic Diocese of Orange. In December 2004, after nearly two years of intense negotiations, lead negotiations to successfully settle all claims against the Diocese for $100 million on the condition that the secret files of the Diocese of Orange would be made public.

***The Clergy Cases I***, California JCCP 4286 (Archdiocese of Los Angeles).
Five-hundred and eight survivors of clergy sexual abuse filed lawsuits against the Roman Catholic Archbishop of Los Angeles. On the eve of the first of more than a dozen scheduled trials, successfully negotiated an agreement with the Archbishop to resolve all remaining cases against it, resulting in the largest resolution with any diocese in the United States.

***The Clergy Cases II***, California JCCP 4297 (Archdiocese of San Diego).
One-hundred and forty-four survivors were sexually abused by Clergy members in the Roman Catholic Diocese of San Diego. In the second-largest settlement by a Roman Catholic diocese nationwide since claims of sexual abuse by clergy members came to light in 2002, the Diocese agreed to pay nearly $200 million to these 144 survivors.

***In Re Crestor Products Liability Cases***
Super. Ct. Los Angeles County, Pending, California JCCP No. 4713.
Appointed Plaintiffs' Co-Lead and Co-Liaison Counsel in Judicial Council coordinated proceeding pending before the Los Angeles Superior Court involving personal injury claims arising from use of Crestor pharmaceutical drug.  Settled.

***DePUY ASR Artificial Hip Implants Litigation***
Super. Ct., San Francisco County, Pending, California JCCP No. 4649.
Nationwide personal injury actions on behalf of patients who received the recalled, defective, surgically implanted, metal-on-metal ASR XL Acetabular and ASR Hip Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson. The complaints allege DePuy Orthopedics was aware its ASR hip implants were failing at a high rate, yet continued to manufacture and sell the product to unsuspecting physicians and patients. Pending.

***In Re Diet Drug Litigation***
Super. Ct. Los Angeles County, California JCCP 4032.
Appointed Co-Plaintiffs' Liaison Counsel. Claims arose from injuries resulting from the use of the diet drug Phen-Fen. Resolved.

***Jane Doe v. Garden Grove Unified School District***
Represented a child victim of sexual abuse at school.  Resolved.

***Elena A. et al. v. Casa de Angeles Cal. Corp., d/b/a Healthy Start, et al.***
Super. Ct. Los Angeles County, Pending, No. BC457840.
Case on behalf of developmentally disabled adults who were subjected to serious physical and verbal abuse and neglect while attending an adult day care center. The abuse included sexual molestation which caused rashes, bruises, scratches, abrasions, scarring, and cuts and the contraction of venereal disease. It also included the withholding of medical care, and the failure to provide appropriate meals, leading to dehydration, malnutrition, and anemia. It included rough handling acts of humiliation, and threats to harm family members after clients witnessed inappropriate behavior. Pending.

***In Re: Facebook, Inc. Internet Tracking Litig.***,
N.D. Cal., Pending, MDL No. 2314, No. 5:12-md-02314-EJD.
> Appointed Interim Liaison Counsel in this class action lawsuit seeking damages and injunctive relief for the knowing interception of users' Internet communications and activity after logging out of their Facebook accounts, in violation of state and federal laws including the Federal Wiretap Act, the Stored Communications Act, and the Computer Fraud and Abuse Act.

***In Re Galvanized Steel Pipe Litigation***
Super. Ct. Los Angeles County, 2010, No. BC174649
> Appointed Lead Counsel (2001). Class action involving construction defects. Settled for an amount in the high eight figures.

***Gillis et al. v. Ralph Wyatt Plastering Company, et al.***
Super. Ct. Los Angeles County, 1999, No. SC034918.
> Case to recover for negligent construction leading to water intrusion and an infestation of highly toxigenic mold, resulting in the total loss of the plaintiff's home and all of its contents. Eight-figure settlement.

***Grossman v. Unger Fabrik, LLC***
Super. Ct. Los Angeles County, 2013, No. BC480626.
> Breach of contract action on behalf of an executive who made $55 million in sales for a company that then failed to pay her commissions. Resolved.

***Hablian et al. v. Zurich U.S. et al.***
Cal. Comp. Bd. of Appeals
> Class action to recover workers' compensation benefits that were due to injured employees, but that employers and their insurers instead kept for themselves. The California Workers Compensation Appeals Board has ruled that a class action may be brought. Case pending.

***Leslie v. Hochman, Salkin & Deroy***
Super. Ct. Los Angeles County, 1997, No. BC127454.
> In this legal malpractice case, attorneys arranged to provide the plaintiffs with a tax shelter plan under which a commodities broker would reduce their income tax burden through trades in gold futures, and the attorneys would take $20 for each of the broker's transactions in return for legal representation about the tax consequences of the trades. The Ninth Circuit then ruled that the types of deductions the attorneys advised the plaintiffs to take on their tax returns were not based on genuine losses, such that the plaintiffs were now responsible for unpaid taxes, interest, and penalties. Litigation ensued in which the attorneys represented the plaintiffs before the U.S. Tax Court, promising that they would prevail when all the while they had no reasonable possibility of doing so. Resolved.

***Los Angeles Unified School District Sexual Molestation Cases***
> Represented numerous children who were molested at Miramonte Elementary School in the Los Angeles Unified School District.

***Madrid v. Perot Systems Corporation et al.***
Super. Ct. Sacramento County, No. 03AS04763.
> Antitrust and unfair competition action to recover from Perot Systems
> Corporation for aiding and abetting the manipulation, distortion, and corruption of
> California's electricity market, including the design and sale of derivative
> securities, in the wake of the deregulation of California's energy sector. Resolved.

***Martinez et al. v. EMI Music Distribution et al.***
("Compact Disc Minimum-Advertised Price Antitrust Litigation")
C.D. Cal, No. CV-00-05730 RAP (RNBx).
> Suit to recover from recorded-music distributors and retailers for price fixing.
> Resolved.

***Murray v. Belka*** (*"First Pension"*)
Super. Ct. Orange County, California JCCP No. 3131.
> Suit against a pension plan administrator, one of the nation's largest law firms,
> and one of the world's largest accounting firms to recover damages and for
> restitution to hundreds of investors who had lost their life savings to a Ponzi
> scheme. Co-tried a four month trial with Michael Aguirre, resulting in a liability
> and punitive damages verdict. The Orange County, California jury in the case
> found that Pricewaterhouse Coopers helped defraud the investors by creating
> fraudulent audits and reviews that First Pension Corporation used in its filings
> with government agencies over nine years. The case resolved on the eve of the
> punitive damage phase for nearly nine figures.

***In re: National Association of Music Merchants, Musical Instruments and Equipment
Antitrust Litigation***
S.D. Cal. MDL No. 2121.
> Class action in antitrust to recover for anticompetitive price fixing.

***Northbridge Homeowners v. The Newhall Land and Farming Co., et al.***
Super. Ct. Los Angeles County, 2010, No. BC174649.
> Recovered $41 million on behalf of 5,000 Santa Clarita Valley residents in a suit
> against real estate developers for the installation of defective galvanized steel
> pipes which rusted and leaked inside their new homes.

***In Re Northridge Earthquake Litigation***
> Appointed Plaintiffs' Liaison Counsel (2002). Numerous coverage lawsuits
> against State Farm Insurance, 21st Century Insurance, Farmers Insurance, and
> USAA Insurance Company for fraudulent insurance practices arising out of the
> Northridge Earthquake. Resolved.

***In re: Pellicano Cases***
Super. Ct. Los Angeles County, 2014, No. BC316318.
> Appointed as Co-Lead Counsel in class action against AT&T. Cases involved
> wiretapping in violation of the California Penal Code. Settled.

*Quesada v. Herb Thyme Farms, Inc.*
Super. Ct. Los Angeles, County, No. BC436557; .

> Action against the largest grower and marketer of herbs in California for labeling
> conventionally grown food as "fresh organic" in order to mislead consumers into
> paying more. On December 3, 2015, the Supreme Court of California issued a
> landmark decision, unanimously vindicating the rights of consumers who paid a
> premium "organic" price for conventionally grown produce that was deliberately
> mislabeled as organic. *Quesada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th
> 298. Pending.

*Residents of Tucson, Arizona v. Tucson Airport Authority et al.*,
AZ Court of Appeals, No. 2 CA-CV 93-0204.

> Actions on behalf of over 1,600 residents of the Sunnyside community of Tucson
> against the Tucson Airport Authority and other defendants for dumping a
> carcinogen, trichloroethylene (TCE), into disposal pools and allowing it to seep
> into the city's ground water. After an EPA-sponsored researcher found high levels
> of TCE and other carcinogens in drinking water, experts discovered that several
> unusual forms of cancer, particularly among children in the area, were at almost
> epidemic levels. The actions settled for $84.5 million.

*Silver et al. v. Aetna Health Inc., PA, et al.*
N.D. Cal., No. C10-00143.

> Class action against medical insurers who under-reimbursed hundreds of
> thousands of medical patients for out-of-network care they received. The
> plaintiffs allege the health insurers manipulated data to artificially depress
> reimbursements for medical care.

*Silver v. Del Webb*
Super. Ct. Nevada. No. A437325.

> Appointed Lead Counsel (2001). Certified class construction defect suit involving
> installation of faulty plumbing systems in new homes. Resolved.

*Sinskey, et al. v. Ernst & Young et al.*
Super. Ct. Los Angeles County, No. BC247851.

> Represented plaintiffs in action for fraud in the sale of securities. Resolved.

*Sister Sledge et al. v. Warner Music Group Corp.*
N.D. Cal., No. 12-CV-0559-RS.

> Appointed Interim Co-Lead Counsel in this suit to recover for the shortchanging
> of artists in the licensing of their works to third parties for subsequent retail sale
> as digital downloads and ringtones. Settled for $11.5 Million.

*Skeen, et al. v. BMW of North America LLC, et al.*
Dist. N.J.,  No. 2:13-cv-1531-WHW-CLW.

> Appointed Co-Lead Class Counsel in nationwide class action on behalf of owners
> and lessees of MINI Cooper vehicles manufactured with defective "timing chain
> tensioner" parts that cause premature engine damage and failure. Settled.

***The Temptations et al. v. UMG Recordings, Inc.***
N.D. Cal., No. 12-CV-1289-JCS.

> Suit to recover for shortchanging of artists in the licensing of their works to third parties for subsequent retail sale as digital downloads and ringtones. Pending.

***Terry W. et al. v. Kaiser Foundation Health Plan, Inc. et al.***
Super. Ct., Los Angeles County, No. BC187451.

> Case against Kaiser for failing to take action to protect patients after receiving complaints that one of their doctors was molesting minors. The doctor was later arrested, convicted, and incarcerated for his crimes. Resolved.

***In re Transient Occupancy Tax Cases***
Super. Ct. Los Angeles County, California JCCP 4472.

> Action on behalf of thirty-nine separate California cities to recover unremitted occupancy taxes from online travel companies.

***In re Trasylol Drug Cases***
Super. Ct. Los Angeles County, California JCCP 4593.

> Action on behalf of the people of the State of California against a pharmaceutical company that continued to aggressively market a drug after becoming aware that it significantly increased the risk of renal failure, stroke, and death, and which was ultimately removed from the market. Resolved.

***Welch v. Orkin Exterminating Co.***
Super. Ct. Los Angeles County, No. 516323.

> Orkin's negligent treatment of the plaintiffs' San Diego home for termites caused plaintiffs to develop chemical sensitivities. Orkin argued the plaintiffs were only imagining their injuries, or that the injuries preexisted. Orkin denied that it misapplied the chemicals, and denied that the chemicals could cause any injury. After an eighteen-day trial, a jury awarded plaintiffs approximately $1 Million.

***In re Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation,*** MDL No. 2329.

> Appointed Co-Lead Counsel and state Liaison Counsel in this national MDL involving actions against a manufacturer of defective surgically implanted metal-on-metal hip replacement systems. Pending.

***Yaz, Yasmin and Ocella Contraceptive Cases***
Super. Ct., Los Angeles County, California JCCP 4608.

> Appointed and served as Plaintiffs' Co-Liaison Counsel in cases on behalf of women who were prescribed Yasmin and Yaz oral contraceptives and suffered blood clots, deep vein thrombosis, strokes, or heart attacks. Case involved allegations that Bayer failed to warn.

***Young v. Johnny's Hot Dog Stand et al.***
Super. Ct. Los Angeles County, 1997, No. BC102837.

> Ronald Young, a 57 year-old homeless man who had been a hospital orderly before going on disability, had been frequenting Johnny's Hot Dog Stand for more than twenty years. After Young approached the window of Johnny's with

money in his pocket to purchase a cup of coffee, the waitress shouted insults at
him. Minutes later, the waitress walked out of the stand, approached Young, and
shot him six times, leaving him permanently disfigured and almost $70,000 in
debt to the hospital. The police never recovered the gun and the district attorney
declined to prosecute. At trial, the jury found the restaurant negligent and ordered
Johnny's to pay nearly $1 million in compensatory damages.

### *Zachary et al. v. ARCO et al.*
Super. Ct. Los Angeles County, No. BC209944.
> Appointed Lead Counsel. Mass tort toxic refinery fire resulting in injury to
> plaintiffs and their property. Resolved.

Among cases involving published decisions:

### *Bains v. Moores* (2009) 172 Cal. App. 4th 445.
> Action on behalf of investors to recover for fraud in the sale of certain securities.

### *Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal. App. 4th 557.
> Represented family members in suit against law firm that drafted a partnership
> agreement which damaged the family business. Resolved.

### *Harrell v. 20th Century Ins. Co.* (9th Cir. 1991) 934 F.2d 203.
> Suit to recover for fraud in the sale of a small business.  Resolved.

### *Ileto v. Glock, Inc.* (C.D. Cal. 2006) 421 F. Supp. 2d 127.
> Action against weapons manufacturers Glock and China North, whose firearms
> were used by a member of the Aryan Nation to shoot several children and kill a
> postal worker.

### *Quesada v. Herb Thyme Farms, Inc.* **(2015) 62 Cal.4th 298.**
> **On December 3, 2015, the Supreme Court of California issued a landmark
> decision, unanimously vindicating the rights of consumers who paid a
> premium "organic" price for conventionally grown produce that was
> deliberately mislabeled as organic.**

### *Ramirez v. Fox Television Station* (9th Cir. 1993) 998 F.2d 743.
> Suit for unconstitutional employment discrimination based on national origin.

### *Shirk v. Vista Unified School District* (2007) 42 Cal. 4th 201.
> Case to recover for sexual molestation by a public school teacher.

### *Regents of University of California v. Superior Court* (2010) 183 Cal. App. 4th 755.
> Represented relatives of decedents who willed their bodies to a medical school for
> research and teaching purposes, only to learn the remains had been improperly
> disposed of in a grotesque and undignified manner after scientific uses were
> concluded. Donors were told that after use, their remains would be cremated and
> scattered in a rose garden. Human remains were commingled with  other remains
> and incompletely incinerated, leaving hair and flesh intact.  Remains were placed

in a mixture of incinerated human bodies, laboratory animal carcasses, and medical waste into garbage dumpsters and then transported to a landfill where they were disposed of with common refuse.

***Rippon v. Bowen*** (2008) 160 Cal. App. 4th 1308.

Case on behalf of California citizens who challenged the constitutionality of Proposition 140, which imposed lifetime term limits upon state legislators and other state officers.

***Santillan v. Roman Catholic Bishop of Fresno*** (2008) 163 Cal. App. 4th 4.

Case on behalf of a victim of childhood sexual abuse.

***Wallace v. City of Los Angeles*** (1993) 12 Cal. App. 4th 1385.

Demetria Wallace, a teenaged honors student, was shot and killed by a shotgun blast as she sat on a bench waiting for a bus five days before she was to testify against a man accused of fatally shooting a taxi driver. Following granting of non-suit at trial, the appeals court held the police had a duty to warn the victim. The case affirmed the government's responsibility to protect citizens who jeopardize their lives by stepping forward as witnesses to crimes, and prompted changes in police procedures that have saved other witnesses' lives since.

***Wholesale Electricity Antitrust Cases I & II*** (2007) 147 Cal. App. 4th 1293.

Co-lead counsel in suit to recover from energy traders for antitrust and unfair business practices in the wake of the deregulation of California's energy sector. Resolved in conjunction with the Attorney General's office for over $1.1 billion.

## PRESENTATIONS

### Guest Lecturer

**Stanford Law School**, Stanford, California
**Pepperdine University School of Law**, Malibu, California
**Loyola Law School**, Los Angeles, California
**Colorado State University, College of Business**, Fort Collins, Colorado

### Continuing Legal Education

Delivered hundreds of continuing legal education presentations to organizations including the Los Angeles County Bar Association, the Consumer Attorneys of California, the Consumer Attorneys Association of Los Angeles, the Association of Southern California Defense Counsel, the American Association for Justice, the Orange County Bar Association, the California League of Cities, Pepperdine Law School, Mealey's, the Los Angeles Daily Journal, Glasser Legal Works, and the National College of Advocacy.

# EXHIBIT 3

# BOUCHERLLP

Invoice submitted to:

**Knight Law Firm**

**Invoice # 10662**

| |
|---|
| Invoice Date: 12/31/20 |
| Services Through: 12/31/20 |
| Due Date: 12/31/20 |

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|------|-----|----------------|-----------|------|--------|
| In Reference To: | | **Ford DPS6 MDL  (2:18-ml-02814-AB-FFM) 19-1013-0045** | | | |
| 07/01/20 | RPB | Team Meeting re Apex Witnesses | 1.00 | 450.00 | $450.00 |
| 07/02/20 | RPB | Emails re: Service | 0.30 | 450.00 NC | $0.00 |
| 07/09/20 | TLE | Organizing potential DPS6 Exhibits in preparation for authentication | 4.60 | 350.00 | $1,610.00 |
| 07/10/20 | MG | Review depositions that have been taken with Ford and overview of capacity of deponents within DPS6 database. | 0.60 | 250.00 | $150.00 |
| 07/27/20 | NSB | Review Trial Exhibits to Identify Dealer Council Members for Deposition. | 6.70 | 350.00 | $2,345.00 |
| 08/07/20 | RPB | Review and analysis of Ford database in preparation for Apex deposition | 3.20 | 450.00 | $1,440.00 |
| 08/12/20 | NSB | Coordinate strategy with R. Boucher, R. Kirnos, R. Higgins, D. Alemi, B. Altman, P. Kiesel, Z. Powell, and S. Taft RE: Apex witness depositions, expert witness depositions, and joint statement in advance of August 18 hearing. | 0.70 | 350.00 | $245.00 |
| 08/12/20 | MG | Review and compile exibits for deposition of Raj Nair. Prepare index of exhibits for attorney review and deposition preparation. | 2.30 | 250.00 | $575.00 |
| 08/13/20 | MG | Revise exhibit indices for deposition of Raj Nair. | 0.40 | 250.00 | $100.00 |
| 08/14/20 | MG | Review response and objection to Notices of Deposition for Robert Fascetti and Raj Nair. | 0.20 | 250.00 | $50.00 |
| 08/14/20 | RPB | Outline issues for deposition preparation of Ford experts | 3.30 | 450.00 | $1,485.00 |
| 08/15/20 | RPB | Prep for deposition of R. Nair; analysis of and review of depositions of Ford executives | 4.10 | 450.00 | $1,845.00 |
| 08/15/20 | RPB | Deposition prep; emails x14 re: Additional exhibits; begin outline | 3.30 | 450.00 | $1,485.00 |
| 08/17/20 | MG | Receive and review cross-notice of Deposition Notices for Nair and Fascetti as well as Code of Conduct Exhibits for Ford depositions. Compile same into binder for R. Boucher deposition preparation. | 1.30 | 250.00 | $325.00 |
| 08/17/20 | RPB | Review transcripts re: Exhibits in preparation for deposition | 2.60 | 450.00 | $1,170.00 |
| 08/17/20 | RPB | Phone call w/P. Kiesel re: Status Conference and Apex Discovery | 0.10 | 450.00 | $45.00 |
| 08/17/20 | RPB | Review of Ford Responses to RFA Set 2 Nos. 29 - 163 in preparation for R. Nair deposition | 0.60 | 450.00 | $270.00 |

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|------|-----|-----------------|-----------|------|--------|
| 08/18/20 | SH | Calendaring depositions of R. Nair and R. Fascetti | 0.20 | 250.00 NC | $0.00 |
| 08/18/20 | MG | Receive and review exhibits for Bernie Fowler's deposition.  Prepare binder and index of exhibits for R. Boucher review and preparation for deposition. | 1.40 | 250.00 | $350.00 |
| 08/18/20 | TLE | Review M. Fields, M. Fyie and S.McClain depositions to find potential impeachable evidence for R.Boucher's upcoming deposition of R.Nair | 2.10 | 350.00 | $735.00 |
| 08/19/20 | MG | Receive and review additional exhibits for Bernie Fowler's deposition.  Compare against those previously received from co-counsel.  Compile same and revise index for R. Boucher to review and prepare for said deposition. | 2.40 | 250.00 | $600.00 |
| 08/19/20 | MG | Prepare e-mail to R. Boucher re status update of exhibits and forward indices as well as clarification on a few exhibits. | 0.20 | 250.00 | $50.00 |
| 08/19/20 | RPB | Begin review and outline Fowler exhibits in preparation for deposition | 2.10 | 450.00 | $945.00 |
| 08/20/20 | RPB | Research / outline evidentiary issues re: Admissibility - prepare for deposition of Raj Nair | 0.50 | 450.00 | $225.00 |
| 08/20/20 | RPB | Review documents from Ford 2011 - 2013 re: DPS6 in prep for depositions of Fowler and Nair | 4.30 | 450.00 | $1,935.00 |
| 08/21/20 | MG | Prepare outline of deposition as directed by R. Boucher from various aspects of preparation provided. | 3.60 | 250.00 | $900.00 |
| 08/21/20 | RPB | Deposition prep for Raj Nair - review and outline Code of Conduct for depo | 3.10 | 450.00 | $1,395.00 |
| 08/21/20 | RPB | Research Raj Nair; background - outline depo questions | 2.10 | 450.00 | $945.00 |
| 08/21/20 | RPB | Depo prep R. Nair - outline exhibits tabs 1-13 | 4.80 | 450.00 | $2,160.00 |
| 08/22/20 | MG | Continue to prepare outline of deposition as directed by R. Boucher from various aspects of preparation provided.  Research Ford Executives and create outline of top executives. | 8.40 | 250.00 | $2,100.00 |
| 08/22/20 | RPB | Depo Preparation - review exhibits and prepare initial draft outline and research issues of seal leak | 13.30 | 450.00 | $5,985.00 |
| 08/23/20 | MG | Continue to revise and prepare additional outline of deposition as directed by R. Boucher from various aspects of preparation provided. | 7.60 | 250.00 | $1,900.00 |
| 08/24/20 | SH | Protective order signed by R. Boucher and return to S. Taft | 0.10 | 250.00 NC | $0.00 |
| 08/24/20 | SH | Protective order signed by M. Weitz and return to S. Taft | 0.10 | 250.00 NC | $0.00 |
| 08/24/20 | MG | Continue to revise and prepare additional outline of deposition as directed by R. Boucher from various aspects of preparation provided.  Review exhibits and make revised changes to index.  Cross-reference exhibits to those previously stipulated by Ford and create new index to reflect those exhibits for Nair's deposition.  Continue researching Ford Executives that are referenced in Nair's exhibits and Deposition outline to update Executive chart. | 10.60 | 250.00 | $2,650.00 |
| 08/24/20 | TY | Finalize Notice of Appearance for filing in MDL. E-file in ECF. | 0.60 | 250.00 NC | $0.00 |
| 08/26/20 | NSB | Conference with KLG Co-Counsel RE: Depositions of R. Nair and R. Fascetti; Need for Additional Depositions and RFPS for native formats of document production; Strategy for Deposition of B. Fowler; Strategy to Address Ford's Arguments about Arbitration | 1.00 | 350.00 | $350.00 |
| 08/26/20 | RPB | Prep for MDL discovery meeting | 0.80 | 450.00 | $360.00 |
| 08/26/20 | RPB | MDL Discovery Meeting | 1.10 | 450.00 | $495.00 |

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|------|-----|-----------------|-----------|------|--------|
| 08/27/20 | RPB | Prep for Fowler deposition - analysis of seal related documents | 2.50 | 450.00 | $1,125.00 |
| 08/29/20 | RPB | Prep for Fowler deposition; highlight and outline exhibits; develop impeachment groups; research B. Fowler lawsuits | 6.30 | 450.00 | $2,835.00 |
| 08/31/20 | RPB | Phone call w/B. Altman re: Prep for deposition of Fowler | 0.30 | 450.00 | $135.00 |
| 08/31/20 | RPB | Depo Prep - Complete review of Fowler exhibits and backup | 5.30 | 450.00 | $2,385.00 |
| 09/01/20 | RPB | Meeting w/B. Altman - prep for deposition of B. Fowler + travel | 1.50 | 450.00 | $675.00 |
| 09/01/20 | RPB | Deposition of Bennie Fowler | 10.10 | 450.00 | $4,545.00 |
| 09/01/20 | RPB | Post deposition discovery meeting and call w/B. Altman and P. Kiesel | 0.80 | 450.00 | $360.00 |
| 09/02/20 | NSB | Meeting with KLG Co-Counsel RE: Structure of Lead Counsel fees, Deposition | 1.10 | 350.00 | $385.00 |
| 10/23/20 | MLW | Team meeting to discuss selection of magistrate, division of labor for upcoming depositions; email to S. Haro with instructions for calendaring upcoming dates | 0.50 | 385.00 | $192.50 |
| 10/28/20 | RPB | Phone call w/R. Kirnos re: Depositions | 0.10 | 450.00 | $45.00 |
| 10/28/20 | RPB | Emails re: Depositions x6 | 0.20 | 450.00 | $90.00 |
| 10/30/20 | TY | Create binder cover and index for upcoming Expert Disclosure deposition. | 0.50 | 250.00 NC | $0.00 |
| 10/30/20 | MLW | HOBART: Locate and organize background documents and coordinate review w/R. Boucher in preparation for expert depositions on 11/3, 11/5, and 11/9 | 3.10 | 385.00 | $1,193.50 |
| 10/30/20 | RPB | Begin review of files for deposition - outline key exhibits | 2.10 | 450.00 | $945.00 |
| 10/31/20 | MLW | HOBART: In preparation for expert depositions, review client-related document production and summarize relevant points in potential exhibits; outline client depositions; review and analyze prior Cannon deposition; locate and review/annotate potential exhibits for Cannon and Kwas | 4.20 | 385.00 | $1,617.00 |
| 10/31/20 | MLW | HOBART/ALTAMIRANO: In preparation for Cannon expert depositions, review, annotate, and outline expert report; begin formulating outline for questioning | 2.00 | 385.00 | $770.00 |
| 10/31/20 | RPB | Cannon Depo Prep - begin review of exhibits Vol. 1-3; outline cross | 4.30 | 450.00 | $1,935.00 |
| 11/01/20 | RPB | Cannon Depo Prep - Review expert report; outline cross; continue to annotate exhibits for cross Vols 3-5 | 12.10 | 450.00 | $5,445.00 |
| 11/01/20 | MLW | In preparation for Cannon expert deposition, continue review and annotation of exhibits, draft and revise examination outlines, coordinate same w/R. Boucher | 9.80 | 385.00 | $3,773.00 |
| 11/02/20 | MG | Assist R. Boucher with compiling and preparation of index of exhibits for deposition of Ford Expert Witness Jeremiah Cannon on Hobart case | 15.50 | 250.00 NC | $0.00 |
| 11/02/20 | RPB | Continued depo prep of J. Cannon - complete review/annotation and outline of exhibits | 3.10 | 450.00 | $1,395.00 |
| 11/02/20 | RPB | Prep for J. Cannon deposition; complete review of exhibits and outline of examination | 11.10 | 450.00 | $4,995.00 |
| 11/02/20 | MLW | HOBART: Continue preparation for Cannon expert deposition and begin prep for Kwas expert deposition, including revising examination outlines, culling and finalizing exhibits, and coordination with R. Boucher | 14.00 | 385.00 | $5,390.00 |
| 11/03/20 | MG | Coordination with co-counsel re exhibits for Cannon deposition. | 0.70 | 250.00 NC | $0.00 |
| 11/03/20 | RPB | Hobart: Pre-deposition prep re: Deposition of J. Cannon | 2.10 | 450.00 | $945.00 |

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|---|---|---|---|---|---|
| 11/03/20 | RPB | Hobart: Deposition of J. Cannon | 5.80 | 450.00 | $2,610.00 |
| 11/03/20 | RPB | Hobart: Prep for deposition of C. Kwasniewicz | 4.10 | 450.00 | $1,845.00 |
| 11/03/20 | RPB | Phone calls w/B. Altman x2 | 0.30 | 450.00 | $135.00 |
| 11/03/20 | MLW | HOBART: Attend Cannon expert deposition to assist R. Boucher with exhibits and analyze testimony for follow up | 6.10 | 385.00 | $2,348.50 |
| 11/03/20 | MLW | HOBART: Meet w/R. Boucher to review Cannon expert deposition result and coordinate strategy/tasks to prepare for Kwas expert deposition; review and annotate Kwas report accordingly | 2.00 | 385.00 | $770.00 |
| 11/04/20 | MG | Assist R. Boucher with compiling and preparation of index of exhibits for deposition of Ford Expert Witness Chris Kwazniewicz on Hobart case. | 10.00 | 250.00 NC | $0.00 |
| 11/04/20 | RPB | Hobart:  Review / annotate - noise/DPS6 characteristics; investigation documents for depo | 7.80 | 450.00 | $3,510.00 |
| 11/04/20 | RPB | Hobart: Depo prep / outline / review report and attachments | 8.10 | 450.00 | $3,645.00 |
| 11/04/20 | MLW | HOBART: Prepare exhibits and examination outlines for Kwas expert depositions; coordinate w/R. Boucher re same | 13.00 | 385.00 | $5,005.00 |
| 11/05/20 | MG | Coordinate with attorneys, court reporter and videographer re access to Dropbox for exhibits to deposition. | 0.30 | 250.00 NC | $0.00 |
| 11/05/20 | MG | Assist R. Boucher with new case review for Altamirano Torres case to compile and preparation of index for exhibits for deposition of Ford Expert Witness Chris Kwazniewicz. | 11.80 | 250.00 | $2,950.00 |
| 11/05/20 | MG | Coordinate with court reporter, videographer and counsel re Dropbox access for voluminous exhibits. | 0.40 | 250.00 | $100.00 |
| 11/05/20 | RPB | Hobart: Deposition of Chris Kwasniewicz; Prep for depo and take deposition | 10.10 | 450.00 | $4,545.00 |
| 11/05/20 | RPB | Altamirano-Torres:  Prep for deposition of Chris Kwasniewicz | 6.30 | 450.00 | $2,835.00 |
| 11/05/20 | RPB | Deposition of Chris Powell re: Depo exhibits | 0.50 | 450.00 | $225.00 |
| 11/05/20 | MLW | HOBART: Finalize exhibit folders and attend Kwas deposition to oversee exhibits and to assist R. Boucher w/follow up analysis | 8.00 | 385.00 | $3,080.00 |
| 11/05/20 | MLW | ALTAMIRANO: In preparation for Kwas expert deposition, review client documents and generate relevant questioning to impeach report; generate comparison between Kwas and Cannon reports for impeachment purposes; revise outlines and coordinate w/R. Boucher re same | 11.80 | 385.00 | $4,543.00 |
| 11/06/20 | MG | Further coordination with the court reporter prior to start of deposition for exhibits and Zoom meeting details. | 0.30 | 250.00 NC | $0.00 |
| 11/06/20 | MG | Review additional exhibits provided by co-counsel and re-review repair orders re specifics clutch replacements. | 1.60 | 250.00 | $400.00 |
| 11/06/20 | MG | Online background research and search for prior deposition and trial testimony for Matthew Fyie of Ford Motor Compny to assist R. Boucher for upcoming deposition. | 1.00 | 250.00 | $250.00 |
| 11/06/20 | RPB | Altamirano-Torres: Deposition Prep of Chris Kwasniewicz | 1.30 | 450.00 | $585.00 |
| 11/06/20 | RPB | Altamirano-Torres: Take Deposition of Chris Kwasniewicz | 5.10 | 450.00 | $2,295.00 |
| 11/06/20 | RPB | Altamirano-Torres:  Phone call w/Zach Powell re: Fyie | 0.30 | 450.00 | $135.00 |
| 11/06/20 | RPB | Altamirano-Torres:  Phone call w/B. Altman re: Deposition outline | 0.30 | 450.00 | $135.00 |
| 11/06/20 | MLW | ALTAMIRANO: Finalize exhibits and attend Kwas expert deposition to oversee same and assist R. Boucher w/follow-up analysis | 7.50 | 385.00 | $2,887.50 |

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|------|-----|----------------|-----------|------|--------|
| 11/06/20 | MLW | HOBART: Meeting w/R. Boucher to develop strategy and coordinate prep for upcoming Fyie expert deposition | 0.90 | 385.00 | $346.50 |
| 11/06/20 | MLW | HOBART: Assemble and annotate Fyie expert materials for R. Boucher review | 1.00 | 385.00 | $385.00 |
| 11/07/20 | RPB | Prep for deposition of Fyie; review/outline 9/25/19 deposition in Hightower/Quintero and Pedante | 6.30 | 450.00 | $2,835.00 |
| 11/07/20 | RPB | Outline declaration of Fyie - Hubart | 1.50 | 450.00 | $675.00 |
| 11/08/20 | RPB | Review/outline Micale report in preparation for deposition of Fyie; research CAFE | 2.70 | 450.00 | $1,215.00 |
| 11/08/20 | RPB | Complete review of and organization / outline exhibits re: Noise/DPS6/Auto Tran/MAM/Shutter | 3.90 | 450.00 | $1,755.00 |
| 11/08/20 | MLW | HOBART: In preparation for Fyie expert deposition, research CAFE standards and history of revisions, including Ford's regulatory filings and related Micale opinions; update to R. Boucher | 6.10 | 385.00 | $2,348.50 |
| 11/09/20 | RPB | Hobart:  Complete preparation for expert deposition of M. Fyie | 1.90 | 450.00 | $855.00 |
| 11/09/20 | RPB | Hobart;  Take deposition of Expert Matt Fyie | 3.90 | 450.00 | $1,755.00 |
| 11/09/20 | RPB | Altamirano-Torres:  Phone call w/B. Altman re deposition | 0.30 | 450.00 | $135.00 |
| 11/09/20 | RPB | Hobart:  Phone call w/Z. Powell re: Exhibits / Fyie testimony | 0.30 | 450.00 | $135.00 |
| 11/09/20 | MLW | HOBART: Finalize exhibits for Fyie deposition and attend depo to oversee same | 6.00 | 385.00 | $2,310.00 |
| 11/11/20 | RPB | Emails x6; phone call w/B. Altman re: Deposition scheduling of experts | 0.30 | 450.00 | $135.00 |
| 11/12/20 | RPB | Hobart:  Emails x4 re: Cannon Depo | 0.10 | 450.00 | $45.00 |
| 11/16/20 | SH | Emails re trying to obtain depo link for Hobart - J. Cannon deposition tomorrow | 0.20 | 250.00 | $50.00 |
| 11/16/20 | RPB | Hobart:  Prep for Cannon deposition | 5.30 | 450.00 | $2,385.00 |
| 11/16/20 | RPB | Hobart:  Phone call w/Spencer Hugret re: Deposition | 0.10 | 450.00 | $45.00 |
| 11/16/20 | RPB | Hobart:  Emails re: Deposition x17 | 0.30 | 450.00 | $135.00 |
| 11/16/20 | MLW | HOBART: Revise outlines and exhibit list in preparation for part 2 of Cannon expert deposition; coordinate w/R. Boucher re same | 4.50 | 385.00 | $1,732.50 |
| 11/17/20 | RPB | Hobart:  Prep for Deposition of Cannon | 1.50 | 450.00 | $675.00 |
| 11/17/20 | RPB | Deposition of Cannon | 3.10 | 450.00 | $1,395.00 |
| 11/17/20 | MLW | HOBART: Attend Cannon expert deposition to oversee exhibits and assist R. Boucher w/follow up analysis | 4.50 | 385.00 | $1,732.50 |
| 11/18/20 | RPB | Hobart - Review and analysis of new powerpoint re: Clutch issues | 0.50 | 450.00 | $225.00 |
| 11/20/20 | MG | Phone call and e-mail from court reporter relative to missing exhibits for the Hobart case and deposition of Chris Kwasniewicz. | 0.50 | 250.00 NC | $0.00 |
| 11/30/20 | RPB | Phone call w/B. Altman re: Kahn depo prep; review and analysis of report | 0.30 | 450.00 | $135.00 |
| 12/08/20 | RPB | Larson - Deposition Prep for Expert C. Kwasniewicz; create preliminary deposition outline re: Seal leaks and clutch shutter | 5.50 | 450.00 | $2,475.00 |
| 12/09/20 | TY | Look for and provide file folders for deposition exhibits. | 0.20 | 250.00 NC | $0.00 |
| 12/09/20 | MG | Coordinate with co-counsel re deposition for Chris Kwasniewicz. Obtain file materials for deposition and compile same for R. Boucher to review and prepare for said deposition. | 3.10 | 250.00 | $775.00 |
| 12/09/20 | RPB | Larson - Phone call w/R. Kirnos re: Deposition issues | 0.10 | 450.00 | $45.00 |
| 12/09/20 | RPB | Larson - Phone call w/R. Higgins re: C. Kwasniewicz issues | 0.10 | 450.00 | $45.00 |

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|------|-----|-----------------|-----------|------|--------|
| 12/09/20 | RPB | Larson - Review and outline Larson file re: Deposition prep | 6.50 | 450.00 | $2,925.00 |
| 12/10/20 | MG | Review e-mails with co-counsel re additional documents being produced relative to Kwas deposition in process.  Compile and provide R. Boucher with pertinent documents. | 0.50 | 250.00 NC | $0.00 |
| 12/10/20 | MG | Review production of documents and locate additional exhibits needed for Kwas' deposition exhibits. | 0.50 | 250.00 NC | $0.00 |
| 12/10/20 | MLW | Assemble final electronic exhibit folder for 12/10 expert deposition of Kwas; coordinate and confirm logistics with videographer; attend deposition to oversee exhibits and assist R. Boucher in follow up | 6.50 | 385.00 | $2,502.50 |
| 12/10/20 | RPB | Larson - Depo Prep and review portions of expert file | 2.10 | 450.00 | $945.00 |
| 12/10/20 | RPB | Larson - Deposition of Chris Kwasniewicz | 5.10 | 450.00 | $2,295.00 |
| 12/10/20 | RPB | Larson - Phone call w/C. Urner and B. Altman re: Deposition prep | 0.30 | 450.00 | $135.00 |
| 12/23/20 | SH | Emails w/Sarena; filing Notices of Appearance of R. Boucher in the following cases: 1.          Edison T. Berry & Christina Berry 2.          Lorenzo Altamirano-Torres 3.          Kenneth Henry & Gloria Yvette Henry 4.          Jose Hernandez & Erick Hernandez 5.          Jeff K. Hobart 6.          Bradford Hogge 7.          Robert Inglese 8.          Rodolfo Mejia 9.          Veronica Ballesteros Perez & Jose Perez 10.          Susanne Marie Rule 11.          Carlos Zea & Elsa Morales | 2.90 | 250.00 NC | $0.00 |

In Reference To:  **Ford DPS6 MDL  19-1013-0045 (Expenses)**

| Date | By | Service Summary | Hours/Qty | Rate | Amount |
|------|-----|-----------------|-----------|------|--------|
| 08/15/20 | SH | Photocopies/Printing - July 16, 2020 - Aug. 15, 2020 | 1.00 | 3.10 | $3.10 |
| 08/15/20 | SH | Photocopies/Printing - July 16, 2020 - Aug. 15, 2020 | 1.00 | 3.10 | $3.10 |
| 09/15/20 | SH | Photocopies/Printing - Aug. 16, 2020 - Sept. 15, 2020 | 1.00 | 227.50 | $227.50 |
| 11/15/20 | SH | Photocopies/Printing - Oct. 16, 2020 - Nov. 15, 2020 | 1.00 | 186.40 | $186.40 |
| 12/15/20 | SH | Photocopies/Printing - Nov. 16, 2020 - Dec. 15, 2020 | 1.00 | 50.70 | $50.70 |

|  |  |
|--|--|
| Total Hours: | 432.20 |
| Total Fees: | $159,262.50 |
| Total Expenses: | $470.80 |
| **Total Invoice Amount:** | **$159,733.30** |
| **Total Amount Due:** | **$159,733.30** |

## User Summary

| User | Hrs | Rate | Amount |
|------|-----|------|--------|
| Marie Galvin | 56.90 | @ 250.000 | 14,225.00 |
| Marie Galvin | 28.30 | @ N/C | 0.00 |
| Maria L. Weitz | 111.50 | @ 385.000 | 42,927.50 |
| Neal S. Butala | 9.50 | @ 350.000 | 3,325.00 |
| Raymond P. Boucher | 214.20 | @ 450.000 | 96,390.00 |

| | | | |
|---|---|---|---|
| Raymond P. Boucher | 0.30 | @ N/C | 0.00 |
| Sandra Haro | 0.20 | @ 250.000 | 50.00 |
| Sandra Haro | 3.30 | @ N/C | 0.00 |
| Tracy L Eggitt | 6.70 | @ 350.000 | 2,345.00 |
| Tricia Yue | 1.30 | @ N/C | 0.00 |

# EXHIBIT 4

Case 2:18-ml-02814-AB-FFM   Document 1269-3   Filed 07/06/22   Page 50 of 102   Page ID
#:50410
Case 5:15-cv-01551-JGB-DTB   Document 49   Filed 02/13/17   Page 1 of 21   Page ID #:1293

# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV  15-1551 JGB (DTBx)** | | Date | February 13, 2017 |
|---|---|---|---|---|
| Title | ***Andrea Moppin v. Los Robles Regional Medical Center et al.*** | | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ / I. VAZQUEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Shehnaz M. Bhujwala | Sarah N. Drechsler<br>Jason W. Kearnaghan |

| Proceedings: | **Order: (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 46-1); (2) GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Attorneys' Fees (Dkt. No. 47-1); and (3) DISMISSING the Action WITH PREJUDICE** |
|---|---|

Before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 46), and Plaintiff's Motion for Attorneys' Fees (Dkt. No. 47).  Defendant does not oppose the Motions.  The Court held a final approval hearing on February 13, 2017.  For the reasons that follow, the Court GRANTS Plaintiff's Motion for Final Approval of Class Action Settlement and GRANTS IN PART Plaintiff's Motion for Attorneys' Fees.  Implementation of this Order is stayed until April 13, 2017. The Parties are ordered to notify the Court in writing if any objections are made to the Class Action Settlement by any federal official before April 13, 2017.

**I. BACKGROUND**

**A. Procedural History**

On May 27, 2015, Plaintiff Andrea Moppin ("Plaintiff" or "Class Representative") filed this putative wage-and-hour class action in state court against Defendants Los Robles Regional Medical Center ("Los Robles") and Trustaff Travel Nurses, LLC ("Trustaff"). (Complaint, Dkt. No. 1- 1.) Plaintiff, a former employee of Defendants, alleged the following causes of action: (1) failure to provide reporting time pay; (2) failure to pay overtime wages at the appropriate rate; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to furnish complete and accurate wage statements; (6) failure to timely pay wages upon termination or resignation; (7) violation of the Private Attorneys General Act ("PAGA") Cal. Labor Code § 2689 et seq.; and (8) Unfair Business Practices. (See Complaint.) Trustaff answered Plaintiff's

---

Complaint on July 30, 2015 and removed the action to this Court on July 31, 2015 pursuant to the Class Action Fairness Act ("CAFA"). (Not. of Removal, Dkt. No. 1.) On August 7, 2015, Los Robles filed its answer. (Dkt. No. 10.) Plaintiff filed a motion to remand the case to state court on August 31, 2015, which the Court denied on September 24, 2015. (Dkt. No. 17.) On December 4, 2015, Los Robles and Plaintiff filed a joint stipulation to release all putative class claims and representative claims against Los Robles without prejudice, while still maintaining Plaintiff's individual claims against Los Robles. (Dkt. No. 23.) The Court granted this stipulation on December 7, 2015. (Dkt. No. 24.)

On April 15, 2016, Plaintiff filed a notice of class-wide settlement and a joint stipulation to vacate the trial dates. (Dkt. No. 32.) The Court approved the stipulation, vacated the pretrial and trial dates, and ordered Plaintiff to file a motion for preliminary approval of the class action settlement by June 13, 2016. (Dkt. No. 33.) Plaintiff and Trustaff twice stipulated to continue the deadline so that they could finalize the settlement agreement, which the Court approved. (Dkt. Nos. 36, 38.) Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification on August 8, 2016. (Dkt. No. 39.) The Court held a preliminary approval hearing on September 12, 2016 and granted Plaintiff's Motion on August 25, 2016. ("Order," Dkt. No. 40.)

In that Order, the Court conditionally certified the Class and the Fair Labor Standards Act ("FLSA") Subclass solely for the purpose of settlement, appointed Plaintiff as class representative, appointed Bouncer LLP and the Law Office of Sahag Majarian II as Class Counsel, appointed CPT Group, Inc. ("CPT") as the Settlement Administrator, and ordered dissemination of notice to the Settlement Class. (Id.) Plaintiff was directed to file the proposed First Amended Complaint within 14 days of the Order. (Id. at 15.) Within 15 days of filing the FAC, Trustaff was ordered to provide CPT a Class List containing pertinent information of Class Members, including the sum of all work weeks for the Class. (Id.) CPT was directed to mail the initial notice within 14 days of receiving the data on class members from Trustaff and a reminder notice within 30 days of the initial mailing. (Id. at 14.) The deadline for Class Members to submit objections, disputes, requests for exclusion, and claim forms was set at 60 days after the initial mailing ("Response Deadline"). (Id.)

On September 27, 2016, after obtaining leave of Court by stipulated request of all parties, Plaintiff filed the First Amended Class Action Complaint ("FACAC"). (Dkt. No. 43.) The FACAC adds a claim under the FLSA, 29 U.S.C. §§ 201, et seq. for proposed release thereof to Class Members who opt-in to the FLSA Subclass, revives certain class, collective, and/or representative claims alleged against Los Robles previously voluntarily dismissed without prejudice, and modifies the class definition to match the defined settlement class. (Id.)

On January 17, 2017, Plaintiff filed a motion for settlement approval of class action settlement, ("Motion," Dkt. Nos. 46, 46-1), and a motion for attorneys' fees, costs and service award. ("Fees Motion," Dkt. Nos. 47, 47-1.) In support of her Motion, Plaintiff filed the following documents:

---

- Declaration of Raymond P. Boucher (Boucher Decl., Dkt. No. 46-2), attaching
  - Joint Stipulation of Class Settlement ("Settlement," Id. at Ex. 2, 52-98),
  - Notice, Claim Form and Request for Exclusion Forms together with Business Reply envelopes ("Notice Packet," Id. at Ex. 3, 100-109),
  - copies of the Boucher, LLP firm resume and Mr. Boucher's curriculum vitae ("Boucher Docs.," Id. at Exs. 4, 5, 110-141),
  - survey conducted by The National Law Journal containing sample billing rates for California Lawyers ("NLJ Survey," Id. at Ex. 6, 142-148), and
  - summary of Boucher, LLP's expenses during the course of this litigation ("Boucher Expenses," Id. at Ex. 7, 149-151);
- Declaration of Sahag Majarian II (Majarian Decl., Dkt. No. 46-3), attaching
  - summary of the office of Ms. Majarian's expenses ("Majarian Expenses," Id. at Ex. 1, 8-9), and
  - the Laffey Matrix fee schedule to determine reasonable hourly rates ("Laffey Matrix," Id. at Ex. 2, 11-12);
- Declaration of Andrea Moppin (Moppin Decl., Dkt. No. 46-4);
- Declaration of Abel E. Morales on behalf of CPT (Morales Decl., Dkt. No. 46-5), attaching the list of Class Members who submitted Requests for Exclusion ("Exclusion Requests," Id. at Ex. A, 9-10);
- Declaration of Sarah Drechsler Regarding CAFA Notices (Drechsler Decl., Dkt. No. 46-6), attaching
  - sample CAFA Notice [1] ("CAFA Notice," Id. at Ex. 1, 4-6),
  - Notice sent to the U.S. Attorney General on January 12, 2017 ("AG Notice," Id. at Ex. 2, 7-9), and
  - Supplemental Notice that Trustaff's counsel sent to the U.S. Attorney General on January 13, 2017 ("AG Supp. Notice," Id. at Ex. 3, 10-12); and
- Declaration of Marcus Bradley (Bradley Decl., Dkt. No. 46-7), attaching
  - original complaint filed in Munden v. Los Robles Regional Medical Center dba Los Robles Hospital & Medical Center, presently pending in the Superior Court of California for the County of Ventura, Case No. 56-2014-00454766-CU-OE-VTA, ("Munden"), ("Munden Complaint," Id. at Ex. 1, 4-23), and
  - First Amended Complaint filed in Munden ("Munden FAC," Id. at Ex. 2, 24-45.)

In support of Plaintiff's Motion for Fees and Costs, Plaintiff filed the following documents:

---

[1] The Notice of Proposed Class Action Settlement Pursuant to CAFA sent from Trustaff's counsel to the Attorney Generals for 50 states on August 12, 2016, included a copy of the operative Complaint, the Joint Stipulation of Class Action Settlement and supporting documents, including the proposed Notice of Proposed Class Action Settlement, and the Notice of Preliminary Approval of Class Action Settlement. However, Exhibit 1 does not attach the aforementioned enclosures to the Declaration of Sarah Drechsler as they are otherwise included in the Parties' filings. (Drechsler Decl. II ¶ 2.)

- Declaration of Raymond P. Boucher (Boucher Decl. II, Dkt. No. 47-2), attaching
  - Court's September 12, 2016 Order granting preliminary approval as Exhibit 1 (Id. at Ex. 1),
  - Settlement as Exhibit 2 (Id. at Ex. 2),
  - Notice Packet as Exhibit 3 (Id. at Ex. 3),
  - Boucher Documents as Exhibits 4 and 5 (Id. at 4, 5),
  - NLG Survey as Exhibit 6 (Id. at Ex. 6), and
  - Boucher Expenses as Exhibit 7 (Id. at Ex. 7) ;
- Declaration of Sahag Majarian II (Majarian Decl. II, Dkt. No. 47-3), attaching
  - Majarian Expenses as Exhibit 1 (Id. at Ex. 1), and
  - the Laffey Matrix as Exhibit 2 (Id. at Ex. 2);
- Declaration of Andrea Moppin (Moppin Decl. II, Dkt. No. 47-4);
- Declaration of Abel E. Morales on behalf of CPT (Morales Decl. II, Dkt. No. 47-5), attaching the Exclusion Requests as Exhibit A (Id. at Ex. A);
- Declaration of Sarah Drechsler Regarding CAFA Notices (Drechsler Decl. II, Dkt. No. 47-6), attaching
  - CAFA Notice as Exhibit 1 (Id. at Ex. 1),
  - AG Notice as Exhibit 2 (Id. at Ex. 2), and
  - Supplemental AG Notice as Exhibit 3 (Id. at Ex. 3); and
- Declaration of Marcus Bradley (Bradley Decl. II, Dkt. No. 47-7), attaching
  - Munden Complaint as Exhibit 1 (Id. at Ex. 1), and
  - Munden FAC as Exhibit 2 (Id. at Ex. 2.)

## B. The Settlement Agreement

### 1. The Terms

Plaintiff submitted the Parties' Settlement Agreement as Exhibit 2 to her Motion for Final Approval. ("Settlement," Dkt. No. 46.) While the Settlement is unchanged from the terms of the proposed class settlement that was preliminarily approved on September 12, 2016, the Court summarizes the key provisions again here. The proposed settlement class consists of "all persons employed by Trustaff Travel Nurses, LLC as non-exempt, temporarily assigned employees who were provided assignments at facilities in the State of California from May 27, 2011 through September 12, 2016" and an opt-in FLSA subclass—a total of 2,042 members (collectively, "Class"). (Mot. at 6; Settlementat ¶ 2.8.) The FLSA Subclass is defined as "[a]ll Settlement Class Members who timely return their respective Claim Forms and thereby are deemed to have opted into the action for purposes of FLSA, and thereby released any claims such as FLSA Settlement Class Members may have under the FLSA as to the Released Federal Law Claims Only." (Settlement § II.17.)

In the Settlement, Trustaff continues to deny liability for all claims alleged in the FACAC. (Settlement § IV.)  In exchange for the release of class and representative claims alleged in the FACAC, as well as the claims that could have been based on the same set of facts under California and Federal law, Trustaff agrees to pay up to $3,775,000.00, ("Gross Settlement

Amount") exclusive of its obligation to pay employer-side payroll taxes. (Mot. at 6.) Class Members also agree to expressly waive rights and benefits they may otherwise have had under Section 1542 of the California Civil Code unless they formally opt-out of the Settlement. (Settlement at ¶ 12.1.) The specific claims, alleged or potentially alleged, Class Members agree to release pursuant to the Settlement are as follows:

- State Law Claims
  - (a) all claims related to unpaid compensation (i.e., wages, overtime, meal and rest period premiums, damages, interest, attorneys' fees, etc.) (Settlement at §XII, ¶ 12.1);
  - (b) all claims for unpaid overtime and straight time wages under California Labor Code sections 510, 1194, 1197, and 1198 and any other applicable sections, as well as under Industrial Welfare commission Wage Orders 4-2001 and 5-2001 (Id.);
  - (c) all claims for failure to provide meal and rest periods under California Labor Code sections 226.7, 512, and 1198 and any other applicable sections, as well as under Industrial Welfare commission Wage Orders 4-2001 and 5-2001 (Id.);
  - (d) all claims for unreimbursed business-related expenses under California Labor Code section 2802 and any other applicable sections (Id.);
  - (e) all claims for "waiting time" penalties for late paid or unpaid wages under California Labor Code section 203 and any other applicable sections (Id.);
  - (f) all claims for inaccurate or deficient wage statements under California Labor Code section 226 and any other applicable sections (Id.);
  - (g) claims based on (a) through (f) as a predicate act for alleged violations of California Business and Professions Code section 17200, et seq. (Id.);
  - (h) all claims under California's Private Attorneys General Act ("PAGA") and all relief sought thereunder during the statutory period of March 24, 2014 to the date of Preliminary Approval (Id.); and
  - (i) any premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on or related to the above claims (Id.);
- Federal Law Claims
  - Any and all claims alleged or potentially alleged that accrued during the Class Period related to compensation which arise under or are predicated upon the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (Id. at ¶ 12.2.)

Class Representative Andrea Moppin also agrees to release any and all claims arising out of or related to the Lawsuit or her employment or assignment by Trustaff. (Id. at ¶ 12.3.)[2] As to PAGA

---

[2] Class Representative releases the aforementioned claims as well as any claims for wrongful discharge of employment, termination in violation of public policy, discrimination, harassment, retaliation, failure to provide reasonable accommodation, failure to engage in a good faith

penalties, $15,000 will be deducted from the Gross Settlement Amount for settlement of any and all Alleged Claims for which penalties under PAGA, Labor Code sections 2698, et seq. may be sought or are otherwise available. (Settlement at ¶8.3.) The PAGA Penalty Payment allocates $11,250 (75%) to the Labor and Workforce Development Agency ("LDWA") for the enforcement of labor laws and education of employers, and $3,750 (25%) distributed in equal shares, to the Settlement Class Members who submit timely, valid Claims. (Id.)

The Settlement provides that Class Counsel, Raymond Boucher and Shehnaz Bhujwala of Boucher LLP and Sahag Majarian II of the Law Offices of Sahag Majarian II, shall receive 25% of the Gross Settlement Amount – $943,750 – as an award of attorneys' fees and up to $10,000 in litigation expenses. (Id. § IX.1.) The Settlement also provides that an estimated $25,000 of the Gross Settlement Amount will be used for claims administration costs. (Id.) Additionally, Trustaff has agreed to pay Plaintiff a Service Enhancement Payment of up to $17,500 for her work as the Class Representative. (Id. § VIII.5.)

Thus, the Net Settlement Amount—the amount from which funds will be distributed to Settlement Class Members who submit timely, valid claims—will be approximately $2,763,750.

---

interactive process, breach of contract (express and implied), breach of covenant of good faith and fair dealing, promissory estoppel, intentional or negligent infliction of emotional distress, fraud, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, unfair business practices, defamation, libel, slander, negligence, personal injury, assault, battery, invasion of privacy, false imprisonment, conversion, and disability benefits. (Settlement at §XII, ¶ 12.3.) Class Representative also agrees to release any and all claims for any violation of any federal, state, or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Equal Pay Act, the FLSA, except as prohibited by law, the Fair Credit Reporting Act, the Employee Retirement Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, except as prohibited by law, the Sarbanes-Oxley Act of 2002, the California Family Rights Act, the California Labor Code, the California Industrial Welfare Commission Wage Orders, the California Business and Professions Code, the California Unruh Act, the California Fair Employment and Housing Act, any and all claims for violation of the federal, or any state, constitution, any and all claims for any other laws and regulations relating to employment or employment discrimination, harassment or retaliation, any and all claims for monetary recovery and personal or individual relief, and personal or individual relief including premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on the claims. (Id.) Class Representative does not release any claim or right for workers' compensation benefits, any claim or right that may arise after the execution of the Stipulation, any claim or right regarding compliance with the Stipulation or any claim or right that is not waivable as a matter of law. (Id.) Class Representative also expressly waives any rights under California Civil Code section 1542. (Id.)

---

**CIVIL MINUTES—GENERAL**     Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

(Id. § II.26.) The payment for each individual Settlement Class Member who timely submits a valid claim will be calculated by dividing the number of work weeks all Class Members worked in California during the class period by the number of work weeks the individual Settlement Class Member worked and multiplying this number by the Net Settlement Amount. (Id. § VIII.4.) Additionally, Trustaff agrees that it is required to fund a minimum of 60% of the Net Settlement Amount for payment to Settlement Class Members, regardless of the claims rate. (Id.) This means that if the total value of timely submitted and valid claims is less than 60% of the Net Settlement Amount, each Settlement Class Member will also receive payment of his or her equal share of the difference between the total value of timely, valid claims and 60% of the Net Settlement Amount. (Id.)

### 2. Performance of the Agreement

As discussed, the Court approved the Notice plan in its September 12, 2016 Order. (Order.) The Notice Plan was found to provide Class Members with sufficient notice of the key terms of the settlement. (Id.) The Notice contained information about the claims in the litigation and the terms of the settlement, explained the rights and release of claims under the settlement, the right to object to the settlement, the right to opt-out of the settlement, explained the calculation of settlement payments, and included estimated individual settlement payment amounts. (Id.) The Notice also informed the Class of the deadline for filing a claim, requesting exclusion or objecting to the proposed settlement, and informed them of the date, time, and location of the February 13, 2017 final approval hearing. (See Notice Packet.)

On October 11, 2016, the Settlement Administrator received data files from Trustaff's counsel for 2,042 Class Members, detailing names, last known addresses, social security numbers, and the number of compensable workweeks for each members. (Mot. at 14; Morales Decl.) A National Change of Address search was conducted on October 26, 2016 to update the list with respect to anyone who moved in the past four years. (Morales Decl. ¶ 7.) On November 2, 2016, the Notice, Claim Form and Request for Exclusion Forms together with Business Reply envelopes were mailed to all Class Members by First Class Mail. (Id. ¶¶ 6, 8.) On December 2, 2016, reminder postcards were mailed out to 1,700 Class Members who had not responded. (Id. ¶ 9.) Skip traces were performed on all 340 Notice Packets returned to the Settlement Administrator to locate better addresses, and as a result, 251 Notice Packets were resent. (Id. ¶¶ 12, 13.) A total of 116 Notice Packets remain undeliverable to date. (Id.) A total of 1,926 Class Members were successfully sent Notice Packets representing a 94.32% success rate. (Mot. at 15.)

Notice of final judgment will be posted to the settlement website created and maintained by the Settlement Administrator, in addition to other information and documents relating to the settlement at www.trustaffsettlement.com. (Morales Decl. ¶ 10.) A toll free hotline is also being maintained for Class Members to call the Settlement Administrator and ask questions. (Id. ¶ 9.)

As of January 9, 2017, the Settlement Administrator did not receive any written objections from Class Members. (Id. ¶ 14.) A total of 681 valid claims and 28 requests for exclusion have been received. (Id. ¶¶ 16-20.) Requests to cure were sent out with respect to claims and the

---

requests for exclusion deemed deficient. (Id.) Assuming that the ten remaining deficient claims are cured and accepted, approximately 33.34% of Class Members will participate in the proposed settlement with an average settlement payout estimated to be $2,678.92 within a range that extends up to $20,117.84 based on the number of compensable workweeks and the 60% NSA minimum payout, if given final approval by this Court. (Id. ¶ 23.) The estimated claimed amount for the Settlement is estimated to be 60% of the NSA, which is $1,658,250.00. (Id.)

## II. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3). Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2) ] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award ... [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund

doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## III. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

The Declaration of Sarah Dechsler indicates that Trustaff provided notice on August 12, 2016 via certified U.S. mail to the offices of the attorney generals for each of the 50 states. (Dechsler Decl. ¶ 2; CAFA Notice.) As of January 13, 2017, no attorney general for any state has objected to the settlement. (Id. ¶ 3.) Due to inadvertence, notice was not sent to the office of the United States Attorney General until January 12, 2017. (Id. ¶ 4; AG Notice.)

Accordingly, the Court finds that the notice requirements of 28 U.S.C. § 1715 have been satisfied. The Order, however, must be stayed until April 13, 2017, which is 90 days after the U.S. Attorney General received Notice.

//

---

Case 2:18-cv-02814-AB-DYE   Document 4269-3   Filed 07/06/22   Page 59 of 102   Page ID
Case 5:13-cv-01354-AB-DYE   Document 443   Filed 02/07/17   Page 10 of 21   Page ID #:1502
#:50419

## B. Rule 23

### 1. Rule 23(a) and (b)

The Order granting preliminary approval conditionally certified both the Rule 23 Settlement Class and the FLSA Subclass. (Order at 6-10.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012).

Here, the class has not materially changed since the Court's September 12, 2016 Order. (Order at 6, 10; Settlement at ¶2.8, 2.17.) Further, the Declaration of counsel for Plaintiffs in Munden, Marcus Bradley, explains that the putative class in Munden does not include Trustaff employees who were temporarily assigned to work at Los Robles. (See, e.g., Bradley Decl. ¶ 8.) Since there is no risk that the Munden class overlaps with Class Members, the Court's concern that certifying the class here may result in releasing certain claims asserted by Munden class members is assuaged. All the criteria for conditional class certification, therefore, remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### 2. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that that Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the Class Notice sent to potential class members. (Order at 13.) The Class Notice was timely sent via mail to all potential Class Members, and it provided information on the Final Approval Hearing, objecting, opting out, and submitting a Claim Form. (Boucher Decl., Notice Packet; Morales Decl. ¶¶ 3-19.) Further, potential class members had access to a toll-free number and website to obtain information about the Settlement. (Morales Decl. ¶¶ 9, 10.) The Court finds that Notice to the Settlement Class was proper.

## C. Fair, Reasonable, and Adequate Under Rule 23(a)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Service Com., 688

Case 2:18-cv-02814-AB-DYG   Document 1269-8   Filed 07/06/22   Page 60 of 102   Page ID
Case 5:13-cv-01354-AB-DYG   Document 43   Filed 02/01/16   Page 11 of 21   Page ID
#:50420

F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  Id.  Under Rule
23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a
hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement agreement is fair, adequate, and reasonable to all
concerned, the Court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed, and the stage of the proceedings;
> (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and
> (8) any opposition by class members.

Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is
not exclusive and the court may balance and weigh different factors depending on the
circumstances of each case.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits and the
range of possible recovery. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir.
2009).  In determining the probability of Plaintiff's success on the merits, there is no "particular
formula by which that outcome must be tested." Id. at 965.

Plaintiff's counsel acknowledges that full recovery for the class for wage and hour claims
would face many obstacles. For one thing, Trustaff continues to deny liability. (Settlement at
§ IV.) Defendants' defenses posed threats to the viability of Plaintiff's and the Class Members'
claims. For example, Defendants refute that wages are owed to Plaintiff and Class Members. (Id.)
As to the meal break claim, Defendants argued that meal breaks were waivable and that their
employees had waived such breaks. (Id.)

Plaintiff's claims also present myriad evidentiary challenges that make prevailing at trial
uncertain. For instance, Plaintiff anticipates the meal break claim could present the most difficult
issues of proof regarding liability and damages "as Defendants had records of seemingly
compliant meal break waivers." (Id.) Plaintiff also recognizes her theory of underpayment of
penalty payments based on the calculation of the regular rate of pay is novel, and anticipates a
25% chance of prevailing. (Id.)  For claims predicated on Defendants' "willful" violation,
Plaintiff acknowledges a finding of willfulness is a difficult burden.

There is also a significant risk that, if the litigation is not settled, Plaintiff may not have been
able to certify the class in order to proceed as a class action.  See, e.g., Marlo v. United Parcel

Service, Inc., 251 F.R.D. 476, 488 (C.D. Cal. 2008) (decertifying overtime wage class after discovery, motion practice and trial preparations revealed that predominance of common issues was not satisfied). Indeed, Plaintiff acknowledges the difficulty of prevailing at class certification because it may be difficult to establish commonality and typicality for the reporting time claim across medical facilities with varying policies and practices. (Boucher Decl. ¶ 27.)

Because the Settlement represents a significant recovery for the class, particularly in view of the challenges Plaintiff would likely face in this litigation going forward, the Court finds this factor weighs in favor of approval.  See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required.  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

As discussed, Defendants continue to contest liability. Additionally, Plaintiff acknowledges the risks in wage and class action cases are significant and often complex. (Mot. at 24.) The class has yet to be certified, and Trustaff contests every aspect of this class and representative case. (Id.) The expense of further litigation is also significant, and the parties had not yet commenced deposition discovery at the time of mediation. (Id.) Trustaff also indicated that witnesses were located out of state, which would increase the expense required to complete the depositions. (Id.) Thus, in order for the class to obtain a remedy, the class likely would have had to litigate certification, dispositive motion practice, and trial.  Absent settlement, the litigation in this case would have been hard-fought.

Accordingly, the Court finds that this factor weighs in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout Trial

Because Plaintiff has not yet filed a motion for class certification, there is a risk that the class would not be certified.  Furthermore, Trustaff indicated an intent to file motions for summary judgment and a motion under Rule 23(d) that a class cannot be certified. The individualized inquiries that may be required to determine meal and rest break periods (and adequacy of Defendants' claimed meal break waivers), overtime compensation, and which policies or practices across different medical facilities applied to each Class Member's claims, among others, present a substantial risk that Plaintiff may not be able to establish predominance for purposes of class certification. This factor weighs in favor of approving the settlement. See Gardner v. GC Servs., LP, 2012 WL 1119534, *4 (S.D. Cal. 2012) ("[B]ecause settlement was reached prior to a

hearing on Plaintiff's motion for class certification, settlement was reached at a time when there was still a risk that the class would not be certified by the Court.").

### 4. Amount Offered in Settlement

The Parties agreed to a Gross Settlement Amount of $3,775,000.00 (Settlement at ¶ 2.18.) This amount includes Class Counsel's Attorneys' Fees, Litigation Expenses, Claims Administration Costs, the PAGA Penalty Payment, all Settlement Payments to Settlement Class Members who submit timely, valid Claims, and the Service Enhancement Payment to the Class Representative. (Id.) The Gross Settlement Amount does not include Trustaff's share of payroll taxes, which Trustaff will pay separately. (Id.) As to PAGA Penalty Payments, Trustaff will pay $15,000.00 for settlement of any and all alleged claims for which penalties under PAGA, Labor Code sections 2698, et seq., may be sought. (Id. at ¶ 8.3.) Under Labor Code section 2699(i), the PAGA Penalty Payment will be allocated as follows: $11,250.00 (75%) to the LWDA, and $3,750.00 (25%) to the Settlement Class members who will receive equal shares upon submission of valid and timely claims. (Id.) The portions of PAGA Penalty Payments distributed to Class Members is not deemed wages for purposes of each individual Class Member's total recovery. (Id.) Plaintiff's counsel estimates that the average settlement payment each Class Member will recover is $2,678.92, within a range that extends up to $20,117.84 based on the amount on the number of compensable workweeks and the 60% NSA minimum payout. (Mot. at 20; Morales Decl. ¶ 23.)

Plaintiff's counsel calculated the maximum damages to the Class Members, exclusive of interest, to be approximately $6,247,911.00 if Plaintiff and Class Members prevailed on all of their claims at trial. Considering the significant risks of maintaining class action status throughout trial, and the evidentiary issues for purposes of establishing Trustaff's liability, the settlement sum represents a 60.4% recovery of the exposure value provides substantial benefits to the class. See Linney, 151 F.3d at 1242 ("'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" (quoting City of Detroit v. Grinnell Corp, 495 F.2d 448, 455 n.2 (2d Cir. 1974))). Accordingly, this factor weighs in favor of approving the settlement.

### 5. Extent of Discovery Completed and the Stage of the Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. Here, the Parties have engaged in significant discovery. Plaintiff conducted significant investigation and discovery prior to the April 8, 2016 all-day mediation in front of an experienced employment class action mediator. (Boucher Decl. ¶ 14.) Plaintiff's counsel conducted an investigation into the claims alleged, interviewed Plaintiff regarding the facts alleged in the complaint and conducted legal research to consider the merits and applicable defenses prior to the mediation. (Boucher Decl. ¶ 4.) Plaintiff's counsel participated in numerous conferences with Trustaff's counsel, prepared and served formal and informal written discovery requests, and engaged in a detailed evaluation

Case 2:18-mi-02814-AB-DVC   Document 1269-2   Filed 07/06/22   Page 63 of 102   Page ID
Case 5:13-cv-02381-AB-DVC   Document 43   Filed 01/31/16   Page 14 of 21   Page ID
#:50423

of time records and payroll data provided by Trustaff, which involved a statistical analysis of the time records. (Boucher Decl. ¶¶ 10-13, 17.) The Parties separately served and responded to written discovery, including document requests and interrogatories, and produced several hundred pages of responsive documents each. (Id. at ¶ 12.)

Based on these facts, the Court finds that discovery was sufficiently advanced to allow the parties to make an informed decision about settlement. See DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed)).  This factor favors settlement.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.  See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel has substantial experience litigating class actions—and specifically, substantial experience litigating wage and hour class action claims. (See Boucher Docs.; Boucher Decl.; Majarian Decl.) The Court accords weight to Class Counsel's recommendation that the Court approve this settlement, since class counsel is familiar with this litigation and its likelihood of success during litigation and trial.  Class Counsel understood the complex risks and benefits of settlement and concluded that the Settlement was a reasonable recovery that confers a substantial benefit on the Class Members.  (Boucher Decl. ¶¶ 31, 32, 16, 18, 13.)

Moreover, settlements are afforded a presumption of fairness if the negotiations occurred at arm's length.  4 Newberg on Class Actions § 11.41 (4th ed. 2013).  Here, the Settlement was reached through the efforts of counsel following a mediation conducted by experienced mediator Judge West, who has substantial experience in labor and employment litigation.  (Id. at ¶ 16.) This factor weighs in favor of approval.

//

---

Case 2:12-cv-02814-AB-DTB   Document 1269-3   Filed 07/06/22   Page 64 of 102   Page ID
Case 5:13-cv-01354-AB-DTB   Document 43   Filed 02/17/17   Page 15 of 21   Page ID
#:50424

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. However, the LWDA will receive a payment of $7,500 under the Settlement. This payment comports with PAGA payments in other class action settlements. See, e.g., Lazarin v. Pro Unlimited, Inc., Case No. C11-03609 HRL, 2013 WL 3541217 at *2 (N.D. Cal. July 11, 2013). Additionally, Trustaff provided notice of the proposed settlement to the appropriate state and federal officials as required under CAFA, 28 U.S.C. § 1715. To date, no governmental entity has intervened or objected to the proposed settlement. (Mot. at 27.) This factor weighs in favor of approval.

### 8. Any Opposition by Class Members

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

The deadline to object or opt out expired as of January 3, 2017. (Morales Decl. ¶ 14.) As of January 9, 2017, no Class Member had objected to the settlement. Out of 2,042 Class Members, and 681 total claims received, there are only 28 requests for exclusion. (Id. at ¶ 15; Exclusion Requests.) Given the low percentage of opt outs and the absence of any objections, the Court finds this factor weighs in favor of final approval.

After considering all of the relevant factors, the Court finds seven factors strongly favor approval in this analysis.[3]  In particular, the fact that there were a low number of opt outs and no objections strongly supports a finding of reasonableness.  After reviewing all of the evidence presented, the Motion, and the arguments presented at the final approval hearing, the Court finds that the settlement is "fair, reasonable and adequate to all concerned parties."  Ficalora v. Lockheed California Co., 751 F.2d 995, 996 (9th Cir. 1985).  Accordingly, the Court approves the Settlement.

## C. Fees and Costs

### 1. Attorneys' Fees

Class counsel also requests approval of its fees and costs.  Courts are obliged to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount.  In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 941 (9th Cir. 2011).

---

[3] The seventh factor weighs less strongly in favor of approval because the presence of a government entity is somewhat tenuous in this case.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942.  Here, Class Counsel requests that the attorneys' fees be calculated as a percentage of the original gross settlement amount.  (Fees Mot.)  Specifically, the Settlement Agreement provides that the award of attorneys' fees will not exceed 25% of the $3,775,000.00 gross settlement amount.

"[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).  Moreover, courts in this circuit routinely award percentages equal to approximately one-third of the settlement amount.  See, e.g., Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 448-50 (E.D. Cal. 2013); Estrella v. Freedom Fin. Network, LLC, No. CV 09–03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012); Stuart v. Radioshack Corp., No. C–07–4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010).

Where a court applies a percentage to calculate fees, it "should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." In re Toys R Us-Delaware, Inc., 295 F.R.D. 438, 460 (C.D. Cal. 2014).  The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. Cnty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).

Here, Class Counsel requests a fee award of $943,750.00, which represents 25% of the gross settlement amount of $3,775,000.00, which will be split between Plaintiff's co-counsel where Boucher, LLP will receive 50% and the Law Offices of Sahag Majarian II will receive 50%. (Fees Mot. at 5.)  A review of Class Counsel's billing indicates that Boucher LLP expended 503.1 hours, and anticipates spending 35 hours of additional time on the final approval, totaling an estimated $339,421.00, (Boucher Decl. ¶ 56; Boucher Decl. II ¶ 58.) Mr. Majarian expended a total of 136.20 hours over 27 months, totaling $95,340 at an hourly rate of $700. (Majarian Decl. ¶ 7.) The total time spent on this matter is approximately 639.9 hours for a total lodestar of $396,261. (Fees Mot. at 31.)

"[C]ourts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar." Craft v. Cnty. of San Bernardino, 624 F. Supp. 2d 1113, 1116–17 (S.D. Cal.2008); see also Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d 997, 1008 (9th Cir.2002) (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 6 (9th Cir.1975)).  The Court now turns to analyzing these factors to determine if the fees requested are reasonable.

Case 2:18-cv-02814-AB-PVC   Document 1269-2   Filed 07/06/22   Page 66 of 102   Page ID
Case 5:13-cv-01354-AB-DTB   Document 439   Filed 02/17/16   Page 17 of 21   Page ID
#:50426

First, Class Counsel achieved a good result and generated a significant benefit for the Class amounting to the Net Settlement Amount of approximately $3,775,000.00 for approximately 2,042 members. Based on the claims rate, the 681 class members who submitted valid and timely claims will receive $956,614.63 in the aggregate, with an average award of $2,678.92 each. (Morales Decl. ¶¶ 22-23.)  Since Trustaff has agreed to pay a minimum of 60% of the NSA regardless of the number of claims, the Settlement Class Members who submitted valid claims thus far each stand to receive $1,133.49 over their original portion of the NSA based on the work weeks ration calculation and their equal share of the PAGA Penalty Payment. (Mot. at 14.) This not only represents a substantial recovery but is also a significant benefit for Class Members who would face an expensive and time-consuming process if the claims were individually litigated.

Second, litigating wage and hour class actions is no small feat, and Plaintiff recognizes significant defenses to certification and liability of these claims. In fact, Plaintiff's counsel estimated that for claims requiring individualized proof, Plaintiff only had a 20-25% chance of prevailing. (Mot. at 14-18.) Further, Plaintiff presented a highly novel legal theory for calculating overtime, meal break, and rest break damages.(Id.) As such, this case involved complex issues which required substantial skill, particularly in light of the uncertainty in California law as it related to Plaintiff's meal break claims. Further, there are no objections to the hours performed or the billing rates, and the Court finds these to be reasonable.

Third, Class Counsel have represented that the work performed in this litigation precluded work on other cases. (Boucher Decl. ¶ 48.) Because Class Counsel took this matter on a contingency-basis, they are only paid if they favorably resolve a case through settlement or trial. Here, Class Counsel will receive compensation approximately two years after the case was originally filed. (Id. ¶ 59.) The considerable financial risks of accepting cases on a contingency basis favors allowing a lodestar multiplier here because "(1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." Fischel v. Equitable Life Assur. Soc'y of U.S., 307 F.3d 997, 1008 (9th Cir. 2002).

That said, the fee requested represents over twice the amount to which Class Counsel would be entitled if the lodestar was used to determine their fees. Comparing the lodestar against the requested fee amount of $943,750.00 would result in a multiplier of 2.38 of Class Counsel's collective lodestar. (Boucher Decl. ¶ 61.) Courts often cross check the fees requested on a percentage of the overall settlement amount with the lodestar to inform the determination of reasonableness. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 968 (9th Cir. 2009); Spann v. J.C. Penney Corp., No. SACV120215FMOKESX, 2016 WL 5844606, at *13 (C.D. Cal. Sept. 30, 2016) ("One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method."); Id.  ("For example, a cross [-] check using the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."); Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (2001).

**CIVIL MINUTES—GENERAL**                Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

Case 2:18-cv-02314-AB-PVC   Document 126-3   Filed 07/06/22   Page 67 of 102   Page ID
#:50427
Case 5:13-cv-01354-JGB-DTB   Document 43   Filed 02/11/16   Page 18 of 21   Page ID #:1910

While the percentage award requested in this case is commensurate with the percentage-of-the-benefit awards made in other wage and hour actions in this District,[4] this high multiplier is significant and warrants close scrutiny since the district court has a fiduciary role for the class at the fee-setting stage when fees are to come out of the settlement fund. Both Class Counsel's hourly rates and the number of hours expended appear reasonable in light of their experience and the demands of this litigation. In addition, significant risks attend advancing costs on a case offering little certainty of ultimate success on the merits which are not captured in the lodestar amount. Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.1990) ("[The] benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). When the fees requested would otherwise be distributed among the Class Members awarding 25% of the Net Settlement Amount, however, strikes the Court as excessive under these circumstances.

The Parties settled relatively early on in the proceedings as neither a motion for class certification nor a motion for summary judgment was filed or heard. Indeed, the cases where courts have accepted multipliers exceeding 2 involved many years of litigation and multiple dispositive motions or a highly complex field like antitrust or securities litigation. Yet, the lodestar amount of $396,261.00 does not sufficiently account for the financial risks borne by Class Counsel. In view of the 50-50 fee-splitting arrangement between Plaintiff's co-counsel, the typical common fund attorneys' fees awards, and similar California class action wage and hour settlements, the Court is persuaded that a percentage of the common fund is an appropriate measure of attorneys' fees. As such, the Court finds a 20% figure more appropriate, and therefore awards $755,000 for attorneys' fees.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual

---

[4] Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); McKenzie v. Fed. Exp. Corp., No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012)(finding a benchmark award of $2,062,500 representing a multiplier of roughly 3.2 was within a reasonable range); Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); Hopkins v. Stryker Sales Corp., 2013 WL 496358, *4 (N.D. Cal.2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); Spann, 2016 WL 5844606, at *14 (finding a multiplier of 3.07 fair and reasonable, and "well within the range for reasonable multipliers).

Case 2:18-cv-02314-AB-DFM   Document 269-8   Filed 07/06/22   Page 68 of 102   Page ID
Case 5:13-cv-01354-JGB-DTB   Document 43   Filed 02/13/17   Page 19 of 21   Page ID #:50428
#:50428

equipment are typically recoverable." <u>Rutti v. Lojack Corp., Inc.</u>, No. SACV 06–350 DOC
(JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel now seeks $7,401.24 in costs. (Fees Mot. at 31.) Class counsel provides a
sufficiently itemized breakdown of the expenses in this case, which included analysis, strategy,
attorney meetings, case management and administration, client communications and meetings,
court appearances, discovery, and document production and review. (Boucher Decl. II ¶ 57.) All
of those fees appear reasonable and are typically recoverable in litigation, and the Court therefore
approves the suggested amount for costs. <u>Cf.</u> <u>In re Immune Response Sec. Litig.</u>, 497 F. Supp.
2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class
action settlement).

### 3. Claims Administrator

CPT charged $25,000.00 in administration fees. (Boucher Decl. ¶ 66; Morales Decl.) That
fee is reasonable in light of the tasks undertaken by the Administrator and when compared with
fees charged by other claims administrators. <u>See, e.g.</u>, <u>Elliott v. Rolling Frito-Law Sales, LP</u>, No.
SACV 11–01730 DOC (ANx), 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (approving
claims administrator fees totaling $36,500 in employment action). The Court, therefore,
approves the award of $25,000.00 in fees to CPT.

### 4. Class Representative Enhancement

The trial court has discretion to award incentives to the class representatives. <u>See</u> <u>In re Mego
Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 463 (9th Cir. 2000); <u>Pelletz</u>, 592 F. Supp. 2d at 1329. The
criteria courts have used in considering the propriety and amount of an incentive award include:
(1) the risk to the class representative in commencing a class action, both financial and otherwise;
(2) the notoriety and personal difficulties encountered by the class representative; (3) the amount
of time and effort invested by the class representative; (4) the duration of the litigation; and (5)
the personal benefit, or lack thereof, enjoyed by the class representative as a result of the
litigation. <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995). In the
Order granting preliminary approval, the Court expressed serious concerns that the $17,500
enhancement signals undue preferential treatment.

In support of the Motion, Ms. Moppin submitted a declaration explaining the depth of her
participation in the case; she explains that she spent approximately 90 hours of her time on this
case since it was filed, (Moppin Decl. ¶ 13), participated in various in-person meetings and
telephone conferences, searched her own files and documents, including her email accounts, to
gather information, and provided class counsel with hundreds of pages of records related to her
employment with Trustaff and Los Robles. (<u>Id.</u> at ¶¶ 12, 13.)

The service enhancement requested represents far less than one percent of the total
settlement of $3.775 million, and around one percent of the guaranteed net settlement payout to
Class Members. Plaintiff's willingness to serve as Class Representative greatly increased the

likelihood that members of the Class would recover anything at all because it is likely that no action would have been taken by Class Members individually. (Boucher Decl. ¶ 43.) The Settlement entitles some claimants to a recovery of upwards of $20,000 based on their number of compensable workweeks. (Morales Decl. ¶ 23.) The fact that some Class Members will recover more than Ms. Moppin's requested service enhancement without facing any of the risks borne by Ms. Moppin persuades the Court that the enhancement amount is reasonable. (Morales Decl. ¶ 23.)

The Court is convinced that the requested Service Enhancement Award is not excessive under the circumstances. Throughout the litigation Ms. Moppin faced the financial risk of paying her own costs if she did not prevail. (Mot. at 25.) She also signed a general release for any and all claims related to her employment with Defendants, which is broader in scope than the claims released by Class Members. (Settlement at § 12.3.) And she forfeited these individual claims "because of the greater impact that it could have by helping former co-workers who dealt with the same wage and hour issues [she] did." (Id. at ¶ 19.)

Further, Ms. Moppin continues to face financial risk inherent to suing a former employer in a highly narrow and specialized field. She explains in her declaration that her role as Class Representative in this case exposes her to significant stigma, loss of benefits, and potential job insecurity. (Id. at ¶ 22.) In fact, since the news of the settlement became public, "[she] ha[s] been contacted by former colleagues about the lawsuit," and worries that the news of the public settlement may spread to future employers and threaten her job prospects in the small community of travel nurses in California. (Id. at ¶ 18.) Her fear of adverse employment ramifications is legitimate because job assignments for registered travel nurses in California come from only a handful of temp agencies that assign travel nurses to a small community of medical facilities. (Mot. at 10.)

Given the settlement amount, the expected recovery to class members, the significant reputational risk Ms. Moppin faces in the small community of travel nurses, and the time Ms. Moppin committed to this case, the Court finds that an incentive award of $17,500 is reasonable, if on the higher side of incentive awards, under the circumstances. Elliott v. Rolling Frito-Law Sales, LP, No. SACV 11-01730 DOC (ANx), 2014 WL 2761316, at *11 (C.D. Cal. June 12, 2014) (noting that awards of "$5,000 [are] traditionally considered reasonable in similar jurisdictions.").

## IV. CONCLUSION

For the reasons stated above, the Court:

(1) GRANTS final settlement approval;
(2) GRANTS the request for attorneys' fees and AWARDS class counsel attorneys' fees in the amount of $755,000.00 from the gross settlement amount;
(3) GRANTS the request for costs and AWARDS class counsel costs in the amount of $7,401.24 from the gross settlement amount;
(4) GRANTS the request for a $25,000 payment to CPT;

Case 2:18-ml-02814-AB-FFM   Document 1269-3   Filed 07/06/22   Page 70 of 102   Page ID
#:50430
Case 5:13-cv-01351-JGB-DTB   Document 43   Filed 02/13/17   Page 21 of 21   Page ID #:1513

(5) GRANTS the request for service award and AWARDS $17,500 from the gross
      settlement amount to the Class Representative, Andrea Moppin; and

(6) DISMISSES the First Amended Complaint WITH PREJUDICE.


    Implementation of this Order is stayed until April 13, 2017. The Parties are ordered to notify
the Court in writing if any objections are made to the Class Action Settlement by any federal
official before April 13, 2017.


    **IT IS SO ORDERED.**

# EXHIBIT 5

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 28 2015

Sherri R. Carter, Executive Officer/Clerk
By: B. Burns Tucker, Deputy

FILED
Superior Court of California
County of Los Angeles

DEC 28 2015

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
B. Burns Tucker

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST**

| | |
|---|---|
| COLIN HIGGINS PRODUCTIONS, LTD.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UNIVERSAL CITY STUDIOS, LLC, and<br>DOES 1-100,<br><br>                    Defendant. | CASE NO. BC499180 (related to BC499179,<br>BC499181, BC499182, BC500040, and<br>BC540146)<br><br>**CLASS ACTION**<br><br>~~[PROPOSED]~~ **ORDER GRANTING<br>PLAINTIFFS' MOTION FOR<br>ATTORNEYS' FEES, COSTS AND<br>INCENTIVE AWARDS**<br><br>Assigned to the Honorable Hon. Elihu M.<br>Berle (Dept. CCW-323)<br><br>[Complaint Filed: January 16, 2013] |

865710.2

1   This matter came on for review on December 11, 2015. The Court, having considered the

2   proposed Settlement Agreement; Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive

3   Awards; the points and authorities and declarations in support thereof as well as the arguments of

4   counsel; and good cause appearing, HEREBY ORDERS THE FOLLOWING:

5   1.   The Court, for purposes of this Order, adopts the terms and definitions set forth in

6   the Settlement Agreement, as modified herein.

7   2.   The Court finds that Pearson, Simon & Warshaw, LLP, Johnson & Johnson LLP,

8   Kiesel Law LLP and Boucher LLP's ("Class Counsel") lodestar, based on their historical hourly

9   rates, is $1,278,122.03. The Court finds that this amount is reasonable based upon the amount of

10   work performed by Class Counsel. In light of the novelty and difficulty of this action; Class

11   Counsel's skill and effort in dealing with the complex issues presented by this case; and the

12   substantial benefit obtained for the Class, the Court finds that Class Counsel is entitled to a

13   lodestar multiplier of 3.39 for an award of attorneys' fees in this case of $4,333,333.33.

14   3.   The Court also finds that Class Counsel have incurred $19,893.20 in litigation costs

15   in connection with this litigation. These costs were reasonably incurred in the ordinary course of

16   prosecuting this case and necessary given the complex nature and scope of the case. The Court

17   finds that Class Counsel are entitled to be reimbursed for these costs.

18   4.   The Court further approves an incentive award of $10,000.00 to each of the class

19   representatives, Colin Higgins Productions, Ltd., Indigo, Inc. and Lynn Unger Children's Trust

20   (collectively, "Plaintiffs"). These incentive awards are justified by: (1) the risks Plaintiffs faced in

21   bringing this lawsuit, financial and otherwise; (2) the amount of time and effort spent on this case

22   by Plaintiffs; and (3) the benefits Plaintiffs helped obtain for the Class Members under the

23   Settlement Agreement.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1    5.    The attorneys' fees, costs and incentive awards set forth in this Order shall be paid

2  and distributed in accordance with the terms of the Settlement Agreement.

3

4    **IT IS SO ORDERED.**

5

6  DATED: *Dec 28*_____, 2015          ELIHU M. BERLE

7                                    _____

                                      HONORABLE ELIHU M. BERLE

8                                     Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

COLIN HIGGINS PRODUCTIONS, LTD. V. UNIVERSAL CITY STUDIOS, LLC.

Case No. BC499180

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is 15165 Ventura Boulevard, Suite 400, Sherman Oaks, California 91403. I am over the age of eighteen years and am not a party to the within action;

On December 16, 2015, I served the following document(s) entitled **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS** on ALL INTERESTED PARTIES in this action by the method(s) described below:

**BY ELECTRONIC MAIL VIA CASE ANYWHERE:** In accordance with the Court's ruling governing Los Angeles Superior Court Case No. BC499179 and related actions requiring all documents to be served upon interested parties via Case Anywhere Service system. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 16, 2015, at Sherman Oaks, California.

Melissa S. Williams

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

# EXHIBIT 6

KIESEL LAW LLP

JAN 0 3 2017

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 2 8 2016

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Kelly Jameson

1
2
3
4
5
6
7
8
9
10
11

12    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13    **COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST DISTRICT**

| | |
|---|---|
| 14  COLIN HIGGINS PRODUCTIONS, LTD., | Case No. BC499179 |
| 15  Plaintiff, | Related Cases:  BC499181, BC499182, BC500040, and BC540146 |
| 16  v. | |
| 17  PARAMOUNT PICTURES CORPORATION, and DOES 1-100, | CLASS ACTIONS |
| 18  | **AMENDED CORRECTED [~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| 19  Defendant. | |
| 20  AND RELATED CASES | Date:     November 7, 2016 |
| 21  | Time:     10:00 A.M. |
| 22  | *Assigned for All Purposes to:* *Hon. Elihu M. Berle, Dept. 323* |
| 23 | |
| 24 | RECEIVED |
| 25 | DEC 1 4 2016 |
| 26 | BY: V.Jdl |

27
28

AMENDED CORRECTED [~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS

1    On November 7, 2016, this Court presided over a hearing on Plaintiffs' Motion for Attorneys'

2 Fees, Costs, and Service Awards ("Motion"). Having considered the proposed Settlement Agreement,

3 Plaintiffs' Motion and the points and authorities raised in support thereof, the facts asserted in the

4 supporting declarations filed by the law firms, settlement administrator and named plaintiffs, as well

5 as the arguments of counsel at the hearing, and good cause appearing, the Court hereby grants

6 Plaintiffs' Motion and makes the following Orders:

7    1.  The Court, for purposes of this Order, adopts the terms and definitions set forth in the

8 Settlement Agreement, as modified herein.

9    2.  The Court finds that the total lodestar for the law firms comprising Class Counsel,

10 Pearson, Simon & Warshaw, LLP, Johnson & Johnson LLP, Kiesel Law LLP, and Boucher LLP,

11 based on their historical hourly rates, is $1,300,765.38. The Court finds that this amount is reasonable

12 based on the amount of work performed by Class Counsel. The Court also finds that Class Counsel's

13 hourly rates are reasonable based on current rates within the community. In light of the novelty and

14 difficulty of this action, Class Counsel's skill and effort in dealing with the complex issues presented

15 by this case, and the substantial benefit obtained for the Class, the Court finds that it is appropriate to

16 apply a negative lodestar multiplier of 0.87 for an award of attorneys' fees in this case of $1,135,000.

17 Accordingly, the Court grants Plaintiffs' request for attorneys' fees in the amount of $1,135,000.

18    3.  The Court also finds that Class Counsel have incurred $38,286.69 in verified litigation

19 costs in connection with this litigation. These costs were reasonably incurred in the ordinary course of

20 prosecuting this case and necessary given the complex nature and scope of the case. The Court finds

21 that Class Counsel are entitled to be reimbursed for these costs. Accordingly, the Court grants

22 Plaintiffs' request for litigation costs in the amount of $38,286.69.

23    4.  The Court also finds that the requested reimbursement to settlement administrator

24 Angeion Group of settlement administration costs in the amount of $49,500.00 is appropriate. These

25 costs were reasonably incurred in the ordinary course of administration and necessary for the

26 administration of the settlement, including provision of notice to the Class, among other things.

27 Accordingly, the Court grants Plaintiffs' requests for settlement administration costs in the amount of

28 $49,500.00.

AMENDED CORRECTED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS

5.      The Court further approves a service award of $10,000 to each of the class representatives, Colin Higgins, Ltd., and Michael Elias (collectively, "Plaintiffs"). These service awards are justified by: (1) the risks Plaintiffs faced in bringing this lawsuit, financial and otherwise; (2) the amount of time and effort spent on this case by Plaintiffs; and (3) the benefits Plaintiffs helped obtain for the Class Members under the Settlement Agreement. Accordingly, the Court grants Plaintiffs' request for service awards in the amount of $10,000 each.

6.      The attorneys' fees, costs, and service awards set forth in this Order shall be paid and distributed in accordance with the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

DEC 28 2016

DATED: _____

**ELIHU M. BERLE**
_____
HON. ELIHU M. BERLE

1          **PROOF OF SERVICE**

2    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3          At the time of service, I was over 18 years of age and **not a party to this action**.  I am
employed in the County of Los Angeles, State of California.  My business address is 8648 Wilshire
4    Boulevard, Beverly Hills, CA 90211-2910.

5          On December 16, 2016, I served true copies of the following document(s) described as
**AMENDED CORRECTED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION**
6    **FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** on the interested parties in this
action as follows:
7
          **BY ELECTRONIC SERVICE VIA CASE ANYWHERE:** In accordance with the Court's
8    ruling governing Los Angeles Superior Court Case No. BC499179 and related actions requiring all
documents to be served upon interested parties via Case Anywhere Service system.
9
          I declare under penalty of perjury under the laws of the State of California that the foregoing is
10   true and correct.

11         Executed on December 16, 2016, at Beverly Hills, California.

12

13

14   Jessica Mendez

15

16

17

18

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────
**PROOF OF SERVICE**

# EXHIBIT 7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 19 2015

Sherri R. Carter, Executive Officer/Clerk
By: Nancy Navarro, Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SOFIA LOPEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITRUS VALLEY HEALTH PARTNERS, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Lopez Case No.: BC544139<br>Arias Case No.: BC545110<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Date: November 19, 2015<br>Time: 1:45 p.m.<br>Dept.: 307 |
| MITZI ARIAS, and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITRUS VALLEY HEALTH PARTNERS, INC. (dba in California as "Foothill Presbyterian Hospital," "Inter-Community Campus," and "Queen of the Valley Campus"), a California corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | |

1

## I. BACKGROUND

The settlement at issue concerns wage and hour class actions by Plaintiffs Sofia Lopez and Mitzi Arias (collectively, "Plaintiffs") against Defendant Citrus Valley Health Partners ("Defendant", or "CVHP").

The *Lopez* action, filed on April 29, 2014, alleges claims against Defendant for: (1) failure to pay wages for all hours worked; (2) failure to authorize and permit rest periods; (3) failure to provide meal periods; (4) failure to properly calculate meal period premium payments; (5) failure to properly calculate overtime rate; (6) failure to provide accurate wage statements; (7) failure to timely pay wages upon termination or resignation; and (8) unlawful, deceptive and/or unfair business practices in violation of Business & Professions Code §17200 et seq. The *Arias* action, filed May 7, 2014, alleges claims against Defendant for: (1) illegal time rounding; (2) failure to pay overtime wages at the appropriate overtime pay rate; (3) illegal dual rates of pay; (4) failure to pay all wages; (5) failure to provide all meal periods; (6) failure to pay meal period penalties at the regular rate of pay; (7) failure to authorize and permit all paid rest periods; (8) failure to timely furnish accurate itemized wage statements; (9) violations of Labor Code §203; (10) penalties pursuant to Labor Code §2699; (11) unfair business practices; and (12) declaratory relief.

The parties stipulated to amending the complaints in each action to add a cause of action for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq.

Following mediation, the parties entered into a Stipulation and Settlement of Class Action Claims and sought preliminary approval. On July 20, 2015, the Court heard and granted Plaintiffs' motion for preliminary approval. Now before the Court is their motion for final approval of the settlement.

## II. DISCUSSION

### A.   SETTLEMENT CLASS DEFINITION

The Employee Subclass includes all "non-exempt employees employed by Defendant in any of its facilities located in California during the Class Period."

The Registry Subclass includes all "non-exempt workers assigned by one or more staffing agencies to work at any CVHP facility in California at any time during the Class Period, as determined from information reasonably requested, and provided by, staffing agencies."

The Class Period is April 29, 2010, through July 20, 2015.

### B.   TERMS OF SETTLEMENT AGREEMENT

A copy of the settlement agreement was provided at the time of preliminary approval. Its essential terms are as follows:

- The Gross Settlement Amount is $9,975,000.  ¶18.
    - o   In the event that the Registry Subclass has more than 10,000 class members, the Gross Settlement Amount will be increased pro rata at the rate of $125,000 for each additional 5,000 Registry Subclass members.  ¶18.
- The Net Settlement Amount ($6,532,500) is the Gross Settlement Amount minus the following [¶22]:
    - o   Up to $3,325,000 (1/3 of Gross) for attorney fees; [¶3]
    - o   Up to $30,000 for attorney costs; [¶3]
    - o   Up to $40,000 ($20,000 x 2) for enhancement awards; [¶36]
    - o   Up to $40,000 for claims administration costs;[¶38] and
    - o   $7,500 (75% of $10,000 PAGA penalties) payable to the LWDA. [¶26]
- The gross settlement fund excludes Defendant's portion of payroll taxes. §I.F.8.

- To receive a settlement share, a class member need not submit a claim form. §I.F.17.b .
- Calculation of individual settlement payments for members who do not timely submit a valid request for exclusion:
  - o Registry Subclass: Members will be entitled to receive a $100 payment, 40% of which is considered wages and 60% interest and penalties. §I.F.12.a. The wage component will be reduced by the portion of employment taxes. §I.F.12.b.
  - o Employee Subclass: Members will receive an individual settlement payment equal to their gross wage percentage value multiplied by the net settlement amount – Employee Subclass. §I.F.13.c. 40% of this amount will be considered wages and 60% interest and penalties. §I.F.13.d. The wage component will be reduced by the portion of employment taxes. §I.F.13.e.
- Checks will be valid for 180 days from the date of issuance. §I.F.17.d.
- Funds attributable to uncashed checks will escheat to the State of California's Bureau of Unclaimed Property. § I.F.17.d.
- Any refund of employer-side taxes from uncashed individual settlement payments shall revert to Defendant. §I.F.5.
- The claims administrator is Rust Consulting, Inc. ¶37.
- The named Plaintiffs and participating class members will release Defendant (and other releasees) from the "Released Claims" for the class period. [§I.F.2] "Released Claims" means all claims that "Class Members may have or have had at any time in the past up to and including the later of the date of preliminary approval or March 15, 2015, under state and federal law [including the FLSA] …, arising from or related to the claims that were actually litigated or could have been litigated in the Action …." (Id. at ¶33.) With

4

respect to the members of the Registry Subclass, the Released Claims are limited to claims arising from or related to work performed for Defendant.  (Ibid.)  Any participating class member who timely cashes his/her settlement check—and in doing so becomes a FLSA settlement class member—will be deemed to have opted into the Action for purposes of the FLSA and will have released such FLSA claims only as to the Released Claims arising prior to the effective date.  (Id. at ¶¶16, 33; §I.F.18-19.)

- The named Plaintiffs will provide general releases and CC§1542 waivers.  [§I.F.3]

## C.    **ANALYSIS OF SETTLEMENT AGREEMENT**

### 1.  **Standards for Final Fairness Determination**

"Before final approval, the court must conduct an inquiry into the fairness of the proposed settlement."  CRC 3.769(g).  "If the court approves the settlement agreement after the final approval hearing, the court must make and enter judgment.  The judgment must include a provision for the retention of the court's jurisdiction over the parties to enforce the terms of the judgment.  The court may not enter an order dismissing the action at the same time as, or after, entry of judgment."  CRC 3.769(h).

"In a class action lawsuit, the court undertakes the responsibility to assess fairness in order to prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action.  The purpose of the requirement [of court review] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  See Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America (2006) 141 Cal. App.4th 46, 60 (internal quotation marks omitted); see also Wershba v. Apple Computer, Inc. (2001) 91 Cal.App.4th 224, 245 (Court needs to "scrutinize the proposed

settlement agreement to the extent necessary to  reach a reasoned judgment that the agreement is

not the product of fraud or overreaching by, or collusion between, the negotiating parties, and

that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned") (internal

quotation marks omitted).

"The burden is on the proponent of the settlement to show that it is fair and reasonable.

However 'a presumption of fairness exists where: (1) the settlement is reached through arm's-

length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to

act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of

objectors is small.'" See Wershba at 245 (citing Dunk v. Ford Motor Co. (1996) 48 Cal.App.4th

1794, 1802.  Notwithstanding an initial presumption of fairness, "the court should not give

rubber-stamp approval." See Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116,

130.  "Rather, to protect the interests of absent class members, the court must independently and

objectively analyze the evidence and circumstances before it in order to determine whether the

settlement is in the best interests of those whose claims will be extinguished." Id.  In that

determination, the court should consider factors such as "the strength of plaintiffs' case, the risk,

expense, complexity and likely duration of further litigation, the risk of maintaining class action

status through trial, the amount offered in settlement, the extent of discovery completed and

stage of the proceedings, the experience and views of counsel, the presence of a governmental

participant, and the reaction of the class members to the proposed settlement." Id. at 128.

"Th[is] list of factors is not exclusive and the court is free to engage in a balancing and weighing

of factors depending on the circumstances of each case." Wershba at 245.

Nevertheless, "[a] settlement need not obtain 100 percent of the damages sought in order to be

fair and reasonable.  Compromise is inherent and necessary in the settlement process.  Thus,

even if 'the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated,' this is no bar to a class settlement because 'the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.'" Id. at 250.

2. **Does a presumption of fairness exist?**

    a.    Was the settlement reached through arm's-length bargaining? Settlement was reached through arms'-length negotiations. The parties participated in a full day of mediation with the Honorable Carl. J. West (Ret.) on October 22, 2014. (Motion at 7:19-21; 8:15-17.)

    b.    Were investigation and discovery sufficient to allow counsel and the court to act intelligently? The parties exchanged a significant volume of documents and data including Defendant's policy-related documents and a statistical sampling of Defendant's timekeeping and payroll records. (Motion at 8:12-15.) Following mediation in October, 2014, the parties engaged in additional discovery to confirm certain representations made in the Settlement Agreement. (Motion at 8:21-23.) Plaintiff also interviewed Defendant's Chief Compliance Officer regarding 13 categories of information. (Motion at 8:24-28.)

    c.    Is counsel experienced in similar litigation? Yes, the attorneys are all experienced class action lawyers. (Declaration of Kevin T. Barnes, ¶¶1-6; Declaration of Raymond P. Boucher, ¶¶14-21; Declaration of Sahag Majarian II, ¶¶2-4.)

    d.    What percentage of the class has objected? Zero. Rust received no objections. (Declaration of Jessica Jenkins, ¶15.)

CONCLUSION: The settlement is entitled to a presumption of fairness.

**2. Is the settlement fair, adequate, and reasonable?**

a.   Strength of Plaintiffs' case.  "The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." See Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116, 130.  Class Counsel estimated Defendant's maximum potential liability to be approximately $2,488,071 for rounding claims; $45,929,585 for rest break claims; $45,929,585 for meal break claims; $10,850,973 for waiting time penalties; $12,430,650 for wage statement penalties; and $26,120,100 for PAGA violations.  (Barnes Declaration, ¶21.)  Of these amounts, Plaintiffs estimate that Defendant should be discounted to $1,679,448 for rounding claims; $5,741,198 for rest break claims; $918,591 for meal break claims, $1,953,175 for waiting time penalties, $2,237,517 for wage statement penalties, and nothing for PAGA violations, as Plaintiffs do not believe the Court would issue this penalty on top of the other penalties.  (Ibid.)  The total for the realistic, discounted damages is $12,529,929.  (Ibid.)  Notwithstanding this estimate, the $9,975,000 gross settlement amount appears to be a fair, adequate, and reasonable compromise of Plaintiffs' claims in light of Defendants' defenses and the issue of class certification, as the settlement amount represents approximately 79.6% of the potential recovery.  Class counsel stated that there is likely a 90% chance of prevailing at class certification on the rounding issue and a 75% chance of prevailing on liability; a 50% chance of prevailing at class certification for rest break claims and a 25% chance of prevailing on the liability/damages, as Defendant's policy was to provide a rest break every 4 hours and did not include any language related to any "major

fraction thereof"; a 20% chance of class certification for meal break claims and a 10% chance of prevailing on the liability/damages due to the difficulty of proof regarding Defendant's record of compliant meal breaks and logs to fill out if one was missed; a 90% chance of class certification for waiting time penalties and a 20% chance of prevailing on the liability/damages as case law on this issue is constantly evolving; a 90% chance of class certification for wage statement penalties and a 20% chance of prevailing on the liability/damages as Plaintiffs have the burden of showing Defendant engaged in a "willful" violation; and a 0% chance that the court would issue PAGA penalties on top of other penalties as PAGA penalties are discretionary. (Ibid.)

b.  Risk, expense, complexity and likely duration of further litigation. Given the nature of the class claims, the case is likely to be expensive and lengthy to try. Procedural hurdles (e.g., motion practice and appeals) are also likely to prolong the litigation as well as any recovery by the class members.

c.  Risk of maintaining class action status through trial. Even if a class is certified, there is always a risk of decertification. See Weinstat v. Dentsply Intern., Inc. (2010) 180 Cal.App.4th 1213, 1226 ("Our Supreme Court has recognized that trial courts should retain some flexibility in conducting class actions, which means, under suitable circumstances, entertaining successive motions on certification if the court subsequently discovers that the propriety of a class action is not appropriate.").

d.  Amount offered in settlement. As indicated above, the gross settlement amount is $9,975,000. Assuming that the Court approves all of the requested deductions,

approximately $6,532,500 will be available for automatic distribution to the 6,142 participating class members. All Registry Subclass Members who did not opt out will receive $100. (Jenkins Declaration, ¶17.) The average award for Employee Subclass Members is $1,222.36, and the highest award is $7,850.43. (Jenkins Declaration, ¶18.)

e. <u>Extent of discovery completed and stage of the proceedings.</u> As discussed above, at the time of the settlement, Plaintiffs had conducted extensive discovery.

f. <u>Experience and views of counsel.</u> The settlement was negotiated and endorsed by class counsel who, as indicated above, is experienced in class action litigation, including wage and hour cases.

g. <u>Presence of a governmental participant.</u> This factor is not applicable here.

h. <u>Reaction of the class members to the proposed settlement.</u>

| | |
|---|---|
| Number of class members: | 6,154 |
| Number of notices mailed: | 6,154 |
| Number of undeliverable notices: | 53 |
| Number of opt-outs: | 12 |
| Number of objections: | 0 |
| Number of participating class members: | **6,142** |

<u>CONCLUSION:</u> The settlement can be deemed "fair, adequate, and reasonable."

**D.   <u>ATTORNEY FEES AND COSTS</u>**

Class Counsel, the law firms of Bounder, LLP, Kevin T. Barnes, and Sahag Majarian II, request $3,325,000 for attorney fees and $15,914.15 for costs.

The lodestar calculation is as follows:

| Timekeeper | Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|
| Raymond P. Boucher | 183.9 | $1,019.09 (blended) | $187,410 |
| Raymond P. Boucher (future) | 35 | $1,019.09 (blended) | $ 35,668.15 |
| Shehnaz M. Bhujwala | 96.4 | $750 | $ 72,300 |
| Maria L. Weitz | 5.3 | $750 | $ 3,975 |
| Brandon K. Brouillette | 52.9 | $395 | $ 20,895.50 |
| Eliza Donay (paralegal) | 11.3 | $185 | $ 2,090.50 |
| Sandra Haro (paralegal) | 14.8 | $185 | $ 2,738 |
| Avery Kunstler (paralegal) | 0.4 | $185 | $ 74 |
| Launa Adolph | 11.4 | $625 | $ 7,125 |
| Shehnaz M. Bhujwala | .3 | $625 | $ 187.50 |
| Kevin T. Barnes | 537.2 | $750 | $402,900 |
| Gregg Lander | 139.4 | $650 | $ 90,610 |
| Kevin T. Barnes (future) | 35 | $750 | $ 26,250 |
| Sahag Majarian | 230.2 | $700 | $161,140 |
| Sahag Majarian (future) | 10 | $700 | $ 7,000 |
| | | | |
| **TOTAL** | | | **$1,020,363.65** |

Based on a review of the billing records submitted, the hours spent on the tasks performed appear to be reasonable for this case. Except as to Raymond Boucher, whose billing rate was sometimes $950/hour and later became $1,100/hour, the hourly rates charged also appear to be reasonable and in line with prevailing rates in the community. This appears to be high, but based on Mr. Boucher's vast experience will be accepted for purposes of this lodestar calculation.

The $3,325,000 fee request requires application of a multiplier of 3.25. The lodestar may be adjusted to take into account such factors as the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented. (Thayer v. Wells Fargo Bank (2001) 92 Cal.App.4th 819, 833.) These factors each weigh in favor of application of the multiplier. The attorneys representing Plaintiff and the class are all of high quality. They undertook this litigation on a contingency fee basis, and they obtained a very good result for the class.

Applying the cross-check, the fee request represents 1/3 of the gross settlement amount. This percentage is within the ballpark of the average 33.33% generally awarded in class actions. See In re Consumer Privacy Cases (2009) 175 Cal.App.4th 545, 558, FN13 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.")

Further, the notice expressly advised class members of the fee request, and not a single class member objected to it.

As for costs, class counsel requests a total of $15,914.15.  Boucher's firm has unreimbursed expenses of $4,963.18.  (Boucher Declaration, ¶13, and Exhibits 1 and 2.)  Barnes has costs of $8,265.79.  (Barnes Declaration, ¶13, and Exhibit 2.)  Majarian has incurred costs of $2,685.18.  (Majarian Declaration, ¶11 and Exhibit B.)  These costs all appear to be reasonable and necessary to the litigation.   The combined total is less than the $30,000 cap, which no class member objected to.

For all of the foregoing reasons, the fee and cost requests are approved.

**E.**      **INCENTIVE AWARD TO CLASS REPRESENTATIVE**

An incentive fee award to a named class representative must be supported by evidence that quantifies time and effort expended by the individual and a reasoned explanation of financial or other risks undertaken by the class representative.  See Clark v. American Residential Services LLC (2009) 175 Cal.App.4th 785, 806-807; see also Cellphone Termination Cases (2010) 186 Cal.App.4th 1380, 1394-1395 ("[C]riteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class

12

representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. [Citations.]")

Here, the named Plaintiffs each request an incentive award of $20,000. Sofia Lopez worked for Defendant from December, 2011 to December, 2013, and during the time complained about not being able to take breaks or lunches. (Lopez Declaration, ¶¶2, 3.) Lopez met with and retained counsel, compiled documents and provided them to her attorneys, and participated in the mediation. (Id. at ¶6.) She also spent time reviewing documents, and has spent approximately 18 hours consulting with her attorneys and participating in this litigation. (Ibid.)

Mitzi Arias worked for Defendant from August, 2006 to November, 2013. (Arias Declaration, ¶2.) While employed, she complained about the fact that employees were not able to take meal breaks and that if they were not able to complete all their work and overtime requests were denied. (Id. at ¶6.) Arias met with and retained counsel. (Id. at ¶7.) She estimates that she has spent 50 hours on this litigation, on such tasks as consulting with her attorneys, attending meetings with attorneys, and attending mediation. (Id. at ¶8.) Arias accepted the risks of being a class representative, which has caused significant stress and grief. (Id. at ¶¶ 9, 10.) Arias believes that she was fired by Defendant for making complaints. (Id. at ¶12.) A co-worker has told Arias that as a result of this lawsuit, Defendant changed several of the policies at issue and improved the working environment. (Id. at ¶14.)

In light of the above as well as the general releases they provided, and the benefits obtained on behalf of the class, $10,000 appears to be a reasonable inducement for their participation in this case. The hours spent on this litigation, and the risks and stress involved, appear to be within the normal range for a class action, and thus do not warrant the higher, $20,000 amount.

//

13

**F.    CLAIMS ADMINISTRATION COSTS**

The claims administrator requests $39,687, which is slightly less than the $40,000 cap.

Given the tasks performed (and still to be performed), this amount appears to be reasonable.

This amount was also disclosed to class members and deemed unobjectionable.

**III.  CONCLUSION AND ORDER**

**A.    TENTATIVE RULING**

(1) Grant class certification for purposes of settlement;

(2) Grant final approval of the settlement as fair, adequate, and reasonable;

(3) Award  $3,325,000 in attorney fees and $15,914.15  in costs to class counsel;

(4) Award $10,000 as an incentive award to ~~each of the two class representatives;~~  *Award $14,000 as an incentive award to Ms. Arias*  *Ms. Lopez.*

(5) Award $39,687 in claims administration costs to Rust Consulting, Inc.;

(6) Approve payment of $7,500 to the LWDA;

(7) Order class counsel to lodge a proposed Judgment, ~~consistent with this ruling by~~

~~                    , 2015;~~

(8) Order class counsel to provide notice to the class members pursuant to California Rules

of Court, rule 3.771(b); and

(9) A Non-Appearance Case Review re: Final Report re: Distribution of Settlement Funds is

set for  *July 29 , 2016*        , at   *8:30*      . Final Report is to be filed by

*July 22, 2016* .

Dated:  *11/19/15*

AMY D. HOGUE
Judge of the Superior Court

14

# EXHIBIT 8

Case 2:18-ml-02814-AB-PVC   Document 1269-3   Filed 07/06/22   Page 97 of 102   Page ID
Case 2:14-cv-04378-RGK-SH   Document 92   Filed 01/15/16   Page 96 of 6   Page ID #:1497
#:50457

1 | Raymond P. Boucher, State Bar No. 115364
*ray@boucher.la*
2 | Shehnaz M. Bhujwala, State Bar No. 223484
*bhujwala@boucher.la*
3 | Brandon K. Brouillette, State Bar No. 273156
*brouillette@boucher.la*
4 | BOUCHER LLP
21600 Oxnard Street, Suite 600
5 | Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
6 | Fax:   (818) 340-5401

7 | Sahag Majarian, II, State Bar No. 146621
*sahagii@aol.com*
8 | LAW OFFICES OF SAHAG MAJARIAN II
18250 Ventura Boulevard
9 | Tarzana, California 91356
Tel:   (818) 609-0807
10 | Fax:   (818) 609-0892

11 | *Attorneys for Plaintiff and the Class*

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ✓
JS-2/JS-3 ____
Scan Only ____

12

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

15 | BERTA MARTIN DEL CAMPO, Individually and On Behalf of All
16 | Others Similarly Situated,

17 | Plaintiff,

18 | v.

19 | HOMETOWN BUFFET, INC., a Minnesota Corporation; OCB
20 | RESTAURANT COMPANY, LLC, a Minnesota Limited Liability Company;
21 | OVATION BRANDS, INC.; and DOES 1-50, Inclusive,

22 | Defendants.

Case No. 2:14-cv-04378 (RGK) SHx

CLASS ACTION

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND SERVICE AWARD AND JUDGMENT

Date:   January 11, 2016
Time:   9:00 A.M.
Crtrm.: 850 (Roybal)

*Assigned to the Hon. R. Gary Klausner and to Magistrate Stephen J. Hillman for Discovery Matters*

23

24

25

26 | Trial Date:     June 14, 2016

27

28

Case No. 2:14-cv-04378 (RGK) SHx

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND SERVICE AWARD

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1   The Honorable R. Gary Klausner, District Court Judge for the United States

2   District Court, Central District of California, Western Division, held a hearing on

3   the unopposed Motion for an Order Granting Final Approval of Class Action

4   Settlement and unopposed Motion for Attorneys' Fees, Costs, and Service Award,

5   filed by Plaintiff Berta Martin Del Campo ("Plaintiff") in the above-entitled matter,

6   on Monday, January 11, 2016, at 9:00 a.m., in Courtroom 850 of the United States

7   District Court for the Central District of California, Western Division, located at the

8   Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple

9   Street, Los Angeles, California 90012. Due and adequate noticed was given to the

10   Class, as defined below, of this hearing. The Court, having considered all of the

11   arguments raised by Counsel in support of the Motions, and any objections received

12   to the proposed settlement,  now issues the following findings and orders.

13   **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

14       1.       The Court maintains jurisdiction over this Action, *Del Campo v.*

15   *Hometown Buffet, Inc.,* Case No. 2:14-cv-04378 (RGK) SHx pursuant to the Class

16   Action Fairness Act  of 2005 ("CAFA"), 28 U.S.C. 1332(d), and over Plaintiff,

17   Defendants Hometown Buffet, Inc. and OCB Restaurant Company, LLC

18   ("Defendants"), and all members of the Class, defined as:

19           All current and former non-exempt, non-managerial employees

20           employed by Hometown Buffet, Inc. and/or OCB Restaurant Company,

21           LLC ("Defendants") in California at any time between July 19, 2012

22           and March 31, 2015. ("Class")

23       2.       The term "Stipulation" shall refer to the Joint Stipulation Re: Class

24   Action Settlement and Release submitted by Plaintiff in support of the Motions, and

25   all terms used herein shall have the same meaning as the terms defined in the

26   Stipulation unless otherwise stated in this Order.

27       3.       The Court grants final approval of the terms of the Stipulation because

28   it meets the criteria for final settlement approval. The settlement described in the

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

2       Case No. 2:14-cv-04378 (RGK) SHx

1  Stipulation falls within the range of possible approval and is fair, adequate, and
2  reasonable. It results from an arm's length, informed negotiation by counsel for the
3  parties. It treats all members of the Class fairly.

4      4.    Notice by First Class U.S. Mail of the Notice Packets, consisting of the
5  Court-approved Notice, Claim Form, and Request for Exclusion Form, constituted
6  the best practicable notice to all Class members of the settlement, as set forth in the
7  Stipulation, under the circumstances and fully complied with due process
8  requirements under the United States Constitution, Federal Rules of Civil Procedure,
9  the law of the State of California, and other applicable laws. Based on the evidence
10  submitted in conjunction with the hearing on the Motions, the Court determines that
11  Notice was adequate. These papers informed members of the Class of the terms of
12  the settlement, their right to claim a share of the settlement proceedings, their right
13  to request exclusion from the settlement, and their right to object to the settlement or
14  the Motion for Attorneys' Fees, Costs and Service Award ("Fees Motion"), as well
15  as their right to appear in person or by counsel at the Final Approval hearing and to
16  be heard regarding approval of the settlement and the Fees Motion. Adequate and
17  sufficient periods of time were provided for each of these procedures. A full
18  opportunity was afforded to the Class members to participate in the Final Approval
19  hearing. No member of the Class objected to the Stipulation or the Fees Motion. A
20  total of 95 members of the Class requested exclusion from the settlement.
21  Accordingly, the Court determines that all Class members who did not timely and
22  validly exclude themselves from the settlement are bound by this Order and
23  Judgment.

24      5.    The Court finds, for settlement purposes only, that the Class satisfies
25  the applicable standards for certification under Rules 23(a) and 23(b)(3) of the
26  Federal Rules of Civil Procedure, and incorporates by reference herein all reasons
27  set forth in the Court's Preliminary Approval Order for granting final approval to
28  certify the Class defined above. Because the Class is being certified for settlement

**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1   purposes, the Court need not and will not address the manageability requirement of

2   Rule 23(b)(3). *See Anchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997).

3        6.    The Court approves the settlement, and each of the releases and other

4   terms set forth in the Stipulation as fair, reasonable, and adequate as to the Class

5   members who did not timely and validly request exclusion, the Plaintiff, and

6   Defendants. The Plaintiff, Defendants, and the Claims Administrator are directed to

7   perform in accordance with the terms set forth in the Stipulation.

8        7.    With the exception of any individual member of the Class who validly

9   and timely requested exclusion, all of the claims asserted are dismissed with

10   prejudice as to the Plaintiff and the members of the Class. The parties are to bear

11   their own fees and costs except as otherwise provided in the Stipulation and herein.

12        8.    By this Judgment, Plaintiff and all members of the Settlement Class,

13   except for Class members who timely and validly requested exclusion, regardless of

14   whether the Class members submitted timely, valid claim forms or not, hereby

15   release Defendants and the Released Parties as defined in the Stipulation from the

16   Released Claims as defined in the Stipulation.

17        9.    By this Judgment, the Settlement Class members and Class Counsel

18   shall be deemed to have released all claims for attorneys' fees and costs incurred in

19   connection with this Action and settlement thereof.

20       10.    The Action is dismissed on the merits and with prejudice, permanently

21   barring the Settlement Class members from prosecuting any Released Claims. The

22   Court reserves and retains exclusive and continuing jurisdiction over the above-

23   captioned matter, the Plaintiff, the Settlement Class, and Defendants for the purpose

24   of supervising the implementation, effectuation, enforcement, construction,

25   administration, and interpretation of the Stipulation and this Judgment.

26       11.    The Court determines that the plan of allocation for payment of the Net

27   Settlement Amount as set forth in the Stipulation is fair and reasonable and that

28   distribution of the Net Settlement Amount to the Settlement Class shall be done in

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND SERVICE AWARD

1    accordance with the terms outlined in the Class Notice and Stipulation.

2         12.    Plaintiff, Berta Martin Del Campo, is hereby appointed Class

3    Representative for purposes of settlement.

4         13.    Raymond P. Boucher, Shehnaz M. Bhujwala, and Brandon K.

5    Brouillette of Boucher, LLP, and Sahag Majarian II of Law Offices of Sahag

6    Majarian II, are appointed as Class Counsel for the Class for purposes of settlement.

7         14.    Defendants agree for the Settlement Administrator, CPT Group, Inc., to

8    pay from the Maximum Settlement Amount: (i) the Claims Administrator its

9    reasonable fees for its services; (ii) the PAGA Penalty Payment to the LWDA; and

10   (iii) the Incentive Payment to the Class Representative to reimburse him for his

11   valuable services to the Settlement Class.

12        A.    The Court hereby approves the payment of settlement

13   administration costs in the amount of $56,500.00 to CPT Group, Inc., the Claims

14   Administrator, for services rendered in this matter.

15        B.    The Court hereby approves the payment of $7,500.00 from the

16   Maximum Settlement Fund to the California Labor Workforce Development

17   Agency ("LWDA").

18        C.    The Court also approves the Class Representative Service Award

19   to the Class Representative in the amount of $5,000.00, payable from the Maximum

20   Settlement Fund, in recognition of her service to the Class in initiating and

21   maintaining this litigation.

22        15.    The Court hereby awards to Class Counsel the amount of $500,000.00

23   for attorneys' fees. Based on Plaintiff's Fees Motion, the Court determined that the

24   requested legal fees meets the 25% benchmark for attorneys' fees in the Ninth

25   Circuit, are supported by the lodestar cross-check conducted by the Court with the

26   application of a reasonable multiplier of approximately 1.045, and are reasonable

27   based on detailed information regarding the work performed that was submitted by

28   Class Counsel.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

16.     The Court hereby awards to Class Counsel the amount of $16,266.16 for reimbursement of reasonable litigation costs incurred in this Action.

17.     Of the attorneys' fees and costs awarded to Class Counsel herein, the amount of $39,381.50, representing the firm's *quantum meruit* based on lodestar hours for Khorrami, LLP, and the amount of $1,737.15, representing costs incurred by the Khorrami firm, shall be paid into to a segregated account maintained by Boucher, LLP for the benefit of the Khorrami firm's creditors.

18.     The Court finds that the payments to the Settlement Administrator, LWDA, the Class Representative, and Class Counsel are fair and reasonable. The Settlement Administrator is directed to make the foregoing payments in accordance with the terms of the Stipulation and Class Counsel's further instructions.

19.     This document shall constitute a judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

DATED: January 1_, 2016

_____
HON. R. GARY KLAUSNER

6

Case No. 2:14-cv-04378 (RGK) SHx

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903