1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KNIGHT LAW GROUP LLP**
Roger Kirnos (SBN 283163)
kirnosrk@knightlaw.com
Daniel Kalinowski (SBN 305087)
danielk@knightlaw.com
10250 Constellation Blvd, Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
KAMISHA R. WARREN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

IN RE: FORD MOTOR COMPANY DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

*Kamisha Warren v. Ford Motor Company, et al.*, 2:18-cv-01885-AB-FFM

Case No.: 2:18-cv-01885-AB-FFM

(Removed from Superior Court of California, County of Los Angeles, Case No. BC692208)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR REMAND TO SUPERIOR COURT OF CALIFORNIA**

*Assigned for All Purposes to the Honorable Andre Birotte, Jr.*

**Date: August 19, 2022**
**Time: 10:00 a.m.**
**Courtroom: 7B**

Action Filed: February 2, 2018
Trial Date: Not Set

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

## Table of Contents

I.      INTRODUCTION.................................................................................1

II.     RELEVANT FACTS ...........................................................................3

III.    STANDARDS FOR REMOVAL AND REMAND .........................................4

IV.     ARGUMENT ....................................................................................4

  A.   The Instant Motion is Timely...........................................................4

  B.   Ford Has Not Shown that Complete Diversity of the Parties Exist................5

       1. To Avoid Remand, Ford Must Show by *Clear and Convincing Evidence*
          that Marina Ford Was Fraudulently Joined………………………………6

       2. The Economic Loss Rule Does Not Apply to Plaintiff's Negligent Repair
          Claim……………………………………………………………………11

       3. Marina Ford Is Not A "Dispensable Party" …………………....………13

  C.   Ford Has Failed To Establish That The Amount In Controversy Is Met ......16

       1. Ford Conveniently Fails to Consider in Its Actual Damages Calculation
          Offsets It Routinely Argues Should Be Taken……………………………..17

       2. Ford's Amount in Controversy Calculation Fails Because Its Civil
          Penalties and Punitive Damages Estimates are Speculative………………19

       3. Ford Fails to Meet Its Burden to Prove that the Amount in Controversy
          Requirement Is Satisfied by the Inclusion of Speculative Amounts of
          Attorneys' Fees……………………………………………........................23

V.      CONCLUSION ............................................................................25

1
2

## Table of Authorities

**Cases**

3

Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006)...................5

4

Aguilar v. FCA US, LLC, No. 2:21-cv-05813-AB (Asx) (C.D. Cal. 2021)...........25

5

Altamirano-Torres v. Ford Motor Co., No. CV-17-07338 AB (FFMx) ................23

6

Ambriz v. Ford Motor Co., No. RIC1612390, 2020 WL 2037819.......................22

7

Bromwell v. Michigan Mut. Ins. Co., 115 F3d 208, 213 (3rd Cir. 1997)................4

8

Brown v. Endo Pharms., Inc., 38 F. Supp. 3d 1312, 1326 (S.D. Ala. 2014) .........14

9

Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc. 756 F.3d 327,

10

    337-340 (5th Cir. 2014) ...............................................................................5

11

Carillo v. FCA US LLC, 546 F. Supp. 3d 995 (C.D. Cal. June 29, 2021).............18

12

Carrillo v. FCA US LLC, No. EDCV 20-481 JGB SHKX, 2020 WL 2097743, at

13

    *3 (C.D. Cal. May 1, 2020)........................................................................10

14

Castillo v. FCA US LLC, No. 19-cv-151-CAB-MDD, 2019 WL 6607006, at *2

15

    (S.D. Cal. Dec. 5, 2019) ............................................................................21

16

Chajon v. Ford Motor Company, No. 2:18-cv-10533, 2019 WL 994019, *2 (C.D.

17

    Cal. Jan. 8, 2019)........................................................................................20

18

Chavez v. FCA US LLC, No. 2:19-cv-06003-ODW (GJSx), 2020 WL 468909, *2

19

    (C.D. Cal. 2020) .........................................................................................20

20

Chavez v. Ford Motor Company, No. 5:18-cv-02215-MCS-KK (C.D. Cal. 2021)25

21

Chung v. FCA US, LLC, No. 2:21-cv-04577-AB-MAA, 2021 WL 4280342 at *3

22

    (C.D. Cal. Sept. 20, 2021)..........................................................................24

23

Cox v. FCA US LLC, No. CV 29-3098 DMG (Ex), 2020 WL 2857489, *2-3 (C.D.

24

    Cal. June 2, 2020) .......................................................................................11

25

D'Amico v. Ford Motor Company, No. CV 20-2985-CJC (JCx), 2020 WL

26

    2614610 (C.D. Cal. May 21, 2020) ...........................................................20

27
28

De Costs v. Headway Workforce Solutions, No. 20-00015 LEK-KJM, 2020 WL 1822473, *5 (D. Hawai'I Apr. 10, 2020).................................................................22

De Leon v. Ford Motor Co., No. CV 18-7975 PSG (FFMx), 2019 WL 7195325, at *7 (C.D. Cal. Nov. 13, 2019) ...............................................................................18

Eads v. Marks, 39 Cal. 2d 807, 810–11 (1952) ...............................................................11

Eberle v. Jaguar Land Rover N. Am., LLC, No. 218CV06650VAP (PLAx), 2018 WL 4674598, *2 (C.D. Cal. Sep. 26, 2018)................................................19, 21, 24

Edwards v. Ford Motor Co., No. CV 16-05852 BRO (PLAx), 2016 WL 6583585, *5 (C.D. Cal. Nov. 4, 2016) ...............................................................................19

Esparza v. FCA US LLC, No. 2:21-cv-01856-RGK-MRW, 2021 WL 949600, at *1 (C.D. Cal. Mar. 12, 2021) ...............................................................................20

Estrada v. FCA US, LLC, No. CV 20-10453 PA (JPRx), 2021 WL 223249 at *3 (C.D. Cal. Jan. 21, 2021)..................................................................................19

Fisher v. Ford Motor Co., CV 22-339-W-AHG, 2022 WL 2181804, at *3 (S.D. Cal. June 16, 2022) ............................................................................................18

Friewald v. Ford Motor Company, No. ED CV 20-00706-AB (FFMx), 2020 WL 2991538 at *3 (C.D. Cal. June 4, 2020).................................................................6

Friewald, 2020 WL 2991538 at *3 .................................................................................15

Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 788, 794 (9th Cir. 2018) .........................................................................................................23

Garay v. Ford Motor Company, No. 5:21-cv-01200-SB-SHK (C.D. Cal. 2021) ...25

Garcia v. FCA US LLC, 2:20-cv-04779-VAP-MRWx, 2020 WL 4219614, *3 (C.D. Cal. July 22, 2020) .................................................................................20

Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) ........................................7, 16

Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010)..........................................................................................4

Gonzalez v. FCA US , LLC, No. 2:20-cv-03103-AB-MAA, 2020 WL 2991536 at *3 (C.D. Cal. June 4, 2020).................................................................................6, 12

Gorelick, et al. v FCA US LLC, et al., No. 2:19-cv-01894-ODW, 2019 WL 2123570, at *2 (C.D. Cal. May 15, 2019).......................................................9

GranCare, LLC v. Thrower by and through Mills, 889 F.3d 543, 548 (9th Cir. 2018).............................................................................................................7

Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206 (9th Cir. 2007).............................................................................................................6

Hampton v. Insys Therapeutics, Inc., 319 F.Supp.3d 1204, 1214 (D. Nev. 2018) 13, 14, 15

Hand Electronics, Inc. v. Snowline Joint Unified School Dist., 21 Cal.App. 4th 862, 870 (1994) ........................................................................................15

Hayes v. FCA US LLC, No. CV 20-3183-DMG (JCx), 2020 WL 2857490, *3 (C.D. Cal. June 2, 2020)................................................................................12

Herko v. FCA US, LLC, 2019 WL 5587140, at *2 (S.D. Cal. Oct. 30, 2019) .......21

Herrera v. Ford Motor Company, No. CV 21-4731 PA (MARx), 2022 WL 562267, *4-5 (C.D. Cal. Feb. 24, 2022) .............................................................17

Hobart v. Ford Motor Co., No. CV-18-18903 AB (FFMx) ...................................23

Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009) ......................7

In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation, No. 18-ML-02814 AB (FFMx), 2018 WL 5905942 (C.D. Cal. Sep. 10, 2018)1, 9, 15, 16, 23

Jessica Ramirez v. Volkswagen Group of America, Inc., No. CV 22-00734 MWF (MRWx), 2022 WL 2610247, *2-3 (C.D. Cal. Jul. 8, 2022)...............................18

Kelton Arms Condominium Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003)...........................................................................................5

1   Khachatryan v. BMW of N. Am., LLC, No. CV 21-1290 PA (PDX), 2021 WL
2     927266, at *2 (C.D. Cal. Mar. 10, 2021) ............................................................20

3   Krasner v. Ford Motor Company, No. 2:18-01602-TLN-KJN, 2019 WL 1428116
4     at *5 (E.D. Cal. March 29, 2019)......................................................................15

5   Lawrence v. FCA US LLC, No. CV 16-05452 BRO (GJSx), 2016 WL 5921059,
6     *4 (C.D. Cal. Oct. 11, 2016) ............................................................................19

7   Lee v. Ford Motor Company, No. CV 19-10170-AB (FFMx), 2020 WL 2835748
8     (C.D. Cal. May 29, 2020)..............................................................................6, 15

9   Lopez v. FCA US LLC, No. 2:19-cv-07577-RGK-MRW, 2019 WL 4450427, *2
10     (C.D. Cal. Sep. 16, 2019) ............................................................................20, 21

11   Luna v. FCA US. LLC, No. 2:21-cv-07140-AB (JPRx) (C.D. Cal. 2021)............25

12   Lytle v. Ford Motor Co. No. CV-18-10407-DMG, 2019 WL 1325846, at *3 (C.D.
13     Cal. March 25, 2019) .........................................................................................9

14   Mahlmeister v. FCA US LLC, No. CV-21-00564-AB-FFMx, 2021 WL 1662578,
15     at *3 (C.D. Cal. Apr. 28, 2021).........................................................................24

16   Makol v. Jaguar Land Rover North America, LLC, No. 18-cv-03414-NC, 2018
17     WL 3194424, at *3 (N.D. Cal., June 28, 2018) ..................................................21

18   Marin General Hospital v. Modesto & Empire Traction Co., 581 F.3d 941, 944
19     (9th Cir. 2009).....................................................................................................4

20   Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005) ...................................4

21   McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)..............6, 7

22   McKeown v. Ford Motor Co., No. CV 19-00281-CJC(PLAx), 2019 WL 1199468,
23     *4 (C.D. Cal. Mar. 13, 2019) ..............................................................................8

24   Miranda v. Ford, 497 F.Supp.3d 880, 884 (2020)....................................................9

25   Montemayor v. Ford Motor Company, No. 2:19-cv-10073-AB-JEM, 2020 WL
26     3316978 at *3 (C.D. Cal. June 17, 2020).............................................................6

27   Morris v. Princess Cruises, Inc., 236 F. 3d 1061, 1067 (9th Cir. 2001) .................6

28

*Niedermeier v. FCA US LLC*, 56 Cal.App.5th 1052 (2020) ...................................2

*Pan Am World Airways, Inc. v. United States Dist. Court for Central Dist. of Calif.*, 523 F.2d 1073, 1079 (9th Cir. 1975) .........................................13

*Pedante v. Ford Motor Co.*, No. CV 17-06656 ...................................22

*Powers v. Ford Motor Company*, No. EDCV 18-2587 JGB (SPx), 2019 WL 1557451, *2 (C.D. Cal. April 10, 2019) ...................................8

*Ramirez v. FCA US, LLC*, No, 2:20-CV-11265-AV-JPR, 2021 WL 653022 at *3-5, (C.D. Cal. Feb. 18, 2021) ...................................6

*Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1031 (C.D. Cal. 2016) ...................................10

*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) .........................7

*Rivera v. Ford Motor Co.*, No. CV 18-7798 DSF (PJWx), 2020 WL 1652534, at *4-*5 (C.D. Cal. Feb. 10, 2020)...................................18

*Robles v. FCA US LLC*, No. 2:20-CV-02546-SVW-SK, 2020 WL 2318205, at *2 (C.D. Cal. May 8, 2020)...................................10

*Ronquillo v. BMW of North America, LLC*, No. 3:20-cv-1413-W-WVG, 2020 WL 6741317 (S.D. Cal. Nov. 17, 2020) ...................................20

*Saldivar v. FCA US LLC*, No. 2:19-cv-06393-ODW (JPRx), 2019 WL 5310188, *2 (C.D. Cal. Oct. 21, 2019) ...................................12

*Sanchez v. Ford Motor Co.*, 18-cv-08203, 2018 WL 6787354, *1 (C.D. Cal. Dec. 2018)...................................19, 20

*Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014) ...................14

*Sood v. FCA US, LLC*, NO. CV 21-4287-RSWL-SKx, 2021 WL 4786451, *3 (C.D. Cal. Oct. 14, 2021) ...................................20

*Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998) .........................................4

Tovar v. FCA US LLC, No. CV 20-1473 AB (JPRx), 2021 WL 3468111, *4 (C.D.
  Cal. Apr 23, 2021)......................................................................................18

Valdez v. FCA US, LLC, No. 2:21-cv-06318-FLA-JEM (C.D. Cal. 2021)...........25

Vega v. FCA US, LLC, No. 2:21-cv-05128-VAP-MRWx, 2021 WL 3771795, *3
  (C.D. Cal. Aug. 25, 2021) .........................................................................20

Velasquez v. FCA US, LLC, No. 2:21-cv-05092-JFW-AGR (C.D. Cal. 2021).....25

**Statutes**

28 U.S.C. § 1332...............................................................................................3

28 U.S.C. § 1332(c)(1) .....................................................................................5

28 U.S.C. § 1441...............................................................................................3

28 U.S.C. § 1447(c) ..........................................................................................4

Cal. Civ. Code §§ 1794(c) ..............................................................................16

Federal Rules of Civil Procedure, Rule 21 .....................................................12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Ford Motor Company ("Ford") removed this case under diversity jurisdiction, and it has since been coordinated and stayed in its entirety during these proceedings. Plaintiff Kamisha Warren ("Plaintiff") seeks remand of her case back to the Los Angeles County Superior Court because this Court does not have jurisdiction over it. First, Defendant Fox Hills Auto, Inc., a California corporation dba Airport Marina Ford ("Marina Ford") is a California corporation, and therefore, the parties are not diverse on their face. Ford has failed and cannot provide clear and convincing evidence that Marina Ford was fraudulently joined. Plaintiff sets forth in her First Amended Complaint ("FAC") sufficient allegations regarding her negligent repair claims with details and specifics as to how and why Marina Ford was negligent on each of its repair visits.[1] This Court's ruling in *In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, No. 18-ML-02814 AB (FFMx), 2018 WL 5905942 (C.D. Cal. Sep. 10, 2018) (the "2018 *In re Ford* Ruling") is distinguishable as deficiencies with the negligent repair claims there are no longer present here given the FAC amendments. Also, Plaintiff's negligent repair claim is viable and not barred by the economic loss rule – there is a causal connection between Marina Ford and the repairs. Marina Ford is not a dispensible party and, as this Court has acknowledged after 2018 in other lemon law cases with a dealership defendant, there is no sound reason to sever merely to retain jurisdiction. The parties are not diverse and this case should be remanded.

Second, Ford has failed to establish, by a preponderance of the evidence, that the amount in controversy exceeds the $75,000 threshold. Ford concedes that *potential* damages that may be awarded are up to $66,642.78. See Dkt. No. 1, Notice of Removal ("NOR"), p. 5. Yet, even this in an inflated figure as it assumes the

---

[1] Plaintiff has concurrently filed a motion for leave to amend the complaint along with the instant motion. Attached as Exhibit 1 to the DK Remand Dec. is the proposed FAC.

*maximum* civil penalty award and also does not take into account any other offsets to actual damages or restitution routinely argued by Ford. What makes this matter factually distinguishable from prior cases seeking remand is that Plaintiff recently dispossessed her vehicle and, pursuant to a recent published opinion, her damages are further offset by the amounts she received. See *Niedermeier v. FCA US LLC*, 56 Cal.App.5th 1052 (2020) *rev. granted* Feb. 10, 2021. *Niedermeier* held that restitution under Song-Beverly does not include amounts a plaintiff recovers from disposing of a vehicle.[2] The $66,642.78 figure set forth in Ford's NOR could be less should more offsets be taken, for which Ford will surely argue.

Third, the great weight of recent Central District decisions demonstrate that civil penalties, punitive damages and attorneys' fees and costs are speculative, and Ford has not established that they are more likely than not to be awarded by a jury or even exceed $75,000. Ford has failed to meet its burden that this Court has subject matter jurisdiction over the instant action.

Plaintiff and her counsel bring the instant motion at this time, after years of the case being stayed. DK Remand Dec., ¶ 4. Since 2018, the complexion of the cases and the actual lemon law has changed. A number of other plaintiffs in these coordinated proceedings have disposed of their vehicle like Plaintiff here, thereby raising the issue of whether this Court has jurisdiction given the recent *Niedermeier* ruling on damages (which was decided after this Court's 2018 *In re Ford* Ruling) and Ford's most certain defense that damages awarded be reduced on account of disposal (in addition to other offsets). *Id.* The initial IDP is also coming to a close, and another is forthcoming. *Id.* It thus makes sense to have the issue of jurisdiction determined to the extent it affects the next IDP, especially given *Niedermeier*, which now presents another offset that must be considered as part of the amount in controversy and damages. This Court has, since its 2018 *In re Ford* Ruling,

---

[2] The decision is pending review by the California Supreme Court.

1   remanded cases due to the presence of a dealership defendant. Therefore, the case
2   should be remanded because there is no jurisdiction.

3   **II.    RELEVANT FACTS**

4          Plaintiff filed this action against Ford and Marina Ford (collectively,
5   "Defendants") in the Superior Court of California, Los Angeles, on February 2,
6   2018, concerning a new 2012 Ford Focus (the "Focus") with transmission defects.
7   DK Remand Dec., ¶ 5, Ex. 1, FAC, ¶¶ 9-10. The Complaint alleges claims under
8   California's Song-Beverly Consumer Warranty Act ("Song-Beverly") for breach of
9   warranty, fraud, and negligent repair. See *Id.*, generally.

10          Prior to initiating this action, Plaintiff experienced ongoing transmission
11   problems which the Focus, and she presented it to Marina Ford on numerous
12   occasions for repair to the transmission. *Id.* at ¶¶ 70-72, 154. Despite the existence
13   of Ford service bulletins and being aware of transmission problems in other Focus
14   and Fiesta vehicles, Marina Ford performed no mechanical work on the transmission
15   for the first two repairs and instead performed software updates only, even though it
16   was aware or should have been aware that another Ford repair facility did the same
17   thing in 2013 but with no effect. *Id.* Marina Ford did not do any mechanical work
18   on the transmission until its third repair attempt a year later. *Id.* Thus, prior to this
19   2017 repair, Marina Ford exacerbated the Focus's problems and did not inform
20   Plaintiff of its inadequate repair or failure to diagnose or resolve her transmission
21   concerns. *Id.* Plaintiff seeks damages against Marina Ford for its negligent repair.
22   *Id.*; see also Prayer for Relief.

23          Plaintiff contacted Ford directly and requested the Focus be bought back given
24   all of the problems. DK Remand Dec., ¶ 7, Ex. 3. Ford responded with a presuit
25   refund worksheet wherein it made various deductions of more than $3,000 from the
26   restitution amount for items included in the purchase price of the Focus, including
27   an extended service contract, among other things. *Id.* To date, Ford has not admitted

28

1   liability nor has it conceded that the pre-suit deductions it made should be

2   reimbursed to Plaintiff as part of restitution under Song-Beverly. *Id.*

3   ## III.   STANDARDS FOR REMOVAL AND REMAND

4          The United States Code states that a district court shall have jurisdiction over

5   a civil action when the amount in controversy exceeds $75,000 and there is complete

6   diversity of citizenship between the parties.  28 U.S.C. § 1332. A civil action brought

7   in state court over which a federal district court has original jurisdiction may be

8   removed by the defendants to a district court where such an action could have been

9   brought. 28 U.S.C. § 1441. In order for a case to survive a motion for remand, the

10  removing party has the burden of proof to establish federal subject matter

11  jurisdiction is present. "The burden of establishing federal subject matter jurisdiction

12  falls on the party invoking removal." *Marin General Hospital v. Modesto & Empire*

13  *Traction Co.,* 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135

14  F.3d 648, 652 (9th Cir. 1998). There is a "strong presumption against removal

15  jurisdiction," and courts must reject it "if there is *any* doubt as to the right of removal

16  in the first instance." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka,*

17  599 F.3d 1102, 1107 (9th Cir. 2010). If it appears that the federal court lacks

18  jurisdiction, the action must be remanded back to the state court.  *Martin v. Franklin*

19  *Capital Corp.,* 546 U.S. 132, 134 (2005). A motion for remand may be granted

20  where there is either a lack of subject matter jurisdiction or defect in the removal

21  procedure.   *See* 28 U.S.C. § 1447(c).   A court must remand a matter to the

22  jurisdiction from which it was removed upon its finding that it lacks subject matter

23  jurisdiction at the time of removal. *Id.*; *Bromwell v. Michigan Mut. Ins. Co.,* 115 F3d

24  208, 213 (3rd Cir. 1997).

25  ## IV.   ARGUMENT

26  ### A.   The Instant Motion is Timely

27         If at any time before final judgment it appears that a federal court lacks subject

28  matter jurisdiction, the court will remand the case to state court either *sua sponte* or

-4-

on motion of a party. *Kelton Arms Condominium Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); see *Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.* 756 F.3d 327, 337-340 (5th Cir. 2014) (remanding after three years of litigation).

Here, seeking remand at this stage in the coordinated proceedings is proper. Since Ford removed this case and it was transferred to this Court as part of the coordinated proceedings, it has been stayed. DK remand Dec., ¶ 4. As mentioned previously, the initial IDP is coming to a close with one case remaining and set for trial set in August 2022. *Id.* The next batch of IDP cases will soon be selected, which may be the instant case subject of this motion or other cases with similar facts to it. *Id*. No judgement has been issued in this case yet. Procedurally, it makes sense at this time for this Court to determine whether it still has jurisdiction over this case, and potentially others like it.

**B.    Ford Has Not Shown that Complete Diversity of the Parties Exist**

The United States Code, 28 USC § 1332(a), requires complete diversity of parties. The presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006). A corporation is deemed to be a citizen of every state in which it has been incorporated and where it has its principal place of business. (28 U.S.C. § 1332(c)(1)).

Ford does not dispute that Marina Ford is a California corporation, and agrees that Plaintiff is a citizen and resident of California. See Dkt. No. 1, NOR , ¶¶ 24-27, pp. 6-8. Plaintiff makes the same allegations in the Complaint. Dkt. No. 1-1, Complaint, p. 11. Thus, on the face of the Complaint, there is not complete diversity. Numerous Courts in the Central District, as recent as 2021, have found that remand is appropriate where the complaint asserts allegations against a non-resident car manufacturer and a California dealership. See e.g., *Ramirez v. FCA US, LLC,* No,

-5-

2:20-CV-11265-AV-JPR, 2021 WL 653022 at *3-5, (C.D. Cal. Feb. 18, 2021); In fact, since 2018, this Court has remanded numerous actions due to the presence of a California dealership defendant. *Marin v. FCA US, LLC,* No. 2:21-cv-04067-AB-PDx, 2021 WL 5232652 at *2 (C.D. Cal. Nov. 9 2021) (remanding the case to Los Angeles County upon joinder of a dealership defendant); *Montemayor v. Ford Motor Company,* No. 2:19-cv-10073-AB-JEM, 2020 WL 3316978 at *3 (C.D. Cal. June 17, 2020) (remanding the case finding that dealership defendant was not fraudulently joined and that there is diversity of citizenship among the parties); *Gonzalez v. FCA US , LLC,* No. 2:20-cv-03103-AB-MAA, 2020 WL 2991536 at *3 (C.D. Cal. June 4, 2020) (same); *Friewald v. Ford Motor Company,* No. ED CV 20-00706-AB (FFMx), 2020 WL 2991538 at *3 (C.D. Cal. June 4, 2020) (same); *Lee v. Ford Motor Company,* No. CV 19-10170-AB (FFMx), 2020 WL 2835748 (C.D. Cal. May 29, 2020) (same). Without complete diversity, the Court does not have jurisdiction and should remand the action to state court.

1. <u>*To Avoid Remand, Ford Must Show by Clear and Convincing Evidence that Marina Ford Was Fraudulently Joined*</u>

The claim against Marina Ford is properly pled and Marina Ford was not fraudulently joined. Fraudulent joinder is an exception to the complete diversity requirement only when a defendant has in fact been fraudulently joined. *Morris v. Princess Cruises, Inc.,* 236 F. 3d 1061, 1067 (9th Cir. 2001). When joinder of a defendant is fraudulent, that defendant's presence is ignored for the purposes of determining diversity. *Id.* "If the [p]laintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is deemed fraudulent." *Hamilton Materials, Inc. v. Dow Chemical Corp.,* 494 F.3d. 1203, 1206 (9th Cir. 2007) quoting *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987). A claim of fraudulent joinder must be supported by "clear and convincing evidence," not by the lower preponderance of the evidence standard. *Id.* The party seeking removal bears

the "heavy burden" of proving that joinder of the in-state defendant is improper. *Hunter v. Phillip Morris USA,* 582 F.3d 1039, 1044 (9th Cir. 2009).  The Ninth Circuit has emphasized the "general presumption *against* [finding] fraudulent joinder." *Id.* (citation omitted).

Fraudulent joinder may be established in two ways: 1) where there is actual fraud in the pleading of jurisdictional facts, or 2) where a defendant can show that "an 'individual[ ] joined in the action cannot be liable on any theory.'" *GranCare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998)). The Circuit Courts have held that "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *GranCare,* 889 F.3d at 548 (alteration in original) (quoting *Hunter*, 582 F.3d at 1046 (citation omitted)).

Courts will "reject federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" *Id*. at 550 (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)). Even where a plaintiff's complaint cannot withstand a Rule 12(b)(6) motion to dismiss, the Ninth Circuit has held that "the fraudulent inquiry does not end there", and the district court "must consider … whether a deficiency in the complaint can possibly be cured by granting the [p]laintiff leave to amend." *GranCare,* 889 F.3d. at 550.[3] The Courts have upheld fraudulent joinder rulings only in situations where "a defendant presents extraordinarily strong evidence or arguments that a [p]laintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." *Id*. at 549 (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

---

[3] This Court previously ruled on "test" motions for remand in 2018, but did not give those plaintiffs leave to amend their complaints.

Here, Ford's argument relies exclusively on the unsupported assertion that Plaintiff fraudulently joined Marina Ford in this case for no reason other than to defeat diversity and prevent removal of the action. Dkt. No. 1, NOR, ¶¶ 25-27, pp. 7-8.   But, Ford's speculation regarding Plaintiff's "intention" is without any evidence and fails to satisfy the first prong of the fraudulent joinder test.   See *GranCare, supra* at 548. This Court previously found that there was no actual fraud in the pleadings. *In re Ford*, 2018 WL 5905942, * 5. That determination should remain unchanged here.

Ford also cannot satisfy the second prong of the test, that is, by establishing that Marina Ford cannot be liable under any theory. As cited above and shown further hereinbelow, this notion has been squarely rejected by courts throughout this District, including this Court.  Plaintiff sets forth all of the requisite elements of her negligent repair claim against Marina Ford, and the FAC includes factual allegations supporting each element of this claim. See DK Remand Dec., ¶ 5, Ex. 1. Ford incorrectly contends that the allegations regarding Marina Ford "are bared-boned, non-specific allegations." Dkt. No. 1, NOR, ¶ 27. However, Plaintiff adequately pleads negligent repair under the applicable standard providing more detail as to how and why Marina Ford was negligent on each of its repair attempts and, moreover, how it contributed and exacerbated the problems experienced by Plaintiff. See DK Remand Dec., ¶ 5, Ex. 1., FAC, ¶¶ 154. Plaintiff's allegations as set forth in the FAC are sufficient for this Court to find a "set of facts" that would entitle Plaintiff to relief in state court directly from Marina Ford. See *Powers v. Ford Motor Company*, No. EDCV 18-2587 JGB (SPx), 2019 WL 1557451, *2 (C.D. Cal. April 10, 2019) (stating that the manufacturer defendant's argument that allegations against dealership defendant are conclusory is insufficient to establish fraudulent joinder); *McKeown v. Ford Motor Co.*, No. CV 19-00281-CJC(PLAx), 2019 WL 1199468, *4 (C.D. Cal. Mar. 13, 2019) (remanding a case involving a similarly pled negligent repair claim, where the defendants failed to show that there is "*no* possibility" that

-8-

1   the plaintiff could state a claim for negligent repair against the non-diverse

2   defendant); *Gorelick, et al. v FCA US LLC*, et al., No. 2:19-cv-01894-ODW, 2019

3   WL 2123570, at *2 (C.D. Cal. May 15, 2019) (holding that California law is not so

4   settled that a plaintiff could not possibly recover against a dealership for negligent

5   repair to a vehicle) (citing to *Lytle v. Ford Motor Co.* No. CV-18-10407-DMG, 2019

6   WL 1325846, at *3 (C.D. Cal. March 25, 2019)).

7         Ford may rely on this Court's 2018 *In re Ford* Ruling, where the Court found

8   that the plaintiffs there could not establish a claim against the dealer defendant.

9   However, in that case, those plaintiffs' allegations included that the defects in the

10  subject vehicle were "irreparable." *In re Ford*, 2018 WL 5905942at *6. The Court

11  reasoned that "[i]f Plaintiffs' vehicles were plagued by defects that were irreparable,

12  that would break any causal connection between the dealers and the Plaintiffs'

13  alleged arm." *Id.* The Court found the plaintiffs could thus not state a claim against

14  the dealers because of the irreparability allegations. *Id.*

15        Here, by contrast, the FAC clarifies the allegations against the Marina Ford,

16  particularly in light of the arguments and defenses that Ford has raised throughout

17  this MDL that the DPS6-transmission-equipped vehicles *are* repairable and are *not*

18  plagued with manufacturing defects that could not be fixed. See DK Remand Dec.,

19  ¶ 5, Ex. 1, FAC, generally. To the extent that prior allegations were interpreted to

20  lead to a particular interpretation of Plaintiff's theory of the case, those allegations

21  have been amended to clarify that theory. Thus, without allegations as to the defects

22  being "irreparable," Ford cannot show that there is "no possibility" that a claim

23  against the dealership can stand.   Consequentially, there is causal connection

24  between Marina Ford and Plaintiff's alleged harm that is not broken by any other

25  allegations such as the defects being "irreparable."   See *Miranda v. Ford*, 497

26  F.Supp.3d 880, 884 (2020) (declining to follow 2018 *In re Ford* because no

27  allegations of irreparability present in the complaint).

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

The 2018 *In re Ford* Ruling also relied on the insufficiency of the allegations in the complaint to determine that a claim against the dealer was not possible. *In re Ford*, 2018 WL 5905942 at *6. "The sufficiency of the governing complaint, however, does not determine whether a defendant was fraudulent joined. See *Miranda v. Ford*, 497 F.Supp.3d at 884; see *Robles v. FCA US LLC*, No. 2:20-CV-02546-SVW-SK, 2020 WL 2318205, at *2 (C.D. Cal. May 8, 2020) (declining to follow 2018 *In re Ford* Ruling because the appropriate fraudulent joinder analysis requires the Court to consider whether a deficiency can be cured with leave to amend); *Carrillo v. FCA US LLC*, No. EDCV 20-481 JGB SHKX, 2020 WL 2097743, at *3 (C.D. Cal. May 1, 2020) (same). Moreover, the FAC sufficiently asserts allegations against Marina Ford and how and why its repairs were negligent. DK Remand Dec., ¶ 5, Ex. 1, FAC at ¶¶ 70-72, 154. Specifically, the FAC alleges that Marina Ford failed to adequately diagnose and repair the Focus, then by twice performing the same ineffective software repairs, and waiting for years to perform any sort of actual mechanical work to the transmission, thereby exacerbating the transmission problem and not fixing anything. *Id.* at ¶ 154. Next, the FAC seeks damages and relief from both Ford and Marina Ford. *Id.* at Prayer for Relief. Given these amendments to the FAC, the same issues present at the time of the remand ruling in 2018 are not present here. There is a very viable claim against Marina Ford for negligent repair.

Ford, as the removing party, bears the heavy burden to rebut the presumption against removal. Ford fails to satisfy the higher evidentiary burden of showing fraudulent joinder in light of the FAC setting forth more detail and specifics in support of the negligent repair claim against Marina Ford. Ford's arguments thus fail to satisfy the high evidentiary burden of showing fraudulent joinder. *See Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1031 (C.D. Cal. 2016) ("The removing party … bears a heavy burden to rebut the presumption against removal.").

2. <u>*The Economic Loss Rule Does Not Apply to Plaintiff's Negligent Repair Claim*</u>

Ford has asserted that Plaintiff's negligent repair claim is barred by the economic loss rule. Dkt. No. 1, NOR ¶ 26, pp. 7-8.  This Court agreed in its *In re Ford* Ruling because the plaintiffs failed to explain how their claims fall under exceptions to the economic loss rule. 2018 WL 5905942 at *6.  However, it is well established that where the agreement between the parties involves the performance of services, the Commercial Code has no application. *N. Am. Chemical Co. v. Superior Court*, 59 Cal.App.4th 764 at 781 (1997). Thus, when there is an agreement for the performance of services and not merely the sale of goods, the party providing the services has a duty to perform them competently. *Id.* at 774.  A negligent breach of this duty constitutes a tort.  *Id.*  The rule imposing this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in any agreement. *Id.* Even where there is a contractual relationship between the parties, a cause of action in tort may arise out of the negligent manner in which the contractual duty is performed, or out of the failure to perform such duty. *Eads v. Marks*, 39 Cal. 2d 807, 810–11 (1952). The economic loss rule's exception to service agreements is clearly longstanding California case law.

Following the 2018 *In re Ford* Ruling, Courts in this District agree with the above and recognize the economic loss rule does not apply to bar a claim in cases involving negligent performance of services. *Cox v. FCA US LLC*, No. CV 29-3098 DMG (Ex), 2020 WL 2857489, *2-3 (C.D. Cal. June 2, 2020) (declining to follow the 2018 *In re Ford* Ruling because it contradicts the weight of authority which has found similar negligent repair claims not barred by the economic loss rule); *Obando v. FCA US LLC*, No. 20-3583-DMG (GJSx), 2020 WL 2745245, * 2-3 (C.D. Cal. May 27, 2020 (the economic loss rule does not bar the plaintiffs' negligent repair claims against the dealer because "[a]s a rule in California '[o]ne who undertakes repairs has a duty arising in tort to do them without negligence.') (citations omitted); *Sabicer v. Ford*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

1   *Motor Co.*, 362 F.Supp. 3d 837, 840-841 (C.D. Cal. 2019) (same); *Saldivar v. FCA*

2   *US LLC*, No. 2:19-cv-06393-ODW (JPRx), 2019 WL 5310188, *2 (C.D. Cal. Oct. 21,

3   2019) (finding that "California courts have recognized an exception to the exception

4   to the economic loss rule in cases involving negligent performance of services"). In

5   fact, since its 2018 *In re Ford* Ruling, this Court, upon determining remand, has

6   declined to find that a negligent repair claim is not viable because it is barred by the

7   economic loss rule. See *Marin*, 2021 WL 5232652 at *4; *Gonzalez*, 2020 WL 2991536

8   at *3.

9          Second, even if this Court were to analyze Plaintiff's negligent repair claim

10  against Marina Ford, it would still find that it clearly falls under an exception to the

11  economic loss rule. Plaintiff does not allege lemon law violations against Marina Ford.

12  Plaintiff has no claim based in contract against Marina Ford and has no contractual

13  relationship with Marina Ford of any sort. Plaintiff did not even purchase the Focus

14  from Marina Ford. See Dkt. No. 1-1, RISC attached to Complaint, pp. 39-41. Rather,

15  Plaintiff alleges damages that resulted from Marina Ford's negligent repair of the

16  Focus, particularly in light of it being given the tools and information necessary to

17  repair the vehicle's problems.  DK Remand Dec., ¶ 5, Ex. 1, FAC at ¶154. Plaintiff's

18  damages against Marina Ford are separate and apart from damages alleged against

19  Ford. Of course, the measure of damages for the negligent repair claim is entirely

20  different from the statutory definition of damages sought against Ford for Song-

21  Beverly violations. Marina Ford clearly performed a service for Plaintiff, repairs to

22  the Focus and was negligent in performing them. *Id.* This affected Plaintiff's overall

23  use of the Focus given it was plagued with transmission problems Marina Ford failed

24  to fix. *Id*; see also *Hayes v. FCA US LLC*, No. CV 20-3183-DMG (JCx), 2020 WL

25  2857490, *3 (C.D. Cal. June 2, 2020); ("[T]he *In re Ford* court did not discuss the fact

26  that in California 'the economic loss rule does not necessarily bar recovery in tort for

27  damage that a defective product causes to other portions of a larger product (*e.g.*, a

28  house) into which the former has been incorporated.'"). The negligent repair claim

1  against Marina Ford is thus not barred by the economic loss rule, which is further
2  demonstrated in the FAC.

3        The economic loss rule is thus inapplicable here and cannot provide a basis for
4  a finding of fraudulent joinder. Plaintiff has sufficiently set forth its negligent repair
5  claim showing Marina Ford performed services related to the Focus and was negligent
6  in doing so.

7              *3.    Marina Ford Is Not A "Dispensable Party"*

8        Marina Ford is not a dispensable party, and Plaintiff's negligent repair claim
9  against it cannot and should not be severed from the claims against Ford. Ford argues
10 for severance of parties of whom defense counsel perceives to be a "dispensable party"
11 based on the Federal Rules of Civil Procedure, Rule 21 misjoinder doctrine. In this
12 instant matter, Ford asserts that Defendant Marina Ford should be severed from this
13 Action simply because severance *may* be done to preserve federal jurisdiction.  Dkt.
14 No. 1, NOR, ¶¶ 28-30. For reasons discussed below, this would be improper.

15       Courts permit joinder under Rule 20 where 1) a plaintiff's claims arise out of
16 the "same transaction, occurrence, or series of transactions or occurrences" and 2)
17 there is at least one common question of law or fact connecting the claims.  *See Pan*
18 *Am World Airways, Inc. v. United States Dist. Court for Central Dist. of Calif.*, 523
19 F.2d 1073, 1079 (9th Cir. 1975).  Thus, misjoinder occurs when a plaintiff's claims
20 do not arise out of the same transaction, occurrence, or series of transactions or
21 occurrences, or there are no common questions of law or facts between the claims.

22       District Courts in this Circuit have long been skeptical to apply Rule 21 to
23 named parties, or parties that are not misjoined parties. *Sandhu v. Volvo Cars of North*
24 *America, LLC*, No. 16-cv-0498-BLF, 2017 WL 403495, *4 (citing *Delafontaine v.*
25 *Volvo Cars of N. Am., LLC,* No. 16-7154-GHK, 2016 WL 7338404, *4 (C.D. Cal.
26 Dec. 19, 2016)). Federal courts "frown[] on using the Rule 21 severance vehicle to
27 conjure removal jurisdiction that would otherwise be absent." *Hampton v. Insys*
28 *Therapeutics, Inc.,* 319 F.Supp.3d 1204, 1214 (D. Nev. 2018) (quoting *Brown v. Endo*

-13-

*Pharms., Inc.,* 38 F. Supp. 3d 1312, 1326 (S.D. Ala. 2014)). Moreover, the judicial reluctance to employ Rule 21 in the removal context stems from the concern that application of Rule 21 would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction. *Hampton,* 319 F.Supp.3d at 1214 (quoting *Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.,* No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014)).

As the party invoking removal, Ford has the burden of establishing federal subject matter jurisdiction, and it cannot shift this burden onto Plaintiff. The inclusion of Marina Ford in this case is proper, and satisfies the joinder requirements under Rule 20. Ford's argument, that Plaintiff's warranty-based claims against Ford are "too distinct" from Plaintiff's negligent repair claim against Marina Ford is unsupported, and nonsensical because the claims are directly related in that they share (i) the same series of occurrences related to the manifestations of defects and (ii) the same facts of repairs that were performed. The claims against Ford and Marina Ford are each California State law claims. Each claim involves the same factual contentions, the same automobile, the same repair orders, many of the same Ford employees and/or repair techs, and the claims themselves involve at least some overlapping questions of fact and law. Marina Ford had an obligation to repair the Focus as Ford's authorized repair facility in California. Indeed, Plaintiff's Song-Beverly claim against Ford requires that Plaintiff establish that it presented the Focus to Ford (generally through its authorized dealerships) for repairs, and establish that Ford (generally through its authorized dealerships) failed to return the Focus to Plaintiff in conformance with its warranties.

Marina Ford is thus not a dispensable party, and Plaintiff will be severely prejudiced if her claims against Marina Ford are severed. "Dismissal of dispensable nondiverse parties should be exercised sparingly after considering whether such dismissal will prejudice any of the parties in the litigation. *Sabicer,* 362 F.Supp.3d at 842 (C.D. Cal. 2019). "Quite simply, a defendant lacking the proper jurisdictional key

1  with which to open the doors of federal court cannot rely on Rule 21 severance as a

2  surreptitious means to climb in the window." *Krasner v. Ford Motor Company,* No.

3  2:18-01602-TLN-KJN, 2019 WL 1428116 at *5 (E.D. Cal. March 29, 2019), quoting

4  *Hampton v. Insys Therapeutics, Inc.,* 319 F.Supp.3d 1204, 1214 (D. Nev. 2018).

5         Ford may again point to this Court's 2018 *In re Ford* Ruling wherein it found

6  the dealers to be dispensable and severed them because the gravamen of the claims

7  was that Ford vehicles were "irreparably defective" and to "preserve its subject matter

8  jurisdiction." *In re Ford,* 2018 WL 5905942 at *8. As discussed above, however, the

9  FAC alleges that the defects are either "irreparable" or that the dealership failed to

10  properly perform appropriately prescribed repairs if the defects are reparable.

11  Additionally, since that ruling, this Court has properly declined to sever dealers in

12  other lemon law cases solely to preserve its subject matter jurisdiction over a case.

13  *Lee,* 2020 WL 2835748, *3 ("No sound purpose would be served by dropping the

14  dealer simply to bestow subject matter jurisdiction on this court."); *Friewald,* 2020

15  WL 2991538 at *3 (same). Severance of Marina Ford pursuant to Rule 21 would thus

16  be improper, as Marina Ford is a properly joined party under Rule 20.

17         There are also cognizable damages against Marina Ford for its negligent repairs

18  to the Focus, as set forth in the FAC. See DK Remand Dec., ¶ 5, Ex. 1, FAC, ¶ 154,

19  Prayer for Relief; see *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.,*

20  21 Cal.App. 4th 862, 870 (1994) (finding that a plaintiff asserting a negligence claim

21  may recover damages for depreciation in value, costs related to repairs, and

22  compensation for loss of use). While Plaintiff may be able to obtain relief from Ford

23  only, she may also *not* obtain any relief from Ford at all, which relief can be obtained

24  just from Marina Ford for negligent repairs (see e.g., *Quintero v. Ford* wherein this

25  Court granted Ford's Judgment as a Matter of Law following a verdict in favor of the

26  plaintiffs).  For the foregoing reasons, Court should remand this case because no

27  diversity exists among the parties.

28  *///*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

## C.   Ford Has Failed To Establish That The Amount In Controversy Is Met

Ford has failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000. Ford concedes in its Removal Notice that the potential damages that may be awarded are $66,642.78, well under the $75,000 threshold. Dkt. No. 1, NOR, p. 5. This Court's 2018 *In re Ford* ruling created a standard for determining amount in controversy as "what the plaintiff demands." *In re Ford*, 2018 WL 5905942, *4. As the party invoking the Court's removal jurisdiction, Ford must still establish by a preponderance of evidence what the damages are. *Gaus*, 980 F.2d at 566. Establishing jurisdiction is not Plaintiff's burden and the fact that a plaintiff may allege a prayer for damages is not dispositive of the question nor does it mean that those damages are even likely.  Ford has the burden to establish those damages are likely if Ford is to overcome the presumption *against* removal.   And to do that, Ford must establish that the *maximum* civil penalties are likely. To the extent the NOR purported to "offer" $75,001, Ford is not willing to resolve this matter for that amount, which suggests that even Ford does not believe the dollar threshold is met anymore. See Dkt. No. 1, NOR, p. 6; Dec., ¶ 7. During the parties' meet and confer, Plaintiff even invited Defendants to make an offer at what its Removal Notice asserts - $66,642.78 but no offer has been made. *Id.* at ¶ 3. Regardless, the $66,642.78 figure set forth in the NOR is overly inflated and does not take into consideration other offsets from restitution routinely argued by Ford. While the Court need not get into the substance and merits of the claims and defenses, it still must consider whether the claims are more likely than not to cross the jurisdictional minimum in damages, and that means acknowledging that the potential that damages are less than Ford makes it seem.

Ford's amount in controversy analysis is insufficient for other reasons too. Ford does not attempt to justify an assumed maximum civil penalty or punitive damage award in this case or show that it is more likely than not that either of those will be awarded. Ford's assertion that Plaintiff's attorneys' fees should count

-16-

towards the amount-in-controversy is also speculative and cannot form the basis for an amount-in-controversy calculation. Ironically, the accumulation of statutory fees by Plaintiff is in large part dependent on Ford's willingness to settle early or late. Ford has failed to meet its burden and has not established that this Court has subject matter jurisdiction over the instant action. This case should be remanded.

1. *Ford Conveniently Fails to Consider in Its Actual Damages Calculation Offsets It Routinely Argues Should Be Taken*

Under Song-Beverly, a plaintiff may recover "in an amount equal to the actual price paid or payable by the buyer," reduced by "that amount directly attributable to use by the buyer." Cal. Civ. Code §1793.2(d)(2)(B)-(C). This includes a mileage offset. See Id. at §1793.2(d)(2)(C) (amount attributable to use by buyer is determined "by multiplying the actual price of the new motor vehicle.... by a fraction having as its denominator 120,000 and its numerator, the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle.... for correction"). Yet, Ford consistently argues, as it will here and does in these coordinated proceedings, that other offsets should be taken from restitution as they are not recoverable under Song-Beverly. For example, Plaintiff purchased the Focus for a total sales price of $33,899.93. DK Remand Dec., ¶ 6, Ex. 2, RISC. Rolled into the total sales price was a $2,000 extended service contract. *Id.* Plaintiff also traded in an older vehicle that had a loan balance left of $3,029.51 that had a trade-in value of $1,600. *Id.* Plaintiff thus had a negative balance of $1,429.51 included in the purchase of the Focus given her remaining loan was higher than the value of the trade-in, which is sometimes referred to as "negative equity." *Id.* Plaintiff also received a $2,000 rebate at the time of purchase which is also argued by Ford is not recoverable. *Id.* Courts in this District, including this one, have agreed with Ford's arguments that extended service contracts and negative equity are not reimbursable under the Song-Beverly Act and are thus offset from the restitution amount. See, e.g., *Herrera v. Ford Motor Company*, No. CV 21-4731 PA (MARx), 2022 WL 562267, *4-5 (C.D. Cal. Feb. 24, 2022) (rejecting efforts to include forgiveness of

negative equity in Song-Beverly repurchase offers); *Rivera v. Ford Motor Co.*, No. CV 18-7798 DSF (PJWx), 2020 WL 1652534, at \*4-\*5 (C.D. Cal. Feb. 10, 2020) (same); *De Leon v. Ford Motor Co.*, No. CV 18-7975 PSG (FFMx), 2019 WL 7195325, at \*7 (C.D. Cal. Nov. 13, 2019) (same); *Carillo v. FCA US LLC*, 546 F. Supp. 3d 995 (C.D. Cal. June 29, 2021) (exclusion by this Court as to an extended service contract from the purchase price for purposes of restitution calculation); *Tovar v. FCA US LLC*, No. CV 20-1473 AB (JPRx), 2021 WL 3468111, \*4 (C.D. Cal. Apr 23, 2021).

Thus, the amount in controversy, *from Ford's own perspective*, for just actual damages in this case is far lower than what it purports it do be in its NOR given it failed to include potential offsets for extended service contract, negative equity and rebate in its calculation and consequently inflates the amount in controversy it would actually assert is recoverable. This Court should consider them in determining the amount in controversy on this remand motion. *Fisher v. Ford Motor Co.*, CV 22-339-W-AHG, 2022 WL 2181804, at \*3 (S.D. Cal. June 16, 2022) (ultimately remanding case given potential deduction of negative equity from actual damages); *Jessica Ramirez v. Volkswagen Group of America, Inc.*, No. CV 22-00734 MWF (MRWx), 2022 WL 2610247, \*2-3 (C.D. Cal. Jul. 8, 2022) (considering potential negative equity deduction in determining amount in controversy).

Ford has also not accounted for an offset for funds received by Plaintiff given the recent disposal of her Focus and the recent appellate ruling in *Niedermeier* discussed *supra*. See DK Remand Dec., ¶ 8. Thus, actual potential damages could be even less than $19,606.51 should an offset be taken for disposing of the Focus. *Id.* For example, if Plaintiff received $5,000 for it (whether by selling it or insurance proceeds from an accident), then Ford will undoubtedly argue that her potential actual damages decrease by $5,000 to $14,606.51 – and that only this reduced amount can be doubled for civil penalties, e.g. a total of $29,213.02.

Ford has failed to take into account any of these offsets which it routinely argues (as it previously has in front of this Court) are not recoverable under Song-Beverly. *Id.* Indeed, Ford deducted the extended service contract, negative equity and rebate when it made a presuit offer to repurchase the Focus. *Id.* at ¶ 7, Ex. 3, Refund Worksheet. Ford has not admitted liability nor conceded that any of these aforementioned items are reimbursable as restitution (nor will it). *Id.* Clearly, potential actual damages at play here are inadequate to meet the $75,000 threshold. The amount in controversy is not met.

> 2.   *Ford's Amount in Controversy Calculation Fails Because Its Civil Penalty and Punitive Damages Estimates are Speculative*

A civil penalty is applicable only if a court determines that a defendant's failure to comply with the Act is willful. Cal. Civ. Code §§ 1794(c). This amount is to be determined by the trier of fact based on the specific facts of the case, therefore civil penalties are speculative at this point. Where a manufacturer has not offered any evidence to support an award for civil penalties, the Court is unable to determine what civil penalties might be imposed and thus cannot conclude the amount in controversy.  Simply asserting how much in penalties is *permissible* is not enough.

Courts in this District have noted that the civil penalty under California Civil Code § 1794(c) cannot simply be assumed, speculative and unsupported. *Estrada v. FCA US, LLC,* No. CV 20-10453 PA (JPRx), 2021 WL 223249 at *3 (C.D. Cal. Jan. 21, 2021); *Sanchez v. Ford Motor Co.*, 18-cv-08203, 2018 WL 6787354, *1 (C.D. Cal. Dec. 2018); *Eberle v. Jaguar Land Rover N. Am., LLC*, No. 218CV06650VAP (PLAx), 2018 WL 4674598, *2 (C.D. Cal. Sep. 26, 2018); Edwards *v. Ford Motor Co.*, No. CV 16-05852 BRO (PLAx), 2016 WL 6583585, *5 (C.D. Cal. Nov. 4, 2016); *Lawrence v. FCA US LLC*, No. CV 16-05452 BRO (GJSx), 2016 WL 5921059, *4 (C.D. Cal. Oct. 11, 2016). A defendant must make an effort to justify the assumption that a civil penalty will be awarded, and Ford has made no such effort and thus has failed to show that civil penalties should be included in the amount in controversy calculation. See *Sood v. FCA US, LLC*, NO. CV 21-4287-RSWL-SKx,

1   2021 WL 4786451, *3 (C.D. Cal. Oct. 14, 2021) (finding that the defendant has not

2   met its burden in proving that the amount in controversy is met); *D'Amico v. Ford*

3   *Motor Company*, No. CV 20-2985-CJC (JCx), 2020 WL 2614610 (C.D. Cal. May

4   21, 2020); *Vega v. FCA US, LLC*, No. 2:21-cv-05128-VAP-MRWx, 2021 WL

5   3771795, *3 (C.D. Cal. Aug. 25, 2021); *Esparza v. FCA US LLC*, No. 2:21-cv-

6   01856-RGK-MRW, 2021 WL 949600, at *1 (C.D. Cal. Mar. 12, 2021); *Garcia v.*

7   *FCA US LLC*, 2:20-cv-04779-VAP-MRWx, 2020 WL 4219614, *3 (C.D. Cal. July

8   22, 2020); *Chavez v. FCA US LLC*, No. 2:19-cv-06003-ODW (GJSx), 2020 WL

9   468909, *2 (C.D. Cal. 2020); *Lopez v. FCA US LLC*, No. 2:19-cv-07577-RGK-

10  MRW, 2019 WL 4450427, *2 (C.D. Cal. Sep. 16, 2019); *Ronquillo v. BMW of North*

11  *America, LLC*, No. 3:20-cv-1413-W-WVG, 2020 WL 6741317 (S.D. Cal. Nov. 17,

12  2020).

13          Ford has not established by a preponderance of the evidence to support a

14  conclusion that civil penalties are more likely than not to be awarded.  Importantly,

15  Ford would need to show not just that any civil penalty is possible, it must show

16  what amount of penalty is likely, not just baldly state that a maximum civil penalty

17  is possible here. That's mere speculation.  Thus, Ford is unable to establish what

18  civil penalties will be, or even might be, imposed. Ford merely points to Plaintiff's

19  civil penalty allegations and asserts that this alone is sufficient to establish that the

20  maximum amount of civil penalties should be included in the amount in controversy.

21  Dkt. No. 1, NOR, ¶¶18-20, pp. 4-5. However, "[s]imply assuming a civil penalty

22  award is inconsistent with the principle that the defendant must provide evidence

23  that it is 'more likely than not' that the amount in controversy requirement is

24  satisfied.'" *Khachatryan v. BMW of N. Am., LLC,* No. CV 21-1290 PA (PDX), 2021

25  WL 927266, at *2 (C.D. Cal. Mar. 10, 2021); *Chajon v. Ford Motor Company*, No.

26  2:18-cv-10533, 2019 WL 994019, *2 (C.D. Cal. Jan. 8, 2019); *Sanchez v. Ford*

27  *Motor Company*, No. 2:18-cv-08023-RGK-SKx, 2018 WL 6787354, *1 (C.D. Cal.

28  Dec. 4, 2018); *Makol v. Jaguar Land Rover North America, LLC*, No. 18-cv-03414-

NC, 2018 WL 3194424, at *3 (N.D. Cal., June 28, 2018) ; *Castillo v. FCA US LLC*, No. 19-cv-151-CAB-MDD, 2019 WL 6607006, at *2 (S.D. Cal. Dec. 5, 2019) (remanding action to state court *sua sponte* and reasoning in part that "[t]he civil penalty under California Civil Code § 1794(c) cannot simply be assumed. While courts frequently treat the civil penalty under Song-Beverly as a form of punitive damages that may be appropriately included in an amount-in-controversy calculation, [the d]efendant has made no showing that such a civil penalty is more likely than not to be awarded here.") (citing *Herko v. FCA US, LLC*, 2019 WL 5587140, at *2 (S.D. Cal. Oct. 30, 2019)); see also *Lopez*, 2019 WL 4450427, at *2; *Eberle*, 2018 WL 4674598, at *2.

Ford has provided no evidentiary basis for the Court to evaluate civil penalties for inclusion into the amount in controversy requirement.  Ford contends that Plaintiffs are seeking $44,428.52 in civil penalties, which at this time is based on its own overly inflated actual damages calculation, given it left out various offsets it routinely argues are not reimbursable under the law. If this Court (or any state or federal court) were to find that extended service contract, negative equity, rebate and funds from disposing of the Focus should be offset then potential maximum civil penalties would be thousands – up to ten thousand – dollars less. Regardless, these amounts rely solely on an assumption that a jury would, not only award civil penalties, but would award the maximum amount of two times Plaintiff's actual damages. The civil penalty amount is speculative at best and is nothing more than an empty presumption by Ford that Plaintiff will recover the maximum civil penalty permitted in Song-Beverly claims. Again, Ford has not admitted liability nor conceded willfulness. At this stage, Ford has not shown that it is more likely than not that civil penalties will be awarded at all.  Consistent with numerous courts, this Court should ignore the speculative possibility of civil penalties – without which, Ford cannot satisfy the amount in controversy.

For the same reasons, Ford has failed to show by a preponderance of the evidence that punitive damages, in any amount, will be awarded by a jury or even obtained in a settlement. Unlike civil penalties, Ford provides no estimate or dollar amount whatsoever that punitive damages are more likely than not here. Thus, there is no evidentiary basis for the Court to evaluate punitive damages for inclusion into the amount in controversy requirement. See *De Costs v. Headway Workforce Solutions*, No. 20-00015 LEK-KJM, 2020 WL 1822473, *5 (D. Hawai'I Apr. 10, 2020) (citations omitted) (stating that a removing defendant must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000).

Ford may again point to *In re Ford*, 2018 WL 5905942 at *3-4 to show that punitive damages should be considered in the amount in controversy because there was not a "legal certainty" that punitive damages would not be recovered. In considering punitive damages there, the Court relied on an expert report calculating punitive damages to be 9 times restitution and the 2018 state court punitive damages verdict in *Myers v. Ford Motor Co.*, BC6388302. *Id.* However, after 2018, there has been *no other* punitive damages verdicts awarded in any case involving a Focus or Fiesta with a DPS6 transmission. DK Remand Dec., ¶ 9. In this MDL, trials have moved forward in only two cases, both of which fraud was dismissed by this Court before trial. This Court has dismissed fraud claims for various reasons including but not limited to on the legal basis that the economic loss rule bars fraud claims. One individual action resulted in defense verdict altogether. See *Ambriz v. Ford Motor Co.*, No. RIC1612390, 2020 WL 2037819. As such, it appears to be certain that fraud and punitive damages will not make it to a trial in these coordinated proceedings given this Court's prior decisions.  As it relates to this MDL, this Court has previously ruled that a plaintiff's fraud claims do not have any merit and are barred as a matter of law.  See, e.g., Dkt. No. 605, *Pedante v. Ford Motor Co.*, No. CV 17-06656, Order Granting Motion for Partial Summary Judgment (C.D. Cal. Oct. 29,

2019) (finding that all of the plaintiff' fraud claims fail); Dkt. No. 925, *Altamirano-Torres v. Ford Motor Co.*, No. CV-17-07338 AB (FFMx), Order Granting Motion for Judgment on the Pleadings (finding that all of the plaintiff's fraud claims fail as a matter of law); Dkt. No. 1090, *Hobart v. Ford Motor Co.,* No. CV-18-18903 AB (FFMx), Order Granting Motion for Summary Judgment, pp. 7-9 (C.D. Cal. Mar. 29, 2021) (finding the economic loss rule bars the plaintiff's claim for fraudulent inducement by omission). Thus, Plaintiff can show that there is a legal certainty that punitive damages in this Court cannot be awarded.

The complexion of these cases have changed since 2018 – this Court has been dismissing fraud before trial and no other punitive damages verdict since *Myers* has been obtained. Punitive damages should not be considered in the amount in controversy analysis here. Ford has failed to show any evidence that the amount in controversy is met by the inclusion of either civil penalties or punitive damages. The mere fact that the United States Supreme Court some years ago created parameters that punitive damages should be less than 9 times damages does not make every punitive damage allegation a basis for federal court jurisdiction

3. *Ford Fails to Meet Its Burden to Prove that the Amount in Controversy Requirement Is Satisfied by the Inclusion of Speculative Amounts of Attorneys' Fees*

A defendant may attempt to prove future attorneys' fees should be included in the amount in controversy, but retains the burden of proving the amount of such future attorneys' fees by a preponderance of the evidence. *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788, 794 (9th Cir. 2018). Plaintiff anticipates that Ford may point to *In re Ford* 2018 which determined that Ford's declaration that Plaintiff's counsel routinely seeks attorneys' fees of more than $100,000 in claims against Ford sufficient that such an amount is at issue. *In re Ford*, 2018 WL 5905942 at *4. However, since that ruling, Courts in this District have held that "generalized statements," such as those relating to fee awards in other cases, "do not establish by a preponderance of the evidence the attorneys' fees that

reasonably might be incurred *in this case*, and courts commonly hold that such generalized statements fail to satisfy the defendant's burden." *Chung v. FCA US, LLC,* No. 2:21-cv-04577-AB-MAA, 2021 WL 4280342 at *3 (C.D. Cal. Sept. 20, 2021) (italics in original); *Mahlmeister v. FCA US LLC,* No. CV-21-00564-AB-FFMx, 2021 WL 1662578, at *3 (C.D. Cal. Apr. 28, 2021) ("At no point does [d]efendant explain how this amount is determined, what factors about this specific case make these calculations more likely than not, or how other similar cases have resulted in fees that satisfy the amount in controversy."); *Kinneberg v. Ford Motor Co,* No. CV 20-00865 AB (FFMx), 2020 WL 3397752, *2 (C.D. Cal. June 18, 2020) ("Defendant's attorneys' fees estimate is too speculative to make up the difference necessary to satisfy the amount in controversy, so the Court finds that the amount in controversy is not satisfied."); *Eberle*, 2018 WL 4674598, *3 (finding defendant's claim that it is unaware of plaintiff's hourly rate but anticipates the fees to be in excess of the "less than $5,000" amount stated in the plaintiff's motion insufficient).

In line with the recent District Court cases above, attorney fees cannot be part of the amount in controversy here as Ford has failed to show that attorney fees in this particular action alone will rise to the level of $100,000 or any amount for that matter. Ford makes no effort whatsoever to explain what amount of attorney fees, if any, might be sought or awarded in this particular action. Ford does not provide any calculation as to what attorney fees in this case may be. The only mention of attorney fees by Ford is they "can regularly exceed $100,000." See Dkt. No. 1, NOR, p. 5. Ford fails to show how it determined what the attorney's fees in this action will be or why they should be considered by this Court as part of the amount in controversy; what factors about this specific case make an award of attorneys' fees more likely than not; or how or what other similar cases have resulted in fees that satisfy the amount in controversy.

In fact, Knight Law has settled attorney fees and costs for amounts in a range not exceeding single-digit thousand dollars in many cases. DK Remand Dec., ¶¶ 10-

-24-

15, Exs. 4-8 (*Chavez v. Ford Motor Company,* No. 5:18-cv-02215-MCS-KK (C.D. Cal. 2021) [attorneys' fees and costs resolving for $2,500 despite seven depositions of and written discovery]; *Velasquez v. FCA US, LLC,* No. 2:21-cv-05092-JFW-AGR (C.D. Cal. 2021) [attorneys' fees and costs resolving for $8,250]; *Luna v. FCA US. LLC,* No. 2:21-cv-07140-AB (JPRx) (C.D. Cal. 2021) [attorneys' fees and costs resolving for $4,500]; *Garay v. Ford Motor Company,* No. 5:21-cv-01200-SB-SHK (C.D. Cal. 2021) [attorneys' fees and costs resolving for $2,500 despite five depositions and written discovery]; *Valdez v. FCA US, LLC,* No. 2:21-cv-06318-FLA-JEM (C.D. Cal. 2021) [attorneys' fees and costs resolving for $5,500]; *Aguilar v. FCA US, LLC,* No. 2:21-cv-05813-AB (Asx) (C.D. Cal. 2021) [attorneys' fees and costs resolving for $5,500]). Plaintiff's counsel has also settled its attorney fees and costs for single-digit thousand dollars in cases in this MDL. DK Remand Dec., ¶¶ 16-35, Exs. 9-28 (survey of 20 cases from this MDL wherein Knight Law settled attorney fees and costs ranging from $3,518.84 up to $9,568.29). According to *In re Ford,* 2018 "Plaintiff's counsel actual fee requests in nearly-identical cases is highly probative of the amount put in controversy by their request to recover fees in this case." 2018 WL 5905942 at *3. Plaintiff has gone a step further and provided actual fee awards wherein her counsel obtained nominal amounts for attorney fees and costs, even where substantial work had been performed. Attorney fees are entirely speculative at this point and cannot form the basis of an amount-in-controversy determination in this action. Ford has also failed to meet its burden here as well.

## V.     CONCLUSION

To maintain this matter in federal court, Ford must prevail on each and every argument above.  The failure of just one, means this matter must be remanded.

Dated:        July 13, 2022                    **KNIGHT LAW GROUP LLP**

                                               */s/ Daniel Kalinowski*
                                               Roger Kirnos
                                               Daniel Kalinowski
                                               Attorneys for Plaintiff,
                                               KAMISHA R. WARREN