UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:18-cv-06286-AB-FFM<br>ML 18-02814 AB (FFMx) | Date: | December 6, 2022 |
|---|---|---|---|

| Title: | *Michael E. Bugiel v. Ford Motor Company et al.*<br>***In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.*** |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>DENYING</u> MOTION FOR REMAND [Dkt. No. 1341]

Before the Court is Plaintiff Michael E. Bugiel's ("Plaintiff") Motion for Remand ("Motion," Dkt. No. 1341 in CV-18-02814). Defendant Ford Motor Company ("Ford") filed an opposition and Plaintiff filed a reply. Ford also filed a Notice of Supplemental Authority, to which Plaintiff objected. The Motion is **<u>DENIED</u>**.

### I. BACKGROUND

This case is a member of the multidistrict litigation *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liability Litig.*, Case No. 18-ML-02814, concerning allegedly defective DPS6 dual-clutch powershift transmissions installed in certain Ford vehicles. Like most of the plaintiffs in the MDL, Plaintiff herein asserted two claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790-1795.5 ("Song-Beverly" or "Act"), along with a request for a

civil penalty under the Act, and three claims for fraud, along with a request for punitive damages, all arising out of an allegedly defective DPS6 transmission with which his 2012 Ford Fiesta was equipped. *See* Compl. (Dkt. No. 1-2). Plaintiff originally filed this action in the San Diego County Superior Court. Ford removed it to federal court, and it was then transferred into this MDL. Plaintiff now moves to remand the case, arguing that the amount in controversy is not satisfied.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and thus have subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal," statutes conferring jurisdiction are "strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted). There is a strong presumption that the Court is without jurisdiction until affirmatively proven otherwise. *See Fifty Assocs. v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970).

Federal diversity jurisdiction exists when the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the diversity and amount in controversy requirements are satisfied and if none of the defendants are citizens of the forum state.

The amount in controversy, for purposes of diversity jurisdiction, is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). "[I]n assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). And while "'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' . . . '[e]vidence establishing the amount is

required'" when "defendant's assertion of the amount in controversy is contested by plaintiffs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). The plaintiff may then submit evidence to the contrary. *Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 574 U.S. at 89). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.' " *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Once "both sides submit proof [] the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

### III. DISCUSSION

The Court briefly address certain threshold issues.

First, the Court does not find that this Motion for Remand is untimely. While the "test remand motions" resolved at the beginning of this case were intended to try to capture and resolve all of the subject matter jurisdiction issues that could arise in the MDL, it was conceivable that additional issues would be discovered. Furthermore, even though "diversity jurisdiction is determined at the time the action commences," the "lack of subject matter jurisdiction may be raised at any time." *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999).

Nor does the Court consider this to be primarily a motion for reconsideration. The Court ruled on the test remand motions in September 2018 towards the beginning of this MDL. *See* MDL Dkt. 119; *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18-ml-02814-AB-FFMx, 2018 WL 5905942 (C.D. Cal. Sept. 10, 2018) ("Test Remand Order"). This Motion does raise issues similar to or overlapping with those resolved in the Test Remand Order. However, the Court will entertain the Motion given the intervening case *Niedermeier v. FCA US LLC*, 56 Cal.App.5th 1052 (2020), and its own ruling on the *Mejia* motions in limine, if only to say they don't warrant departing from the rulings in the Test Remand Order. Other issues seem sufficiently different to support this Motion. The Motion appears to have been brought in good faith, and the Court does not expect repeated remand motions on the same issues. The Court expects that Plaintiff's counsel will extrapolate from this Order how the same issues would be resolved in other cases, and proceed accordingly.

Finally, the Court overrules Plaintiff's Objection (Dkt. No. 1354) to Ford's Notice of Supplemental Authority (Dkt. No. 1353). The Notice, filed on November 23, informed the Court of a November 21 decision of another Court in this district on similar issues. That order was issued after briefing on this Motion was concluded. It is common practice in this district for parties to file such notices in such circumstances. Furthermore, the Notice reasonably draws this Court's attention to the relevant sections of the order.

As for the merits, the Motion is denied.

Plaintiff's Complaint did not allege an amount in controversy. In its Notice of Removal, Ford pointed out that the total sale prices of Plaintiff's vehicle, as shown on the purchase agreement attached to the Complaint, was $20,220.10, and that the Complaint seeks "a civil penalty in the amount of two times Plaintiff's actual damages," Compl. p, 27, Prayer ¶ (e), or $40,440.20. Together, the actual damages and civil penalty put $60,660.30 in issue. Ford also pointed to recent fee awards for Plaintiff's counsel in similar cases that settled early that exceeded $20,000. These amounts together exceed $80,000 and thus surpass the $75,000 jurisdictional threshold. Plaintiff also seeks punitive damages for the fraud claims, further increasing the amount in controversy above $75,000.

Plaintiff's arguments that these calculations are inflated are unavailing. First, Plaintiff argues that the amount should be reduced by offsets Ford will demand. The Court resolved this issue in the Test Remand Order, ruling that "the amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses." Test Remand Order 2018 WL 5905942 *4 (citing *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction") and *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC, 2014 WL 2468344, at *3 (C.D. Cal. May 30, 2014) (relying on *Geographic Expeditions* to hold that "'potential offsets' are inapplicable to the amount-in-controversy [calculation]")). That Ford may argue for certain offsets does not impact the amount that Plaintiff put in controversy. But even if the Court were to deduct the offsets Plaintiff has quantified, they amount to only $695, which would reduce the damages plus double civil penalties only modestly to $58,575.30. The amount in controversy would still be satisfied by adding the request for attorneys' fees and punitive damages.

Plaintiff also points out that he got into an accident with the vehicle and received an insurance settlement. Based on *Niedermeyer* and the Court's recent ruling the *Mejia* motions in limine, Plaintiff's insurance proceeds may further reduce the restitution to which Plaintiff is entitled. As noted above, however, this reduction would be something Ford would need to argue for, and thus should not be considered in calculating the amount in controversy. Thus, neither *Niedermeyer* nor the *Mejia* ruling require a departure from the Court's ruling in the Test Remand Order. Furthermore, although Plaintiff argues that this offset would apply, Plaintiff does not disclose its amount (despite certainly knowing what it is), and simply faults Ford for not "account[ing] for" this. *See* Mot. 5:24-6:1. Thus, even if the settlement amount could factor into the amount in controversy, Plaintiff has not met its burden of presenting evidence to show what the settlement amount was. Accordingly, Plaintiff's settlement for the 2014 accident does not factor into the amount in controversy analysis.

Plaintiff also argues that Ford's civil penalty calculation is speculative because Ford has not shown that the two-times penalty is "more likely than not to be awarded." *See* Mot. 7:25-26. First, Plaintiff misstates the burden: Ford does not have to show that the amount is more likely than not *to be awarded*, but must only show by a preponderance the amount that Plaintiff has *put in issue*. The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Here, the Complaint seeks "a civil penalty in the amount of two times Plaintiff's actual damages," Compl. p, 27, Prayer ¶ (e), so a two-times civil penalty is in controversy. *See Tucker v. FCA US LLC*, No. CV 21-2908-GW-MAAX, 2021 WL 3733243, at *4 (C.D. Cal. Aug. 23, 2021) ("The mere fact that Plaintiffs *seek* such a civil penalty puts in-controversy an amount equal to twice the amount of actual damages.")

Plaintiff also faults Ford's attorneys' fee estimate of at least $20,000 as too speculative. But Ford presented evidence that in previous DPS6 cases that settled the merits early, Plaintiff's firm filed motions seeking fees of $30,922 and $57,333.75, and was awarded fees of $22,676.50 and $34,072.50, respectively. Plaintiff, by contrast, filed evidence of about 20 cases in this MDL in which attorneys' fees were settled for less than $10,000. *See* Kalinowsi Decl. The Court gives Ford's evidence more weight since it was for fee motions that were resolved before this case was removed. The Court finds Ford's evidence sufficient to establish by a preponderance of the evidence Ford's assertion that the fee request in this case put at least $20,000 in controversy when the case was filed.

Thus, the Song-Beverly claims alone put $80,660.30 in issue, exceeding the $75,000 threshold without considering the punitive damages put in issue by Plaintiff's fraud claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand is **<u>DENIED</u>**.

**IT IS SO ORDERED**.