**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*Rogerk@knightlaw.com*
Deepak Devabose (SBN 298890)
*deepakd@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiffs,
MONIQUE M. DANIEL and ROBIN NEUMANN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** <br><br> THIS DOCUMENT RELATES ONLY TO: <br><br> *MONIQUE M. DANIEL and ROBIN NEUMANN v. Ford Motor Company, et al.,* Case No.: 2:18-cv-05617-AB-PD | Case No.: 2:18-ML-02814-AB (FFMx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES** <br><br> [Filed Concurrently with Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Costs and Expenses, and Declaration of Roger Kirnos] <br><br> *Case Assigned to the Honorable Andre Birotte* <br><br> Date: October 11, 2024 <br> Time: 10:00 a.m. <br> Dept.: 7B |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES, COSTS AND EXPENSES

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 2

III.   ARGUMENT AND ANALYSIS ......................................................................... 4

    A.   Plaintiffs' Attorneys Are Entitled to Fees, Costs and Expenses in this Action ................................................................................................... 4

    B.   The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable .... 6

        1.   The Nature and Complexity of the Litigation Support the Attorneys' Fees Requested ........................................................ 8

        2.   The Firm's Skill Justifies the Amount of Attorneys' Fees Sought ................................................................................... 9

    C.   Plaintiffs Should Be Granted a Lodestar Multiplier ........................... 10

    D.   Plaintiffs Are Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action ............................................. 12

IV.   CONCLUSION .................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carnes v. Zamani*
   (9th Cir. 2007) 488 F.3d 1057............................................................................5

*Cazares v. Saenz*
   208 Cal.App.3d 279 (1989)..............................................................................10

*Dietrich v. Dietrich*
   (1953) 41 Cal.2d 497 .........................................................................................8

*En Palm, LLC v. Teitler*
   (2008) 162 Cal.App.4th 770 .............................................................................9

*Goglin v. BMW of North America, LLC*
   (2016) 4 Cal.App.5th 462, 470 .........................................................................6

*Graciano v. Robinson Ford Sales*
   (2006) 144 Cal.App.4th 140 ......................................................................passim

*Graham v. DaimlerChrysler Corp.*
   (2004) 34 Cal.4th 553 ..................................................................................5, 10

*Hadley v. Repel*
   (1985) 167 Cal.App.3d 677...........................................................................5, 12

*Horsford v. Bd. of Trustees of Cal. State Univ.*
   (2005) 132 Cal. App. 4th 359 .........................................................................11

*In re Chiron Corp. Securities Litigation*
   No. C-04-4293 VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007)..............10

*Jensen v. BMW of North America, Inc.*
   (1995) 35 Cal.App.4th 112 ..............................................................................12

*La Mesa-Spring Valley School Dist. v. Otsuka*
   (1962) 57 Cal.2d 309 ........................................................................................9

*Los Angeles Police Protective League v. City of Los Angeles*
  (1986) 188 Cal.App.3d 1 ................................................................................ 7

*Mandel v. Lackner*
  92 Cal.App.3d 747 (1979) ............................................................................. 5

*Mangold v. Cal Public Utilities Comm'n*
  (9th Cir. 1995) 67 F.3d 1470 ......................................................................... 5

*Molski v. Arclero Wine Group*
  (2008) 164 Cal.App.4th 786 .......................................................................... 9

*PLCM Group v. Drexler, supra*
  22 Cal.4th at 1095 ................................................................................... 7, 10

*Reveles v. Toyota by the Bay*
  (1997) 57 Cal.App.4th 1139 .......................................................................... 5

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
  (2006) 144 Cal.App.4th 785 ................................................................ 6, 7, 10

*Serrano v. Priest*
  (1977) 20 Cal.3d 25 (*Serrano III*) ............................................................... 10

*Serrano v. Unruh*
  32 Cal.3d 621 (1982) ................................................................................ 5, 7

**Other Authorities**

Cal. Civ. Code § 1794(d) ................................................................. 2, 5, 10, 12

California Code of Civil Procedure
  Section 1032(a)(4) ......................................................................................... 5

California Code of Civil Procedure
  Section 1033.5 ............................................................................................. 12

Fed. R. Civ. P. 68 ............................................................................................ 1, 4

**Treatises**

Pearl, *California Attorney Fee Awards*
   Sections 12.14A, 12.33 (2nd Ed. 2005) ................................................................. 5

## I. INTRODUCTION

On August 22, 2024, the parties agreed to settle this case when Plaintiffs MONIQUE M. DANIEL and ROBIN NEUMANN ("Plaintiffs") accepted Defendant Ford Motor Company's ("FMC" or "Defendant") Rule 68 Offer of Judgment in which FMC agreed to pay $32,182.00 in exchange for dismissal of the case, plus attorney's fees, costs and expenses by motion wherein Plaintiffs would be prevailing party for purposes of that motion ("The Settlement").

The Settlement included a full buyback of Plaintiffs' defective vehicle, in what the defense routinely calls a "simple lemon law" action. Plaintiffs obtained this extraordinary sum despite FMC's aggressive litigation tactics which included denying liability, removing the case to federal court, having this case transferred to the MDL, and litigating the case for ***over six years***. This result is even more impressive as it was obtained *without going to trial*. By any analysis, Plaintiffs achieved an excellent settlement given FMC's initial failure to offer a buyback of Plaintiffs' defective vehicle and overall refusal to tender a written offer while the case was pending until The Settlement. The excellent result was achieved due to Plaintiffs' attorneys' skill and expertise in lemon law cases but, arguably, the biggest factor was Plaintiffs' attorneys' zealous representation.

Throughout his ownership of the Subject Vehicle, Plaintiffs suffered through severe and pervasive defects including transmission defects, requiring multiple repair visits. Despite Plaintiffs reaching out to FMC to request a buyback of their lemon, FMC failed to make an offer of repurchase and instead applied its tried and true internal policy of ignoring its statutory obligations under the Song-Beverly Act. By doing so, FMC made a business decision that, by its actions, Plaintiffs (like many consumers) would walk away, and FMC would save money. Plaintiffs could not afford to do that, so they hired the Knight Law Group, LLP ("Knight Law") on a contingency basis to assist in vindicating their rights. Knowing that FMC had

willfully violated Plaintiffs' rights and had already rejected informal resolution, Knight Law proceeded to file this case.

The Song-Beverly Act, Civil Code sections 1790, *et seq.*, entitles Plaintiffs to seek reasonable attorneys' fees, costs and expenses from FMC. Moreover, as the prevailing parties in this matter, as explicitly provided for in the Settlement, Plaintiffs are entitled to this noticed motion for attorneys' fees, costs and expenses. Plaintiffs now move the Court: (1) for an Order entering Judgment against Defendant Ford Motor Company and in favor of Plaintiffs MONIQUE M. DANIEL and ROBIN NEUMANN in which attorneys' fees pursuant to Civil Code section 1794(d) under the "lodestar" method are awarded in the amount of $6,082.50, (2) for a reasonable, modest, "lodestar" modifier of 0.5 under California law, in the amount of $3,041.25, and (3) to award actual costs and expenses incurred in the amount of $1,052.60. (Civ. Code § 1794(d).) Plaintiffs request a total of $10,176.35 in attorneys' fees, costs and expenses. (Declaration of Roger Kirnos ("RK Dec.") ¶ 2, Ex. A.)

## II. STATEMENT OF FACTS

On July 2, 2014, Plaintiffs purchased a new 2014 Ford Fiesta for a total sales price of $26,370.80 ("Subject Vehicle"). (RK Dec., ¶ 3, Ex. B.) The vehicle was manufactured and distributed by Ford Motor Company ("FMC" or "Defendant"), which provided an express written warranty to be serviced by FMC authorized repair facilities. (Id.)

On May 22, 2015, within the applicable warranty period, Plaintiffs took the Subject Vehicle to a Ford authorized repair facility because of transmission related concerns. (RK Dec., ¶ 4.) The technician performed a technical service bulletin repair, updated the powertrain control module ("PCM"), and transmission control module ("TCM") before returning the vehicle to Plaintiffs and telling them the vehicle was fixed. (Id.) On August 29, 2015, Plaintiffs returned to the dealership with the same transmission concerns. (RK Dec., ¶ 5.) The technicians again

reprogrammed the PCM and the TCM before returning the vehicle to Plaintiffs and telling them the vehicle was fixed. (Id.) On June 24, 2016, Plaintiffs brought back the Subject Vehicle with transmission concerns, this time the repair technicians claimed the transmission needed replacing. (RK Dec., ¶ 6.) Despite these multiple repair attempts, these problems with the vehicle continued unabated. (Id.)

Notwithstanding the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. (RK Dec., ¶ 7.) At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's issues, which it records in various databases accessible to its authorized repair facilities and the corporate offices. (Id.) These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem attributable to Ford, and billed Ford for the work. (Id.)

Frustrated, and concerned for his safety, Plaintiffs contacted Ford and requested a buyback on or about July 1, 2016. (RK Dec., ¶ 8.) Despite FMC's affirmative duty under the law to perform an investigation and offer relief, FMC refused to provide restitution in accordance with the Song Beverly Act. (Id.)

Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way FMC treated him. (RK Dec., ¶ 9.) After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent him and bear the risk of litigating the case on a fully contingent basis. (Id.) Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. (Id.) In taking on this duty, the firm was facing a litigation behemoth— FMC is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand. (Id.)

///

As a result of FMC's failure to fix the material defects associated with Plaintiffs' vehicle, or otherwise comply with the Song-Beverly Act, Plaintiffs filed a Complaint in this action on May 22, 2018, in Los Angeles County alleging violations of the Song-Beverly Act. (RK Dec., ¶ 10.)

On June 25, 2018, FMC removed the case to federal court. (RK Dec., ¶ 11.) On June 26, 2018, FMC filed its Answer denying liability and asserting numerous defenses. (RK Dec., ¶ 12.) That same day, this case was added to Judge Birotte, Jr.'s calendar as a related case. (Id.) Per the Court's Order, in August and September of 2023, Plaintiffs prepared fact sheets and corresponding document production. (RK Dec., ¶ 13.) Plaintiffs' counsel also attended a mediation regarding this case in July 2024. (Id.)

On August 14, 2024, FMC served a Rule 68 Offer for $32,182.00 in exchange for surrender of the subject vehicle plus a motion for attorney's fees, costs, and expenses wherein Plaintiffs would be considered the prevailing party. (RK Dec., ¶ 14 Ex C.) The offer provided more than a full buyback on a ten (10) year-old vehicle. (Id.) Plaintiffs accepted on August 22, 2024. (Id.)

Plaintiffs, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiffs' attorney's fees, costs, and expenses by FMC but was forced to file this Motion with the Court. (RK Dec., ¶ 15.) Specifically, Plaintiffs engaged in discussions starting on September 5, 2024 and continuing on through September 10, 2024. As of the writing of this motion, Ford has failed to make an offer to resolve the attorney's fees, costs, and expenses at issue in this motion. (Id.)

### III.   ARGUMENT AND ANALYSIS

**A.   <u>Plaintiffs' Attorneys Are Entitled to Fees, Costs and Expenses in this Action</u>**

In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney's fees, and the procedure for

requesting an award of attorney's fees is governed by federal law. (*Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees")

Plaintiffs are the prevailing party in this action and, under the Song-Beverly Act, is entitled to recoup all reasonable attorneys' fees, costs and expenses. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.) A Plaintiffs' verified billing invoices are prima facie evidence that the costs, expenses, and services listed were necessarily incurred. (*See Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.) "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated to not suffice." (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488, quoting *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n* (2008) 163 Cal.App.4th 550, 564.)

Absent a contrary showing, both the number of hours that the prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances" that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, California Attorney Fee Awards, at §§ 12.14A, 12.33 (2nd Ed. 2005.)

In prosecuting this case, the efforts of Knight Law amount to $6,082.50, including drafting this motion and time anticipated to be spent preparing the reply

and attending the hearing. (RK Dec., ¶ 2, Ex. A.). Plaintiffs' counsel also requests a modest 0.5 enhancement, in the amount of $3,041.25, to account for the delay in payment and contingent risk posed by this case. Lastly, the reimbursable costs and expenses set forth in Plaintiffs' motion for costs are $1,052.60. (RK Dec., ¶ 2) In total, Plaintiffs requests $10,176.35 in fees, costs and expenses. (RK Dec., ¶ 2, Ex. A.)

### B. The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable

The Court of Appeal has expressly held the lodestar method applies to determining attorney's fees under the Song-Beverly Act. (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.) The calculation of reasonable attorney's fees under the Song-Beverly Act is based on the lodestar method, which entails multiplying the number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.) The prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and "reasonable in amount." (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470.) In making such an evaluation, a court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." (*Id*.)

In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over $185,000 in attorneys' fees and costs for a Plaintiffs who settled her claims against BMW under the Song-Beverly Act. (*Id.* at 464.) The court also found Plaintiffs' counsel's hourly rate of $575 per hour was reasonable as supported by exhibits to counsel's declaration indicating various state and federal courts had previously awarded him comparable hourly rates. (*Id*. at 473-74.) The holding states that the trial court was not obliged to consider that defendants paid their counsel a much lower hourly rate. (*Id*. at 474.)

In *Graciano*, the trial court initially rejected Plaintiffs' lodestar fees of $109,468.50 and request for a multiplier of 2.0. In particular, the trial court reduced the Plaintiffs' attorney's hourly rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for expert testimony. The appellate court reversed, reasoning a court should determine the prevailing rate in the community for comparable professional legal services. (*Graciano, supra,* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).) The court found the Plaintiffs' unrebutted declarations established the proper hourly rate at $350 (for work in 2004), and reducing that rate to $250 was an abuse of discretion. (*Id.*) The court also reaffirmed attorney's fees <u>are not limited to a proportion</u> of the recovery. (*Id.* at 164.) On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee award of over $380,000.00.

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are *also entitled* to recover their fees for the time spent preparing fee applications such as this one. (*Serrano v. Unruh*, *supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

Consideration of the "lodestar" factors compels an award of attorneys' fees based on the hourly rates set forth in the declaration filed concurrently herewith (RK Dec., ¶¶ 16-29.), as well as this Court's previous orders on reasonable hourly rates. *See Margolin v. Reg. Planning Com.*, 134 Cal. App. 3d 999, 1005-06 (1982) "[a]ffidavits of the Plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases … are evidence of the prevailing market rate," The United States Supreme Court has stated "awards in similar cases" is one of twelve possible factors to be considered when determining an appropriate hourly rate. (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 429-430.)

*Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### 1. The Nature and Complexity of the Litigation Support the Attorneys' Fees Requested

Determining the amount of reasonable attorneys' fees may involve consideration of the nature and complexity of the case. (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.) FMC routinely claims that cases like this one are "simple lemon law cases" and, therefore, Plaintiffs' attorneys' fee requests are always unjustified as excessive. This case required a range of specialized knowledge including: (1) an understanding of the full scope of consumer protection laws which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations. (RK Dec., ¶ 34.) Plaintiffs' attorneys have acquired knowledge and insight about these issues over the course of many years of litigation, and this experience typically results in significantly higher judgments or settlements for their clients.

Moreover, FMC made this matter even more complex by refusing to buy the car back prelitigation and maintaining it had no liability throughout the litigation which forced Plaintiffs to prove up their case. FMC should have acknowledged the defects in Plaintiffs' vehicle and resolved the matter before this case was ever filed. Instead, FMC engaged in expensive litigation which included denying liability, removing the case to federal court, having this case transferred to the MDL, and litigating the case for ***over six years***. When FMC causes the entirety of fees to be incurred, it has no legitimate basis for complaining about the amount of attorneys' fees reasonably and actually incurred, especially when <u>FMC had the</u>

opportunity to resolve the matter before a lawsuit was even filed. "A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

### 2. The Firm's Skill Justifies the Amount of Attorneys' Fees Sought

A trial court may also take into account the skill of the attorneys when determining reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309, 316.) Plaintiffs' attorneys specialize in consumer law and did not balk at FMC's aggressive litigation tactics. Plaintiffs' attorneys' experience has enabled them to develop litigation strategies that are highly effective and cost and time efficient. Knight Law's specialized knowledge and experience in lemon law frequently results in outcomes far better than those obtained by attorneys who do not specialize in this specific area of law. Because of this experience, knowledge and expertise, **Plaintiffs went from a ZERO offer prelitigation and at case inception to a $32,182.00 settlement**.

Counsels' skill is evidenced by the size of the settlement as well as the nominal time expended on litigation tasks, which results in lower overall billing. Plaintiffs' attorneys do not spend inordinate time researching because they specialize in this area of law. (RK Dec., ¶ 35.) Nor do they spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited, rather than written from scratch. (*Id*.) While substantial fees have been incurred, those fees led to the execution of effective strategies that result in superlative results for Knight Law clients, like Plaintiffs here.

On the other side, FMC is represented by large national firms with attorneys who specialize in representing automobile manufacturers in lemon law cases. FMC is a corporate behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney. Plaintiffs required skilled and experienced attorneys to

prosecute their claims against FMC and its formidable resources. Plaintiffs' attorneys were well-suited for the task.

### C. Plaintiffs Should Be Granted a Lodestar Multiplier

As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier. (*Robertson, supra,* 144 Cal.App.4th at 817.) Once a lodestar amount is determined, which involves a "careful compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Id.* at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III*)), the amount may then be augmented by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award. (*Id.*; see also *Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler*, 22 Cal.4th at 1096.)  "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).)  "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on." (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.)  Plaintiffs asks for far less.

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers," and the court granted a 1.5 multiplier. (144 Cal.App.4th at 817, 819.) In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable and adding a 2.0

multiplier for a total award of over $380,000.00. (144 Cal.App.4th at 156.)

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved. The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the <u>risk</u> of taking a case on a contingency basis, and <u>delay</u> in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.)

In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a *larger compensation* than would otherwise be reasonable." (24 Cal.4th at 1132 [emphasis added].)

> <u>A contingent fee must be higher than a fee for the same legal services paid as they are performed</u>. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.) <u>A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions</u>. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

(*Id.* at 1132 [citations omitted; emphasis added].)

Throughout the litigation, there always existed the possibility Plaintiffs would not prevail. The risk was compounded by the fact that Plaintiffs' attorneys advanced all litigation costs and expenses without reimbursement and that Ford failed to tender a written offer until the one that resolved this case (six years later). Thus, if Plaintiffs did not prevail, his attorneys would have suffered a substantial loss of uncompensated attorney hours and thousands of dollars in out-of-pocket expenses. Plaintiffs requests a 0.2 enhancement based on that risk. Further, FMC dragged this case out for about six years before finally resolving this. Unlike FMC's

attorneys, who are paid monthly regardless of outcome, Plaintiffs' attorneys are not paid at all if they lose and need to absorb significant delay in being paid if Plaintiffs does win. On account of the substantial delay in payment, Plaintiffs requests a 0.3 enhancement. Based on the risk of taking this case on a contingent fee basis and the delay in payment since filing the Complaint, as well as the excellent result achieved, Plaintiffs requests a nominal multiplier of 0.5.

### D. Plaintiffs Are Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action

Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover a sum equal to the aggregate amount of costs <u>and expenses</u>. (Civ. Code § 1794(d) [emphasis added].) The California Legislature intended the word "expenses" to cover outlays not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative history demonstrates the Legislature exercised its power to permit recovery of a host of litigation expenditures beyond those permitted by Code of Civil Procedure § 1033.5. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

A motion for costs generally satisfies the moving party's burden of establishing costs necessarily incurred. (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.) The motion for costs demonstrates Plaintiffs' attorneys' costs and expenses prosecuting this matter, which counsel advanced on Plaintiffs' behalf. (RK Dec. ¶ 2.) The burden shifts to Ford to properly rebut the claimed costs.

///
///
///
///
///
///
///

# IV. CONCLUSION

For the reasons above, Plaintiffs respectfully request this Honorable Court award attorneys' fees, costs and expenses as follows:

|  |  |
|---|---|
| Lodestar Fees: | $ 6,082.50 |
| +Lodestar Enhancement: | $ 3,041.25 |
| Total Fees Requested: | $ 9,123.75 |
| +Costs and Expenses: | $ 1,052.60 |
| **=Total Fees and Costs/Expenses:** | **$10,176.35** |

Dated: September 11, 2024                **KNIGHT LAW GROUP, LLP**

*/s/ Deepak Devabose*
Roger Kirnos (SBN 283163)
Deepak Devabose (SBN 298890)
Attorneys for Plaintiffs,
MONIQUE M. DANIEL and
ROBIN NEUMANN